**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____

| | | |
|---|---|---|
| OLEAN WHOLESALE GROCERY | ) | |
| COOPERATIVE, INC., et al., | ) | Case No. 1:19-cv-08318 |
| | ) | |
| Plaintiffs, | ) | Honorable Virginia M. Kendall |
| | ) | Honorable Gabriel A. Fuentes |
| vs. | ) | |
| | ) | **JURY DEMAND ENDORSED** |
| AGRI STATS, INC., et al., | ) | **HEREON** |
| | ) | |
| Defendants. | ) | |

_____

**ANSWER TO PLAINTIFFS OLEAN WHOLESALE GROCERY COOPERATIVE,
INC,'S AND JOHN GROSS AND COMPANY, INC.'S
CLASS ACTION COMPLAINT**

Cooper Farms, Inc., ("Cooper Farms"), for its Answer to the Class Action Complaint

("Complaint") of Plaintiffs Olean Wholesale Grocery Cooperative, Inc. and John Gross and

Company, Inc. (collectively, "Plaintiffs"):

## I.     NATURE OF ACTION

1.      The turkey integrator defendants are the leading suppliers of turkey in an industry
with approximately $5 billion in annual commerce.  The turkey industry is highly concentrated,
with a small number of large producers in the United States controlling supply.  Defendants and
their co-conspirators collectively control approximately 80 percent of the wholesale turkey market
in the United States.  The turkey integrator defendants are Butterball LLC (Butterball); Cargill Inc.
and Cargill Meat Solutions Corporation, (together and separately, Cargill); Cooper Farms, Inc.
(Cooper Farms); Farbest Foods, Inc., (Farbest); Foster Farms LLC and Foster Poultry Farms
(together and separately, Foster Farms); Hormel Foods Corporation and Hormel Foods LLC
(together and separately, Hormel); House of Raeford Farms, Inc., (House of Raeford); Kraft Heinz
Foods Company and Kraft Foods Group Brands LLC (together and separately, Kraft Foods),
Perdue Farms, Inc. and Perdue Foods LLC (together and separately, Perdue); Tyson Foods, Inc.,
The Hillshire Brands Company, Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. (together
and separately, Tyson).

**ANSWER**:   Cooper Farms denies the conspiracy and/or conspiracies alleged in the

Complaint.  Cooper Farms denies that it processed for consumption and sold whole turkeys during

the Class Period defined by Plaintiffs in the Complaint. Cooper Farms denies that it directly or indirectly controls 80 percent of the wholesale turkey market in the United States now and/or during the Class Period. Cooper Farms states that the allegations in Paragraph 1 of the Complaint regarding the terms "turkey integrator" and/or "turkey integrator defendants," the listing by name of those alleged "turkey integrator defendants" in the Complaint, and the contents of footnote 1 to the Introductory Paragraph, consist of Plaintiffs' characterization of their claims, allegations subject to proof by expert testimony, and/or are legal conclusions to which no responsive pleading is required. To the extent the allegations in Paragraph 1 and/or the Introductory Paragraph of the Complaint relate to defendants or third-parties other than Cooper Farms, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of those allegations, and therefore, denies the same. Cooper Farms denies any remaining allegations in Paragraph 1 and/or in the Introductory Paragraph of the Complaint.[1]

2.     Defendant Agri Stats is a company that provides secretive information exchange services to companies in a variety of agricultural sectors, including pork, chicken, and turkey.

**ANSWER**:  Cooper Farms denies the allegations in Paragraph 2 insofar as they relate to Cooper Farms. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2, and therefore, denies the same.

3.     The turkey integrator defendants each entered into an agreement from at least 2010 to January 1, 2017, to exchange sensitive information through Agri Stats regarding their production and sales of turkey.

**ANSWER**:  Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms denies the allegations in Paragraph 3 insofar as they relate to Cooper Farms. To the extent the allegations in Paragraph 3 relate to other defendants and/or third parties,

---

[1] The Complaint includes argumentative section headings and footnotes, which characterize Plaintiffs' claims and to which no responsive pleading is required. To the extent a responsive pleading is deemed to be required, Cooper Farms denies them.

Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3, and therefore, denies the same.

4.     Agri Stats reports are far different from lawful industry reports.  Agri Stats gathers detailed financial and production data from each of the turkey integrators, standardizes this information, and produces customized reports and graphs for the co-conspirators.  On a monthly basis, Agri Stats provides the turkey integrators with current and forward-looking sensitive information (such as profits, costs, prices and slaughter information).

**ANSWER**:  Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint, denies Plaintiffs' characterization of Agri Stats reports, denies the implication that there was something unlawful about Agri Stats reports, and denies the existence of any information exchange that had or was likely to have anticompetitive effects.  Cooper Farms denies the allegations in Paragraph 4 insofar as they relate to Cooper Farms.  To the extent the allegations in Paragraph 4 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4, and therefore, denies the same.

5.     The United States Supreme Court has long recognized that "exchanges of current price information, of course, have the greatest potential for generating anticompetitive effects."[2] Agri Stats' sales reports prove the truth of that maxim.  Agri Stats prepared monthly reports for defendants regarding their sales of turkey that identified, on a specific product by product level, the prices and returns that each defendant was obtaining on their sales of turkey.  These reports, unavailable to anybody besides Agri Stats subscribers, allowed the integrator defendants to easily identify potential opportunities where their prices for turkey products were significantly lower than their competitors.

**ANSWER**:  To the extent the allegations in Paragraph 5 characterize or describe documents or other sources, including, but not limited to, the decision in *United States v. U.S. Gypsum Co.,* 438 U.S. 422, 433 (1978) and/or "Agri Stats' sales reports," the allegations are legal conclusions to which no responsive pleading is required.  Agri Stats reports are documents that speak for themselves and Cooper Farms denies any inconsistent characterization or description of

---

[2] *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 (1978).

3

them. Cooper Farms denies any remaining allegations in Paragraph 5 insofar as they relate to Cooper Farms. To the extent the allegations in Paragraph 5 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 5, and therefore, denies the same.

6. Turkey is the relevant product market and the geographic market is the continental United States. Defendants collectively possess market power in the market for turkey. Defendants and co-conspirators collectively possessed approximately 80 percent of the overall market share for turkeys during the Class Period.

**ANSWER**: Cooper Farms states the allegations concerning "relevant product market" and "geographic market" are legal conclusions to which no responsive pleading is required. To the extent a responsive pleading is deemed to be required, Cooper Farms states these allegations consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, which allegations Cooper Farms denies. Cooper Farms denies that there is one product and/or geographic market for "turkey" and denies that it processed for consumption and sold whole turkeys during the Class Period defined by Plaintiffs in the Complaint. Cooper Farms denies the remaining allegations in Paragraph 6 insofar as they relate to Cooper Farms. To the extent the allegations in Paragraph 6 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 6, and therefore, denies the same.

7. Blair Snyder, a senior executive at Agri Stats, publicly stated in 2009 that "about 95% of the turkey industry [is] participating" in Agri Stats, and that for "turkey participants, pretty much it's a list of who's who in the turkey business." This is a comparable portion to the percentage of broiler chicken industry participating in Agri Stats reports, with Mr. Snyder stating that "we've got high 90 percentage of both broilers and turkeys."

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, and therefore, denies the same.

8.    Each one of the defendants and co-conspirators entered into an agreement to exchange information through Agri Stats.  Each defendant's agreement to exchange information regarding turkey production is shown in the below 2010 excerpt from an Agri Stats presentation that lists the participants in Agri Stats' turkey reports.



**ANSWER**:  To the extent the allegations in Paragraph 8 are legal conclusions, no responsive pleading is required.  To the extent the allegations characterize or describe sources and/or documents, such sources and documents speak for themselves and Cooper Farms denies any inconsistent characterization or description of them.  Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint.  Cooper Farms denies the remaining allegations in Paragraph 8 insofar as they relate to Cooper Farms.  To the extent the allegations in Paragraph 8 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 8, and therefore, denies the same.

9.      This 2010 presentation slide shows that each of the defendant integrator and Co-Conspirator Integrators entered into an agreement to exchange information regarding their turkey operations through Agri Stats during the conspiracy period.  The document directly identifies defendants Butterball, Cargill, Cooper's, Farbest, Foster Farms, House of Raeford and Perdue Farms, as participants in Agri Stats's reports on turkey.  The document directly identifies Co-Conspirators Circle-S Ranch, Prestage Farms, and West Liberty Foods as participants in Agri Stats' reports on turkey.  Jennie-O is the brand name for Hormel's turkey operations and thus Hormel participated in Agri Stats' reports on turkey.  The document also identifies Louis Rich, a Kraft Foods brand that produces turkey, as receiving Agri Stats reports, and thus Kraft Foods participated in Agri Stats' reports on turkey.  Sara Lee's turkey operations, Hillshire Brands, was subsequently acquired by Tyson in 2014 and thus Tyson participated in Agri Stats' reports on turkey.

**ANSWER**:   To the extent the allegations in Paragraph 9 are legal conclusions, no responsive pleading is required.  To the extent the allegations characterize or describe sources and/or documents, such sources and documents speak for themselves and Cooper Farms denies any inconsistent characterization or description of them.  Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms denies that it entered into an agreement to exchange information regarding its turkey operations through Agri Stats during the Class Period defined by Plaintiffs in the Complaint.  Cooper Farms admits it received Agri Stats reports in 2010, and denies the remaining allegations in Paragraph 9 insofar as they relate to Cooper Farms. To the extent the allegations in Paragraph 9 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9, and therefore, denies the same.

10.     The information exchange by the defendant integrators through Agri Stats is exactly the type of information exchange that the Supreme Court has recognized is likely to have anticompetitive effects under a rule of reason analysis.  First, the data is current and forward-looking – which courts consistently hold has "the greatest potential for generating anticompetitive effects."[3] Second, information contained in Agri Stats reports is specific to the turkey producers, including information on profits, prices, costs and production levels.  Third, none of the Agri Stats information was publicly available.  Agri Stats is a subscription service, which required the defendant integrators to pay hefty fees over the Class Period – far in excess of any other pricing and production indices and to agree to volunteer their own data.  "Public dissemination is a primary way for data exchange to realize its pro-competitive potential."[4] Agri Stats ensured that its detailed, sensitive business information was available only to the coconspirators and not to any buyers in the market.  Thus, for example, buyers on the market could not use Agri Stats data in Agri Stats sales reports to negotiate lower prices; instead, only defendants could use it as a way to identify opportunities to raise their prices.

**ANSWER**:  To the extent the allegations in Paragraph 10 characterize or describe legal documents, including *Todd v. Exxon Corp.,* 275 F.3d 191 (2nd Cir. 2001) and *United States v. Gypsum Co.,* 438 U.S. 422 (1978), the allegations are legal conclusions to which no responsive pleading is required.  Such legal documents speak for themselves and Cooper Farms denies any inconsistent characterization or description of them.  Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint, denies Plaintiffs' characterization of Agri Stats reports and their use, and denies the existence of any information exchange that had or was likely to have anticompetitive effects under a rule of reason analysis.  Cooper Farms states that, to the extent it provided information to Agri Stats and/or utilized Agri Stats reports, Cooper Farms did so for pro-competitive and lawful purposes.  Cooper Farms denies the remaining allegations in Paragraph 10 insofar as they relate to Cooper Farms.  To the extent the allegations in Paragraph 10 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 10, and therefore, denies the same.

---

[3] *Todd v. Exxon Corp*., 275 F.3d 191, 2011 (2d Cir. 2001) (Sotomayor, J.) (quoting *United States v. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978)).
[4] *Id.* at 213.

11.     Indeed, Agri Stats specifically marketed itself to potential participants as a way that they could "improve profitability" rather than engage in competition through production increases. Agri Stats was good to its word; its sales reports specifically identified opportunities for defendants where defendants' products were lower than that of the industry average and where defendants could consequently raise prices to meet that of their competitors.

**ANSWER**:  To the extent the allegations in Paragraph 11 characterize or describe

documents or other sources, such sources and documents speak for themselves and Cooper Farms

denies any inconsistent characterization or description of them.  Cooper Farms states that, to the

extent it provided information to Agri Stats and/or utilized Agri Stats reports, Cooper Farms did

so for pro-competitive and lawful purposes.  Cooper Farms denies the remaining allegations in

Paragraph 11 insofar as they relate to Cooper Farms.  To the extent the allegations in Paragraph

11 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in Paragraph 11, and therefore,

denies the same.

12.     Industry participants relied on Agri Stats reports in their analysis of their business operations.  For example, Hormel, at its 2011 Investor Day, stated in its presentation that "when you optimize the supply chain" you "improve your relative industry position (Agri Stats)." Hormel also touted that "Jennie-O Turkey Store is consistently one of the top companies in operating profits (Agri Stats)."

**ANSWER**:  Cooper Farms denies the allegations in Paragraph 12 insofar as they relate to

Cooper Farms and, to the extent the allegations in Paragraph 12 relate to other defendants and/or

third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in Paragraph 12, and therefore, denies them.

13.     Confidential Witness 1 (CW1) is a former sales executive at Butterball involved in the pricing of turkeys.  CW1 was employed at Butterball during the entire Class Period.  CW1 stated that Butterball relied on the monthly reports issued by Agri Stats: "The company used the information to evaluate — by item, item group, price, distribution — where we stood against other turkey companies." CW1 stated that he and other sales personnel looked at Agri Stats data to see how Butterball ranked against peers in the turkey industry.  CW1 stated that he personally looked at the Agri Stats data to assess costs and returns.  CW1 stated that costs were an important factor in determining how Butterball set its prices.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, and therefore, denies the same.

14.     Confidential Witness 2 (CW2) is a former accountant at Cooper Farms.  CW2 stated that Cooper Farms received monthly reports from Agri Stats.  In addition, Agri Stats representatives met with Cooper Farms executives every six months.  CW2 stated that Cooper Farms submitted cost information to Agri Stats every month.  CW2 explained that Agri Stats reports grouped data into various types of turkey products, including deli meat and smoked meat.

**ANSWER**:  Cooper Farms states that, to the extent it received monthly reports from Agri Stats, met with Agri Stats representatives, and/or submitted information to Agri Stats, Cooper Farms did so for pro-competitive and lawful purposes, and Cooper Farms denies any allegations to the contrary and/or any statement(s) to the contrary by any person, including, but not limited to, the unidentified individual designated in the Complaint as "Confidential Witness 2" or as "CW2." Cooper Farms further denies that any alleged statement of Confidential Witness 2/CW2 alleged in the Complaint indicates in any way that Cooper Farms engaged in any violation of any law and/or in any anti-competitive conduct.  Cooper Farms lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 14 regarding whether Confidential Witness 2/CW2 is a former accountant at Cooper Farms or as to the truth of the allegations in Paragraph 14 regarding what Confidential Witness 2/CW2 allegedly "stated" or "explained," and therefore, denies the same.  Cooper Farms denies any remaining allegations in Paragraph 14.

15.     CW2 stated that Agri Stats representatives regularly met with the Cooper Leadership Management Group, which included top management and executives from Cooper Farms.  CW2 stated that "the upper group received advice" from Agri Stats.  CW2 stated that the advice from Agri Stats helped Cooper Farms improve its returns per pound.

**ANSWER**:  Cooper Farms states that, to the extent it received monthly reports from Agri Stats, met with Agri Stats representatives, and/or submitted information to Agri Stats, Cooper Farms did so for pro-competitive and lawful purposes, and Cooper Farms denies any allegations to the contrary and any statement(s) to the contrary by any person, including, but not limited to,

the unidentified individual designated in the Complaint as "Confidential Witness 2" or as "CW2." Cooper Farms further denies that any alleged statement of Confidential Witness 2/CW2 alleged in the Complaint indicates in any way that Cooper Farms engaged in any violation of any law and/or in any anti-competitive conduct. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 regarding what Confidential Witness 2/CW2 allegedly "stated," and therefore, denies the same. Cooper Farms denies any remaining allegations in Paragraph 15.

16. Agri Stats reports also contained detailed information on industry-wide supply levels. For example, a job description of an Agri Stats employee stated that they analyzed Turkey "breeder flock and hatchery data" as well as Turkey "growout flocks."

**ANSWER**: To the extent the allegations in Paragraph 16 characterize or describe documents or other sources, such sources and documents speak for themselves and Cooper Farms denies any inconsistent characterization or description of them. Cooper Farms denies the allegations in Paragraph 16 insofar as they relate to Cooper Farms and/or to Agri Stats reports insofar as the terms "detailed" and "industry-wide supply levels" are vague, ambiguous and undefined, and Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16, and therefore, denies the same.

17. Based on publicly available information filed in a February 7, 2018, complaint in the *Broiler Chicken Antitrust Litigation*,[5] Agri Stats data on growout flocks contained information such as the number of broilers placed, chick mortality by week and overall percentage, chick cost, days between flocks provided to contract farmers (aka, "down time"), feed conversion rate (pounds of feed per pound of broiler), and average daily weight. On information and belief, the growout data that Agri Stats compiled for the turkey industry contained similar levels of data. This type of data allowed defendants to monitor industry-wide supply levels.

**ANSWER**: To the extent the allegations in Paragraph 17 characterize or describe documents or other sources, such sources and documents speak for themselves and Cooper Farms

---

[5] *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.) (ECF No. 710)

denies any inconsistent characterization or description of them. Cooper Farms denies any implication that information relating to broiler chickens has any relevance to this case and/or that any Agri Stats reports regarding broiler chickens has any relevance to the Agri Stats reports at issue in this case. Cooper Farms admits it received Agri Stats reports for turkey. Cooper Farms denies the remaining allegations in Paragraph 17 insofar as they relate to Cooper Farms, and Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17, and therefore, denies the same.

18. Although Agri Stats reports are nominally anonymous, defendant integrators were often able to deanonymize the reports to identify the data of specific companies based on their industry knowledge. CW2 stated that he could determine the identity of companies in Agri Stats reports because "you could usually figure out who was who because they have a certain cooked meat, or if they were browning and running it through an oven." CW2 further stated that "we could sit there and discuss it, because a lot of us knew what the other plants in the big areas, what they did." For example, CW2 stated that one competitor company had five separate facilities included in the Agri Stats reports, and that therefore, it was easy to determine the identity of that company.

**ANSWER**: Cooper Farms states that, to the extent it received monthly reports from Agri Stats, Cooper Farms did so for pro-competitive and lawful purposes, and Cooper Farms denies any allegations to the contrary and any statement(s) to the contrary by any person, including, but not limited to, the unidentified individual designated in the Complaint as "Confidential Witness 2" or as "CW2." Cooper Farms further denies that any alleged statement of Confidential Witness 2/CW2 alleged in the Complaint indicates in any way that Cooper Farms engaged in any violation of any law and/or in any anti-competitive conduct. Cooper Farms states the Agri Stats reports it received were anonymized. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 regarding what Confidential Witness 2/CW2 allegedly "stated," and therefore, denies the same. Cooper Farms denies any remaining allegations in Paragraph 18.

19.     Confidential Witness 3 (CW) is a former employee of Cargill during the conspiracy period. CW3 stated that Cargill received monthly reports from Agri Stats on turkey. CW3 stated that the monthly Agri Stats turkey reports went directly to Cargill finance executives.

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, and therefore, denies the same.

20.     Throughout the conspiracy period, defendant integrators were able to exercise a remarkable level of industry-wide restraint in keeping the growth of turkey supply in check, causing turkey prices to rise. Thus, Agri Stats had the anticompetitive effect of allowing defendants to engage in collusion to restrain the supply of turkey by facilitating information exchange about supply levels throughout the industry. The industry-wide cuts in turkey production during the conspiracy period are shown in the following chart:



**ANSWER**: Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the chart incorporated into Paragraph 20 and/or the information purportedly depicted therein, and therefore denies the same. Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms denies that it processed for consumption and sold whole turkeys during the Class Period defined by Plaintiffs in the Complaint. Cooper Farms states that it increased the turkey it processed and/or sold, by net head

and by net weight, during the Class Period defined by Plaintiffs in the Complaint. Cooper Farms

denies the remaining allegations in Paragraph 20 insofar as they relate to Cooper Farms.  To the

extent the remaining allegations in Paragraph 20 relate to other defendants and/or third parties,

Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 20, and therefore, denies the same.

21.    In a competitive market, production generally matches demand.  More demand will
lead to more supply.  Conversely, a drop in production caused by falling demand should
correspond to falling prices.  However, in the turkey market during the conspiracy period,
production, measured through USDA data, remained artificially restrained even as demand,
captured by higher per capita expenditures on turkey, rose significantly.  These observed price and
output dynamics, shown in the below analysis performed by plaintiffs' experts, indicate that it was
not falling demand that caused a decline in supply during the conspiracy period.



**ANSWER**:   Cooper Farms lacks knowledge or information regarding the source,

underlying data, and accuracy of the "analysis" incorporated into Paragraph 21 and/or the

information purportedly depicted therein, and therefore denies the same.  Cooper Farms denies the

conspiracy and/or conspiracies alleged in the Complaint.  Cooper Farms denies that it processed

for consumption and sold whole turkeys during the Class Period defined by Plaintiffs in the Complaint. Cooper Farms denies the remaining allegations in Paragraph 21.

22. In addition to their participation in Agri Stats, defendant integrators had frequent opportunities to communicate, in conjunction with formal meetings of various trade associations. In particular, the National Turkey Federation each year held regular meetings, including the NTF Annual Convention and the NTF Leadership conference, which were widely attended by the defendant integrators. CW3 stated that senior Cargill executives, including Cargill's CEO and CFO, attended National Turkey Federation meetings. For example, CW2 stated that Cooper Farms leadership were involved in the National Turkey Federation, for example Cooper Farms COO Gary Cooper served as immediate past chairman of the NTF board in 2014.

**ANSWER**: Cooper Farms states that it has been and currently is a member of the National Turkey Federation ("NTF"), that Cooper Farms employees have attended NTF meetings, and that Gary Cooper previously served as Chairman of the NTF in 2014. Cooper Farms states that, to the extent it utilized Agri Stats and/or participated in NTF, Cooper Farms at all times did so for pro-competitive and lawful purposes, and Cooper Farms denies any allegations to the contrary and any statement(s) to the contrary by any person. Cooper Farms further denies that any alleged statement of Confidential Witness 2/CW2 alleged in the Complaint indicates in any way that Cooper Farms engaged in any violation of any law and/or in any anti-competitive conduct. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 regarding what Confidential Witness 2/CW2 allegedly "stated," and therefore, denies the same. Cooper Farms denies the remaining allegations in Paragraph 22 insofar as they relate to Cooper Farms. To the extent the remaining allegations in Paragraph 22 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22, and therefore, denies the same.

23. Collectively, Hormel, Cargill, and Butterball control approximately 50 percent of the turkey market. Hormel is the only publicly traded company among these three. In its earnings calls during the conspiracy period, Hormel repeatedly discussed the industry-wide success in executing production cuts and maintaining industry-wide production discipline during the Class Period.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and therefore, denies the same.

24.     On June 2, 2009, Hormel emphasized that it was making production cuts in response to an alleged oversupply in the market and closely monitoring the overall level of production in the market, showing the importance of the kind of information exchanged through Agri Stats:

> There is an oversupply of turkey.  There continues to be perhaps more production as well as cold storage stocks than the demand would warrant. We have been very deliberate about making the appropriate production cuts. We announced them over a year ago.  And we have even exceeded the amount we expected to reduce.  We have seen the placements and indicators of forward looking supply come down, so that was as expected, and we expected the second half of 2009 to be a little kinder in the turkey side of the business, but there is still a lot of storage, cold storage stocks to go through, we feel comfortable that we've cleaned up our inventories that we had on hand.  Our production cuts were more than the decrease in our sales because we did work off inventories.  I had a feeling the industry will rebound.  It's going to take a work through of the excess inventories as well as those production cuts hitting the marketplace.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and therefore, denies the same.

25.     On August 20, 2010, Hormel stated, "We think the turkey business has reached a good equilibrium, and we don't have any major expansion plans and have not heard others in that mode, so I think those conditions should remain favorable into next year."

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and therefore, denies the same.

26.     On May 25, 2011, Hormel stated that the turkey industry was maintaining solid pricing based on the information that Hormel was receiving about industry-wide turkey production levels: "We certainly see egg set and poultry placement numbers that take us through the end of this year and a little bit into next fiscal year.  But right now, on the basis of those numbers, on the basis of what we see in terms of production in the industry and on the basis of cold storage numbers, coupled with still strong demand on the export side, we feel that the amount of product going to market will support solid pricing on a commodity basis."

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, and therefore, denies the same.

27.     On August 25, 2011, Hormel stated that the turkey industry was maintaining better discipline than the poultry industry: "The industry as a whole has shown a little better discipline, perhaps, than the other poultry side of the ledger." This statement is notable because the chicken industry is currently the subject of multiple civil lawsuits as well as a DOJ investigation of potential antitrust violations during this period of time.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and therefore, denies the same.

28.     Furthermore, the turkey market has all of the characteristics of a market where information exchange is likely to have anticompetitive effects.  Turkey is a fungible product, the market for turkey has price-based competition, the demand for turkey is relatively inelastic, and the turkey market features a trend towards price uniformity.

**ANSWER**:  Cooper Farms denies the allegations in Paragraph 28.

29.     The information exchange through Agri Stats did not have the kind of characteristics that would produce procompetitive effects sufficient to outweigh the anticompetitive harms.  The information exchange involved current and forward-looking data. Agri Stats regularly prepared monthly reports that contained data that was less than six weeks old. Agri Stats also only allowed companies to access the data if they themselves shared the data, thus ensuring that only defendants and other similarly situated turkey integrators who received the Agri Stats reports were able to use the data.



**ANSWER**:  To the extent the allegations in Paragraph 29 draw legal conclusions, no responsive pleading is required.  To the extent the allegations in Paragraph 29 characterize or describe documents or other sources, including, but not limited to, Agri Stats reports, such sources

and documents speak for themselves and Cooper Farms denies any inconsistent characterization or description of them. Cooper Farms states that, to the extent it utilized Agri Stats, Cooper Farms at all times did so for pro-competitive and lawful purposes, and Cooper Farms denies any allegations to the contrary and/or any statement(s) to the contrary by any person. Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29, and therefore, denies the same.

30. During the conspiracy period, the price of turkey spiked dramatically, driven by the anticompetitive effects of the information exchange through Agri Stats regarding turkey production that helped facilitate defendants restraint over the growth in the supply of turkey.

**ANSWER**: Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the chart incorporated into Paragraph 30 and/or the information purportedly depicted therein, and therefore denies the same. Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms denies the remaining allegations in Paragraph 30.

31. The information exchange through Agri Stats in fact had anticompetitive effects on the market. Prior to the conspiracy, turkey prices closely tracked the underlying cost of feed, which is the primary input cost in the production of turkey. Beginning in 2009-2010, prices of turkey spiked to an unprecedented level, showing the anticompetitive effects of defendants' information exchange through Agri Stats. Remarkably, as demonstrated in the analysis performed by plaintiffs' experts, shown in the below chart, prices of turkey quickly returned to match underlying feed costs after litigation was filed in late 2016 in the broiler industry that centered on the anticompetitive use of Agri Stats. Defendants clearly changed their behavior after the commencement of the Broilers litigation, as Tyson dismissed their CEO, Donnie Smith, in late 2016, shortly after the first civil lawsuits were filed.



**ANSWER**: Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the chart incorporated into Paragraph 31 and/or the information purportedly depicted therein, and therefore denies the same. Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms denies the allegations in Paragraph 31 insofar as they relate to Cooper Farms, and Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31, and therefore, denies the same.

32.     Feed accounts for approximately 60-70% of the cost of raising a turkey. Plaintiffs' experts constructed a regression model based on the underlying feed cost that models what the "but for" price of turkey would have been if the historical relationship between feed and turkey costs had continued during the conspiracy period. The model demonstrates that the anticompetitive information exchange of data regarding turkey production through Agri Stats caused anticompetitive effects in the market for turkey.



**ANSWER**: Cooper Farms states that the allegations in Paragraph 32 of the Complaint consist of Plaintiffs' characterization of their claims, allegations subject to proof by expert testimony, and/or are legal conclusions to which no responsive pleading is required. To the extent a responsive pleading is deemed to be required, Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the chart incorporated into Paragraph 32 and/or the information purportedly depicted therein, and therefore denies the same. Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms denies the remaining allegations in Paragraph 32.

33.     As a result of defendants' unlawful conduct, plaintiffs and the Class paid artificially inflated prices for turkey during the Class Period. Such prices exceeded the amount they would have paid if the price for turkey had been determined by a competitive market. Thus, plaintiffs and class members were injured by defendants' agreement to exchange information through Agri Stats regarding the turkey market.

**ANSWER**: Cooper Farms states that the allegations in Paragraph 33 of the Complaint consist of Plaintiffs' characterization of their claims, allegations subject to proof by expert testimony, and/or are legal conclusions to which no responsive pleading is required. To the extent

a responsive pleading is deemed to be required, Cooper Farms lacks knowledge or information

regarding the source, underlying data, and accuracy of the chart incorporated into Paragraph 33

and/or the information purportedly depicted therein, and therefore denies the same. Cooper Farms

denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms denies the

allegations in Paragraph 33.

## II.      JURISDICTION AND VENUE

34.      Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to
secure compensatory damages and injunctive relief against defendants for violating Section 1 of
the Sherman Act (15 U.S.C. § 1). Plaintiffs seek to recover actual and/or compensatory damages,
double and treble damages as permitted, pre- and post-judgment interest, costs, and attorneys' fees
for the injury caused by defendants' conduct in restricting the supply of turkey and increasing the
price of turkey. Plaintiffs seek damages in excess of $5,000,000. This Court has subject matter
jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C.
§§ 15(a) and 26.

**ANSWER**: Cooper Farms states that the allegations in Paragraph 34 of the Complaint

consist of Plaintiffs' characterization of their claims, allegations subject to proof by expert

testimony, and/or are legal conclusions to which no responsive pleading is required. To the extent

a responsive pleading is deemed to be required, Cooper Farms states that the Court has subject-

matter jurisdiction, and denies that Plaintiffs have suffered any damages.

35.      Venue is appropriate in this District under 28 U.S.C. § 1391(b), (c) and (d) because
both Kraft Foods and Hillshire Brands are headquartered in the District, and one or more
defendants transacted business in this District, is licensed to do business or is doing business in
this District, and because a substantial portion of the affected interstate commerce described herein
was carried out in this District.

**ANSWER**: Cooper Farms states that the allegations in Paragraph 35 are legal conclusions

to which no responsive pleading is required. To the extent a responsive pleading is deemed to be

required, Cooper Farms does not contest venue in this District. Further, as Kraft has been dismissed

from this action, allegations related to it are irrelevant for the legal analysis of venue.

36.     This Court has personal jurisdiction over each defendant because, inter alia, each defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of turkey throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and/or (d) engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including in this District.

**ANSWER**:  Cooper Farms states that the allegations in Paragraph 36 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms denies that it has engaged in an antitrust conspiracy that was directed at and/or that had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including in this judicial district.  Cooper Farms does not contest personal jurisdiction in this action.  Cooper Farms denies any remaining allegations in Paragraph 36 insofar as they relate to Cooper Farms.  To the extent the allegations in Paragraph 36 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36, and therefore, denies the same.

37.     The activities of the defendants and all co-conspirators, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on, the foreign and interstate commerce of the United States.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 37 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms denies the remaining allegations in Paragraph 37 insofar as they relate to Cooper Farms.  To the extent the allegations in Paragraph 37 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 37, and therefore, denies the same.

### III.    PARTIES

**A.    Plaintiffs**

38.    Plaintiff Olean Wholesale Grocery Cooperative, Inc. (Olean Wholesale) is a retailers' cooperative located in Olean, New York.  Its members are independent, family-owned supermarkets.  Olean has served supermarkets in Western and Central New York, Western Pennsylvania, and Northeastern Ohio since 1922.  Olean Wholesale is a New York corporation with its principal place of business in Olean, New York, and purchased turkey directly from one or more defendants during the Class Period and suffered antitrust injury as a result of the violations alleged in this Complaint.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 38, and therefore, denies the same.

39.    John Gross and Company, Inc. (John Gross) is a full line food distributor located in Mechanicsburg, Pennsylvania.  Founded in 1950, the company has been owned and operated by the Gross family for four generations.  John Gross is a Pennsylvania corporation with its principal place of business in Mechanicsburg, Pennsylvania, and purchased turkey directly from one or more defendants during the Class Period and suffered antitrust injury as a result of the violations alleged in this Complaint.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 39, and therefore, denies the same.

**B.    Defendants**

40.    Agri Stats, Inc. is an Indiana corporation located in Fort Wayne, Indiana. Throughout the Class Period, Agri Stats acted as a co-conspirator of the turkey integrator defendants by facilitating the exchange of confidential, proprietary, and competitively sensitive data among defendants and their co-conspirators.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 40 regarding Agri Stats' state of incorporation and

location, and denies the same.  Cooper Farms denies the conspiracy and/or conspiracies alleged in

the Complaint.  Cooper Farms denies the remaining allegations in Paragraph 40.

41.    Butterball, LLC is a privately held North Carolina corporation engaged in the production of meat and food products, and the marketing of these products.  During the Class Period, Butterball and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41, and therefore, denies the same.

42. Cargill, Inc. is a privately held Delaware corporation headquartered in Minnetonka, Minnesota. During the Class Period, Cargill and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42, and therefore, denies the same.

43. Cargill Meat Solutions Corporation is a Delaware corporation that operates as a subsidiary of Cargill, Incorporated. During the Class Period, Cargill Meat Solutions and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43, and therefore, denies the same.

44. Defendants Cargill, Inc. and Cargill Meat Solutions are collectively referred to as "Cargill."

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44, and therefore, denies the same.

45. Cooper Farms, Inc. is a privately held Ohio corporation engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Cooper Farms and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**: Cooper Farms is a family-owned Ohio corporation located in Northwest Ohio that processes for sale and/or sells cooked and/or raw turkey breast meat, turkey parts, and turkey burgers in various states in the United States, as well as non-turkey food products. Cooper Farms denies that it processed for consumption and sold whole turkeys during the Class Period defined by Plaintiffs in the Complaint. Cooper Farms denies any remaining allegations in Paragraph 45.

46. Farbest Foods, Inc. is a privately held Indiana corporation engaged in the production of meat and food products, and the marketing of these products. During the Class

Period, Farbest and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 46, and therefore, denies the same.

47.    Foster Farms LLC is a privately held California corporation headquartered in Modesto, California.  During the Class Period, Foster Farms LLC and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 47, and therefore, denies the same.

48.    Foster Poultry Farms is a privately held California corporation headquartered in Livingston, California.  Foster Poultry Farms is a related entity of Foster Farms LLC.  During the Class Period, Foster Poultry Farms and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates was engaged in the processing, distribution, sale, pricing, and/or marketing of turkey, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 48, and therefore, denies the same.

49.    Defendants Foster Farms LLC and Foster Poultry Farms are collectively referred to as "Foster Farms."

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 49, and therefore, denies the same.

50.    Kraft Heinz Foods Company (Kraft Heinz), an Illinois corporation with headquarters in Pittsburgh, Pennsylvania, and Chicago, Illinois, is engaged in the production of meat and food products, and the marketing of these products.  During the Class Period, Kraft Heinz and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 50, and therefore, denies the same.

51.    Kraft Foods Group Brands LLC is an Illinois corporation engaged in the production of meat and food products, and the marketing of these products.  During the Class Period, Kraft

Heinz and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51, and therefore, denies the same.

52.     Defendants Kraft Heinz Foods Company and Kraft Foods Brands LLC are collectively referred to as "Kraft Foods."

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52, and therefore, denies the same.

53.     Hormel Foods Corporation is a Delaware corporation engaged in the production of meat and food products, and the marketing of these products.  During the Class Period, Hormel Foods Corporation and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53, and therefore, denies the same.

54.     Hormel Foods LLC is a limited liability corporation headquartered in Austin, Minnesota.  It is a wholly owned subsidiary of Hormel Foods Corporation.  Hormel is engaged in the production of meat and food products, and the marketing of these products.  During the Class Period, Hormel Foods LLC and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54, and therefore, denies the same.

55.     House of Raeford Farms, Inc. is a privately held North Carolina corporation headquartered in Rose Hill, North Carolina.  During the Class Period, House of Raeford operated in part through a division referred to as "Columbia Farms," which is a group of broiler facilities and operations originally named Columbia Farms, Inc. and Columbia Farms of Georgia, Inc. when purchased by House of Raeford in 1998.  During the Class Period, House of Raeford Farms, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55, and therefore, denies the same.

56.     Perdue Farms, Inc. is a privately held Maryland corporation headquartered in Salisbury, Maryland.  During the Class Period, Perdue Farms, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56, and therefore, denies the same.

57.     Perdue Foods LLC is a privately held Maryland limited liability company headquartered in Salisbury, Maryland.  Perdue Foods LLC is a subsidiary of Perdue Farms, Inc. During the Class Period, Perdue Foods LLC and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and therefore, denies the same.

58.     Defendants Perdue Farms, Inc. and Perdue Foods LLC are collectively referred to as "Perdue."

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58, and therefore, denies the same.

59.     Tyson Foods, Inc. is a publicly traded Delaware corporation headquartered in Springdale, Arkansas.  It wholly owns and controls two subsidiaries, Tyson Prepared Foods, Inc. and Tyson Fresh Meats Inc. that slaughter and sell turkey products.  During the Class Period, Tyson Foods, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59, and therefore, denies the same.

60.     Tyson Fresh Meats Inc. is a Delaware corporation that operates as a subsidiary of Tyson Foods, Inc.  During the Class Period, Tyson Fresh Meats and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60, and therefore, denies the same.

61.     Tyson Prepared Foods, Inc. is a Delaware corporation that operates as a subsidiary of Tyson Foods, Inc.  During the Class Period, Tyson Prepared Foods, Inc. and/or its predecessors,

wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61, and therefore, denies the same.

62.     The Hillshire Brands Company (Hillshire Brands) is a Maryland corporation headquartered in Chicago, Illinois. Hillshire Brands operates as a subsidiary of Tyson Foods that sells turkey products. During the Class Period, Hillshire Brands and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62, and therefore, denies the same.

63.     Defendants Tyson Foods, Inc., Tyson Fresh Meats, Inc., Tyson Prepared Foods, Inc., and Hillshire Brands are collectively referred to as "Tyson."

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63, and therefore, denies the same.

**C.     Co-Conspirators**

64.     Co-Conspirator Circle S-Ranch, Inc. is a North Carolina corporation engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Circle S-Ranch and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**: Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 64, and therefore, denies the same.

65.     Co-Conspirator Prestage Farms is a North Carolina corporation engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Prestage Farms and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:   Cooper Farms denies the conspiracy and/or conspiracies alleged in the

Complaint. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth

of the remaining allegations in Paragraph 65, and therefore, denies the same.

66.    Co-Conspirator West Liberty Foods LLC (West Liberty) is an Iowa corporation engaged in the production of meat and food products, and the marketing of these products.  During the Class Period, West Liberty and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER**:   Cooper Farms denies the conspiracy and/or conspiracies alleged in the

Complaint. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth

of the remaining allegations in Paragraph 66, and therefore, denies the same.

## IV.    FACTUAL ALLEGATIONS

67.    Starting no later than January 1, 2010, and continuing at least until January 1, 2017, defendants entered into an agreement to exchange information regarding their production and sale of turkey through Agri Stats.  The information exchange through Agri Stats provided defendants an opportunity to obtain and monitor critical and competitively sensitive business information regarding each other's production and sales.  The information exchange through Agri Stats had anticompetitive effects, as prices for turkey soared and defendants engaged in an industry-wide series of production cuts during the period.  Notably, the information exchanged through Agri Stats was not available to purchasers of turkey, ensuring that the information exchange would not have procompetitive effects.

**ANSWER**:   Cooper Farms denies the conspiracy and/or conspiracies alleged in the

Complaint.  Cooper Farms denies the allegations in Paragraph 67.

**A.    Agri Stats' information exchange services began in the broiler industry, where it has been used to facilitate widespread collusion.**

68.    Agri Stats has played a central role in other industries, including collusion in the broiler industry.[6] As alleged in the *In re Broiler Chicken Antitrust Litigation,* No. 16-cv-08637 (N.D. Ill.) litigation, the broiler producers used Agri Stats as a part of their conspiracy to restrain production and inflate prices.

**ANSWER**:   Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 68 regarding the *In re Broiler Chicken Antitrust*

_____

[6] Broilers are chickens raised to be slaughtered before the age of 13 weeks.

*Litigation* or "other industries," and therefore denies the same. Cooper Farms denies the remaining allegations in Paragraph 68.

69.     In the broiler industry, Agri Stats collected and disseminated to the other members of the conspiracy disaggregated financial information (such as monthly operating profit, sales and cost per live pound), production volumes, capacity, slaughter information, inventory levels, sales data for finished product form and type, amongst other pieces of competitively sensitive business information. The Agri Stats reports contain line-by-line entries for plants, lines, and yields of various broiler facilities. Agri Stats relied upon (and the coconspirators agreed to) a detailed audit process to verify the accuracy of data from each broiler producer's complex, sometimes directly contacting the broiler defendants to verify the data. Agri Stats also provided detailed price reports to the broiler industry through its subsidiary, Express Markets, Inc. or EMI. Agri Stats collected data from the broiler producers on a weekly basis and provided its reports to broiler producers on a weekly and monthly basis.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 regarding the "broiler industry," Agri Stats, Express Markets, Inc. ("EMI"), and/or the Agri Stats and/or EMI reports in the "broiler industry" referenced in Paragraph 69, and therefore denies the same. Cooper Farms denies any implication that information relating to broiler chickens has any relevance to this case and/or that any Agri Stats reports regarding broiler chickens has any relevance to the Agri Stats reports at issue in this case. Cooper Farms denies the remaining allegations in Paragraph 69.

70.     The detail of these reports ensured that competitors could quickly decode the information of their purported competitors. The *Broiler* complaints allege it was common knowledge among producers that the detail of the Agri Stats reports allowed any reasonably informed producer to discern the identity of the competitors' individual broiler complexes. The broiler reports, in part, contained so few producers participating that the identities were obvious. Other reports contained such detailed data that it could be matched with the publicly stated aggregate data for larger broiler defendants such as Tyson. The complaints allege that Agri Stats purposefully circulated this information to top executives to facilitate agreement on supply, constraints, and price.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 regarding the *In re Broiler Chicken Antitrust Litigation,* the "broiler" industry, and/or the Agri Stats and/or EMI reports referenced in Paragraph 70, and therefore denies the same. Cooper Farms denies any implication that information relating

to broiler chickens has any relevance to this case and/or that any Agri Stats reports regarding broiler chickens has any relevance to the Agri Stats reports at issue in this case. Cooper Farms denies the remaining allegations in Paragraph 70.

71.     In the broiler industry, it is also alleged that Agri Stats – known to its coconspirators to be a willing and informed conduit for illicit information exchanges – used public and semi-public forums to convey messages to industry participants that furthered the purposes of the conspiracy by reassuring conspirators that production cuts would continue, and by inducing them to continue to act in concert to ensure they did. Agri Stats' own statements in the broiler industry facilitated the implementation of the agreement to restrict supply – where Agri Stats would transmit the intentions of the broiler producers to restrict supply.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 regarding the *In re Broiler Chicken Antitrust Litigation,* the "broiler" industry, and/or the Agri Stats and/or EMI reports referenced in Paragraph 71, and therefore denies the same. Cooper Farms denies any implication that information relating to broiler chickens has any relevance to this case and/or that any Agri Stats reports regarding broiler chickens has any relevance to the Agri Stats reports at issue in this case. Cooper Farms denies the remaining allegations in Paragraph 71.

72.     In a February 15, 2017 Bloomberg article relating to Agri Stats' roles in the broiler industry, it was reported:

> "Peter Carstensen, a law professor at the University of Wisconsin and former Justice Department antitrust lawyer who has studied Agri Stats while researching the modern poultry industry, casts the level of plant-by-plant detail in the company's reports as "unusual." He explains that information-sharing services in other industries tend to deal in averaged-out aggregated data—for example, insurance rates in a given state. Such services run afoul of antitrust law, he says, when they offer projections or provide data so detailed that no competitor would reasonably share it with another. Getting detailed information is a particularly useful form of collusion, Carstensen says, because it allows co-conspirators to make sure they're all following through on the agreement. "This is one of the ways you do it. You make sure that your co-conspirators have the kind of information that gives them confidence—so they can trust you, that you're not cheating on them," he says. "*That is what creates stability for a cartel*."

**ANSWER**:  To the extent the allegations in Paragraph 72 characterize or describe a document, such document speaks for itself and Cooper Farms denies any inconsistent characterization or description of such document.  Cooper Farms denies any implication that information relating to broiler chickens has any relevance to this case and/or that any Agri Stats reports regarding broiler chickens has any relevance to the Agri Stats reports at issue in this case. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 72, and therefore, denies the same.

73.    The district court noted, in denying the motions to dismiss in the *In re Broiler Chicken Antitrust Litigation* that given the nature of the Agri Stats reports, the defendants are in fact sharing future anticipated production information with one another, which suggests high antitrust concerns.[7]

**ANSWER**:  Cooper Farms states that the Memorandum Opinion and Order in the *In re Broiler Chicken Antitrust Litigation* speaks for itself, and denies any inconsistent characterization or description of such document, and denies its applicability to this case and/or to the Plaintiffs' allegations against Cooper Farms in this case.  Cooper Farms denies any implication that information relating to broiler chickens has any relevance to this case and/or that any Agri Stats reports regarding broiler chickens has any relevance to the Agri Stats reports at issue in this case. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 73, and therefore denies the same.

**B.    Defendants entered into an agreement to exchange information through Agri Stats regarding their production and sales of turkey.**

74.    Each member of the conspiracy, including the integrator defendants and co-conspirators, were all Agri Stats subscribers.  Agri Stats publicly stated that 95% of the turkey market used Agri Stats reports.

---

[7] Memorandum Opinion and Order at 11, *In re Broiler Chicken Antitrust Litigation,* No. 16-cv-08637 (N.D. Ill. Nov. 20, 2017), ECF No. 541.

**ANSWER**:   Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint.  Cooper Farms admits it previously subscribed to certain Agri Stats reports, and Cooper Farms denies the remaining allegations in Paragraph 74 insofar as they relate to Cooper Farms. To the extent the allegations in Paragraph 74 relate to other defendants and/or third parties,  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 74, and therefore, denies the same.

75.     Agri Stats collects participant financial and production data electronically each month.  Internal auditors convert the data, prepare it for comparison and perform the monthly audits.  Each company's financial data is reconciled to its general ledger to help ensure actual costs are reported.  Raw numbers are used in Agri Stats' standardized calculations, so all company numbers are calculated the same way.  CW2 stated that he was involved during the conspiracy period in the monthly transmission of cost data from Cooper Farms to Agri Stats.

**ANSWER**:  Cooper Farms states that, to the extent it provided information to Agri Stats and/or utilized Agri Stats reports, Cooper Farms did so for pro-competitive and lawful purposes. Cooper Farms states that it submitted data to Agri Stats for pro-competitive and lawful purposes, and Cooper Farms denies any allegations to the contrary and any statement(s) to the contrary by any person, including, but not limited to, the unidentified individual designated in the Complaint as "Confidential Witness 2" or as "CW2."  Cooper Farms further denies that any alleged statement of Confidential Witness 2/CW2 alleged in the Complaint indicates in any way that Cooper Farms engaged in any violation of any law and/or in any anti-competitive conduct.  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 regarding what Confidential Witness 2/CW2 allegedly "stated," and therefore, denies the same. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 about entities other than Cooper Farms.  Cooper Farms denies any remaining allegations in Paragraph 75.

76.    Participants in the scheme received monthly detailed reports and graphs that allow them to compare their performance, sales prices, and costs to other participants. Agri Stats issues separate reports in the turkey industry to the integrator defendants regarding live operations, processing, further reprocessing, feed costs, and sales.

**ANSWER**:    Cooper Farms denies the conspiracy and/or conspiracies alleged in the

Complaint. Cooper Farms admits that it previously received Agri Stats reports, states that Agri

Stats reports speak for themselves, and denies any inconsistent characterization or description of

such Agri Stats reports. Cooper Farms denies the remaining allegations in Paragraph 76.

77.    Agri Stats provided the integrator defendants with an unparalleled ability to share critical and proprietary information concerning key business metrics, such as sales, production levels and short and long-term production capacity.

**ANSWER**:    Cooper Farms denies the allegations in Paragraph 77.

78.    Perhaps most egregiously, Agri Stats provided monthly sales reports to defendants. One of Agri Stats' subsidiaries is Express Markets, Inc. (aka, "EMI"). On EMI's publicly available webpage Amanda Martin, an Express Markets economist states that Agri Stats "audited turkey and broiler sales and product mix data, and worked with processing and further reprocessing reports.'" On information and belief, the Agri Stats turkey sales reports contained sales data that was less than six weeks old.

**ANSWER**:    To the extent the allegations in Paragraph 78 characterize or describe sources

or documents, such sources or documents speak for themselves and Cooper Farms denies any

inconsistent characterization or description of such sources or documents, and denies that anything

regarding the sources or documents can be fairly characterized as "perhaps most egregiously," as

Plaintiffs allege. Cooper Farms admits that it previously received Agri Stats reports, states that

Agri Stats reports speak for themselves, and denies any inconsistent characterization or description

of such Agri Stats reports. Cooper Farms lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in Paragraph 78, and therefore, denies the same.

79. As detailed in the recently filed amended complaint in the *Pork Antitrust Litigation*, No. 18-cv-1776 (JRT/HB) (D. Minn. Nov. 06, 2019), ECF No. 392, Agri Stats allowed subscribers to its pork sales reports to compare their prices for individual products against the national average net price, and against the national top 25 percent average price. Notably, Agri Stats identified opportunities for the Pork Integrators to raise prices. For instance, for each product, Agri Stats specifically broke out the variance between the company's price and the national average price, as well as the economic impact of the variance. This allowed coconspirators to see how much more they could charge if they charged either the national average price or the average of the top 25% national average price.

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 regarding the amended complaint in the *In re Pork Antitrust Litigation,* and therefore denies the same. Cooper Farms denies any implication that information relating to pork has any relevance to this case and/or that any Agri Stats reports regarding pork have any relevance to the Agri Stats reports at issue in this case. Cooper Farms denies the remaining allegations in Paragraph 79.

80. Agri Stats provided similar services to the integrator defendants regarding their production and sale of turkey. According to CW1, Agri Stats ranked the integrator defendants in their reports based on the returns (i.e. prices) that the integrator defendants received.

**ANSWER**: Denies the allegations in Paragraph 80 insofar as they relate to Cooper Farms and states it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 80, and therefore, denies the same.

81. As detailed in the *Pork* and *Broilers* complaints, for each of its reports, Agri Stats identified the list of participants who were contributing data or information to the reports. CW1 confirmed that the reports Agri Stats prepared for the integrator defendants identified the participants that provided data for each report, which allowed defendants to understand which of their competitors were participating for each report. CW2 confirmed that the Agri Stats reports identified each of the turkey production facilities that were participating in the reports.

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 regarding the complaints in the *In re Pork Antitrust Litigation* and in the *In re Broiler Chicken Antitrust Litigation,* and therefore denies the same. Cooper Farms denies that any alleged statement of Confidential Witness 2/CW2 alleged in the Complaint indicates in any way that Cooper Farms engaged in any violation of any law and/or in

any anti-competitive conduct. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 regarding what Confidential Witness 2/CW2 allegedly "confirmed," and therefore, denies the same. Cooper Farms denies that the Agri Stats reports it received identified each of the turkey production facilities that were participating in the reports inasmuch as the information in the Agri Stats reports received by Cooper Farms was anonymized. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 81, and therefore, denies the same.

82. One presentation from Agri Stats shows the level of detail provided to competitors regarding profits in the swine market. On information and belief, similar levels of detail were provided to defendants who received Agri Stats reports in the turkey market.

#### Top 25% in Profit - Variances to Average Company - 2009-2007

| | Mkt Sales | Mkt %Culls | Fin Cost | Mkt Wt | Mkt Age | Nur/Fin Mort % | FIN FC Cals | FIN Feed $/ton | Wean Pig $ | # Born Live | Pre-Wn Mort % | Pigs/ MSY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2009** | | | | | | | | | | | | |
| VAR to AVG | 2.93 | -0.85 | -2.17 | 3.98 | -2.46 | -2.05 | -35.50 | -9.39 | -0.16 | -0.20 | -1.07 | 0.23 |
| avg book | 41.19 | 3.23 | 50.12 | 263 | 187.82 | 9.99 | 3862 | 215.18 | 28.68 | 11.60 | 14.69 | 22.05 |
| % var to Avg | 92.89 | 126.31 | 104.33 | 98.49 | 101.31 | 120.52 | 100.92 | 104.36 | 100.57 | 101.69 | 107.27 | 98.93 |
| variance | 12 | | | 11 | 7 | | 8 | | 9 | 6 | | 10 |
| ranking | | 1 | 5 | | | 2 | | 4 | | | 3 | |

35,001,089 Pigs Finished

| | Mkt Sales | Mkt %Culls | Fin Cost | Mkt Wt | Mkt Age | Nur/Fin Mort % | FIN FC Cals | FIN Feed $/ton | Wean Pig $ | # Born Live | Pre-Wn Mort % | Pigs/ MSY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2008** | | | | | | | | | | | | |
| VAR to AVG | 1.89 | -1.08 | -3.72 | 8.38 | -6.75 | -2.45 | -20.56 | -23.41 | 0.36 | 0.17 | -2.34 | 1.50 |
| avg book | 47.44 | 3.09 | 55.00 | 261 | 189 | 11.18 | 3908 | 249.69 | 32.52 | 11.33 | 14.24 | 22.72 |
| % var to Avg | 96.01 | 134.94 | 106.76 | 96.79 | 103.57 | 121.92 | 100.53 | 109.38 | 98.88 | 98.46 | 116.46 | 93.42 |
| variance | 11 | | | 10 | 6 | | 7 | | 8 | 9 | | 12 |
| ranking | | 1 | 5 | | | 2 | | 4 | | | 3 | |

30,785,319 Pigs finished

| | Mkt Sales | Mkt %Culls | Fin Cost | Mkt Wt | Mkt Age | Nur/Fin Mort % | FIN FC Cals | FIN Feed $/ton | Wean Pig $ | # Born Live | Pre-Wn Mort % | Pigs/ MSY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2007** | | | | | | | | | | | | |
| VAR to AVG | 1.04 | -0.51 | -1.93 | 5.14 | -2.29 | -2.30 | -75.57 | -0.21 | -1.00 | 0.09 | -0.69 | 1.16 |
| avg book | 46.69 | 2.36 | 44.75 | 260 | 187 | 10.98 | 3913 | 182.98 | 28.16 | 11.12 | 14.05 | 22.40 |
| % var to Avg | 97.78 | 121.43 | 104.31 | 98.02 | 101.22 | 120.96 | 101.93 | 100.11 | 103.56 | 99.21 | 104.90 | 94.82 |
| variance | 11 | | | 10 | 7 | | 6 | 8 | | 9 | | 12 |
| ranking | | 1 | 4 | | | 2 | | | 5 | | 3 | |

22,306,500 Pigs finished

**ANSWER**: Cooper Farms states that any Agri Stats reports received by Cooper Farms speak for themselves, and denies any inconsistent characterization or description of such reports.

Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 82, and therefore, denies the same.

83.     The purpose of these reports was not to provide better prices to consumers or to lower the costs of production.  Instead, the clear purpose was to improve the profitability of the co-conspirators.  The particular Agri Stats report referenced above shows the ranking of each company in profitability and compares the company to its competitors by providing the variance from the average.  The Agri Stats report actually circulated to competitors contained even further detail.  This underlines that the purpose of these reports was not to allow consumers to save more money through lower prices and more efficient production – in fact, the opposite was true, the purpose was the profitability of the defendant companies and the impact was higher sales prices for consumers.

**ANSWER**:  Cooper Farms states it received Agri Stats reports for pro-competitive and

lawful purposes.  Cooper Farms denies the remaining allegations in Paragraph 83.

84.     Much of the information shared by Agri Stats and the co-conspirators was unnecessary to achieve any benefits for consumers.  Exchanging individual company data (particularly current data on prices and costs) is not required to achieve major efficiencies.

**ANSWER**:  Cooper Farms states it received Agri Stats reports for pro-competitive and

lawful purposes.  Cooper Farms denies the conspiracy and/or conspiracies alleged in the

Complaint. Cooper Farms denies the remaining allegations in Paragraph 84.

85.     Agri Stats knew that it played a central role in facilitating this anticompetitive information exchange.  One presentation from Agri Stats regarding the swine industry spoke directly on this point, pointing out to industry participants that they could not undertake such a detailed cost analysis between competitors without Agri Stats auditing and standardizing the data:

## *Data Integrity*

- Benchmarking is very important but it is hard to make sure data is comparable across companies.
- Even if all companies include the same costs the costs can be calculated differently.
- Lots of variation in cost accounting in industry.
- Companies can select key metrics, common calculations and implement an effective benchmarking program.



**ANSWER**:  To the extent the allegations in Paragraph 85 characterize or describe sources or documents, such sources or documents speak for themselves and Cooper Farms denies any inconsistent characterization or description of such sources or documents.  Cooper Farms denies the existence of an "anticompetitive information exchange." Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 85, and therefore, denies the same.

86.    Agri Stats stated that to ensure data contained in the reports was accurate, the participants had to "agree on calculation and data collection procedures," they must "[d]etermine ***tolerance and outlier status and enforce***," they must "[h]ave an administrator to compile the data and enforce procedures," and most importantly, "***[e]ach participant has to commit***."

**ANSWER**:  To the extent the allegations in Paragraph 86 characterize or describe sources or documents, such sources or documents speak for themselves and Cooper Farms denies any inconsistent characterization or description of such sources or documents.  Cooper Farms lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

Paragraph 86, and therefore, denies the same.

87.     According to CW1, Agri Stats gave live presentations to defendant integrators to explain to them how to use the reports that Agri Stats prepared on the turkey industry and how to compare themselves against their competitors: during the presentations, Agri Stats said, "if you are number one priced out of 13, that meant the return was so much versus the other companies."

**ANSWER**:  Cooper Farms states it received Agri Stats reports for pro-competitive and

lawful purposes. Cooper Farms lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 87, and therefore, denies the same.

88.     It is the standard policy of Agri Stats that it will only grant access to Agri Stats reports to similarly situated companies that themselves share data with Agri Stats.  This ensures that data from Agri Stats is only available to one side of the market – the integrator defendants. The other side of the market, purchasers of turkey, is not allowed to access the Agri Stats data, and thus cannot use Agri Stats data to negotiate lower prices.  Thus, Agri Stats reports function as a one-way ratchet that can be used for anticompetitive purposes by defendants but not for procompetitive purposes by purchasers.

**ANSWER**:  Cooper Farms states it received Agri Stats reports for pro-competitive and

lawful purposes. Cooper Farms lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 88 with regard to any "standard policy" of Agri Stats, and

therefore, denies the same.  Cooper Farms denies the remaining allegations in Paragraph 88.

**C.     Defendants possess market power in the market for turkey and turkey is the type of product for which information exchange is particularly likely to have anticompetitive effects.**

**1.     Defendants have market power in the market for turkey.**

89.     One tool that courts use to assess the competitive effects of concerted action is defining a relevant market – the zone of competition among the agreeing rivals in which the agreement may affect competition.  A relevant market contains both a product dimension (the "product market") and a geographic dimension (the "geographic market").  The case concerns the sale of turkey for meat consumption in the United States.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 89 are legal conclusions to

which no responsive pleading is required.  To the extent a responsive pleading is deemed to be

required, Cooper Farms denies any inconsistent characterization or description of applicable law

or fact in Paragraph 89. Cooper Farms states the allegations in Paragraph 89 consist of Plaintiffs'

characterization of their claims and are allegations subject to proof by expert testimony, which

allegations Cooper Farms denies. Cooper Farms denies the remaining allegations in Paragraph 89.

90.     There is a single market for turkey for meat consumption. Prices for turkey sold in
the United States are quoted generally in disassembled parts, with adjustments for transportation,
product form (i.e., degree of processing or added value), and packaging at the time of sale.

**ANSWER**: Cooper Farms denies that it processed for consumption and sold whole turkeys

during the Class Period defined by Plaintiffs in the Complaint, and denies that "there is a single

market for turkey for meat consumption." Cooper Farms denies the remaining allegations in

Paragraph 90.

91.     The relevant geographic market is the United States.

**ANSWER**: Cooper Farms states the allegations in Paragraph 91 are legal conclusions to

which no responsive pleading is required. To the extent a responsive pleading is deemed to be

required, Cooper Farms denies any inconsistent characterization or description of applicable law

or fact in Paragraph 91. Cooper Farms states the allegations in Paragraph 91 consist of Plaintiffs'

characterization of their claims and are allegations subject to proof by expert testimony, which

allegations Cooper Farms denies. Cooper Farms denies the remaining allegations in Paragraph 91.

### 2.     There are high barriers to entry in the market for turkey for meat consumption.

92.     The existence of high barriers to entry is one factor which makes markets
susceptible to collusion. A collusive arrangement that raises product prices above competitive
levels would, under basic economic principles, attract new entrants seeking to benefit from the
supracompetitive pricing. Where, however, there are significant barriers to entry, new entrants are
less likely. Thus, barriers to entry help facilitate the formation and maintenance of a cartel. High
barriers to entry in the turkey processing market exist, precluding other entrants or would-be
competitors from entering the market for turkeys raised for consumption

**ANSWER**: Cooper Farms states the allegations in Paragraph 92 are legal conclusions to

which no responsive pleading is required. To the extent a responsive pleading is deemed to be

required, Cooper Farms denies any inconsistent characterization or description of applicable law

or fact in Paragraph 92. Cooper Farms states the allegations in Paragraph 92 consist of Plaintiffs'

characterization of their claims and are allegations subject to proof by expert testimony, which

allegations Cooper Farms denies.  Cooper Farms denies the remaining allegations in Paragraph 92.

93.     During the Class Period and continuing today, substantial barriers impede entry into the turkey market.  A new entrant into the market would face costly and lengthy start-up costs, including multi-million dollar costs associated with research and development, equipment, energy, transportation.  Distribution, infrastructure (aka "rolling stock"), skilled labor, experienced management, a skilled contract-farmer base in a specific geographic area, longstanding customer relationships, safety and quality assurance, and regulatory approvals relating to environmental, worker safety, and food safety issues.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 93, and therefore denies the same.

94.     The price of construction of a new integrated turkey processing complex is relatively high.  For example, the cost for a current market participant, Virginia Poultry Growers Cooperative, to construct a new turkey processing in 2015 was $62 million.[8]

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 94, and therefore denies the same.

95.     The turkey market has been subject to steadily increasing consolidation over the last several decades.  In the 1970s, the turkey market was defined by competition among dozens of companies that worked with independent farmers.[9] But now, just four corporations - Cargill, Hormel, Butterball, and Farbest - produce more than half of the turkey in the United States.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 95, and therefore denies the same.

---

[8] *Virginia Poultry Growers Cooperative Plans Turkey Processing Facility in Hinton*, Virginia, Area Development (July 22, 2015), *available at* https://www.areadevelopment.com/newsItems/7-22-2015/virginia-poultry-growers-cooperative-processing-facility-hinton-virginia565489.shtml.
[9] Christopher Leonard, *That Turkey on Your Plate Could Use Some More Industry Competition*, The Washington Post (Nov. 22, 2013), *available at* https://www.washingtonpost.com/opinions/that-turkey-on-your-plate-could-use-some-more-industry-competition/2013/11/22/045fc470-5177-11e3-a7f0-b790929232e1_story.html.

96.     The turkey market also has high levels of vertical integration that constitute a barrier to entry.  The National Turkey Federation states that "turkey companies are vertically integrated, meaning they control or contract for all phases of production."[10]

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96, and therefore denies the same.

97.     For example, Butterball has over 175 farms that they own, as well as contracts with numerous independent farmers.  Jennie-O owns over 100 commercial growing farms.  Cargill owns around 700 farms.  Farbest has more than 200 contract growers.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97, and therefore, denies the same.

**3.      The defendants have market power in the market for turkey for meat consumption.**

98.     The integrator defendants possess market power in the market for turkey for consumption.  Defendants and their co-conspirators controlled an average of 77% of the market from 2010-2018.

---

[10] *Industry Structure*, National Turkey Federation, https://www.eatturkey.org/industry-structure/ (last visited Dec. 16, 2019).





**ANSWER**: Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the chart incorporated into Paragraph 98 and/or the information purportedly depicted therein, and therefore denies the same. Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states that, to the best of its knowledge, Cooper Farms comprises approximately 3% of the turkey processing market. Cooper Farms denies the remaining allegations in Paragraph 98 insofar as they relate to Cooper Farms. To the extent the allegations in Paragraph 98 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 98, and therefore, denies the same.

**D.     The market for turkey is the type of market where the information exchanges orchestrated by Agri Stats are likely to harm competition.**

99.     Competition is likely to be harmed when competitors with market power in concentrated markets, such as the market at issue, directly exchange strategic information about current and forward-looking plans for prices and supply.  The strategic information exchanged between the defendants was competitively sensitive and a material factor in negotiations.  Price, capacity, supply and costs are crucial aspects of competition.  When defendants that are competing for the same customers exchange their strategic plans, comfort replaces uncertainty and reduces incentives to lower price or compete on other aspects of sales of turkey.

**ANSWER**:   Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint.  Cooper Farms denies the remaining allegations in Paragraph 99.

100.     The information exchange took place in private settings and involved the exchange of confidential, non-public information.

**ANSWER**:   Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint.  Cooper Farms denies the remaining allegations in Paragraph 100.

101.     The market for turkey is characterized by numerous attributes that mean the type of information exchange facilitated by Agri Stats are particularly likely to have anticompetitive effects.  In particular, the market for turkey features relatively few sellers, a fungible product, price-based competition, inelastic demand, and a trend toward price uniformity.

**ANSWER**:   Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint.  Cooper Farms states that, to the extent it provided information to Agri Stats and/or utilized Agri Stats reports, Cooper Farms did so for pro-competitive and lawful purposes.  Cooper Farms denies the remaining allegations in Paragraph 101.

**1.     The turkey market features few sellers.**

102.     The turkey market is concentrated, with relatively few sellers.  The defendants and co-conspirators control approximately 80 percent of turkey production and processing.  The presence of few companies supports the inference that a conspiracy to exchange information had the intended effect of restraining competition.

**ANSWER**:   Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint.  Cooper Farms denies the remaining allegations in Paragraph 102.

2.      **Turkey is a fungible market.**

103.    One of the distinct characteristics of the turkey industry is its fungibility, also known as the ability to be freely exchangeable or replaceable in whole or in part.  Common sense indicates at Thanksgiving that a consumer can substitute a whole turkey produced by Butterball with a whole turkey produced by Cargill.

**ANSWER**:  Cooper Farms denies that it processed for consumption and sold whole and/or, as referred to by Plaintiffs in Paragraph 103, "Thanksgiving" turkeys during the Class Period defined by Plaintiffs in the Complaint, including, but not limited to, to any "consumer."  Cooper Farms denies the remaining allegations in Paragraph 103 insofar as they relate to Cooper Farms and, to the extent the allegations in Paragraph 103 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 103, and therefore, denies the same.

104.    Indeed, the Agri Stats reports themselves show that turkey is fungible because they aggregate data across defendants for particular types of turkey products and allow defendants to compare detailed information on prices for the same fungible product.  CW1 confirmed that the Agri Stats reports were organized by specific item of turkey product.

**ANSWER**:  Cooper Farms states that, to the extent it utilized Agri Stats reports, Cooper Farms did so for pro-competitive and lawful purposes.  Cooper Farms denies the remaining allegations in Paragraph 104 insofar as they relate to Cooper Farms.  To the extent the allegations in Paragraph 104 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 104, and therefore, denies the same.

3.      **The turkey market features price-based competition.**

105.    Turkey is a commodity market that faces price-based competition.

**ANSWER**:  Cooper Farms denies that turkey is a commodity market or that there is a single market for turkey.  Cooper Farms admits that price is one factor on which it competes in the sale of cooked and/or raw turkey breast meat, turkey parts, and turkey burgers in various states in

44

the United States, and states it has at all times engaged in lawful competition. Cooper Farms denies

the remaining allegations in Paragraph 105.

### 4.  Demand for turkey is relatively inelastic.

106.   Price elasticity of demand (PED) is a measure used to quantify the degree to which
quantity demand for a good or service changes with respect to price.[11] A PED value between 0 and
-1 indicates there is inelastic demand for the good or service – i.e., a 1 percent increase in price
induces a less than 1 percent decrease in quantity demanded. The USDA has estimated that the
average PED estimate for the turkey market is -0.58 – meaning the demand for turkey is inelastic.
Indeed, most American consumers eat turkey at Thanksgiving, not pork or chicken, illustrating
that there is no substitute for one of the key demand drivers of turkey.

**ANSWER**: Cooper Farms denies that it processed for consumption and sold whole and/or,

as referred to by Plaintiffs in Paragraph 106, "Thanksgiving" turkeys during the Class Period

defined by Plaintiffs in the Complaint, including, but not limited to, to any "consumer."  Cooper

Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the

reference to the "USDA average PED estimate for the turkey market" referenced in Paragraph 106,

and therefore denies the same.  Cooper Farms states the allegations in Paragraph 106 consist of

Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony

and/or are legal conclusions, which allegations Cooper Farms denies.  Cooper lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 106,

and therefore, denies the same.

### 5.  The turkey market features a trend towards price uniformity.

107.   Collusion becomes easier for manufacturers of a homogenous product when prices
are the only way in which products can be differentiated from one another.  For example, whole
turkey products are produced on a commercial scale and sold in supermarkets.  Whole turkeys are
virtually indistinguishable, with similar nutritional values, branding and packaging.

---

[11] *See, e.g.*, Jeffrey M. Perloff, Microeconomics with Calculus, 28-31 (2d Ed.); Patrick L.
Anderson, et al., *Price Elasticity of Demand* (Nov. 13, 1997),
https://scholar.harvard.edu/files/alada/files/price_elasticity_of_demand_handout.pdf; Gadi
Fibich, Arieh Gavious & Oded Lowengart, *The Dynamics of Price Elasticity of Demand in the
Presence of Reference Price Effects*, 33 J. Academy Mktg. Science 66-78 (2005), *available at*
http://www.math.tau.ac.il/~fibich/Manuscripts/elasticity_JAMS.pdf.

**ANSWER**: Cooper Farms denies that it processed for consumption and sold whole turkeys during the Class Period defined by Plaintiffs in the Complaint, including, but not limited to, to and/or in "supermarkets." Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint, and denies that any "collusion" involving Cooper Farms occurred. Cooper Farms denies the remaining allegations in Paragraph 107.

**E.      Industry-wide production cuts during the Conspiracy Period were facilitated through the information exchange conducted through Agri Stats.**

108.      As demonstrated in the following chart, the turkey integrators acted in a concerted way to decrease turkey supply in 2009, 2013, 2014, and 2015. Overall, industry supply decreased significantly from 2009 to 2015, before rebounding in 2016. The information exchange through Agri Stats facilitated the ability of defendants to monitor total industry levels of supply.



Figure 1: U.S. Turkey Total Heads Slaughtered

**ANSWER**:   Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the "Figure 1" incorporated into Paragraph 108 and/or the information purportedly depicted therein, and therefore denies the same. Cooper Farms denies the

conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states that, to the extent

it provided information to Agri Stats and/or utilized Agri Stats reports, Cooper Farms did so for

pro-competitive and lawful purposes. Cooper Farms denies that it acted, alone and/or in concert

with any other defendant and/or any other third party, to "decrease turkey supply in 2009, 2013,

2014, and 2015," and states Cooper Farms increased the turkey it processed and/or sold, by net

head and by net weight, during the Class Period defined by Plaintiffs in the Complaint. Cooper

Farms denies that it processed for consumption and sold whole turkeys during the Class Period

defined by Plaintiffs in the Complaint. Cooper Farms processed and/or sold cooked and/or raw

turkey breast meat, turkey parts, and turkey burgers during the Class Period defined by Plaintiffs

in the Complaint. Cooper Farms denies the remaining allegations in Paragraph 108 insofar as they

relate to Cooper Farms and, to the extent the allegations in Paragraph 108 relate to other defendants

and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as

to the truth of the remaining allegations in Paragraph 108, and therefore, denies the same.

**F.      Abnormal pricing during the Class Period demonstrates the anticompetitive effects
of the exchange of turkey information conducted through the Agri Stats sales reports.**

109.    Beginning in 2010, the turkey industry showed abnormal price movements, *i.e.*,
price increases for the average turkey whole price unexplained by increases in costs. All of these
pricing measurements show a significant break between pricing prior to 2010 and pricing after
2010, supporting the plausibility of anticompetitive effects on the turkey market from the
information exchange conducted through Agri Stats. Plaintiffs have measured the various
abnormal pricing movements in a number of ways, including: (i) the average turkey price, (ii) the
turkey integrators' margin during the Class Period;(iii) the variation between feed and turkey
prices before and during the Class Period; and (iv) a regression analysis that models the
relationship between turkey prices and feed prices.

**ANSWER**:  Cooper Farms denies the allegations in Paragraph 109.

**1.      The average turkey wholesale price experienced an unprecedented increase
beginning in 2009.**

110.    According to aggregate prices published by the USDA, the average wholesale price
per pound for turkey hens was between $0.55 and $0.85 every year from 2000 to 2009, before
steadily increasing to $1.15 by 2016. Following initiation of the *Broilers* litigation, the price of
turkey then quickly returned to the price at which it was prior to the conspiracy. The following

graph shows the unprecedented increase in turkey prices beginning in 2009, and staying elevated through the end of 2016.

**Figure 2: Average Turkey Wholesale Prices in Cents per lbs., 2000-2018**



Average Yearly Wholesale Turkey Prices: Hens

**ANSWER**: Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the "Figure 2" incorporated into Paragraph 110 and/or the information purportedly depicted therein, and therefore denies the same. Cooper Farms denies that it processed for consumption and sold whole turkeys during the Class Period defined by Plaintiffs in the Complaint. Cooper Farms processed and/or sold turkey cooked and/or raw breast meat, turkey parts, and turkey burgers during the Class Period defined by Plaintiffs in the Complaint. Cooper Farms denies the remaining allegations in Paragraph 110.

**2.    Beginning in 2009, defendants' revenues radically diverged from their costs.**

111.    Plaintiffs' experts examined the spread between turkey revenue and turkey-related costs (costs of goods sold + operating costs) for Jennie-O Turkey, the only one of the three largest turkey integrator defendants with public earnings, as a proxy for measuring the spread between a defendant's price of wholesale turkey and their turkey costs.[12] This measurement accounts for defendant-specific operating costs. This analysis confirms the beginning of abnormal pricing in

---

[12] Hormel does not make any data publicly available on Jennie-O's costs. Therefore, plaintiffs have assumed for the purposes of this analysis that Jennie-O's costs are the same proportion to Hormel's overall costs as Jennie-O's revenues are to Hormel's overall revenues.

2009, where there was a divergence in revenue and costs beginning at the start of the Class Period in 2009.

**ANSWER**:  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111, and therefore, denies the same.

112.    The following chart shows a break in revenues and costs around the start of the Class Period in 2010 for Hormel's Jennie-O turkey brand:

**Figure 3: Jennie-O's Revenues vs Costs, March 2001 to March 2018**



**ANSWER**:    Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the "Figure 3" incorporated into Paragraph 112 and/or the information purportedly depicted therein, and therefore denies the same.  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 112, and therefore, denies the same.

113.    The anticompetitive effect of defendants' information exchange is seen in the dramatic increase in Jennie-O Turkey's spread between revenue and costs after the start of the conspiracy period.

**Figure 4: Jennie-O Turkey's spread: Revenue minus Cost 2001-2018**



**ANSWER**:  Cooper Farms states the allegations in Paragraph 113 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the "Figure 4" incorporated into Paragraph 113 and/or the information purportedly depicted therein, and therefore denies the same.  Cooper Farms denies the allegations in Paragraph 113 insofar as they relate to Cooper Farms, including, but not limited to, the allegations that Cooper Farms was involved in an "information exchange" that had an "anticompetitive effect." To the extent the allegations in Paragraph 113 relate to other defendants and/or third parties,  Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 113, and therefore, denies the same.

114.    These analyses of the spread between costs and prices confirm one essential fact – that rising costs do not explain the increases in price seen during the Class Period.

**ANSWER**:  Cooper Farms denies the allegations in Paragraph 114.

3.    **During the conspiracy period, prices rose but production failed to rise to match demand, indicating an anticompetitive restraint on supply in the market for turkey facilitated by the information exchange through Agri Stats.**

115.    In a competitive market, production generally matches demand.  More demand will lead to more supply.  Conversely, a drop in production caused by falling demand should correspond to falling prices.  However, in the turkey market during the conspiracy period, production, measured through USDA data, remained artificially restrained even as demand, captured by higher per capita expenditures on turkey, rose significantly.  These observed price and output dynamics, shown in the below chart, are consistent with an anticompetitive effect on turkey output facilitated by the information exchange through Agri Stats.



**ANSWER**:    Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the chart incorporated into Paragraph 115 and/or the information purportedly depicted therein, and therefore denies the same.  Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint.  Cooper Farms states that Cooper Farms increased the turkey it processed and sold, by net head and by net weight, during the Class Period defined

by Plaintiffs in the Complaint. Cooper Farms denies that it processed for consumption and sold whole turkeys during the Class Period defined by Plaintiffs in the Complaint. Cooper Farms states that, to the extent it provided information to Agri Stats and/or utilized Agri Stats reports, Cooper Farms did so for pro-competitive and lawful purposes. Cooper Farms denies the remaining allegations in Paragraph 115 insofar as they relate to Cooper Farms. To the extent the allegations in Paragraph 115 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 115, and therefore, denies the same.

### 4. During the conspiracy period, prices of turkey radically diverged from the costs of underlying feed.

116. Feed is the primary driver of turkey costs, accounting for approximately 60-70% of the overall cost of raising turkeys for sale according to the New York Times.[13] Prior to the conspiracy period, there was a tight relationship between the price of feed and the price of turkey, as would be expected in a competitive commodity market that was pricing its product based on its primary input cost. However, during the conspiracy period, the relationship between the price of feed and the price of turkey diverged dramatically, as would be expected as an anticompetitive effect of the information exchange that allowed the integrator defendants to charge more than was justified by their input costs. The divergence is illustrated in the below chart:

---

[13] Paul Sullivan, *In the Labyrinth of Turkey Pricing, a Reason Under Every Giblet*, *supra* note **Error! Bookmark not defined.**



**ANSWER**: Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the chart incorporated into Paragraph 116 and/or the information purportedly depicted therein, and therefore denies the same. Cooper Farms denies that it processed for consumption and sold whole turkeys during the Class Period defined by Plaintiffs in the Complaint. Cooper Farms denies the remaining allegations in Paragraph 116 insofar as they relate to Cooper Farms. To the extent the allegations in Paragraph 116 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 116, and therefore, denies the same.

   5.   **A regression model demonstrates the anticompetitive effects on the price of turkey caused by the information exchange conducted through Agri Stats.**

   117.   To demonstrate the anticompetitive effects of defendants' information exchange on the market for turkey, plaintiffs' experts have done a regression model based on the relationship between the price of turkey hens and the price of turkey feed, which is the primary input cost for turkeys. The formula of the regression is the following: $(HenPrice) = \alpha + \beta(FeedPrice)t + \varepsilon t$. As shown below, the regression shows a significant elevation in the prices of turkey during the conspiracy period, showing the effects of the information exchange through Agri Stats:



**ANSWER**:   Cooper Farms lacks knowledge or information regarding the source, underlying data, and accuracy of the alleged "regression model" allegedly reflected in the chart incorporated into Paragraph 117 and/or the information purportedly depicted therein, and therefore denies the same.   Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint.  Cooper Farms denies that it processed for consumption and sold whole turkeys during the Class Period defined by Plaintiffs in the Complaint.   Cooper Farms denies the remaining allegations in Paragraph 117 insofar as they relate to Cooper Farms.  To the extent the allegations in Paragraph 117 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 117, and therefore, denies the same.

**G.  Defendants actively concealed the extent of their information exchange and plaintiffs did not and could not have discovered defendants' anticompetitive conduct.**

118.   Plaintiffs and the members of the Class had neither actual nor constructive knowledge of the facts constituting their claim for relief.  Plaintiffs and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until shortly before filing this complaint.  Defendants engaged in a secret information exchange that did not reveal facts that would put plaintiffs or the

Class on inquiry notice that there was an anticompetitive agreement to exchange information regarding the market for turkey. Throughout the Class Period, defendants effectively, affirmatively, and fraudulently concealed their anticompetitive agreement from plaintiffs and class members.

**ANSWER**: Cooper Farms denies the allegations in Paragraph 118.

119. In 2009, the President of Agri Stats, Bryan Snyder, commented on how secretive the true nature of Agri Stats was when he stated:

> Agri Stats has always been kind of a quiet company. ***There's not a whole lot of people that know a lot about us obviously due to confidentiality that we try to protect. We don't advertise. We don't talk about what we do. It's always kind of just in the background***, and really our specialty is working directly with companies about their opportunities and so forth.

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 119, and therefore, denies the same.

120. At the same 2009 presentation, when discussing "bottom line numbers" (a company's net earnings), Mr. Snyder declined to display those numbers publicly, stating "I'm not going to display the actual bottom line to the group here just because of the confidential[] nature of the information."

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120, and therefore, denies the same.

121. Not until recently was the extent of the information exchange conducted through Agri Stats widely known or reported. Only after the filing of a February 7, 2018 Second Consolidated and Amended Complaint by the End User Plaintiff Class in the *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.), was there a comprehensive presentation of the full scope of the confidential services that Agri Stats provides to its clients in the broiler industry.

**ANSWER**: Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 121 regarding the *In re Broiler Chicken Antitrust Litigation* and/or the February 7, 2018 Second Consolidated and Amended Complaint by the End User Plaintiff Class filed in the *In re Broiler Chicken Antitrust Litigation,* and therefore denies the same. Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper

Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 121, and therefore, denies the same.

122. The filing of that amended complaint collectively disclosed the likelihood that the turkey industry was using Agri Stats to share confidential industry information that could facilitate an anticompetitive conspiracy.

**ANSWER**: Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms denies the remaining allegations in Paragraph 122.

123. Defendants concealed the extent of their information exchange through Agri Stats. Indeed, to this day, it is not publicly known the number of companies that receive Agri Stats reports regarding turkey. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of defendants' turkey prices before these recent events.

**ANSWER**: Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states that, to the extent it provided information to Agri Stats and/or utilized Agri Stats reports, Cooper Farms did so for pro-competitive and lawful purposes. Cooper Farms denies the remaining allegations in Paragraph 123.

## H. Defendants had numerous opportunities to collude.

124. Defendant integrators are members of several turkey-related trade associations and other forums, which they used to facilitate their conspiratorial conduct. Turkey producers have numerous regular events through which they can communicate in person with one another. Regular and frequent attendance by defendants' CEOs and top-level executives at trade-association meetings is the norm rather than the exception.

**ANSWER**: Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states it is a member of several trade associations, that from time to time Cooper Farms employees have been scheduled to attend certain trade association meetings, and that Cooper Farms' participation in such trade association meetings was at all times for pro-competitive and lawful purposes. Cooper Farms denies the remaining allegations in Paragraph 124 insofar as they relate to Cooper Farms. To the extent the allegations in Paragraph 124 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient

to form a belief as to the truth of the remaining allegations in Paragraph 124, and therefore, denies the same.

125.    Nearly every defendant integrator's CEO has representatives on the board of directors or executive committee of these trade associations.

**ANSWER**:  Cooper Farms denies the allegations in Paragraph 125 insofar as they relate to Cooper Farms and, to the extent the allegations in Paragraph 125 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 125, and therefore, denies the same.

126.    The National Turkey Federation is a national advocate for turkey farmers and processors; members include growers, processors, hatchers, breeders, distributors, allied services, and state associations.  High-ranking executives of Butterball, Jennie-O Turkey Store (Hormel), Cargill, Tyson, Farbest, and Perdue currently serve as officers or on the executive committee; and nearly all of the defendants have membership in this trade association.  In addition to regular board and executive committee meetings, the federation holds an annual convention in February and an annual leadership conference in July where these executives gather and discuss turkey-related information.

**ANSWER**:  Cooper Farms admits it is a member of the National Turkey Federation ("NTF"), and that NTF holds regular board and executive committee meetings, an annual convention, and a leadership conference. Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 126, and therefore denies them.

127.    Upon information and belief, the top-level executives from defendants discuss topics with one another relating to pricing, production, and other non-public proprietary information outside of the National Turkey Federation's formal meetings. These regular, informal, and in-person opportunities to discuss pricing and production in the turkey industry gives CEOs and top-level executives comfort that their competitors remain committed to a plan to artificially restrict turkey production.

**ANSWER**:  Cooper Farms denies the allegations in Paragraph 127 insofar as they relate to Cooper Farms and, to the extent the allegations in Paragraph 127 relate to other defendants and/or third parties, Cooper Farms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 127, and therefore, denies the same.

128.    The United States Poultry & Egg Export Council (USAPEEC) has its home office in Stone Mountain, Georgia.  Defendants are all members of the council.  USAPEEC has a network of international offices and consultants in key export markets.  The mission of USAPEEC is to promote exports of U.S. poultry and eggs around the world.  The council has evolved into an advocate for the industry on trade-policy issues.  USAPEEC has about 200 member companies and organizations.  The council holds Board of Directors meetings quarterly and includes executives from all or nearly all defendants.

**ANSWER**:  Cooper Farms states it is a member of the United States Poultry & Egg Council

("USAPEEC"), and that Cooper Farms' participation in USAPEEC was at all times for pro-

competitive and lawful purposes.  Cooper Farms lacks knowledge or information sufficient to form

a belief as to the truth of the remaining allegations in Paragraph 128, and therefore, denies the

same.

129.    The U.S. Poultry & Egg Association (U.S. Poultry) describes itself as the world's largest and most active poultry organization.  U.S. Poultry's members include producers and processors of broilers, turkeys, ducks, eggs, and breeding stock, as well as allied companies.  Many of the defendants are members of U.S. Poultry.  U.S. Poultry holds regular Board of Directors meetings each quarter during January, March, June, and each fall.  Butterball, Cargill, Foster, Tyson, and Perdue have representation on the Board of Directors.

**ANSWER**:  Cooper Farms states it is a member of the U.S. Poultry & Egg Association

("U.S. Poultry"), and that Cooper Farms' participation in U.S. Poultry was at all times for pro-

competitive and lawful purposes.  Cooper Farms lacks knowledge or information sufficient to form

a belief as to the truth of the remaining allegations in Paragraph 129, and therefore, denies the

same.

130.    The North American Meat Institute (NAMI) represents companies that process 95% of red meat and 70% of turkey products in the United States and their suppliers throughout the country.  NAMI hosts the Meat Industry Summit in April each year.  Additionally, it hold regular Board of Director meetings.  Butterball, Cargill, Hormel, and Tyson have representation on the NAMI Board.

**ANSWER**:  Cooper Farms states it was a member of the North American Meat Institute

("NAMI") in 2009, and that Cooper Farms' participation in NAMI was at all times for pro-

competitive and lawful purposes.  Cooper Farms lacks knowledge or information sufficient to form

a belief as to the truth of the remaining allegations in Paragraph 130, and therefore, denies the same.

## V.    CLASS ACTION ALLEGATIONS

131.    Plaintiffs bring this action on behalf of themselves, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), seeking compensatory damages and injunctive relief pursuant to federal law on behalf of the members of the following class:

> All persons and entities who directly purchased turkey from Defendants or co-conspirators for personal use in the United States during the Class Period.  Specifically excluded from this Class are the Defendants and co-conspirators; the officers, directors or employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant or co- conspirator.  Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any co-conspirator identified in this action.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 131 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the allegations in Paragraph 131.

132.    <u>Class Identity</u>: The above-defined class is readily identifiable and is one for which records should exist.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 132 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the allegations in Paragraph 132.

133.    <u>Numerosity</u>: Plaintiffs do not know the exact number of class members because such information presently is in the exclusive control of defendants, retailers, resellers and other entities in the supply chain of turkey.  Plaintiffs believe that due to the nature of the trade and commerce involved, there are thousands of class members geographically dispersed throughout the United States, such that joinder of all class members is impracticable.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 133 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the allegations in Paragraph 133.

134.  Typicality: Plaintiffs' claims are typical of the claims of the members of the Class because plaintiffs purchased turkey directly from one or more of the defendants for personal use, and therefore plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the Class and the relief sought is common to the Class.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 134 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the allegations in Paragraph 134.

135.  Common Questions Predominate: There are questions of law and fact common to the Class, including, but not limited to:

> A.  Whether defendants and their co-conspirators engaged in an information exchange agreement that reduced or suppressed competition in the market for turkey;

> B.  The identity of the participants of the alleged agreement;

> C.  The duration of the agreement alleged herein and the acts performed by defendants and their co-conspirators in furtherance of the agreement;

> D.  Whether the conduct of defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of the plaintiffs and the other members of the Class;

> E.  The effect of defendants' alleged conspiracy on the prices of turkey sold in the United States during the Class Period; and

> F.  The appropriate class-wide measure of damages.

These and other questions of law or fact, which are common to the members of the Class, predominate over any questions affecting only individual members of the Class.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 135 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the allegations in Paragraph 135.

136.  Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class in that plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Class who directly purchased turkey from defendants and plaintiffs have retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent themselves and the Class.

**ANSWER**: Cooper Farms states the allegations in Paragraph 136 are legal conclusions to which no responsive pleading is required. To the extent a responsive pleading is deemed to be required, Cooper Farms denies the allegations in Paragraph 136.

137. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged members of the Class is impractical. Prosecution as a class action will eliminate the possibility of duplicative litigation. The relatively small damages suffered by individual members of the Class compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for members of the Class to seek redress for the violations of law herein alleged. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. Therefore, a class action presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

**ANSWER**: Cooper Farms states the allegations in Paragraph 137 are legal conclusions to which no responsive pleading is required. To the extent a responsive pleading is deemed to be required, Cooper Farms denies the allegations in Paragraph 137.

138. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

**ANSWER**: Cooper Farms states the allegations in Paragraph 138 are legal conclusions to which no responsive pleading is required. To the extent a responsive pleading is deemed to be required, Cooper Farms denies the allegations in Paragraph 138.

139. Plaintiffs bring the action on behalf of all persons similarly situated pursuant to Rule 23, on behalf of all persons and entities that directly purchased one or more turkey products that a defendant or co-conspirator produced during the respective class periods.

**ANSWER**: Cooper Farms states the allegations in Paragraph 139 are legal conclusions to which no responsive pleading is required. To the extent a responsive pleading is deemed to be required, Cooper Farms denies the allegations in Paragraph 139.

140. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 140 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the allegations in Paragraph 140.

## VI.    ANTITRUST INJURY

141.    Defendants' anticompetitive conduct had the following effects, among others:

A.    Price competition has been restrained or eliminated with respect to turkey;

B.    The prices of turkey have been fixed, raised, stabilized, or maintained at artificially inflated levels;

C.    Direct purchasers of turkey have been deprived of free and open competition; and

D.    Direct purchasers of turkey, including plaintiffs, paid artificially inflated prices.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 141 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 141 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 141.

142.    Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge paid by the direct purchasers.  Thus, the economic harm to plaintiffs and the class members can be quantified.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 142 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 142 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 142.

143.    The purpose of the conspiratorial conduct of defendants and their co-conspirators was to raise, fix, or maintain the price of turkey and, as a direct and foreseeable result, plaintiffs and the Class paid supra-competitive prices for turkey during the Class Period.

**<u>ANSWER</u>**:  Cooper Farms states the allegations in Paragraph 143 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 143 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 143.

144.    By reason of the alleged violations of the antitrust laws, plaintiffs and the Class have sustained injury to their businesses or property, having paid higher prices for turkey than they would have paid in the absence of defendants' illegal contract, combination, or conspiracy and as a result have suffered damages.

**<u>ANSWER</u>**:  Cooper Farms states the allegations in Paragraph 144 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 144 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 144.

145.    This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

**<u>ANSWER</u>**:  Cooper Farms states the allegations in Paragraph 145 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 145 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 145.

## VII.   CAUSE OF ACTION

### VIOLATION OF THE SHERMAN ACT

### FIRST CLAIM FOR RELIEF
### VIOLATION OF SECTION 1 OF THE SHERMAN ACT FOR
### CONSPIRACY TO EXCHANGE COMPETITIVE INFORMATION
### 15 U.S.C. § 1
### (ON BEHALF OF NATIONWIDE CLASS FOR INJUNCTIVE AND
### EQUITABLE RELIEF AND DAMAGES)

146.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

**ANSWER**:  For its answer to Paragraph 146, Cooper Farms realleges and restates, as if fully set forth herein, its answer to Paragraphs 1-145, above.

147.    Beginning at a time currently unknown to plaintiffs, but at least as early as January 1, 2010, and continuing at least until January 1, 2017, the exact dates being unknown to plaintiffs, defendants and their co-conspirators entered into a continuing agreement to regularly exchange detailed, timely, competitively sensitive and non-public information about their operations.  This agreement is an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 147 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 147 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 147.

148.    Defendants' acts in furtherance of their combination or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of defendants' affairs.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 148 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 148 consist of Plaintiffs' characterization of their

claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 148.

149.     Defendants' anticompetitive acts involved United States domestic commerce and import commerce, and had a direct, substantial, and foreseeable effect on interstate commerce by raising and fixing prices for turkey throughout the United States.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 149 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 149 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 149.

150.     The relevant product market is turkey and the relevant geographic market is the continental United States.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 150 are legal conclusions to which no responsive pleading is required.   Cooper Farms states the allegations in Paragraph 150 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 150.

151.     Defendant integrators possess market power in the Relevant Market.  Defendant integrators and their co-conspirators controlled approximately 80 percent of the Relevant Market. Defendant integrators' collective market power includes the power to artificially deflate the amount of turkey produced in the United States below competitive levels and to artificially inflate the price plaintiffs pay for turkey above competitive levels.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 151 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 151 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 151.

152.    Defendants could impose an increase in the price of turkey collectively without causing many consumers to switch their purchases to another product. Turkey constitutes a unique product market.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 152 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 152 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 152.

153.    Defendants view the turkey products as fungible.  Turkey products are generally interchangeable, permitting defendant integrators to readily to compare and match each other's pricing.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 153 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms states the allegations in Paragraph 153 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 153.

154.    The information regularly exchanged by defendants pursuant to the agreement has consisted of detailed, competitively sensitive and non-public information about current supply, production and pricing plans regarding turkey.  The information exchanges specifically included the exchange through Agri Stats of weekly and monthly reports regarding defendants' turkey operations, including weekly sales data that allowed defendants to compare their prices with their competitors and raise prices that were lower.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 154 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 154 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 154.

155. Defendants' regular information exchanges through Agri Stats reflected concerted action between horizontal competitors in the market for turkey.

**ANSWER**: Cooper Farms states the allegations in Paragraph 155 are legal conclusions to which no responsive pleading is required. To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 155 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 155.

156. Each defendant integrator furnished competitively sensitive information to other defendant integrators with the understanding that it would be reciprocated. Agri Stats enforced this understanding by requiring defendants to share data in order to receive comparable data.

**ANSWER**: Cooper Farms states the allegations in Paragraph 156 are legal conclusions to which no responsive pleading is required. To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 156 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 156.

157. The agreement to regularly exchange detailed and non-public information about current production, supply, and pricing suppressed competition between the defendants. Agri Stats specifically identified for defendants the instances where their pricing was lower than other defendants and where they could raise their prices to match.

**ANSWER**: Cooper Farms states the allegations in Paragraph 157 are legal conclusions to which no responsive pleading is required. To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 157 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 157.

158.   When defendants that are competing for the same consumers exchange competitive information, it reduces the incentives to compete on price.  Accordingly, defendants used the data obtained through Agri Stats to reduce the uncertainty that they each should have faced from not knowing what their competitors were offering and providing in the turkey market.  This strategic information was a material factor in defendant integrators' decisions to inflate the prices that plaintiffs paid for turkey during the Class Period.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 158 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 158 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 158.

159.   Defendants' unlawful agreements to exchange, and the actual exchanges of nonpublic, timely, and detailed data were not reasonably necessary to further any procompetitive purpose.  The information exchanged between defendants was current, easily traceable to its source, confidential, and related to a core characteristic of competition between them.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 159 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 159 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 159.

160.   The information-exchange agreement has had the effect of (1) reducing and suppressing competition among defendants in the market for turkey in the United States and (2) inflating the prices of turkey during the Class Period.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 160 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 160 consist of Plaintiffs' characterization of their

claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 160.

161.    As a result of defendants' unlawful conduct, plaintiffs and the members of the Class have been harmed by being forced to pay inflated, supracompetitive prices for turkey.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 161 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint and denies that it engaged in any unlawful conduct. Cooper Farms states the allegations in Paragraph 161 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 161.

162.    As a direct and proximate result of defendants' anticompetitive conduct, plaintiffs and members of the Class have been injured in their business or property and will continue to be injured in their business and property by paying more for turkey than they would have paid and will pay in the absence of the conspiracy.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 162 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint and denies that it engaged in any anticompetitive conduct. Cooper Farms states the allegations in Paragraph 162 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 162.

163.    The alleged contract, combination, or conspiracy is also a *per se* violation of the federal antitrust laws.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 163 were dismissed by the Court pursuant to its Memorandum Opinion and Order dated October 19, 2020.  To the extent a responsive pleading is still deemed to be required to Paragraph 163, Cooper Farms states the allegations in Paragraph 163 are legal conclusions to which no responsive pleading is required. Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms

states the allegations in Paragraph 163 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies the allegations in Paragraph 163.

## VIII. REQUEST FOR RELIEF

164.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint plaintiffs as Class Representatives and their counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class, once certified;

**ANSWER**:  Cooper Farms states the allegations in Paragraph 164 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 164 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies that Plaintiffs are entitled to any of the relief, declarations, and/or damages requested in the Request for Relief and/or in Paragraph 164, and denies the allegations in Paragraph 164.

165.    The unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed in violation of Section 1 of the Sherman Act;

**ANSWER**:  Cooper Farms states the allegations in Paragraph 165 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 165 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies that Plaintiffs are entitled to any of the relief, declarations, and/or damages requested in the Request for Relief and/or in Paragraph 164, and denies the allegations in Paragraph 165.

166.    Plaintiffs and the Class recover damages, to the maximum extent allowed under the applicable laws, and that a joint and several judgments in favor of plaintiffs and the members of the Class be entered against defendants in an amount to be trebled to the extent such laws permit;

**ANSWER**:  Cooper Farms states the allegations in Paragraph 166 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 166 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies that Plaintiffs are entitled to any of the relief, declarations, and/or damages requested in the Request for Relief and/or in Paragraph 166, and denies the allegations in Paragraph 166.

167.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

**ANSWER**:  Cooper Farms states the allegations in Paragraph 167 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 167 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies that Plaintiffs are entitled to any of the relief, declarations, and/or damages requested in the Request for Relief and/or in Paragraph 167, and denies the allegations in Paragraph 167.

168.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the sharing of highly sensitive competitive information that permits individual identification of company's information;

**ANSWER**:  Cooper Farms states the allegations in Paragraph 168 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 168 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies that Plaintiffs are entitled to any of the relief, declarations, and/or damages requested in the Request for Relief and/or in Paragraph 168, and denies the allegations in Paragraph 168.

169.    Plaintiffs and the members of the Class be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

**ANSWER**:  Cooper Farms states the allegations in Paragraph 169 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 169 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies that Plaintiffs are entitled to any of the relief, declarations, and/or damages requested in the Request for Relief and/or in Paragraph 169, and denies the allegations in Paragraph 169.

170.    Plaintiffs and the members of the Class recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

**ANSWER**:  Cooper Farms states the allegations in Paragraph 170 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 170 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies that

Plaintiffs are entitled to any of the relief, declarations, and/or damages requested in the Request for Relief and/or in Paragraph 170, and denies the allegations in Paragraph 170.

171.    Plaintiffs and the members of the Class have such other and further relief as the case may require and the Court may deem just and proper.

**ANSWER**:  Cooper Farms states the allegations in Paragraph 171 are legal conclusions to which no responsive pleading is required.  To the extent a responsive pleading is deemed to be required, Cooper Farms denies the conspiracy and/or conspiracies alleged in the Complaint. Cooper Farms states the allegations in Paragraph 171 consist of Plaintiffs' characterization of their claims and are allegations subject to proof by expert testimony, and Cooper Farms denies that Plaintiffs are entitled to any of the relief, declarations, and/or damages requested in the Request for Relief and/or in Paragraph 171, and denies the allegations in Paragraph 171.

## IX.    JURY TRIAL DEMANDED

172.    Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

**ANSWER**:  Cooper Farms admits that Plaintiffs demand a trial by jury, but deny that Plaintiffs are entitled to jury consideration on their request for equitable relief or on any issue for which a jury trial is not required by applicable law.

## ADDITIONAL ALLEGATIONS AND GENERAL DENIAL

Cooper Farms denies each and every remaining matter and/or allegation of any kind asserted in Plaintiffs' Complaint, including, but not limited to, those matters and/or allegations asserted in the headings, subheadings, paragraphs, caption, footnotes, charts, analysis, figures, Request for Relief, or in any other places in Plaintiffs' Complaint, not otherwise expressly admitted herein to be true.

## AFFIRMATIVE AND SEPARATE DEFENSES

Without admitting any facts alleged by Plaintiffs, Cooper Farms asserts the following separate and affirmative defenses to the Complaint. In asserting these defenses, Cooper Farms does not assume the burden of establishing any fact or proposition where that burden is properly imposed on Plaintiffs. Cooper Farms reserves the right to amend its Answer and its right to assert additional affirmative and/or separate defenses that may be pertinent to Plaintiffs' Complaint and/or claims when the precise nature of Plaintiffs' Complaint and/or of Plaintiffs' and/or any putative class member's claims are ascertained through discovery, and/or based on facts developed as this matter progresses.

### FIRST DEFENSE

1.      Plaintiffs' claims and the claims of any putative class members fail in whole or in part to state a claim upon which relief could be granted.

### SECOND DEFENSE

2.      Plaintiffs' claims and the claims of any putative class members are barred, in whole or in part, by the applicable statute of limitations, contractual statute of limitations, if any, and/or laches.

3.      The statute of limitations for Plaintiffs' claims is four years. 15 U.S.C. § 15(b). Thus, Plaintiffs' claims must be dismissed unless Plaintiffs can sufficiently allege that they could not have discovered the claimed offense within the limitations period exercising reasonable diligence.

4.      Plaintiffs cannot satisfy this burden: the challenged conduct occurred more than ten years ago. *See* Compl. ¶¶ 7-9 (Plaintiffs allege that Agri Stats made a public statement in 2009 that "'about 95% of the turkey industry [is] participating" in Agri Stats," that Agri Stats used a presentation slide in 2010 that named 24 turkey producers who participated in Agri Stats, and that

the "slide shows that each of the defendant integrators and Co-Conspirator Integrators entered into an agreement to exchange information regarding their turkey operations through Agri Stats during the conspiracy period."); Compl.¶¶ 12, 24 (Plaintiffs allege public statements by one Defendant in 2009 and 2011 about the use and importance of Agri Stats benchmarking data for business operations).

5.      The public disclosure of the facts alleged by Plaintiffs about the use of Agri Stats benchmarking data for business operations occurred outside the applicable statute of limitations time period.  The existence of these disclosures triggered Plaintiffs' duty to investigate at least as far back as 2009, which Plaintiffs failed to do.  Plaintiffs' attempt to justify their delay fails because they merely recycled their underlying allegations and then conclusively asserted fraudulent concealment.  Compl. ¶¶ 118-123.  Plaintiffs' claims are barred, in whole or in part, to the extent they agreed to contractual limitations periods during which they must have brought their claims, but failed to do so.  Accordingly, Plaintiffs' Complaint and the clams of any putative class member are time-barred.

6.      The laches doctrine dictates that "those who sleep on their rights, lose them."  *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999).  Specifically, laches will bar relief in the face of: "(1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom."  *Id.* (citing *Cannon v. Univ. of Health Sciences/Chi. Med. Sch.*, 710 F.2d 351, 359 (7th Cir. 1983)).

7.      Cooper Farms hereby incorporates the above Paragraphs 1–6 in support of this defense.  Plaintiffs demonstrated an unreasonable lack of diligence in bringing their claims.  As set forth in support of Cooper Farms' statute of limitations defense, the challenged conduct that underlies Plaintiffs' claims occurred more than ten years ago.  Yet, Plaintiffs sat on their allegations until the end of 2019, causing Cooper Farms to continue to deal with Plaintiffs and/or

any putative class members in the same manner, to its prejudice. This unreasonable lack of diligence in raising their claims bars them now.

8.     Accordingly, the equitable principles embodied in the laches doctrine also bar Plaintiffs and/or any putative class member from seeking relief at this delayed juncture.

**THIRD DEFENSE**

9.     Plaintiffs' claims and the claims of any putative class members are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or unclean hands.

10.    The precise set of facts Plaintiffs cite in support of their claims were made public more than ten years ago. Cooper Farms hereby incorporates Paragraphs 1–8 in support of these defenses.

11.    Cooper Farms relied in good faith, and to its detriment, on Plaintiffs' and/or the putative class members' actions in continuing to purchase turkey products without complaint.

12.    Cooper Farms had no knowledge of Plaintiffs' and/or any putative class members' alleged complaints or means to discover these complaints.

13.    Plaintiffs' and/or any putative class members' conduct in continuing to purchase turkey products at what it now alleges are inflated prices is evidence of an intention to waive any right to bring this suit and was inconsistent with any intention other than to waive its right to bring suit.

14.    Plaintiffs and any putative class member, by its/their actions, accepted the benefits of an ongoing relationship with Cooper Farms and relinquished any right to bring suit.

**FOURTH DEFENSE**

15.    To the extent Plaintiffs and/or any putative class members claim that Cooper Farms fraudulently concealed any actions, Plaintiffs and/or any putative class members have failed to allege this fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

**FIFTH DEFENSE**

16.     Plaintiffs' claims and the claims of any putative class members are barred, in whole or in part, because their claims are governed by the rule of reason and they have not alleged and cannot prove the elements of a rule of reason claim, including because the pro-competitive benefits of the conduct alleged by them outweigh any alleged anti-competitive effects and because they have failed to plausibly allege and cannot establish a relevant product and/or geographic market.

**SIXTH DEFENSE**

17.     Plaintiffs and any putative class members lack antitrust standing to bring some or all of their claims.

**SEVENTH DEFENSE**

18.     Plaintiffs and any of the putative class members did not suffer any injury in fact and/or any injury cognizable under the antitrust laws.

**EIGHTH DEFENSE**

19.     Plaintiffs' claims and the claims of any putative class members are barred because they have not sustained any injury or damages actually and proximately caused by any act or omission by Cooper Farms. Plaintiffs and the putative class members did not suffer antitrust injury or damages as a result of the conduct alleged herein.

**NINTH DEFENSE**

20.     Plaintiffs' claims and the claims of any putative class members are barred, in whole or in part, because the claimed injuries and damages were not legally or proximately caused by any act or omission of Cooper Farms or were caused, if at all, by the conduct of the Plaintiffs and/or putative class members themselves or third-parties including, without limitation, the previous, intervening, or superseding conduct of such Plaintiffs, putative class members, and/or third-parties.

**TENTH DEFENSE**

21.     To the extent Plaintiffs and/or any of the putative class members have sustained damages, if any, they have failed to mitigate those damages and are therefore barred from recovering damages in whole or in part.

22.     The precise set of facts Plaintiffs cite in support of their claims were made public more than ten years ago.  Cooper Farms hereby incorporates Paragraphs 1–8 in support of this defense.

23.     To the extent Plaintiffs and/or any putative class member believed that Cooper Farms had unfairly increased the price of turkey products, they had an obligation to mitigate their damages, including, but not limited to, by seeking other sources of supply, including from other producers.  To the extent Plaintiffs and/or any putative class member allege that the price of turkey products was unfairly manipulated, Plaintiffs and/or any putative class member had an obligation to renegotiate contracts and/or to otherwise timely raise these issues with Cooper Farms.

24.     Plaintiffs and/or any putative class members' failure to exercise reasonable care to mitigate damages was the complete or partial cause of any damages Plaintiffs and/or any putative class member may have suffered.

**ELEVENTH DEFENSE**

25.     Plaintiffs' and/or any of the putative class members' damages claims are barred in whole or in part because the damages they seek are too speculative, uncertain, and/or remote and/or because of the impossibility of the ascertainment and allocation of such alleged damages.

**TWELFTH DEFENSE**

26.     To the extent any recovery by Plaintiffs and/or any putative class member would subject Cooper Farms to multiple or duplicative recovery, such recovery would violate Cooper

Farms' rights under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

**THIRTEENTH DEFENSE**

27.     Plaintiffs' claims and/or any putative class members' claims are barred, in whole or in part, by the doctrines of *in pari delicto*, involvement, participation, equal involvement, and complete involvement.

**FOURTEENTH DEFENSE**

28.     Plaintiffs and/or any of the putative class members are not entitled to injunctive relief because they have not alleged and cannot demonstrate irreparable harm and/or the absence of any adequate remedy at law.

**FIFTEENTH DEFENSE**

29.     Plaintiffs' Complaint is not appropriate for certification as a class action because it fails to meet the prerequisites of Rules 23(a) and (b) of the Federal Rules of Civil Procedure.

**SIXTEENTH DEFENSE**

30.     Plaintiffs' claims and/or any of the putative class members' claims are barred, in whole or in part, based on the ratification of and/or consent to the conduct of Cooper Farms and/or by accord and satisfaction.

31.     Cooper Farms hereby incorporates the above Paragraphs 1–8 in support of this defense.

32.     Plaintiffs' Complaint relies on publicly available information—much of which has been available for years—thereby demonstrating its and any putative class members' long-standing ratification of and consent to the complained-of conduct.

33.     Accordingly, because Plaintiffs and any putative class members have been aware for years of the very same conduct Plaintiffs now challenge, the claims are barred by the doctrine of ratification and/or accord and satisfaction.

**SEVENTEENTH DEFENSE**

34.     Plaintiffs' claims and/or any of the putative class members' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

**EIGHTEENTH DEFENSE**

35.     Plaintiffs' claims and/or any of the putative class members' claims are barred, in whole or in part, by Cooper Farms' right to set off any amounts paid to Plaintiffs and/or to any of the putative class members who have settled, or do settle, the claims against Cooper Farms and/or any other defendant in this action.

**NINETEENTH DEFENSE**

36.     Cooper Farms adopts by reference any applicable defense pleaded by any other Defendant which is not otherwise expressly set forth in this Answer and Affirmative and Separate Defenses.

**TWENTIETH DEFENSE**

37.     Cooper Farms reserves the right to assert other defenses as this action proceeds up to and including the time of trial.

Wherefore, Cooper Farms, Inc. respectfully requests that judgment be entered in favor of Cooper Farms, Inc. and the other Defendants and against Plaintiffs, dismissing the Complaint with prejudice in its entirety.  Cooper Farms, Inc. further requests that this Court (i) award Cooper Farms, Inc. its costs and disbursements, and (ii) award such other and further relief, including reasonable attorneys' fees, as the Court deems just and proper.

## JURY TRIAL DEMANDED

Cooper Farms, Inc. demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated:  December 4, 2020                    Respectfully submitted,

                                            /s/ Jennifer A.L. Battle_____

Theodore M. Munsell*
Jennifer A.L. Battle*
Joel E. Sechler*
Jill Rogers Spiker*
David J. Barthel*
CARPENTER LIPPS & LELAND LLP280 North High Street, Suite 1300
Columbus, Ohio 43215
(614)-365-4100 (phone)
munsell@carpenterlipps.com
battle@carpenterlipps.com
sechler@carpenterlipps.com
spiker@carpenterlipps.com

*pro hac vice granted

Josh Goldberg (ARDC No. 6277541)
CARPENTER LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2640
Chicago, Illinois 60601
312-777-4300 (phone)
goldberg@carpenterlipps.com

Michael L. McCluggage (ARDC No. 1820966)
Daniel D. Birk (ARDC No. 6302412)
EIMER STAHL LLP
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
312-660-7600 (phone)
mmcluggage@eimerstahl.com
dbirk@eimerstahl.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on December 4, 2020, a copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

By:    /s/ Jennifer A.L. Battle

815183