**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OLEAN WHOLESALE GROCERY COOPERATIVE, INC., *et al.*, | No. 19-cv-08318 |
| Plaintiffs, | Hon. Virginia M. Kendall |
| | Hon. Gabriel A. Fuentes |
| v. | |
| AGRI STATS, INC., *et al.*, | |
| Defendants | |

| | |
|---|---|
| SANDEE'S CATERING, | No. 20-cv-02295 |
| Plaintiff, | |
| | Hon. Virginia M. Kendall |
| v. | Hon. Gabriel A. Fuentes |
| AGRI STATS, INC., *et al.*, | |
| Defendants | |

**JOINT SUBMISSION OF RULE 26(f) REPORT
AND RELATED DISCOVERY ORDERS**

In accordance with the Court's October 27, 2020 Order, the parties in *Olean Wholesale Grocery Cooperative, Inc. v. Agri Stats, Inc., et al.* and *Sandee's Catering v. Agri Stats, Inc., et al.*, submit the following:

- **Parties' Fed. R. Civ. P. Rule 26(f) Report** – *Tab 1* – the Parties have met and conferred and have resolved many of their differences, but were unable to reach agreement on several aspects of their proposed case schedule. The areas of disagreement are identified in the attached document by yellow highlighting.

- **Proposed ESI Protocol** – *Tab 2* – Here again, the Parties have met and conferred and resolved a substantial number of their differences, but a few remain for the Court's consideration and resolution. The attached documents are as follows:

  o Tab 2(a) – A document summarizing the areas where the parties are at issue.

  o Tab 2 (b) – A clean version of Plaintiffs' proposed ESI protocol with the disputed portions highlighted in yellow.

  o Tab 2(c) – A clean version of Defendants' proposed ESI protocol with the disputed portions highlighted in yellow.

- **Proposed Protective/Confidentiality Order** – *Tab 3* – as with their proposed ESI protocols the Parties are including three documents for the Court's consideration as follows:

  o Tab 3(a) – A document that identifies the areas where the Parties are at issue.

  o Tab 3(b) – A clean version of Plaintiffs' proposed Protective/Confidentiality Order with the disputed portions highlighted in yellow.

  o Tab 3(a) – A clean version of Defendants' proposed Protective Order with the disputed portions highlighted in yellow.

For the Court's convenience, Microsoft Word Versions of all of the foregoing documents will be submitted to the Court via email.

As further directed by the Court, the Parties have not included any narrative argument regarding their respective positions on the Case Schedule, ESI Protocol, or Protective/Confidentiality Order and instead will include those arguments as part of their joint status report on December 11, 2020.

Dated: December 4, 2020                    Respectfully submitted,


By:_____*s/ Shana E. Scarlett*_____         By:_____*s/ Britt M. Miller*_____
Shana E. Scarlett                               Britt M. Miller
Rio S. Pierce                                   Robert E. Entwisle
HAGENS BERMAN SOBOL SHAPIRO LLP                 MAYER BROWN LLP
715 Hearst Avenue, Suite 202                    71 South Wacker Drive
Berkeley, California 94710                      Chicago, Illinois 60606
Telephone: (510) 725-3000                       Telephone: (312) 782-0600
Facsimile: (510) 725-3001                       bmiller@mayerbrown.com
shanas@hbsslaw.com                              rentwisle@mayerbrown.com
riop@hbsslaw.com
                                                Sybil L. Dunlop
Steve W. Berman                                 GREENE ESPEL PLLP
HAGENS BERMAN SOBOL SHAPIRO LLP                 222 South Ninth Street, Suite 2200
455 North Cityfront Plaza Drive, Suite 2410     Minneapolis, Minnesota 55402

Chicago, Illinois 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950
steve@hbsslaw.com

W. Joseph Bruckner
Brian D. Clark
Maureen Kane Berg
Simeon Morbey
Justin R. Erickson
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
mkberg@locklaw.com
samorbey@locklaw.com
jrerickson@locklaw.com

***Counsel for Plaintiffs and the Proposed Class***

Telephone: (612) 373-0830
sdunlop@greeneespel.com

***Counsel for Cargill, Incorporated and Cargill
Meat Solutions Corporation***


By:_____*s/ Christopher E. Ondeck*_____
Christopher E. Ondeck
Colin R. Kass
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW, Suite 600
Washington, DC 20004
Telephone: (202) 416-6800
condeck@proskauer.com
ckass@proskauer.com
Schuk@proskauer.com

Rucha A. Desai
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
rdesai@proskauer.com

Marc E. Rosenthal
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3530
mrosenthal@proskauer.com

***Counsel for Butterball LLC***

By:____s/ Jennifer A.L. Battle_____
Michael L. McCluggage
Daniel D. Birk
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Telephone: (312) 660-7600
mmcluggage@eimerstahl.com
dbirk@eimerstahl.com

Joshua Goldberg
CARPENTER, LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
Telephone: (312) 777-4825
goldberg@carpenterlipps.com

Jennifer A.L. Battle
David J. Barthel
Theodore M. Munsell
Jill Rogers Spiker
Joel E. Sechler
CARPENTER, LIPPS & LELAND LLP
280 North High Street, Suite 1300
Columbus, Ohio 43215
Telephone: (614) 365-4100
battle@carpenterlipps.com
barthel@carpenterlipps.com
munsell@carpenterlipps.com
spiker@carpenterlipps.com
sechler@carpenterlipps.com

*Counsel for Cooper Farms, Inc.*

By:____s/ Michael K. Sciaccotta_____
Michael K. Sciaccotta
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone: (312) 876-8000
Michael.sciaccotta@dentons.com

Gaspare J. Bono
Claire M. Maddox
Leslie A. Barry
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 496-7500
Gap.bono@dentons.com
Claire.maddox@dentons.com
Leslie.barry@dentons.com

*Counsel for Farbest Foods, Inc.*

By:____s/ Carmine R. Zarlenga_____
Carmine R. Zarlenga
William Stallings
Stephen M. Medlock
Oral Pottinger
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20009
Telephone: (202) 263-3000
czarlenga@mayerbrown.com
wstallings@mayerbrown.com
smedlock@mayerbrown.com
opottinger@mayerbrown.com

*Counsel for Foster Farms, LLC, and Foster
Poultry Farms, a California Corporation*

By:_____*s/ Colby Anne Kingsbury*_____
Colby Anne Kingsbury
FAEGRE DRINKER BIDDLE & REATH LLP
311 South Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone: (312) 212-6500
Colby.Kingsbury@faegredrinker.com

Richard A. Duncan
Craig S. Coleman
Emily E. Chow
Isaac B. Hall
FAEGRE DRINKER BIDDLE & REATH LLP
90 S. Seventh Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 766-7000
Richard.duncan@faegredrinker.com
Craig.coleman@faegredrinker.com
Emily.chow@faegredrinker.com
Isaac.hall@faegredrinker.com

Christopher A. Kreuder
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000
Christopher.kreuder@faegredrinker.com

***Counsel for Hormel Foods Corporation and Hormel Foods, LLC***

By:_____*s/ Gregory G. Wrobel*_____
Gregory G. Wrobel
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
Telephone: (312) 609-7500
gwrobel@vedderprice.com

Henry W. Jones, Jr.
JORDAN PRICE WALL GRAY JONES & CARLTON, PLLC
1951 Clark Avenue
Raleigh, North Carolina 27605
Telephone: (919) 828-2501
Facsimile: (919) 834-8447
hjones@jordanprice.com

***Counsel for House of Raeford Farms, Inc.***

By:_____*s/ J. Douglas Baldridge*_____
Kirstin B. Ives
KIRSTIN B. IVES
230 West Monroe Street, Suite 2220
Chicago, Illinois 60606
Telephone: (312) 566-4803
kbi@falkenbergives.com

J. Douglas Baldridge
Lisa Jose Fales
Danielle R. Foley
Paul Feinstein
Andrew T. Hernacki
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
jdbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com
pfeinstein@venable.com
athernacki@venable.com

***Counsel for Perdue Foods LLC and Perdue Farms, Inc.***

By:_____*s/ Jacob D. Koering*_____
Jacob D. Koering
MILLER, CANFIELD, PADDOCK & STONE, PLC
225 West Washington Avenue, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 460-4272
koering@millercanfield.com

William L. Monts III
Justin W. Bernick
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Telephone: (202) 637-5600
William.monts@hoganlovells.com
Justin.bernick@hoganlovells.com

**Counsel for Agri Stats, Inc.**

By:_____*s/ Jordan Matthew Tank*_____
Jordan Matthew Tank
Sahrish Moyeed
LIPE LYONS MURPHY NAHRSTADT & PONTIKIS
230 West Monroe Street, Suite 2260
Chicago, Illinois 60606
Telephone: (312) 702-0586
jmt@lipelyons.com
sm@lipelyons.com

Tiffany Rider Rohrbaugh
Rachel J. Adcox
Lindsey Strang Aberg
AXINN, VELTROP & HARKRIDER LLP
950 F Street, NW
Washington, DC 20004
Telephone: (202) 469-3550
trider@axinn.com
radcox@axinn.com
lstrang@axinn.com

**Counsel for The Hillshire Brands Company, Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods**

739084242.1 1-Dec-20 11:00

## <u>CERTIFICATE OF SERVICE</u>

I, Shana E. Scarlett, an attorney, herby certify that on December 4, 2020, I caused a true and correct copy of the foregoing to be filed and served electronically via the court's CM/ECF system.  Notice of this filing will be sent by e-mail to all persons by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.


      */s/ Shana E. Scarlett*
      SHANA E. SCARLETT

# TAB 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| OLEAN WHOLESALE GROCERY COOPERATIVE, INC., *et al.*, | No. 19-cv-08318 |
| Plaintiffs, | Hon. Virginia M. Kendall |
| | Hon. Gabriel A. Fuentes |
| v. | |
| AGRI STATS, INC., *et al.*, | |
| Defendants | |
| | |
| SANDEE'S CATERING, | |
| | No. 20-cv-02295 |
| Plaintiff, | |
| | Hon. Virginia M. Kendall |
| v. | Hon. Gabriel A. Fuentes |
| AGRI STATS, INC., *et al.*, | |
| Defendants | |

## PLAINTIFFS' AND DEFENDANTS' JOINT RULE 26(f) REPORT

The parties/counsel identified below conferred as required by Fed. R. Civ. P. 26(f) and the Local Rules, on November 16, 2020, and prepared the following report.

The initial pretrial conference required under Fed. R. Civ. P. 16 and LR 16.2 is scheduled for _____, 20____, before the United States Magistrate Judge Gabriel Fuentes

553924.7

739038100.2

_____, in Room ____, of the U.S. Courthouse in, _____, Illinois. The parties request that the pretrial be held by telephone.

(a)  Description of the Case.

    (1)  **Concise factual summary of plaintiff's claims**: Plaintiffs allege an antitrust conspiracy in which Defendants, who are turkey suppliers, unlawfully agreed to exchange information through Defendant Agri Stats in violation of Section One of the Sherman Act, 15 U.S.C. § 1.

    (2)  **Concise factual summary of defendant's claims/defenses**:  Plaintiffs cannot establish a violation of Section One of the Sherman Act under the rule of reason, and, in the case of *Sandees's*, various state laws.  Benchmarking is pro-competitive, and Plaintiffs cannot prove an appropriately defined, relevant market or anticompetitive effects due to Defendants' participation in Agri Stats.  And even if Plaintiffs could establish a violation, some or all of their claims are time barred.

    (3)  **Statement of jurisdiction (including statutory citations)**: Plaintiffs seek damages and injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26. Subject matter jurisdiction is appropriate under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.  In denying certain Defendants' motion to dismiss, the Court has held that it has jurisdiction over certain claims brought by Sandee's.  Order at 9-12 (Dkt. 88).

    (4)  **Summary of factual stipulations or agreements**:  None.

    (5)  **Statement of whether a jury trial has been timely demanded by any party**:

        Plaintiffs have timely demanded a jury trial.

        Defendants demand a jury on any issues so triable.

(b)  **Statement as to whether all process has been served, all pleadings filed and any plan for any party to amend pleadings or add additional parties to the action**:

Process has been served and Defendants' initial Rule 12(b)(6) motions have been heard and decided.  Sandee's has since amended its complaint (Dkt. 91), to replead its previously dismissed unjust enrichment claims, which Defendants intend to address in a subsequent Rule 12 motion.

(c)  **Proposed Schedule**

The parties respectively recommend that the Court adopt the following initial schedule regarding fact discovery and summary judgment briefing. The parties have separately set forth below their proposed schedules for class certification.

| Event | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| Defendants to answer *Olean* complaint | December 4, 2020 | Same |
| Parties file proposed protective order and ESI Protocol, identifying any areas of disagreement. | December 4, 2020 | Same |
| Defendants to answer or otherwise move with respect to *Sandee's* Amended Complaint | December 10, 2020 | Same |
| Initial disclosures under Rule 26(a)(1) | December 15, 2020 | Same |
| Initial Requests for Production and Interrogatories | To be served no later than January 29, 2021.<br><br>Subsequent requests and interrogatories may be served consistent with the FRCP.<br><br>Resulting productions in response to subsequent requests will not be subject to the substantial completion deadline if completing a production in that time frame is not reasonably practicable. | Same |
| Production of Organizational Charts (RFP 2) | January 29, 2021 for non-objectionable items readily available and responsive to the Request. | Same |
| Disputes regarding custodians for Requests for Production to be presented to the Court. | March 5, 2021, to the extent the Court views this interim deadline as necessary. | Same |
| Plaintiff Proposal: Commencement of Rolling Production of Documents, | May 20, 2021, to the extent the Court views this | Same |

| Event | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| including substantial completion of production for identified priority custodians and centrally stored Agri Stats reports<br><br>Defendant Proposal: Commencement of Rolling Production of Documents | interim deadline as necessary.[1] | |
| Substantial Completion of Production of Structured Data in response to requests for production | July 1, 2021[2] | Same |
| Deadline to serve all written discovery, requests for production, and Rule 45 subpoenas.[3] | 60 days prior to the close of fact discovery. | August 6, 2021 |
| Substantial completion of production of (non-structured) documents. | August 6, 2021 | November 30, 2021 |
| Last day to amend pleadings or add parties | March 4, 2022 | 30 days following substantial completion of document productions. |
| Fact Discovery to be Completed | November 1, 2022 | June 3, 2022 |

[1] The Parties will make good faith efforts to meet the interim deadline for the commencement of rolling productions, but also acknowledge that the ongoing public health crisis may impact one or more party's ability to comply with the proposed deadline. Should a party learn that it will be unable to meet the interim deadline for the commencement of rolling productions, it will promptly notify opposing counsel, and the parties will confer and attempt to reach agreement on an alternative date for the commencement of rolling productions.

[2] The Parties will make good faith efforts to meet interim deadlines for the production of structured data, but also acknowledge that the ongoing public health crisis may impact one or more party's ability to comply with the proposed deadline. Should a party learn that it will be unable to meet the interim deadline for the production of structured data, it will promptly notify opposing counsel, and the parties will confer and attempt to reach agreement on an alternative date for the production.

[3] Nothing shall prohibit a party from seeking leave of Court to serve additional documents requests, interrogatories, or subpoenas for good cause shown, or from objecting to such requests.

| Event | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| Summary Judgment and Pretrial | See below | No later than 30 calendar days after the Court's ruling on the motion for class certification, the parties will provide to the Court a proposed schedule for the filing of dispositive motions, merits expert discovery, *Daubert* motions for merits experts, motions *in limine*, and other final pre-trial matters if applicable. |
| Plaintiffs serve merits expert reports | 30 days after Court's ruling for class certification | See above |
| Defendants serve merits expert reports | 60 days after service of the initial expert report. | See above |
| Filing of supplemental expert reports | Shall be governed by Federal Rules of Civil Procedure 26(a)(2)(E) and 26(e). Parties may seek leave to submit such reports. | See above |
| Merits expert depositions | The parties will meet and confer to find a mutually agreeable time for merits expert depositions, with a goal of the deposition occurring at least 14 days before the opposing party's expert report deadline responding to the expert who is being deposed. | See above |
| Dispositive motion deadline | Four months after the Court's ruling on Plaintiffs' motion for class certification. A briefing schedule and details regarding page limitations shall be agreed to no later | See above |

| Event | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
|  | than the date upon which fact discovery closes. |  |
| Trial Date | February 1, 2024 | See above |

The parties disagree on the schedule for class certification and have set forth their respective proposals separately.

**Plaintiffs' Class Certification Proposal:**

| Event | Date |
|---|---|
| Plaintiffs file and serve their motion for class certification and related expert reports | March 4, 2022. |
| Class certification expert depositions | Deposition of experts for class certification purposes shall occur on mutually convenient dates starting 14 days after production of the back-up materials making up the expert report. |
| Defendants file and serve their response to the motion for class certification, and related expert reports, including any motion concerning Plaintiffs' class certification experts pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (hereinafter, "*Daubert*"). | May 6, 2022. |
| Plaintiffs file and serve their reply brief and any reply expert reports, including any motion concerning Defendants' class certification experts pursuant to *Daubert* and a response to any *Daubert* motion by Defendants | July 1, 2022 |
| Defendants file their reply in support of their Daubert motions for class certification experts | August 1, 2022 |
| Defendants file their opposition to any Daubert motions by Plaintiffs to their class certification experts. | August 15, 2022 |

6

| Plaintiffs file their reply in support of Daubert motion for class certification experts | September 15, 2022 |
| --- | --- |

**Defendants' Class Certification Proposal:**

| Event | Date |
| --- | --- |
| Plaintiffs serve initial class expert reports | July 1, 2022 |
| Defendants serve class expert reports | September 2, 2022 |
| Plaintiffs file rebuttal class expert reports | October 3, 2022 |
| Class expert depositions begin | October 31, 2022<br><br>Absent agreement of the parties, plaintiffs experts must be deposed prior to defendants' experts. |
| Deadline for all class expert discovery | December 16, 2022. |
| Plaintiffs file class certification motion, and any class *Daubert* motion | January 6, 2023 |
| Defendants file (i) opposition to plaintiffs class certification motion; (ii) opposition to plaintiffs' Daubert motion(s); and (iii) any Daubert motion directed at plaintiffs' class experts. | March 31, 2023 |
| Plaintiffs file (i) reply in support of Plaintiffs' motion for class certification; (ii) reply in support of Plaintiffs' Daubert motion(s); and (iii) opposition to defendants' Daubert motion(s). | May 26, 2023 |
| Defendants file replies in support of Defendants' Daubert motion(s) | June 23, 2023 |

(d) **Fact Discovery**.

    (1) The parties propose that the Court limit the use and numbers of discovery procedures as follows:

(A) Plaintiffs may jointly serve 30 interrogatories per defendant family named in the complaints. Defendants may jointly serve 30 interrogatories on each plaintiff family named in the complaints. The parties will coordinate efforts and each side will avoid serving duplicative or unduly burdensome interrogatories.

(B) The parties may propound only a reasonable and appropriate number of requests to produce. Plaintiffs may jointly serve requests on each defendant family named in the complaints. Defendants may jointly serve requests to produce on each plaintiff family named in the complaints. Requests to produce may be served on individual parties on discrete issues.

(C) There will be a maximum of 90 total percipient witness Defendant depositions. Absent good cause shown, no defendant family shall be subject to more than ten (10) depositions (including Rule 30(b)(6) depositions) and no Named Plaintiff shall be subject to more than three (3) depositions (including Rule 30(b)(6) depositions). Fed. R. Civ. P. 30(b)(6) depositions will be limited to a total of no more than 7 hours per defendant family where a single witness serves as the deponent, and no more than 10 hours per defendant family where multiple witnesses serve as the Rule 30(b)(6) deponent for a defendant family; regardless of whether a defendant family elects to proffer a single 30(b)(6) witness or multiple such witnesses in response to a 30(b)(6) notice of deposition, such a deposition shall count only as a single deposition.

(D) Absent good cause shown, the maximum number of fact depositions of third parties shall be 25 depositions per side, inclusive of cross-noticed third party fact depositions.

(E) If any individuals have been employed by more than one Defendant, they may be deposed only once and shall not be counted twice for purposes of the previous paragraph. If, upon the receipt of a deposition notice, a party becomes aware that a witness currently employed by the receiving party was previously employed by another party, and the noticing party has not expressed knowledge of this fact, the party receiving the notice shall make this fact known within a reasonable time after learning about the witness' prior employment. In such circumstances, the parties will confer and agree on how such individuals shall be counted for the purpose of these totals. In accordance with Federal Rule of Civil Procedure 30(d), depositions shall be limited to 7 hours each, except upon agreement of the witness or the party producing the witness. However, the parties will confer with each other in advance with respect to the timing of conducting such depositions.

(F) In the event that any percipient witness who has received a deposition notice also is likely to be designated as a Rule 30(b)(6) representative, or in the event that any Rule 30(b)(6) designee also is likely to be deposed in his or her individual capacity, the parties will use their best efforts to coordinate so as to avoid multiple depositions of the same witness.

(G) With respect to non-party depositions, if Plaintiffs and Defendants cross-notice a third party for deposition, the parties shall meet and confer regarding the division of time among the parties. Parties may seek leave of Court for additional time for good cause

8

or if they are otherwise unable to agree upon the division of time for a deposition. Plaintiffs and Defendants will meet and confer regarding a potential deposition protocol regarding procedures for depositions, including allocation of time for third party depositions.

(H) The parties will meet and confer in good faith in connection with any pretrial order to determine if a stipulation can be agreed to concerning various evidentiary issues addressed in the Federal Rules of Evidence ("FRE"), including authenticity (FRE 902 & 903), duplicates (FRE 1001(4) & 1003), the requirement for a sponsoring witness to establish authenticity or best evidence, and status of a document as a business record (FRE 803(6). The parties reserve all rights regarding the use of requests for admission to resolve potential evidentiary objections that cannot be resolved by stipulation.

(I) With respect to non-evidentiary issues, Plaintiffs may jointly serve 45 requests for admission on each defendant family and Defendants may jointly serve 45 requests for admission on each Named Plaintiff.

(d) Merits Expert Discovery. The parties anticipate that they will require expert witnesses at the time of trial, but are not able to identify how many experts they will call at this time.

(e) The parties agree that a party should not be required to request an informal conference with the Court before filing a discovery motion.

(f) The parties agree that it is premature to explore settlement at this juncture.

(g) Trial by Magistrate Judge. The parties have not agreed to consent to jurisdiction by the Magistrate Judge under 28 U.S.C. § 636(c).

(h) Case Caption. The parties propose the matter be re-captioned *In re Turkey Antitrust Litigation.* All filings will be made under the matter No. 19-cv-08318.

(i) Miscellaneous.

(1) Any of the provisions and limitations set forth herein may be modified by agreement of the affected parties or by the Court for good cause shown.

(2) Should any dispute arise regarding the limitations and protocols provided above with respect to discovery, the parties will meet and confer in an attempt to reach a mutually agreeable solution before seeking court intervention.

(2) With respect to discovery served pursuant to Federal Rule of Civil Procedure 30, 33, 34, and 36, Plaintiffs and Defendants will coordinate efforts to avoid serving duplicative or unduly burdensome discovery.

Dated:                                                    Respectfully submitted,

By: _____*s/ Shana E. Scarlett*_____
Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950
steve@hbsslaw.com

By: _____*s/ Britt M. Miller*_____
Britt M. Miller
Robert E. Entwisle
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com

Sybil L. Dunlop
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone: (612) 373-8346
sdunlop@greeneespel.com

***Counsel for Cargill, Incorporated and Cargill Meat Solutions Corporation***

10

W. Joseph Bruckner
Brian D. Clark
Maureen Kane Berg
Simeon Morbey
Justin R. Erickson
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
mkberg@locklaw.com
samorbey@locklaw.com
jrerickson@locklaw.com

*Counsel for Plaintiffs and the Proposed Direct Purchaser Class*


By:___*s/Robert A. Clifford*_____
Robert A. Clifford
Shannon M. McNulty
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
Telephone: (312) 899-9090
rac@cliffordlaw.com
smm@cliffordlaw.com

Jonathan W. Cuneo
Blaine Finley
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
jonc@cuneolaw.com
bfinley@cuneolaw.com

*Counsel for Sandee's Plaintiffs and the Proposed Commercial and Institutional Indirect Purchaser Class*


By:____*s/ Christopher E. Ondeck*_____
Christopher E. Ondeck
Colin R. Kass
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW, Suite 600
Washington, DC 20004
Telephone: (202) 416-6800
condeck@proskauer.com
ckass@proskauer.com
Schuk@proskauer.com

Rucha A. Desai
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
rdesai@proskauer.com

Marc E. Rosenthal
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3530
mrosenthal@proskauer.com

*Counsel for Butterball LLC*

11

By:_____s/ Jennifer A.L. Battle_____
Michael L. McCluggage
Daniel D. Birk
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Telephone: (312) 660-7600
mmcluggage@eimerstahl.com
dbirk@eimerstahl.com

Joshua Goldberg
CARPENTER, LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
Telephone: (312) 777-4825
goldberg@carpenterlipps.com

Jennifer A.L. Battle
David J. Barthel
Theodore M. Munsell
Jill Rogers Spiker
Joel E. Sechler
CARPENTER, LIPPS & LELAND LLP
280 North High Street, Suite 1300
Columbus, Ohio 43215
Telephone: (614) 365-4100
battle@carpenterlipps.com
barthel@carpenterlipps.com
munsell@carpenterlipps.com
spiker@carpenterlipps.com
sechler@carpenterlipps.com

**Counsel for Cooper Farms, Inc.**

By:_____s/ Michael K. Sciaccotta_____
Michael K. Sciaccotta
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, Illinois 60606
Telephone: (312) 876-8000
Michael.sciaccotta@dentons.com

Gaspare J. Bono
Claire M. Maddox
Leslie A. Barry
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 496-7500
Gap.bono@dentons.com
Claire.maddox@dentons.com
Leslie.barry@dentons.com

**Counsel for Farbest Foods, Inc.**

By:_____s/ Carmine R. Zarlenga_____
Carmine R. Zarlenga
William Stallings
Stephen M. Medlock
Oral Pottinger
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20009
Telephone: (202) 263-3000
czarlenga@mayerbrown.com
wstallings@mayerbrown.com
smedlock@mayerbrown.com
opottinger@mayerbrown.com

**Counsel for Foster Farms, LLC, and Foster Poultry Farms, a California Corporation**

12

By:     *s/ Colby Anne Kingsbury*
Colby Anne Kingsbury
FAEGRE DRINKER BIDDLE & REATH LLP
311 South Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone: (312) 212-6500
Colby.Kingsbury@faegredrinker.com

Richard A. Duncan
Craig S. Coleman
Emily E. Chow
Isaac B. Hall
FAEGRE DRINKER BIDDLE & REATH LLP
90 S. Seventh Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 766-7000
Richard.duncan@faegredrinker.com
Craig.coleman@faegredrinker.com
Emily.chow@faegredrinker.com
Isaac.hall@faegredrinker.com

Christopher A. Kreuder
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000
Christopher.kreuder@faegredrinker.com

**Counsel for Hormel Foods Corporation and Hormel Foods, LLC**

By:     *s/ Gregory G. Wrobel*
Gregory G. Wrobel
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
Telephone: (312) 609-7500
gwrobel@vedderprice.com

Henry W. Jones, Jr.
JORDAN PRICE WALL GRAY JONES & CARLTON, PLLC
1951 Clark Avenue
Raleigh, North Carolina 27605
Telephone: (919) 828-2501
Facsimile: (919) 834-8447
hjones@jordanprice.com

**Counsel for House of Raeford Farms, Inc.**

By:     *s/ J. Douglas Baldridge*
Kirstin B. Ives
KIRSTIN B. IVES
230 West Monroe Street, Suite 2220
Chicago, Illinois 60606
Telephone: (312) 566-4803
kbi@falkenbergives.com

J. Douglas Baldridge
Lisa Jose Fales
Danielle R. Foley
Paul Feinstein
Andrew T. Hernacki
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
jdbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com
pfeinstein@venable.com
athernacki@venable.com

**Counsel for Perdue Foods LLC and Perdue Farms, Inc.**

By:_____*s/ Jacob D. Koering*_____
Jacob D. Koering
MILLER, CANFIELD, PADDOCK &
STONE, PLC
225 West Washington Avenue, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 460-4272
koering@millercanfield.com

William L. Monts III
Justin W. Bernick
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004-1109
Telephone: (202) 637-5600
William.monts@hoganlovells.com
Justin.bernick@hoganlovells.com

**Counsel for Agri Stats, Inc.**

By:_____*s/ Jordan Matthew Tank*_____
Jordan Matthew Tank
Sahrish Moyeed
LIPE LYONS MURPHY NAHRSTADT &
PONTIKIS
230 West Monroe Street, Suite 2260
Chicago, Illinois 60606
Telephone: (312) 702-0586
jmt@lipelyons.com
sm@lipelyons.com

Tiffany Rider Rohrbaugh
Rachel J. Adcox
Lindsey Strang Aberg
AXINN, VELTROP & HARKRIDER LLP
950 F Street, NW
Washington, DC 20004
Telephone: (202) 469-3550
trider@axinn.com
radcox@axinn.com
lstrang@axinn.com

**Counsel for The Hillshire Brands Company,
Tyson Foods, Inc., Tyson Fresh Meats, Inc.,
and Tyson Prepared Foods**

14

## CERTIFICATE OF SERVICE

I, Shana E. Scarlett, an attorney, herby certify that on December 4, 2020, I caused a true and correct copy of the foregoing to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all persons by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

        */s/ Shana E. Scarlett*
        SHANA E. SCARLETT

US.130288605.01

15

# TAB 2(a)

# Tab 2(a): ESI Protocol Disputed Provisions

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| **¶ II(K)(2): Relevancy Redactions** | **No "relevancy" redactions:** A party may not make redactions based on an assertion the date is not relevant. The only redactions permitted are on the basis of privilege or the two specific categories of privacy listed above. | **Redactions of Nonresponsive Highly Confidential Business Information:** A producing party may redact specific highly confidential business information relating to non-turkey businesses provided (1) the redacted information is both nonresponsive and irrelevant, and (2) the redacted information would not assist in understanding or providing context for the relevant portion of the document or document family of which it is a part. Such redactions must be identified as "Redacted – Highly Confidential Nonresponsive Information."[1] |
| **¶ V(A)(1): Time Period** | Except as noted elsewhere in this paragraph, the Parties agree that they may limit the processing of discoverable, non-structured data to that which was created, modified, sent, or received from January 1, 2007, through January 1, 2019. With respect to structured data, the parties agree the period for production of structured data will be January 1, 2002 through December 31, 2020.[2] | Except as noted elsewhere in this paragraph, the Parties agree that they may limit the processing of discoverable, non-structured data to that which was created, modified, sent, or received from January 1, 2009, through December 31, 2017. With respect to structured data, the parties agree the period for production of structured data will be January 1, 2007 through December 31, 2018. |

---

[1] Defendants reserve the right to seek the ability to redact the "personal information of friends or family to the extent they do not work in the Turkey industry or work for a Party's competitors," if this ESI protocol ultimately requires producing parties to collect, process, and review personal devices (e.g., cell phones) of Document Custodians.

[2] Plaintiffs reserve the right to request a "top-up" data production for post-2020 data as circumstances and the passage of time warrant. Defendants reserve the right to oppose that request.

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| ¶ V(D): Culling Collected Data | **D. Culling Collected Data:** The following TAR/CAL and Keyword Search Processes govern how collected data may be electronically culled in this matter.<br><br>1. **TAR/CAL Search Process:**<br><br>   a. **Use of Search Terms with TAR/CAL:**<br><br>      i. No later than 7 days after agreeing upon Document Custodians, the requesting Party will propose to a producing Party a limited number of Document Custodians for whom, across their email only, it requests that no search term pre-culling be used prior to applying TAR/CAL during the review process. However, the other data culling parameters described in ESI Protocol and Search Order may be applied to these Document Custodians, including to their email.<br><br>      ii. No later than 7 days after disclosure of a party's proposed search process, the Parties will meet and confer on any issues or disputes regarding the requesting Party's proposals.<br><br>   b. **Producing Party TAR/CAL Disclosures:**<br><br>      i. No later than 7 days after agreement or an order on document sources, a producing Party that elects to use TAR/CAL will disclose the following information | **D. Culling Collected Data**<br><br>1. **Use of Search Terms to Cull Unstructured ESI:**<br><br>   a. The Parties may use search terms and other limiters (including the exclusion of certain email domains as set forth in paragraph IV.D.2), as a means of limiting the volumes of information to be reviewed for responsiveness. To the extent that search terms are used to identify responsive ESI, a producing Party will notify the requesting Party of its intent to use search terms and disclose to the requesting Party (1) an initial list of search terms the producing Party intends to use and (2) whether the producing Party intends to use different search terms with different Document Custodians or Sources. The Parties will meet and confer in good faith regarding the disclosure and formulation of appropriate search terms and protocols to cull unstructured ESI.<br><br>   b. **Addition or Removal of Search Terms After Initial Search Term Negotiation:** If, after the completion of the initial search term negotiations, a requesting or producing Party determines that any search terms should be added to or removed from the initial search term list, then the requesting or producing Party shall advise the affected Parties in writing of the proposed change(s) to the search term(s) and of |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | regarding its use of a TAR/CAL process: (a) the name of the TAR/CAL software and vendor, (b) a general description of how the producing Party's TAR/CAL process will work, including how it will train the algorithm, such as using exemplars, keyword search strings, or some other method, (c) a general description of the categories or sources of the documents included or excluded from the TAR/CAL process, and (d) what quality control measures will be taken.<br><br>  c.  **Requesting Party Response:**<br><br>    i.  Within 7 days of receiving a producing Party's TAR/CAL Disclosures, the requesting Party may raise with the producing Party any concerns with the proposed TAR/CAL process or categories of documents that it proposes should be excluded from the TAR/CAL process. A requesting Party may also propose any exemplars it proposes be used to train a TAR/CAL tool or narrow keyword search strings it proposes be used to generate exemplars to train a TAR/CAL tool. A producing Party retains the right to reject and oppose | the reason(s) for the proposed change(s). Except by agreement or by order of the Court, a producing Party is not required to add search terms after completion of the processed described in paragraph V.D.1.a.<br><br>2.  **Use of Technology Assisted Review or Other Advanced Technology-Based Analytics to Cull Unstructured ESI:**<br><br>  a.  **Use of TAR:** A Party may use Technology Assisted Review ("TAR") to sort documents for linear review without disclosure of that use. If a Party elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to linear review, the parties will meet and confer regarding the following parameters that will apply to the use of TAR.<br><br>    i.  **Paper Documents:** The Parties agree to meet and confer to determine whether paper documents may be included in a or TAR process.<br><br>    ii.  **The TAR Tool:** A producing Party shall describe to a requesting Party the vendor and the TAR technology or tool being used, including a description of the TAR tool's procedures. |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | any such requests, subject to resolution by the Court.<br><br>d. **Cooperation:** The Parties agree to work together in good faith to resolve any differences that they may have over the producing Party's use of TAR/CAL and its processes, recall, and validation proposals. If an agreement cannot be timely reached, then the Parties agree to raise this issue with the Court.<br><br>2. **Keyword Search Process:**<br><br>a. **Iterative Process:** Developing efficient keyword search terms is an iterative process and will require transparent and cooperative efforts by both the producing and requesting Party; however, it is important to set certain limits in order to effectively and efficiently manage time and expense.<br><br>b. **Search Software Disclosures:** No later than 7 days after agreement or an order regarding document sources, the producing Parties will disclose any search software they have decided to use (including version number) and that software's default stop/noise words and search language syntax. Additionally, the Parties should use best efforts to disclose information that | b. A producing Party need not conduct any additional review of information subjected to, but not retrieved by, a TAR tool as part of the identification of the subset of information that will be subject to review and production, provided that the procedures in paragraph V.D.2.a.ii above are followed. |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | answers these questions regarding their search tool:<br><br>i. What stop words have been excluded from the index (if different than the default stop words for the tool)?<br><br>ii. Can searches be constrained by upper- and lowercase?<br><br>iii. Can numbers and single letters be searched?<br><br>iv. Are there characters that cannot be searched or are treated as spaces or ignored?<br><br>v. How are diacritics resolved?<br><br>vi. Can searches be run on metadata fields?<br><br>vii. Are proximity-limited search terms subject to an evaluation order, e.g., will terms structured X w/5 Y yield hits if the text reads Y w/5 X?<br><br>viii. Does the tool offer synonym searching?<br><br>ix. How does the tool account for common misspellings? | |

c. **First Phase Search Term Proposals:**

    i.  *Producing Party Proposes an Initial Set of Search Terms*: No later than 7 days after disclosing its search process to the requesting party, the producing Party will propose a set of search terms. The producing Party's proposal will include, to the extent known, semantic synonyms and common spellings of the keywords proposed. Where a producing Party seeks to exclude false positives (aka, "noise hits") by modifying or excluding certain keywords, then it will supply contextual examples of such false positives to explain why they must be excluded.

    ii.  *Requesting Party's Proposed Revisions*: Within 12 days of receiving the initial proposed search terms, the requesting Party will provide any proposed revisions to the producing Party's search terms.

    iii.  *Producing Party Provides Information Sufficient to Support Its Objections:* Within 8 days of receipt of the requesting Party's proposed revisions, the producing Party will provide information sufficient to support its objections to specific search terms, which could include, for example, estimates of the incremental number of

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | false positive hits and the incremental number of true positive hits introduced by the disputed search terms, as well as examples of the false positive hits.<br><br>iv. *Cooperation*: The producing Party and the requesting Party will work together in good faith to reasonably narrow the number of documents returned via search term hits and narrow the number of irrelevant documents captured as a result of the search terms. To the extent any disputes remain concerning the sufficiency of the producing Party's information in support of its objections and/or the use of specific search terms after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such disputes.<br><br>d. **Second Phase Search Term Proposals:**<br><br>i. *Requesting Party Proposes an Additional Set of Search Terms*: The Parties agree that Plaintiffs collectively and Defendants collectively may propose additional search terms to a producing Party one time. No later than 30 days after the first rolling production of documents | |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | by a producing party (which shall include documents from a set of agreed priority custodians), the requesting Party may propose a set of additional search terms. The requesting Party will explain generally the basis for the additional requested terms, which could include, for example, identifying by Bates number exemplar documents that support the request.<br><br>ii. *Producing Party Provides Information Sufficient to Support Its Objections*: No later than 10 days after the requesting Party provides an additional set of proposed search terms, the producing Party will provide information sufficient to support its objections to specific additional search terms, which could include, for example, estimates of the incremental number of false positive hits and the incremental number of true positive hits introduced by the disputed additional search terms, as well as examples of the false positive hits.<br><br>iii. *Requesting Party and Producing Party Will Meet and Confer Regarding* | |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | *Requesting Party's Proposed Additional Search Terms*: No later than 15 days after the requesting Party proposes an additional set of search terms, the Parties will meet and confer regarding any disputes or counter-proposals regarding the additional search terms. To the extent any disputes remain concerning the sufficiency of the producing Party's information in support of its objections and/or the use of specific additional search terms after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such disputes.<br><br>iv. *Good Cause Inability of a Party to Meet the Deadlines Imposed in this Order*: While it is expected that the Parties shall make their best efforts to comply with the deadlines set forth in this Order, it is conceivable that technical (or other) issues or unanticipated volumes may interfere with a Parties' best efforts to comply. Should a Party anticipate that for good cause it may be unable to meet a deadline set forth in this Order, the Party shall promptly raise the issue with the other Parties, explain the | |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | reason for the inability to timely comply, and negotiate a reasonable extension for compliance. If the Parties are unable to immediately agree upon a revised deadline for compliance, they shall promptly raise the issue with the Court for resolution. This provision shall not be construed as blanket permission for a Party to modify or extend the deadlines agreed to by the Parties and set forth in this Order without good cause, but rather, to recognize that when dealing with search and review of large volumes of electronically stored information, there are sometimes legitimate, unanticipated challenges that may interfere with a Party's best efforts to fulfill its obligations and therefore, to afford the Parties reasonable flexibility and mutual accommodation should such eventuality occur.<br><br>3. **Validation Procedures**: The review process should incorporate quality-control and quality-assurance procedures to ensure a reasonable production consistent with the requirements of Federal Rule of Civil Procedure 26(g). Once a producing Party reasonably believes that it has produced or identified for production substantially all responsive non-privileged | |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | documents, it shall conduct validation according to the sampling protocol described below and in Appendix 2. This Validation Protocol shall apply to the review process regardless of whether technology-assisted review ("TAR") or exhaustive manual review ("manual review") was used by the producing Party. | |
| ¶ V(E/F): Custodial Cellphone & Personal Communications Data | **E. Custodial Cellphone & Personal Communications Data:** 1. **Cellphones:** For Document Custodians agreed on by the Parties or ordered by the Court, a producing Party will take reasonable steps to identify whether any unique responsive communications are located on any cellphones in the possession, custody, or control of the producing Party. Unless agreed otherwise, the following shall govern the review and production of unique, responsive, and non-privileged communications for cellphone-based data for the agreed or ordered Document Custodians with respect to cellphones in the possession, custody, or control of the producing Party. a. Prior to any culling of the cellphone data, a producing Party will disclose the following to the extent reasonably possible: (1) to the extent not already provided, a list of cellphone number(s) used by the Document Custodian for work purposes, if any, (2) the name of the phone carrier that provided service for each | **E. Custodial Cellphone & Personal Communications Data:** The Parties shall meet and confer concerning the designation of select Document Custodians for whom cellphone and social-media accounts will be searched, in accordance with the following (substantive objections concerning responsiveness of any entry shall be preserved, and negotiated in connection with the responses to Requests for Production): 1. **Cellphones:** Mobile devices will be collected and searched if the following conditions are met: a. The mobile device is used by a Document Custodian; b. The mobile device is in the possession, custody, or control of the producing Party; c. The mobile device is used by the Document Custodian to carry out the Document Custodian's duties and responsibilities as an employee of the producing Party's Turkey business during the relevant Time Period; and |

| **Disputed Provision** | **Plaintiffs' Proposal** | **Defendants' Proposal** |
|---|---|---|
| | identified phone number, (3) the type of phone, including brand and model number, if known, (4) a list of installed communications-related applications on the Document Custodian's cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications if such applications are used for work purposes; and (5) whether or not the producing Party claims that a cellphone used by the Document Custodian for work purposes is not within its possession, custody, or control.<br><br>b.  A producing Party will review the following sources of information on a cellphone, to the extent reasonably available, to identify unique, responsive, and discoverable information:<br><br>   i.  **Cellphone Call and Voicemail Logs:** The logs of any calls made/received and voicemails left on a cellphone that the Document Custodian used for work purposes, if any, if the cellphone is in the possession, custody, or control of a producing Party.<br><br>   ii.  **Text Messages:** All text messages and/or iMessages on the cellphone device used for work purposes or contained in available backups/archives associated with the | d.  The Document Custodian has confirmed that the specific mobile device has substantively unique, non-duplicative information related to the producing Party's Turkey business that exists within the relevant Time Period or the agreed-upon time period for the individual Document Custodian.<br><br>To the extent that a mobile device is required to be collected and searched, the following shall be searched and produced:<br><br>i.  Cellphone Call, Calendar Entry, Voicemail, or Text Message, only to the extent that they are responsive and related to the producing Party's Turkey business; or<br><br>ii.  Contacts, to the extent they reflect a contact entry of a competitor of the producing Party's Turkey business, benchmarking service related to Turkey, or named Party.<br><br>In no instance shall a producing Party be required to produce any non-responsive contact, call record, voicemail, text, or calendar entry that is not related to the producing Party's Turkey business during the relevant Time Period or the agreed-upon time period for the |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | device, if any, if the cellphone is in the possession, custody, or control of a producing Party.<br><br>iii. **Ephemeral Messaging Applications**: All ephemeral messages and or logs of such messages on the cellphone device used for work purposes or contained in available backups/archives associated with the device, if any, if the cellphone is in the possession, custody, or control of a producing Party.<br><br>iv. To the extent Document Custodians use any other messaging applications to communicate for work purposes, then<br><br>2. **"Contacts":** A Document Custodian's relevant contacts (e.g., MS Outlook Contacts or cellphone-based contacts) **in the possession, custody or control of a Producing Party** will be exported to MS Excel (or .csv) with all reasonably available metadata fields. A Producing Party is entitled to redact or withhold information from the contacts file that does not relate to the Document Custodian's work. If, after reviewing the redactions, the Requesting Party believes that more information is needed about the redactions, then the Parties will meet and confer regarding | individual Document Custodian and the limited nature of Plaintiffs' information-sharing allegations as it is understood that a mobile device contains personal, non-business-related information that is private to the individual Document Custodian.<br><br>2. **Social Media Data:** If a Document Custodian confirms that he or she used Social Media for Turkey-related business purposes on behalf of the producing Party, then the requested communication(s) shall be searched, and responsive, non-privileged entries shall be produced if they are reasonably accessible. |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | the information redacted, and the producing Party shall provide explanations for information redacted or withheld. Any document produced with redactions permitted under this ESI Protocol shall maintain the electronic search capabilities of the other data in the spreadsheet.<br><br>3. **Social Media Data:** If a Document Custodian confirms that he or she (1) used Social Media for business purposes and (2) used that Social Media to communicate with an employee of another Defendant or otherwise regarding a subject relevant to the Litigation and included within a Request for Production, subject to objections to that Request, then the requested communication(s) must be produced if it is reasonably accessible, in the Producing Party's possession, custody, or control, and not withheld as privileged and/or as illegal to produce under applicable privacy laws. The Parties shall meet and confer to the extent there are any issues with respect to the format of such Social Media data. | |
| **Appendix 2: Validation Protocol** | A. The review process should incorporate quality-control and quality-assurance procedures to ensure a reasonable production consistent with the requirements of Federal Rule of Civil Procedure 26(g). Once a producing Party reasonably believes that it has produced or identified for production | None. |

| **Disputed Provision** | **Plaintiffs' Proposal** | **Defendants' Proposal** |
|---|---|---|
| | substantially all responsive non-privileged documents, it shall conduct validation according to the sampling protocol described below and in Appendix A. This Validation Protocol shall apply to the review process regardless of whether technology-assisted review ("TAR") or exhaustive manual review ("manual review") was used by the producing Party.<br><br>B. The Document Collection ("Collection") is defined as including all documents identified for review for responsiveness and/or privilege following the application of keywords or other culling criteria. This Validation Protocol assumes that the completeness or adequacy of the Collection has already been established. For purposes of the three putative plaintiff classes' validation requirements under this Validation Protocol, the Collection refers to the combined set of documents of a particular proposed class of plaintiffs, rather than to each individual named representative of a particular class of plaintiffs.<br><br>C. The Collection shall be partitioned into the following two or three Subcollections, for manual review or for TAR processes, respectively:<br><br>   1. Documents identified by the review as responsive to at least one Request for Production, including any privileged documents, but not including family members of responsive documents, unless those family members are deemed to be | |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | responsive in their own right ("Subcollection C(1)"); | |
| | 2. Documents coded as non-responsive by a human reviewer, regardless of how the documents were selected for review (e.g., by TAR, manual review, or otherwise) ("Subcollection C(2)"); | |
| | 3. Documents excluded from manual review as the result of a TAR process ("Subcollection C(3)"). If the review process involved only manual review and no TAR, the Collection will not include Subcollection C(3). | |
| | 4. Documents excluded by a keyword search process ("Subcollection C(4)"). Both a keyword search-only search process and a TAR search process that relies upon keyword search culling must include a Subcollection C(4). | |
| | D. A sample shall be drawn consisting of the following: | |
| | 1. 500 documents selected at random from Subcollection C(1) ("Subsample D(1)"); | |
| | 2. 500 documents selected at random from Subcollection C(2), if TAR was used, otherwise 2,500 documents selected at random from Subcollection C(2), if manual review was used ("Subsample D(2)"); | |
| | 3. 2,000 documents selected at random from Subcollection 1(c) if TAR was used ("Sample | |

| **Disputed Provision** | **Plaintiffs' Proposal** | **Defendants' Proposal** |
|---|---|---|
| | D(3)"). If TAR was not used, there will be no Subsample D(3). | |

Plaintiffs' Proposal (continued):

4. 2,000 documents selected at random from Subcollection C(4) if a keyword search-only search process was used or a TAR search process relied upon keyword search culling before application of TAR ("Sample D(4)"). If a TAR process did not rely upon keyword search culling before application of Tar, there will be no Subsample C(4).

E. Should a producing Party believe that the sample sizes specified in Paragraph III(D) would be disproportionate or unduly burdensome under the circumstances, that Party shall promptly raise the issue with the requesting Party. To the extent a dispute remains concerning the sample sizes to be used after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such dispute.

F. The sample of 3,000-5,000 documents comprised of the documents from Subsamples D(1), D(2), and, if TAR was used, D(3), and if keyword search culling was used, D(4), shall be combined into a single Validation Sample, with no indication of the Subcollection from which the documents were derived or how they were previously coded. The Validation Sample shall be reviewed and coded by a subject matter expert ("SME") who is knowledgeable about the subject matter of the litigation. This should be an

| **Disputed Provision** | **Plaintiffs' Proposal** | **Defendants' Proposal** |
|---|---|---|
| | attorney who is familiar with the RFPs and the issues in the case. During the course of the review of the Validation Sample, the SME shall not be provided with any information concerning the Subcollection or Subsample from which any document was derived or the prior coding of any document. The intent of this requirement is to ensure that the review of the Validation Sample is blind; it does not preclude a Party from selecting as SMEs attorneys who may have had prior involvement in the original review process.<br><br>G. Once the coding in Paragraph III(F) has been completed, the producing Party shall prepare a table listing each of the 3,000-5,000 documents in the Validation Sample. For each document, the table shall include:<br><br>    1. the Bates number of the document (for documents produced), or a control/identification number (for non-produced documents);<br><br>    2. the Subsample from which the document came (i.e., D(1), D(2), or, if TAR was used, D(3), or if keyword search culling was used, D(4));<br><br>    3. the SME's responsiveness coding for the document (i.e., responsive or non-responsive);<br><br>    4. the SME's privilege coding for the document (i.e., privileged or not privileged). If the document is coded as non-responsive, a privilege determination need not be made. All | |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | documents in the Validation Sample coded as privileged shall be included on the producing Party's Privilege Log, as per the requirements set forth in the Protective Order. | |

Plaintiffs' Proposal continued:

5.  for putative class plaintiffs, the named class representative associated with the document.

H.  The following items shall be provided to the requesting Party:

1.  the table described in Paragraph III(G);

2.  a copy of each responsive, non-privileged document in the Validation Sample that was not previously produced or identified for production to the requesting Party;

3.  the statistics and recall estimate detailed in Paragraph J ("Method of Recall Estimation") to this Order.

I.  Once the requesting Party has received and has had an opportunity to review the items described in Paragraph III(H) and Appendix A, the Parties shall meet and confer to determine whether or not the Parties agree that the recall estimate, and the quantity and nature of the responsive documents identified through the sampling process, indicate that the review is substantially complete. If the recall estimate and the samples indicate that Subcollections C(2), C(3), and/or C(4) still contain a substantial number of non-marginal, non-duplicative responsive documents as compared to Subcollection C(1), the

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | review and quality assurance process shall continue, and the validation process shall be repeated, as warranted. If the parties are unable to agree on whether the review is substantially complete, or whether the validation process must be repeated, the parties may raise the issue with the Court.<br><br>**J. Method of Recall Estimation:** An estimate of recall shall be computed to inform the decision-making process described in III(H) of the Validation Protocol; however, the absolute number in its own right shall not be dispositive of whether or not a review is substantially complete. Also of concern is the novelty and materiality (or conversely, the duplicative or marginal nature) of any responsive documents identified in Subsamples D(2), D(3), and/or D(4). The estimate of recall shall be derived as described below, depending on whether or not the review process involved the use of TAR. It should be noted that, when conducted by an SME pursuant to Paragraph III(F) of the Validation Protocol, a recall estimate on the order of 70% to 80% is consistent with, but not the sole indicator of, an adequate (i.e., high-quality) review. A recall estimate somewhat lower than this does not necessarily indicate that a review is inadequate, nor does a recall in this range or higher necessarily indicate that a review is adequate; the final determination also will depend on the quantity and | |

nature of the documents that were missed by the review process.

1. **Recall Estimation Method for a Review Process Involving TAR:**

   a. _The number of responsive documents found_ ≈ the size of Subcollection C(1) × the number of responsive docs in Subsample D(1) ÷ 500.

   b. _The number of responsive documents coded incorrectly_ ≈ the size of Subcollection C(2) × the number of responsive documents in Subsample D(2) ÷ 500.

   c. _The number of responsive documents not reviewed_ ≈ (size of Subcollection C(3) + size of Subcollection C(4)) × (the number of responsive documents in Subsample D(3) + the number of responsive documents in Subsample D(4)) ÷ (total documents in Subcollection C(3) + C(4)).

   d. _Estimated recall_ ≈ the number of responsive documents found ÷ (the number of responsive documents found + the number of responsive documents coded incorrectly + the number of responsive documents not reviewed).

2. **Recall Estimation Method for a Review Process Involving Manual Review:**

   a. _The number of responsive documents found_ ≈ the size of Subcollection C(1) × the

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | *number of responsive documents in Subsample D(1) ÷ 500.* <br><br> b. <u>The number responsive documents coded incorrectly</u> ≈ (the size of Subcollection C(2) + the size of Subcollection C(4)) × (the number of responsive documents in Subsample D(2) + number of responsive documents in Subsample D(4)) ÷ (total documents in Subcollection C(3) + C(4)). <br><br> c. <u>Estimated recall</u> ≈ the number of responsive documents found ÷ (the number of responsive documents found + the number of responsive documents coded incorrectly). | |

# TAB 2(b)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| OLEAN GROCERY COOPERATIVE, INC., et al., | Case Nos. 1:19-cv-08318, 20-cv-02295 |
| Plaintiffs, | Hon. Virginia M. Kendall |
| v. | **TAB 2(b): PLAINTIFFS' PROPOSED[1] ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS** |
| AGRI STATS, INC., et al., | |
| Defendants. | |
| SANDEE'S CATERING, | |
| Plaintiff, | |
| v. | |
| AGRI STATS, INC., et al., | |
| Defendants. | |

This Order Regarding Production Of Electronically Stored Information And Paper Documents ("ESI Protocol Order") shall govern the Parties in the above-captioned cases whether they currently are involved or become so in the future, and any related actions that may later be consolidated with these cases (collectively, the "Litigation").

## I.  GENERAL PROVISIONS

A.  **Applicability:**  This ESI Protocol Order will govern the production of ESI and paper documents.

B.  **Limitations & Non-Waiver:**  Nothing in this ESI Protocol Order shall be construed to affect the admissibility of discoverable information.  All objections to the admissibility of any documents are preserved and may be asserted at any time.  Pursuant to the terms of this ESI Protocol Order, information regarding search process and electronically-stored information ("ESI") practices may be disclosed, but compliance with this ESI Protocol Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason, including as irrelevant, undiscoverable, or otherwise

---

[1] All disputed portions of Plaintiffs' Proposed Order are highlighted in yellow.

inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. For the avoidance of doubt, a Party's compliance with this ESI Protocol Order will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, the common-interest and joint-defense privileges, or any other applicable privilege. All parties preserve all such privileges and protections, and all parties reserve the right to object to any such privileges and protections.

C.   **ESI Liaisons:**

   1.   **Designation:**  Each Party agrees to designate an ESI Liaison within 7 days after entry of this ESI Protocol Order.  Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

   2.   **Duties of ESI Liaison:**  Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible) and have access to personnel most knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, answer pertinent questions.

   3.   **Time Frame for ESI Issue Resolution:**  Each ESI Liaison will acknowledge receipt of an ESI-related inquiry from another ESI Liaison within 3 business days after the initial inquiry and respond substantively no later than 10 business days after the initial inquiry.  If the responding ESI Liaison believes the ESI issue in question is particularly complex and requires more than 10 business days to respond substantively, then within 10 business days the responding ESI Liaison will provide a general explanation of the process necessary to answer the question and provide an estimated response date.

D.   **Deadlines:**  References to schedules and deadlines in this ESI Protocol Order shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

E.   **Definitions:**

   1.   "Discovery Material" is defined as all information produced, given, or exchanged by and among all Parties, or received from non-Parties in the Litigation, including all deposition testimony, testimony given at hearings or other proceedings, interrogatory answers, documents and all other discovery materials, whether produced informally or in response to requests for discovery.

   2.   Plaintiffs and Defendants, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this ESI Protocol Order.  A single Plaintiff or Defendant, as well as, where applicable, its respective officers, directors, employees, agents, and legal counsel, may also be referred to as a "Party" solely for the purposes of this ESI Protocol Order.

2

3. "Plaintiffs" as used herein shall mean the putative Direct Purchaser Plaintiff class, and Commercial and Institutional Indirect Purchaser Plaintiff class as set forth in the respective operative complaints.

4. "Defendants" as used herein shall mean Defendants named in the Direct Purchaser and Commercial and Institutional Indirect Purchaser Complaints.

5. To avoid misunderstandings about terms, all Parties should consult the most current edition of The Sedona Conference Glossary.

F. **Authenticity and Admissibility:** Nothing in this ESI Protocol Order shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

G. **Confidential Information:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as confidential under the Protective Order entered in these cases.

H. **Preservation:** The Parties agree that they shall continue to take reasonable steps to preserve relevant Documents and Electronically Stored Information that may exist for a Document or ESI, in accordance with their obligations under applicable law. The Parties will meet and confer regarding the scope of preservation, including the end date for preservation, custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Litigation and disclosures regarding custodians, data sources, date ranges, and categories of information necessary to facilitate the Parties' negotiations. By preserving or producing information for the purpose of this Action, the Parties are not conceding that such material is discoverable.

## II. GENERAL PRODUCTION FORMAT PROTOCOLS

A. **TIFFs:** Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image, pursuant to ¶ II(E). Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape). The imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks. Produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format and visible in the form in which the electronic document was last saved, shall also be imaged so that such content is viewable on the image file. Nothing in this subsection requires the modification or alteration of any document or data in order to make any hidden content, tracked changes or edits, comments, notes, and other similar information viewable if it is not already viewable in the form in which the electronic document was last saved. Documents that are

difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively," or in the alternative, if applicable, "Exception File Unable to Be Imaged." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats.

B. **Text Files:** Each ESI item produced under this ESI Protocol Order shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

    1. **OCR:** A producing Party may make paper documents available for inspection and copying/scanning in accordance with FED. R. CIV. P. 34 or, additionally or alternatively, scan and OCR paper documents. Where OCR is used, the Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Even if OCR is used by a producing Party, however, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

    2. **ESI:** Except for redacted documents, emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available. For redacted documents, Parties shall provide OCR text in accordance with the specifications in Section II.B(1).

C. **Production of Native Items:** The Parties agree that ESI shall be produced as TIFF images consistent with the format described in section II.A. with an accompanying load file, which will contain, among other data points, the ESI data points listed in the Appendix hereto. The exception to this rule shall be spreadsheet-application files (e.g., MS Excel), presentation files (e.g., MS PowerPoint), personal databases (e.g., MS Access), multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), and any non-standard file types that are not easily rendered to image for which all ESI items shall be produced in native format. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced. The corresponding load file shall include NativeFileLink information for each native file that is produced. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL, to determine a reasonable form of production of usable data. Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

D. **Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular

document produced in native format and this ESI Protocol Order does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in the Appendix.

E. **Bates Numbering:**

1.    All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, hyphens, or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2.    If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

3.    Producing Parties shall attempt to brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

F. **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

G. **Entire Document Families:** Subject to Paragraphs II(K)(1) and II(K)(2) below, entire Document families must be produced, even if only the parent email or an attachment to an email is responsive, excepting (1) junk files and non-user-created content routinely excluded during processing (provided such routine processing-generated exclusions are agreed to among the parties), and (2) documents that are withheld on the basis of privilege and in compliance with the parties' stipulation or the Court's order on such assertions of privilege. Where a document is fully withheld from an otherwise produced family on the basis of privilege, the producing Party may produce a single-page TIFF slip sheet indicating that the document was withheld. The corresponding load file record for such a document only needs to provide information for the following fields: BegBates, EndBates, BegAttach, EndAttach, Withheld Placeholder, and Privilege Asserted.

H. **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the document-level metadata fields identified in the Appendix below (to the extent available). The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's

data load file should match the total number of designated document breaks in the Image Load files in the production.

I.  **Color:**  Documents or ESI containing color need not be produced initially in color. If, however, an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that the document or ESI item be produced in its original colors.  For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI).  All requirements for productions stated in this ESI Protocol Order regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format.  Requests that a document be produced in color for the reasons set forth in this ¶ II(I) will not be unreasonably denied by the producing Party.  If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

J.  **Confidentiality Designations:**  If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), or to the terms of the Protective Order entered by the Court in the Litigation or a confidentiality stipulation agreed to by the Parties, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images.  This designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible.  Requesting Parties shall ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form.  Failure to comply with the procedures set forth in this ESI Protocol Order, any protective order or confidential order, or any confidential stipulation shall not waive any protection or confidential treatment.  The Parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate.  The Parties agree to work together on an as-needed (and per document) basis to address any potential over (or under) designation.

K.  **Redactions**

1.  **Personal Data Redactions:** A producing Party may redact personal information to the extent that the information falls within one of the following categories: (1) the information relates to medical or health issues of an individual or (2) social security numbers, bank account information, or personal passcodes.  Such redactions should be identified as "Redacted – Personal Data" on the face of the document.

2.  **No "relevancy" redactions:**  A party may not make redactions based on an assertion the date is not relevant.  The only redactions permitted are on the basis of privilege or the two specific categories of privacy listed above.

6

L. **Production Media & Protocol:**  A producing Party may produce documents via email, readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"), or via file-sharing service, including any network-based secure file transfer mechanism or SFTP.  Any requesting Party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide a copy of that production using Production Media.  The producing Party may encrypt Production Media, and will provide a decryption key to the requesting Party in a communication separate from the production itself.

## III.  PAPER DOCUMENT PRODUCTION PROTOCOLS

A. **Scanning:**  A producing Party may make paper documents available for inspection and copying in accordance with FED. R. CIV. P. 34 or, additionally or alternatively, OCR paper documents.  Where OCR is used, the Parties agree that the following ¶¶ III(B)-(E) shall apply.

B. **Coding Fields:**  The following information shall be produced in the load file accompanying production of paper documents:  (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N) or otherwise indicating that a redaction is present.  Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y" or otherwise indicate that the document originated in paper, and such indication shall be explained to the requesting party.

C. **Unitization of Paper Documents:**  Paper documents should be logically unitized for production to the extent reasonably practicable.  Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records.  The Parties will make reasonable efforts to unitize documents correctly.

1. **Relationship:**  The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable.

2. **Identification:**  Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

## IV.  ESI METADATA FORMAT AND PROCESSING ISSUES

A. **System Files:**  ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.  Other file types may be added to the list of excluded files if they clearly do not have user-created content.

B.   **Metadata Fields and Processing:**

1.   **Time Zone:**  To the extent reasonably practicable, ESI items shall be processed using a consistent time zone of Central Standard Time both in the metadata and on the image of the document. For the avoidance of doubt, ESI items that have already been previously processed in a different time zone need not be reprocessed in Central Standard Time, though the time zone previously used shall be reflected in the metadata.  Any party producing ESI in a time zone other than Central Standard Time will provide notice of that fact to the other party's ESI Liaisons.

2.   **Auto Date/Time Stamps:**  To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

3.   Except as otherwise set forth in this ESI Protocol Order, ESI files shall be produced with at least each of the data fields set forth in the Appendix that are available and can reasonably be extracted from a document.

4.   The Parties are not obligated to manually populate any of the fields in the Appendix if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields:  (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian/Custodians All/Other, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeLink fields, which should be delivered regardless of whether the fields can be populated pursuant to an automated process.

C.   **Redaction:**

1.   The Parties agree that, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ II(C), *supra*.  Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction, including but not limited to the metadata fields listed in the Appendix, shall be provided.  The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable.  These documents may be redacted in native format.

2.   If the items redacted and partially withheld from production are audio/visual files, the producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content.  If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the producing Party to produce the unredacted portion of the content.

D.   **Email Processing, Review, and Production:**

1.   **Email Threading:**  Except for documents withheld or redacted on privilege grounds, the Parties will not suppress email threads in their productions, but may do so for the purposes of internal review.

2.     **Email Domains:**  Producing Parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources.  To the extent a Party opts to exclude uniquely identifiable email domain names (e.g., emails from domains typically associated with junk or irrelevant topics like sports, fantasy team competitions, retailer advertising, and newsletters or alerts from non-industry sources) as part of its initial filter of potentially responsive documents, that Party will maintain a list of the domain names excluded under this paragraph.

E.     **De-duplication:**  A producing Party may de-duplicate any file globally (i.e., across Document Custodians) at the "family" level (i.e., families should not be broken due to de-duplication).  The producing Party will make a reasonable effort to identify all custodians who were in possession of any de-duplicated documents through an appropriate load file field such as DuplicateCustodian or CustodianAll/Other (as noted in the Appendix). Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in the Appendix to the extent such metadata exists.  In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated duplicate custodian information, as well as BCC information to the extent such metadata exists.  Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing Party no later than 7 days after that Party has substantially completed its production of ESI.

1.     Duplicate electronic documents shall be identified by utilizing the industry-standard process of comparison of auto-generated hash values (e.g., MD5 or SHA-1).  All electronic documents bearing an identical value will be considered duplicative.  The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable.  The producing Party is not obligated to extract, review, or produce entirely duplicate ESI documents.

2.     Duplicate email shall be identified by utilizing the industry-standard process of comparison of auto-generated hash values (e.g., MD5 hash values) for the email family, which shall include the parent email and all attachments. Duplicate identification will be identified at a family level, including message and all attachments. Email families bearing an identical value are considered a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

F.     **Zero-byte Files:**  The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names.  If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file.  The requesting Party

may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

G.    **Microsoft "Auto" Feature:**  To the extent reasonably practicable and technologically possible for a producing Party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be identified in a load file, metadata field, or otherwise as having these features.

H.    **Hidden Text:**  ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

I.    **Embedded Objects:**  Microsoft Excel spreadsheets (.xls) embedded in Microsoft Word documents will be extracted as separate documents and treated as attachments to the document.  The Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments). Notwithstanding the foregoing, documents that have already been previously processed need not be reprocessed in order to comply with this paragraph IV.I.

J.    **Compressed Files:**  Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed and extracted in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

K.    **Password-Protected, Encrypted, or Proprietary-Software Files:**  With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing Party will take reasonable steps to obtain identified passwords and remove such protection so that the documents can be reviewed and produced if appropriate.  ESI that is likely to contain responsive information that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

## V.    <u>PARAMETERS FOR CULLING AND REVIEWING ESI AND PAPER DOCUMENTS</u>

A.    **General Provisions**

1.    **Time Period:** Except as noted elsewhere in this paragraph, the Parties agree that they may limit the processing of discoverable, non-structured data to that which was created, modified, sent, or received from January 1, 2007, through January 1,

==2019.  With respect to structured data, the parties agree the period for production of structured data will be January 1, 2002 through December 31, 2020.[2]==

2. **Meet and Confer:** If the Parties cannot reach agreement under the provisions of this Section V, any dispute may be presented to the Court. All meet-and-confer sessions under this Section V will involve each Party's respective ESI Liaison.

B.  **Document Custodians and Sources**

1. **Initial Document Custodians and Sources**:  No later than 7 days after answers to Requests for Production under Federal Rule of Civil Procedure 34 are due, the Parties agree to commence discussions about Document Custodians and non-custodial document sources, including the process and procedure for negotiating and disclosing such sources.  The parties will meet and confer in good faith, and in accordance with the parties' Rule 26(f) Report.

2. **Additional Document Custodians or Sources:**  If, after the initial Document Custodian and Source negotiations described in the preceding paragraph, a requesting Party determines that additional Document Custodians or Sources should be added, then the requesting Party shall advise the producing Party in writing of the proposed additional Document Custodians or Sources and the basis for the request.  If the Parties have not agreed whether to add the Document Custodian or Source within 21 days of the requesting Party's request, then the Parties may bring the matter to the Court via motion within 21 days or the issue is waived, unless the parties agree to defer resolution of the issue.  The parties shall raise disputed Document Custodians or Sources via a joint letter brief not to exceed five pages split equally between Plaintiffs and Defendants.

3. Except by agreement of the Parties or by order of the Court, a producing Party is not required to add Document Custodians or Sources after the deadlines identified above.

C.  **Pre-Search Deduplication & Culling of Collected Data**

1. **De-Duplication:**  Before running a search process described herein, data should be de-duplicated in accordance with ¶ IV.E.

2. **Paper Documents:**  The Parties agree to meet and confer to determine whether paper documents scanned to electronic form for litigation may be included in any keyword or TAR process.

3. **Targeted Collections:**  If the Parties agree to testing of search terms, only documents a producing Party intends to subject to electronic searching parameters should be included in the data set against which search terms are tested.

---

[2] Plaintiffs reserve the right to request a "top-up" data production for post-2020 data as circumstances and the passage of time warrant.  Defendants reserve the right to oppose that request.

4. **Exception Reporting:** For any documents that are reasonably likely to contain relevant information not otherwise identified as system or operating files, and not otherwise covered by this protocol (including ¶ IV.K), the producing Party must disclose processing exceptions that are unresolved by the time set for substantial completion of document productions within 7 days after substantial completion.

5. **Disclosure of Other Culling Parameters Required:** A producing Party is permitted to cull data using the agreed-upon custodial and non-custodial sources, agreed-upon date parameters, and agreed-upon search terms (if applicable), and a producing Party is permitted to remove known system or operating files, such as those that appear on the National Software Reference Library (NSRL) hash list. As such, the Parties may cull entire file directories from computer hard drives that contain Program Files, Program Data, SWTOOLS, Windows Operating System files, etc. For those excluded directories, the Parties will only conduct searches on user-created content that is reviewable and likely to yield relevant content.

D. **Culling Collected Data:** The following TAR/CAL and Keyword Search Processes govern how collected data may be electronically culled in this matter.

   1. **TAR/CAL Search Process:**

      a. **Use of Search Terms with TAR/CAL:**

         i. No later than 7 days after agreeing upon Document Custodians, the requesting Party will propose to a producing Party a limited number of Document Custodians for whom, across their email only, it requests that no search term pre-culling be used prior to applying TAR/CAL during the review process. However, the other data culling parameters described in ESI Protocol and Search Order may be applied to these Document Custodians, including to their email.

         ii. No later than 7 days after disclosure of a party's proposed search process, the Parties will meet and confer on any issues or disputes regarding the requesting Party's proposals.

      b. **Producing Party TAR/CAL Disclosures:**

         i. No later than 7 days after agreement or an order on document sources, a producing Party that elects to use TAR/CAL will disclose the following information regarding its use of a TAR/CAL process: (a) the name of the TAR/CAL software and vendor, (b) a general description of how the producing Party's TAR/CAL process will work, including how it will train the algorithm, such as using exemplars, keyword search strings, or some other method, (c) a general description of the categories or sources of the documents included or excluded from the TAR/CAL process, and (d) what quality control measures will be taken.

      c. **Requesting Party Response:**

         i. Within 7 days of receiving a producing Party's TAR/CAL Disclosures, the requesting Party may raise with the producing Party any concerns with the proposed TAR/CAL process or categories of documents that it proposes should be excluded from the TAR/CAL process. A requesting Party may also propose

any exemplars it proposes be used to train a TAR/CAL tool or narrow keyword search strings it proposes be used to generate exemplars it proposes to train a TAR/CAL tool. A producing Party retains the right to reject and oppose any such requests, subject to resolution by the Court.

d. **Cooperation:** The Parties agree to work together in good faith to resolve any differences that they may have over the producing Party's use of TAR/CAL and its processes, recall, and validation proposals. If an agreement cannot be timely reached, then the Parties agree to raise this issue with the Court.

2. **Keyword Search Process:**

a. **Iterative Process:** Developing efficient keyword search terms is an iterative process and will require transparent and cooperative efforts by both the producing and requesting Party; however, it is important to set certain limits in order to effectively and efficiently manage time and expense.

b. **Search Software Disclosures:** No later than 7 days after agreement or an order regarding document sources, the producing Parties will disclose any search software they have decided to use (including version number) and that software's default stop/noise words and search language syntax. Additionally, the Parties should use best efforts to disclose information that answers these questions regarding their search tool:

   i. What stop words have been excluded from the index (if different than the default stop words for the tool)?

   ii. Can searches be constrained by upper- and lowercase?

   iii. Can numbers and single letters be searched?

   iv. Are there characters that cannot be searched or are treated as spaces or ignored?

   v. How are diacritics resolved?

   vi. Can searches be run on metadata fields?

   vii. Are proximity-limited search terms subject to an evaluation order, e.g., will terms structured X w/5 Y yield hits if the text reads Y w/5 X?

   viii. Does the tool offer synonym searching?

   ix. How does the tool account for common misspellings?

c. **First Phase Search Term Proposals:**

   i. *Producing Party Proposes an Initial Set of Search Terms*: No later than 7 days after disclosing its search process to the requesting party, the producing Party will propose a set of search terms. The producing Party's proposal will include, to the extent known, semantic synonyms and common spellings of the keywords proposed. Where a producing Party seeks to exclude false positives (aka, "noise hits") by modifying or excluding certain keywords, then it will supply contextual examples of such false positives to explain why they must be excluded.

ii. *Requesting Party's Proposed Revisions*: Within 12 days of receiving the initial proposed search terms, the requesting Party will provide any proposed revisions to the producing Party's search terms.

iii. *Producing Party Provides Information Sufficient to Support Its Objections*: Within 8 days of receipt of the requesting Party's proposed revisions, the producing Party will provide information sufficient to support its objections to specific search terms, which could include, for example, estimates of the incremental number of false positive hits and the incremental number of true positive hits introduced by the disputed search terms, as well as examples of the false positive hits.

iv. *Cooperation*: The producing Party and the requesting Party will work together in good faith to reasonably narrow the number of documents returned via search term hits and narrow the number of irrelevant documents captured as a result of the search terms. To the extent any disputes remain concerning the sufficiency of the producing Party's information in support of its objections and/or the use of specific search terms after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such disputes.

d. **Second Phase Search Term Proposals:**

i. *Requesting Party Proposes an Additional Set of Search Terms*: The Parties agree that Plaintiffs collectively and Defendants collectively may propose additional search terms to a producing Party one time. No later than 30 days after the first rolling production of documents by a producing party (which shall include documents from a set of agreed priority custodians), the requesting Party may propose a set of additional search terms. The requesting Party will explain generally the basis for the additional requested terms, which could include, for example, identifying by Bates number exemplar documents that support the request.

ii. *Producing Party Provides Information Sufficient to Support Its Objections*: No later than 10 days after the requesting Party provides an additional set of proposed search terms, the producing Party will provide information sufficient to support its objections to specific additional search terms, which could include, for example, estimates of the incremental number of false positive hits and the incremental number of true positive hits introduced by the disputed additional search terms, as well as examples of the false positive hits.

iii. *Requesting Party and Producing Party Will Meet and Confer Regarding Requesting Party's Proposed Additional Search Terms*: No later than 15 days after the requesting Party proposes an additional set of search terms, the Parties will meet and confer regarding any disputes or counter-proposals regarding the additional search terms. To the extent any disputes remain concerning the sufficiency of the producing Party's information in support of its objections and/or the use of specific additional search terms after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such disputes.

iv. *Good Cause Inability of a Party to Meet the Deadlines Imposed in this Order*: While it is expected that the Parties shall make their best efforts to comply with the deadlines set forth in this Order, it is conceivable that technical (or other) issues or unanticipated volumes may interfere with a Parties' best efforts to comply. Should a Party anticipate that for good cause it may be unable to meet a deadline set forth in this Order, the Party shall promptly raise the issue with the other Parties, explain the reason for the inability to timely comply, and negotiate a reasonable extension for compliance. If the Parties are unable to immediately agree upon a revised deadline for compliance, they shall promptly raise the issue with the Court for resolution. This provision shall not be construed as blanket permission for a Party to modify or extend the deadlines agreed to by the Parties and set forth in this Order without good cause, but rather, to recognize that when dealing with search and review of large volumes of electronically stored information, there are sometimes legitimate, unanticipated challenges that may interfere with a Party's best efforts to fulfill its obligations and therefore, to afford the Parties reasonable flexibility and mutual accommodation should such eventuality occur.

3. **Validation Procedures**: The review process should incorporate quality-control and quality-assurance procedures to ensure a reasonable production consistent with the requirements of Federal Rule of Civil Procedure 26(g). Once a producing Party reasonably believes that it has produced or identified for production substantially all responsive non-privileged documents, it shall conduct validation according to the sampling protocol described below and in Appendix 2. This Validation Protocol shall apply to the review process regardless of whether technology-assisted review ("TAR") or exhaustive manual review ("manual review") was used by the producing Party.

**E. Custodial Cellphone & Personal Communications Data:**

1. **Cellphones:** For Document Custodians agreed on by the Parties or ordered by the Court, a producing Party will take reasonable steps to identify whether any unique responsive communications are located on any cellphones in the possession, custody, or control of the producing Party. Unless agreed otherwise, the following shall govern the review and production of unique, responsive, and non-privileged communications for cellphone-based data for the agreed or ordered Document Custodians with respect to cellphones in the possession, custody, or control of the producing Party.

a. Prior to any culling of the cellphone data, a producing Party will disclose the following to the extent reasonably possible: (1) to the extent not already provided, a list of cellphone number(s) used by the Document Custodian for work purposes, if any, (2) the name of the phone carrier that provided service for each identified phone number, (3) the type of phone, including brand and model number, if known, (4) a list of installed communications-related applications on the Document Custodian's cellphone, including ephemeral messaging applications (e.g., SnapChat, Confide, and Signal), Facebook Messenger, and other such applications if such applications are used for work purposes; and (5) whether or not the producing Party claims that a cellphone used by the Document Custodian for work purposes is not within its possession, custody, or control.

15

b. A producing Party will review the following sources of information on a cellphone, to the extent reasonably available, to identify unique, responsive, and discoverable information:

    i. **Cellphone Call and Voicemail Logs:** The logs of any calls made/received and voicemails left on a cellphone that the Document Custodian used for work purposes, if any, if the cellphone is in the possession, custody, or control of a producing Party.

    ii. **Text Messages:** All text messages and/or iMessages on the cellphone device used for work purposes or contained in available backups/archives associated with the device, if any, if the cellphone is in the possession, custody, or control of a producing Party.

    iii. **Ephemeral Messaging Applications**: All ephemeral messages and or logs of such messages on the cellphone device used for work purposes or contained in available backups/archives associated with the device, if any, if the cellphone is in the possession, custody, or control of a producing Party.

    iv. To the extent Document Custodians use any other messaging applications to communicate for work purposes, then

2. **"Contacts":** A Document Custodian's relevant contacts (e.g., MS Outlook Contacts or cellphone-based contacts) **in the possession, custody or control of a Producing Party** will be exported to MS Excel (or .csv) with all reasonably available metadata fields. A Producing Party is entitled to redact or withhold information from the contacts file that does not relate to the Document Custodian's work. If, after reviewing the redactions, the Requesting Party believes that more information is needed about the redactions, then the Parties will meet and confer regarding the information redacted, and the producing Party shall provide explanations for information redacted or withheld. Any document produced with redactions permitted under this ESI Protocol shall maintain the electronic search capabilities of the other data in the spreadsheet.

3. **Social Media Data:** If a Document Custodian confirms that he or she (1) used Social Media for business purposes and (2) used that Social Media to communicate with an employee of another Defendant or otherwise regarding a subject relevant to the Litigation and included within a Request for Production, subject to objections to that Request, then the requested communication(s) must be produced if it is reasonably accessible, in the Producing Party's possession, custody, or control, and not withheld as privileged and/or as illegal to produce under applicable privacy laws. The Parties shall meet and confer to the extent there are any issues with respect to the format of such Social Media data.

F. **Structured Data:** To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the Requesting Party. Upon review of the report, the Requesting Party may make reasonable requests for

additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

## VI.     **MISCELLANEOUS PROVISIONS**

A.    **Inaccessible ESI:**  If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer to discuss resolving such assertions.  If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution. The following types of data stores are presumed to be inaccessible and are not subject to discovery, and need not be collected or preserved, absent a particularized need for the data as established by the facts and legal issues of the case (e.g., information suggesting that relevant evidence has been lost or is no longer available in other more accessible forms):

   1.    Deleted, slack, fragmented, or other data only accessible by forensics;

   2.    Random access memory (RAM) or temporary files; and

   3.    Server, system, or network logs.

B.    **Variations or Modifications:**  Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, which will be confirmed in writing.  In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification.  Upon request by the requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

SO ORDERED.

Dated: _____                    _____
                                         Hon. Virginia M. Kendall
                                         United States District Judge

## Appendix 1: ESI Metadata and Coding Fields

| Field Name[3] | Populated For (*Email, Edoc, Calendar, or All*) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was last modified. |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| Receive Date | Email | Date email was received. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |

---

[3] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| Field Name[3] | Populated For (*Email, Edoc, Calendar, or All*) | Field Description |
|---|---|---|
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or subject line of an email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Withheld Placeholder | All | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y." See also paragraph II.G above. |
| Privilege Asserted | All | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (e.g., "Redacted – Attorney Client Privileged" or "Withheld – Attorney Client Privileged") |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Legend/Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Attachment Count | Email, Edoc | Identifies the number of attachments to an email (if present/applicable). |
| Attachment Names | Email, Edoc | Identifies the file names of all attachments to an email (if present/applicable). |
| Calendar Date Begin | Calendar | Identifies the begin date of a calendar entry (if present). |
| Calendar Date End | Calendar | Identifies the end date of a calendar entry (if present). |
| Calendar Time Begin | Calendar | Identifies the begin time of a calendar entry (if present). |
| Calendar Time End | Calendar | Identifies the end time of a calendar entry (if present). |
| Production Volume | All | Identifies the unique production volume ID of the delivery (ABC001). |

## Appendix 2: Validation Protocol

A. The review process should incorporate quality-control and quality-assurance procedures to ensure a reasonable production consistent with the requirements of Federal Rule of Civil Procedure 26(g). Once a producing Party reasonably believes that it has produced or identified for production substantially all responsive non-privileged documents, it shall conduct validation according to the sampling protocol described below and in Appendix A. This Validation Protocol shall apply to the review process regardless of whether technology-assisted review ("TAR") or exhaustive manual review ("manual review") was used by the producing Party.

B. The Document Collection ("Collection") is defined as including all documents identified for review for responsiveness and/or privilege following the application of keywords or other culling criteria. This Validation Protocol assumes that the completeness or adequacy of the Collection has already been established. For purposes of the three putative plaintiff classes' validation requirements under this Validation Protocol, the Collection refers to the combined set of documents of a particular proposed class of plaintiffs, rather than to each individual named representative of a particular class of plaintiffs.

C. The Collection shall be partitioned into the following two or three Subcollections, for manual review or for TAR processes, respectively:

1. Documents identified by the review as responsive to at least one Request for Production, including any privileged documents, but not including family members of responsive documents, unless those family members are deemed to be responsive in their own right ("Subcollection C(1)");

2. Documents coded as non-responsive by a human reviewer, regardless of how the documents were selected for review (e.g., by TAR, manual review, or otherwise) ("Subcollection C(2)");

3. Documents excluded from manual review as the result of a TAR process ("Subcollection C(3)"). If the review process involved only manual review and no TAR, the Collection will not include Subcollection C(3).

4. Documents excluded by a keyword search process ("Subcollection C(4)"). Both a keyword search-only search process and a TAR search process that relies upon keyword search culling must include a Subcollection C(4).

D. A sample shall be drawn consisting of the following:

1. 500 documents selected at random from Subcollection C(1) ("Subsample D(1)");

2. 500 documents selected at random from Subcollection C(2), if TAR was used, otherwise 2,500 documents selected at random from Subcollection C(2), if manual review was used ("Subsample D(2)");

3. 2,000 documents selected at random from Subcollection 1(c) if TAR was used ("Sample D(3)"). If TAR was not used, there will be no Subsample D(3).

4. 2,000 documents selected at random from Subcollection C(4) if a keyword search-only search process was used or a TAR search process relied upon keyword search culling before application of TAR ("Sample D(4)"). If a TAR process did not rely upon keyword search culling before application of Tar, there will be no Subsample C(4).

E. Should a producing Party believe that the sample sizes specified in Paragraph III(D) would be disproportionate or unduly burdensome under the circumstances, that Party shall promptly raise the issue with the requesting Party. To the extent a dispute remains concerning the sample sizes to be used after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such dispute.

F. The sample of 3,000-5,000 documents comprised of the documents from Subsamples D(1), D(2), and, if TAR was used, D(3), and if keyword search culling was used, D(4), shall be combined into a single Validation Sample, with no indication of the Subcollection from which the documents were derived or how they were previously coded. The Validation Sample shall be reviewed and coded by a subject matter expert ("SME") who is knowledgeable about the subject matter of the litigation. This should be an attorney who is familiar with the RFPs and the issues in the case. During the course of the review of the Validation Sample, the SME shall not be provided with any information concerning the Subcollection or Subsample from which any document was derived or the prior coding of any document. The intent of this requirement is to ensure that the review of the Validation Sample is blind; it does not preclude a Party from selecting as SMEs attorneys who may have had prior involvement in the original review process.

G. Once the coding in Paragraph III(F) has been completed, the producing Party shall prepare a table listing each of the 3,000-5,000 documents in the Validation Sample. For each document, the table shall include:

1. the Bates number of the document (for documents produced), or a control/identification number (for non-produced documents);

2. the Subsample from which the document came (i.e., D(1), D(2), or, if TAR was used, D(3), or if keyword search culling was used, D(4));

3. the SME's responsiveness coding for the document (i.e., responsive or non-responsive);

4. the SME's privilege coding for the document (i.e., privileged or not privileged). If the document is coded as non-responsive, a privilege determination need not be made. All documents in the Validation Sample coded as privileged shall be included on the producing Party's Privilege Log, as per the requirements set forth in the Protective Order.

5.   for putative class plaintiffs, the named class representative associated with the document.

H.   The following items shall be provided to the requesting Party:

1.   the table described in Paragraph III(G);

2.   a copy of each responsive, non-privileged document in the Validation Sample that was not previously produced or identified for production to the requesting Party;

3.   the statistics and recall estimate detailed in Paragraph J ("Method of Recall Estimation") to this Order.

I.   Once the requesting Party has received and has had an opportunity to review the items described in Paragraph III(H) and Appendix A, the Parties shall meet and confer to determine whether or not the Parties agree that the recall estimate, and the quantity and nature of the responsive documents identified through the sampling process, indicate that the review is substantially complete.  If the recall estimate and the samples indicate that Subcollections C(2), C(3), and/or C(4) still contain a substantial number of non-marginal, non-duplicative responsive documents as compared to Subcollection C(1), the review and quality assurance process shall continue, and the validation process shall be repeated, as warranted.  If the parties are unable to agree on whether the review is substantially complete, or whether the validation process must be repeated, the parties may raise the issue with the Court.

J.   Method of Recall Estimation: An estimate of recall shall be computed to inform the decision-making process described in III(H) of the Validation Protocol; however, the absolute number in its own right shall not be dispositive of whether or not a review is substantially complete.  Also of concern is the novelty and materiality (or conversely, the duplicative or marginal nature) of any responsive documents identified in Subsamples D(2), D(3), and/or D(4).  The estimate of recall shall be derived as described below, depending on whether or not the review process involved the use of TAR.  It should be noted that, when conducted by an SME pursuant to Paragraph III(F) of the Validation Protocol, a recall estimate on the order of 70% to 80% is consistent with, but not the sole indicator of, an adequate (i.e., high-quality) review.  A recall estimate somewhat lower than this does not necessarily indicate that a review is inadequate, nor does a recall in this range or higher necessarily indicate that a review is adequate; the final determination also will depend on the quantity and nature of the documents that were missed by the review process.

1. **Recall Estimation Method for a Review Process Involving TAR:**

22

a.  The number of responsive documents found ≈ the size of Subcollection C(1) × the number of responsive docs in Subsample D(1) ÷ 500.

b.  The number of responsive documents coded incorrectly ≈ the size of Subcollection C(2) × the number of responsive documents in Subsample D(2) ÷ 500.

c.  The number of responsive documents not reviewed ≈ (size of Subcollection C(3) + size of Subcollection C(4)) × (the number of responsive documents in Subsample D(3) + the number of responsive documents in Subsample D(4)) ÷ (total documents in Subcollection C(3) + C(4)).

d.  Estimated recall ≈ the number of responsive documents found ÷ (the number of responsive documents found + the number of responsive documents coded incorrectly + the number of responsive documents not reviewed).

**2.  Recall Estimation Method for a Review Process Involving Manual Review:**

a.  The number of responsive documents found ≈ the size of Subcollection C(1) × the number of responsive documents in Subsample D(1) ÷ 500.

b.  The number responsive documents coded incorrectly ≈ (the size of Subcollection C(2) + the size of Subcollection C(4)) × (the number of responsive documents in Subsample D(2) + the number of responsive documents in Subsample D(4)) ÷ (total documents in Subcollection C(3) + C(4)).

c.  Estimated recall ≈ the number of responsive documents found ÷ (the number of responsive documents found + the number of responsive documents coded incorrectly).

# TAB 2(c)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OLEAN GROCERY COOPERATIVE, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AGRI STATS, INC., et al.,<br><br>Defendants.<br><hr>SANDEE'S CATERING,<br><br>Plaintiff,<br><br>v.<br><br>AGRI STATS, INC., et al.,<br><br>Defendants. | Case Nos. 1:19-cv-08318, 20-cv-02295<br><br>Hon. Virginia M. Kendall<br><br>**TAB 2(c): DEFENDANTS' PROPOSED[1] ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS** |

This Order Regarding Production Of Electronically Stored Information And Paper Documents ("ESI Protocol Order") shall govern the Parties in the above-captioned cases whether they currently are involved or become so in the future, and any related actions that may later be consolidated with these cases (collectively, the "Litigation").

## I.   GENERAL PROVISIONS

A.   **Applicability:**  This ESI Protocol Order will govern the production of ESI and paper documents.

B.   **Limitations & Non-Waiver:**  Nothing in this ESI Protocol Order shall be construed to affect the admissibility of discoverable information.  All objections to the admissibility of any documents are preserved and may be asserted at any time.  Pursuant to the terms of this ESI Protocol Order, information regarding search process and electronically-stored information ("ESI") practices may be disclosed, but compliance with this ESI Protocol Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason, including as irrelevant, undiscoverable, or otherwise

---

[1] All disputed portions of Defendants' Proposed Order are highlighted in yellow.

inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party.  For the avoidance of doubt, a Party's compliance with this ESI Protocol Order will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, the common-interest and joint-defense privileges, or any other applicable privilege.  All parties preserve all such privileges and protections, and all parties reserve the right to object to any such privileges and protections.

C.     **ESI Liaisons:**

    1.     **Designation:**  Each Party agrees to designate an ESI Liaison within 7 days after entry of this ESI Protocol Order.  Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

    2.     **Duties of ESI Liaison:**  Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible) and have access to personnel most knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, answer pertinent questions.

    3.     **Time Frame for ESI Issue Resolution:**  Each ESI Liaison will acknowledge receipt of an ESI-related inquiry from another ESI Liaison within 3 business days after the initial inquiry and respond substantively no later than 10 business days after the initial inquiry.  If the responding ESI Liaison believes the ESI issue in question is particularly complex and requires more than 10 business days to respond substantively, then within 10 business days the responding ESI Liaison will provide a general explanation of the process necessary to answer the question and provide an estimated response date.

D.     **Deadlines:**  References to schedules and deadlines in this ESI Protocol Order shall comply with Fed. R. Civ. P. 6 with respect to computing deadlines.

E.     **Definitions:**

    1.     "Discovery Material" is defined as all information produced, given, or exchanged by and among all Parties, or received from non-Parties in the Litigation, including all deposition testimony, testimony given at hearings or other proceedings, interrogatory answers, documents and all other discovery materials, whether produced informally or in response to requests for discovery.

    2.     Plaintiffs and Defendants, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this ESI Protocol Order.  A single Plaintiff or Defendant, as well as, where applicable, its respective officers, directors, employees, agents, and legal counsel, may also be referred to as a "Party" solely for the purposes of this ESI Protocol Order.

3.        "Plaintiffs" as used herein shall mean the putative Direct Purchaser Plaintiff class, and Commercial and Institutional Indirect Purchaser Plaintiff class as set forth in the respective operative complaints.

4.        "Defendants" as used herein shall mean Defendants named in the Direct Purchaser and Commercial and Institutional Indirect Purchaser Complaints.

5.        To avoid misunderstandings about terms, all Parties should consult the most current edition of The Sedona Conference Glossary.

F.      **Authenticity and Admissibility:**  Nothing in this ESI Protocol Order shall be construed to affect the authenticity or admissibility of any document or data.  All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

G.      **Confidential Information:**  For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as confidential under the Protective Order entered in these cases.

H.      **Preservation:**  The Parties agree that they shall continue to take reasonable steps to preserve relevant Documents and Electronically Stored Information that may exist for a Document or ESI, in accordance with their obligations under applicable law.  The Parties will meet and confer regarding the scope of preservation, including the end date for preservation, custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Litigation and disclosures regarding custodians, data sources, date ranges, and categories of information necessary to facilitate the Parties' negotiations.  By preserving or producing information for the purpose of this Action, the Parties are not conceding that such material is discoverable.

## II.      GENERAL PRODUCTION FORMAT PROTOCOLS

A.      **TIFFs:**  Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files.  Each image will have a file name that is the unique Bates number of that image, pursuant to ¶ II(E).  Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape).  The imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks.  Produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions.  Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format and visible in the form in which the electronic document was last saved, shall also be imaged so that such content is viewable on the image file.  Nothing in this subsection requires the modification or alteration of any document or data in order to make any hidden content, tracked changes or edits, comments, notes, and other similar information viewable if it is not already viewable in the form in which the electronic document was last saved.  Documents that are

difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively," or in the alternative, if applicable, "Exception File Unable to Be Imaged." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party, which may include native format, or a combination of native and TIFF formats.

B. **Text Files:** Each ESI item produced under this ESI Protocol Order shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

  1. **OCR:** A producing Party may make paper documents available for inspection and copying/scanning in accordance with FED. R. CIV. P. 34 or, additionally or alternatively, scan and OCR paper documents. Where OCR is used, the Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Even if OCR is used by a producing Party, however, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

  2. **ESI:** Except for redacted documents, emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available. For redacted documents, Parties shall provide OCR text in accordance with the specifications in Section II.B(1).

C. **Production of Native Items:** The Parties agree that ESI shall be produced as TIFF images consistent with the format described in section II.A. with an accompanying load file, which will contain, among other data points, the ESI data points listed in the Appendix hereto. The exception to this rule shall be spreadsheet-application files (e.g., MS Excel), presentation files (e.g., MS PowerPoint), personal databases (e.g., MS Access), multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), and any non-standard file types that are not easily rendered to image for which all ESI items shall be produced in native format. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced. The corresponding load file shall include NativeFileLink information for each native file that is produced. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL, to determine a reasonable form of production of usable data. Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

D. **Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular

document produced in native format and this ESI Protocol Order does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in the Appendix.

E. **Bates Numbering:**

   1. All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, hyphens, or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

   2. If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

   3. Producing Parties shall attempt to brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

F. **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

G. **Entire Document Families:** Subject to Paragraphs II(K)(1) and II(K)(2) below, entire Document families must be produced, even if only the parent email or an attachment to an email is responsive, excepting (1) junk files and non-user-created content routinely excluded during processing (provided such routine processing-generated exclusions are agreed to among the parties), and (2) documents that are withheld on the basis of privilege and in compliance with the parties' stipulation or the Court's order on such assertions of privilege. Where a document is fully withheld from an otherwise produced family on the basis of privilege, the producing Party may produce a single-page TIFF slip sheet indicating that the document was withheld. The corresponding load file record for such a document only needs to provide information for the following fields: BegBates, EndBates, BegAttach, EndAttach, Withheld Placeholder, and Privilege Asserted.

H. **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the document-level metadata fields identified in the Appendix below (to the extent available). The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's

data load file should match the total number of designated document breaks in the Image Load files in the production.

I. **Color:** Documents or ESI containing color need not be produced initially in color. If, however, an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol Order regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this ¶ II(I) will not be unreasonably denied by the producing Party. If a producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

J. **Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law (e.g., Personally Identifiable Information or Protected Health Information), or to the terms of the Protective Order entered by the Court in the Litigation or a confidentiality stipulation agreed to by the Parties, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. This designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Requesting Parties shall ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. Failure to comply with the procedures set forth in this ESI Protocol Order, any protective order or confidential order, or any confidential stipulation shall not waive any protection or confidential treatment. The Parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate. The Parties agree to work together on an as-needed (and per document) basis to address any potential over (or under) designation.

K. **Redactions**

1. **Personal Data Redactions:** A producing Party may redact personal information to the extent that the information falls within one of the following categories: (1) the information relates to medical or health issues of an individual or (2) social security numbers, bank account information, or personal passcodes. Such redactions should be identified as "Redacted – Personal Data" on the face of the document.

2. **Redactions of Nonresponsive Highly Confidential Business Information:** A producing party may redact specific highly confidential business information relating to non-turkey businesses provided (1) the redacted information is both nonresponsive and irrelevant, and (2) the redacted information would not assist in

understanding or providing context for the relevant portion of the document or document family of which it is a part. Such redactions must be identified as "Redacted – Highly Confidential Nonresponsive Information."[2]

L.  **Production Media & Protocol:**  A producing Party may produce documents via email, readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"), or via file-sharing service, including any network-based secure file transfer mechanism or SFTP.  Any requesting Party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide a copy of that production using Production Media.  The producing Party may encrypt Production Media, and will provide a decryption key to the requesting Party in a communication separate from the production itself.

## III.  PAPER DOCUMENT PRODUCTION PROTOCOLS

A.  **Scanning:**  A producing Party may make paper documents available for inspection and copying in accordance with FED. R. CIV. P. 34 or, additionally or alternatively, OCR paper documents.  Where OCR is used, the Parties agree that the following ¶¶ III(B)-(E) shall apply.

B.  **Coding Fields:**  The following information shall be produced in the load file accompanying production of paper documents:  (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N) or otherwise indicating that a redaction is present.  Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y" or otherwise indicate that the document originated in paper, and such indication shall be explained to the requesting party.

C.  **Unitization of Paper Documents:**  Paper documents should be logically unitized for production to the extent reasonably practicable.  Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records.  The Parties will make reasonable efforts to unitize documents correctly.

1.  **Relationship:**  The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable.

2.  **Identification:**  Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

---

[2] Defendants reserve the right to seek the ability to redact the "personal information of friends or family to the extent they do not work in the Turkey industry or work for a Party's competitors," if this ESI protocol ultimately requires producing parties to collect, process, and review personal devices (e.g., cell phones) of Document Custodians.

IV.  **ESI METADATA FORMAT AND PROCESSING ISSUES**

A.  **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files if they clearly do not have user-created content.

B.  **Metadata Fields and Processing:**

1.  **Time Zone:** To the extent reasonably practicable, ESI items shall be processed using a consistent time zone of Central Standard Time both in the metadata and on the image of the document. For the avoidance of doubt, ESI items that have already been previously processed in a different time zone need not be reprocessed in Central Standard Time, though the time zone previously used shall be reflected in the metadata. Any party producing ESI in a time zone other than Central Standard Time will provide notice of that fact to the other party's ESI Liaisons.

2.  **Auto Date/Time Stamps:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

3.  Except as otherwise set forth in this ESI Protocol Order, ESI files shall be produced with at least each of the data fields set forth in the Appendix that are available and can reasonably be extracted from a document.

4.  The Parties are not obligated to manually populate any of the fields in the Appendix if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian/Custodians All/Other, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeLink fields, which should be delivered regardless of whether the fields can be populated pursuant to an automated process.

C.  **Redaction:**

1.  The Parties agree that, where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (e.g., MS Access), which shall be governed by ¶ II(C), *supra*. Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction, including but not limited to the metadata fields listed in the Appendix, shall be provided. The Parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted in native format.

2.  If the items redacted and partially withheld from production are audio/visual files, the producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content. If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the producing Party to produce the unredacted portion of the content.

D.  **Email Processing, Review, and Production:**

1.  **Email Threading:**  Except for documents withheld or redacted on privilege grounds, the Parties will not suppress email threads in their productions, but may do so for the purposes of internal review.

2.  **Email Domains:**  Producing Parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources.  To the extent a Party opts to exclude uniquely identifiable email domain names (e.g., emails from domains typically associated with junk or irrelevant topics like sports, fantasy team competitions, retailer advertising, and newsletters or alerts from non-industry sources) as part of its initial filter of potentially responsive documents, that Party will maintain a list of the domain names excluded under this paragraph.

E.  **De-duplication:**  A producing Party may de-duplicate any file globally (i.e., across Document Custodians) at the "family" level (i.e., families should not be broken due to de-duplication).  The producing Party will make a reasonable effort to identify all custodians who were in possession of any de-duplicated documents through an appropriate load file field such as DuplicateCustodian or CustodianAll/Other (as noted in the Appendix).  Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in the Appendix to the extent such metadata exists.  In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated duplicate custodian information, as well as BCC information to the extent such metadata exists.  Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing Party no later than 7 days after that Party has substantially completed its production of ESI.

1.  Duplicate electronic documents shall be identified by utilizing the industry-standard process of comparison of auto-generated hash values (e.g., MD5 or SHA-1).  All electronic documents bearing an identical value will be considered duplicative.  The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable.  The producing Party is not obligated to extract, review, or produce entirely duplicate ESI documents.

2.  Duplicate email shall be identified by utilizing the industry-standard process of comparison of auto-generated hash values (e.g., MD5 hash values) for the email family, which shall include the parent email and all attachments. Duplicate identification will be identified at a family level, including message and all attachments. Email families bearing an identical value are considered a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

F.     **Zero-byte Files:**  The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names.  If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file.  The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

G.     **Microsoft "Auto" Feature:**  To the extent reasonably practicable and technologically possible for a producing Party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business.  If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be identified in a load file, metadata field, or otherwise as having these features.

H.     **Hidden Text:**  ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

I.     **Embedded Objects:**  Microsoft Excel spreadsheets (.xls) embedded in Microsoft Word documents will be extracted as separate documents and treated as attachments to the document.  The Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments). Notwithstanding the foregoing, documents that have already been previously processed need not be reprocessed in order to comply with this paragraph IV.I.

J.     **Compressed Files:**  Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed and extracted in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

K.     **Password-Protected, Encrypted, or Proprietary-Software Files:**  With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing Party will take reasonable steps to obtain identified passwords and remove such protection so that the documents can be reviewed and produced if appropriate.  ESI that is likely to contain responsive information that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

## V.   PARAMETERS FOR CULLING AND REVIEWING ESI AND PAPER DOCUMENTS

### A.   General Provisions

1. **Time Period:** Except as noted elsewhere in this paragraph, the Parties agree that they may limit the processing of discoverable, non-structured data to that which was created, modified, sent, or received from January 1, 2009, through December 31, 2017. With respect to structured data, the parties agree the period for production of structured data will be January 1, 2007 through December 31, 2018.

2. **Meet and Confer:** If the Parties cannot reach agreement under the provisions of this Section V, any dispute may be presented to the Court. All meet-and-confer sessions under this Section V will involve each Party's respective ESI Liaison.

### B.   Document Custodians and Sources

1. **Initial Document Custodians and Sources**: No later than 7 days after answers to Requests for Production under Federal Rule of Civil Procedure 34 are due, the Parties agree to commence discussions about Document Custodians and non-custodial document sources, including the process and procedure for negotiating and disclosing such sources. The parties will meet and confer in good faith, and in accordance with the parties' Rule 26(f) Report.

2. **Additional Document Custodians or Sources:** If, after the initial Document Custodian and Source negotiations described in the preceding paragraph, a requesting Party determines that additional Document Custodians or Sources should be added, then the requesting Party shall advise the producing Party in writing of the proposed additional Document Custodians or Sources and the basis for the request. If the Parties have not agreed whether to add the Document Custodian or Source within 21 days of the requesting Party's request, then the Parties may bring the matter to the Court via motion within 21 days or the issue is waived, unless the parties agree to defer resolution of the issue. The parties shall raise disputed Document Custodians or Sources via a joint letter brief not to exceed five pages split equally between Plaintiffs and Defendants.

3. Except by agreement of the Parties or by order of the Court, a producing Party is not required to add Document Custodians or Sources after the deadlines identified above.

### C.   Pre-Search Deduplication & Culling of Collected Data

1. **De-Duplication:** Before running a search process described herein, data should be de-duplicated in accordance with ¶ IV.E.

2. **Paper Documents:** The Parties agree to meet and confer to determine whether paper documents scanned to electronic form for litigation may be included in any keyword or TAR process.

3.  **Targeted Collections:**  If the Parties agree to testing of search terms, only documents a producing Party intends to subject to electronic searching parameters should be included in the data set against which search terms are tested.

4.  **Exception Reporting:**  For any documents that are reasonably likely to contain relevant information not otherwise identified as system or operating files, and not otherwise covered by this protocol (including ¶ IV.K), the producing Party must disclose processing exceptions that are unresolved by the time set for substantial completion of document productions within 7 days after substantial completion.

5.  **Disclosure of Other Culling Parameters Required:**  A producing Party is permitted to cull data using the agreed-upon custodial and non-custodial sources, agreed-upon date parameters, and agreed-upon search terms (if applicable), and a producing Party is permitted to remove known system or operating files, such as those that appear on the National Software Reference Library (NSRL) hash list.  As such, the Parties may cull entire file directories from computer hard drives that contain Program Files, Program Data, SWTOOLs, Windows Operating System files, etc.  For those excluded directories, the Parties will only conduct searches on user-created content that is reviewable and likely to yield relevant content.

D.  **Culling Collected Data**

1.  **Use of Search Terms to Cull Unstructured ESI:**

    a.  The Parties may use search terms and other limiters (including the exclusion of certain email domains as set forth in paragraph IV.D.2), as a means of limiting the volumes of information to be reviewed for responsiveness. To the extent that search terms are used to identify responsive ESI, a producing Party will notify the requesting Party of its intent to use search terms and disclose to the requesting Party (1) an initial list of search terms the producing Party intends to use and (2) whether the producing Party intends to use different search terms with different Document Custodians or Sources. The Parties will meet and confer in good faith regarding the disclosure and formulation of appropriate search terms and protocols to cull unstructured ESI.

    b.  **Addition or Removal of Search Terms After Initial Search Term Negotiation:** If, after the completion of the initial search term negotiations, a requesting or producing Party determines that any search terms should be added to or removed from the initial search term list, then the requesting or producing Party shall advise the affected Parties in writing of the proposed change(s) to the search term(s) and of the reason(s) for the proposed change(s). Except by agreement or by order of the Court, a producing Party is not required to add search terms after completion of the processed described in paragraph V.D.1.a above.

12

2.    **Use of Technology Assisted Review or Other Advanced Technology-Based Analytics to Cull Unstructured ESI:**

    a.    **Use of TAR:** A Party may use Technology Assisted Review ("TAR") to sort documents for linear review without disclosure of that use. If a Party elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to linear review, the parties will meet and confer regarding the following parameters that will apply to the use of TAR.

        i.    **Paper Documents:**  The Parties agree to meet and confer to determine whether paper documents may be included in a or TAR process.

        ii.    **The TAR Tool:** A producing Party shall describe to a requesting Party the vendor and the TAR technology or tool being used, including a description of the TAR tool's procedures.

    b.    A producing Party need not conduct any additional review of information subjected to, but not retrieved by, a TAR tool as part of the identification of the subset of information that will be subject to review and production, provided that the procedures in paragraph V.D.2.a.ii above are followed.

E.    **Custodial Cellphone & Personal Communications Data**: The Parties shall meet and confer concerning the designation of select Document Custodians for whom cellphone and social-media accounts will be searched, in accordance with the following (substantive objections concerning responsiveness of any entry shall be preserved, and negotiated in connection with the responses to Requests for Production):

1.    **Cellphones:** Mobile devices will be collected and searched if the following conditions are met:

    a.    The mobile device is used by a Document Custodian;

    b.    The mobile device is in the possession, custody, or control of the producing Party;

    c.    The mobile device is used by the Document Custodian to carry out the Document Custodian's duties and responsibilities as an employee of the producing Party's Turkey business during the relevant Time Period; and

    d.    The Document Custodian has confirmed that the specific mobile device has substantively unique, non-duplicative information related to the producing Party's Turkey business that exists within the relevant Time Period or the agreed-upon time period for the individual Document Custodian.

To the extent that a mobile device is required to be collected and searched, the following shall be searched and produced:

i.      Cellphone Call, Calendar Entry, Voicemail, or Text Message, only to the extent that they are responsive and related to the producing Party's Turkey business; or

ii.     Contacts, to the extent they reflect a contact entry of a competitor of the producing Party's Turkey business, benchmarking service related to Turkey, or named Party.

In no instance shall a producing Party be required to produce any non-responsive contact, call record, voicemail, text, or calendar entry that is not related to the producing Party's Turkey business during the relevant Time Period or the agreed-upon time period for the individual Document Custodian and the limited nature of Plaintiffs' information-sharing allegations as it is understood that a mobile device contains personal, non-business-related information that is private to the individual Document Custodian.

2.    **Social Media Data:** If a Document Custodian confirms that he or she used Social Media for Turkey-related business purposes on behalf of the producing Party, then the requested communication(s) shall be searched, and responsive, non-privileged entries shall be produced if they are reasonably accessible.

F.    **Structured Data:** To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the Requesting Party. Upon review of the report, the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

## VI.    <u>MISCELLANEOUS PROVISIONS</u>

A.    **Inaccessible ESI:** If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution. The following types of data stores are presumed to be inaccessible and are not subject to discovery, and need not be collected or preserved, absent a particularized need for the data as established by the facts and legal issues of the case (e.g., information suggesting that relevant evidence has been lost or is no longer available in other more accessible forms):

1.    Deleted, slack, fragmented, or other data only accessible by forensics;

2.    Random access memory (RAM) or temporary files; and

3.    Server, system, or network logs.

B. **Variations or Modifications:** Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, which will be confirmed in writing. In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, those Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

SO ORDERED.

Dated: _____

_____
Hon. Virginia M. Kendall
United States District Judge

## **Appendix: ESI Metadata and Coding Fields**

| Field Name[3] | Populated For (*Email, Edoc, Calendar, or All*) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was last modified. |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| Receive Date | Email | Date email was received. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |

---

[3] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| Field Name[3] | Populated For (*Email, Edoc, Calendar, or All*) | Field Description |
|---|---|---|
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or subject line of an email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Withheld Placeholder | All | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y." See also paragraph II.G above. |
| Privilege Asserted | All | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (e.g., "Redacted – Attorney Client Privileged" or "Withheld – Attorney Client Privileged") |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Legend/Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Attachment Count | Email, Edoc | Identifies the number of attachments to an email (if present/applicable). |
| Attachment Names | Email, Edoc | Identifies the file names of all attachments to an email (if present/applicable). |
| Calendar Date Begin | Calendar | Identifies the begin date of a calendar entry (if present). |
| Calendar Date End | Calendar | Identifies the end date of a calendar entry (if present). |
| Calendar Time Begin | Calendar | Identifies the begin time of a calendar entry (if present). |
| Calendar Time End | Calendar | Identifies the end time of a calendar entry (if present). |
| Production Volume | All | Identifies the unique production volume ID of the delivery (ABC001). |

# TAB 3(a)

# <u>Tab 3(a): Protective Order Disputed Provisions</u>

| <u>Disputed Provision</u> | <u>Plaintiffs' Proposal</u> | <u>Defendants' Proposal</u> |
|---|---|---|
| **¶ 18: Clawback of Inadvertent Disclosure** | (a)      **Clawback of Inadvertent Disclosure.** This Order is entered, *inter alia*, pursuant to Federal Rule of Evidence 502(d). If a party or non-party that produces or otherwise discloses information in connection with this Litigation (the "Producing Party") thereafter claims that such information is protected by any privilege or attorney work product protection ("Disclosed Protected Information"), the disclosure of the Disclosed Protected Information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Disclosed Protected Information and its subject matter in this proceeding or in any other federal or state proceeding. The parties stipulate that by entering this Confidentiality Order, the Court shall provide the maximum protection allowed by Rule 502(d). <br><br> (1)      **Assertion of a Clawback**. Any Producing Party may request, in writing, the return of any Disclosed Protected Information by identifying it and stating the basis for withholding such material or information from production. The Producing Party must also provide a privilege log explaining the basis for the assertion of the privilege within 3 business days of asserting a clawback. <br><br> (2)      **Clawbacks before Deposition.** To the extent a party believes a clawback made prior to a scheduled deposition impacts that deposition, the parties will meet and confer and a party may seek guidance from | (a)      **Clawback of Inadvertent Disclosure.** <br><br> (1)      **Clawback Process.** Federal Rule of Civil Procedure 26(B)(5)(b) shall govern the clawback of Disclosed Protected Information. <br><br>      a.      Upon discovering the disclosure of Disclosed Protected Information that the Producing Party believes in good faith to be covered by attorney-client privilege, work-product protection, or other evidentiary privilege or protection, the Producing Party shall provide written notification to the receiving parties identifying the documents or portions thereof that contain privileged or protected information, in accordance with the requirements of Federal Rule of Civil Procedure 26(b)(5)(A). Within 7 days of providing written notification, the Producing Party shall provide a privilege log to the receiving parties explaining the basis for the assertion of the privilege. <br><br>      b.      Upon notification from the Producing Part that information covered by attorney-client privilege, work-product protection, or other evidentiary privilege or protection has been produced, the receiving parties shall within ten (10) business days of receipt of written notice (i) destroy or return to the Producing Party the Disclosed Protected Information and all copies thereof in the receiving parties' possession; (ii) delete any electronic versions from any data sources or any database the receiving parties maintain; (iii) retrieve all electronic and paper copies provided to any nonparties, including |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | the Court if the meet and confer does not reach a successful resolution.<br><br>(4) **Clawback Process.** Federal Rule of Civil Procedure 26(B)(5)(b) shall govern the clawback of Disclosed Protected Information.<br><br>a. If a Producing Party requests the return of such Disclosed Protected Information then in the custody of one or more parties, the receiving parties shall—unless it contests the claim of attorney-client privilege or work product protection in accordance with sub-paragraph 18(b)(2)(b) – within ten (10) business days of receipt of written notice (i) destroy or return to the Producing Party the Disclosed Protected Information and all copies thereof, and (ii) provide a certification of counsel that all of the Disclosed Protected Information has been returned or destroyed.<br><br>b. Challenging a Clawback. Notify the producing Party or non-Party that it wishes to challenge the claim of privilege or work product protection and has sequestered the material until the issue can be resolved. The Parties agree to meet and confer regarding the claim of privilege. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. A Party challenging a clawback request under this paragraph may use the clawed-back document and its contents for the purpose of filing a motion with the Court under seal that challenges whether or not the document is privileged or work product only in accordance with the provisions of Fed. R. Civ. P. 26(b)(5)(B). | experts; and (iv) destroy or sequester any notes, documents, or other materials that reveal the substance of the Disclosed Protected Information. The receiving parties will promptly confirm in writing to the Producing Party that these steps have been taken and that they will make no use of the Disclosed Protected Information.<br><br>c. Challenging a Clawback. A receiving party may contest the privilege or work-product designation by the Producing Party within ten (10) business days of receipt of a clawback notice, and shall have the right to apply for an order that such information is not protected from disclosure by any privilege, law, or doctrine. The Parties agree to meet and confer regarding the claim of privilege. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. The receiving party may not, however, assert as a ground for such motion the fact or circumstances of the production or reveal the substance of the Disclosed Protected Information (including in contesting the assertion of protection or privilege). Any motion contesting the privilege or work-product designation shall be submitted to the Court *in camera* for review or, if the Court directs, filed under seal. Pending resolution of such a challenge, the receiving party must continue to sequester any notes, documents, or other materials that reveal the substance of the Disclosed Protected Information. In the event that the Court concludes that the information is protected from disclosure, the receiving party must delete the information from any notes, documents, or other materials or any |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | c. The parties may stipulate to extend the time periods set forth in sub-paragraph (a).<br><br>d. Disclosed Protected Information that is sought to be reclaimed by the parties to this case pursuant to this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.<br><br>e. The Producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information. Nothing in this paragraph shall limit the right of any party to petition the Court for an in camera review of the Disclosed Protected Information.<br><br>(b) Where a party agrees to or is ordered to destroy a clawed back document, the party must instruct their e-discovery vendor to delete the document entirely from their e-discovery database and delete other copies of the clawed back document. To the extent that it is not technologically feasible for a receiving party to destroy a clawed back document (for example, if the clawed back document is part of a production provided on read-only production media such that the clawed back document cannot be destroyed without destroying the entire production media), the parties will meet and confer as to an acceptable alternative approach.<br><br>(c) **Receiving Party's Obligation.** Without waiving the ability to challenge a clawback under ¶ 18(a)(3)(b) a party who discovers that it may have received an inadvertently disclosed or produced protected document must promptly notify the disclosing or producing party. A | portions thereof that reveal the substance of the Disclosed Protected Information. The Producing Party must preserve the information pending resolution of the challenge, and, in the event the Court concludes that the information is not protected from disclosure, promptly provide the receiving party with a replacement production.<br><br>d. The parties may stipulate to extend the time periods set forth in sub-paragraphs b and c above.<br><br>e. Disclosed Protected Information that is sought to be reclaimed by the parties to this case pursuant to this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.<br><br>f. The Producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information. Nothing in this paragraph shall limit the right of any party to petition the Court for an *in camera* review of the Disclosed Protected Information.<br><br>(b) Where a party agrees to or is ordered to destroy a clawed back document, the party must instruct their e-discovery vendor to delete the document entirely from their e-discovery database and delete other copies of the clawed back document. To the extent that it is not technologically feasible for a receiving party to destroy a clawed back document (for example, if the clawed back document is part of a production provided on read-only production media such that the clawed back document cannot be destroyed without destroying the entire |

| Disputed Provision | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| | party who is notified or discovers that it may have received a protected document must comply with Fed. R. Civ. P. 26(b)(5)(B). | production media), the parties will meet and confer as to an acceptable alternative approach.<br><br>(c)    **Receiving Party's Obligation.** Without waiving the ability to challenge a clawback under ¶ 18(a)(2)(c), a receiving party who independently discovers that it received documents or information that reasonably appear to be privileged, that party must promptly notify the Producing Party, and in any event, no later than ten (10) business days after such discovery. A party who is notified or discovers that it may have received a protected document must comply with Fed. R. Civ. P. 26(b)(5)(B).<br><br>(d)    **Clawbacks before Deposition.** To the extent a party receiving a clawback notice believes a clawback made within 30 days of the date of a scheduled deposition impacts that deposition, and the propriety of the clawback is not resolved pursuant to paragraph 18(a)(1) above prior to the date of the deposition, the parties will meet and confer and a party may seek guidance from the Court if the meet and confer does not reach a successful resolution. |

# TAB 3(b)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OLEAN GROCERY COOPERATIVE, INC., et al., | Case Nos. 1:19-cv-08318, 20-cv-02295 |
| Plaintiffs, | Hon. Virginia M. Kendall |
| v. | |
| AGRI STATS, INC., et al., | **TAB 3(b): PLAINTIFFS' PROPOSED[1] PROTECTIVE ORDER** |
| Defendants. | |
| SANDEE'S CATERING, | |
| Plaintiff, | |
| v. | |
| AGRI STATS, INC., et al., | |
| Defendants. | |

**IT IS HEREBY ORDERED** that confidential information shall be disclosed only in the following ways:

1.  **Scope.** All documents, electronically stored information, items, and other information produced or adduced in the course of discovery, regardless of the medium or manner generated, stored, maintained or revealed (including, among other things, initial disclosures, responses to discovery requests, deposition testimony, and exhibits), and information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential Information or Highly Confidential Information as defined below. This Order shall

---

[1] All disputed portions of Plaintiffs' Proposed Order are highlighted in yellow.

apply to any named party to this action (including all of its officers, directors, employees, retained experts, outside counsel (and their support staff)), as well as any nonparties that produce documents or testimony pursuant to any document request, notice of deposition, or subpoena issued in this litigation or to whom disclosure of Confidential Information or Highly Confidential Information is made pursuant to the terms of Paragraph 6(b). This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2. **Confidential Information.** As used in this Order, "Confidential Information" means any document, or any portion thereof, which contains confidential or proprietary business, commercial, research, personnel, product or financial content belonging to the producing party, and which is designated as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" for purposes of this litigation. Confidential Information may fall within one or more of the following categories: (a) information prohibited from disclosure by statute or contractual agreement; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (g) personnel or employment records of a person who is not a party to the case. These categories are expressly provided for illustrative purposes only, and are not intended to be and should not be construed as exhaustive of the types of information that may be appropriately designated as "Confidential Information." The parties will make reasonable efforts to ensure that information or documents that are available to the public are not designated as Confidential Information.

3. **Highly Confidential Information.** As used in this Order, "Highly Confidential

Information" means any document, or any portion thereof, which a producing party or non-party believes to be so highly sensitive that: (i) it is the subject of reasonable efforts to maintain its secrecy; (ii) it is sufficiently valuable and secret to afford a potential or actual advantage over others; (iii) its disclosure to existing or potential competitors or customers would cause injury to the business, commercial, competitive, or financial interests of the producing party or non-party; and (iv) it is designated as "HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" for purposes of this litigation. By way of example only, Highly Confidential Information may include but is not limited to: (a) current or future business strategies and other strategic planning information; (b) projections or plans regarding performance, budgets, production, output, sales, marketing or distribution practices; (c) research and development information; (d) manufacturing know-how or technology; (e) board of directors materials and presentations; (f) customer lists or information; (g) negotiation strategies; (h) proprietary software, systems, or processes; (i) margin, cost, and pricing information; or (j) intellectual property. These categories are expressly provided for illustrative purposes only, and are not intended to be and should not be construed as exhaustive of the types of information that may be appropriately designated as "Highly Confidential Information." If required by applicable privacy laws, Highly Confidential Information may also include personnel files that are designated as such for purposes of this litigation.

4. **Designation.**

(a)     A party may designate a document as Confidential Information or Highly Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document and on all copies in a manner that will not interfere with the legibility of the document. To the extent a document is produced in a form

3

in which placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document is not practicable, the producing party may designate the document as confidential by inserting a slip sheet, by affixing a label to the production media containing the document, by including the designation in the file title, or, if necessary, by including such designation in a cover letter. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information or Highly Confidential Information. The marking "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time the documents are produced or disclosed. Applying such marking to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies that are made of any documents marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of documents designated as Confidential Information or Highly Confidential Information and do not otherwise disclose the substance of the Confidential Information or Highly Confidential Information are not required to be marked.

(b)     Though the parties understand that the designation of a document as Confidential Information or Highly Confidential Information is a certification by an attorney that the document contains Confidential Information or Highly Confidential Information as defined in this Order, the parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate. The parties

4

agree to work together in good faith to address any potential over (or under) designation.

5.    **Depositions.** Unless all parties agree otherwise on the record at the time the deposition testimony is taken, all deposition testimony taken in this case shall be presumed to be and treated as Highly Confidential Information. Nothing in this paragraph prevents any party from seeking to subsequently challenge the appropriateness of such designation.

6.    **Protection of Confidential Information or Highly Confidential Information.**

(a)    **General Protections.** Except as set forth below, Confidential Information or Highly Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than the prosecution or defense of claims in, or the settlement of, this litigation, including any appeal thereof. In this putative class action, and subject to the terms of this Protective Order, Confidential Information or Highly Confidential Information may be disclosed only to the named plaintiffs and not to any other member of the putative class unless and until a class including the putative member has been certified. Nothing in this Order, however, shall prevent or prejudice any party designating materials Confidential Information or Highly Confidential Information from using its own such designated documents for any purpose, including privately disclosing its own Confidential Information or Highly Confidential Information to others not mentioned in this Paragraph 6, and such private disclosure shall not waive the protections of this Order.

(b)    **Limited Third-Party Disclosures**. The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information or Highly Confidential Information to any third person or entity except as set forth below in subparagraphs (1)-(10) and (1)-(9), respectively. When a third party witness refuses to sign the certification in Attachment A, the third party must disclose that intention no later than 7 days prior to his or her deposition. The

parties may agree, or the Court may order, that a witness qualifying as an "Identified Person" under subparagraphs (9) and (8) below may be shown Confidential or Highly Confidential documents. Subject to these requirements, the following categories of persons may be allowed to review Confidential Information:

(1)     Counsel. Outside or in-house counsel for the parties and employees or support staff of such counsel (including but not limited to attorneys, paralegals, secretaries, law clerks, and investigators) who have responsibility for the preparation and trial of the action;

(2)     Parties. Individual parties and employees or former employees of a party, but only to the extent counsel has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the individual party, employee, or former employee has knowledge; disclosure to such individual party, employee, or former employee is limited to the portion of the document about such events, transactions, discussions, communications, or data; and such party, employee, or former employee has completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound to this Order;

(3)     The Court and its personnel and any mediators (and staff) appointed by the parties to assist in alternative dispute resolution;

(4)     Court Reporters and Video Recorders. Court reporters and video recorders engaged for depositions;

(5)     Contractors. Those persons specifically engaged for the limited purpose of

6

making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

(6)    Consultants and Experts. Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A to this Order;

(7)    Witnesses. During depositions or testimony at trial or any hearing, witnesses in this action to whom disclosure is reasonably necessary, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the witness is expected to testify or about which the witness may have knowledge. During preparation for their depositions, witnesses in this action to whom disclosure is reasonably necessary, provided that counsel for the party intending to disclose the information has confirmed to the designating party that the witness has completed the certification contained in Attachment A to this Order. Witnesses shall not retain a copy of documents containing Confidential Information, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts.

(8)    Author or recipient. The author or recipient of the document (not including a person who received the document solely in the course of litigation);

(9)    Identified Persons. Any person who is referenced in the document or whose

conduct is purported to be identified in the document, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the person has knowledge; disclosure to such person is limited to the portion of the document in which the person or person's conduct is identified or referenced; and such person has completed the certification contained in Attachment A to this Order; and

(10)     Others by Consent. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably withheld.

The following categories of persons may be allowed to review Highly Confidential Information:

(1)     Counsel. Outside counsel for the parties and employees or support staff of such counsel (including but not limited to attorneys, paralegals, secretaries, law clerks, and investigators) who have responsibility for the action, provided that such individuals do not regularly participate in the commercial business activities of the receiving party;

(2)     The Court and its personnel and any mediators (and staff) appointed by the parties to assist in alternative dispute resolution;

(3)     Court Reporters and Recorders. Court reporters and recorders engaged for depositions;

(4)     Contractors. Those persons specifically engaged for the limited

purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

(5)     Consultants and Experts. Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A to this Order;

(6)     Witnesses. During depositions or testimony at trial or any hearing, witnesses in this action to whom disclosure is reasonably necessary, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Highly Confidential Information is relevant to events, transactions, discussions, communications or data about which the witness is expected to testify or about which the witness may have knowledge. Before disclosing to the witness at deposition, hearing, or trial, counsel who intends to disclose Highly Confidential Information must first present a copy of the Highly Confidential Information to counsel for the designating party in order to allow counsel to object and/or move for a protective order. During preparation for their depositions, witnesses in this action to whom disclosure is reasonably necessary, provided that counsel for the party intending to disclose the information has confirmed to the designating party that the witness has completed the certification contained in Attachment A to this Order. Witnesses shall not retain a copy of Highly Confidential Information, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts. Pages of transcribed testimony or exhibits to depositions that are designated as Highly

Confidential Information must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

(7)     Author or recipient. The author or recipient of the document (not including a person who received the document solely in the course of litigation);

(8)     Identified Persons. Any person who is referenced in the document or whose conduct is purported to be identified in the document, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Highly Confidential Information is relevant to events, transactions, discussions, communications or data about which the person has knowledge; disclosure to such person is limited to the portion of the document in which the person or person's conduct is identified or referenced; and such person has completed the certification contained in Attachment A to this Order; and

(9)     Others by Consent. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably withheld.

To the extent any person is required to complete the certification contained in Attachment A to this Order, facsimile signatures or signatures transferred in electronic format (e.g., PDF) shall be treated as original signatures purposes of this Order.

(c)     **High Level Summaries.** Notwithstanding the provisions of paragraph 6(b), outside counsel for a party that is a corporation or other type of business entity may provide high level summaries or characterizations of the evidence in the case to individuals employed by the party who have responsibility to make decisions regarding the defense or settlement of the case. Nothing in this Order is intended to bar or otherwise prevent any counsel from rendering advice

to his or her client with respect to this litigation and, in the course of rendering such advice, from relying upon his or her examination or knowledge of Confidential Information or Highly Confidential Information.

(d) **Control of Documents.** Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information or Highly Confidential Information. Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

7. **Absent Class Members.** Confidential Information or Highly Confidential Information may not be disclosed to absent members of a certified class (each an "Absent Class Member") who have not intervened or otherwise appeared in this litigation, except under the circumstances described in Paragraph 6(a)-(b) of this Order. If, however, Confidential Information or Highly Confidential Information is contained in a filing with the Court pursuant to Paragraph 9 of this Order, such filing may be disclosed to counsel for the Absent Class Member (or the Absent Class Member if not represented) for purposes of evaluating any settlement affecting the Absent Class Member, provided that such counsel, if any, and the Absent Class Member have completed the certification contained in Attachment A to this Order.

8. **Failure to Designate.** A failure to designate a document as Confidential Information or Highly Confidential Information does not, standing alone, waive the right to so designate the document. If a party designates a document as Confidential Information or Highly Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to ensure that the document is treated in accordance with the provisions of this Order. No party shall be found to have violated this Order for failing to

maintain the confidentiality of material during a time when that material has not been designated Confidential Information or Highly Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential Information or Highly Confidential Information.

9. **Filing of Confidential Information or Highly Confidential Information.** This Order does not, by itself, authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential Information or Highly Confidential Information in connection with a motion, brief or other submission to the Court must comply with Local Rule 26.2.

10. **No Greater Protection of Specific Documents.** Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection. Nothing in this Order shall prevent a party from seeking greater or lesser protection with respect to the use of any Confidential Information or Highly Confidential Information.

11. **Challenges by a Party to Designation as Confidential Information or Highly Confidential Information.** The designation of any document as Confidential Information or Highly Confidential Information is subject to challenge by any party. The following procedure shall apply to any such challenge.

(a) **Meet and Confer.** A party challenging the designation of Confidential Information or Highly Confidential Information must do so in good faith and must begin the process by conferring directly with counsel for the designating party. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and

12

must give the designating party an opportunity to review the designated document, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation. The designating party must respond to the challenge within five (5) business days of the meet and confer.

(b)     **Judicial Intervention.** A party that elects to challenge a confidentiality designation may (i) seek informal dispute resolution with the Court if such process can be mutually agreed upon with the designating party; or (ii) file and serve a motion that identifies the challenged document and sets forth in detail the basis for the challenge. Each such motion's supporting brief may not exceed five (5) pages and must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure outlined above. The burden of persuasion in any such challenge proceeding shall be on the designating party, who shall have the right to respond to any motion filed by a challenging party. Until the Court rules on the challenge, all parties shall continue to treat the document as Confidential Information or Highly Confidential Information under the terms of this Order. As such, any motion challenging a confidentiality designation must not publicly file the documents with contested designations nor describe them in a manner that would reveal Confidential Information or Highly Confidential Information.

12.     **Action by the Court.** Applications to the Court for an order relating to documents designated Confidential Information or Highly Confidential Information shall be by motion. Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

13.     **Use of Confidential Information or Highly Confidential Information at Trial.** Nothing in this Order shall be construed to limit the use of any document at any trial or hearing

provided that the parties take necessary advance precautions to avoid the public disclosure of Confidential Information or Highly Confidential Information. A party that intends to present or that anticipates that another party may present Confidential Information or Highly Confidential Information at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum sufficiently in advance of the proceeding without disclosing the Confidential Information or Highly Confidential Information. The Court may thereafter make such orders as are necessary to govern the use of such documents at hearing or trial.

14. **Third Parties.** In seeking discovery from third parties, the parties shall attach this Order to a copy of any subpoena or other discovery request. Third parties from whom discovery is requested are entitled to the protections of this Order in responding to such requests.

**15. Confidential Information or Highly Confidential Information Subpoenaed or Ordered Produced in Other Litigation or Governmental Investigation.**

(a) If a receiving party is served with a subpoena or an order issued in other litigation or governmental investigation that would compel disclosure of any document designated in this action as Confidential Information or Highly Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b) The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena or order to issue.

14

(c)     The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information or Highly Confidential Information in the court from which the subpoena or order issued. If the designating party timely seeks a protective order, the receiving party served with the request shall not produce any information designated in this action as "Confidential" or "Highly Confidential" before a determination by the court from which the request issued, unless the receiving party has obtained the designating party's permission. The receiving party shall cooperate with respect to all reasonable procedures sought to be pursued by the designating party whose designated material may be affected. The designating party shall bear the burden and the expense of seeking protection in that court of its Confidential Information or Highly Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody, or control any Confidential Information or Highly Confidential Information designated by another party to this case.

16.     **Challenges by Members of the Public to Sealing Orders.** If a party or interested member of the public challenges the sealing of particular documents that have been filed under seal, the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

17.     **Unauthorized Disclosure or Use.** If a party learns that it or its counsel, officers, directors, employees, consultants, experts or other agents have disclosed documents designated Confidential Information or Highly Confidential Information in any circumstance not authorized under this Order, that party must within two (2) business days of learning of such disclosure (a)

15

notify the designating party of the disclosure and all pertinent facts relating thereto, (b) make every reasonable effort to prevent disclosure by each unauthorized person who received such information, (c) use reasonable best efforts to retrieve all copies of the protected documents disclosed to unauthorized persons, (d) inform the person or persons to whom unauthorized disclosures were made of the terms of this Order, and (e) request that each such person execute the certification contained in Exhibit A to this Order. Nothing contained herein shall limit the right of the designating party to seek relief against the party responsible for such disclosure.

18. **Limitations on Waiver of Privilege:**

   a. **Clawback of Inadvertent Disclosure.** This Order is entered, inter alia, pursuant to Federal Rule of Evidence 502(d). If a party or non-party that produces or otherwise discloses information in connection with this Litigation (the "Producing Party") thereafter claims that such information is protected by any privilege or attorney work product protection ("Disclosed Protected Information"), the disclosure of the Disclosed Protected Information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Disclosed Protected Information and its subject matter in this proceeding or in any other federal or state proceeding. The parties stipulate that by entering this Confidentiality Order, the Court shall provide the maximum protection allowed by Rule 502(d).

      1. **Assertion of a Clawback.** Any Producing Party may request, in writing, the return of any Disclosed Protected Information by

16

identifying it and stating the basis for withholding such material or information from production. The Producing Party must also provide a privilege log explaining the basis for the assertion of the privilege within 3 business days of asserting a clawback.

(2) **Clawbacks before Deposition**. To the extent a party believes a clawback made prior to a scheduled deposition impacts that deposition, the parties will meet and confer and a party may seek guidance from the Court if the meet and confer does not reach a successful resolution.

(3) **Clawback Process**. Federal Rule of Civil Procedure 26(B)(5)(b) shall govern the clawback of Disclosed Protected Information.

  a. If a Producing Party requests the return of such Disclosed Protected Information then in the custody of one or more parties, the receiving parties shall—unless it contests the claim of attorney-client privilege or work product protection in accordance with sub-paragraph 18(b)(2)(b) – within ten (10) business days of receipt of written notice (i) destroy or return to the Producing Party the Disclosed Protected Information and all copies thereof, and (ii) provide a certification of counsel that all of the Disclosed Protected Information has been returned or destroyed.

  b. **Challenging a Clawback.** Notify the producing Party or

17

non-Party that it wishes to challenge the claim of privilege or work product protection and has sequestered the material until the issue can be resolved. The Parties agree to meet and confer regarding the claim of privilege. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. A Party challenging a clawback request under this paragraph may use the clawed-back document and its contents for the purpose of filing a motion with the Court under seal that challenges whether or not the document is privileged or work product only in accordance with the provisions of Fed. R. Civ. P. 26(b)(5)(B).

c.     The parties may stipulate to extend the time periods set forth in sub-paragraph (a).

d.     Disclosed Protected Information that is sought to be reclaimed by the parties to this case pursuant to this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

e.     The Producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information. Nothing in this paragraph shall limit the right of any party to petition the Court for an in camera review

of the Disclosed Protected Information.

c.    Where a party agrees to or is ordered to destroy a clawed back document, the party must instruct their e-discovery vendor to delete the document entirely from their e-discovery database and delete other copies of the clawed back document. To the extent that it is not technologically feasible for a receiving party to destroy a clawed back document (for example, if the clawed back document is part of a production provided on read-only production media such that the clawed back document cannot be destroyed without destroying the entire production media), the parties will meet and confer as to an acceptable alternative approach.

c.    **Receiving Party's Obligation.** Without waiving the ability to challenge a clawback under ¶ 18(a)(3)(b) a party who discovers that it may have received an inadvertently disclosed or produced protected document must promptly notify the disclosing or producing party. A party who is notified or discovers that it may have received a protected document must comply with Fed. R. Civ. P. 26(b)(5)(B).

19.    **Loss of Clawback**. Notwithstanding the foregoing paragraph regarding limitations on waiver of privilege, the Parties agree that any document used by any Party in a deposition, expert report, or court filing in this action (with the exception of a motion to determine the existence of any privilege), shall not be eligible for protection under Rule 502(d) as a clawed-back document if the Producing Party does not clawback that document pursuant to this Order within 14 calendar days of its use ("Used Document"). Such ineligibility for clawback of that document, and any Disclosed Protected Information it contains, shall not result in a subject matter waiver in

any other state or federal proceeding. The parties reserve their rights to utilize Rule 502(b), including but not limited to establishing whether and to what extent a court order recognizing waiver of privilege under Rule 502(b) with respect to a document effects a subject matter waiver.

**20.** **Claims of Privilege and Redactions**

(a) **Production of Privilege Logs.** Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the producing Party will produce privilege/redaction logs in MS Excel format or any other format that permits electronic sorting and searching. All privilege logs will be served within 30 days after Substantial Completion of Document Productions for those productions made on or before Substantial Completion of Document Productions, or within 30 days after a production to the extent that production was made after Substantial Completion of Document Productions.

(b) **Exclusions from Logging Potentially Privileged Documents.** The following categories of documents do not need to be contained on a producing Party's initial privilege log, unless good cause exists to require that a Party do so.[2]

(1) Any communications exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

(2) Any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside

---

[2] Defendants reserve the right to seek an end date for logging potentially privileged documents, depending upon the Time Period negotiated by the parties and/or ordered by the Court in the ESI protocol. Plaintiffs reserve all rights to oppose any such end date.

counsel other than the Party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

(c)     Privilege Log Requirements:

(1)     **Metadata Log.** To the extent applicable, each Party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted.

a.     Objective metadata includes the following (as applicable to the document types as shown in the Appendix to the ESI Protocol Order):

i.       A unique privilege log identifier that makes clear the familial relationship of documents, i.e., parent/child

ii.      Custodian

iii.     DuplicateCustodian, CustodianOther or CustodianAll (if applicable)

iv.     File Name

v.      Email Subject

vi.     Author

vii.    From

viii.   To

ix.     CC

x.      BCC

xi.     Date Sent

xii.    Date Received

xiii.   Date Created

b.      In addition to the objective metadata fields, a Party must also include a field on its privilege log entitled "Attorney/Description of Privileged Material" if the basis for the privilege asserted is not apparent from the objective metadata (e.g., the name of the attorney will be provided if not included in the objective metadata). Further, a Party must manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document or the information is not necessary to evaluate the claim of privilege in light of the metadata that is discernable and/or the information provided in the Attorney/Description of Privileged Material field.

c.      With respect to the "Email Subject" or "File Name" field, the producing Party may substitute a description of the document where the contents of these fields may reveal privileged information. In the privilege log(s), the producing Party shall identify each instance in which it has modified the content of the "Email Subject" or "File Name" field (e.g., "[metadata redacted/altered to protect privilege]."

d.      Should a receiving Party, in good faith, have reason to believe a particular entry on a metadata-generated privilege log is responsive and does not reflect privileged discoverable information, the receiving Party may request, and the producing Party will not unreasonably refuse to provide, more information about the basis of the asserted privilege in compliance with Fed. R. Civ. P. 26(b)(5).

(2)      **Email Chains.** If there is more than one branch of (i.e., more than one unique group of recipients of) an email thread, each branch will be individually logged; however, each individual email within the thread need not be logged if the recipients of the email chain are all identical. A Party asserting privilege over a chain of emails may produce only a single

redacted copy of such email chain consistent with the ESI Protocol to the extent some portions are only partially privileged, except that any unique branches of the email chain must also either be produced in redacted form or included on the metadata privilege log.

(3) **Email Families.** Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

(d) **Documents Redacted for Privilege.** As an initial production matter, redacted documents need not be logged as long as the objective metadata (i.e., to, from, cc, bcc, recipients, date, and time, unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted in the metadata field provided in subsection f below (for redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the document that is sufficient to understand the subject matter of the document may be requested).  For the avoidance of doubt, a non-email must have the necessary to, from, date, and other information, if available, that would permit the same type of analysis as a redacted email. The producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information. After receipt of the production, the requesting Party may request in good faith that the producing Party create a privilege log for specific redacted documents. Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

(e) **Challenges to Privilege Claims.** Following the receipt of a privilege/redaction log, a requesting Party may identify, in writing (by Bates/unique identified number), the particular documents that it believes require further explanation. The producing Party shall endeavor to respond to such a request within 14 days. If a Party challenges a request for

further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court.

(f) **Privilege Metadata Fields.** Where a document is either withheld in full or redacted on the basis of a privilege, then that privilege shall be provided in a metadata field in the privilege log entitled "Privilege Asserted" and list a short description of the privilege asserted (e.g., "Attorney Client Privilege", "Attorney Work Product").

**21. Obligations on Conclusion of Litigation.**

(a) **Order Continues in Force.** Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

(b) **Obligations at Conclusion of Litigation.** Within sixty (60) days after dismissal or entry of final judgment not subject to further appeal, all Confidential Information and Highly Confidential Information (i.e., documents designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" under this Order), including copies as defined in Paragraph 4(a), shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent practicable in lieu of return; or (3) as to documents bearing the notations, summations or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so.

(c) **Retention of Work Product and Filed Documents.** Notwithstanding the above requirements to return or destroy documents, counsel may retain (1) email correspondence related to their representation, (2) attorney work product, including an index that refers or relates to designated Confidential Information or Highly Confidential Information so

long as that work product does not duplicate verbatim substantial portions of Confidential Information or Highly Confidential Information; and (3) one complete set of (a) all documents filed with or by the Court, including those filed under seal; (b) all transcripts of depositions, including exhibits; and (c) all final expert witness reports and supporting materials disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure. Any retained Confidential Information or Highly Confidential Information shall continue to be protected under this Order. An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose Confidential Information or Highly Confidential Information. Nothing in this Order shall be construed to require the destruction or return of Confidential Information or Highly Confidential Information stored in counsels' archives, back-up media, or disaster recovery media.

(d) **Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System**. Filings under seal shall be deleted from the ECF system only upon order of the Court.

22. **Order Subject to Modification.** This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

23. **No Prior Judicial Determination.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document designated Confidential Information or Highly Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

24. **Persons Bound.** This Order shall take effect when entered and shall be binding

upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

25.     **Future Parties.** The terms of this Order shall be binding upon all current and future parties to this litigation and their counsel; any party appearing in the litigation following entry of this Order shall be deemed to have joined the case subject to its provisions.

26.     **Personal Jurisdiction.** Nothing herein shall be construed as a determination by the Court, or as a consent or waiver by any party, or parent or affiliate of any party, that such party, or parent or affiliate of a party, is subject to personal jurisdiction in this Court or that discovery as to such party, or parent or affiliate of a party, shall proceed pursuant to the Federal Rules of Civil Procedure.

Dated: _____          _____
                                        Virginia M. Kendall
                                        United States District Judge

26

## ATTACHMENT A TO PROTECTIVE ORDER

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| OLEAN GROCERY COOPERATIVE, INC., et al., | Case Nos. 1:19-cv-08318, 20-cv-02295 |
| Plaintiffs, | Hon. Virginia M. Kendall |
| v. | |
| AGRI STATS, INC., et al., | **ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND** |
| Defendants. | |
| | |
| SANDEE'S CATERING, | |
| Plaintiff, | |
| v. | |
| AGRI STATS, INC., et al., | |
| Defendants. | |

The undersigned hereby acknowledges that he/she has read the Protective Order in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Northern District of Illinois in matters relating to the Protective Order and understands that the terms of the Protective Order obligate him/her to use materials designated as Confidential Information or Highly Confidential Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential Information or Highly Confidential Information to any other person, firm, or concern.

The undersigned acknowledges that violation of the Protective Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

Date: _____  _____
Signature

# TAB 3(c)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| OLEAN GROCERY COOPERATIVE, INC., et al., | Case Nos. 1:19-cv-08318, 20-cv-02295 |
| Plaintiffs, | Hon. Virginia M. Kendall |
| v. | |
| AGRI STATS, INC., et al., | **TAB 3(c): DEFENDANTS' PROPOSED[1] PROTECTIVE ORDER** |
| Defendants. | |
| SANDEE'S CATERING, | |
| Plaintiff, | |
| v. | |
| AGRI STATS, INC., et al., | |
| Defendants. | |

**IT IS HEREBY ORDERED** that confidential information shall be disclosed only in the following ways:

1.     **Scope.** All documents, electronically stored information, items, and other information produced or adduced in the course of discovery, regardless of the medium or manner generated, stored, maintained or revealed (including, among other things, initial disclosures, responses to discovery requests, deposition testimony, and exhibits), and information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential Information or Highly Confidential Information as defined below. This Order shall

---

[1] All disputed portions of Defendants' Proposed Order are highlighted in yellow.

apply to any named party to this action (including all of its officers, directors, employees, retained experts, outside counsel (and their support staff)), as well as any nonparties that produce documents or testimony pursuant to any document request, notice of deposition, or subpoena issued in this litigation or to whom disclosure of Confidential Information or Highly Confidential Information is made pursuant to the terms of Paragraph 6(b). This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2. **Confidential Information.** As used in this Order, "Confidential Information" means any document, or any portion thereof, which contains confidential or proprietary business, commercial, research, personnel, product or financial content belonging to the producing party, and which is designated as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" for purposes of this litigation. Confidential Information may fall within one or more of the following categories: (a) information prohibited from disclosure by statute or contractual agreement; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (g) personnel or employment records of a person who is not a party to the case. These categories are expressly provided for illustrative purposes only, and are not intended to be and should not be construed as exhaustive of the types of information that may be appropriately designated as "Confidential Information." The parties will make reasonable efforts to ensure that information or documents that are available to the public are not designated as Confidential Information.

3. **Highly Confidential Information.** As used in this Order, "Highly Confidential

Information" means any document, or any portion thereof, which a producing party or non-party believes to be so highly sensitive that: (i) it is the subject of reasonable efforts to maintain its secrecy; (ii) it is sufficiently valuable and secret to afford a potential or actual advantage over others; (iii) its disclosure to existing or potential competitors or customers would cause injury to the business, commercial, competitive, or financial interests of the producing party or non-party; and (iv) it is designated as "HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" for purposes of this litigation. By way of example only, Highly Confidential Information may include but is not limited to: (a) current or future business strategies and other strategic planning information; (b) projections or plans regarding performance, budgets, production, output, sales, marketing or distribution practices; (c) research and development information; (d) manufacturing know-how or technology; (e) board of directors materials and presentations; (f) customer lists or information; (g) negotiation strategies; (h) proprietary software, systems, or processes; (i) margin, cost, and pricing information; or (j) intellectual property. These categories are expressly provided for illustrative purposes only, and are not intended to be and should not be construed as exhaustive of the types of information that may be appropriately designated as "Highly Confidential Information." If required by applicable privacy laws, Highly Confidential Information may also include personnel files that are designated as such for purposes of this litigation.

4. **Designation.**

(a)     A party may designate a document as Confidential Information or Highly Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document and on all copies in a manner that will not interfere with the legibility of the document. To the extent a document is produced in a form

in which placing or affixing the words "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" on the document is not practicable, the producing party may designate the document as confidential by inserting a slip sheet, by affixing a label to the production media containing the document, by including the designation in the file title, or, if necessary, by including such designation in a cover letter. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information or Highly Confidential Information. The marking "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time the documents are produced or disclosed. Applying such marking to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies that are made of any documents marked "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of documents designated as Confidential Information or Highly Confidential Information and do not otherwise disclose the substance of the Confidential Information or Highly Confidential Information are not required to be marked.

(b)     Though the parties understand that the designation of a document as Confidential Information or Highly Confidential Information is a certification by an attorney that the document contains Confidential Information or Highly Confidential Information as defined in this Order, the parties recognize that document review using technological means may result in the application of greater or lesser confidentiality designations than otherwise appropriate. The parties

agree to work together in good faith to address any potential over (or under) designation.

5.     **Depositions.** Unless all parties agree otherwise on the record at the time the deposition testimony is taken, all deposition testimony taken in this case shall be presumed to be and treated as Highly Confidential Information.  Nothing in this paragraph prevents any party from seeking to subsequently challenge the appropriateness of such designation.

6.     **Protection of Confidential Information or Highly Confidential Information.**

(a)     **General Protections.** Except as set forth below, Confidential Information or Highly Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than the prosecution or defense of claims in, or the settlement of, this litigation, including any appeal thereof. In this putative class action, and subject to the terms of this Protective Order, Confidential Information or Highly Confidential Information may be disclosed only to the named plaintiffs and not to any other member of the putative class unless and until a class including the putative member has been certified. Nothing in this Order, however, shall prevent or prejudice any party designating materials Confidential Information or Highly Confidential Information from using its own such designated documents for any purpose, including privately disclosing its own Confidential Information or Highly Confidential Information to others not mentioned in this Paragraph 6, and such private disclosure shall not waive the protections of this Order.

(b)     **Limited Third-Party Disclosures**. The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information or Highly Confidential Information to any third person or entity except as set forth below in subparagraphs (1)-(10) and (1)-(9), respectively.  When a third party witness refuses to sign the certification in Attachment A, the third party must disclose that intention no later than 7 days prior to his or her deposition.  The

5

parties may agree, or the Court may order, that a witness qualifying as an "Identified Person" under subparagraphs (9) and (8) below may be shown Confidential or Highly Confidential documents. Subject to these requirements, the following categories of persons may be allowed to review Confidential Information:

(1)     Counsel. Outside or in-house counsel for the parties and employees or support staff of such counsel (including but not limited to attorneys, paralegals, secretaries, law clerks, and investigators) who have responsibility for the preparation and trial of the action;

(2)     Parties. Individual parties and employees or former employees of a party, but only to the extent counsel has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the individual party, employee, or former employee has knowledge; disclosure to such individual party, employee, or former employee is limited to the portion of the document about such events, transactions, discussions, communications, or data; and such party, employee, or former employee has completed the certification contained in Attachment A, Acknowledgment of Understanding and Agreement to Be Bound to this Order;

(3)     The Court and its personnel and any mediators (and staff) appointed by the parties to assist in alternative dispute resolution;

(4)     Court Reporters and Video Recorders. Court reporters and video recorders engaged for depositions;

(5)     Contractors. Those persons specifically engaged for the limited purpose of

6

making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

(6)     Consultants and Experts. Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A to this Order;

(7)     Witnesses. During depositions or testimony at trial or any hearing, witnesses in this action to whom disclosure is reasonably necessary, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the witness is expected to testify or about which the witness may have knowledge. During preparation for their depositions, witnesses in this action to whom disclosure is reasonably necessary, provided that counsel for the party intending to disclose the information has confirmed to the designating party that the witness has completed the certification contained in Attachment A to this Order. Witnesses shall not retain a copy of documents containing Confidential Information, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts.

(8)     Author or recipient. The author or recipient of the document (not including a person who received the document solely in the course of litigation);

(9)     Identified Persons. Any person who is referenced in the document or whose

conduct is purported to be identified in the document, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Confidential Information is relevant to events, transactions, discussions, communications or data about which the person has knowledge; disclosure to such person is limited to the portion of the document in which the person or person's conduct is identified or referenced; and such person has completed the certification contained in Attachment A to this Order; and

(10) Others by Consent. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably withheld.

The following categories of persons may be allowed to review Highly Confidential Information:

(1) Counsel. Outside counsel for the parties and employees or support staff of such counsel (including but not limited to attorneys, paralegals, secretaries, law clerks, and investigators) who have responsibility for the action, provided that such individuals do not regularly participate in the commercial business activities of the receiving party;

(2) The Court and its personnel and any mediators (and staff) appointed by the parties to assist in alternative dispute resolution;

(3) Court Reporters and Recorders. Court reporters and recorders engaged for depositions;

(4) Contractors. Those persons specifically engaged for the limited

purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;

(5)     Consultants and Experts. Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A to this Order;

(6)     Witnesses. During depositions or testimony at trial or any hearing, witnesses in this action to whom disclosure is reasonably necessary, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Highly Confidential Information is relevant to events, transactions, discussions, communications or data about which the witness is expected to testify or about which the witness may have knowledge. Before disclosing to the witness at deposition, hearing, or trial, counsel who intends to disclose Highly Confidential Information must first present a copy of the Highly Confidential Information to counsel for the designating party in order to allow counsel to object and/or move for a protective order. During preparation for their depositions, witnesses in this action to whom disclosure is reasonably necessary, provided that counsel for the party intending to disclose the information has confirmed to the designating party that the witness has completed the certification contained in Attachment A to this Order. Witnesses shall not retain a copy of Highly Confidential Information, except witnesses may receive a copy of all exhibits marked at their depositions in connection with review of the transcripts. Pages of transcribed testimony or exhibits to depositions that are designated as Highly

Confidential Information must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

(7)     Author or recipient. The author or recipient of the document (not including a person who received the document solely in the course of litigation);

(8)     Identified Persons. Any person who is referenced in the document or whose conduct is purported to be identified in the document, provided that counsel for the party intending to disclose the information has a good-faith basis for believing such Highly Confidential Information is relevant to events, transactions, discussions, communications or data about which the person has knowledge; disclosure to such person is limited to the portion of the document in which the person or person's conduct is identified or referenced; and such person has completed the certification contained in Attachment A to this Order; and

(9)     Others by Consent. Other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably withheld.

To the extent any person is required to complete the certification contained in Attachment A to this Order, facsimile signatures or signatures transferred in electronic format (e.g., PDF) shall be treated as original signatures purposes of this Order.

(c)     **High Level Summaries.** Notwithstanding the provisions of paragraph 6(b), outside counsel for a party that is a corporation or other type of business entity may provide high level summaries or characterizations of the evidence in the case to individuals employed by the party who have responsibility to make decisions regarding the defense or settlement of the case. Nothing in this Order is intended to bar or otherwise prevent any counsel from rendering advice

10

to his or her client with respect to this litigation and, in the course of rendering such advice, from relying upon his or her examination or knowledge of Confidential Information or Highly Confidential Information.

(d) **Control of Documents.** Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information or Highly Confidential Information. Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three years after the termination of the case.

7. **Absent Class Members.** Confidential Information or Highly Confidential Information may not be disclosed to absent members of a certified class (each an "Absent Class Member") who have not intervened or otherwise appeared in this litigation, except under the circumstances described in Paragraph 6(a)-(b) of this Order. If, however, Confidential Information or Highly Confidential Information is contained in a filing with the Court pursuant to Paragraph 9 of this Order, such filing may be disclosed to counsel for the Absent Class Member (or the Absent Class Member if not represented) for purposes of evaluating any settlement affecting the Absent Class Member, provided that such counsel, if any, and the Absent Class Member have completed the certification contained in Attachment A to this Order.

8. **Failure to Designate.** A failure to designate a document as Confidential Information or Highly Confidential Information does not, standing alone, waive the right to so designate the document. If a party designates a document as Confidential Information or Highly Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to ensure that the document is treated in accordance with the provisions of this Order. No party shall be found to have violated this Order for failing to

maintain the confidentiality of material during a time when that material has not been designated Confidential Information or Highly Confidential Information, even where the failure to so designate was inadvertent and where the material is subsequently designated Confidential Information or Highly Confidential Information.

9. **Filing of Confidential Information or Highly Confidential Information.** This Order does not, by itself, authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential Information or Highly Confidential Information in connection with a motion, brief or other submission to the Court must comply with Local Rule 26.2.

10. **No Greater Protection of Specific Documents.** Except on privilege grounds not addressed by this Order, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection. Nothing in this Order shall prevent a party from seeking greater or lesser protection with respect to the use of any Confidential Information or Highly Confidential Information.

11. **Challenges by a Party to Designation as Confidential Information or Highly Confidential Information.** The designation of any document as Confidential Information or Highly Confidential Information is subject to challenge by any party. The following procedure shall apply to any such challenge.

(a) **Meet and Confer.** A party challenging the designation of Confidential Information or Highly Confidential Information must do so in good faith and must begin the process by conferring directly with counsel for the designating party. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and

must give the designating party an opportunity to review the designated document, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation. The designating party must respond to the challenge within five (5) business days of the meet and confer.

(b) **Judicial Intervention.** A party that elects to challenge a confidentiality designation may (i) seek informal dispute resolution with the Court if such process can be mutually agreed upon with the designating party; or (ii) file and serve a motion that identifies the challenged document and sets forth in detail the basis for the challenge. Each such motion's supporting brief may not exceed five (5) pages and must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements of this procedure outlined above. The burden of persuasion in any such challenge proceeding shall be on the designating party, who shall have the right to respond to any motion filed by a challenging party. Until the Court rules on the challenge, all parties shall continue to treat the document as Confidential Information or Highly Confidential Information under the terms of this Order. As such, any motion challenging a confidentiality designation must not publicly file the documents with contested designations nor describe them in a manner that would reveal Confidential Information or Highly Confidential Information.

12. **Action by the Court.** Applications to the Court for an order relating to documents designated Confidential Information or Highly Confidential Information shall be by motion. Nothing in this Order or any action or agreement of a party under this Order limits the Court's power to make orders concerning the disclosure of documents produced in discovery or at trial.

13. **Use of Confidential Information or Highly Confidential Information at Trial.** Nothing in this Order shall be construed to limit the use of any document at any trial or hearing

provided that the parties take necessary advance precautions to avoid the public disclosure of Confidential Information or Highly Confidential Information. A party that intends to present or that anticipates that another party may present Confidential Information or Highly Confidential Information at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum sufficiently in advance of the proceeding without disclosing the Confidential Information or Highly Confidential Information. The Court may thereafter make such orders as are necessary to govern the use of such documents at hearing or trial.

14. **Third Parties.** In seeking discovery from third parties, the parties shall attach this Order to a copy of any subpoena or other discovery request. Third parties from whom discovery is requested are entitled to the protections of this Order in responding to such requests.

15. **Confidential Information or Highly Confidential Information Subpoenaed or Ordered Produced in Other Litigation or Governmental Investigation.**

(a) If a receiving party is served with a subpoena or an order issued in other litigation or governmental investigation that would compel disclosure of any document designated in this action as Confidential Information or Highly Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

(b) The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party in the other action that caused the subpoena or order to issue.

(c)     The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information or Highly Confidential Information in the court from which the subpoena or order issued. If the designating party timely seeks a protective order, the receiving party served with the request shall not produce any information designated in this action as "Confidential" or "Highly Confidential" before a determination by the court from which the request issued, unless the receiving party has obtained the designating party's permission. The receiving party shall cooperate with respect to all reasonable procedures sought to be pursued by the designating party whose designated material may be affected. The designating party shall bear the burden and the expense of seeking protection in that court of its Confidential Information or Highly Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody, or control any Confidential Information or Highly Confidential Information designated by another party to this case.

16.     **Challenges by Members of the Public to Sealing Orders.** If a party or interested member of the public challenges the sealing of particular documents that have been filed under seal, the party asserting confidentiality will have the burden of demonstrating the propriety of filing under seal.

17.     **Unauthorized Disclosure or Use.** If a party learns that it or its counsel, officers, directors, employees, consultants, experts or other agents have disclosed documents designated Confidential Information or Highly Confidential Information in any circumstance not authorized under this Order, that party must within two (2) business days of learning of such disclosure (a)

15

notify the designating party of the disclosure and all pertinent facts relating thereto, (b) make every reasonable effort to prevent disclosure by each unauthorized person who received such information, (c) use reasonable best efforts to retrieve all copies of the protected documents disclosed to unauthorized persons, (d) inform the person or persons to whom unauthorized disclosures were made of the terms of this Order, and (e) request that each such person execute the certification contained in Exhibit A to this Order. Nothing contained herein shall limit the right of the designating party to seek relief against the party responsible for such disclosure.

18. **Limitations on Waiver of Privilege.**

    (a) **Clawback of Inadvertent Disclosure.**

        (1) **Clawback Process.** Federal Rule of Civil Procedure 26(B)(5)(b) shall govern the clawback of Disclosed Protected Information.

            a. Upon discovering the disclosure of Disclosed Protected Information that the Producing Party believes in good faith to be covered by attorney-client privilege, work-product protection, or other evidentiary privilege or protection, the Producing Party shall provide written notification to the receiving parties identifying the documents or portions thereof that contain privileged or protected information, in accordance with the requirements of Federal Rule of Civil Procedure 26(b)(5)(A). Within 7 days of providing written notification, the Producing Party shall provide a privilege log to the receiving parties explaining the basis for the assertion of the privilege.

b.　Upon notification from the Producing Part that information covered by attorney-client privilege, work-product protection, or other evidentiary privilege or protection has been produced, the receiving parties shall within ten (10) business days of receipt of written notice (i) destroy or return to the Producing Party the Disclosed Protected Information and all copies thereof in the receiving parties' possession; (ii) delete any electronic versions from any data sources or any database the receiving parties maintain; (iii) retrieve all electronic and paper copies provided to any nonparties, including experts; and (iv) destroy or sequester any notes, documents, or other materials that reveal the substance of the Disclosed Protected Information. The receiving parties will promptly confirm in writing to the Producing Party that these steps have been taken and that they will make no use of the Disclosed Protected Information.

c.　Challenging a Clawback. A receiving party may contest the privilege or work-product designation by the Producing Party within ten (10) business days of receipt of a clawback notice, and shall have the right to apply for an order that such information is not protected from disclosure by any privilege, law, or doctrine. The Parties agree to meet and confer regarding the claim of privilege. If, at the conclusion

17

of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. The receiving party may not, however, assert as a ground for such motion the fact or circumstances of the production or reveal the substance of the Disclosed Protected Information (including in contesting the assertion of protection or privilege). Any motion contesting the privilege or work-product designation shall be submitted to the Court *in camera* for review or, if the Court directs, filed under seal. Pending resolution of such a challenge, the receiving party must continue to sequester any notes, documents, or other materials that reveal the substance of the Disclosed Protected Information. In the event that the Court concludes that the information is protected from disclosure, the receiving party must delete the information from any notes, documents, or other materials or any portions thereof that reveal the substance of the Disclosed Protected Information. The Producing Party must preserve the information pending resolution of the challenge, and, in the event the Court concludes that the information is not protected from disclosure, promptly provide the receiving party with a replacement production.

d.   The parties may stipulate to extend the time periods set forth

in sub-paragraphs b and c above.

e. Disclosed Protected Information that is sought to be reclaimed by the parties to this case pursuant to this Order shall not be used as grounds by any third party to argue that any waiver of privilege or protection has occurred by virtue of any production in this case.

f. The Producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information. Nothing in this paragraph shall limit the right of any party to petition the Court for an *in camera* review of the Disclosed Protected Information.

(b) Where a party agrees to or is ordered to destroy a clawed back document, the party must instruct their e-discovery vendor to delete the document entirely from their e-discovery database and delete other copies of the clawed back document. To the extent that it is not technologically feasible for a receiving party to destroy a clawed back document (for example, if the clawed back document is part of a production provided on read-only production media such that the clawed back document cannot be destroyed without destroying the entire production media), the parties will meet and confer as to an acceptable alternative approach.

(c) **Receiving Party's Obligation.** Without waiving the ability to challenge a clawback under ¶ 18(a)(2)(c), a receiving party who independently discovers that it received documents or information that reasonably appear to be privileged, that party must promptly notify the Producing Party, and in any event, no later than ten (10) business days after such discovery. A party who is notified or discovers that it may have received a protected document must comply

with Fed. R. Civ. P. 26(b)(5)(B).

(d)     **Clawbacks before Deposition.** To the extent a party receiving a clawback notice believes a clawback made within 30 days of the date of a scheduled deposition impacts that deposition, and the propriety of the clawback is not resolved pursuant to paragraph 18(a)(1) above prior to the date of the deposition, the parties will meet and confer and a party may seek guidance from the Court if the meet and confer does not reach a successful resolution.

19.     **Loss of Clawback**.  Notwithstanding the foregoing paragraph regarding limitations on waiver of privilege, the Parties agree that any document used by any Party in a deposition, expert report, or court filing in this action (with the exception of a motion to determine the existence of any privilege), shall not be eligible for protection under Rule 502(d) as a clawed-back document if the Producing Party does not clawback that document pursuant to this Order within 14 calendar days of its use ("Used Document").  Such ineligibility for clawback of that document, and any Disclosed Protected Information it contains, shall not result in a subject matter waiver in any other state or federal proceeding.   The parties reserve their rights to utilize Rule 502(b), including but not limited to establishing whether and to what extent a court order recognizing waiver of privilege under Rule 502(b) with respect to a document effects a subject matter waiver.

20.     **Claims of Privilege and Redactions.**

(a)     **Production of Privilege Logs.** Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the producing Party will produce privilege/redaction logs in MS Excel format or any other format that permits electronic sorting and searching. All privilege logs will be served within 30 days[2] after Substantial Completion of Document Productions for those productions made on or before Substantial Completion of

---

[2] Defendants reserve the right to seek an extension if the yet-to-be-determined Substantial Completion of Document Productions results in this deadline falling over a major holiday.

Document Productions, or within 30 days after a production to the extent that production was made after Substantial Completion of Document Productions.

(b)     **Exclusions from Logging Potentially Privileged Documents.** The following categories of documents do not need to be contained on a producing Party's initial privilege log, unless good cause exists to require that a Party do so.[3]

(1)     Any communications exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

(2)     Any privileged materials or work product created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation.

(c)     Privilege Log Requirements:

(1)     **Metadata Log.** To the extent applicable, each Party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being

---

[3] Defendants reserve the right to seek an end date for logging potentially privileged documents, depending upon the Time Period negotiated by the parties and/or ordered by the Court in the ESI protocol. Plaintiffs reserve all rights to oppose any such end date.

asserted.

a.  Objective metadata includes the following (as applicable to the document types as shown in the Appendix to the ESI Protocol Order):

i.  A unique privilege log identifier that makes clear the familial relationship of documents, i.e., parent/child

ii.  Custodian

iii.  DuplicateCustodian, CustodianOther or CustodianAll (if applicable)

iv.  File Name

v.  Email Subject

vi.  Author

vii.  From

viii.  To

ix.  CC

x.  BCC

xi.  Date Sent

xii.  Date Received

xiii.  Date Created

b.  In addition to the objective metadata fields, a Party must also include a field on its privilege log entitled "Attorney/Description of Privileged Material" if the basis for the privilege asserted is not apparent from the objective metadata (e.g., the name of the attorney will be provided if not included in the objective metadata). Further, a Party must manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document or the information is not necessary to evaluate the claim of privilege in light of the metadata that is discernable and/or the information provided in the Attorney/Description of Privileged Material field.

22

c. With respect to the "Email Subject" or "File Name" field, the producing Party may substitute a description of the document where the contents of these fields may reveal privileged information. In the privilege log(s), the producing Party shall identify each instance in which it has modified the content of the "Email Subject" or "File Name" field (e.g., "[metadata redacted/altered to protect privilege]."

d. Should a receiving Party, in good faith, have reason to believe a particular entry on a metadata-generated privilege log is responsive and does not reflect privileged discoverable information, the receiving Party may request, and the producing Party will not unreasonably refuse to provide, more information about the basis of the asserted privilege in compliance with Fed. R. Civ. P. 26(b)(5).

(2) **Email Chains.** If there is more than one branch of (i.e., more than one unique group of recipients of) an email thread, each branch will be individually logged; however, each individual email within the thread need not be logged if the recipients of the email chain are all identical. A Party asserting privilege over a chain of emails may produce only a single redacted copy of such email chain consistent with the ESI Protocol to the extent some portions are only partially privileged, except that any unique branches of the email chain must also either be produced in redacted form or included on the metadata privilege log.

(3) **Email Families.** Attachments to emails shall be logged as separate documents on the log, with family relationships identified.

(d) **Documents Redacted for Privilege.** As an initial production matter, redacted documents need not be logged as long as the objective metadata (i.e., to, from, cc, bcc, recipients, date, and time, unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted

23

in the metadata field provided in subsection f below (for redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the document that is sufficient to understand the subject matter of the document may be requested). For the avoidance of doubt, a non-email must have the necessary to, from, date, and other information, if available, that would permit the same type of analysis as a redacted email. The producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information. After receipt of the production, the requesting Party may request in good faith that the producing Party create a privilege log for specific redacted documents. Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

(e) **Challenges to Privilege Claims.** Following the receipt of a privilege/redaction log, a requesting Party may identify, in writing (by Bates/unique identified number), the particular documents that it believes require further explanation. The producing Party shall endeavor to respond to such a request within 14 days. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court.

(f) **Privilege Metadata Fields.** Where a document is either withheld in full or redacted on the basis of a privilege, then that privilege shall be provided in a metadata field in the privilege log entitled "Privilege Asserted" and list a short description of the privilege asserted (e.g., "Attorney Client Privilege", "Attorney Work Product").

**21. Obligations on Conclusion of Litigation.**

(a) **Order Continues in Force.** Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

(b) **Obligations at Conclusion of Litigation.** Within sixty (60) days after dismissal or entry of final judgment not subject to further appeal, all Confidential Information and Highly Confidential Information (i.e., documents designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" under this Order), including copies as defined in Paragraph 4(a), shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent practicable in lieu of return; or (3) as to documents bearing the notations, summations or other mental impressions of the receiving party, that party elects to destroy the documents and certifies to the producing party that it has done so.

(c) **Retention of Work Product and Filed Documents.**

Notwithstanding the above requirements to return or destroy documents, counsel may retain (1) email correspondence related to their representation, (2) attorney work product, including an index that refers or relates to designated Confidential Information or Highly Confidential Information so long as that work product does not duplicate verbatim substantial portions of Confidential Information or Highly Confidential Information; and (3) one complete set of (a) all documents filed with or by the Court, including those filed under seal; (b) all transcripts of depositions, including exhibits; and (c) all final expert witness reports and supporting materials disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure. Any retained Confidential Information or Highly Confidential Information shall continue to be protected under this Order. An attorney may use his or her work product in subsequent litigation, provided that its use does not disclose Confidential Information or Highly Confidential Information. Nothing in this Order shall be construed to require the destruction or return of Confidential Information or Highly Confidential

Information stored in counsels' archives, back-up media, or disaster recovery media.

(d) **Deletion of Documents filed under Seal from Electronic Case Filing (ECF) System**. Filings under seal shall be deleted from the ECF system only upon order of the Court.

22. **Order Subject to Modification.** This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

23. **No Prior Judicial Determination.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document designated Confidential Information or Highly Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

24. **Persons Bound.** This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

25. **Future Parties.** The terms of this Order shall be binding upon all current and future parties to this litigation and their counsel; any party appearing in the litigation following entry of this Order shall be deemed to have joined the case subject to its provisions.

26. **Personal Jurisdiction.** Nothing herein shall be construed as a determination by the Court, or as a consent or waiver by any party, or parent or affiliate of any party, that such party, or parent or affiliate of a party, is subject to personal jurisdiction in this Court or that discovery as to such party, or parent or affiliate of a party, shall proceed pursuant to the Federal Rules of Civil

Procedure.

Dated: _____          _____
                                                 Virginia M. Kendall
                                                 United States District Judge

## ATTACHMENT A TO PROTECTIVE ORDER

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| OLEAN GROCERY COOPERATIVE, INC., et al.,<br><br>             Plaintiffs,<br><br>    v.<br><br>AGRI STATS, INC., et al.,<br><br>             Defendants. | Case Nos. 1:19-cv-08318, 20-cv-02295<br><br>Hon. Virginia M. Kendall<br><br><br>**ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND** |
| SANDEE'S CATERING,<br><br>             Plaintiff,<br><br>    v.<br><br>AGRI STATS, INC., et al.,<br><br>             Defendants. | |

The undersigned hereby acknowledges that he/she has read the Protective Order in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Northern District of Illinois in matters relating to the Protective Order and understands that the terms of the Protective Order obligate him/her to use materials designated as Confidential Information or Highly Confidential Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential Information or Highly Confidential Information to any other person, firm, or concern.

The undersigned acknowledges that violation of the Protective Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

Date: _____        _____
                                  Signature