**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| OLEAN WHOLESALE GROCERY COOPERATIVE, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> AGRI STATS, INC., et al., <br><br> Defendants. | Civil Action No. 19-cv-08318 <br><br><br> Hon. Virginia M. Kendall |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH TYSON,**
**CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS, APPROVAL TO**
**NOTIFY THE SETTLEMENT CLASS, AND RELATED RELIEF**

559197.8

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    LITIGATION BACKGROUND ........................................................................... 2

III.   SUMMARY OF THE SETTLEMENT AGREEMENT.................................... 3

IV.   STANDARDS APPLICABLE TO PRELIMINARY APPROVAL
OF THE PROPOSED SETTLEMENT ............................................................ 4

V.    THE COURT IS LIKELY TO APPROVE THE SETTLEMENT
UNDER RULE 23(E)(2)...................................................................................... 5

      A.     The Class Representatives and Class Counsel Have Adequately
Represented the Class ............................................................................. 6

      B.     The Settlement is Fair and Resulted from Arm's Length Negotiations................. 7

      C.     The Relief Provided for the Class is Substantial and Tangible. .......................... 10

      D.     The Proposal Treats Class Members Equitably Relative to Each Other .............. 11

VI.   THE COURT SHOULD CERTIFY THE PROPOSED
SETTLEMENT CLASS ................................................................................... 11

      A.     The Requirements of Rule 23(a) are Satisfied. ..................................... 12

            1.     Numerosity................................................................................ 12

            2.     Common Questions of Law and Fact...................................... 13

            3.     Typicality ................................................................................. 13

            4.     Adequacy ................................................................................. 14

      B.     The Proposed Settlement Class Satisfies Rule 23(b)(3). ..................... 14

VII.  APPOINTMENT OF THE NOTICE ADMINISTRATOR AND
APPROVAL OF THE PROPOSED NOTICE TO THE CLASS .................... 16

VIII. APPOINTMENT OF AN ESCROW AGENT TO MAINTAIN SETTLEMENT
FUNDS ............................................................................................................... 19

IX.   THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING .................. 19

X.    CONCLUSION.................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................11, 15, 16

*In re Ampicillin Antitrust Litig.*,
    82 F.R.D. 652 (D.D.C. 1979)..................................................................................9

*Armstrong v. Bd. of Sch. Dirs.*,
    616 F.2d 305 (7th Cir. 1980) ...............................................................................4, 5

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010).............................................................................8

*City of Greenville v. Syngenta Crop Prot., Inc.*,
    No. 3:10-CV-188, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ...........................16

*In re Cmty. Bank of N. Va.*,
    418 F.3d 277 (3d Cir. 2005)..................................................................................11

*In re Community Bank of N. Virginia Mortg. Lending Practices Litig.*,
    795 F.3d 380 (3d Cir. 2015)....................................................................................6

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981), *cert. denied*, 456 U.S. 998 (1982)............................7

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ................................................................................4

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986)..........................4

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir. 1998) ..................................................................................4

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ..................................................................................5

*Goldsmith v. Tech. Solutions Co.*,
    No. 92-C-4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ...............................7

*Hanrahan v. Britt*,
    174 F.R.D. 356 (E.D. Pa. 1997).............................................................................8

*Hughes v. Baird & Warner, Inc.*,
   No. 76 C 3929, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980) ...................................................15

*In re IPO Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ..........................................................................................9

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ...........................................................................................4, 5

*Kohen v. Pacific Inv. Mgmt., Co. LLC*,
   571 F.3d 672 (7th Cir. 2009) ..............................................................................................6

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ..................................................................................8

*In re Mercedes-Benz Antitrust Litig.*,
   213 F.R.D. 180 (D.N.J. 2003) ...........................................................................................14

*Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*,
   231 F.R.D. 280 (N.D. Ill. 2005) ...................................................................................13, 14

*Paper Sys. Inc. v. Nippon Paper Indus. Co., Ltd.*,
   281 F.3d 629 (7th Cir. 2002) ..............................................................................................8

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................5, 10, 11

*Saltzman v. Pella Corp.*,
   257 F.R.D. 471 (N.D. Ill. 2009) ...................................................................................13, 14

*Schmidt v. Smith & Wollensky, LLC*,
   268 F.R.D. 323 (N.D. Ill. 2010) .........................................................................................12

*Thillens, Inc. v. Cmty. Currency Exch. Ass'n*,
   97 F.R.D. 668 (N.D. Ill. 1983) ...........................................................................................13

*Uhl v. Thoroughbred Tech. & Telecomms, Inc.*,
   309 F.3d 978 (7th Cir. 2002) ...............................................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...........................................................................................................13

## Statutes

28 U.S.C. § 1715 .......................................................................................................................20

## Other Authorities

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

Manual For Complex Litigation (Fourth) § 21.632 (2004) ............................................................4

2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992) ....................................................................5

2 NEWBERG ON CLASS ACTIONS, § 11.40 (2d ed. 1985) ...................................................................7

4 NEWBERG ON CLASS ACTIONS § 11.53 (4th ed. 2002) ...............................................................16

## I.     INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs") have reached a proposed "icebreaker" settlement of their claims with Tyson Foods, Inc., Tyson Fresh Meats, Inc., Tyson Prepared Foods, Inc., and the Hillshire Brands Company (collectively "Tyson").[1]  *See* Direct Purchaser Plaintiffs' Notice of Settlement with Tyson Defendants (ECF No. 251).  Pursuant to the parties' Settlement Agreement, within fourteen days of the Court granting Preliminary Approval, Tyson will pay the sum of $4,625,000 into an escrow account for the benefit of the Settlement Class.  *See* Settlement Agreement § 9.  In addition to this monetary relief, Tyson will provide meaningful cooperation, which will assist DPPs in the prosecution of their claims against the remaining Defendants.  *Id*. at § 10.

DPPs now move the Court to preliminarily approve the parties' Settlement Agreement, certify the proposed Settlement Class, appoint Interim Co-Lead Counsel as co-lead counsel for the Settlement Class, and approve a program to notify members of the Settlement Class of this settlement.  At this time, DPPs are not seeking to distribute the Settlement amount to qualified Class Members or seek an award of attorneys' fees or expenses.  Interim Co-Lead Counsel intend to defer such motions until later in the litigation.

Additionally, DPPs now move the Court to appoint A.B. Data Ltd. as the notice and claims administrator for DPPs, to appoint The Huntington National Bank as the escrow agent to provide escrow services and, finally, to schedule a Final Approval Hearing for the Settlement.  At the Final Approval Hearing, Interim Co-Lead Counsel will request entry of a final order and judgment ("Final Order") consistent with the Settlement Agreement, dismissing with prejudice all claims

---

[1] The Long-Form Settlement Agreement is attached here to as Exhibit A to the Declaration of Brian D. Clark (hereinafter, "Settlement" or "Settlement Agreement"). The capitalized terms in this memorandum are defined in the Settlement Agreement.

against Tyson and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement.

## II.     LITIGATION BACKGROUND

DPPs are persons or entities who purchased Turkey directly from Defendants or Co-conspirators in the United States and bring this action under Section 1 of the Sherman Act to redress alleged anticompetitive conduct by the leading Turkey suppliers in the United States.[2] DPPs allege that Defendants and their Co-Conspirators entered into an information exchange agreement that reduced or suppressed competition in the market for Turkey.

On December 19, 2019, DPPs filed a class action lawsuit on behalf of themselves individually and on behalf of all direct purchasers of Turkey in the United States.  (ECF No. 1.) On June 16, 2020, Defendants moved to dismiss DPPs' complaint.  (ECF Nos. 145, 147, 149, and 151.)  DPPs opposed these motions on July 16, 2020 (ECF No. 155), and Defendants replied on August 7, 2020 (ECF Nos. 158, 159, 160, and 161). On October 19, 2020, the Court denied Defendants' Joint Motion to Dismiss, except with respect to the *per se* allegation, granted Kraft's Motion to Dismiss, and denied Farbest's and Cooper's Motion to Dismiss.  (ECF. No. 173.)  DPPs filed their Amended Class Action Complaint (ECF No. 238) ("Compl.") on March 16, 2021.  On April 23, 2021, the Court denied Tyson's motion for judgment on the pleadings.  (ECF No. 248.)

Since filing their initial class action complaint, DPPs have continued to investigate the conspiracy they allege and have vigorously litigated this case.  (*See* Clark Decl. ¶ 4.)

---

[2] Consistent with the Complaint, the term Turkey is defined in the Settlement Agreement, as "turkey meat, which may be sold in a variety of forms, including fresh or frozen, ground or parts, and raw or cooked. "Turkey" includes, but is not limited to: breasts, wings, drums, legs, thighs, tenderloins, necks, tails, gizzards, feet, trim, tenders, mechanically separated turkey ("MST"), ground turkey, and further processed and value added turkey products.  Turkey includes, but is not limited to, products containing turkey such as lunch meat, deli meat, sausage, franks, bacon, and corn dogs."  *See* Settlement Agreement § 1(c).

### III.     SUMMARY OF THE SETTLEMENT AGREEMENT

DPPs reached the Settlement Agreement with Tyson after hard fought and arm's length negotiations.  (*See* Clark Decl. ¶ 6.)  Tyson has agreed to pay $4,625,000 into escrow for the benefit of the Settlement Class and to cooperate with DPPs in their ongoing investigation and prosecution of their claims.  (*See* Settlement Agreement §§ 9-10.)  Tyson's cooperation includes providing DPPs with (a) documents and data related to Tyson's sales of Turkey during the relevant time period, (b) documents from two mutually agreed-upon document custodians responsive to the parties' agreed upon search terms, (c) direct communications between competitors relating Turkey from two mutually agreed-up document custodians, (d) any documents it produces to any other party in connection with this litigation, including any documents it produced to a State Attorney General or the U.S. Department of Justice regarding an investigation into the Turkey industry, and (e) any information or proffers given to any plaintiff in matters substantially similar to this one. (*See id.* at § 10.)  Given Tyson's roughly 4-5% market share in the Turkey market, this Settlement represents a payment of approximately $1 million per market share point.

In consideration, DPPs and the proposed Settlement Class agree, among other things, to release claims against Tyson that were, or could have been, brought in this litigation arising from the conduct alleged in the Complaint.  The release does not extend to any other Defendants.  (*See id.* at §§ 14-15.)

Subject to the approval and direction of the Court, the settlement amount (with accrued interest) will be used to: (1) pay for notice costs and costs incurred in the administration and distribution of the Settlement; (2) pay taxes and tax-related costs associated with the escrow account for proceeds from the Settlement; (3) make a distribution to the Settlement Class Members

in accordance with the to-be-filed proposed plan of distribution; and (4) pay attorneys' fees to Counsel for the Settlement Class, as well as costs and expenses, that may be awarded by the Court.[3]

## IV.   STANDARDS APPLICABLE TO PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

There is an overriding public interest in settling litigation, and this is particularly true in class actions.  *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds; Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).  Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). However, a class action may be settled only with court approval.  Before the court may give that approval, all class members must be given notice of the proposed settlement in the manner the court directs.  Fed. R. Civ. P. 23(e).

Generally, before notice is given to the class members, the court makes a preliminary evaluation of the proposed class action settlement.  The Manual For Complex Litigation (Fourth) § 21.632 (2004) explains:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . . The Judge must make a preliminary determination on the fairness,

---

[3] At this time DPPs are not seeking to distribute the Tyson settlement amount to qualified class members or seek an award of attorneys' fees or expenses.  Instead, Interim Co-Lead Counsel intend to defer such motions until later in the litigation.

4

> reasonableness and adequacy of the settlement terms and must direct
> the preparation of notice of the . . . proposed settlement, and the date
> of the [formal Rule 23(e)] fairness hearing.

*See also* 2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992); *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'"); *see also Armstrong*, 616 F.2d at 314.

The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *see Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99. In weighing a grant of preliminary approval, courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i–ii).

## V. THE COURT IS LIKELY TO APPROVE THE SETTLEMENT UNDER RULE 23(E)(2)

To determine whether to approve a proposed settlement under Federal Rule of Civil Procedure ("Rule") 23(e)(2), courts look to the factors in the text of Rule 23(e)(2), which a court must consider when weighing final approval. *See* Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" the factors set forth in Rule 23(e)(2).); *see, e.g.*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) ("Payment Card"). Rule 23(e)(2) requires courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:

(i)  the costs, risks, and delay of trial and appeal;

(ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Factors (A) and (B) under Rule 23(e)(2) constitute the "procedural" analysis factors, and examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Factors (C) and (D) under Rule 23(e)(2) constitute the "substantive" analysis factors, and examine "[t]he relief that the settlement is expected to provide to class members...." *Id*.

Because the proposed settlement meets all factors under Rule 23(e)(2), DPPs respectfully submit that the Court will likely grant final approval of the proposed settlement, and thus the proposed settlement should be preliminarily approved.

## A.  The Class Representatives and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires that "the class representatives and class counsel have adequately represented the class." Adequacy is measured by a two-part test: (i) the named plaintiffs cannot have claims in conflict with other class members, and (ii) the named plaintiffs and proposed class counsel must demonstrate their ability to litigate the case vigorously and competently on behalf of named and absent class members alike. *See Kohen v. Pacific Inv. Mgmt., Co. LLC*, 571 F.3d 672, 679 (7th Cir. 2009).

Both requirements are satisfied here. The interests of the Settlement Class members are aligned with those of DPPs' Named Plaintiffs. Named Plaintiffs, like all Settlement Class members, share an overriding interest in obtaining the largest possible monetary recovery and as fulsome cooperation as possible. *See, e.g.*, *In re Community Bank of N. Virginia Mortg. Lending*

6

*Practices Litig.*, 795 F.3d 380, 394 (3d Cir. 2015) (no fundamental intra-class conflict to prevent class certification where all class members pursuing damages under the same statutes and the same theories of liability); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981), *cert. denied*, 456 U.S. 998 (1982) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"). DPPs' Named Plaintiffs are not afforded any special compensation by this proposed Settlement and all Settlement Class Members similarly share a common interest in obtaining Tyson's early and substantial cooperation to prosecute this case. (*See* Clark Decl. ¶ 8.)

Further, DPPs and their counsel will continue to litigate this case vigorously and competently. As they demonstrated when they sought appointment, Interim Co-Lead counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation.[4] As they respectfully submit, and as has been demonstrated, Interim Co-Lead Counsel have diligently represented the interests of the class in this litigation and will continue to do so. Accordingly, the Named Plaintiffs and Interim Co-Lead counsel have adequately represented the class.

**B.     The Settlement is Fair and Resulted from Arm's Length Negotiations.**

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." There is usually an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed. 1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) ("[I]t may be presumed that the agreement is fair and adequate where, as here, a

---

[4] *See* ECF No. 133 (Memorandum of Law in Support of Motion to Appoint Hagens Berman Sobol Shapiro LLP and Lockridge Grindal Nauen P.L.L.P. Interim Co-Lead Counsel for Direct Purchaser Plaintiffs Pursuant to Federal Rule of Civil Procedure 23(g)); ECF No. 143 (Court's Minute Entry of June 16, 2020 appointing same).

proposed settlement is the product of arm's-length negotiations."). Settlements proposed by experienced counsel and which result from arm's length negotiations are entitled to deference from the court. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e). In making the determination as to whether the proposed settlement is fair, reasonable, and adequate, the Court necessarily will evaluate the judgment of the attorneys for the parties regarding the "strength of plaintiffs' case compared to the terms of the proposed settlement." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

The proposed Settlement plainly meets the standards for preliminary approval. The Settlement Agreement is the product of extensive arm's-length settlement negotiations, which included several rounds of give-and-take between Interim Co-Lead Counsel and Tyson's counsel with the assistance of an experienced and nationally renowned mediator, the Hon. Daniel Weinstein (Ret.). (*See* Clark Decl. ¶ 6.) Based on DPPs' extensive factual investigation to date, the cooperation provisions negotiated as part of the settlement enable DPPs to obtain additional information regarding the allegations in the Complaint. Therefore, based on both the monetary and cooperation elements of the Settlement Agreement, Interim Co-Lead Counsel believe this is a fair settlement for the Class. (*Id.* at ¶ 11.)

Moreover, this Settlement does not affect the potential full recovery of damages for the Class under the antitrust laws because the remaining Defendants will be jointly and severally liable

for injuries incurred as a result of the conspiracy DPPs allege. *See Paper Sys. Inc. v. Nippon Paper Indus. Co., Ltd.*, 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output."). In addition to not affecting the overall damages, the Settlement should hasten and improve the Class' recovery by providing DPPs access to information that likely would otherwise only be obtainable through protracted discovery. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability and where settling defendant's "assistance in the case against [a non-settling defendant] will prove invaluable to the plaintiffs").

In addition to a monetary payment, Tyson will provide material cooperation to the Class, as provided in the Settlement Agreement, to help streamline discovery and trial. (*See* Settlement Agreement § 10.) Courts have recognized the value of such cooperation:

> [F]rom a pragmatic standpoint, the value of . . . [cooperating defendants] in litigation, as opposed to the specter of hundreds of uncooperative opponents, is significant. The [settling defendants] know far better than the plaintiff classes precisely what occurred in the [relevant] period . . . and their willingness to open their files . . . may ease the plaintiffs' discovery burden enormously.

*In re IPO Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y. 2005) (footnote omitted). This cooperation here is even more valuable in light of the applicability of joint and several liability to DPPs claims. While DPPs believe that their case is strong, any complex antitrust litigation is inherently costly and risky, and this Settlement mitigates that risk and protects the Class.

Conversely, Tyson believes its case is strong and that it would achieve success on the merits. Tyson denies that it entered into an agreement to reduce or suppress competition in the market for Turkey with Defendants and their Co-conspirators. Indeed, Tyson maintains that it did nothing wrong. (*See* Settlement Agreement, Recitals, p. 3.) But in the interests of avoiding the

risk and uncertainty of trial, Tyson has agreed to settle. (*Id.*) Tyson's documents and data will give DPPs critical and unique insight into the conspiracy DPPs allege.

In sum, the Settlement Agreement: (1) provides substantial benefits to the class; (2) is the result of extensive good faith negotiations between knowledgeable and skilled counsel; (3) was entered into after extensive factual investigation and legal analysis; and (4) in the opinion of experienced Class Counsel, is fair, reasonable, and adequate to the Class. Accordingly, Interim Co-Lead Counsel believe that the Settlement Agreement is in the best interests of the Class Members and should be preliminarily approved by the Court.

### C.     The Relief Provided for the Class is Substantial and Tangible.

In assessing whether the settlement provides adequate relief for the putative class under Rule 23(e)(2)(C), the Court should consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i–iv).

"Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial." *See, e.g.*, *Payment Card*, 330 F.R.D. at 36 (citations omitted). Here, for the reasons described above in Section V(B), the settlement is fair and resulted from arm's-length negotiations. Interim Co-Lead Counsel thoroughly evaluated the relative strengths and weaknesses of the respective litigation positions, and determined that the Settlement brings substantial benefits to the proposed Class at an early stage in the litigation, and avoids the delay and uncertainty of continuing protracted litigation with Tyson. (*See* Clark Decl. ¶¶ 5-6 and 11.) DPPs have proposed an effective method of notice to the proposed Settlement Class used previously by experienced counsel (*see* Section VII below). In addition, during negotiations, there

was no discussion, let alone agreement, regarding the amount of attorneys' fees DPPs' counsel ultimately may ask the Court to award in this case, and DPPs' counsel are not seeking fees at this time. (Clark Decl. ¶ 7.) The benefits of settlement outweigh the costs and risks associated with continued litigation with Tyson, and weigh in favor of granting final approval.

### D. The Proposal Treats Class Members Equitably Relative to Each Other

Consideration under this Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Here, Named Plaintiffs are treated the same as all other Class members in this proposed Settlement, and all Class members similarly share a common interest in obtaining Tyson's early and substantial cooperation to prosecute this case. (*See* Clark Decl. ¶ 8.) The release applies uniformly to putative class members, and does not affect the apportionment of the relief to class members. (*See* Settlement Agreement §§ 14-15.) Accordingly, this factor will likely weigh in favor of granting final approval. *See, e.g.*, *Payment Card*, 330 F.R.D. at 47.

## VI. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

In order to preliminarily approve the proposed settlement, the Court must also find that it will likely be able to certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B)(i–ii).

Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with Fed. R.

Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry[.]").

DPPs seek certification of a Settlement Class consisting of:

> All persons who directly purchased Turkey from Defendants or Co-Conspirators for personal use in the United States from at least as early as January 1, 2010 through January 1, 2017. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action.

Settlement Agreement § 5. This is the same class proposed in DPPs' Complaint. *See* Compl. ¶ 127. As detailed below, this proposed Class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### A.  The Requirements of Rule 23(a) are Satisfied.

#### 1.  Numerosity

Rule 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No magic number satisfies the numerosity requirement; however, "a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) (citations omitted). The proposed Settlement Class consists of persons and entities that purchased Turkey from the Defendants or their Co-conspirators during the period from January 1, 2010 through January 1, 2017. While the precise number of Class members is presently known only to Defendants, based on their extensive investigation Co-Lead Counsel believe that, due to the nature of the trade and commerce of the Turkey market, there are thousands of Class Members geographically dispersed throughout the United States. Thus, joinder would be impracticable and Rule 23 (a)(1) is satisfied.

2.     Common Questions of Law and Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

A central allegation in the Complaint is whether Defendants and their Co-conspirators entered into an information exchange agreement that reduced or suppressed competition in the market for Turkey. Compl. ¶¶ 1-33. Proof of this will be common to all Class members. *See, e.g.*, *Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983) ("The overriding common issue of law is to determine the existence of a conspiracy."). In addition to that overarching question, this case is replete with other questions of law and fact common to the Settlement Class including: (1) the identities of the participants in the alleged agreement; (2) the duration of the alleged agreement and the acts performed by Defendants and Co-conspirators in furtherance of the agreement; (3) whether the conduct of Defendants and their Co-conspirators, as alleged in the Complaint, caused injury to the business or property of DPPs and other class members; (4) the effect of the alleged conspiracy on the prices of Turkey sold in the United Stated during the Class Period; and (5) the appropriate class-wide measure of damages. Accordingly, the Settlement Class satisfies Rule 23(a)(2).

3.     Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "[T]ypicality is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009) (citations omitted). Typicality is a "low hurdle," requiring "neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill.

2005). When the "[representative party's] claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [all] claims are based on the same legal theory," factual differences among class members do not defeat typicality. *Id.* Courts generally find typicality in cases alleging a price-fixing conspiracy. *See, e.g.*, *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003) (finding that plaintiffs met the typicality requirement based on the fact that plaintiffs' main claim - that they were harmed by an illegal price-fixing conspiracy - was the same for all class members).

Here, DPPs allege Defendants and their Co-conspirators conspired to fix, maintain, and inflate the price of Turkey in the United States by exchanging competitively sensitive information. Compl. ¶ 139. The DPP Named Plaintiffs will have to prove the same elements that absent Settlement Class members would have to prove, *i.e.*, the existence and effect of the alleged conspiracy. Because the Named Plaintiffs' claims arise out of the same alleged illegal anticompetitive conduct and are based on the same alleged theories and will require the same types of evidence to prove those theories, the typicality requirement of Rule 23(a)(3) is satisfied.

4.    Adequacy

For the reasons mentioned above in Section V(A), the DPP Named Plaintiffs and Interim Co-Lead Counsel have adequately represented the class.

B.    **The Proposed Settlement Class Satisfies Rule 23(b)(3).**

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show the proposed Settlement Class satisfies Rule 23(b)(3). The proposed Settlement satisfies Rule 23(b)(3) by showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As to predominance, "[c]onsiderable overlap exists between the court's determination of commonality and a finding of predominance. A finding of

commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Saltzman*, 257 F.R.D. at 484.

In antitrust conspiracy cases such as this one, courts consistently find that common issues of the existence and scope of the conspiracy predominate over individual issues. *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this case. That issue predominates over issues affecting only individual sellers."); *see also Amchem Prods., Inc.*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

Plaintiffs must also show that a class action is superior to individual actions, which is evaluated by four considerations:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, Interim Co-Lead Counsel have no knowledge of any individual direct purchaser actions filed against Tyson regarding an agreement during the Class Period related to the sale of Turkey, and throughout this litigation, no class member has expressed an interest in individually controlling separate actions against Tyson. (*See* Clark Decl. ¶ 14.) Regardless, a Class Member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Numerous entities purchased Turkey during the class period; settling these claims in the context of a class action conserves both judicial and private resources

and hastens Class members' recovery. Finally, while DPPs see no management difficulties in this case, this final consideration is not pertinent to approving a settlement class. *See Amchem Prods., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Accordingly, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to Tyson.

## VII. APPOINTMENT OF THE NOTICE ADMINISTRATOR AND APPROVAL OF THE PROPOSED NOTICE TO THE CLASS

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) states:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The form of notice is "adequate if it may be understood by the average class member." 4 NEWBERG ON CLASS ACTIONS § 11.53 (4th ed. 2002).

Notice to class members must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods., Inc.*, 521 U.S. at 617 (quoting Fed. R. Civ. P. 23(c)(2)); *City of Greenville v. Syngenta Crop Prot., Inc.*, No. 3:10-CV-188, 2012 WL 1948153, at *4 (S.D. Ill. May 30, 2012) (same). Individual notice should be sent to members who can be identified through reasonable

effort. Such notice may be by United States mail, electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Other members may be notified by publication. *City of Greenville,* 2012 WL 1948153, at *4.

The proposed notice plan in this case satisfies these criteria. DPPs propose to the Court a plan of notice that comports with due process and provides reasonable notice to known and reasonably identifiable customers of Tyson pursuant to Rule 23. The class notice documents, consisting of the long form, email, and publication notice, comply with the requirements of Rule 23(c)(2(B). (*See* Class Notice Documents, attached to the Declaration of Eric Schachter ("Schachter Decl.") as Exhibits B through E.) The notice documents define the Settlement Class, describe the nature of the of the action, summarize the class claims, and explain the procedure for requesting exclusion from the Settlement Class and objecting to the proposed Settlement. (*Id.*) The notice documents describe the terms of the Settlement Agreement and inform the Settlement Class members that there is no plan for distribution at this time. (*Id.*) The notice documents will provide the date, time, and place for the Final Approval Hearing (once that hearing is set by the Court), and inform Settlement Class Members that they do not need to enter an appearance through counsel, but may do so if they choose. (*Id.*)

The proposed notice plan also comports with due process and Rule 23. The plan includes: (1) direct notice by U.S. mail and email to Settlement Class Members who can be identified through reasonable effort, including but not limited to Tyson's customer lists; (2) publication of summary notice in industry-related mailed and digital media; and (3) posting of notice on a case website to be created. (*See* Schachter Decl. ¶¶ 6-13.) Since the Settlement Class members in this case purchased Turkey directly from Tyson, DPPs intend to obtain mailing addresses for the vast majority of Settlement Class Members from Defendants' customer lists and will rely to the extent

17

practicable on direct mail and email to Class Members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).

DPPs have retained A.B. Data Ltd., an experienced national class action notice provider and claims administrator, to administer the notice plan. (*See* Clark Decl. ¶ 12; *see also* Schachter Decl. ¶¶ 1-5, Ex. A.) A.B. Data will mail the long form notice via first-class U.S. mail to Settlement Class Members whose addresses can be identified with reasonable effort through Defendants' records. (*See id*. ¶¶ 6-7, Ex. B.) A.B. Data will also send the email notice to all Settlement Class Members for whom email can be identified with reasonable effort in Defendants' records. (*See id*., Ex. C.) The email notice will provide Settlement Class Members with an electronic link to the settlement website where they can obtain more information including the long form notice and Settlement Agreement. (*See id*. ¶¶ 8, 13.)

A.B. Data further plans to supplement the direct mail and email notice via publication notice, to reach those remaining Settlement Class Members that do not receive notice of the Settlement. This will include both print and digital medial components. (*See* Schachter Decl. ¶10, Ex. D and E.) This type of notice plan, which relies on direct notice and publication notice, has been successfully implemented in direct purchaser class actions. (*See id*. ¶ 15; *see also* Clark Decl. ¶ 10, Ex. B (*In re Broiler Chicken Antitrust Litig.*, 1:16-cv-08637 (N.D. Ill. Jan. 8, 2020) (ECF No. 3394) (Order Granting DPPs' Motion for Preliminary Approval of Settlements with Defendants Peco Foods, Inc. George's Inc., George's Farms, Inc., and Amick Farms, LLC))).

A.B. Data will also host the settlement website, providing additional information and documents, and a toll-free number for frequently asked questions and requests for mailing of further information. (*See* Schachter Decl. ¶¶ 11-13.) The website and call center will be available in both English and Spanish. (*Id*.)

DPPs respectfully submit that this multifaceted, comprehensive notice plan provides the best notice practicable under the circumstances of this case and fully satisfies Rule 23 and due process requirements.

## VIII. APPOINTMENT OF AN ESCROW AGENT TO MAINTAIN SETTLEMENT FUNDS

Finally, DPPs propose that the Huntington National Bank be appointed by the Court to serve as the escrow agent, maintain the Qualified Settlement Fund as called for in the parties' Settlement Agreement (*see* Settlement Agreement § 11), and provide escrow services in this litigation. Interim Co-Lead Counsel selected the Huntington National Bank after a competitive bidding process. (*See* Clark Decl. ¶ 13.) Huntington Bank's qualifications are attached in the Declaration of Robyn Griffin as Exhibit A. The Huntington National Bank's diversity and inclusion statement is attached to the Declaration of Exhibit B.

## IX. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence necessary to evaluate the proposed Settlement. At that hearing, proponents of the Settlements may explain and describe their terms and conditions and offer argument in support of the Settlement's approval, and members of the Settlement Class or their counsel may be heard regarding the proposed settlements if they choose.

DPPs propose the following schedule of events necessary for a hearing on final approval of the Settlement:

| DATE | EVENT |
| --- | --- |
| Within 45 days after entry of the preliminary approval order | Each Defendant to provide a customer list to the Settlement Administrator, including any reasonably available names, email addresses, and mailing addresses |

| DATE | EVENT |
|---|---|
| Within 75 days after the entry of the preliminary approval order | Settlement Administrator to provide direct mail and email notice and commence implementation of publication notice plan |
| 60 days after the commencement of the Notice | Last day for Settlement Class Members to request exclusion from the Settlement Class; for Settlement Class Members to object to the Settlement; and for Settlement Class Members to file notices to appear at the Final Approval Hearing |
| 7 days after last day to request exclusion from Settlements | Co-Lead Counsel to provide Tyson with a list of all persons and entities who have timely and adequately requested exclusion from the Settlement Class |
| 14 days before the Final Approval Hearing | Co-Lead Counsel shall file a motion for final approval of the Settlement and all supporting papers, and Co-Lead Counsel and Tyson may respond to any objections to the proposed Settlement |
| 40 days after the last day to request exclusion from the Settlement, or as soon thereafter as may be heard by the Court | Final Approval Hearing for the Settlement[5] |

## X.     CONCLUSION

For these reasons, Interim Co-Lead Counsel respectfully request that the Court preliminarily approve the Settlement Agreement, certify the proposed Settlement Class, appoint Interim Co-Lead Counsel as co-lead counsel for the Settlement Class, approve the program to notify members of the Settlement Class of this Settlement, and grant the other relief requested by DPPs.

---

[5] Under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), the Court may not issue an order giving final approval of a proposed settlement earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with notice of these proposed Settlements. *Id*. at § 1715(d). Under the Settlement Agreement, within ten days of the filing of this motion, Tyson will serve upon the appropriate state officials and the appropriate federal official the CAFA notice required by Section 1715(b). This schedule will allow the Court to schedule a Fairness Hearing as DPPs propose in the schedule above, in conformance with CAFA's requirements.

Dated:  May 21, 2021                     Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

s/ Steve W. Berman
STEVE W. BERMAN
455 North Cityfront Plaza Drive, Suite 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950
steve@hbsslaw.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

s/ Brian D. Clark
W. Joseph Bruckner
Brian D. Clark
Maureen Kane Berg
Simeon A. Morbey
Steven E. Serdikoff
Leona B. Ajavon
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
wjbruckner@locklaw.com
bdclark@locklaw.com
mkberg@locklaw.com
samorbey@locklaw.com
seserdikoff@locklaw.com
lbajavon@locklaw.com

***Counsel for Plaintiffs and the***
***Proposed Direct Purchaser Plaintiff Class***