# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| OLEAN WHOLESALE GROCERY COOPERATIVE, INC., et al., | Civil No. 1:19-cv-08318 |
| Plaintiffs, | Hon. Virginia M. Kendall Hon. Gabriel A. Fuentes |
| v. | |
| AGRI STATS, INC., et al., | |
| Defendants. | |

**LONG-FORM SETTLEMENT AGREEMENT BETWEEN**
**DIRECT PURCHASER PLAINTIFFS AND TYSON FOODS**

THIS SETTLEMENT AGREEMENT, ("Settlement Agreement") is made and entered into as of the 14th day of May, 2021 ("Execution Date") by and between the Direct Purchaser Plaintiffs ("DPPs"),[1] through Interim Co-Lead Counsel (as hereinafter defined) for the proposed Settlement Class (as hereinafter defined), and Tyson Foods, Inc., Tyson Fresh Meats, Inc., Tyson Prepared Foods, Inc. and the Hillshire Brands Company and all of their predecessors, successors, assigns, and Affiliates (as hereinafter defined) (including without limitation any affiliates who are alleged co-conspirators); and any and all past, present, and future parents, owners, subsidiaries, divisions, departments (collectively referred to as "Settling Defendant" or "Tyson") in the above-captioned action (the "Action"). DPPs, on behalf of the Settlement Class, and Tyson are referred to herein collectively as the "Parties" or individually as a "Party."

---

[1] As used herein, "DPPs" means Olean Wholesale Grocery Cooperative, Maplevale Farms, Inc., and John Gross and Company, Inc.

WHEREAS, DPPs on behalf of themselves and as representatives of the putative class of similarly situated persons or entities allege in the Action, among other things, that Tyson participated in a conspiracy — with other Defendants and alleged non-Defendant co-conspirators in the Action — from at least January 1, 2010 to January 1, 2017 to fix, raise, maintain, and stabilize the price of Turkeys (as hereinafter defined);

WHEREAS, Interim Co-Lead Counsel have been appointed by the Court to represent, on an interim basis, the putative class of direct purchasers of Turkeys (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Tyson in any way arising out of or relating in any way to the direct purchase of Turkeys (as hereinafter defined) produced, processed or sold by Tyson or any of the Defendants or their alleged co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations, including mediation with a nationally recognized and highly experienced mediator, on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the settlement;

WHEREAS, DPPs have concluded, after preliminary investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of DPPs to enter into this Settlement Agreement with Tyson to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class (as hereinafter defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of DPPs and the Settlement Class;

WHEREAS, DPPs and Interim Co-Lead Counsel believe that the Settlement Fund (as hereinafter defined) reflects fair, reasonable and adequate compensation for the Settlement Class

(as hereinafter defined) to release, settle and discharge their claims that they were overcharged by the alleged anticompetitive conduct of which Tyson is accused; and

WHEREAS, Tyson, notwithstanding its belief that it has legitimate defenses to any claims that could be asserted by DPPs against it, enters into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation, and thereby put a rest to this controversy;

WHEREAS, DPPs, notwithstanding their belief that they would ultimately prevail at trial and establish liability by Tyson, for the conspiracy they have alleged, enter into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation; and

WHEREAS, both Parties wish to preserve all arguments, defenses and responses to all claims in the Action, including any arguments, defenses and responses to any proposed litigation class proposed by DPPs in the event this Settlement does not obtain Final Approval;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the DPPs be settled, compromised, and dismissed on the merits with prejudice as to Tyson subject to Court approval and that Tyson be forever fully discharged and released from any and all claims covered by this Settlement Agreement:

1.    <u>General Definitions</u>.  The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

    a.    "Action" means the putative class action filed by DPPs in the above-captioned proceeding.

b.      "Affiliate" means with respect to any person, entity or company, a person, entity, or company that directly or indirectly controls, is controlled by or is under common control with such person, entity or company.

c.      "Turkey" means turkey meat, which may be sold in a variety of forms, including fresh or frozen, ground or parts, and raw or cooked. "Turkey" includes, but is not limited to: breasts, wings, drums, legs, thighs, tenderloins, necks, tails, gizzards, feet, trim, tenders, mechanically separated turkey ("MST"), ground turkey, and further processed and value added turkey products. Turkey includes, but is not limited to, products containing turkey such as lunch meat, deli meat, sausage, franks, bacon, and corn dogs.

d.      "Complaint" means the DPPs' Amended Class Action Complaint (ECF No. 238).

e.      "Court" means the United States District Court for the Northern District of Illinois and the Honorable Virginia M. Kendall and the Honorable Gabriel A. Fuentes or their successors, or any other court in which the Action is proceeding.

f.      "Defendants" means those Defendants named in DPPs' Complaint.

g.      "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by Tyson for the benefit of the Settlement Class.

h.      "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and DPPs (by and through Interim Co-

Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9 below.

i. "Fairness Hearing" means a hearing by the Court to determine whether the Settlement Agreement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

j. "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement, including all of its material terms and conditions without modification, and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Tyson with prejudice from the Action.

k. "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (1) no appeal or petition to seek permission to appeal the Court's Final Approval has been made within the time for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty days after entry of the order of Final Approval; or (2) if any timely appeals from the Final Approval or notices of appeal from the Final Approval are filed, (i) the date of final dismissal of all such appeals or the final dismissal of any proceeding on certiorari or otherwise, or (ii) the date the Final Approval is finally affirmed on appeal and affirmance is no longer subject to further appeal or review.

l.      "Interim Co-Lead Counsel" means Lockridge Grindal Nauen P.L.L.P. and Hagens Berman Sobol Shapiro LLP as appointed by the Court on an interim basis to represent the putative class of direct purchasers of Turkey.

m.      "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

n.      "Released Claims" shall have the meaning set forth in Paragraph 14 of this Agreement.

o.      "Releasing Party" or "Releasing Parties" shall refer individually and collectively to DPPs, the Settlement Class, and all members of the Settlement Class, including the DPPs, each on behalf of themselves and their respective predecessors, successors, and all of their respective past, present and future (i) direct and indirect parents, subsidiaries, associates and Affiliates, (ii) agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions, and (iii) shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney

general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement.

p. "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of Settlement Funds to the Settlement Class, subject to approval of the Court.

q. "Settlement Class" means the class defined in Paragraph 5 below, excluding all persons who file a valid request for exclusion from the Settlement.

r. "Settlement Class Notice" means any notice sent to the Settlement Class pursuant to Preliminary Approval or otherwise approved by the Court pursuant to Federal Rule of Civil Procedure 23.

s. "Settlement Class Period" means January 1, 2010 until January 1, 2017.

t. "Settlement Fund" means $4,625,000 (four million, six hundred and twenty-five thousand U.S. dollars), the amount Tyson shall pay or cause to be paid into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9 below, as well as any interest accruing within such interest-bearing Escrow Account.

u. "Tyson Released Parties" means Tyson (as defined above) together with any and all of Tyson's past, current, and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities, Affiliates, associates, divisions, joint ventures, predecessors, successors and each of their respective past or present, direct or indirect, officers, directors, trustees, partners, managing directors, shareholders, managers, members,

attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives. Notwithstanding the foregoing, "Tyson Released Parties" does not include any Defendant other than Tyson named by DPPs in the Action, either explicitly or as a third-party beneficiary.

2.      The Parties' Efforts to Effectuate this Settlement Agreement.  The  Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3.      Litigation Standstill.  DPPs shall cease all litigation activities against Tyson in the Action except to the extent expressly authorized in this Agreement. Tyson and its counsel shall cease all litigation activities against DPPs in the Action.  None of the foregoing provisions shall be construed to prohibit DPPs from seeking appropriate discovery from non-settling Defendants or Co-Conspirators or any other person other than Settling Defendant.

4.      Motion for Preliminary Approval.  No later than seven (7) days after the Execution Date, DPPs will move the Court for Preliminary Approval of this Settlement.  A reasonable time in advance of submission to the Court, the papers in support of the motion for Preliminary Approval shall be provided by Interim Co-Lead Counsel to Tyson for its review.  To the extent that Tyson objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection.  The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class for settlement purposes.

5.     <u>Certification of a Settlement Class</u>. As part of the motion for Preliminary Approval of this Settlement, DPPs shall seek, and Tyson shall take no position with respect to,[2] appointment of Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement and certification in the Action of the following Settlement Class for settlement purposes only:

> All persons and entities who directly purchased Turkey from Defendants or co-conspirators in the United States during the Settlement Class Period. Specifically excluded from this Class are the Defendants and co-conspirators; the officers, directors or employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant or co-conspirator. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any co-conspirator identified in this action.

6.     <u>Settlement Class Notices</u>.  After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

> a.     Individual notice of this settlement shall be mailed, emailed, or otherwise sent by the Settlement Administrator, at the direction of Interim Co-Lead Counsel, to potential members of the Settlement Class, in conformance with a notice plan to be approved by the Court.

> b.     Neither the Settlement Class, Interim Co-Lead Counsel, nor Tyson shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or obtaining approval of the settlement or administering the settlement.  Such fees, costs,

---

[2] By agreeing not to object to the proposed Settlement Class and appointment of Co-Lead Counsel as Settlement Class Counsel, Tyson is not waiving any rights, arguments or defenses and Tyson expressly preserves all such rights, arguments and defenses including with respect to any situation where the Settlement Agreement is not approved in all material respects by the Court

or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

c.     Tyson shall not object to Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $250,000 to pay the costs for notice and for Preliminary Approval and Final Approval of this Settlement Agreement.

d.     Interim Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class within 21 days of Preliminary Approval by the Court of the Settlement Agreement. Any costs of notice that Interim Co-Lead Counsel are permitted to withdraw from the Settlement Fund up to $250,000, either pursuant to the Parties' Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court.

7.     <u>Motion for Final Approval and Entry of Final Judgment</u>. If the Court grants Preliminary Approval and preliminarily certifies the Settlement Class, then DPPs, through Interim Co-Lead Counsel — in accordance with the schedule set forth in the Court's Preliminary Approval — shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Interim Co-Lead Counsel to Tyson for its review. To the extent that Tyson objects to any aspect of the motion, it shall communicate such objection to Interim Co-Lead Counsel and the parties shall meet and confer to resolve any such objection. The motion for Final Approval shall seek entry of an order and Final Judgment:

a.   Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement and its material terms and conditions, without material modification of those terms and conditions;

b.   Determining that the Settlement Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c.   Dismissing the Action with prejudice as to Tyson in all class action complaints asserted by DPPs without further costs or fees;

d.   Discharging and releasing the Tyson Released Parties from all Released Claims;

e.   Enjoining DPPs from suing any of the Tyson Released Parties for any of the Released Claims;

f.   Filing a declaration prepared by counsel for Tyson confirming that Tyson has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1711 *et seq.* ("CAFA");

g.   Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

h.      Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Tyson shall be final and appealable and entered forthwith.

The Parties shall use all best efforts to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

8.      <u>Escrow Account</u>.  The Escrow Account shall be administered by Interim Co-Lead Counsel for the DPPs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9.      <u>Settlement Consideration</u>.  In consideration for the release of Released Claims, the dismissal of the Action, and the other material terms and conditions herein, within fourteen (14) days of the Court's grant of Preliminary Approval or after Interim Co-Lead Counsel have provided wire instructions to Tyson, whichever occurs later, Tyson shall pay or cause to be paid the Settlement Fund of $4,625,000 (four million, six hundred and twenty-five thousand U.S. dollars) into the Escrow Account.

10.     <u>Cooperation</u>.  Cooperation by Tyson is a material term of the Settlement Agreement and shall include the following categories of cooperation.  Tyson will make reasonable efforts to locate and produce the below categories of documents to the extent they are within Tyson's possession, custody and control and can be located based on a reasonable search.  Tyson cannot guarantee its possession of all such documents.

b.      <u>Centralized Documents:</u>

i.      Tyson's contracts with Agri Stats/EMI related to turkey;

ii.     Reports received by Tyson from Agri Stats/EMI related to turkey performance, sale price, and costs;

       iii.    Any presentations made by Agri Stats/EMI to Tyson regarding the turkey industry;

       iv.    Any documents produced to a State Attorney General or DOJ regarding an investigation into the turkey industry, or any information or proffers given to any plaintiff in matters substantially similar to this one.

   c.    <u>Structured Data:</u>

       i.    Tyson's structured data responsive to Plaintiff RFP Nos. 50-51.

   d.    <u>Custodial Documents:</u>

       i.    Tyson will run agreed upon search terms on the custodial documents of two agreed upon document custodians;

       ii.    Tyson will produce direct communications between competitors relating to Turkey, to be identified by searching co-defendant email domain names across the emails of identified custodians.

   e.    Beyond the information to be produced by Tyson in discovery in the Action and in the Settlement Agreement, Tyson will produce to DPPs any documents it produces to any other party in connection with this litigation. Tyson will also consider reasonable requests for additional relevant information about the DPPs' claims in the Action from Interim Co-Lead Counsel, taking into account the information it has or will produce in discovery, and whether providing the requested information will be burdensome, or will otherwise increase the cost of, or compromise, its defense of the Action against other plaintiffs.

   f.    <u>Coordination between the classes</u>: Tyson agrees to provide to the DPPs any

documents, proffers, or other information provided to the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") in connection with a Settlement Agreement between CIIPPs and Tyson. The DPPs in turn agree to make reasonable best efforts to coordinate with the CIIPPs on the scheduling of proffers and employee interviews to avoid duplication of efforts and to minimize business disruption to Tyson.

11. <u>Qualified Settlement Fund</u>. The Parties agree to treat the Settlement Fund as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. In addition, Interim Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 11, including the relation-back election (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1. Interim Co-Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. Tyson shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.     Distribution of Settlement Fund to Settlement Class.  Members of the Settlement

Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction of the

Agreement or in connection with any of the Released Claims against the Tyson Released Parties,

and shall not be entitled to any other payment or relief from the Tyson Released Parties.  Except

as provided by order of the Court, no member of the Settlement Class shall have any interest in

the Settlement Fund or any portion thereof.  DPPs, members of the Settlement Class, and their

counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not

limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to

potential members of the Settlement Class.  Tyson and the other Tyson Released Parties shall not

be liable for any costs, fees, or expenses of any of DPPs' and  Interim Co-Lead Counsel's

attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by

the Court shall be paid out of the Settlement Fund.

13.     Fee Awards, Costs and Expenses, and Service Awards to DPPs:  Subject to Interim

Co-Lead Counsel's sole discretion as to timing, Interim Co-Lead Counsel will apply to the Court

for a fee award – plus expenses and costs incurred – and service awards to the DPPs to be paid

from the proceeds of the Settlement Fund. Tyson shall have no responsibility, financial obligation,

or liability for any such fees, costs, expenses, or awards beyond the Settlement Fund.

14.     Release.  Upon Final Judgment, the Releasing Parties shall be deemed to have, and

by operation of law and of the judgement shall have fully, finally and forever completely

compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the

Tyson Released Parties from any and all claims, demands, actions, suits, causes of action, whether

class, individual, or otherwise in nature (whether or not any member of the Settlement Class has

objected to the Settlement Agreement or makes a claim upon or participates in the Settlement

Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, causes of action, injuries, losses, or damages arising from or in connection with any act or omission through the date of Preliminary Approval relating to or referred to in the Action or arising from the factual predicate of the Action (the "Released Claims"). Notwithstanding the above, "Released Claims" do not include (i) claims asserted against any Defendant or co-conspirator other than the Tyson Released Parties or (ii) any claims wholly unrelated to the allegations in the Action that are based on breach of contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim, breach of warranty, or product defect. This reservation of claims set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the Tyson Released Parties to assert any and all arguments and defenses to such claims, and the Parties agree that all such arguments and defenses are preserved. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any and all Released Claims against any and all of the Tyson Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the Tyson Released Parties arising out of or relating to the Released Claims.

15.     <u>Further Release</u>.  In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final

Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California

Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is

similar, comparable, or equivalent to Section 1542 of the California Civil Code, including without

limitation 20-7-11 of the South Dakota Codified Laws (providing "A GENERAL RELEASE

DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR

SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE,

WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT

WITH THE DEBTOR"). Each Releasing Party may hereafter discover facts other than or different

from those which he, she, or it knows or believes to be true with respect to the claims which are

released pursuant to the provisions of Paragraph 14, but each Releasing Party hereby expressly

waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or

unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties

have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without

regard to the subsequent discovery or existence of such different or additional facts.  The foregoing

release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is

contractual and not a mere recital.

  16. <u>Covenant Not to Sue</u>. DPPs and each Settlement Class Member covenant not to sue

any of the Tyson Released Parties for any transaction, event, circumstance, action, failure to act,

or occurrence of any sort or type arising out of the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims. This Paragraph shall not apply to any action to enforce this Settlement Agreement.

17. <u>Non-Disparagement</u>: The Parties agree they will not disparage one another or their respective claims or defenses, such as by making public statements that disparage either of the parties or their conduct in connection with the Action, and instead will confine their public comments to essentially the following: "The parties have agreed to resolve this matter. Tyson has not admitted any liability and continues to deny the allegations in Plaintiffs' complaint, while Plaintiffs believe they would have prevailed."

18. This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

19. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

20. <u>Termination:</u> Tyson will have the sole discretion to rescind the Settlement Agreement if the Opt-Out Sales from Tyson's own customers for the period January 1, 2010 through January 1, 2017 total more than 60% of Tyson's total annual external Turkey sales for the period January 1, 2010 through January 1, 2017.

21. <u>Effect of Disapproval</u>. If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph

1(k) of this Settlement Agreement, then this Agreement may be rescinded, cancelled, or terminated by Tyson or DPPs on behalf of the Settlement Class. If rescinded, cancelled, or terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6(c), in the event the settlement is not preliminarily or finally approved by the Court, all other funds in the Escrow Account shall be returned to Tyson and the Parties' position shall be returned to the status quo ante. In no way shall DPPs have the right to rescind, cancel or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorney's fees, any costs, or any awards to DPPs.

22. <u>Choice of Law and Dispute Resolution</u>. Any disputes relating to this Settlement Agreement shall be governed by Illinois law without regard to conflicts of law provisions, and any and all disputes regarding this Settlement Agreement will be mediated in good faith with Judge Daniel Weinstein (ret.) before any suit, action, proceeding or dispute may be filed in the Court pursuant to Paragraph 23 below.

23. <u>Consent to Jurisdiction</u>. The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement, or the applicability of this Settlement Agreement. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 14-16, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 14-16 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement. In the event that the provisions of Paragraphs 14-16 are asserted by any Tyson Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding,

it is hereby agreed that such Tyson Released Party shall be entitled to a stay of that suit, action, or proceeding until the mediation required by Paragraph 22 is complete and, if the matter is not resolved by mediation, the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement.

24.     <u>Class Action Fairness Act</u>.  Within ten (10) days of filing of this Settlement Agreement in court with the abovementioned motion for Preliminary Approval, Tyson, at its sole expense, shall serve upon appropriate Federal and State officials all materials required pursuant to CAFA, and shall confirm to DPPs' Interim Co-Lead Counsel that such notices have been served.

25.     <u>Costs Relating to Administration</u>.  The Tyson Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

26.     <u>Binding Effect</u>.  This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein.  This Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class Members, the Releasing Parties, and the Tyson Released Parties.  Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the DPPs shall be binding upon all members and potential members of

the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

27.    <u>Sole Remedy</u>.  This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Tyson Released Party, and upon entry of Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Tyson Released Party.

28.    <u>Counsel's Express Authority</u>.  Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

29.    It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

30.    <u>Notices</u>.  All notices under this Settlement Agreement shall be in writing.  Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed:

If directed to DPPs, the Settlement Class, or any member of the Settlement Class, to:

W. Joseph Bruckner
Brian D. Clark
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
wjbruckner@locklaw.com
bdclark@locklaw.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710

shanas@hbsslaw.com
riop@hbsslaw.com

If directed to the Tyson, to:

Tiffany Rider Rohrbaugh
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
trider@axinn.com

-and-

Eli J. Glasser
Executive Counsel, Antitrust and Global Competition
Tyson Foods, Inc.
2200 Don Tyson Parkway
Springdale, AR 72762
Eli.Glasser@Tyson.com

or such other address as the Parties may designate, from time to time, by giving notice to all

parties hereto in the manner described in this Paragraph. The Parties shall also provide courtesy

copies of all notices by electronic mail.

31.  <u>No Admission</u>.  Whether or not Preliminary Approval is granted, Final Judgment

is entered, or this Settlement Agreement is terminated, the Parties expressly agree that this

Settlement Agreement and its contents, and any and all statements, negotiations, documents, and

discussions associated with it, are not and shall not be deemed or construed to be an admission of

liability or wrongdoing by any Party or Tyson Released Party.

32.  <u>No Unstated Third-Party Beneficiaries</u>.  No provision of this Agreement shall

provide any rights to, or be enforceable by, any person or entity that is not a Tyson Released

Party, DPP, member of the Settlement Class, or Interim Co-Lead Counsel.

33.  <u>No Party is the Drafter</u>.  None of the Parties hereto shall be considered to be the

drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case

law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

34.     Amendment and Waiver.  This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement.  Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law.  Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means injunction, without the requirement of posting a bond or other security.

35.     Execution in Counterparts.  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement.  Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

36.     Integrated Agreement.    This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties.  The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party

will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

37.     Voluntary Settlement.   The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent counsel and the participation of a neutral mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

38.     Confidentiality.  The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation.  However, Tyson and DPPs can inform other parties to this Action that they have reached a settlement agreement, the amount of the settlement, and the cooperation provided for in this Settlement Agreement.

39.     Irrespective of any term in this Agreement, it is expressly agreed that nothing in this Agreement prohibits DPPs and DPP counsel in ongoing litigation of the Action from establishing a conspiracy under the Sherman Act, including discovering and introducing evidence of Settling Defendant as a co-conspirator in the Action or from effecting the cooperation provisions herein.

40.     Irrespective of any term in this Agreement, the parties agree that (1) DPPs and DPP counsel will not share any material learned pursuant to Paragraph 10 of this Agreement with any other plaintiff or plaintiff group in related actions (unless authorized by Tyson) but (2) nothing in this Agreement otherwise prevents DPPs from continuing to jointly prosecute this case and utilizing any work product developed in this matter.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the Execution Date.

Dated: _____ May 14, 2021

_____

W. Joseph Bruckner (*Pro Hac Vice*)
Brian D. Clark (*Pro Hac Vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
T:  (612) 339-6900
F:  (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com

Dated: May 14, 2021

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
T: (206) 623-7292
steve@hbsslaw.com

Shana E. Scarlett
Rio S. Pierce
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
T: (510) 725-3000
F: (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

*Interim Co-Lead Counsel for the Direct
Purchaser Plaintiff Class*

Dated:   May 14, 2021

Tiffany Rider Rohrbaugh
Rachel J. Adcox
Lindsey Strang Aberg
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 469-3550
F: (202) 912-4701
trider@axinn.com
radcox@axinn.com
lstrang@axinn.com

Jarod G. Taylor
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Telephone:  860.275.8100
jtaylor@axinn.com

Jordan Matthew Tank
Sahrish Moyeed
LIPE LYONS MURPHY NAHRSTADT & PONTIKIS, LTD
230 West Monroe Street, Ste 2260
Chicago, IL 60606
T: (312) 702-0586
F: (312) 726-2273
jmt@lipelyons.com
sm@lipelyons.com

*Counsel for The Hillshire Brands
Company, Tyson Foods, Inc., Tyson
Fresh Meats, Inc., Tyson Prepared
Foods, Inc.*

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *IN RE BROILER CHICKEN ANTITRUST LITIGATION*<br><br>This Document Relates To:<br><br>THE DIRECT PURCHASER PLAINTIFF ACTION | Case No. 1:16-cv-08637<br><br>Hon. Thomas M. Durkin |

## CORRECTED [PROPOSED] ORDER GRANTING DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENTS WITH DEFENDANTS PECO FOODS, INC., GEORGE'S, INC., GEORGE'S FARMS, INC., AND AMICK FARMS, LLC

This order corrects and replaces the order granting preliminary approval entered by the Court on December 20, 2019 (Dkt. No. 3359). This Court has held a hearing on Direct Purchaser Plaintiffs' Motion for Preliminary Approval of the Settlements With Defendants Peco Foods, Inc. ("Peco"), George's, Inc. and George's Farms, Inc. ("George's"), and Amick Farms, LLC ("Amick") ("Motion"). Direct Purchaser Plaintiffs ("Plaintiffs") have entered into Settlement Agreements with Defendants Peco, George's, and Amick (collectively "Settlings Defendants"). The Court, having reviewed the Motion, its accompanying memorandum and the exhibits thereto, the Settlement Agreements, and the file, hereby **ORDERS AND ADJUDGES:**

### Preliminary Approval of the Settlements and Certification of Settlement Class

1. This Court has jurisdiction over this action and each of the parties to the Settlement Agreements. Upon review of the record, the Court finds that the proposed Settlement Agreements, which were arrived at by arm's length negotiations by highly experienced counsel, fall within the range of possible approval and are hereby preliminarily approved, subject to

further consideration at the Court's Fairness Hearing. The Court finds that the Settlements Agreements are preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Class, raise no obvious reasons to doubt their fairness, and raise a reasonable basis for presuming that the Settlements and their terms satisfy the requirements of Federal Rules of Civil Procedure 23(c)(2) and 23(e) and due process so that notice of the Settlements should be given to the Settlement Class.

2.     This Court certifies a Settlement Class defined as:

All persons who purchased Broilers directly from any of the Defendants or any co-conspirator identified in this action, or their respective subsidiaries or affiliates for use or delivery in the United States from at least as early as January 1, 2008 until December 20, 2019. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any co-conspirator identified in this action.

3.     The Court appoints the law firms of Lockridge Grindal Nauen P.L.L.P., and Pearson, Simon & Warshaw, LLP as co-lead counsel for the Settlement Class.

**Approval of the Notice Plan**

4.     The Court hereby directs notice to be distributed to the Settlement Class Members pursuant to Federal Rule of Civil Procedure ("Rule") 23(c)(2).

5.     The proposed notice plan set forth in the Motion and the supporting declarations comply with Rule 23(c)(2)(B) and due process as it constitutes the best notice that is practicable under the circumstances, including individual notice via mail and email to all members who can be identified through reasonable effort. The direct mail and email notice will be supported by reasonable publication notice to reach Settlement Class Members who could not be individually identified.

6.     The attached proposed notice documents: Long Form Notice (Exhibit A), Email Notice (Exhibit B), and Summary Publication Notice (Exhibit C), and their manner of transmission, comply with Rule 23(c)(2)(B) and due process because the notices and forms are reasonably calculated to adequately apprise Settlement Class Members of (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the Settlement Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).    Non-substantive changes, such as typographical errors, can be made to the notice documents by agreement of the parties without leave of the Court.

### Schedule for Class Notice and the Fairness Hearing

7.     The Court hereby sets the below schedule for the dissemination of notice to the class, for Settlement Class Members to object to or exclude themselves from the Settlements, and for the Court's Fairness Hearing, at which time the Court will determine whether the Settlement Agreements should be finally approved as fair, reasonable, and adequate.  This Court may order the Fairness Hearing to be postponed, adjourned, or continued.  If that occurs, the updated hearing date shall be posted on the Settlement Website, but other than the website posting the Parties will not be required to provide any additional notice to Settlement Class Members.

| DATE | EVENT |
|---|---|
| 1. January 8, 2020 | Settlement Administrator to provide direct mail and email notice, and commence the publication notice plan |
| 2. March 9, 2020 | Last day for Settlement Class Members to request exclusion from the Settlement Class; for Settlement Class Members to object to the Settlement; and for Settlement Class Members to file notices to appear at the Fairness Hearing |
| 3. March 19, 2020 | Class Counsel shall file with the Court a list of all persons and entities who have timely and adequately requested exclusion from the Settlement Class |
| 4 April 3, 2020 | Class Counsel shall file motion for final approval of the Settlements and all supporting papers, and Class Counsel and the Settling Defendants may respond to any objections to the proposed Settlements |
| 5. April 17, 2020 at 9:30 a.m. | Final Settlement Fairness Hearing |

### Other Provisions

8. Terms used in this Order that are defined in the Settlement Agreements are, unless otherwise defined herein, used as defined in the Settlement Agreements.

9. If the Settlement Agreements are terminated or rescinded in accordance with their provisions, or otherwise do not become Final, then the Settlement Agreements and all proceedings in connection therewith shall be vacated, and shall be null and void, except insofar as expressly provided otherwise in the Settlement Agreements, and without prejudice to the *status quo ante* rights of Plaintiffs, the Settling Defendants, and the members of the Class. The parties shall also comply with any terms or provisions of the Settlement Agreements applicable to termination, rescission, or the Settlements otherwise not becoming Final.

10. Neither this Order nor the Settlement Agreements shall be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation or of any liability or wrongdoing by the Settling Defendants or of the truth of any of Plaintiffs' Claims or

allegations, nor shall it be deemed or construed to be an admission nor evidence of Settling Defendants' defenses.

11.    All proceedings in the above-captioned action with respect to Settling Defendants and Plaintiffs are stayed until further order of the Court, except as may be necessary to implement the Settlements or comply with the terms thereof.

**IT IS SO ORDERED.**

DATED:    1/8/2020

Nunc Pro Tunc
12/20/2019

HON. THOMAS M. DURKIN