# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| OLEAN WHOLESALE GROCERY COOPERATIVE, INC., et al., | No. 19-cv-08318 |
| Plaintiffs, | Hon. Virginia M. Kendall |
| v. | |
| AGRI STATS, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| OLEAN WHOLESALE GROCERY COOPERATIVE, INC., et al., | No. 21-cv-03551 |
| Plaintiffs, | Hon. John Robert Blakey |
| v. | |
| AGRI STATS, INC., et al., | |
| Defendants. | |

**REPLY IN SUPPORT OF MOTION TO QUASH INVESTIGATOR SUBPOENAS AND RESPONSE TO DEFENDANTS' CROSS-MOTION TO COMPEL PRE-CLIENT INVESTIGATIVE MATERIALS**

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.      ARGUMENT .......................................................................................................4

         A.      The investigation by Plaintiffs' counsel was not mere "business development," as argued by Defendants.................................................4

         B.      Rule 26(b)(3) protects all of the documents at issue................................6

         C.      Even if Rule 26(b)(3) does not apply by its terms, the work product doctrine nonetheless protects the documents at issue. ...........................10

III.      CONCLUSION..................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Adams v. Mem'l Hermann,*
973 F.3d 343 (5th Cir. 2020) ................................................11

*Appleton Papers, Inc. v. E.P.A.,*
702 F.3d 1018 (7th Cir. 2012) ................................................13

*ASARCO, LLC v. Americas Mining Corp.,*
2007 WL 3504774 (D. Idaho Nov. 15, 2007)................................12

*Bell v. Pension Comm. of ATH Holding Co., LLC,*
2018 WL 7350951 (S.D. Ind. Aug. 16, 2018) ..............................12, 13

*Brinks Mfg. Co. v. Nat'l Presto Indus., Inc.,*
709 F.2d 1109 (7th Cir. 1983) ................................................7

*In re California Pub. Utilities Comm'n,*
892 F.2d 778 (9th Cir. 1989) ............................................8, 10, 12

*Caremark, Inc. v. Affiliated Comput. Servs., Inc.,*
195 F.R.D. 610 (N.D. Ill. 2000)................................................10

*Carrillo v. Cnty. of Los Angeles,*
2012 WL 12884899 (C.D. Cal. Sept. 25, 2012) ..............................12

*Castro v. Sanofi Pasteur Inc.,*
2013 WL 1707094 (N.D. Ill. Apr. 19, 2013)........................2, 9, 10, 11

*Castro v. Sanofi Pasteur Inc.,*
2013 WL 3771493 (N.D. Ill. July 18, 2013)................................11

*In re Cendant Corp. Sec. Litig.,*
343 F.3d 658 (3d Cir. 2003)................................................11

*In re Chandar,*
2017 WL 5484315 (Bankr. E.D. Cal. Nov. 13, 2017) ........................8

*Coastal States Gas Corp. v. Dep't of Energy,*
617 F.2d 854 (D.C. Cir. 1980)................................................6

*In re Elkins,*
2012 WL 4327044 (Bankr. N.D. Ohio Sept. 20, 2012) ......................12

*In re Grand Jury Proc. of Browning Arms Co.*,
  528 F.2d 1301 (8th Cir. 1976) ...........................................................8

*Hickman v. Taylor*,
  329 U.S. 495 (1947)........................................................... *passim*

*Hobley v. Burge*,
  433 F.3d 946 (7th Cir. 2006) ...........................................................8

*LG Elecs., Inc. v. Motorola, Inc.*,
  2010 WL 4513722 (N.D. Ill. Nov. 2, 2010) .........................................12

*Maracich v. Spears*,
  570 U.S. 48 (2013)............................................................4, 5, 6

*Meyer v. Colavita, USA, Inc.*,
  2011 WL 2457681 (C.D. Cal. June 17, 2011) .......................................12

*Nat'l Jockey Club v. Ganassi*,
  2006 WL 733549 (N.D. Ill. Mar. 22, 2006)...........................................7

*In re Polypropylene Carpet Antitrust Litig.*,
  181 F.R.D. 680 (N.D. Ga. 1998).......................................................13

*In re Pork Antitrust Litig.*,
  No. 0-18-cv-01776-JRT-HB (D. Minn.)..............................................1, 4

*Ramsey v. NYP Holdings, Inc.*,
  2002 WL 1402055 (S.D.N.Y. June 27, 2002) .......................................13

*Republic of Ecuador v. Mackay*,
  742 F.3d 860 (9th Cir. 2014) ..........................................................11

*Royce v. Michael R. Needle P.C.*,
  950 F.3d 939 (7th Cir. 2020) ...........................................................6

*San Francisco Bay Area Rapid Transit Dist. v. Spencer*,
  2006 WL 2734284 (N.D. Cal., Sept. 25, 2006) ....................................12

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*,
  600 F.3d 612 (7th Cir. 2010) ...........................................................7

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs.,
  Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) ...............................11

*In re Sealed Case*,
  146 F.3d 881 (D.C. Cir. 1998)..........................................................6

*Sol v. Whiting*,
    2013 WL 12098752 (D. Ariz. Dec. 11, 2013) ........................................................................8

*United States v. Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010) ........................................................................11

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ........................................................................10

*Walker v. White*,
    2019 WL 1953124 (N.D. Ill. May 2, 2019) ........................................................................10

## FEDERAL STATUTES

18 U.S.C. § 2721(b)(4) ........................................................................5

## FEDERAL RULES

Federal Rule of Civil Procedure 11 ........................................................................ *passim*

Federal Rule of Civil Procedure 26 ........................................................................ *passim*

Federal Rule of Civil Procedure 45 ........................................................................3, 12, 13

## OTHER AUTHORITIES

Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.) ........................................................................11

## I.     INTRODUCTION

Defendants improperly seek access to documents reflecting the diligent investigatory work of Hagens Berman Sobol Shapiro LLP (Hagens Berman) (and its investigators), without any showing that would allow such discovery. Defendants do not dispute that the documents at issue relate solely to Hagens Berman's investigation of potential claims on behalf of turkey purchasers who were harmed by anticompetitive conduct. *See* Pierce Decl., ¶ 5.[1] Defendants do not and cannot cite a single case in which defendants in pending litigation have been allowed to discover documents relating to such an investigation (which is required by Rule 11 of the Federal Rules of Civil Procedure) *where the plaintiffs' law firm was not accused of unlawful conspiratorial conduct*.

Both Hagens Berman and its co-counsel Lockridge Grindal Nauen P.L.L.P. (Lockridge Grindal) represent clients in other long-running cases against the protein industry. Hagens Berman began its investigation into the turkey industry in July 2018 – seventeen months before a complaint was eventually filed. From that point onwards, Hagens Berman was contacted by dozens of potential plaintiffs interested in participating in this case. Likewise, Lockridge Grindal has represented the very Plaintiffs in this case in other, related protein cases. Lockridge Grindal has represented Maplevale Farms, Inc. and John Gross and Company since 2016 in the *In re Broilers Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill.) litigation; and Olean Wholesale

---

[1] "Pierce Decl." refers to the Declaration of Rio S. Pierce in Support of Motion of Hagens Berman Sobol Shapiro LLP, Lockridge Grindal Nauen, P.L.L.P. and On Point Investigations, LLC to Quash Subpoena, filed June 22, 2021.

Grocery Cooperative, Inc. since 2018 when the *In re Pork Antitrust Litig.*, No. 0-18-cv-01776-JRT-HB (D. Minn.) was filed. Scarlett Decl., ¶ 4.[2]

One unifying thread unites each of these cases, and the memoranda from the case investigators Defendants have subpoenaed in this case – the presence of Agri Stats, the dissemination of Agri Stats reports, and the use of Agri Stats by these industries to constrain supply and pricing. Defendants here seek to compel the work product of Plaintiffs' case investigators, arguing that they are untethered to any client representation or ongoing litigation. But especially in light of the overlapping clients across the several cases and the overlapping work product regarding the use of Agri Stats by the protein companies, Defendants are essentially seeking to intrude upon core work product and attorneys' mental impressions long protected under Fed. R. Civ. P. 26 and the Supreme Court's opinion in *Hickman v. Taylor*, 329 U.S. 495 (1947).

Moreover, the discovery sought by Defendants is nothing like the discovery sought in the principal case they cite. In *Castro v. Sanofi Pasteur Inc*., 2013 WL 1707094, *1 (N.D. Ill. Apr. 19, 2013), defendant Sanofi claimed that its competitor, Novartis, conspired with a law firm, Berger & Montague ("B & M") and a consulting company named Navigant "as a means of limiting price competition." As the court explained, "Sanofi does not seek the materials so that its counsel can 'piggy back' off of B & M's and Navigant's work, an effort that would implicate a core interest served by Rule 26(b)(3); rather, it maintains that the documents have significance independent of their legal analyses because they may shed light on the nature and course of the relationship between the purported conspirators." *Id*. at *3. The court further explained that its

---

[2] "Scarlett Decl." refers to the Declaration of Shana E. Scarlett in Support of Motion to Quash Investigator Subpoenas and Response to Defendants' Cross-Motion to Compel Pre-Client Investigative Materials, filed concurrently herewith.

review of the documents revealed that they "reflect, as Sanofi maintains, the nature of the relationship and endeavor that B & M, Navigant, and Novartis were undertaking." *Id.* Here, Defendants make no showing (and cannot make any showing) that the documents at issue "may shed light on the nature and course of the relationship between the purported conspirators." *Id*. For this reason, and for the other reasons expressed below, the motions to quash should be granted.

But there is no reason for this Court to reach those issues, because the subpoenas at issue plainly violate Rule 45(c)(1)(A), as discussed in Section III of the motions to quash. Defendants do not argue otherwise but instead contend, erroneously, that "Defendants are serving amended subpoenas to specify a location within 100 miles of On Point Investigations and Ms. Henterly, which moots Movants' objection." *See* Opp. at 5 n.6. Service of different subpoenas does not moot a valid objection to the subpoenas that are the subject of the motions to quash.

Defendants also incorrectly claim that the moving parties failed to meet and confer on the 100-mile issue. *See id*. In fact, on July 7, 2021, the moving parties and Defendants discussed the place of production for the subpoenas. Scarlett Decl., ¶ 5. On July 9, 2021, Defendants wrote to the moving parties to ask if On Point and Ms. Henterly would agree to waive the 100-mile requirement. *Id*. The moving parties responded in writing to Defendants, stating that "[o]ur clients are not willing to waive the 100 mile requirement. However, in the interest of efficiency, we are willing to stipulate that, once valid subpoenas are served, ensuing motion practice will occur in the Northern District of Illinois." *Id.* Plainly the moving parties *did* meet and confer with Defendants on the 100-mile issue, and Defendants simply are wrong. So the subpoenas are invalid, and the motions to quash should be granted (and Defendants' cross-motion denied).

When subpoenas that meet the 100-mile requirement but seek the same documents are served, they should be quashed for the following reasons, but this Court should not reach those issues now in light of Defendants' violation of Rule 45(c)(1)(A).

## II.    ARGUMENT

### A.    The investigation by Plaintiffs' counsel was not mere "business development," as argued by Defendants.

Defendants erroneously claim that the work-product doctrine does not apply because "pre-client investigations constitute nothing more than the business development activities of a law firm and are no more immune from discovery than any other person's business activities. *Maracich v. Spears*, 570 U.S. 48, 60 (2013)…." Opp. at 6. First, Defendants are factually wrong that Hagens Berman was merely conducting business development activities. Hagens Berman and Lockridge Grindal have both been investigating the protein companies and their use of Agri Stats since 2016 and the filing of the *Broilers Antitrust* litigation. In mid-2018, Hagens Berman began an active case investigation on behalf of participants in the turkey market. Beginning in July 2018, there was an announcement on the Hagens Berman website of the case investigation. A portal was set up for interested persons or entities to contact Hagens Berman with information, and potential plaintiffs began contacting Hagens Berman on July 9, 2018. Throughout July and in the ensuing months, attorneys at Hagens Berman discussed the investigation, purchases, and other relevant facts with potential class representatives regarding the turkey industry. The investigation continued until the filing of the complaint in 2019, during which time period dozens of potential class representatives contacted Hagens Berman.

Similarly, Lockridge Grindal has been at the forefront of the *Broilers Antitrust* litigation since 2016. Both Maplevale and John Gross are named plaintiffs in the *Broilers Antitrust*, first filed in 2016. Olean has been a client of Lockridge Grindal since at least 2018 and the filing of

the *Pork Antitrust* litigation. Although these entities did not sign formal retention agreements in the present litigation until December 2019, they have had an ongoing attorney-client relationship with Lockridge Grindal since well before that time, in addition to the obvious overlap among these cases; each of these protein cases involves the producers' use of Agri Stats reports and documents as one method to stabilize the price and supply of protein. The use of case investigators and their written work product to the attorneys in this case were not mere "business development" but were instead core attorney work product, relevant to ongoing client relationships and undertaken in anticipation of litigation.

Regardless, Defendants' argument is contracted by its own authority, *Maracich*, 570 U.S. at 60. The Supreme Court in *Maracich* interpreted subsection (b)(4) of the Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721(b)(4), which permits obtaining personal information from a state Department of Motor Vehicles (DMV) for use "in connection with" judicial and administrative proceedings, including "investigation in anticipation of litigation." *Id*. at 48. The Court explained that the phrase "investigation in anticipation of litigation" is "best understood to allow background research to determine whether there is a supportable theory for a complaint, a theory sufficient to avoid sanctions for filing a frivolous lawsuit, or to locate witnesses for deposition or trial testimony." *Id*. at 63–64 (emphasis added). Under that standard, the Court held that soliciting the names of clients from a DMV was not permitted, because "[w]hile the (b)(4) exception allows this sensitive information to be used for investigation in anticipation of litigation and in the litigation itself, there is no indication Congress wanted to provide attorneys with a special concession to obtain medical information and Social Security numbers for the purpose of soliciting new business." *Id*. at 65.

*Maracich* makes clear that the documents at issue here are not a mere business activity but instead investigation in anticipation of litigation. Hagens Berman investigated "whether there [was] a supportable theory for a complaint" that was "sufficient to avoid sanctions." *Id.* at 49. Conducting such an investigation is not a "business development activity," as Defendants blithely contend, but rather is a duty imposed by Rule 11 of the Federal Rules of Civil Procedure. "The very point of Rule 11 is to lend incentive for litigants to stop, think and investigate more carefully before serving and filing papers." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 958 (7th Cir. 2020) (citation and internal quotation marks omitted). And nothing in *Maracich* supports Defendants' argument here that litigation must actually be filed in order for such investigatory work to be protected.

The other case cited by Defendants in support of their "business development" argument is plainly inapposite. In *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980), the court held that neither the attorney-client privilege nor the work product doctrine protected memoranda that "seem to be neutral, objective analyses of agency regulations. They resemble, in fact, question and answer guidelines which might be found in an agency manual." But in a later decision, the same Court of Appeals distinguished *Coastal States* when it held that "requiring a specific claim would subject to discovery a great deal of pre-claim work by agency lawyers that the work-product privilege now protects." *In re Sealed Case*, 146 F.3d 881, 887 (D.C. Cir. 1998). Similarly here, pre-litigation investigations by Hagens Berman are protected.

## B.    Rule 26(b)(3) protects all of the documents at issue.

Defendants erroneously contend that the subpoenaed documents are not protected by Rule 26(b)(3), which they interpret to mean only documents prepared after the date that formal representation agreements were signed. *See, e.g.,* Opp. at 11. But as shown above, the subpoenaed documents indisputably were prepared in anticipation of litigation and indisputably

were prepared *for* the named Plaintiffs, regardless of when they retained Hagens Berman and Lockridge Grindal, because, it was *that* investigation that permitted counsel to file a complaint for these Plaintiffs that satisfies Rule 11.

*Nothing* in Rule 26(b)(3) requires that the plaintiffs in a class-action lawsuit formally retain their attorneys before those attorneys commence a Rule 11 investigation in anticipation of litigation that it later files for them. Instead, it protects documents "prepared in anticipation of litigation or for trial by or for another party or its representative…." There is no requirement that the party was a client or that signed formal representation agreements exist at the time the documents were prepared. Here, the subpoenaed documents were *in fact* prepared "in anticipation of litigation … by or for another party . . ." The facts establish that: (1) in 2018, Plaintiffs' counsel began investigating the possibility of bringing claims for turkey purchases; (2) Lockridge Grindal had existing attorney-client relationships with the three named Plaintiffs in this case in related protein litigation, involving one critical overlapping defendant, Agri Stats; (3) the law firms retained the investigator, On Point, on November 13, 2019, to conduct a factual investigation into the turkey industry for use in potential litigation; and (4) Plaintiffs' counsel formalized their representation of the named Plaintiffs as class representatives in December 2019. *See* Pierce Decl., at ¶¶ 5–7; Scarlett Decl., ¶¶ 3-4. Thus, the investigation was conducted *solely* in anticipation of litigation "by another party," which is all that Rule 26(b)(3) requires.

Such work product plainly merits protection. As the Seventh Circuit has explained, "[p]rudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced." *Brinks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983). "Work-product protection applies to attorney-led investigations when the documents at issue 'can fairly be said to have been prepared or obtained because of the prospect of litigation.'"

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) (citation omitted). So the "work-product privilege protects documents prepared in anticipation of litigation regardless of whether the anticipated litigation ever occurs." *Nat'l Jockey Club v. Ganassi*, 2006 WL 733549, at *1 (N.D. Ill. Mar. 22, 2006) (quoting *In re Sealed Case*, 146 F.3d 881, 888 (D.C. Cir. 1998).

For these reasons, there is no merit to Defendants' contention that Rule 26(b)(3) does not apply because "On Point conducted its investigation before Hagens was retained by the Named Plaintiffs." Opp. at 7. In the cases cited by Defendants, no attorney-client relationship was *ever* formed. In one case, "the relationship, rather than being one of attorney and client, was one of director and corporation…." *In re Grand Jury Proc. of Browning Arms Co*., 528 F.2d 1301, 1303 (8th Cir. 1976). In another case, the court explained that no attorney-client relationship ever existed because "[m]ovants were offering policy—not legal—advice." *Sol v. Whiting*, 2013 WL 12098752, *5 (D. Ariz. Dec. 11, 2013). And in the third case cited by Defendants, no attorney-client relationship existed where "Defendants . . . failed to articulate how, if at all, it is objectively reasonable for an individual chapter 7 debtor in a pending and open bankruptcy case to believe that he may retain an attorney to pursue prepetition claims that are property of the estate…." *In re Chandar*, 2017 WL 5484315, at *6 (Bankr. E.D. Cal. Nov. 13, 2017). Thus, those cases have no bearing on whether the work-product doctrine applies here, where the work performed by Hagens Berman and its investigators allowed them to meet the Rule 11 obligations before filing suit on behalf of the named Plaintiffs.[3]

---

[3] Based on these inapposite cases, where there was *never* an attorney-client relationship, Defendants erroneously contend that Hagens Berman lacks standing. *See* Opp. at 6 n.8. In fact, "[i]t is well-established that the work-product privilege may be invoked by either the client or the attorney." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006).

In yet another case cited by Defendants, the subpoenaed party and its attorneys were not involved in the litigation at all. Specifically, in *In re California Pub. Utilities Comm'n*, 892 F.2d 778, 780 (9th Cir. 1989), the Ninth Circuit held that Rule 26(b)(3) did not apply to a subpoena served on the California Public Utilities Commission (CPUC), "[b]ecause the CPUC is not a party to Edison's suit against Westinghouse." In other words, documents "authored or gathered by CPUC staff attorneys" for possible *CPUC* proceedings were not protected by Rule 26(b)(3) when neither the CPUC nor its attorneys were involved in the litigation between Edison and Westinghouse *at all*.

Finally, *Castro* does not support Defendants' argument that the documents at issue are not protected by Rule 26(b)(3). As discussed in the Introduction, *Castro* addressed whether documents prepared by attorneys *as part of an unlawful conspiracy* are protected by Rule 26(b)(3). Such documents plainly are prepared *not* in anticipation of litigation but "as a means of limiting price competition." *Castro*, 2013 WL 1707094, *1. *Castro* did not address the issue in this case, where there is no allegation that counsel engaged in an unlawful conspiracy.

Therefore, Rule 26(b)(3) applies, and Defendants do not even try to establish grounds for discovery of the investigatory documents at issue under the Rule. Instead, their subpoena tries to undermine the adversarial system by intruding into the protected sphere of opposing counsel's work. As a result, the motions to quash should be granted. And, therefore, Defendants' argument that *only* Rule 26(b)(3) provides work-product protection is moot. But in any event, as shown in the following subsection, the documents are protected by the work product doctrine even if Rule 26(b)(3) did not apply.

**C.      Even if Rule 26(b)(3) does not apply by its terms, the work product doctrine nonetheless protects the documents at issue.**

The documents at issue are protected even if Rule 26(b)(3) only applied to investigations carried out after the named Plaintiffs formally retained Hagens Berman and Lockridge Grindal, which as explained above is not the case. Defendants rely heavily on *Castro* for the proposition that *only* Rule 26(b)(3) protects work product. But the great weight of authority—including courts in the First and Ninth Circuits, where the subpoenas were served—is that Rule 26(b)(3) is not the only source of work product protection. In the face of those decisions, Defendants' reliance on the formalistic holding in *Castro* should be rejected, and the Court should issue a protective order under Rule 26(c) preventing discovery of the work product materials.[4]

Defendants ignore that in *In re California Pub. Utilities Comm'n*, which they cite, the Ninth Circuit held that Rule 26(b)(3) did not protect documents prepared for the CPUC, which was not a party to that litigation. But the Court held that "[t]o the extent that disclosure causes hardship to the CPUC, it is free to seek a protective order under Rule 26(c)." 892 F.2d at 781. In a footnote, the Court stated that "the district court might choose to consider the interest of the CPUC in the outcome of the litigation between Edison and Westinghouse. The CPUC is charged with protecting the interests of Edison's ratepayers and a significant burden on that interest could arguably be 'oppress[ive]' for purposes of Rule 26(c)." *Id*. at 781 n.2.

Even though Rule 26(b)(3) was adopted in 1970 and protects only documents and tangible materials, courts since then have routinely held that intangible work product is

---

[4] A central premise of the court's holding in *Castro* was dicta from *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981), that "Rule 26(b)(3) codifies the work-product doctrine." The quoted portion of *Upjohn* did not purport to limit the scope of work-product protection but instead made clear that work-product protection applies to IRS subpoenas. *Upjohn* did not hold that Rule 26(b)(3) completely codifies the work-product doctrine to the exclusion of protection for non-parties.

nonetheless protected under *Hickman v. Taylor*, 329 U.S. 495 (1947), showing that Rule 26(b)(3) does not set the definitive bounds of the work product doctrine. For example, in *Walker v. White*, 2019 WL 1953124, at *4 (N.D. Ill. May 2, 2019), the court explained that "Defendants' contention that only 'documents and tangible things' are protected overlooks established case law that the work product doctrine extends to 'intangibles.'" And in *Caremark, Inc. v. Affiliated Comput. Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000), the court stated that "[t]here is an interplay between Rule 26(b)(3) and *Hickman v. Taylor*. Rule 26 applies only to tangibles and codifies that portion of the *Hickman* opinion that relates to documents. *Hickman v. Taylor* and other common law developments also govern intangibles, such as interviews." Courts of Appeals that have addressed the issue uniformly hold that the *Hickman* work product doctrine applies to intangibles even though Rule 26(b)(3) applies only to tangible materials.[5] Similarly, even if Rule 26(b)(3) only applied when a party has retained an attorney before the attorney conducts an investigation, *Hickman* can still provide protection.

     Indeed, numerous courts in the Circuits where the subpoenas at issue were served and where the motions to quash are pending accordingly have held that work-product protection

---

[5] *See Adams v. Mem'l Hermann*, 973 F.3d 343, 349–50 (5th Cir. 2020) ("*Hickman* was later partially codified as Rule 26(b)(3) in the Federal Rules of Civil Procedure.… Despite the language of Rule 26, the work-product doctrine protects both 'tangible and intangible' work product."). *Accord*, *Republic of Ecuador v. Mackay*, 742 F.3d 860, 868 n.2 (9th Cir. 2014); *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1376 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003); *United States v. One Tract of Real Prop. Together With all Bldgs., Improvements, Appurtenances & Fixtures*, 95 F.3d 422, 427 n.10 (6th Cir. 1996). *See* Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.) ("Rule 26(b)(3) itself provides protection only for documents and tangible things and … does not bar discovery of facts a party may have learned from documents that are not themselves discoverable. Nonetheless, *Hickman v. Taylor* continues to furnish protection for work product within its definition that is not embodied in tangible form….").

extends to non-parties even when Rule 26(b)(3) does not apply.[6] Courts throughout the First Circuit, where one subpoena was served, have so held. Similarly, courts in the Ninth Circuit, where the second subpoena was served, have followed *California Pub. Utilities Comm'n*, in holding that work-product protection can exist even if Rule 26(b)(3) applies only to parties.[7]

And courts in the Seventh Circuit have similarly rejected the argument that *only* Rule 26(b)(3) offers work-product protection. In *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2018 WL 7350951, at *8 (S.D. Ind. Aug. 16, 2018), the court explained that "Rule 26(b)(3) is not the only authority to assert work-product protections.... A growing number of courts have recognized that the protection afforded by *Hickman* extends beyond that of Fed. R. Civ. P. 26(b)(3)." The court further explained that, apart from Rule 26(b)(3), the privilege can be invoked "where the circumstances implicated all the purposes for the privilege articulated in *Hickman*: preventing discovery from chilling attorneys' ability to formulate their legal theories and prepare their cases, preventing opponents from free-loading off their adversaries'

---

[6] In *Castro*, the court applied Seventh Circuit law where the "underlying lawsuit [was] pending in the District of New Jersey" but the subpoena was served in Illinois. *Castro v. Sanofi Pasteur Inc.,* 2013 WL 3771493, at *1 (N.D. Ill. July 18, 2013). Analogously, First and Ninth Circuit law apply here.

[7] *See Carrillo v. Cnty. of Los Angeles*, 2012 WL 12884899, at *2 (C.D. Cal. Sept. 25, 2012) ("Carrillo argues that the work product doctrine may not be invoked in this case because the district attorney is not a party to this litigation.... Such an entity may nevertheless be entitled to a protective order under Rule 26(c)."); *Meyer v. Colavita, USA, Inc.*, 2011 WL 2457681, at *2 (C.D. Cal. June 17, 2011) ("Although the plain language of Rule 26(b)(3) solely protects parties to litigation, work product protection may be extended to subpoenaed non-parties through Rule 45(c)(3)(A)(iii)[.]"); *ASARCO, LLC v. Americas Mining Corp.*, 2007 WL 3504774, at *6 (D. Idaho Nov. 15, 2007) (holding that Rule 26(b)(3) does not apply to non-parties but that "[b]oth Rule 45 and Rule 26(c) allow the Court to consider Idaho's motion and tailor appropriate relief to protect disclosure of work product or other confidential information"): *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 2006 WL 2734284, at *3 (N.D. Cal., Sept. 25, 2006) ("The inapplicability of the work-product protection against discovery of non-party documents, of course, does not preclude the Court from issuing a protective order under Rule 26(c).").

preparation, and preventing disruption of ongoing litigation." *Id.* (citation and internal quotation marks omitted).[8]

Under the standards set forth in *Bell*, the motions to quash should be granted on this separate ground through issuance of a protective order under Rule 26(c) and Rule 45(d). As the Seventh Circuit has explained, work product immunity "creates 'a protected area in which the lawyer can prepare his case free from adversarial scrutiny.' *Hickman*, 329 U.S. at 511, 67 S. Ct. 385. It "advances the adversarial system by providing incentives to collect information and thoroughly prepare for litigation." *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024–25 (7th Cir. 2012). As Justice Jackson explained in his concurrence in *Hickman*, "[d]iscovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary." *Hickman*, 329 U.S. at 516. Defendants here violate those principles by seeking discovery of Hagens Berman's work product without any justification.

## III. CONCLUSION

The motions to quash should be granted because Defendants' subpoenas violate Rule 45(c)(1)(A). Even if they did not violate that Rule, they should be quashed because Defendants seek to invade the protected area in which Hagens Berman investigated and prepared its case and

---

[8] Indeed, Defendants cite several decisions holding that Rules 26(c) and 45 protect work product for non-parties even if Rule 26(b)(3) does not apply. *See LG Elecs., Inc. v. Motorola, Inc.*, 2010 WL 4513722, at *5 (N.D. Ill. Nov. 2, 2010) ("Because Motorola has not shown that the five documents withheld solely on the basis of the work-product privilege are subject to the protections of Rule 26(b)(3), *and because it has not demonstrated that good cause exists for a protective order under Rule 26(c)*, the supplemental motion to compel is granted with respect to the documents Motorola withheld solely on the basis of the work-product doctrine….") (emphasis added). *See also In re Elkins*, 2012 WL 4327044, at *3 (Bankr. N.D. Ohio Sept. 20, 2012); *Ramsey v. NYP Holdings, Inc.*, 2002 WL 1402055, at *7 (S.D.N.Y. June 27, 2002); *In re Polypropylene Carpet Antitrust Litig.*, 181 F.R.D. 680, 692 (N.D. Ga. 1998).

met it obligations under Rule 11 before filing this action on behalf of the named Plaintiffs.

Defendants have no justification for such an invasion.

Dated: July 28, 2021

HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____s/ Shana E. Scarlett_____
       SHANA E. SCARLETT

Shana E. Scarlett
Rio S. Pierce
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
shanas@hbsslaw.com
riop@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
455 North Cityfront Plaza Drive, Suite 2410
Chicago, Illinois 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950
steve@hbsslaw.com

W. Joseph Bruckner
Brian D. Clark
Maureen Kane Berg
Simeon Morbey
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
Facsimile:  (612) 339-0981
wjbruckner@locklaw.com
bdclark@locklaw.com
mkberg@locklaw.com
samorbey@locklaw.com

*Counsel for Plaintiffs and the Proposed Class*