IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE TURKEY ANTITRUST LITIGATION

JOHN GROSS AND COMPANY, INC., et al.,

            Plaintiffs,

    v.

AGRI STATS, INC., et al.,

            Defendants.

Case No. 19 C 8318

District Judge: Virginia M. Kendall
Magistrate Judge: Gabriel A. Fuentes

**ORDER**

    Before us are two motions to compel. One was filed in Case No. 19 C 8318 by Defendants Agri Stats, Inc., Butterball LLC, Cargill Meat Solutions Corporation, Cargill, Inc., Cooper Farms, Inc., Farbest Foods, Inc., Foster Farms, LLC, Foster Poultry Farms, Hormel Foods Corporation, Hormel Foods, LLC, House of Raeford Farms, Inc., Perdue Farms, Inc., Perdue Foods LLC, The Hillshire Brands Company, Tyson Foods, Inc., Tyson Fresh Meats, Inc., Tyson Prepared Foods, Inc. ("Defendants")[1] against Plaintiffs Olean Wholesale Grocery Cooperative, et al., also known for purposes of this motion as the "Direct Purchaser Plaintiffs" ("DPPs") (D.E. 242: Mot. to Compel DPPs). The second motion addressed by this Order was filed in Case No. 20 C 2295[2] by Defendants against Plaintiffs Sandee's Bakery, et al., also known as the "Indirect Purchaser Plaintiffs" ("IPPs") (D.E. 163, 20 C 2295: Mot. to Compel IPPs). Although Defendants' initial

---

[1] After the filing of the instant motions, Defendants Tyson Foods, Inc., Tyson Fresh Meats, Inc., Tyson Prepared Foods, Inc. are in the process of settling the class claims against them in this matter. (D.E. 265.)

[2] On May 26, 2020, the district court consolidated Case No. 19 C 8318 with Case No. 20 C 2295 (D.E. 139.) Except where noted, citations to docket entries in this order are to the docket in No. 19 C 8318. This matter is before the magistrate judge on a referral for discovery supervision. (D.E. 267, 268.)

brief was identical in both cases, each set of Plaintiffs filed its own – different – response (D.E. 249: DPPs' Resp. to Mot.; D.E. 172 (No. 20 C 2295): IPPs' Resp. to Mot.), to which Defendants filed identical replies (D.E. 252: Reply to DPPs; D.E. 176 (No. 20 C 2295): Reply to IPPs).

## I. BACKGROUND

All Defendants except Agri Stats are breeders, processors, and sellers of turkeys and turkey products who are accused by Plaintiffs of artificially inflating turkey prices through the exchange of information in reports created by Defendant Agri Stats. The DPPs buy turkey and turkey products directly from Defendants. The IPPs purchase turkey and turkey products either from a DPP or another IPP. Both the DPPs and the IPPs contend that Defendants' alleged anti-competitive behavior caused them to be overcharged for turkey they purchased – the DPPs when they bought turkey from one or more Defendants and the IPPs when they bought turkey that "passed on," to them, the artificially inflated price. At issue in the motions to compel is Defendants' request for certain so-called "downstream discovery," related to the sale and pricing of turkey as it was sold and resold by the DPPs and IPPs to other buyers.[3]

## II. MOTIONS TO COMPEL

District courts – including magistrate judges – have broad authority to manage their dockets, including determining the scope of allowable discovery. *Jones v. City of Elkhart,* 737

---

[3] "Downstream discovery" refers to "documents and data reflecting a purchaser's use or sale of a product after the purchase." *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 09 C 7666, 2012 WL 1533221, *1 (N.D. Ill. April 27, 2012). Specifically, Defendants seek the following information from both the DPPs and the IPPs: (1) documents sufficient to show how prices for turkey are set (RFP 22); (2) sales data for turkey (RFP 26); (3) documents sufficient to show orders and backlog of turkey sold by Plaintiffs (RFP 27); (4) documents sufficient to show the geographic markets for which Plaintiffs sell turkey (RFP 29); (5) documents sent to, or received from others regarding actual or potential sales or purchases of turkey (RFP 32); and (6) documents sent to, or received from others regarding the processing of turkey (RFP 33). (Def. Mots. to Compel. at 4). All parties appear to accept that all of these requests concern "downstream data," discussed below in Part III.

2

F.3d 1107, 1115 (7th Cir. 2013). In making our decision on this motion to compel, we are guided as always by Fed. R. Civ. P. 26(b)(1), which provides that parties may obtain discovery regarding any non-privileged matter that is relevant to the claim or defense of any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2018 WL 3398141, at *1 (N.D. Ill. July 12, 2018) ("*Broiler I*"). At the discovery stage, "relevant" evidence under Rule 26(b)(1) is broader than it would be at trial; evidence does not need to be admissible to be discoverable. *Coleman v. Illinois,* No. 19 C 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020).

### III. DOWNSTREAM DISCOVERY

This discovery dispute turns on the question of whether "downstream discovery" is relevant to these consolidated-for-discovery antitrust cases, one brought by direct purchasers and one brought by indirect purchasers.[4] There is no absolute bar to downstream discovery in private antitrust cases, but it is usually not relevant in federal antitrust cases brought *solely* by direct purchaser plaintiffs, because federal antitrust law does not recognize a cause of action for indirect purchasers to claim they were overcharged amounts that were "passed on" from direct purchasers (who were first allegedly overcharged by defendants/sellers). Therefore, when only direct purchasers bring suit, defendants are barred from arguing as a defense that the allegedly overcharged amounts were "passed on" by the direct purchasers to indirect purchasers

---

[4] There are three other related cases that have been consolidated with the two cases here – 21 C 3763, 21 C 4131, and 21 C 3551 – that are not at issue in this motion.

3

downstream. *Broiler I*, 2018 WL 3398141, at *1, citing *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2012 WL 1533221, at *2 (N.D. Ill. Apr. 27, 2012) (citing a "plethora of case law").

Defendants argue that downstream discovery is within the scope of Rule 26(b)(1) in the DPP and IPP cases here. The IPP case is clearly a different posture, in that the IPPs sue for damages from being overcharged in the purchases they made indirectly (i.e., through others) from Defendants, and those claims exist in the IPP case under various state laws, including "repealer" (of the federal law prohibition on indirect purchaser antitrust claims) laws or unjust enrichment statutes.[5] As were the direct purchaser plaintiffs in *Broiler I*, the DPPs are third parties in the IPP matter, and downstream discovery from direct purchasers sometimes has been held to be relevant in indirect purchaser antitrust lawsuits because the information about direct purchaser pricing practices can be relevant to the relevant overcharge the indirect purchasers claim they paid. *See Broiler I*, 2018 WL 3398141, at *2; *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2019 WL 2764260, at *2 (N.D. Ill. May 6, 2019) (*Broiler II*"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449, 453-54 (N.D. Cal. 2014). But "the mere possibility that [downstream discovery] may be relevant to the defendant's ability to defend against a pass-through claim or to oppose class certification by indirect purchasers" does not automatically entitle the antitrust defendant to downstream discovery. *Broiler I*, 2018 WL 3398141, at *2, citing *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 299 (D.D.C. 2000) ("[I]n order to determine whether the

---

[5] The Supreme Court held in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 (1968), and *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 735 (1977), that only direct purchasers had standing to bring suit under the federal antitrust laws. A number of states subsequently passed "Illinois Brick repealer statutes" which allow indirect purchasers to sue for "passed-on" damages under the particular state's antitrust law. *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 815 (N.D. Ill. 2017). A pass-through (or pass-on) defense says that in such state cases, a defendant is liable only for damages for alleged overcharges that were not "passed on" by the direct purchaser to successive buyers.

individualized downstream data is discoverable, the Court must first determine whether this data is relevant to the subject matter at issue and then if it is deemed relevant, the Court must weigh the benefits of this information to the defendants against the burden or expense that discovery of this information would impose on the plaintiffs.") The foregoing approach to evaluating requests for downstream discovery in federal antitrust cases thus mirrors Rule 26(b)(1) as amended in 2015: The Court examines these requests, in the DPP and IPP cases here, for their relevance and proportionality.

### A. Downstream Discovery from Direct Purchaser Plaintiffs

Defendants argue that downstream discovery from the DPPs is relevant both to the issues of pass-through[6] and also for non-pass-through reasons such as class certification, market definition, and competitive effects.

In seeking downstream discovery from the DPPs (John Gross Company and Maplevale) Defendants argue that the information is relevant because of its direct linkage to the overcharge the IPPs say they paid for turkey (in their purchases from DPPs or other IPPs), so that the IPPs will need the information to make their damage claims, and the DPPs will need the information to defend against the IPP claims that they were overcharged.[7] (Def. Reply in Support of Mot. to

---

[6] Although it appears that this issue was debated at the parties' meet-and-confer sessions, Plaintiffs' briefs do not dispute the existence of state antitrust laws or that at least some of them allow for a pass-through defense in certain situations, including some of the statutes under which the IPPs have sued Defendants. Plaintiffs argue that none of the situations that allow pass-through exist in this case for any of the various state antitrust statutes. However, as we explain below, our decision on this motion is not the proper vehicle for detailed statutory construction of a dozen or more state antitrust statutes. We are comfortable that there is a better-than-likely chance that pass-through will be an issue under one or more statutes and therefore for the purposes of this decision we accept that such defense is available to Defendants to some extent, although we give no opinion about the exact scope of any individual statute or the evidence needed to prove the defense.

[7] The third named direct purchaser plaintiff, Olean Wholesale Grocery Cooperative, was voluntarily dismissed from the case with prejudice on October 11, 2021. (D.E. 309.)

Compel at 2.) Accordingly, Defendants say, the downstream discovery sought here is directly relevant.

The DPPs respond that in this case, their downstream pricing practices are not relevant because they are only two smaller entities, so that the amounts they charged the IPPs does not fix the amount of the IPPs' claimed overcharge. The DPPs suggest that Defendants should instead seek discovery from the large direct purchasers/resellers that control or controlled a significant portion of the indirect purchaser market. (DPP Response at 8.) Notably, in Defendants' reply, they acknowledge that proving the IPPs' initial overcharge will in fact require discovery from large direct purchasers, or from many small ones, to generate an adequate data set. Defendants' contention that downstream discovery from only the two DPPs here is relevant to help *defend* against claims of common overcharge by pointing out lack of uniformity among direct purchasers, or by establishing the failure of the IPPs' statistical models to describe all class members, (Def. Reply at 17), was not persuasive. The argument relies heavily on Defendants' supposition about the breadth of discovery the IPPs may need to establish their claims or to put defenses to those claims in sharper focus.

Notably, in *Broiler I,* the court's refusal to compel downstream discovery from the direct purchasers in that case rested in large part on the court's concerns that Defendants could only speculate, in the absence of additional discovery, about what the indirect purchaser plaintiffs' pass-through arguments or expert analysis would be. 2018 WL 3398141, at *2-3. The Court takes a similar view of the posture of the instant case in denying the Defendants' motion to compel DPP downstream discovery at this time.

The two cases Defendants cite in support of downstream discovery from the DPPs are of little aid. In *Broiler II,* the Court allowed indirect purchaser plaintiffs to obtain downstream

discovery from an entity that was a single, large, third-party direct purchaser (named "Porky Products"), based on the relevance of the information to claims made by end-user plaintiffs and commercial and institutional indirect purchaser plaintiffs, and to defenses to such claims. 2019 WL 2764260, at *1-2. The *Broiler II* court even distinguished the discovery allowed from Porky Products from other downstream discovery the same court had denied when it was sought from direct purchasers that were "relatively smaller players in the distribution chain," explaining that sufficient information might be better learned from other sources. *Id.*, quoting *In re Broiler Chickens Antitrust Litig.*, No. 16 C 8637, 2018 WL 999899, at *4 (N.D. Ill. Feb. 21, 2018). Similarly, in *Cathode Ray Tube*, the direct purchaser from which the court ordered downstream discovery was a large company – Best Buy – whose purchases and resales of the product at issue were highly relevant to the issue of pass-through damages, and the opinion did not suggest that any real question existed as to the relevance, to the indirect purchaser overcharge issues, of downstream discovery or "competitive intelligence" information in the possession of this large direct purchaser. 301 F.R.D. at 453-54.[8]

Nor is the Court persuaded by defendants' argument that downstream discovery is sufficiently relevant to class-certification, anti-competitive effects, and market definition for the Court to compel this discovery now. The Court sees Defendants' two leading cases, *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181 (11th Cir. 2003) and *In re Urethane Antitrust Litig.,* 237 F.R.D. 454 (D. Kan. 2006), as not analogous. The discovery requests in *In re Urethane* had

---

[8] Some of the DPPs' cases are of little help either. *In re Plasma-Derivative Protein Therapies Antitrust Litig.* Nos. 09-cv-7666, 11-cv-1468, 2012 WL 153321, at *3 (N.D. Ill. April 27, 2012), disallowed downstream discovery, but the matter before the court in that case was a direct purchaser action only. *In re Vitamins Antitrust Litigation*, 198 F.R.D. at 299, involved both direct and indirect purchaser plaintiff cases, but the disallowed downstream discovery was not relevant because defendants did not seek it to assert a pass-through defense but instead to assert consumer demand, and Plaintiffs' expert had used publicly available information to make his determinations, rendering additional discovery unnecessary.

been specifically tailored solely to address issues of class certification among all Plaintiffs, and the requests encompassed more than downstream discovery information. 237 F.R.D. at 459. In *Valley Drug,* the Eleventh Circuit reversed a grant of class certification because the district court had not properly addressed whether there was a conflict between certain wholesalers and the rest of the class, allowing some downstream discovery into this specific issue, and noting that "the district court retains discretion in determining how much discovery is enough" [to address the issue]. 350 F.3d at 1195. Notably, *Valley Drug* did not concern the fairness of prices paid for products sold to direct and indirect purchasers. *See also Broiler II*, 2019 WL 2764260, at *1 ("DPPs are relatively smaller players in the distribution chain, and Defendants may be able to obtain sufficient discovery to address the commonality and predominance issues in the IPP case from other sources.").

We deny Defendants' motion to compel the DPPs, but the denial is without prejudice to the issue being raised later in the case when relevance and proportionality of this discovery is established more clearly.

### B. Discovery from Indirect Purchaser Plaintiffs

Defendants' argument for the relevance of downstream discovery from the IPPs is simple. They say that the IPPs' case depends on not only proving that they were overcharged by the DPPs, but also that the IPPs did not pass on that overcharge to their own customers downstream. Therefore, Defendants contend that discovery concerning what the IPPs did with the turkey they purchased from the DPPs is highly relevant to the claims and defenses in this case. Generally speaking, the IPPs see the discovery as irrelevant under a theory that pass-through defenses are limited under the *Illinois Brick* repealer statutes giving rise to their causes of action to those situations where an indirect purchaser even further down the line brings suit. They contend that

8

the named IPPs "occupy a unique space in antitrust price-fixing litigation" because they use the turkey products they purchase as a component in the production of meals sold to their customers, and that other components include labor, other ingredients, and the fixed costs of running a business. (IPPs' Response to Mot. to Compel at 1.) Therefore, the IPPs say they should be treated as end users, taking the turkey products to make finished meals, and that downstream discovery is not relevant because "no one is suing for overcharges on restaurant meals." (*Id.* at 3.) To put it another way, the IPPs say that absent a risk of duplicative damages (that is, Defendants being found liable for the same overcharge paid by two different purchasers) there can be no pass-through defense, and absent a pass-through defense, downstream discovery is not relevant.[9]

In their Reply, Defendants reiterate their argument that downstream discovery is relevant because the IPPs are entitled to recover only the net overcharges they absorbed, and therefore, Defendants are entitled to seek information concerning how much of those overcharges the IPPs passed on to other purchasers. They dispute the IPPs' attempt to create a new "conflicting claimant rule" that no state antitrust statute would permit a pass-through defense unless an end-user has already filed suit and there is a risk of duplicative damages. Moreover, Defendants ask the Court to reject the IPPs' assertion that there could never be a conflicting claimant because the IPPs should be treated as end-users. (Def. Reply in Support of Mot. to Compel at 4.)

As an initial matter, we decline to engage in individual statutory construction for all 23-some state antitrust statutes at issue in this case, not to mention the common law of unjust

---

[9] For example, IPPs site *Clayforth v. Pfizer, Inc.*, 233 P.3d 1066, 1070 (Cal. 2010), which discussed California's Cartwright Act. (IPP's Response to Mot. to Compel at 5). In *Clayforth,* the court explained that where multiple levels of purchasers have sued or there remains a risk they may sue, and damages are to be allocated among "various levels of injured purchasers," defendants assert a pass-through defense to avoid duplicative damages. The IPPs suggest in their response that the Cartwright Act is "like New York's Donnelly Act, under which Defendants seek downstream discovery from CIIPP Sandee's." (IPPs' Resp. to Mot. to Compel at 5.)

enrichment for 25-some states under which the IPPs have also brought suit. As Defendants point out in their Reply, in addition to the question of duplicative damages, some of the state statutes at issue limit plaintiffs to "actual damages," which suggests the need to determine how much overcharge any particular purchaser absorbed in order to prevent it from receiving a windfall if no other downstream purchasers file suit themselves. (*Id.* at 7, *citing Vitamins,* 259 F. Supp. 2d at 3-5, 7-9.) Moreover, the Court is not ready to declare that claims of unjust enrichment are never subject to a pass-through defense. *See Kickham Hanley PLLC v. George W. Kuhn Drainage Dist.*, No. 351317, 2021 WL 137773, at *6-7 (Mich. Ct. App. January 14, 2021) (distinguishing between federal antitrust law for which there is no pass-through and state claims of unjust enrichment and finding that Plaintiffs did not suffer damages because the overcharge at issue was passed on to customers.) We respectfully decline to indulge the IPPs in their suggestion that every state antitrust statute and state common law is so well-settled as to denying pass-through so that downstream discovery is irrelevant to every claim and defense in the IPP case. We also decline to find that the IPPs should be considered "end-users" as a matter of law. Although the IPPs contend that their transformation of the turkey they purchase into meals and other such products means that there are no other indirect purchasers down the line to file suit, we do not have enough evidence before us to make that sort of fact-intensive determination, which is a matter for discovery. Moreover, Defendants point out that even individual IPPs treat turkey in different ways, transforming some into sandwiches to be sold to customers as well as reselling whole turkeys and turkey breasts. (Def. Reply at 13.) We are satisfied that at this time and on these facts, downstream discovery from the IPPs is relevant.

The IPPs offer little argument that producing downstream discovery will be burdensome. Instead, they offer a compromise to Defendants that they will not withhold any downstream

documents on the basis of their objections to downstream discovery to the extent that those documents are also being produced as response to non-downstream discovery requests. (IPPs' Resp. to Mot. to Compel at 13.) But offering not to withhold documents that it has already agreed to produce for other reasons does not fulfill the IPPs' obligation to also produce any additional downstream discovery Defendants request and that this Court finds relevant and proportional. The motion to compel the IPPs to produce of downstream discovery is granted.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Compel Direct Purchaser Plaintiffs (D.E. 242) is denied without prejudice and Defendants' Motion to Compel Indirect Purchaser Plaintiffs (D.E. 163) is granted.

**SO ORDERED.**

                                                      **ENTER:**

                                          **GABRIEL A. FUENTES**
                                          **United States Magistrate Judge**

**DATED: December 16, 2021**