UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE TURKEY ANTITRUST LITIGATION<br><br>This Document Relates To: Commercial and Institutional Indirect Purchaser Plaintiffs Actions | Civil Action No. 1:19-cv-08318<br><br>Hon. Virginia M. Kendall<br>Hon. Gabriel A. Fuentes |

**HOUSE OF RAEFORD FARMS, INC.'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL CUSTODIAN AND SEARCH METHODOLOGY**

For reasons stated below, House of Raeford Farms, Inc. ("HRF"), opposes the Motion to Compel filed by DPP/CIIPP Plaintiffs ("Plaintiffs"). HRF produces and sells broiler chicken products. In the past, HRF had a smaller operation to produce and sell turkey products until HRF shut down those operations beginning in early 2013. Plaintiffs have alleged that HRF comprised one percent or less of turkey production during the alleged relevant time period in this case. Yet Plaintiffs persist at this late stage of discovery in seeking to add a HRF broiler chicken sales manager as an additional document Custodian, and to compel discovery on discovery about HRF's document review for agreed document Custodians, based on nothing more than HRF's limited use of search terms to resolve this document Custodian dispute.

**Document Custodian**

Plaintiffs acknowledge requesting that HRF include its broiler chicken sales manager, Chan Windham ("Windham"), as an agreed document Custodian at the outset of document discovery, but withdrew the request in March 2021 on the basis that Windham had no role for HRF turkey production and sales. HRF proceeded with document production, and HRF confirmed in

November 2021 that it had substantially completed document production. Declaration filed concurrently with this Memorandum ("HRF Decl."), Ex. 2, Par. 3.

Plaintiffs submitted a new request to add Windham as a document Custodian on November 17, 2021. The sole basis for the request was email communications produced by Defendant Butterball that show Windham as the responsible HRF broiler chicken sales manager engaged in sales and potential sales of broiler chicken products to Butterball. Plaintiffs' November 17 letter selectively referenced a very small number of these email that include passing reference to turkey, or to business entertainment among Windham and the Butterball manager responsible for purchasing HRF broiler chicken products.

None of the Butterball email show any communications about "pricing, terms of sale, or supply volumes of turkeys" (the scope of Plaintiffs' revised document request No. 4), or about Agri Stats or other benchmarking data for same. HRF Decl. Par. 5. Plaintiffs do not contend otherwise. These documents are fully consistent with the basis for Plaintiffs' March 2021 withdrawal of the request to include Windham as a document Custodian, i.e., that Windham had no role for HRF turkey production or sales.

Despite this fact, and to address Plaintiffs' assertion that Windham's email file may include documents "uniquely responsive" to Plaintiffs' document requests on communications with document Custodians of other Defendants in this case, HRF engaged in further meet/confer communications and telephone conferences with Plaintiffs. HRF then agreed in mid-December 2021 to conduct a targeted review of the Windham email file using pertinent search terms that Plaintiffs had proposed, which include email domain addresses for other Defendants and names and email addresses for document Custodians of other Defendants. HRF Decl. Ex. 3. HRF

expressly stated that this review was in lieu of proceeding with a motion to compel which Plaintiffs had threatened.

Plaintiffs made no response, and did not reject or seek to modify HRF's proposal. HRF proceeded with the document review and reported to Plaintiffs on December 31, 2021, that no responsive documents were found within the scope of HRF's responses to Plaintiffs' document requests. HRF Decl. Ex. 4. Plaintiffs took no further action on this matter after receiving this email communication, and HRF correctly understood that the matter was resolved.

On February 15, 2022, forty-five days later, and only after the Court issued EFC No. 397 on February 1, 2022, Plaintiffs asserted that the matter was not resolved, purportedly on the basis that HRF "refused to search for any ESI outside of Chan Windham's email files which may contain relevant, responsive information." Plaintiffs had never made any such request to HRF, in particular after meet/confer communications that led to HRF's review of Windham's email file as described above. HRF responded on February 16, 2022, and explained that the matter had been fully resolved through the meet/confer process, and that the search of Windham's file had fully addressed Plaintiffs' asserted basis to add him as a document Custodian. HRF Decl. Ex. 5.

Nevertheless, HRF engaged in a further meet/confer conference on February 24, 2022, in a further effort to avoid an unwarranted and burdensome motion to compel. During that conference, Plaintiffs proposed that HRF conduct an additional search of Windham's email file using the search term "turkey." Following the call, HRF communicated that day that "HRF will proceed with review of documents in the further search described above, and will produce any responsive documents within the scope of HRF RFP responses that were not already produced, if Plaintiffs confirm that this additional step will resolve this matter, and that Plaintiffs will withdraw its request to add Chan Windham as an additional document Custodian." HRF Decl. Ex. 6.

Plaintiffs declined to give the requested assurance: "We certainly appreciate you agreeing to run the additional search term, and we are hopeful this additional search will resolve the Chan Windham issue. However, we cannot confirm the issue is resolved until we know the results of your search." HRF Decl. Ex. 7.

Despite Plaintiffs' position, HRF conducted the further search and document review, and reported to Plaintiffs before 9 a.m. on Monday, February 28, 2022: "Review of the additional search has been completed. No responsive documents within the scope of HRF RFP responses were identified that have not already been produced." HRF Decl. Ex. 8.

The results of this further search confirmed again that Windham had no role for HRF turkey production and sales, and that adding Windham as an additional document Custodian is unwarranted and not reasonable or proportionate to Plaintiffs' need for discovery from HRF. Plaintiffs submitted no response to this communication and raised no issues with the results of this additional and broader search, opting instead to file the Motion to Compel later that day.

In the Motion to Compel, Plaintiffs offer no explanation as to how adding Windham as an additional document Custodian at this time would give rise to any additional production of documents within the scope of HRF's responses to Plaintiffs' document requests. Plaintiffs assert that the Butterball email somehow refute that Windham "was not involved in the turkey industry." This vague statement is untethered to HRF's responses to Plaintiffs' document requests, and the meet/confer communications at the outset of document discovery in which Plaintiffs withdrew the request to add Windham as a document Custodian on the basis that he had "no role for turkey production/sales" at HRF.

Plaintiffs refer to a number of documents produced by HRF and Butterball. These documents do not contradict that fact and do not warrant adding Windham as an additional document Custodian now:

**Ex. 6.** HRF document. Submission for HRF's bank group as a general company overview, which shows Windham job title for HRF broiler sales. Jerry Russell, not Windham, was a turkey sales manager with the job title Director of Commodity Sales. HRF Decl. Par. 6. This document also identifies HRF agreed document Custodian Teachey, whose manager position covered turkey products at that time.

**Exs. 7-11.** HRF documents. Show internal distribution to many recipients, of periodic summary financial information that covers both broiler chicken and turkey operations. Recipients include Teachey and one or more other HRF agreed Custodians. Document shows nothing to contradict that Windham had no role for HRF turkey production/sales.

**Ex. 12.** HRF document. Internal announcement about a promotion for a manager of HRF cooked/further process plants, with broad distribution, including to managers for HRF broiler complexes who also had no role for HRF turkey production/sales. Document shows nothing to contradict that Windham had no role for HRF turkey production/sales.

**Ex. 13.** HRF document. Long email chain that shows Windham communicated with a broiler customer, and forwarded information about a potential opportunity for sales of turkey to HRF managers responsible for turkey sales, including Teachey.

**Exs. 14-19**. Documents produced by Butterball. Show Windham communications with the Butterball broiler chicken purchasing manager, on HRF sales or potential sales of broiler products for which Windham was the responsible HRF sales manager. Passing references to isolated turkey topics in a very small number of the 302 Butterball email are non-substantive, and

5

do not show any communication of information on HRF (or Butterball) "pricing, terms of sale, or supply volumes of turkeys," or Agri Stats or other benchmarking information on same.

**Exs. 20-24.** Documents produced by Butterball. Show business entertainment in a customer/supplier relationship for broiler chicken (not turkey) products, and do not show any communications about "pricing, terms of sale, or supply volumes of turkeys" by HRF or Butterball.

**Ex. 25.** Document produced by Butterball. Shows Butterball as a broiler chicken purchaser deciding to share some information on the outcome of a Butterball purchase process for broiler chicken products, HRF Decl. Par. 7, which Butterball may decide to do with its own information for normal procompetitive reasons. The document does not show Butterball sharing any information with Windham on Butterball purchases or sales of turkey products.

Plaintiffs also make various assertions as to why further review of Windham's email file is warranted, such that Windham should be added as an additional HRF document Custodian at this late date in discovery. None of these assertions warrant any relief on this Motion to Compel.

**Mem. 9-10**. Plaintiffs assert that selected Butterball email referenced in Plaintiffs' November 17 letter show communications within the scope of Plaintiffs' amended document request No. 4 ("All documents or communications relating to information exchanges between You and other Defendants or Co-Conspirators regarding the pricing, terms of sale, or supply volumes of turkeys"), and based on same that Windham's email file must contain documents responsive to this document request.

This assertion is incorrect. None of the Butterball email show any communication "regarding the pricing, terms of sale, or supply volumes of turkey." Thus, these documents do not show that Windham's email file must contain communications with such content. Plaintiffs also ignore that HRF already reviewed Windham's email file twice as part of the meet/confer process

6

as described above, and found no documents within the scope of HRF's responses to Plaintiffs' document requests.

**Mem. 12**. Plaintiffs assert that using additional proposed search terms for yet another review of Windham's email file would not be unduly burdensome, because HRF used Plaintiffs' proposed search terms No. 03-14 for the document review performed in mid-December 2021 that fully resolved this matter, and then also used the search term "turkey" for yet another review proposed by Plaintiffs and performed prior to February 28, 2022.

Plaintiffs are incorrect. The two searches HRF already performed were unduly burdensome and not proportional to Plaintiffs' need for discovery from HRF. Moreover, some of the additional search terms that Plaintiffs proposed are untethered to "turkey," and Windham's email file contains many documents about HRF broiler chicken sales and operations that may hit on these overbroad search terms, giving rise to further unwarranted burden for review.

Moreover, HRF has already completed a review of documents in Windham's email file that contain the word "turkey." This search was more than adequate to cover any potentially responsive documents in Windham's email file that had not already been produced in this case. In fact, Plaintiffs did not disagree when HRF accepted Plaintiffs' own proposal to run this search, as described above.

The two searches and reviews that HRF already performed are more than reasonable and proportionate to confirm that Windham's email file does not contain "uniquely responsive" documents within the scope of HRF's responses to Plaintiffs' document requests that were not already produced in this case.

Plaintiffs' request to add Windham as an additional document Custodian is not reasonable and proportionate to Plaintiffs' need for discovery from HRF for the additional reasons that

7

(i) HRF shut down its turkey growing and slaughter operations beginning in mid-2013 (DPP Second Amended Complaint, ECF No. 387, Pars. 121, 404), and (ii) HRF accounted for one percent or less of total turkey production during the alleged relevant time period in this case (DPP Second Amended Complaint Par. 513).

Given HRF's de minimis role in turkey production, Plaintiffs' request to further burden HRF with the cost and time for additional document review of the email file of a broiler chicken sales manager is unwarranted and should be denied. *See* HRF Decl. Ex. 9, p. 5 ("*See also O'Toole v. Sears Roebuck and Co.*, 2014 WL 1388660, at *3 (April 10, 2014) ("The discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts-and no more.") (internal quotation and citation omitted).").

**HRF Document Review**

Plaintiffs acknowledge (i) that the parties agreed in March 2021 on the scope of HRF document review, consisting of email files for several agreed document Custodians, but not Windham (Pl. Mem. p. 2, Ex. 1), (ii) that HRF communicated that it would not use search terms to pre-cull documents for review from these files (Pl. Mem. p. 3; HRF Decl. Ex. 1 ("Given the above, as of now HRF does not intend to use search terms to pre-cull ESI in files of agreed Custodians.")), and (iii) that HRF proceeded with document review and production on that basis, which has been substantially completed since November 2021 (HRF Decl. Ex. 2 ("3. Substantial Completion. HRF has substantially completed document production, including for agreed Custodians.")).

Plaintiffs acknowledge that they have the burden to show HRF's search methodology was inadequate (Pl. Mem. p. 14). None of Plaintiffs' assertions satisfy this burden, or show any deficiency in HRF's document production:

**Mem. 12**. "House of Raeford has failed to describe to Plaintiffs the methods it used to identify documents response [sic] to Plaintiffs' Requests for Production."

The ESI Protocol that the District Court entered in this case (ECF No. 202, Section V.D.), permits but does not require the use of search terms to pre-cull the volume of information to be reviewed for responsiveness, and does not require that HRF respond to "discovery on discovery" about HRF's document review conducted without the use of search terms. Plaintiffs proposed a requirement in the ESI Protocol for use of search terms that the District Court rejected, and Plaintiffs' assertions on this issue show that Plaintiffs are seeking to reargue this determination.

**Mem. 12**. "House of Raeford chose to use search terms against Mr. Windham's email files. However, it refused to run search terms against the files of its other agreed upon custodians."

Windham is not an agreed Custodian, and HRF fully explained the reasons that it used Plaintiffs' proposed search terms on two separate occasions for targeted searches to fully resolve Plaintiffs' untimely request to add Windham as an additional document Custodian. These efforts show no inadequacy with HRF's prior review of email files of HRF's agreed Custodians, and do not warrant any further action or disclosures by HRF about its document review process.

**Mem. 12**. "Interestingly enough, the limited search terms used by House of Raeford on Mr. Windham's email files returned two hits which were not previously discovered in House of Raeford's manual review."

HRF did not search Windham's email file as part of the review of email files of agreed document Custodians, so the later use of limited search terms for targeted review of Windham's email file during the meet/confer process does not show any deficiency in HRF's document review.

Moreover, HRF advised Plaintiffs on December 31, 2021, that the two documents Plaintiffs reference are not responsive within the scope of HRF's responses to Plaintiffs' document requests,

9

as the documents concern HRF sales or potential sales of broiler chicken products, not turkey. HRF Decl. Ex. 4.

**Mem. 12**. "If running a limited number of search terms for Chan Windham was not burdensome, what is the burden associated with running search terms for all custodians?"

The two separate reviews that HRF performed of Windham's email file during the meet/confer process were unwarranted, unduly burdensome, and not proportionate to Plaintiffs' need for discovery from HRF, in particular given that Windham had no role for HRF turkey production/sales. More importantly, ECF No. 202 does not require that HRF use search terms to pre-cull documents from files of agreed Custodians, regardless of the Plaintiffs' perception of the relative burden of such a review process, and HRF substantially completed document production on November 2021 in accordance with ECF No. 201.

**Mem. 12**. "Why can Plaintiffs not tell what House of Raeford actually searched?"

HRF's response to Plaintiffs' document requests specified the email files of agreed Custodians that HRF would search and the relevant time period for same at the outset of document discovery, and Plaintiffs accepted these terms. (Pl. Mem. p. 2, Ex. 1.).

**Mem. 12**. "The 302 documents produced by Butterball which contain communications from Mr. Windham are certainly responsive to Plaintiffs' discovery requests and confirm that House of Raeford is in possession of responsive documents it refuses to produce to Plaintiffs. The fact that House of Raeford itself did not identify these documents in its "manual review" highlights the deficiency of its methodology."

The Butterball email are not responsive within the scope of HRF's responses to Plaintiffs' document requests, including revised document request No. 4, as discussed above. HRF did not make decisions on whether or why Butterball produced these documents, and Butterball may have

done so even if the documents are not responsive within the scope of Butterball's responses to Plaintiffs' document requests.

Moreover, as stated above, HRF's review of email files of agreed document Custodians did not cover Windham's email file, so the fact that HRF did not produce such documents does not show any deficiency in HRF's document review.

**Mem. 14**. "As such, Plaintiffs request that this Court compel House of Raeford to disclose how its "manual review" of custodial files was performed, as well as an explanation as to why two different methodologies were used by House of Raeford in collecting documents responsive to Plaintiffs' discovery requests."

During the meet/confer call on February 24, 2021, HRF discussed the general review process used for email files of agreed document Custodians, as Plaintiffs acknowledge (Pl. Mem. pp. 4-5). HRF disagrees with Plaintiffs' characterization of that discussion. HRF responded to all of the questions Plaintiffs posed on this topic. Moreover, these disclosures were not required under EFC No. 202, and were not warranted based on any assertions about "deficiencies" in HRF document production, which Plaintiffs raised for the first time only in this Motion to Compel.

Plaintiffs have not shown that any further explanation is warranted now, as there is no requirement to do so under ECF No. 202 or the Federal Rules of Civil Procedure, and Plaintiffs have not identified any deficiency in HRF's document production. Nor is any further explanation required on the basis that HRF made limited use of search terms proposed and approved by Plaintiffs, in an effort to resolve Plaintiffs' unwarranted and untimely request to add Windham as an additional document Custodian in this case.

11

HRF also does not see how the Motion to Compel complies with the requirement in ECF No. 397 to "explain why deviations from the district court's prior January 11, 2021, Scheduling Order (D.E. 210) are appropriate."

For the reasons stated, HRF requests that the Court deny Plaintiffs' Motion to Compel in all respects, including the request for sanctions.

Dated: March 7, 2022

Respectfully submitted,

/s/ Gregory G. Wrobel
Gregory G. Wrobel, Bar No. 03122900
gwrobel@vedderprice.com
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
Telephone: (312) 609-7500
Facsimile: (312) 609-5005

Henry W. Jones, Jr. (admitted pro hac vice)
hjones@jordanprice.com
Jordan Price Wall Gray Jones
& Carlton, PLLC
1951 Clark Avenue
Raleigh, North Carolina 27605
Telephone: (919) 828-2501
Facsimile: (919) 834-8447

*Attorneys for Defendant House of Raeford Farms, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on March 7, 2022, a copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ Gregory G. Wrobel*
Gregory G. Wrobel