**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| OLEAN WHOLESALE GROCERY COOPERATIVE, et al. ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | 1:19-cv-08318 |
| ) | |
| AGRI STATS, INC., et. al. ) | |
| ) | |
| *Defendants.* ) | |

**THE KROGER CO.'S MOTION TO QUASH SUBPOENA AND**
**FOR ATTORNEYS' FEES AND COSTS**

NOW COMES Intervenor Defendant/Subpoena Respondent, The Kroger Co., by and through its counsel, Sara R. Strom of Kopka Pinkus Dolin, P.C., and pursuant to Federal Rule of Civil Procedure 45, hereby moves this Honorable Court to Quash Defendant Butterball, LLC's Subpoena and for Attorney's Fees and Costs, and in support thereof, states as follows:

**SUMMARY OF FACTS**

On January 7, 2022, Defendant Butterball, LLC, through attorney Stephen R. Chuk of Proskauer Rose LLP, made twelve (12) itemized requests for production of documents via subpoena from The Kroger Co., who is not a party to the referenced lawsuit. *Butterball LLC's Jan. 7, 2022 Subpoena, attached hereto as Ex. 1.* Specifically, Plaintiff requests The Kroger Co. produce documents and data regarding: its analysis of competition in the procurement, sale and purchase of Turkey Products or prepared foods that include or contain Turkey Products; various communications with any Benchmarking Service, defendants in this litigation, customers, and even prospective customers; changes in how data is populated; changes in calculations; reasons why certain data is populated with zeros or no data; geographic areas where The Kroger Co. competes with respect to the sale of Turkey Products, its estimated share of sales in those areas,

and a list of competitors in those areas; all sales communications including requests for proposals, requests for information, requests for bids, responses received, revised bids, offers, or responses, and the outcome of those communications; and all occasions on which a Turkey Product supplier offered to revise or revised terms of its offers due to competition. *See Ex. 1, Ex. A; pp. 9-10.* Additionally, Defendant Butterball LLC requests The Kroger Co. produce documents regarding the information it records or maintains concerning its customers, members, products, competing products, and sales for a period of more than seventeen (17) years between January 1, 2005 and the present. *See Ex. 1, Schedule A, Req. for Prod., pp. 4-12.* Purportedly, the reason for the subpoena is that Defendant Butterball, LLC is seeking to obtain information from The Kroger Co., which includes all Kroger and related banner grocery stores nationwide, regarding the purchases and sales of various turkey and turkey containing products.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs subpoenas, which are typically directed to nonparties. *Young v. City of Chi.,* No. 13 C 5651, 2017 U.S. Dist. LEXIS 394, at *10 (N.D. Ill. Jan. 3, 2017). The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules. *Graham v. Casey's Gen. Stores, Inc.,* 206 F.R.D. 251, 253-54 (S.D. Ind. 2002) (citing *Jackson v. Brinker*, 147 F.R.D. 189, 193-94 (S.D. Ind. 1993) ("the scope of material obtained by a Rule 45 subpoena is as broad as permitted under the discovery rules. . . if the material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of a subpoena"). "[S]ubpoenaed non-parties have the right to challenge the burdensomeness and expense of responding to the subpoena." *Rosales v. Placers, Ltd.,* No. 09 C 1706, 2011 U.S. Dist. LEXIS 23384, at *3-4 (N.D. Ill. Mar. 8, 2011) (citing *Silverman v. Motorola, Inc.,* No. 07 C 4507, 2010 U.S. Dist. LEXIS 81671, at *5 (N.D. Ill. June 29, 2010)). Indeed, "[n]on-party status

is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Whitlow v. Martin*, 263 F.R.D. 507, 512 (C.D. Ill. 2009).

Rule 45 provides in relevant part as follows:

> (d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.
> (1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

FRCP 45(d)(1).

Furthermore, Rule 45 provides that when a person commands another person to produce materials or permit inspection:

> A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested.

FRCP 45(d)(2)(B). The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. *Id.*

On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
> . . .
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

FRCP 45(d)(3)(A). The party seeking to quash a subpoena bears the burden of meeting the requirements articulated under Rule 45(d)(3). *In re Subpoena,* No. 16-cv-4619, 2016 U.S. Dist. LEXIS 72483, at *5 (N.D. Ill. June 3, 2016). Deciding whether to grant a motion to quash lies with

the sound discretion of the district court. *Lightspeed Media Corp. v. Smith,* No. 3:12-cv-889-DRH-SCW, 2014 U.S. Dist. LEXIS 20252, at *3 (S.D. Ill. Feb. 19, 2014). To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may further, on motion, quash or modify the subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information…" FRCP 45(d)(3)(B)(i); *see also Davis v. City of Springfield, Ill.,* No. 04-3168, 2009 U.S. Dist. LEXIS 26806, 2009 WL 910204 at *2 (C.D. Ill. Apr. 1, 2009).

## ARGUMENT

The subpoena in the instant case requests document production. *See Ex. 1.* In summary, Defendant Butterball, LLC requests documents regarding:

1) *All documents and data* reflecting your *analysis of competition in the procurement and sale of Turkey Products*;
2) For the period from January 1, 2005 to the present, please provide *transactional data* related to your *purchases of Turkey Products*;
3) For the period from January 1, 2005, to the present, please provide *documents and data* related to your *purchases of Turkey Products* including:
    a. *Contracting methods, practices, policies, or strategies* relating to Turkey Products…; and
    b. Data relating to *any off-invoice financial transactions* between you and Turkey Product suppliers…
4) For the period from January 1, 2005, to the present, please provide *transactional data* related to your *sales of Turkey Products* and *prepared foods that include Turkey Products*:
5) For the period from January 1, 2005, to the present, please provide *documents and data* sufficient to show the following information related to your *sales of Turkey Products and prepared foods that include Turkey Products*;
    a. *Contracting methods, practices, policies, or strategies relating to Turkey Products;* and
    b. Data relating to any *off-invoice financial transactions* between you and your customers…
6) All documents relating to *any Benchmarking Service*;
7) Documents sufficient to show the meaning of any acronyms, short-hand phrases, numeric codes, or alpha-numeric codes used in such data, including any data dictionaries or look-up tables;
8) Documents sufficient to show *any changes to how you populated data* contained in those fields, including, by way of example, changes to how you calculated the net

   price of the Turkey Product or prepared foods containing Turkey Products that You sold;
9) Documents sufficient to show the *reason* for any field being primarily or exclusively populated with zeros or no data.
10) Documents sufficient to identify the bounds of *any geographic areas within the United States where You compete* with respect to the sale of Turkey Products, your *estimated share of sales* in those areas, and your *competitors* in those areas.
11) Documents sufficient to show:
    a. *all requests for proposal ("RFPs"), requests for information ("RFIs"), requests for competitive bids, and similar documents* that You have issued related to the purchase of Turkey Products;
    b. the *responses* that you received from Turkey Product suppliers;
    c. Your *communications* with Turkey Product suppliers regarding their responses;
    d. *any revised bids, offers, or responses* that You received; and
    e. *the outcome of the RFP, RFI, or bidding process*.
12) Documents sufficient to show *all occasions on which a Turkey Product supplier offered to lower its price or otherwise revise the financial terms of its offer to supply Turkey Product* due to competition with another supplier.

*Ex. 1, Schedule A* (emphasis added). Furthermore, pursuant to the subpoena, "Turkey Products" refers to:

> *All products derived from turkey or which use turkey meat or parts as an ingredient, whether fresh, frozen, raw, or cooked;* and including, but not limited to, whole birds, primary processed turkey products, further processed turkey products, cooked turkey products, commodity parts, renderings and byproducts, offal and variety products, and multi-ingredient products where turkey is an ingredient.

*Id. at Schedule A, Definitions,* No. 9 (emphasis added). Moreover, "Benchmarking Service" refers to:

> Any report, publication, or dataset created or distributed by The Kroger Co. that compares business processes or performance metric (such as sales, production, costs, margins, profitability, or other data) between participants in an industry or against industry best practices or averages.

*Id. at Schedule A, Definitions,* No. 5.

Well known to Defendant Butterball, LLC and the general public is the fact that The Kroger Co. owns and operates over 2,600 stores including Kroger, Roundy's, and Mariano's among other related banner grocery stores across the United States and employs over 400,000 associates.

Defendant Butterball, LLC seeks information regarding all customers, members, purchases and sales or turkey products or turkey containing products, suppliers, potential suppliers, and competitors throughout the United States for a period of seventeen (17) years from January 1, 2005 to the present. Defendant Butterball, LLC further seeks information regarding protected, proprietary, confidential business information regarding its operations and industry relationships.

The Kroger Co. has timely responded to Defendant Butterball, LLC's Subpoena with a written objection to the same pursuant to Rule 45(d)(2)(B). *See The Kroger Co.'s Jan. 14, 2022 Corr. re: Subpoena attached as Ex. 2; See also The Kroger Co.'s Resp. to Req. for Prod. and Obj. to Subpoena, attached as Ex. 3*. The Kroger Co. now further requests that this court quash Defendant Butterball, LLC's subpoena because it is overbroad, seeks irrelevant documentation, is not substantially limited in time and scope, is unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence. An overly broad subpoena may be quashed pursuant to Federal Rule of Civil Procedure (d)(3)(A)(iv) as unduly burdensome. *Id.; see also Margoles v. United States,* 402 F.2d 450, 451 (7th Cir. 1968) (holding that the district court did not abuse its discretion in granting the Government's motion to quash subpoenas as unreasonable as much too broad); *WM High Yield v. O'Hanlon,* 460 F. Supp. 2d 891, 896 (S.D. Ind. 2006) (finding "Deloitte's subpoena inflicts an undue burden because the requests are overly broad and not reasonably calculated to lead to the discovery of admissible evidence per Rule 26").

When determining if a burden is undue, courts have used the reasonableness standard. *Flynn v. FCA U.S. LLC,* No. 16-mc-00078 DGW, 2016 U.S. Dist. LEXIS 165278, at *5 (S.D. Ill. Nov. 30, 2016). The question of what is reasonable, of course, depends upon the particular circumstances of the case. *Id.* A non-party is entitled to "somewhat greater protection" than would a party be entitled. *Id.* (*citing Patterson v. Burge,* No. 03 C 4433, 2005 U.S. Dist. LEXIS 1331,

2005 WL 43240, *1 (N.D .Ill. 2005)). The court must ask whether 'the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it.'" *Shaffner*, 626 F.2d at 38 (citing *Nw. Mem'l. Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004)). A court can 'modify or exclude portions of a subpoena only if the movant carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad.' *EEOC v. Konica Minolta Business Solutions U.S.A., Inc.,* 639 F.3d 366, 371 (7th Cir. 2011) (citing *EEOC v. United Airlines, Inc.,* 287 F.3d 643, 649 (7th Cir. 2002)); *FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir. 1980)).

    In the instant matter, Defendant Butterball LLC's subpoena requests an unlimited amount of data over a period of seventeen (17) years from thousands of grocery stores throughout the United States including but not limited to confidential customer data, protected business data and trade secrets, and industry sales concerning various products that are not only derived from turkey, but which may also include turkey meat or parts as an ingredient. Furthermore, the subpoena seeks an explanation of any data The Kroger Co. provides, reasoning for certain data, and a plethora of communications between The Kroger Co. and its suppliers, customers, advisers, competitors, and potential future suppliers. Defendant Butterball LLC's subpoena is undoubtedly overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, despite any intentions or goals Defendant Butterball LLC may have in this action to obtain information relevant to its defense theory or theory of liability against any co-defendants, Defendant Butterball LLC's subpoena is unreasonable as written its requests are simply not proportional to the needs of the case. In fact, the significant costs and time to retrieve such data, if such data exists and if such data can in fact even be retrieved, would be outside of the scope of Kroger's core business of selling groceries. The Kroger Co.'s compliance with the subpoena could involve the search of

millions of customer transactions, many hard copy and/or electronically stored documents at numerous location, interview with many of Kroger's employees, and the search of terabytes of structured and unstructured data. Additionally, it could cost Kroger an immeasurable amount of money by significantly farming the trust and goodwill which has been built over many years with Kroger's loyal customers as customers have a certain level of expectation with respect to the privacy and confidentiality of their personal information. The time spent on research, production, copying, scanning hard copy documents into PDF format, and retrieving such data, if possible, would also cause The Kroger Co. to incur hundreds of hours or research that would cost $50.00 per hour for its employees and unknown costs for contractors per hour, as well as various contractor costs to attempt to obtain data and documents, copying or data transfer charges, vendor charges, and carrier charges. Compliance with such a subpoena is thus unduly burdensome on The Kroger Co., a non-party to this suit, and would substantially outweigh any potential relevance in the instant civil action.

      The Kroger Co. is entitled to a greater protection under Rule 45 and its burden of compliance with Defendant Butterball LLC's subpoena, if possible, would be timely, costly, and vast. The Kroger Co.'s burden of compliance would most certainly exceed the benefit of any production of material and would frankly waste a massive amount of time, resources, and energy. Defendant Butterball LLC's subpoena further seeks protected, confidential business information that should not be produced unless subject to a Protective Order. Compliance with the same would thus violate the protections of The Kroger Co.'s advisers, customers and members, suppliers, and competitors, and require the disclosure of privileged, proprietary, and protected information, and lead into the disclosure of trade secrets including advisor lists, customer lists, product lists, product sales, competitor lists, marketing strategies, and industry practices.

Finally, Plaintiff's subpoena does not allow The Kroger Co. a reasonable time to comply with the request for the production of any documents. The subpoena was served on January 7, 2022 and required a response within thirty (30) days on or by February 7, 2022. The Kroger Co. cannot identify any corporate employees that would have knowledge regarding all the information requested by the stated date. The Kroger Co also does not have the ability to retrieve such data, does not know if such data exists, and at this time, does not have documents responsive to the request for documents. As written, the response timeframe for the information requested is unmanageable and unreasonable.

The subject subpoena exceeds any scope of allowable discovery and directly violates Rule 45(d) protecting a person subject to a subpoena as Defendant Butterball, LLC has not taken reasonable steps to avoid imposing undue burden or expense on The Kroger Co. The Kroger Co. thus objects to Defendant Butterball, LLC's subpoena as a whole *(see Ex. 3),* requests costs it is entitled to pursuant to Rule 45(d), and requests this court quash the January 7, 2022 Subpoena issued to it pursuant to Rule 45.

WHEREFORE, THE KROGER CO., respectfully requests this Honorable Court grant THE KROGER CO.'s Motion to Quash Defendant Butterball, LLC's January 7, 2022 Subpoena, award all reasonable fees and costs associated with having to submit the present Motion, and for such other relief as this Court deems reasonable and just.

    Respectfully submitted,

    */s/ Sara R. Strom*

    **ATTORNEY FOR INTERVENOR**
    **DEFENDANT/SUBPOENA RESPONDENT,**
    **THE KROGER CO.**

Sara R. Strom, Esq.; ARDC No. 6317969
KOPKA PINKUS DOLIN PC
200 W. Adams Street, Suite 1200
Chicago, IL 60606
(312) 782-9920
(312) 782-9965 – Fax
ARDC No. 6317969
E-mail:  SRStrom@kopkalaw.com

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing has been served via e-mail on counsel for all parties at the email addresses below or has been served by automatic service by the Court's e-filing system, on this 16th day of March 2022:

TO:   Stephen R. Chuk
Proskauer Rose LLP
1001 Pennsylvania Ave., NW, Suite 600 South
Washington, DC 20004-2533
schuk@proskauer.com
Attorney for Butterball LLC

Jacob D. Koering
Attorney for Agri Stats, Inc.

Sarah Sterling Aldridge
Attorney for Bernie's LLC, Gnemi, LLC d/b/a Logan Farms, Liberty Holding Company, Martin's BBQ, LLC, Music Matters, LLC, Sandee's Bakery, Social Kitchen, Thyme Café & Market

Patrick John Ahern
Attorney for Bi-Lo Holding, LLC

Britt Marie Miller
Attorney for Cargill, Inc. and Cargill Meat Solutions Corporation

Joshua Goldberg
Attorney for Cooper Farms, Inc.

Michael K. Sciaccotta
Attorney for Farbest Foods, Inc.

Carmine R. Zarlenga
Attorney for Foster Farms, LLC and Foster Poultry Farms

Stephanie A. Koltockian
Attorney for Hormel Foods Corporation and Hormel Foods, LLC

Gregory Gene Wrobel
Attorney for House of Raeford Farms, Inc.

Rio Shaye Pierce
Attorney for John Gross and Company, Inc.

James T. Mckeown
Attorney for Kraft Foods Group Brands LLC and Kraft Heinz Foods Company

Bruce Anthony Courtade
Attorney for Michigan Turkey Producers, LLC

Steve W. Berman
Attorney for Olean Wholesale Grocery Cooperative

James Douglas Baldridge
Attorney for Perdue Foods LLC

Amy Rich Paulus
Attorney for Prestage Foods, Inc., Prestage Farms, Inc. and Prestage Farms of South Carolina, LLC

Jordan Matthew Tank
Attorney for The Hillshire Brands Company, Tyson Foods, Inc.


                                                                          */s/ Sara R. Strom*