PUBLIC VERSION

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| *IN RE TURKEY ANTITRUST LITIGATION* | No. 1:19-cv-08318 |
| This Document Relates To: | Hon. Virginia M. Kendall |
| The Direct Purchaser Plaintiff Action | Hon. Gabriel A. Fuentes |
| The Commercial and Institutional Indirect Purchaser Plaintiff Action | |
| *Winn-Dixie, Inc., et al. v. Agri Stats, Inc., et al.* Case No. 21-cv-4131 | |

# REPLY IN SUPPORT OF
# DEFENDANTS' JOINT MOTION TO DISMISS

PUBLIC VERSION

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

    I. The Direct Action Plaintiffs Failed To File A Timely Opposition ................................. 2

    II. Plaintiffs Lack Direct Evidence Of The Alleged Conspiracy. ...................................... 2

    III. Plaintiffs Do Not Allege Indirect Evidence Of The Alleged Conspiracy .................... 3

        A.    Plaintiffs Do Not Plead Parallel Conduct. ................................................. 4

        B.    The Alleged Conspiracy Is Implausible Given The Obvious Alternative Explanations. ...................................................................................... 7

        C.    Plaintiffs Fail To Plead Plausible Plus Factors. ........................................ 9

            1.    Interfirm Communications. ......................................................... 10

            2.    Agri Stats. ............................................................................. 12

            3.    Trade Associations. ................................................................. 13

            4.    Industry Structure .................................................................... 14

            5.    Allegations About Other Industries. ............................................. 15

            6.    Actions Against Self-Interest. ..................................................... 15

CONCLUSION ................................................................................................... 15

PUBLIC VERSION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABB Turbo Sys. AG v. Turbousa, Inc.*,
774 F.3d 979 (Fed. Cir. 2014)........................................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................................1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................................7, 14

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017) ...................................................................5, 6, 12, 15

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011)..........................................................................................................5

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
28 F.4th 42 (9th Cir. 2022) ...................................................................................................8, 14

*Erie Cnty. v. Morton Salt, Inc.*,
702 F.3d 860 (6th Cir. 2012) .......................................................................................................14

*Flextronics Int'l USA v. Panasonic Corp.*
(9th Cir. Feb. 16, 2022)..................................................................................................................5

*In re Inductors Antitrust Litig.*,
2022 WL 327708 (N.D. Cal. Feb. 3, 2022) ..................................................................................5

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010)..........................................................................................................8

*In re Interest Rate Swaps Antitrust Litig.*,
261 F. Supp. 3d 430 (S.D.N.Y. 2017)...........................................................................................6

*Litovich v. Bank of Am. Corp.*,
2021 WL 4952034 (S.D.N.Y. Oct. 25, 2021) ...............................................................................6

*In re Local TV Advertising Antitrust Litig.*,
2020 WL 6557665 (N.D. Ill. Nov. 6, 2020) ......................................................................8, 13, 14

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) .....................................................................................................11

*Olean Wholesale Grocery Coop., Inc. v. Agri Stats, Inc.*,
    2020 WL 6134982 (N.D. Ill. Oct. 19, 2020)......................................................1, 9, 12

*In re Packaged Ice Antitrust Litig.*,
    723 F. Supp. 2d 987 (E.D. Mich. 2010)..............................................................3, 15

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    764 F. Supp. 2d 991 (N.D. Ill. 2011) ........................................................................6

*In re Pork Antitrust Litig.*,
    2019 WL 3752497 (D. Minn. Aug. 8, 2019) ..........................................................12

*In re Pork Antitrust Litig.*,
    495 F. Supp. 3d 753 (D. Minn. 2020)..............................................................5, 6, 15

*In re Processed Egg Prods. Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Penn. 2011) ....................................................................7

*Robinson v. Potter*,
    2009 WL 1904383 (N.D. Ill. July 1, 2009)...............................................................2

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
    801 F.3d 412 (4th Cir. 2015) ...................................................................................6

*In re Text Messaging Antitrust Litig.*,
    630 F.3d 622 (7th Cir. 2010) ..........................................................................2, 7, 14

*In re Text Messaging Antitrust Litig.*,
    782 F.3d 867 (7th Cir. 2015) ..............................................................................7, 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..................................................................11

*Tobin v. BC Bancorp*,
    2010 WL 3341729 (S.D. Cal. Aug. 24, 2010) .........................................................1

*Washington Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*,
    328 F. Supp. 3d 824 (N.D. Ill. 2018) ................................................................9, 13

*White v. R.M. Packer Co., Inc.*,
    635 F.3d 571 (1st Cir. 2011).....................................................................................14

## Statutes, Rules and Regulations

Richard A. Posner, *Antitrust Law* 66 (2d ed. 2001)...........................................................2

PUBLIC VERSION

# INTRODUCTION

Plaintiffs filed their amended complaints more than two years after this litigation began and with the benefit of voluminous discovery. Even so, Plaintiffs have not pled a plausible conspiracy. As Defendants'[1] motion made plain, the complaints are devoid of direct evidence, do not allege parallel conduct, ignore obvious lawful reasons why some turkey producers would cut production or raise prices at various times, and fail to plead plus factors that would plausibly infer a conspiracy. Plaintiffs' opposition fails to meaningfully rebut these arguments.

Most notably, the opposition concedes that even with millions of pages of Defendants' documents, granular production data, and three confidential witnesses, Plaintiffs lack *any* direct evidence of conspiracy. This alone makes allegations of a sprawling, nearly decade-long, 15-member conspiracy highly implausible. Plaintiffs' attempt to piece together a circumstantial case for conspiracy fares no better, resting primarily on the assertion that other courts have allowed "strikingly similar" allegations in the chicken and pork industries to proceed. Determining whether a complaint states a plausible claim, however, is a "context-specific task," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, Plaintiffs failed to plead facts supporting a *per se* claim at the outset of the litigation, *Olean Wholesale Grocery Coop., Inc. v. Agri Stats, Inc.*, 2020 WL 6134982, at *8 (N.D. Ill. Oct. 19, 2020), and are now attempting to back their way into a *per se* theory with out-of-context snippets from select documents they obtained in discovery on their surviving information-exchange claim (which is not at issue for purposes of this motion). Because Plaintiffs

---

[1] Defendants are Agri Stats, Inc. ("Agri Stats"); Butterball, LLC ("Butterball"); Cargill Incorporated and Cargill Meat Solutions Corporation ("Cargill"); Cooper Farms, Inc. ("Cooper Farms"); Farbest Foods, Inc. ("Farbest"); Foster Farms, LLC and Foster Poultry Farms ("Foster Farms"); Hormel Foods Corporation and Jennie-O Turkey Store, Inc. ("Hormel"); House of Raeford Farms, Inc. ("House of Raeford"); Prestage Farms, Inc., Prestage Foods, Inc., Prestage Farms of South Carolina, LLC ("Prestage Farms"); Perdue Farms, Inc. and Perdue Foods LLC ("Perdue"); and Tyson Foods, Inc., The Hillshire Brands Company, Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc. ("Tyson"). Tyson has settled with the Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs, see Dkt. 406, 433, and therefore joins this brief as to the *Winn-Dixie* complaint only (Dkt. 379).

PUBLIC VERSION

still do not plead a plausible *per se* claim, the Court should grant the motion to dismiss.

## ARGUMENT

### I. The Direct Action Plaintiffs Failed To File A Timely Opposition.

Defendants and three sets of Plaintiffs—the Direct Purchaser Plaintiffs, the Commercial and Institutional Indirect Purchaser Plaintiffs, and the Direct Action Plaintiffs—jointly stipulated to a briefing schedule for the motion to dismiss the three amended complaints. Dkt. 383. The first two Plaintiff groups filed a timely opposition to Defendants' motion. Dkt. 528 ("Opp."). The Direct Action Plaintiffs did not. Instead, the Direct Action Plaintiffs waited nearly a month after their response date to file a "notice of joinder" in the earlier opposition, Dkt. 544, followed by a lengthy exhibit—filed on the *same day* this reply was due—purporting to show "corresponding" citations between the joint opposition and the Direct Action Plaintiffs' complaint. Dkt. 545. "[T]he failure to oppose a motion forfeits a party's ability to challenge the validity of the arguments made within it." *Robinson v. Potter*, 2009 WL 1904383, at *2 (N.D. Ill. July 1, 2009). Especially because the last-minute notice and exhibit offer no explanation for the Direct Action Plaintiffs' failure to file a timely response, the Court should grant the motion to dismiss as to those Plaintiffs as a matter of course. *Cf. Tobin v. BC Bancorp*, 2010 WL 3341729, at *1 n.1 (S.D. Cal. Aug. 24, 2010) (declining to consider a party's belated notice of joinder filed one week after the close of briefing).

### II. Plaintiffs Lack Direct Evidence Of The Alleged Conspiracy.

The Court should also grant the motion as to the Direct Purchaser Plaintiffs and the Commercial and Institutional Purchaser Plaintiffs because their joint opposition fails to overcome Defendants' arguments. In their opening brief, Defendants explained that Courts have recognized that alleged long-term, complex conspiracies—like the one alleged here involving 15 producers, nearly a decade of time, and thousands of products—should be "more susceptible of direct proof." Dkt. 502 ("Mem.") at 7-9; *id.* ("It is unlikely that a large number of firms could accomplish the

PUBLIC VERSION

complex and delicate task of effectively coordinating their pricing without generating abundant evidence of conspiracy." Richard A. Posner, *Antitrust Law* 66 (2d ed. 2001)). Plaintiffs respond that they "may plausibly allege an antitrust conspiracy based on circumstantial allegations." Opp. 4. That misses the point. Defendants never said that direct evidence is always required to plead a *per se* claim. *See* Mem. at 9. Here, however, Plaintiffs have had extensive opportunities to uncover direct evidence through discovery, if it in fact existed. Their admission that they have no direct evidence is therefore quite telling.[2]

Perhaps more telling, Plaintiffs claim no support from their three alleged confidential witnesses, who one would certainly expect to have *some* direct knowledge of a nearly decade-long conspiracy to reduce output and increase prices. Mem. 9. If Plaintiffs had a basis for doing so, Plaintiffs surely would have included allegations from these confidential witnesses to support their *per se* conspiracy theory. Indeed, one of the cases on which Plaintiffs rely (Opp. 29 n.70) emphasized allegations by confidential witnesses in holding that the complaint could proceed to discovery. *See In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1013-14 (E.D. Mich. 2010). Plaintiffs' complaints, by contrast, are devoid of any such allegations.

## III.  Plaintiffs Do Not Allege Indirect Evidence Of The Alleged Conspiracy.

Absent direct evidence, Plaintiffs must allege circumstantial evidence to make the alleged conspiracy plausible. The complaints fail here too. As the opposition confirms, Plaintiffs fail to plead parallel conduct, and, even if they had, do not place that conduct into a context plausibly suggesting that any Defendant cut production or raised prices based on some unlawful agreement.

---

[2]    The *Text Messaging* decision—which Plaintiffs cite for its statement that "[d]irect evidence of conspiracy is not a sine qua non" (Opp. 4 n.9)—proves the point. In that case, the plaintiffs "ha[d] conducted no discovery" and thus had no opportunity to "reveal the smoking gun" that might tilt the balance in favor of liability. *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 629 (7th Cir. 2010). Here, in contrast, Plaintiffs have had the benefit of robust discovery.

PUBLIC VERSION

### A. Plaintiffs Do Not Plead Parallel Conduct.

Plaintiffs acknowledge that they must allege "*both* parallel conduct *and* the existence of plus factors" in order to state a plausible claim. Opp. 4 (emphasis added)); *see also* Mem. 10-11.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ Plaintiffs dramatically overstate their allegations of parallelism, which in fact show that there was no unity of purpose among the ten named turkey producer Defendants and the five unnamed "co-conspirators" during the alleged conspiracy period.

**Only some producers allegedly decreased production.** Plaintiffs allege that only eight of the ten Defendants cut production by any amount in the 2008–2009 period. *See* Opp. 7-8. They allege no cuts by Perdue or Tyson, and do not mention the five unnamed "co-conspirator" producers (Dakota, Kraft, Michigan, Norbest, and West Liberty). Further, Plaintiffs ignore their complaints' own allegations ████████████████████████████████████████████

████████████████████████████████████████████████████

The story is similar for 2012–2013. Plaintiffs allege that a different eight Defendants cut production in this period but do not identify any cuts by Prestage, Tyson, or the unnamed co-conspirators. Opp. 9. And here too, Plaintiffs allege ██████████████████████████████

████████████████████████████████████████████ The allegation that ████████████████

████████████████████████████████████████████ is particularly feeble. As Plaintiffs do not dispute, House of Raeford announced that it was shuttering its turkey production business early the following year. Mem. 13. No rational producer would cut its output pursuant to a conspiracy, and then exit the market before prices increased.

PUBLIC VERSION

*No consistency among alleged cuts.* Even looking at the subset of Defendants that Plaintiffs have identified as "cutting" production, their allegations fail to show parallel conduct. The first reduction Plaintiffs identify is ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

does not plausibly establish the existence of a conspiracy.[3]

The 2012–2013 allegations regarding alleged cuts fare no better. In an effort to support those allegations, Plaintiffs point to ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[3]     *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228 (3d Cir. 2011) (plaintiffs did not allege parallel conduct when defendants acted differently and "at different time periods"); *In re Inductors Antitrust Litig.*, 2022 WL 327708, at *3 (N.D. Cal. Feb. 3, 2022) (dismissing complaint where there were no "trends, patterns or relationships among the Defendants' pricing over time"), *appeal filed sub nom*, No. 22-15231, *Flextronics Int'l USA v. Panasonic Corp.* (9th Cir. Feb. 16, 2022).

PUBLIC VERSION

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████ These and similar allegations merely tell the story of different turkey producers responding to market conditions in different ways.

  ***Plaintiffs' case law is inapposite.*** Plaintiffs do not deny that they allege different production changes at different times by different Defendants, instead arguing that under *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772 (N.D. Ill. 2017), and *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753 (D. Minn. 2020), their allegations are sufficient to plead parallel conduct. Opp. 5-6. Those cases do not support Plaintiffs. In *Broilers*, unlike here, the plaintiffs alleged that "*all* of the defendants engaged in production cuts at the same time." 290 F. Supp. 3d at 792 (emphasis added). And in both *Broilers* and *Pork*, the court allowed the plaintiffs leeway because of the "inherent difficulty of obtaining solid information of an antitrust conspiracy" before discovery. *Pork*, 495 F. Supp. 3d at 771; *see also Broilers*, 290 F. Supp. 3d at 804. Here, fulsome document discovery has already occurred and Plaintiffs *still* have not identified any parallel cuts, let alone by all Defendants.

  Plaintiffs' other cases, mostly buried in footnotes, are equally distinguishable. In *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, for instance, just two companies allegedly conspired to cut production over a single year. 764 F. Supp. 2d 991, 1000 (N.D. Ill. 2011). That is entirely different from an alleged conspiracy among 15 different producers over a nearly decade-long period, with some defendants allegedly cutting production, others increasing, and others doing neither (or both). In *In re Interest Rate Swaps Antitrust Litig.*, the court emphasized that

PUBLIC VERSION

defendants acted in parallel on the very same day, "suggest[ing] coordination." 261 F. Supp. 3d 430, 475 & n.24 (S.D.N.Y. 2017) ("*IRS*"); *see also Litovich v. Bank of Am. Corp.*, 2021 WL 4952034, at *10 (S.D.N.Y. Oct. 25, 2021) (distinguishing *IRS* on this basis and dismissing the complaint because there was no conduct alleged that was "so unexpected or idiosyncratic in type as to be unlikely in the absence of an agreement"), *appeal filed*, No. 21-2905 (2d Cir. Nov. 23, 2021). And as with the other cases Plaintiffs cite, the *IRS* court was willing to overlook the lack of uniform allegations because the complaints were drafted "before discovery," so that the failure to allege that a given defendant "engaged in a given practice may simply reflect that plaintiffs' information is as-yet incomplete." 261 F. Supp. 3d at 479.[4]

### B. The Alleged Conspiracy Is Implausible Given The Obvious Alternative Explanations.

Even if Plaintiffs had sufficiently alleged parallel conduct (they have not), there are several obvious lawful explanations for what Plaintiffs refer to as parallelism. Most notably, it is undisputed that feed prices were soaring and demand for turkey was cratering ███████ ████████████████████████████████████████████ It would be remarkable if some Defendants *did not* alter their production strategies in response to these changing conditions; rational firms do not blindly maintain production levels during periods of increasing costs. In fact, in published reports, the USDA's Economic Research Service predicted industry reductions in output in both periods. *Id.* at 16-17 n.10 & 19 n.13.

Plaintiffs contend that these conditions provided a motive for conspiracy, because it is "plausible" that producers could have conspired to reduce output in a "dire economic climate."

---

[4]     *See also, e.g.*, *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 429 (4th Cir. 2015) (distinguishing price fixing conspiracies from other types of conspiracies for purposes of parallelism analysis), *aff'd*, 888 F.3d 98 (4th Cir. 2018); *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709 (E.D. Penn. 2011) (relying on allegations of eight *collective* actions taken by the defendants jointly).

PUBLIC VERSION

Opp. 11-12. However, this is inconsistent with *Bell Atl. Corp. v. Twombly*, which recognizes that if factual allegations are equally consistent with unilateral action as with conspiracy, they do not nudge a claim across the line from possible to plausible. 550 U.S. 544, 566-67 (2007). Plaintiffs' logic is also flawed: the existence of "dire" economic conditions such as weak demand, steeply rising production costs, and recession tends to show why decisions by some turkey producers to temporarily reduce their output were reached independently. In the *Text Messaging* decision, on which Plaintiffs repeatedly rely, the court observed that it was "anomalous" that "in the face of steeply falling costs, the defendants increased their prices." *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 870 (7th Cir. 2015). Here, Plaintiffs' *own model* admittedly suggests that rising input costs explain observed turkey prices for several years after the start of the purported conspiracy period. Mem. 17-18 (citing SAC ¶ 46, Fig. 5).

Plaintiffs' opposition also fails to distinguish the authorities in Defendants' brief, simply stating that these decisions involved an "innocent, alternative explanation" that "clearly showed the parallel conduct was the result of independent conduct." Opp. 13. But that is just the case here. Indeed, after Defendants submitted their opening brief, the Ninth Circuit affirmed dismissal of a suit where, as here, "Plaintiffs' allegations demonstrate that it was economically rational" for a defendant "to reduce its supply growth" and for other producers to "independently and rationally reach[]" similar decisions. *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 48-50 (9th Cir. 2022).

Plaintiffs also argue that they need not show their allegations "tend to exclude" alternative explanations because doing so would mean "asking the Court to undertake a weighing of evidence that is not appropriate at the pleading stage." Opp. 15. But antitrust plaintiffs "must allege something more than conduct merely consistent with agreement." *DRAM*, 28 F.4th at 47; *see also*

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322-23 (3d Cir. 2010) ("allegations of conspiracy are deficient if there are 'obvious alternative explanations' for the facts alleged") (alterations omitted). Accordingly, "in separating conclusions from facts and deciding whether the alleged facts make affirmatively plausible the asserted basis of liability, courts deciding a motion to dismiss for insufficient pleading may consider the strength of alternative explanations of the alleged facts." *ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 987 (Fed. Cir. 2014).

Plaintiffs' reliance on *In re Local TV Advertising Antitrust Litig.* is misplaced. There, the plaintiffs alleged that "Defendants increased their prices despite a demonstrated lower demand for television spot advertising." 2020 WL 6557665, at *9 (N.D. Ill. Nov. 6, 2020). Here, there are no well-pled allegations that demand rose during the period of the alleged supply cuts. Plaintiffs themselves cite documents stating that demand was "steady" or "falling" in 2014, SAC ¶¶ 369, 375, which the USDA recognized as well. Mem. 16-17 n.10.[5]

### C. Plaintiffs Fail To Plead Plausible Plus Factors.

Plaintiffs concede that even supposed "economic pressure" to conspire suggests a conspiracy only when combined with "additional factual circumstances." Opp. 12. Nonetheless, Plaintiffs fail to plead the requisite plus factors required to make conspiracy a plausible inference. Indeed, several of these alleged plus factors discussed in Plaintiffs' brief were in Plaintiffs' initial complaint, *e.g.*, Dkt. 1 ¶¶ 99-107, 124-30 (industry structure and "opportunities to collude"), and still the Court concluded that the allegations did not support a *per se* claim. *See Olean*, 2020 WL

---

[5]     Likewise, in attempting to distinguish *Washington County Health Care Authority, Inc. v. Baxter International Inc.*, 328 F. Supp. 3d 824 (N.D. Ill. 2018), Plaintiffs emphasize that the plaintiffs in that case did not allege that the proffered explanations for the supply reductions were false. Opp. 14. But the complaints' only two allegations of pretext are that Cargill "messag[ed]" talking points for its cutbacks and that Hormel and Foster Farms had internal discussions about messaging as well (for Hormel, during a period when it was increasing production). SAC ¶¶ 362-64. Trying to message changes to the market is not pretext at all, and certainly is not pretext for a conspiracy. *See* Mem. 18-20.

PUBLIC VERSION

6134982, at *8. These re-tread allegations remain insufficient.

### 1. Interfirm Communications.

The bulk of Plaintiffs' discussion of plus factors focuses on what they term "interfirm communications"—most of which are not actually communications between Defendants. Opp. 16-21. As Defendants have explained, Plaintiffs' selective citation of these documents and communications repeatedly mischaracterizes their contents. Viewed in their actual context, these documents *undermine* rather than support any inference of a conspiracy. Mem. 20-22.

Plaintiffs' attempts to dispense with the clear problems with these documents are unavailing. Plaintiffs claim, for instance, ████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████ That makes no sense. Plaintiffs' theory is that Defendants *agreed* to cut production in 2012 and 2013; ██████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████ is flatly inconsistent with such an agreement. ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

Unable to dispute these inferences, Plaintiffs accuse Defendants of "cherry-pick[ing]" among "almost 600" allegations in the complaints. Opp. 19. It is true that Plaintiffs have thrown everything but the kitchen sink into their complaints, necessitating an illustrative discussion rather than a point-by-point refutation. But the additional allegations Plaintiffs highlight in their opposition brief—████████████████████████████████████████████████████████

PUBLIC VERSION

██████████████████████████████████████████████████████—do

not move the needle. They are simply more of the same—mischaracterizations of documents in an

effort to support otherwise baseless allegations of a conspiracy among Defendants.

Plaintiffs emphasize two particular examples ████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████ Neither plausibly shows an invitation to

conspire—much less a conspiracy involving all Defendants for almost a decade. ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████ Plaintiffs do not explain what that

is supposed to mean, ██████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████[6]

Plaintiffs also assert that they have made "extensive" factual allegations ███████

████████████████████████████████████████████████████████████████

█████████████████ These allegations, however, do not show anything ████████████

██████████████████████████████████ The Seventh Circuit has said that it is

common for competitors to watch each other "like hawks." *Text Messaging*, <u>782 F.3d at 875</u>.

---

[6]     The authority Plaintiffs cite to show "an invitation, followed by responsive assurances and conduct," is enough to infer conspiracy is inapposite. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, <u>586 F. Supp. 2d 1109, 1116</u> (N.D. Cal. 2008). That case involved "boast[s]" by a producer that it "had succeeded in convincing its competitors to cut capacity" and alleged "pretextual reasons for price increases or output restrictions." <u>*Id.*</u> Both factors are wholly lacking here.

PUBLIC VERSION

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

Finally, Plaintiffs do not deny (nor could they) that gathering market intelligence is common in most markets; instead they contend that "interdependence means that there would be a motive for conspiracy." Opp. 19. That argument has been soundly rejected. Interdependence "does not entail collusion, as interdependent firms may engage in consciously parallel conduct through observation of their competitors' decisions, even absent an agreement." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1195 (9th Cir. 2015). Although Plaintiffs claim that Defendants make "no attempt" to explain the few alleged direct communications between Defendants, Opp. 18, Defendants explained that turkey producers had many legitimate reasons to communicate. *See* Mem. 22. Plaintiffs respond that "context" indicates that Defendants were "each acting as sellers" in several alleged exchanges. Opp. 18-19. Yet the documents Plaintiffs cite either do not involve direct communications (SAC ¶¶ 456-58, 462-63, 465) or do not indicate that Defendants lacked legitimate reasons to discuss these issues (*id.* ¶¶ 463, 467).

> **2.  Agri Stats.**

Plaintiffs assert that Agri Stats ████████████████████████████████ ████████████████████████████████████ But this Court has already recognized that an entity such as Agri Stats has plausible procompetitive purposes. *See Olean*, 2020 WL 6134982, at *5. While Plaintiffs also argue that some courts have held that Agri Stats can be a "facilitating practice" considered alongside other allegations of price fixing, Opp. 21-23, those courts did so only after finding sufficient allegations of parallel conduct, which are absent here. *Broilers*, 290 F. Supp.3d at 788; *In re Pork Antitrust Litig.*, 2019 WL 3752497, at *7 (D. Minn. Aug. 8, 2019).

In discussing Agri Stats, moreover, the *Broilers* court emphasized that "when a conspiracy

-12-

PUBLIC VERSION

is secret . . . details will not be available without discovery, and thus cannot be required at the pleading stage." 290 F.3d at 788. Here, despite discovery (and confidential witnesses), Plaintiffs do not allege any basis to infer that Defendants' separate use of Agri Stats reflects or supports an underlying agreement to conspire. *See* Mem. 24-25. Plaintiffs' opposition merely recites information included in Agri Stats reports and notes that Defendants may use those reports to monitor industry production or profitability. Opp. 22. However, monitoring such trends in one's industry is an entirely legitimate activity. Indeed, it is the very essence of competition.

In response to Defendants' explanation that the Agri Stats allegations show individual Defendants making internal use of the information, Mem. 25, Plaintiffs discuss a single Defendant using Agri Stats to understand marketplace dynamics and make pricing decisions. Opp. 22-23. Far from suggesting a conspiracy, ████████████████████████████████████ ██████████████████ In short, the complaints do not offer any well-pled allegations that Defendants' use of Agri Stats was a coordinated effort or that the alleged use of Agri Stats by individual Defendants to monitor or forecast industry conditions is tantamount to price-fixing.

### 3. Trade Associations.

Plaintiffs claim that membership in certain trade associations provided an opportunity to facilitate unlawful cooperation. And while they rely heavily on one of this Court's recent decisions, that opinion cannot carry the weight Plaintiffs put on it. In *Local TV Advertising*, this Court recognized that trade-association allegations need to be accompanied by "express vows of cooperation among competitors" to "move the needle" on a *per se* claim. 2020 WL 6557665, at *10 (quoting *Baxter*, 328 F. Supp. 3d at 843). Here, Plaintiffs fail to show anything resembling "express public statements regarding cooperation" to cooperate on price or supply, ██████████ ████████████████████████████████████████████████████████ ████████████████████        ██████████████████████████████

PUBLIC VERSION

███████████████████████████████████████████████████

██████████████████████████

While Plaintiffs attempt to embellish their information-sharing allegations by referring to additional details about specific information purportedly exchanged, Opp. 25-26, Plaintiffs still are unable to allege express cooperation, agreement, or information used as a basis for conspiracy.

███████████████████████████████████████████████████

████████████████████████████████████ Plaintiffs' reliance on the *Text Messaging* decision is inapt, since (as Plaintiffs do not dispute) documents referring to "coopetition" in this case have an obvious procompetitive purpose. *See* Mem. 27-28. And once again, while the plaintiffs in *Local TV Advertising* had not conducted any discovery, 2020 WL 6557665, at *10 n.6, Plaintiffs, even with discovery, cannot offer concrete allegations that Defendants used their membership in trade associations to agree on price or output.

### 4. Industry Structure.

Plaintiffs argue Defendants' alleged combined market share of "approximately 80 percent of turkey production and processing" makes the market "conducive to collusion." Opp. 28. But it is well-established that a large aggregated market share is not evidence of a conspiracy. In *Twombly*, the Court found the plaintiffs had failed to state a Sherman Act claim even when the companies alleged to have conspired "allegedly control[led] 90 percent or more of the market." 550 U.S. at 550 n.1. As the Ninth Circuit recently explained, even "extreme market concentration" is equally consistent with conscious parallel behavior as with conspiracy. *DRAM*, 28 F.4th at 52.[7]

---

[7]    *See also, e.g.*, *Erie Cnty. v. Morton Salt, Inc.*, 702 F.3d 860, 870 (6th Cir. 2012) ("[D]escriptions of the market . . . do not give rise to an inference of an unlawful agreement."); *White v. R.M. Packer Co., Inc.*, 635 F.3d 571, 582 (1st Cir. 2011) (high barriers to entry and other "hallmarks of oligopolistic markets" do not "help[] to distinguish between agreement and mere conscious parallelism").

-14-

PUBLIC VERSION

### 5. Allegations About Other Industries.

Referring to the chicken and pork industries, Plaintiffs contend that "anticompetitive conduct in adjacent markets . . . supports a reasonable inference of anticompetitive conduct in *this* market." Opp. 29. But mere allegations of anticompetitive conduct in those industries—made by many of the same Plaintiffs' firms in this case—adds nothing to the plausibility of their claim. Mem. 29. Plaintiffs cite no case even suggesting that a court must credit allegations in a different case in these circumstances. To the contrary, their main authority recognizes that even "guilty pleas in one market are suggestive of the plausibility of a conspiracy to commit the same illegal acts in another market" only where "there is a significant overlap in identity of interest of the alleged co-conspirators in both markets" and "the claims are based upon the same anticompetitive conduct," *Packaged Ice*, 723 F. Supp. 2d at 1011. There are no such alleged overlaps here.[8]

### 6. Actions Against Self-Interest.

Plaintiffs' final attempt to plead plus factors rests on just two substantive allegations,



If these allegations sound remarkably paltry, it is because they are. Neither makes it remotely plausible that those two Defendants—or any other—acted against self-interest by curtailing supply as part of a conspiracy.

### CONCLUSION

The Court should dismiss Plaintiffs' *per se* price-fixing claim.

---

[8]    In particular, the indictments involving certain individuals and plea agreement of one company in the broiler industry are based on allegations of bid-rigging; no similar conduct is alleged in the complaints.

PUBLIC VERSION

Dated: June 1, 2022

Respectfully submitted,

/s/ J. Douglas Baldridge
J. Douglas Baldridge (#437678)
Lisa Jose Fales (admitted *pro hac vice*)
Danielle R. Foley (admitted *pro hac vice*)
Paul Feinstein (admitted *pro hac vice*)
Andrew T. Hernacki (admitted *pro hac vice*)
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC  20001
Telephone: (202) 344-4000
jdbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com
pfeinstein@venable.com
athernacki@venable.com

Kirstin B. Ives
FALKENBERG IVES, LLP
30 N. LaSalle St., Suite 4020
Chicago, Illinois  60602
Telephone: (312) 566-4803
kbi@falkenbergives.com

*Counsel for Perdue Farms, Inc. and
Perdue Foods LLC*

/s/ Jordan Matthew Tank
Jordan Matthew Tank
Sahrish Moyeed
LIPE LYONS MURPHY NAHRSTADT &
PONTIKIS
230 West Monroe Street, Suite 2260
Chicago, Illinois  60606
Telephone: (312) 702-0586
jmt@lipelyons.com
sm@lipelyons.com

Tiffany Rider Rohrbaugh
Rachel J. Adcox
Lindsey Strang Aberg
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 469-3550

/s/ William H. Stallings
Carmine R. Zarlenga
William H. Stallings
Stephen M. Medlock
Oral Pottinger
MAYER BROWN LLP
1999 K Street NW
Washington, DC  20006
Telephone: (202) 263-3000
czarlenga@mayerbrown.com
wstallings@mayerbrown.com
smedlock@mayerbrown.com
opottinger@mayerbrown.com

*Counsel for Foster Farms, LLC, and Foster
Poultry Farms, a California Corporation*

/s/ Jennifer A.L. Battle
Michael L. McCluggage
Daniel D. Birk
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois  60604
Telephone: (312) 660-7600
mmccluggage@eimerstahl.com
dbirk@eimerstahl.com

Joshua Goldberg
CARPENTER, LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
Telephone: (312) 777-4825
goldberg@carpenterlipps.com

Jennifer A.L. Battle
David J. Barthel
Theodore M. Munsell
Jill Rogers Spiker
Joel E. Sechler
CARPENTER, LIPPS & LELAND LLP
280 North High Street, Suite 1300
Columbus, Ohio 43215
Telephone: (614) 365-4100

PUBLIC VERSION

trider@axinn.com
radcox@axinn.com
lstrang@axinn.com

*Counsel for The Hillshire Brands Company,*
*Tyson Foods, Inc., Tyson Fresh Meats, Inc.,*
*and Tyson Prepared Foods*

/s/ Marc E. Rosenthal
Marc E. Rosenthal
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3530
Mrosenthal@proskauer.com

Christopher E. Ondeck
Colin R. Kass
Stephen R. Chuk
Rucha A. Desai
David Munkittrick
Kelly Landers Hawthorne
Reut Samuels
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW, Suite 600
Washington, DC 20004
Telephone: (202) 416-6800
COndeck@proskauer.com
CKass@proskauer.com
SChuk@proskauer.com
RDesai@proskauer.com
DMunkittrick@proskauer.com
KLandershawthorne@proskauer.com
RSamuels@proskauer.com

*Counsel for Butterball LLC*

/s/ Colby Anne Kingsbury
Colby Anne Kingsbury
FAEGRE DRINKER BIDDLE & REATH LLP
311 South Wacker Drive, #4300
Chicago, IL 60606
(312) 212-6500
Colby.Kingsbury@faegredrinker.com

Richard A. Duncan
Craig S. Coleman

battle@carpenterlipps.com
barthel@carpenterlipps.com
munsell@carpenterlipps.com
spiker@carpenterlipps.com
sechler@carpenterlipps.com

*Counsel for Cooper Farms, Inc.*

/s/ Britt M. Miller
Britt M. Miller
Robert E. Entwisle
Matthew D. Provance
Rachel J. Lamorte
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com
mprovance@mayerbrown.com
rlamorte@mayerbrown.com
Sybil Dunlop
X. Kevin Zhao
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-8346
sdunlop@greeneespel.com
kzhao@greeneespel.com
*Counsel for Cargill, Incorporated and Cargill*
*Meat Solutions Corporation*

/s/ Michael K. Sciaccotta
Michael K. Sciaccotta
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
michael.sciaccotta@dentons.com
Gaspare J. Bono
Leslie A. Barry
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
Telephone: (202) 496-7500
gap.bono@dentons.com
leslie.barry@dentons.com

Emily E. Chow
Isaac B. Hall
FAEGRE DRINKER BIDDLE & REATH LLP
90 S. Seventh Street, Ste. 2200
Minneapolis, MN 55402
(612) 766-7000
Richard.Duncan@faegredrinker.com
Craig.Coleman@faegredrinker.com
Emily.Chow@faegredrinker.com
Isaac.Hall@faegredrinker.com

Christopher A. Kreuder
Robert Gallup
Stephanie Koltookian
Lance W. Lange
John S. Yi
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
(515) 248-9000
Christopher.Kreuder@faegredrinker.com
Robert.Gallup@faegredrinker.com
Stephanie.Koltookian@faegredrinker.com
Lance.Lange@faegredrinker.com
John.Yi@faegredrinker.com

Jonathan H. Todt
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
(202) 230-5000
Jonathan.Todt@faegredrinker.com

*Counsel for Hormel Foods Corporation and Jennie-O Turkey Store, Inc.*

*/s/ William S. Cherry III*
Michael T. Medford, N.C. State Bar # 7227 (*pro hac vice*)
William S. Cherry III, N.C. State Bar # 33860 (*pro hac vice*)
J. Gray Wilson, N.C. State Bar # 46509 (*pro hac vice*)
MANNING, FULTON & SKINNER, P.A.
3605 Glenwood Avenue - Suite 500 (27612)
Post Office Box 20389

*Counsel for Farbest Foods, Inc.*

*/s/ Gregory G. Wrobel*
Gregory G. Wrobel, Bar No. 03122900
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
Telephone: (312) 609-7500
gwrobel@vedderprice.com

Henry W. Jones, Jr. (pro hac vice)
Lori P. Jones (pro hac vice)
T. Nute Thompson (pro hac vice)
Jordan Price Wall Gray
Jones & CARLTON, PLLC
1951 Clark Avenue
Raleigh, NC 27605
Telephone: (919) 828-2501
hjones@jordanprice.com
ljones@jordanprice.com
nthompson@jordanprice.com

*Counsel for House of Raeford Farms, Inc.*

*/s/ Jacob D. Koering*
Jacob D. Koering
MILLER, CANFIELD, PADDOCK & STONE, PLC
225 West Washington Avenue, Suite 2600
Chicago, IL 60606
Telephone: (312) 460-4272
koering@millercanfield.com

William L. Monts III (*pro hac vice pending*)
Justin W. Bernick (*pro hac vice pending*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
Telephone: (202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Agri Stats, Inc.*

PUBLIC VERSION

Raleigh, North Carolina 27619
Telephone: (919) 787-8880
Facsimile: (919) 325-4604 (Cherry)
E-mail:  medford@manningfulton.com
cherry@manningfulton.com
wilson@manningfulton.com

Amy R. Paulus
Daniel P. Johnston
Davy H. Raistrick
Clausen Miller P.C.
10 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 855-1010
Facsimile: (312) 606-7777
E-Mail:  apaulus@clausen.com
djohnston@clausen.com
draistrick@clausen.com

*Counsel for Defendants Prestage Farms of
South Carolina, LLC, Prestage Farms, Inc.
and Prestage Foods, Inc.*

PUBLIC VERSION

### <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on June 1, 2022, a true and correct

copy of the foregoing was served on all lead counsel of record via email.

By:    /s/ *Britt M. Miller*
        Britt M. Miller