**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *IN RE TURKEY ANTITRUST LITIGATION* | No. 1:19-cv-08318 |
| This Document Relates To:<br><br>All Actions | Hon. Virginia M. Kendall<br>Hon. Gabriel A. Fuentes |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE SCHEDULING & DISCOVERY ORDER FOR DEPOSITIONS RELATED TO EVIDENTIARY ISSUES**

I.   **PRELIMINARY STATEMENT**

Nearly two years ago, the Parties agreed to an efficient procedure for resolving evidentiary issues related to documents that the Parties may seek to introduce at any trial in this matter. The procedure is memorialized in the Scheduling and Discovery Order, ECF No. 210, which requires the Parties to make good-faith efforts to resolve those issues through stipulations "in connection with any pretrial order," and contemplates "the use of requests for admission to resolve potential evidentiary objections that cannot be resolved by stipulation." *Id.* § II.a.8.

Now, on the eve of fact discovery closing, Plaintiffs unilaterally ask the Court to modify these agreed-upon procedures and allow them to notice some unknown number of additional Rule 30(b)(6) depositions after the discovery cutoff to address "evidentiary issues," *if any*, that may later arise. Plaintiffs have not demonstrated good cause for this relief. They do not explain why additional Rule 30(b)(6) depositions will be necessary or why they waited nearly two years to ask for them, nor have Plaintiffs shown that the additional evidentiary discovery available under the Scheduling Order would be insufficient. Moreover, Plaintiffs have already taken or scheduled more than 70 Defendant fact witness depositions, and nearly every witness has been questioned about the authenticity and business record status of approximately 2,000 exhibits marked during those depositions. Allowing Plaintiffs to retread the same ground with additional Rule 30(b)(6) depositions after the close of fact discovery would be unnecessarily duplicative, burdensome, and wasteful. Defendants respectfully request that Plaintiffs' motion be denied.

II.  **BACKGROUND**

The Court entered the initial Scheduling Order on January 11, 2021. *See* ECF No. 210. Although the Parties disputed certain provisions in the Order, they agreed on others. *See* Joint Submission of Rule 26(f) Report, ECF No. 194 (identifying disputed and non-disputed aspects of

the Parties' proposed Scheduling Order). Among the agreed-upon provisions in the Scheduling Order is Section II.a.8, which establishes a procedure for meeting and conferring about evidentiary issues in connection with pretrial activities, and if necessary, for resolving any disputes arising over such issues in advance of trial:

> The parties will meet and confer in good faith in connection with any pretrial order to determine if a stipulation can be agreed to concerning various evidentiary issues addressed in the Federal Rules of Evidence ("FRE"), *including authenticity* (FRE 902 & 903), duplicates (FRE 1001(4) & 1003), the requirement for a sponsoring witness to establish authenticity or best evidence, and *status of a document as a business record* (FRE 803(6)). The parties reserve all rights regarding the use of requests for admission to resolve potential evidentiary objections that cannot be resolved by stipulation.

Scheduling Order at 5 (§ II.a.8), ECF No. 210 (emphasis added); *see* Joint Submission of Rule 26(f) Report at 9 (§ d.1.H), ECF No. 194. Plaintiffs agreed to this procedure at the outset of discovery, presumably after considering alternatives and concluding that it struck an acceptable balance between the Parties' preferences and established an appropriate procedure for resolving disputes over the authenticity and/or admissibility of documents to be used at trial.[1]

Two extensions of the fact discovery deadline set by the initial Scheduling Order have been entered by the Court, extending the original deadline from June 3, 2022, to November 1, 2022. *See* Minute Entries, ECF Nos. 421, 571, 575. Plaintiffs did not seek to amend Section II.a.8 in connection with either of these revisions to the Scheduling Order.

---

[1] Plaintiffs' initial proposal for what became Section II.a.8 of the Scheduling Order also did not contemplate additional Rule 30(b)(6) depositions after the close of discovery to address evidentiary disputes. Plaintiffs initially proposed that "[f]or any documents for which the parties cannot agree upon a stipulation, a party may serve, without limitation, any necessary requests for admission to address any potential evidentiary objections." Declaration of Britt Miller ("Miller Decl."), Ex. 2 at 5 (§ d.2.D), submitted herewith. The final language in Section II.a.8 is similar except that it removes the reference to "unlimited" requests for admission that Plaintiffs initially proposed.

Plaintiffs' class certification motions are currently due May 15, 2023. *See* ECF No. 575. A proposed schedule for dispositive motions is currently due 30 days after the Court's ruling on class certification. Scheduling Order at 3, ECF No. 210. Trial in this matter has yet to be scheduled, but any trial likely would not occur until months after those motions have been resolved.

The Parties' document productions were substantially complete in November 2021. Miller Decl. ¶ 2. In total, more than 2,000,000 documents have been produced. *Id.* ¶ 3. Plaintiffs have noticed 72 depositions of Defendant witnesses and 16 additional non-Party depositions, almost all of which are now complete,[2] during which Plaintiffs have introduced approximately 2,000 exhibits. *Id.* ¶ 4. When introducing nearly all these exhibits, Plaintiffs asked numerous questions intended to authenticate and lay an evidentiary foundation for the document. For example, during the deposition of Cargill witness Jennifer Stone, Plaintiffs asked the following questions about the document introduced as Plaintiffs' deposition Exhibit 1346:

> Q. Okay. And this would have been an email you sent within the course of your job duty; is that correct?
> A. Yes.
> Q. It would have been created in the regular course of business?
> A. Yes.
> Q. Maintained within the regular course of business?
> A. Yes.
> Q. And you would have sent this shortly after drafting it on November 20, 2015?
> A. Yes.

Miller Decl. Ex. 1, Stone Dep. 210:14-211:2. This is one example of similar lines of questioning that Plaintiffs have pursued with numerous Party and non-party witnesses. Miller Decl. ¶ 5.

---

[2] The Parties have stipulated to completing a small number of remaining depositions after the November 1, 2022 fact discovery cut-off. *See, e.g.*, Joint Stipulation and [Proposed] Order Regarding Witnesses and Deposition After the Close of Fact Discovery, ECF No. 610.

In late September, less than two months before the close of fact discovery, Plaintiffs sought to alter the procedures in the Scheduling Order. Instead of discussing evidentiary stipulations "in connection with any pretrial order," as Section II.a.8 of the Scheduling Order contemplates, Plaintiffs demanded that the Parties exchange lists of documents that they may one day wish to use to use at trial—though no trial has been scheduled at this time—in approximately two months. Clark Decl. Ex. 1 at 3, ECF No. 608-1. If the Parties were unable to stipulate to the authenticity and admissibility of any documents on their lists, Plaintiffs demanded that the Parties then discuss taking "Rule 30(b)(6) depositions . . . related to authenticity and/or admissibility." *Id.* Defendants objected to Plaintiffs' demands as contrary to the Scheduling Order, but offered to compromise by entering into a mutual stipulation regarding the authenticity of produced documents used at depositions. *See* Clark Decl. Ex. 2, ECF No. 608-2. Plaintiffs rejected Defendants' offer and filed the instant motion to amend the Scheduling Order and to permit them to notice additional Rule 30(b)(6) depositions on "evidentiary issues of authenticity and admissibility after the close of fact discovery, to the extent the Parties are unable to resolve such issues via stipulation." Proposed Order at 1 (¶ 3), ECF No. 604-1.

**III.   ARGUMENT**

Scheduling and discovery orders provide much-needed certainty in litigation and thus "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see Flowers v. Wray*, 511 F. App'x 576, 578-79 (7th Cir. 2013) ("Motions to extend discovery deadlines in pretrial orders fall under Rule 16(b)(4), [requiring the movant to] demonstrate 'good cause' . . . ."). As this Court has explained, Rule 16 codifies the Court's "inherent authority to preserve the efficiency, and more importantly the integrity, of the judicial process." *In re Turkey*

4

*Antitrust Litig.*, No. 19 C 8318, 2022 WL 797180, at *9 (N.D. Ill. Mar. 16, 2022) (Fuentes, J.) (citing *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 652 (7th Cir. 1989)).[3]

Here, Plaintiffs have not met their burden to demonstrate good cause for altering the agreed-upon evidentiary procedures established in the Scheduling Order. Those procedures are both reasonable and sufficient, while Plaintiffs' requested modifications—which would give them an automatic right to notice some unknown number of additional Rule 30(b)(6) depositions after the close of fact discovery—are unnecessary, burdensome, and highly inefficient.

### A. Plaintiffs Agreed to the Procedures for Resolving Evidentiary Issues Set Forth in the Scheduling Order, Which Are Practical and Efficient.

Defendants agree that there should be "an efficient method to address the authenticity and admissibility of documents after the close of fact discovery and in advance of trial." Pls.' Mem. of Law ("Mem.") 7, ECF No. 607. However, the Parties have already agreed to an efficient procedure for addressing those issues in the Scheduling Order.

**First**, "in connection with any pretrial order," the Scheduling Order requires the Parties to meet and confer in good faith regarding evidentiary issues, including the authenticity of produced documents within the meaning of Federal Rules of Evidence 902 and 903, and whether documents

---

[3] *See also* Fed. R. Civ. P. 16(a) (providing that the purposes of Rule 16 include, among others, "(1) expediting disposition of the action; (2) establishing early and continuing control so that the case will not be protracted because of lack of management; [and] (3) discouraging wasteful pretrial activities . . . ."); Fed. R. Civ. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ."); Federal Judicial Center, *Manual for Complex Litigation* § 11.42 (4th ed. 2004) ("A discovery plan should facilitate the orderly and cost-effective acquisition of relevant information and materials and the prompt resolution of discovery disputes. . . .The judge should not hesitate to ask why particular discovery is needed and whether information can be obtained more efficiently and economically by other means.").

are business records within the meaning of Federal Rule of Evidence 803(6). Scheduling Order at 5 (§ II.a.8), ECF No. 210. The Scheduling Order correctly recognizes that the right time to address these issues is closer to trial (if any). Class certification and dispositive motions practice may narrow disputed issues in the case or resolve the case entirely. Moreover, as the Parties prepare their cases for trial, the universe of documents that either side may seek to admit will naturally shrink to what each Party believes is most important to proving its case. In sharp contrast with the number of documents produced in this litigation (over 2 million) or introduced by Plaintiffs at depositions (approximately 2,000), the number of exhibits introduced by either side in even large-scale antirust trials is often only a few hundred.[4] Anchoring meet-and-confer discussions around the authenticity and admissibility of potential trial exhibits—once any trial has actually been scheduled—will encourage the Parties to exercise restraint in the number of documents they choose to raise with the other side and dispute.

**Second**, if genuine disputes remain over the authenticity of documents, their status as business records, or other evidentiary issues, the Scheduling Order permits "the use of requests for admission to resolve potential evidentiary objections that cannot be resolved by stipulation." *Id.* Requests for admission are explicitly contemplated by the Federal Rules as an appropriate and efficient way to establish foundational facts for the admission of documentary evidence. *See* Fed. R. Civ. P. 36(a)(1)(B) (providing that one of the uses of requests for admission is to seek admissions regarding "the genuineness of any described documents"). Issuing requests for admission for this purpose is "exceedingly common." *In re Peregrine Fin. Grp. Customer Litig.*,

---

[4] For example, the *United States v. Apple* trial had fewer than 200 plaintiff exhibits. *See* U.S. Dept. of Justice, *U.S. v. Apple – Trial Exhibits*, https://tinyurl.com/467w6wz7. Similarly, in *Travelpass Group v. Marriot International*, the plaintiffs designated 375 trial exhibits and noted that only some may be introduced. *See Travelpass Group v. Marriot International*, 18-cv-153 (E.D. Tex.), ECF No. 714-3.

6

No. 12-cv-5546, 2015 WL 1344466, at *8 (N.D. Ill. Mar. 20, 2015). Written discovery is also particularly well-suited to address evidentiary issues pertaining to groups of documents produced from multiple custodians, because a party's written response can efficiently incorporate the knowledge and understanding of multiple witnesses.[5]

Plaintiffs vaguely complain that these procedures "will prove inefficient and ineffectual." Mem. 1. But Plaintiffs do not explain what additional, non-duplicative discovery could be obtained from Rule 30(b)(6) depositions that Plaintiffs could not get from the depositions they have already taken of the witnesses who authored or received the documents at issue, plus the *additional* written discovery contemplated by the Scheduling Order. Plaintiffs also fail to explain why they *agreed* to the approach outlined in the Scheduling Order if it is insufficient, nor can they point to any material change in circumstances that would justify adopting a different approach now. *See Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 270 (7th Cir. 1994) (denying motion to compel where the movants "agreed to [a discovery] approach . . . [b]ut then . . . failed to [follow the agreed approach], and they offered no explanation to the court"); *see also City of Joliet v. Mid-City Nat'l Bank of Chicago*, No. 05-cv-6746, 2012 WL 2514936, at *7 (N.D. Ill. June 28, 2012) (denying motion to amend agreed-upon provisions in a scheduling order).

In fact, Plaintiffs' delay in waiting nearly two years to bring this motion is by itself sufficient grounds to deny them relief. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) ("In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." (citation omitted)). If Plaintiffs believed

---

[5] *See* Federal Judicial Center, *Manual for Complex Litigation* § 11.445 (4th ed. 2004) ("In managing documents, the court should therefore also take into account the need for effective and efficient procedures to establish the foundation for admission, which can be accomplished by stipulation, requests for admission, interrogatories, or depositions (particularly Rule 31 depositions on written questions).").

7

that the procedures established in the Scheduling Order were not sufficient, they could have raised their concerns when the Order was initially entered by the Court, or in connection with either of two amendments to the Scheduling Order that have since occurred. If Plaintiffs believed that 90 Defendant witness depositions permitted by the Deposition Protocol (ECF No. 496)—including 10 Rule 30(b)(6) depositions per Defendant family—were not sufficient to address evidentiary issues, they could have sought more. They failed to do so. Plaintiffs' unexplained delay in waiting until the close of fact discovery to raise these issues shows that they have not been diligent. *Cf. Walrus Brands, LLC v. Peaches Uniforms, Inc.*, No. 12 C 4892, 2015 WL 13943495, at *2 (N.D. Ill. Mar. 25, 2015) (where a movant "offered no real explanation" for its delay despite being "on notice nearly a year ago" of the issue requiring diligence in discovery, the movant had "not established good cause to extend the discovery deadline"); *see also Sapia v. Bd. of Educ. of City of Chicago*, 329 F.R.D. 585, 586 (N.D. Ill. 2019) ("Leaving everything to the last minute while knowing about a deadline for seven months can and should have serious consequences." (citing *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996)).

### B. The Burden of Additional Rule 30(b)(6) Depositions on Evidentiary Issues After the Close of Fact Discovery is Disproportional to Any Benefit.

Even if Plaintiffs had demonstrated good cause to renegotiate the Scheduling Order—and they have not—allowing Plaintiffs to notice additional Rule 30(b)(6) depositions after the close of fact discovery would be extraordinarily burdensome and wasteful. "Depositions are themselves expensive." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Illinois Corp.*, 116 F.R.D. 78, 83 (N.D. Ill. 1987). Indeed, courts have concluded that a "need for authentication," where "no party has questioned the authenticity . . . cannot justify the heavy burden and expense of Rule 30(b)(6) depositions." *Sahu v. Union Carbide Corp.*, No. 04 CIV 8825, 2010 WL 5158645, at *4 (S.D.N.Y. Dec. 20, 2010); *accord Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir.

2002) (holding that a "failure to take advantage of this inexpensive, convenient method of discovery, *i.e.*, interrogatories," justified a denial of a motion to compel a deposition "in light of the burdens that a deposition would have placed on the company").

As noted above, Plaintiffs have already spent time with numerous Defendant witnesses exploring evidentiary issues, asking the author, recipient, or custodian of approximately 2,000 deposition exhibits about the document's authenticity and status as a business record. *See* Miller Decl. ¶ 4. It would be unduly burdensome and disproportional to require Defendants to prepare additional Rule 30(b)(6) witnesses to address the same issues after discovery closes.

Plaintiffs assert that "[n]umerous courts have entered orders granting relief like what Plaintiffs seek here," Mem. 5, but that is not so. Three of the four orders that Plaintiffs cite—from *In re Processed Eggs Antitrust Litigation* (E.D. Pa.), *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation* (N.D. Cal.), and *Reitman v. Champion Petfoods* (C.D. Cal.)—were entered based on agreed stipulations submitted by the parties. These orders are not instructive in the present case, where Plaintiffs seek to *undo* agreed-upon procedures in the Scheduling Order. Moreover, the depositions authorized by most of these orders addressed the admissibility of evidence in connection with an upcoming trial that had been scheduled and were otherwise strictly limited in duration and scope.[6]

Even Judge Gilbert's order in *In re Broiler Chicken Antitrust Litigation* did not give the plaintiffs in that case an automatic right to notice additional Rule 30(b)(6) depositions on

---

[6] *See* Clark Decl. Ex. 3 at 1-2, ECF No. 608-3 (*In re Processed Egg Products Antitrust Litigation* limited the depositions in number to "a single deposition not to exceed four hours" and "strictly" limiting the deposition to the "status of the document as a 'business record'"); Clark Decl. Ex. 4 at 3, ECF No. 608-4 (*In re DRAM Antitrust Litigation* limited the depositions to a time period "of thirty (30) days starting on January 26, 2007"); Clark Decl. Ex. 5 at 2, ECF No. 608-5 (*Reitman v. Champion Petfoods USA, Inc.* limited the depositions to "the status of the document admissibility as a business record under Rule 803(6)").

9

evidentiary issues after the close of fact discovery, as Plaintiffs seek here. *See Broilers*, Order at 7, ECF No. 3727 ("The Court will not, however, do as Plaintiffs suggest and automatically permit them to take 20 additional Rule 30(b)(6) depositions[.]"). In *Broilers*, the court encouraged the parties to resolve evidentiary disputes through stipulations to the extent possible. *See id.* at 8. If stipulations proved unworkable, then the court signaled that it would "allow limited requests for admissions and, *if necessary*, limited Rule 30(b)(6) depositions concerning the authenticity of documents or the evidentiary foundation for the admission of documents (putting aside relevance issues) at trial." *Id.* (emphasis added). Whether any additional Rule 30(b)(6) depositions will actually be permitted in *Broilers* after the close of fact discovery remains to be seen.

The primary difference between the procedure that Judge Gilbert ordered in *Broilers* and the procedure that the Parties adopted in the Scheduling Order entered in this case is that Judge Gilbert required the parties to begin meeting and conferring about evidentiary issues while fact discovery remained ongoing. *See id.* For the reasons discussed above, Defendants respectfully submit that deferring these discussions until trial has actually been scheduled—as the Scheduling Order contemplates—is the better and more efficient approach. Plaintiffs concede that it would be "highly impracticable" for the Parties to "identify and collect all documents they might want to use for trial" at this point in the case. Mem. 7. Requiring those discussions to occur now, before the Parties really know what documents they may use at trial, would lead to the Parties exchanging massive lists of documents and raising all colorable arguments to cover all possible bases, making the process unnecessarily protracted and onerous for both sides. It would also unnecessarily

distract the Parties as they otherwise brief class certification and complete expert discovery on class issues over the next several months.[7]

### C. Plaintiffs' Request for Additional Depositions Is, at Best, Premature.

If the Court does not reject Plaintiffs' position outright, their motion should at least be deferred until the Parties have completed the procedures set forth in Section II.a.8 of the Scheduling Order. The meet-and-confer process required by the Scheduling Order—once any trial has been scheduled—is likely to narrow disputes over evidentiary issues and could resolve them entirely. For any disputes that may remain, Plaintiffs have not even *tried* using the agreed-upon discovery procedure—requests for admission—to resolve them. Once a trial has been scheduled in this litigation and the procedures outlined in Section II.a.8 of the Scheduling Order have been fully exhausted, Plaintiffs can argue then that good cause exists for the Court to permit additional Rule 30(b)(6) depositions on evidentiary issues after the close of discovery notwithstanding the substantial burden that they would entail.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

---

[7] Moreover, to the extent Plaintiffs now take the position—contrary to what they agreed to in the in Scheduling Order—that all evidentiary issues must be resolved before summary judgment, their concerns are unfounded. "It is not unusual for parties to submit documentary evidence to support or oppose summary judgment . . . without fully authenticating the documents with affidavits thorough enough to overcome any and all evidentiary objections that could be raised," and "it is also not unusual for opposing lawyers to choose to overlook available evidentiary or other procedural objections." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931-32 (7th Cir. 2018).

Dated: October 28, 2022

Respectfully submitted,

*/s/ J. Douglas Baldridge*
J. Douglas Baldridge (#437678)
Lisa Jose Fales (admitted *pro hac vice*)
Danielle R. Foley (admitted *pro hac vice*)
Paul Feinstein (admitted *pro hac vice*)
Andrew T. Hernacki (admitted *pro hac vice*)
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
jdbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com
pfeinstein@venable.com
athernacki@venable.com

Kirstin B. Ives
FALKENBERG IVES, LLP
30 N. LaSalle St., Suite 4020
Chicago, Illinois 60602
Telephone: (312) 566-4803
kbi@falkenbergives.com

*Counsel for Perdue Farms, Inc. and Perdue Foods LLC*

*/s/ Jordan Matthew Tank*
Jordan Matthew Tank
Sahrish Moyeed
LIPE LYONS MURPHY NAHRSTADT & PONTIKIS
230 West Monroe Street, Suite 2260
Chicago, Illinois 60606
Telephone: (312) 702-0586
jmt@lipelyons.com
sm@lipelyons.com

Tiffany Rider Rohrbaugh
Rachel J. Adcox
Lindsey Strang Aberg
AXINN, VELTROP & HARKRIDER LLP
950 F Street, NW
Washington, DC 20004
Telephone: (202) 469-3550

*/s/ William H. Stallings*
Carmine R. Zarlenga
William H. Stallings
Oral Pottinger
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3000
czarlenga@mayerbrown.com
wstallings@mayerbrown.com
opottinger@mayerbrown.com

*Counsel for Foster Farms, LLC, and Foster Poultry Farms, a California Corporation*

*/s/ Jennifer A.L. Battle*
Daniel D. Birk
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Telephone: (312) 660-7600
mmcluggage@eimerstahl.com
dbirk@eimerstahl.com

Joshua Goldberg
CARPENTER, LIPPS & LELAND LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
Telephone: (312) 777-4825
goldberg@carpenterlipps.com

Jennifer A.L. Battle
David J. Barthel
Theodore M. Munsell
Jill Rogers Spiker
Joel E. Sechler
CARPENTER, LIPPS & LELAND LLP
280 North High Street, Suite 1300
Columbus, Ohio 43215
Telephone: (614) 365-4100
battle@carpenterlipps.com
barthel@carpenterlipps.com
munsell@carpenterlipps.com
spiker@carpenterlipps.com

trider@axinn.com
radcox@axinn.com
lstrang@axinn.com

*Counsel for The Hillshire Brands Company, Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods*

*/s/ Marc E. Rosenthal*
Marc E. Rosenthal
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3530
Mrosenthal@proskauer.com

Christopher E. Ondeck
Colin R. Kass
Stephen R. Chuk
Rucha A. Desai
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW, Suite 600
Washington, DC 20004
Telephone: (202) 416-6800
Condeck@proskauer.com
CKass@proskauer.com
SChuk@proskauer.com
RDesai@proskauer.com

*Counsel for Butterball LLC*

*/s/ Colby Anne Kingsbury*
Colby Anne Kingsbury
FAEGRE DRINKER BIDDLE & REATH LLP
311 South Wacker Drive, #4300
Chicago, IL 60606
(312) 212-6500
Colby.Kingsbury@faegredrinker.com

Richard A. Duncan
Craig S. Coleman
Emily E. Chow
Isaac B. Hall
FAEGRE DRINKER BIDDLE & REATH LLP
90 S. Seventh Street, Ste. 2200
Minneapolis, MN 55402
(612) 766-7000

sechler@carpenterlipps.com

*Counsel for Cooper Farms, Inc.*

*/s/ Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
bmiller@mayerbrown.com
mrpovance@mayerbrown.com

Sybil Dunlop
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-8346
sdunlop@greeneespel.com

*Counsel for Cargill, Incorporated and Cargill Meat Solutions Corporation*

*/s/ Michael K. Sciaccotta*
Michael K. Sciaccotta
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
michael.sciaccotta@dentons.com

Gaspare J. Bono
Leslie A. Barry
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
Telephone: (202) 496-7500
gap.bono@dentons.com
leslie.barry@dentons.com

*Counsel for Farbest Foods, Inc.*

*/s/ Gregory G. Wrobel*
Gregory G. Wrobel, Bar No. 03122900
VEDDER PRICE P.C.
222 North LaSalle Street

13

Richard.Duncan@faegredrinker.com
Craig.Coleman@faegredrinker.com
Emily.Chow@faegredrinker.com
Isaac.Hall@faegredrinker.com

Christopher A. Kreuder
Robert Gallup
Stephanie Koltookian
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
(515) 248-9000
Christopher.Kreuder@faegredrinker.com
Robert.Gallup@faegredrinker.com
Stephanie.Koltookian@faegredrinker.com

Jonathan H. Todt
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
(202) 230-5000
Jonathan.Todt@faegredrinker.com

*Counsel for Hormel Foods Corporation and Jennie-O Turkey Store, Inc.*

*/s/ William S. Cherry III*
Michael T. Medford, N.C. State Bar # 7227 (*pro hac vice*)
William S. Cherry III, N.C. State Bar # 33860 (*pro hac vice*)
J. Gray Wilson, N.C. State Bar # 46509 (*pro hac vice*)
MANNING, FULTON & SKINNER, P.A.
3605 Glenwood Avenue - Suite 500 (27612)
Post Office Box 20389
Raleigh, North Carolina 27619
Telephone: (919) 787-8880
Facsimile: (919) 325-4604 (Cherry)
E-mail:  medford@manningfulton.com
cherry@manningfulton.com
wilson@manningfulton.com

Amy R. Paulus
Daniel P. Johnston
Davy H. Raistrick
Clausen Miller P.C.

Chicago, Illinois 60601
Telephone: (312) 609-7500
gwrobel@vedderprice.com

Henry W. Jones, Jr. (pro hac vice)
Jordan Price Wall Gray
Jones & CARLTON, PLLC
1951 Clark Avenue
Raleigh, NC 27605
Telephone: (919) 828-2501
hjones@jordanprice.com

*Counsel for House of Raeford Farms, Inc.*

*/s/ Jacob D. Koering*
Jacob D. Koering
MILLER, CANFIELD, PADDOCK & STONE, PLC
225 West Washington Avenue, Suite 2600
Chicago, IL  60606
Telephone: (312) 460-4272
koering@millercanfield.com

William L. Monts III (*pro hac vice pending*)
Justin W. Bernick (*pro hac vice pending*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC  20004-1109
Telephone: (202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Agri Stats, Inc.*

14

10 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 855-1010
Facsimile: (312) 606-7777
E-Mail:  apaulus@clausen.com
djohnston@clausen.com
draistrick@clausen.com

*Counsel for Defendants Prestage Farms of South Carolina, LLC, Prestage Farms, Inc. and Prestage Foods, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on October 28, 2022, a true and correct copy of the foregoing was electronically filed by CM/ECF, which caused notice to be sent to all counsel of record.

By: /s/ *Britt M. Miller*
      Britt M. Miller