## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| *IN RE TURKEY ANTITRUST LITIGATION* | No. 1:19-cv-08318 |
| This Document Relates To: | |
| COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTION (1:20-cv-02295) | Hon. Virginia M. Kendall Hon. Gabriel A. Fuentes |

### DEFENDANTS PRESTAGE FARMS, INC., PRESTAGE FOODS, INC., AND PRESTAGE FARMS OF SOUTH CAROLINA, LLC'S ANSWER TO FOURTH AMENDED CLASS ACTION COMPLAINT

Pursuant to Fed. R. Civ. P. 8(b)(3), Defendants Prestage Farms, Inc. ("Prestage Farms"), Prestage Foods, Inc. ("Prestage Foods"), and Prestage Farms of South Carolina, LLC ("Prestage Farms of SC") (collectively the "Prestage Entities"), by and through undersigned counsel, "generally deny" all allegations of the Complaint "except those specifically admitted," as set forth below.

Plaintiffs bring this action on behalf of themselves individually and on behalf of a plaintiff class consisting of all entities in certain states that indirectly purchased fresh or frozen, uncooked turkey breast, ground turkey, or whole bird turkey products sold by Defendants in the United States for their own use in commercial food preparation beginning at least as early as January 1, 2010 through December 31, 2016 (Class Period).[1] Plaintiffs bring this action for damages, injunctive relief, and other relief pursuant to various federal and state antitrust laws and state unfair competition laws and unjust enrichment laws. Plaintiffs demand a trial by jury.

---

[1] For purposes of this complaint, Turkey breast products excludes: (1) turkey breasts used to make ground turkey, (2) organic turkey breast products, (3) NAE turkey breast products, and (4) cooked or RTE turkey breast products. Ground turkey products excludes: (1) ground turkey products made from turkey breasts, (2) ground turkey products made from turkey wings, (3) burgers, sausages, and patties, (4) organic ground turkey products, (5) NAE ground turkey products, and (6) cooked or RTE ground turkey products. Whole bird turkey products excludes: (1) organic turkey whole bird products, (2) NAE turkey whole bird products, and (3) cooked or RTE turkey whole bird products.

## I.    NATURE OF ACTION

1.    The turkey integrator defendants are the leading suppliers of turkey in an industry with approximately $5 billion in annual commerce. The turkey industry is highly concentrated, with a small number of large producers in the United States controlling supply. Defendants and their co-conspirators collectively control approximately 80 percent of the wholesale turkey market in the United States. The turkey integrator defendants are Butterball LLC (Butterball); Cargill Inc. and Cargill Meat Solutions Corporation, (together and separately, Cargill); Cooper Farms, Inc. (Cooper Farms); Farbest Foods, Inc., (Farbest); Foster Farms LLC and Foster Poultry Farms (together and separately, Foster Farms); Hormel Foods Corporation and Jennie-O Turkey Store, Inc. (together and separately, Hormel); House of Raeford Farms, Inc., (House of Raeford); Prestage Farms, Inc., Prestage Foods, Inc., Prestage Farms of South Carolina, LLC (together and separately, Prestage); Perdue Farms, Inc. and Perdue Foods LLC (together and separately, Perdue); Tyson Foods, Inc., The Hillshire Brands Company, Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. (together and separately, Tyson).

**Answer:**    In response to the allegations in Paragraph 1, Prestage Foods admits only that it produces some, but not all, of the turkey products included by Indirect Purchaser Plaintiffs in Footnote 1 of the Complaint.  Prestage Farms and Prestage Farms of SC deny they are suppliers of "turkey" as that term is defined by Indirect Purchaser Plaintiffs in Footnote 1 of the Complaint. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1, and the same are therefore denied.

2.    Defendant Agri Stats is a company that provides secretive information exchange services to companies in a variety of agricultural sectors, including pork, chicken, and turkey.

**Answer:**    In response to the allegations in Paragraph 2, the Prestage Entities admit only that Agri Stats provided certain benchmarking services to them and other named Defendants, and upon information and belief provided certain benchmarking services in other agricultural sectors, including pork and turkey.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2, and the same are therefore denied.

3.    The turkey integrator defendants each entered into an agreement from at least 2010 to December 31, 2016, to exchange sensitive information through Agri Stats regarding their production and sales of turkey.

**Answer:**         The Prestage Entities deny the allegations in Paragraph 3.

4.        Agri Stats reports are far different from lawful industry reports. Agri Stats gathers detailed financial and production data from each of the turkey integrators, standardizes this information, and produces customized reports and graphs for the co-conspirators. On a monthly basis, Agri Stats provides the turkey integrators with current and forward-looking sensitive information (such as profits, costs, prices and slaughter information).

**Answer:**         The Prestage Entities admit that they provided certain information to Agri

Stats for inclusion in turkey Agri Stats reports ████████████████████, and that any

turkey reports generated by Agri Stats speak for themselves.  The Prestage Entities deny the

allegations of Paragraph 4 except as expressly admitted.

5.        The United States Supreme Court has long recognized that "exchanges of current price information, of course, have the greatest potential for generating anticompetitive effects."[2] Agri Stats' sales reports prove the truth of that maxim. Agri Stats prepared monthly reports for defendants regarding their sales of turkey that identified, on a specific product by product level, the prices and returns that each defendant was obtaining on their sales of turkey. These reports, unavailable to anybody besides Agri Stats subscribers, allowed the integrator defendants to easily identify potential opportunities where their prices for turkey products were significantly lower than their competitors.

**Answer:**         To the extent Paragraph 5 consists of arguments of counsel or states legal

conclusions, no response is required and to the extent a response is required any allegation that the

Prestage Entities acted in violation of applicable law is denied.  The Prestage Entities admit that,

through their subscription to Agri Stats' turkey reports, they received periodic turkey reports from

Agri Stats.  The Prestage Entities deny the allegations of Paragraph 5 except as expressly admitted

and specifically deny that they participated in any alleged unlawful activity.

6.        Turkey is the relevant product market and the geographic market is the United States. Defendants collectively possess market power in the market for turkey. Defendants and co-conspirators collectively possessed approximately 80 percent of the overall market share for turkeys during the Class Period.

---

[2] *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 (1978).

**Answer:** The allegations of Paragraph 6 make legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent that a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

7. Blair Snyder, a senior executive at Agri Stats, publicly stated in 2009 that "about 95% of the turkey industry [is] participating" in Agri Stats, and that for "turkey participants, pretty much it's a list of who's who in the turkey business." This is a comparable portion to the percentage of broiler chicken industry participating in Agri Stats reports, with Mr. Snyder stating that "we've got high 90 percentage of both broilers and turkeys."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 as they pertain to statements made by Agri Stats, and therefore deny the same.

8. Each one of the defendants and co-conspirators entered into an agreement to exchange information through Agri Stats. Each defendant's agreement to exchange information regarding turkey production is shown in the below ███████████████████████ that lists the participants in Agri Stats' turkey reports.



**Answer:**        The Prestage Entities deny the allegations of Paragraph 8.

9.    This ▮▮▮▮▮▮▮▮ slide shows that each of the defendant integrator and Co-Conspirator Integrators entered into an agreement to exchange information regarding their turkey operations through Agri Stats during the conspiracy period.



**Answer:**        The Prestage Entities deny the allegations of Paragraph 9.  The Prestage Entities further respond to the allegations in Paragraph 9 by stating that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ no such conspiracy exists.

10.    The information exchange by the defendant integrators through Agri Stats is exactly the type of information exchange that the Supreme Court has recognized is likely to have anticompetitive effects under a rule of reason analysis. First, the data is current and forward-looking – which courts consistently hold has "the greatest potential for generating anticompetitive effects."[3] Second, information contained in Agri Stats reports is specific to the turkey producers, including information on profits, prices, costs and production levels. Third, none of the Agri Stats information was publicly available. Agri Stats is a subscription service, which required the defendant integrators to pay hefty fees over the Class Period – far in excess of any other pricing and production indices and to agree to volunteer their own data. "Public dissemination is a primary way for data exchange to realize its pro-competitive potential."[4] Agri Stats ensured that its detailed, sensitive business information was available only to the co-conspirators and not to any buyers in the market. Thus, for example, buyers on the market could not use Agri Stats data in Agri Stats sales reports to negotiate lower prices; instead, only defendants could use it as a way to identify opportunities to raise their prices.

**Answer:**        The Prestage Entities deny the allegations in Paragraph 10.

11.    Indeed, Agri Stats specifically marketed itself to potential participants as a ▮▮▮▮▮

---

[3] *Todd v. Exxon Corp.*, 275 F.3d 191, 2011 (2d Cir. 2001) (Sotomayor, J.) (quoting *United States v. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978)).
[4] *Id.* at 213.

████████████████████████████████████████████████████████

    **Answer:**       The Prestage Entities deny the allegations in Paragraph 11.

    12.     Industry participants relied on Agri Stats reports in their analysis of their business operations. For example, Hormel, at its 2011 Investor Day, stated in its presentation that "████████████████████████████████████ ████ " Hormel also touted that "█████████████████████████████████████████████ ████████████████."

    **Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 pertaining to ██████████████████ Hormel, and the same are therefore denied.

    13.     Confidential Witness 1 (CW1) is a former sales executive at Butterball involved in the pricing of turkeys. CW1 was employed at Butterball during the entire Class Period. CW1 stated that Butterball relied on the monthly reports issued by Agri Stats: "The company used the information to evaluate — by item, item group, price, distribution — where we stood against other turkey companies." CW1 stated that he and other sales personnel looked at Agri Stats data to see how Butterball ranked against peers in the turkey industry. CW1 stated that he personally looked at the Agri Stats data to assess costs and returns. CW1 stated that costs were an important factor in determining how Butterball set its prices.

    **Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13, and the same are therefore denied.

    14.     Confidential Witness 2 (CW2) is a former accountant at Cooper Farms. CW2 stated that Cooper Farms received monthly reports from Agri Stats. In addition, Agri Stats representatives met with Cooper Farms executives every six months. CW2 stated that Cooper Farms submitted cost information to Agri Stats every month. CW2 explained that Agri Stats reports grouped data into various types of turkey products, including deli meat and smoked meat.

    **Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14, and the same are therefore denied.

    15.     CW2 stated that Agri Stats representatives regularly met with the Cooper Leadership Management Group, which included top management and executives from Cooper Farms. CW2 stated that "the upper group received advice" from Agri Stats. CW2 stated that the advice from Agri Stats helped Cooper Farms improve its returns per pound.

**Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15, and the same are therefore denied.

16.     Agri Stats reports also contained detailed information on industry-wide supply levels. For example, a job description of an Agri Stats employee stated that they analyzed Turkey "███████████████████████" as well as Turkey "████████████."

**Answer:**       In response to the allegations in Paragraph 16, ████████████ ████████████████████████████████████████████████████ The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16, and the same are therefore denied.

17.     Based on publicly available information filed in a February 7, 2018, complaint in the *Broiler Chicken Antitrust Litigation*,[5] Agri Stats data on growout flocks contained information such as the number of broilers placed, chick mortality by week and overall percentage, chick cost, days between flocks provided to contract farmers (aka, "down time"), feed conversion rate (pounds of feed per pound of broiler), and average daily weight. On information and belief, the growout data that Agri Stats compiled for the turkey industry contained similar levels of data. This type of data allowed defendants to monitor industry-wide supply levels.

**Answer:**       In response to the allegations in Paragraph 17, the Prestage Entities state that they are not involved in the broiler-chicken industry, nor are they a defendant in the *In re Broiler Chicken Antitrust Litigation*. To the extent that the allegations quote from or reference a document, that document speaks for itself. The Prestage Entities specifically deny any implication that they participated in the alleged conspiracy.

18.     Although Agri Stats reports are nominally anonymous, defendant integrators were often able to deanonymize the reports to identify the data of specific companies based on their industry knowledge. CW2 stated that he could determine the identity of companies in Agri Stats reports because "you could usually figure out who was who because they have a certain cooked meat, or if they were browning and running it through an oven." CW2 further stated that "we could sit there and discuss it, because a lot of us knew what the other plants in the big areas, what they did." For example, CW2 stated that one competitor company had five separate facilities included in the Agri Stats reports, and that therefore, it was easy to determine the identity of that company.

---

[5] *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.) (ECF No. 710)

**Answer:**    The Prestage Entities deny the allegations of Paragraph 18 as they may relate to the Prestage Entities.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 as to any other Defendants or alleged Co-Conspirators, and the same are therefore denied.

19.    Confidential Witness 3 (CW3) is a former employee of Cargill during the conspiracy period. CW3 stated that Cargill received monthly reports from Agri Stats on turkey. CW3 stated that the monthly Agri Stats turkey reports went directly to Cargill finance executives.

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, and the same are therefore denied.

20.    Throughout the conspiracy period, defendant integrators were able to exercise a remarkable level of industry-wide restraint in keeping the growth of turkey supply in check, causing turkey prices to rise. Thus, Agri Stats had the anticompetitive effect of allowing defendants to engage in collusion to restrain the supply of turkey by facilitating information exchange about supply levels throughout the industry. The industry-wide cuts in turkey production during the conspiracy period are shown in the following chart:



**Answer:**    The Prestage Entities deny the allegations in Paragraph 20.

21.     In a competitive market, production generally matches demand. More demand will lead to more supply. Conversely, a drop in production caused by falling demand should correspond to falling prices. However, in the turkey market during the conspiracy period, production, measured through USDA data, remained artificially restrained even as demand, captured by higher per capita expenditures on turkey, rose significantly. These observed price and output dynamics, shown in the below analysis performed by experts, indicate that it was not falling demand that caused a decline in supply during the conspiracy period.

**Figure 2: Indexed Per Capita Expenditure v. Production (1999-2016)**



**Answer:**     The allegations of Paragraph 21 make legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent that a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

22.     In addition to their participation in Agri Stats, defendant integrators had frequent opportunities to communicate, in conjunction with formal meetings of various trade associations. In particular, the ████████████████████ each year held regular meetings, including the ██ ████████████████ and the ████████████ , which were widely attended by the defendant integrators. CW3 stated that senior Cargill executives, including Cargill's CEO and CFO, attended ████████████████ meetings. For example, CW2 stated that Cooper Farms leadership were involved in the ████████████████████ , for example Cooper Farms COO Gary Cooper ████████████████ .

**Answer:**　　　In response to the allegations in Paragraph 22, the Prestage Entities admit only that ███████████████████████████████████ ██████████████████████. The Prestage Entities specifically deny any implication that they participated in the alleged conspiracy. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22, and the same are therefore denied.

23.　　　Collectively, Hormel, Cargill, and Butterball control approximately 50 percent of the turkey market. Hormel is the only publicly traded company among these three. In its earnings calls during the conspiracy period, Hormel repeatedly discussed the industry-wide success in executing production cuts and maintaining industry-wide production discipline during the Class Period.

**Answer:**　　　The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23, and the same are therefore denied.

24.　　　On June 2, 2009, Hormel emphasized that it was



**Answer:**　　　The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24, and the same are therefore denied.

25. On August 20, 2010, Hormel stated, " ████████████████████████████████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, and the same are therefore denied.

26. On May 25, 2011, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████s."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26, and the same are therefore denied.

27. On August 25, 2011, Hormel stated ████████████████████████████████████████████████████████████." This statement is notable because the chicken industry is currently the subject of multiple civil lawsuits as well as a DOJ investigation of potential antitrust violations during this period of time.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27, and the same are therefore denied.

28. Furthermore, the turkey market has all of the characteristics of a market where information exchange is likely to have anticompetitive effects. Turkey is a fungible product, the market for turkey has price-based competition, the demand for turkey is relatively inelastic, and the turkey market features a trend towards price uniformity.

**Answer:** The allegations of Paragraph 28 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

29. The information exchange through Agri Stats did not have the kind of characteristics that would produce procompetitive effects sufficient to outweigh the anticompetitive harms. The information exchange involved current and forward-looking data. Agri Stats regularly prepared monthly reports that contained data that was less than six weeks old. Agri Stats also only allowed companies to access the data if they themselves shared the data, thus

ensuring that only defendants and other similarly situated turkey integrators who received the Agri Stats reports were able to use the data.

**Answer:** The Prestage Entities specifically deny any implication that they participated in the alleged conspiracy and accordingly deny the allegations of Paragraph 29.

30. During the conspiracy period, the price of turkey spiked dramatically, driven by the anticompetitive effects of the information exchange through Agri Stats regarding turkey production that helped facilitate defendants' restraint over the growth in the supply of turkey.

**Figure 3: Average Yearly Wholesale Turkey Prices: Hens (2000-2019)**



**Answer:** The Prestage Entities deny the allegations of Paragraph 30.

31. The information exchange through Agri Stats in fact had anticompetitive effects on the market. Prior to the conspiracy, turkey prices closely tracked the underlying cost of feed, which is the primary input cost in the production of turkey. Beginning in 2009-2010, prices of turkey spiked to an unprecedented level, showing the anticompetitive effects of defendants' information exchange through Agri Stats. Remarkably, as demonstrated in the analysis performed by experts, shown in the below chart, prices of turkey quickly returned to match underlying feed costs after litigation was filed in late 2016 in the broiler industry that centered on the anticompetitive use of Agri Stats. Defendants clearly changed their behavior after the commencement of the Broilers litigation, as Tyson dismissed their CEO, Donnie Smith, in late 2016, shortly after the first civil lawsuits were filed.

**Figure 4: Regression Showing Relationship between Turkey Hen Prices/Lb. and Feed Prices/Lb. (2000-2019)**

- 12 -



**Answer:** The Prestage Entities deny the allegations of Paragraph 31.

32. Feed accounts for approximately 60-70% of the cost of raising a turkey. Experts constructed a regression model based on the underlying feed cost that models what the "but for" price of turkey would have been if the historical relationship between feed and turkey costs had continued during the conspiracy period. The model demonstrates that the anticompetitive information exchange of data regarding turkey production through Agri Stats caused anticompetitive effects in the market for turkey.

**Figure 5: Regression Model Showing Relationship Between Price of Turkey Hens and Price of Turkey Feed**



**Answer:**     The Prestage Entities deny the allegations of Paragraph 32.

33.     As a result of defendants' unlawful conduct, plaintiffs and the Classes paid artificially inflated prices for turkey during the Class Period. Such prices exceeded the amount they would have paid if the price for turkey had been determined by a competitive market. Thus, plaintiffs and class members were injured by defendants' agreement to exchange information through Agri Stats regarding the turkey market.

**Answer:**     The Prestage Entities deny the allegations of Paragraph 33.

## II.     JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction over the claims asserted in this litigation under 28 U.S.C. § 1332 because the amount in controversy for each of the Classes exceeds $5,000,000, there are more than 100 members in each of the Classes, and there are members of each of the Classes who are citizens of different states than Defendants. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because plaintiffs are bringing a claim for injunctive relief under federal law.

**Answer:**     Paragraph 34 contains only conclusions of law and characterizations of the

Complaint to which no response is required.  To the extent a response is required, the Prestage

Entities do not contest this Court's subject matter jurisdiction over this action at this time; the

Prestage Entities deny that Plaintiffs have pleaded a valid claim under the statutes cited and deny

- 14 -

that Plaintiffs are entitled to injunctive relief. The Prestage Entities deny the allegations of Paragraph 34 except as otherwise expressly stated.

35. Venue is appropriate in this District under 28 U.S.C. § 1391(b), (c) and (d) because Hillshire Brands is headquartered in the District, and one or more defendants transacted business in this District, is licensed to do business or is doing business in this District, and because a substantial portion of the affected interstate commerce described herein was carried out in this District.

**Answer:** Paragraph 35 contains conclusions of law and characterizations of the Complaint to which no response is required. To the extent a response is required, the Prestage Entities do not contest venue in this District at this time. The Prestage Entities deny the allegations of Paragraph 35 except as otherwise expressly stated.

36. This Court has personal jurisdiction over each defendant because, inter alia, each defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of turkey throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and/or (d) engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including in this District.

**Answer:** Paragraph 36 contains only conclusions of law to which no response is required. To the extent a response is required, the Prestage Entities do not contest personal jurisdiction in this action at this time. The Prestage Entities deny the allegations of Paragraph 36 except as otherwise expressly stated.

37. The activities of the defendants and all co-conspirators, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on, the foreign and interstate commerce of the United States.

**Answer:** The Prestage Entities deny the allegations in Paragraph 37.

### III.   PARTIES

**A.   Plaintiffs**

38.    Plaintiff Sandee's Bakery d/b/a Sandee's Catering Bakery & Deli is a bakery and deli located in Jamestown, New York. During the Class Period, Plaintiff purchased turkey in New York, once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of turkey. The turkey purchased by Plaintiff was impacted by the conduct of one or more of the Defendants, constituting an antitrust violation as alleged herein, and plaintiff suffered monetary loss as a result of the antitrust violations alleged herein.

**Answer:**      In response to the allegations in Paragraph 38, the Prestage Entities

specifically deny that Plaintiff Sandee's Bakery d/b/a Sandee's Catering Bakery & Deli suffered

any antitrust injury.  The Prestage Entities lack knowledge or information sufficient to form a belief

as to the truth of the remaining allegations in Paragraph 38, and the same are therefore denied.

39.    Plaintiff Gnemi, LLC d/b/a Logan Farms is a restaurant and deli located in Jackson, Mississippi. Gnemi, LLC has two members, both who are residents of Mississippi. During the Class Period, Plaintiff purchased turkey in Mississippi, once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of turkey. The turkey purchased by Plaintiff was impacted by the conduct of one or more of the Defendants, constituting an antitrust violation as alleged herein, and Plaintiff suffered monetary loss as a result of the antitrust violations alleged herein.

**Answer:**      In response to the allegations in Paragraph 39, the Prestage Entities

specifically deny that Plaintiff Gnemi, LLC d/b/a Logan Farms suffered any antitrust injury.  The

Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 39, and the same are therefore denied.

40.    Plaintiff Maquoketa Care Center is a senior living facility located in Maquoketa, Iowa. During the Class Period, Plaintiff purchased turkey in Iowa, once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of turkey. The turkey purchased by Plaintiff was impacted by the conduct of one or more of the Defendants, constituting an antitrust violation as alleged herein, and Plaintiff suffered monetary loss as a result of the antitrust violations alleged herein.

**Answer:**      In response to the allegations in Paragraph 40, the Prestage Entities

specifically deny that Plaintiff Maquoketa Care Center suffered any antitrust injury.  The Prestage

Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 40, and the same are therefore denied.

41.     Plaintiff Thyme Cafe & Market is a café and market located in Santa Monica, California. During the Class Period, Plaintiff purchased turkey in California, once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of turkey. The turkey purchased by Plaintiff was impacted by the conduct of one or more of the Defendants, constituting an antitrust violation as alleged herein, and Plaintiff suffered monetary loss as a result of the antitrust violations alleged herein.

**Answer:**     In response to the allegations in Paragraph 41, the Prestage Entities specifically deny that Plaintiff Thyme Café & Market suffered any antitrust injury.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 41, and the same are therefore denied.

42.     Plaintiff Bernie's LLC is a restaurant located in Chicago, Illinois. During the Class Period, Plaintiff purchased turkey in Illinois, once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of turkey. The turkey purchased by Plaintiff was impacted by the conduct of one or more of the Defendants, constituting an antitrust violation as alleged herein, and Plaintiff suffered monetary loss as a result of the antitrust violations alleged herein.

**Answer:**     In response to the allegations in Paragraph 42, the Prestage Entities specifically deny that Plaintiff Bernie's LLC suffered any antitrust injury.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 42, and the same are therefore denied.

43.     Plaintiff Liberty Holding Company d/b/a Liberty Tap Room and Grill owns and operates restaurants in North Carolina and South Carolina including restaurants which operated in Winston Salem, North Carolina and Mount Pleasant, South Carolina. During the Class Period, Plaintiff purchased turkey in North Carolina and South Carolina, once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of turkey. The turkey purchased by Plaintiff was impacted by the conduct of one or more of the Defendants, constituting an antitrust violation as alleged herein, and Plaintiff suffered monetary loss as a result of the antitrust violations alleged herein.

**Answer:**     In response to the allegations in Paragraph 43, the Prestage Entities specifically deny that Plaintiff Liberty Holding Company d/b/a Liberty Tap Room and Grill

suffered any antitrust injury. Prestage lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 43, and the same are therefore denied.

44.     Plaintiff Music Matters, LLC d/b/a Stickyz Rock 'N' Roll Chicken Shack is a restaurant in Little Rock, Arkansas. During the Class Period, Plaintiff purchased turkey in Arkansas, once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of turkey. The turkey purchased by Plaintiff was impacted by the conduct of one or more of the Defendants, constituting an antitrust violation as alleged herein, and Plaintiff suffered monetary loss as a result of the antitrust violations alleged herein.

**Answer:**     In response to the allegations in Paragraph 44, the Prestage Entities specifically deny that Plaintiff Music Matters, LLC d/b/a Stickyz Rock 'N' Roll Chicken Shack suffered any antitrust injury. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 44, and the same are therefore denied.

45.     Plaintiff Martin's BBQ, LLC is a middle Tennessee restaurant chain headquartered in Nashville, Tennessee. During the Class Period, Plaintiff purchased turkey in Tennessee, once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of turkey. The turkey purchased by Plaintiff was impacted by the conduct of one or more of the Defendants, constituting an antitrust violation as alleged herein, and Plaintiff suffered monetary loss as a result of the antitrust violations alleged herein.

**Answer:**     In response to the allegations in Paragraph 45, the Prestage Entities specifically deny that Plaintiff Martin's BBQ, LLC suffered any antitrust injury. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 45, and the same are therefore denied.

46.     Plaintiff Social Kitchen is a restaurant located in Birmingham, Michigan. During the Class Period, Plaintiff purchased turkey in Michigan, once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of turkey. The turkey purchased by Plaintiff was impacted by the conduct of one or more of the Defendants, constituting an antitrust violation as alleged herein, and Plaintiff suffered monetary loss as a result of the antitrust violations alleged herein.

**Answer:** In response to the allegations in Paragraph 46, the Prestage Entities specifically deny that Plaintiff Social Kitchen suffered any antitrust injury. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 46, and the same are therefore denied.

## B. Defendants

47. Agri Stats, Inc. is an Indiana corporation located in Fort Wayne, Indiana. Throughout the Class Period, Agri Stats acted as a co-conspirator of the turkey integrator defendants by facilitating the exchange of confidential, proprietary, and competitively sensitive data among defendants and their co-conspirators.

**Answer:** The Prestage Entities specifically deny that they participated in any alleged conspiracy because no such conspiracy exists. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47, and the same are therefore denied.

48. Butterball, LLC is a privately held North Carolina corporation engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Butterball and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48, and the same are therefore denied.

49. Cargill, Inc. is a privately held Delaware corporation headquartered in Minnetonka, Minnesota. During the Class Period, Cargill and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49, and the same are therefore denied.

50. Cargill Meat Solutions Corporation is a Delaware corporation that operates as a subsidiary of Cargill, Incorporated. During the Class Period, Cargill Meat Solutions and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate

commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50, and the same are therefore denied.

51. Defendants Cargill, Inc. and Cargill Meat Solutions are collectively referred to as "Cargill."

**Answer:** Paragraph 51 fails to assert any allegations, and thus no response is required.

52. Cooper Farms, Inc. is a privately held Ohio corporation engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Cooper Farms and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52, and the same are therefore denied.

53. Farbest Foods, Inc. is a privately held Indiana corporation engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Farbest and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53, and the same are therefore denied.

54. Foster Farms LLC is a privately held California corporation headquartered in Modesto, California. During the Class Period, Foster Farms LLC and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54, and the same are therefore denied.

55. Foster Poultry Farms is a privately held California corporation headquartered in Livingston, California. Foster Poultry Farms is a related entity of Foster Farms LLC. During the Class Period, Foster Poultry Farms and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates was engaged in the processing, distribution, sale, pricing, and/or

marketing of turkey, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

      **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55, and the same are therefore denied.

      56.     Defendants Foster Farms LLC and Foster Poultry Farms are collectively referred to as "Foster Farms."

      **Answer:**      Paragraph 56 fails to assert any allegations, and thus no response is required.

      57.     Hormel Foods Corporation is a Delaware corporation engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Hormel Foods Corporation and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

      **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and the same are therefore denied.

      58.     Jennie-O Turkey Store, Inc. ("Jennie-O") is a Minnesota corporation headquartered in Austin, Minnesota. Jennie-O Turkey Store, Inc. is a related entity of Hormel Foods Corporation. During the Class Period, Jennie-O Turkey Store, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates was engaged in the processing, distribution, sale, pricing, and/or marketing of turkey, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

      **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58, and the same are therefore denied.

      59.     House of Raeford Farms, Inc. is a privately held North Carolina corporation headquartered in Rose Hill, North Carolina. During the Class Period, House of Raeford operated in part through a division referred to as "Columbia Farms," which is a group of broiler facilities and operations originally named Columbia Farms, Inc. and Columbia Farms of Georgia, Inc. when purchased by House of Raeford in 1998. During the Class Period, House of Raeford Farms, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

      **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59, and the same are therefore denied.

60. Perdue Farms, Inc. is a privately held Maryland corporation headquartered in Salisbury, Maryland. During the Class Period, Perdue Farms, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60, and the same are therefore denied.

61. Perdue Foods LLC is a privately held Maryland limited liability company headquartered in Salisbury, Maryland. Perdue Foods LLC is a subsidiary of Perdue Farms, Inc. During the Class Period, Perdue Foods LLC and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61, and the same are therefore denied.

62. Defendants Perdue Farms, Inc. and Perdue Foods LLC are collectively referred to as "Perdue."

**Answer:** Paragraph 62 fails to assert any allegations, and thus no response is required.

63. Prestage Farms, Inc. is a North Carolina corporation headquartered in Clinton, North Carolina and engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Prestage Farms and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities admit that Prestage Farms (i) is a North Carolina Corporation with a principal place of business in Clinton, North Carolina, (ii) is engaged in the business of hatching and growing live turkeys, (iii) provides live turkeys to Prestage Foods and (iv) at times provides live market turkeys to Prestage Farms of SC. The Prestage Entities deny the allegations of Paragraph 63 except as expressly admitted.

64. Prestage Foods, Inc. is a North Carolina corporation headquartered in St. Paul, North Carolina and engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Prestage Foods and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**ANSWER:** The Prestage Entities admit that Prestage Foods (i) is a North Carolina corporation with a principal place of business in St. Pauls, North Carolina and (ii) is in the business of processing and marketing turkeys for sale to other third parties. The Prestage Entities deny the allegations of Paragraph 64 except as expressly admitted.

65. Prestage Farms of South Carolina, LLC is a South Carolina corporation headquartered in Camden, South Carolina and engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Prestage Farms of South Carolina, LLC and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities admit that Prestage Farms of SC (i) is a South Carolina limited liability company with a principal place of business in Camden, South Carolina and (ii) was at all relevant times solely in the business of growing live turkeys for sale to Kraft. The Prestage Entities deny the allegations of Paragraph 65 except as expressly admitted.

66. Defendants Prestage Farms, Inc., Prestage Foods, Inc., Prestage Farms of South Carolina, LLC are collectively referred to as "Prestage."

**Answer:** Paragraph 66 fails to assert any allegations, and thus no response is required.

67. Tyson Foods, Inc. is a publicly traded Delaware corporation headquartered in Springdale, Arkansas. It wholly owns and controls two subsidiaries, Tyson Prepared Foods, Inc. and Tyson Fresh Meats Inc. that slaughter and sell turkey products. During the Class Period, Tyson Foods, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67, and the same are therefore denied.

68. Tyson Fresh Meats Inc. is a Delaware corporation that operates as a subsidiary of Tyson Foods, Inc. During the Class Period, Tyson Fresh Meats and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68, and the same are therefore denied.

69. Tyson Prepared Foods, Inc. is a Delaware corporation that operates as a subsidiary of Tyson Foods, Inc. During the Class Period, Tyson Prepared Foods, Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69, and the same are therefore denied.

70. The Hillshire Brands Company (Hillshire Brands) is a Maryland corporation headquartered in Chicago, Illinois. Hillshire Brands operates as a subsidiary of Tyson Foods that sells turkey products. During the Class Period, Hillshire Brands and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70, and the same are therefore denied.

71. Defendants Tyson Foods, Inc., Tyson Fresh Meats, Inc., Tyson Prepared Foods, Inc., and Hillshire Brands are collectively referred to as "Tyson."

**Answer:** Paragraph 71 fails to assert any allegations, and thus no response is required.

**C. Co-Conspirators**

72. Co-Conspirator Circle S-Ranch, Inc. is a North Carolina corporation engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Circle S-Ranch and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72, and the same are therefore denied.

73. Co-Conspirator Dakota Provisions is a South Dakota corporation engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Dakota Provisions and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73, and the same are therefore denied.

74.     Co-Conspirator Kraft (comprised of Kraft Heinz Foods Company and Kraft Foods Group) is engaged in the production of meat and food products, and the marketing of these products. Kraft Heinz Foods Company (Kraft Heinz), us an Illinois corporation with headquarters in Pittsburgh, Pennsylvania, and Chicago, Illinois, and Kraft Foods Group Brands LLC is an Illinois corporation. During the Class Period, Kraft and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74, and the same are therefore denied.

75.     Co-Conspirator Michigan Turkey Producers LLC d/b/a Michigan Turkey Producers Co-op (Michigan Turkey) is a Michigan corporation headquartered in Grand Rapids, Michigan, and engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Michigan Turkey and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75, and the same are therefore denied.

76.     Co-Conspirator Norbest LLC (Norbest) is a Utah corporation headquartered in Moroni, Utah, and engaged in the production of meat and food products, and the marketing of these products. During the Class Period, Norbest and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Norbest is a related entity to Pitman Family Farms, a California corporation, engaged in the production of meat and food products, and the marketing of these products. Norbest was formerly known as Moroni Feed Company and Norbest Inc.

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76, and the same are therefore denied.

77.     Co-Conspirator West Liberty Foods LLC (West Liberty) is an Iowa corporation engaged in the production of meat and food products, and the marketing of these products. During the Class Period, West Liberty and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold turkey in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77, and the same are therefore denied.

## IV.        FACTUAL ALLEGATIONS

**A.        Agri Stats lies at the center of an extensive conspiracy between Defendants.**

78.        Agri Stats is a company that provides closely guarded, non-public, subscription services to a variety of agricultural industries, including the pork, chicken, and turkey industries. Agri Stats' mission is to improve the profitability of participant companies through the provision of detailed and sensitive data gathered from competitors. Agri Stats presents itself as "kind of a quiet company" with a minimal public presence, but the company has silently and intentionally orchestrated a profound and anticompetitive impact on the supply and price of meat in this country.

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 78, as stated, which pertain to Agri Stats, and the same are therefore denied.

79.        Agri Stats owns a number of subsidiaries, including Express Markets, Inc., that provide benchmarking services to the agricultural industries:

## The Companies of Agri Stats













**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79, and the same are therefore denied.

80.  As described previously, Agri Stats collects detailed data on almost every conceivable operating metric from its subscribers operating in the turkey industry. Agri Stats takes this data, standardizes it across Defendants and Co-Conspirators, and then creates detailed reports comparing the subscribers on key operating metrics. On a monthly basis, Agri Stats produces these detailed comparative data reports to its subscribers in the turkey industry using numeric codes for each subscriber in a purported attempt to keep the data anonymous. However, turkey industry subscribers can and do reverse engineer these reports with ease to identify their competitors.

**Answer:** The Prestage Entities admit, upon information and belief, that Agri Stats collects data from subscribers in the turkey industry and reports that data in anonymous reports to its subscribers.  The Prestage Entities lack information or knowledge sufficient to form a belief as to Agri Stats' internal algorithms or processes and lack knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 80 and those allegations are denied.

81.  Agri Stats prepared monthly reports for Defendants regarding their sales of turkey that identified, on a specific product by product level, the prices, and returns that each Defendant was obtaining on their sales of turkey. These reports, unavailable to anybody besides Agri Stats subscribers, allowed the Defendant Integrators to easily identify potential opportunities where their prices for turkey products were significantly lower than their competitors.

**Answer:** The Prestage Entities admit they subscribed to and received certain turkey Agri Stats reports between the time period 2010 to 2017 and that, upon information and belief, other turkey Agri Stats subscribers also received certain reports.  The Prestage Entities deny the allegations of Paragraph 81 except as expressly admitted.

82.  The information gathered by Agri Stats was not publicly available, or even available to industry participants equally. Agri Stats would **only** grant access to similarly situated companies that themselves share data with Agri Stats. That is, you had to be a Turkey integrator able to **produce** competitively sensitive information, to be able to **receive** the information. Agri Stats also does not provide data to USDA. This information asymmetry ensures that data from Agri Stats is only available to one side of the market – the Defendant Integrators. The other side of the market, purchasers of turkey, is not allowed to access the Agri Stats data, and thus cannot use Agri Stats data to negotiate lower prices. Thus, Agri Stats reports function as a one-way ratchet that can be used for anticompetitive purposes by Defendants but not for procompetitive purposes by purchasers.

**Answer:** The Prestage Entities deny, upon information and belief, the allegations of Paragraph 82.

83. In the turkey industry, all else being equal, there is an inverse relationship between supply and price of turkey. Accordingly, the type of information available in these reports is not the type of information that competitors would provide each other in a normal, competitive market. In a competitive market, each competitor would act independently, making supply decisions unilaterally and pricing its goods to market. Indeed, in a competitive market, a commodity producer with a cost advantage would not share information with competitors that would allow them to achieve the same cost of manufacture. If a Turkey Integrator knew both it and its competitors have low supply, and/or knew that its competitors would not lower prices to attempt to gain market share, the normal competitive incentive to lower prices to better compete in the market is chilled, although customers remain unaware of this, by removing competitive uncertainty.

**Answer:** The Prestage Entities deny the allegations of Paragraph 83.

84. In each situation, the anticompetitive effects are only amplified by the fact that customers do not have the confidential information exchanged among the Defendants, nor are they even aware of the fact that Defendants are exchanging that confidential information, putting them at a severe asymmetrical information disadvantage with respect to the pricing of turkey meat.

**Answer:** The Prestage Entities deny the allegations of Paragraph 84.

85. The information exchange by the Defendant Integrators through Agri Stats is exactly the type of information exchange that the Supreme Court has recognized is likely to have anticompetitive effects under a rule of reason analysis. *First*, the data is current and forward-looking—which courts consistently hold has "the greatest potential for generating anticompetitive effects."[6] *Second*, information contained in Agri Stats reports is specific to the turkey producers, including information on profits, prices, costs, and production levels. *Third*, none of the Agri Stats information was publicly available. Agri Stats is a subscription service, which required the Defendant Integrators to pay hefty fees over the Class Period – far in excess of any other pricing and production indices – and to agree to volunteer their own data. Agri Stats ensured that its detailed, sensitive business information was available only to Defendants and their Co-Conspirators and not to any buyers in the market. Thus, for example, buyers on the market could not use Agri Stats data in Agri Stats sales reports to negotiate lower prices; instead, only Defendants could use it to identify opportunities to raise their prices. Indeed, Agri Stats specifically marketed itself to potential participants as a way that they could "███████████" rather than engage in competition through production increases. Agri Stats was good to its word; its sales reports specifically identified opportunities for Defendants where Defendants' products were lower than that of the industry average and where Defendants could consequently raise prices to meet that of their competitors.

---

[6] *U.S. Gypsum Co.*, 438 U.S. at 441 n.16.

**Answer:**     The Prestage Entities deny the allegations of Paragraph 85.

86.     Furthermore, the exchange of information through Agri Stats at issue in this case is of a type and frequency that acts as a plus factor supporting an inference of a *per se* price-fixing agreement among Defendants. As Justice Sotomayor held while serving on the Second Circuit, "[i]nformation exchange is an example of a facilitating practice that can help support an inference of a price-fixing agreement."[7] This agreement had the intended purpose and effect of increasing turkey prices to Plaintiffs and the Class.

**Answer:**     The Prestage Entities deny the allegations of Paragraph 86.

1.     **Agri Stats Reports and Subscriptions by Defendants and their Co-Conspirators.**

87.     Defendants' agreement was formed at least as early as 2008. Michael "Blair" Snyder, a senior executive at Agri Stats, publicly touted in 2009 that "about 95% of the turkey industry [is] participating" in Agri Stats, and that for "turkey participants, pretty much it's a list of who's who in the turkey business."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87 as they pertain to statements made by Agri Stats, and therefore deny the same.  The Prestage Entities deny all other allegations in Paragraph 87 and expressly deny that they entered into an unlawful agreement with any other Defendant or Co-Conspirator.

88.     A ███████████████             lists each of the Defendants and their Co-Conspirators by name: Defendants ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

---

[7] *Todd*, 275 F.3d at 198–99 (noting that information exchanges can both be evidence of a *per se* unlawful price fixing cartel and separately unlawful in and of themselves).



**<u>Answer:</u>**     The Prestage Entities deny the allegations of Paragraph 88.  The Prestage

Entities further respond to the allegations in Paragraph 88 by stating that ███████████████

████████████████████████████████████████████████ The Prestage

Entities do not know ███████████████████████████████████████

████████████████████████

89.     Participants in this scheme received monthly detailed reports and graphs that allow them to compare their performance, sales prices, and costs to other participants.

**<u>Answer:</u>**     The Prestage Entities admit they subscribed to and received certain turkey

Agri Stats reports between the time period 2010 to 2017 and that, upon information and belief,

other turkey Agri Stats subscribers also received certain reports.  The Prestage Entities deny the

allegations of Paragraph 89 except as expressly admitted.

90.     Agri Stats reports identified potential opportunities for its subscribers to raise prices for turkey products where their prices were lower than their competitors.

**Answer:** The Prestage Entities deny the allegations of Paragraph 90.

91.    Agri Stats issues 



**Answer:**　　The Prestage Entities admit ████████████████████████████████████

The Prestage Entities deny the allegations of Paragraph 91 except as expressly admitted and specifically deny that ███████████████████████████████████████████████████████

████████████████████████████

　　92.　Agri Stats also offered to provide "████████████████████████████████

█████████████████████████.

**Answer:**　　The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92, and the same are therefore denied.

　　93.　EMI (a subsidiary of Agri Stats) provided ███████████████████████████

█████████████████████████████████████████████

**Answer:**　　The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 93 relating to ███████, and the same are

therefore denied.  The Prestage Entities specifically deny that ████████████████████████████
████████████████████

        **a.**    ***Examples of Agri Stats Reports.***

    94.    Some of the main offerings 

    <u>**Answer:**</u>    The Prestage Entities admit ███████████████████████
████████████████████████████████████  The Prestage Entities lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 94,

and the same are therefore denied.  The Prestage Entities deny the allegations of Paragraph 94

except as expressly admitted and specifically deny ████████████████████████████████████

████ and deny they participated in any alleged conspiracy.





**<u>Answer:</u>**     The Prestage Entities respond that ███████████████████ ████████████████████████████████████████████ The Prestage Entities deny the allegations of Paragraph 95 except as expressly admitted.

96.     Agri Stats also provided the same information for ███████████████ ████████:





> **Answer:** The Prestage Entities respond that ██████████████████ ███████████████████████████████████████ The Prestage Entities deny the allegations of Paragraph 96 except as expressly admitted.

97. Both the USDA and Urner Barry also provide some publicly available sales data. However, the data that Agri Stats provides in its sales reports is ███████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████"

**Answer:**    The Prestage Entities admit that (i) Urner Barry and the USDA provide some publicly available data regarding turkey and (ii) ███████████████████ ████ The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 97, and the same are therefore denied. The Prestage Entities deny the allegations of Paragraph 97 except as expressly admitted.





**<u>Answer:</u>**     The Prestage Entities respond that ████████████████████

███████████████████████████████████ The Prestage Entities

lack knowledge or information sufficient to form a belief as to the truth of ████████████

██████████████████████████████ The Prestage Entities deny the

allegations of Paragraph 98 except as expressly admitted and specifically deny ████████

██████████████████████████████████

99. 





**<u>Answer:</u>** The Prestage Entities respond that  The Prestage Entities deny the allegations of Paragraph 99 except as expressly admitted.

100. 

**<u>Answer:</u>** The Prestage Entities respond that ████████████████ The Prestage Entities deny the allegations of Paragraph 100 except as expressly admitted.

101.    These reports were particularly helpful at indicating the "████████████
███████████████████████████████████████. No other
reporting service, other than Agri Stats/EMI, provided the level of detail or content needed to show
the industry's production intentions. While the USDA provides reporting on some of the same
metrics as Agri Stats does (though without the same level of detail nor as close-in-time), USDA
does not report at all on ███████████████████████████████." Agri Stats explained that
████████████████████████████████. Another benchmarking service, Urner Barry, provided reports on weekly
turkey hatches, eggs set, poults placed, and poults destroyed. However, it did not ███████████████.
██████████████████████████████████ Simply put, the data Agri Stats provided was
██████████████████████████████████████████████████████ Each of these metrics provide
confidential information on participants' supply and capacity.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

**Answer:**    The Prestage Entities respond that the allegations in Paragraph 101
████████████████████████████████████████████████████████████
████████████████████████████    The Prestage Entities deny the allegations of
Paragraph 101 except as expressly admitted.

102.    Although Agri Stats has stated that " ███████████████████████████
████████████ :



**Answer:**    The Prestage Entities admit, upon information and belief, that ████████
█████████████████████████████████████████████████████████████████
████████████████ The Prestage Entities deny the allegations of Paragraph 102 except as expressly admitted.

103.    Additionally, Agri Stats' ████████████████████████████████ :



**Answer:**    The Prestage Entities admit, upon information and belief, that ████████
█████████████████████████████████████████████████████████████████
████████████████ The Prestage Entities deny the allegations of Paragraph 103 except as expressly admitted.





**<u>Answer:</u>** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104, and the same are therefore denied. The Prestage Entities specifically respond that ███████████████████████████████ ███████████████████████

     105. Each Agri Stats report listed ████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████



**Answer:**      The Prestage Entities admit, upon information and belief, that ███████████ ████████████████████████████████████████████████████ The Prestage Entities further respond that the allegations in Paragraph 105 ████████████ ████████████████████████████████████████████████████ ███████████      The Prestage Entities deny the allegations of Paragraph 105 except as expressly admitted.

        **b.**    ***Defendants subscribed to Agri Stats/EMI reports throughout the class period.***

      106.    Butterball states ████████████████████████████████████ ██████████████ Agri Stats' fee records show that ████████████



██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████.

**Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106, and the same are therefore denied.

107.    Agri Stats' fee records show that ████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

**Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107, and the same are therefore denied.

108.    ██████████████████████████████████████
██████████████████████████████ Agri Stats' fee records show that ██████████████████████████████████████ They subscribed to the ████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

**Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108, and the same are therefore denied.

109.    ██████████████████████████████████████
██████████ Agri Stats' fee records show that ████████████████
██████████████████████████████. They continued these subscriptions until at least ████████████████████████████████████████████
██████████████████████████████████████████████.

**Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109, and the same are therefore denied.

110. ███████████████████ Agri Stats' fee records show that █████████████

███████ They continued receiving the █████████████



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110, and the same are therefore denied.

111.  From January 1, 2008 through December 31, 2017, ████████████

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111, and the same are therefore denied.

112. ███████████████████████████████████████████

███████████ As early as August 2008, ████████████

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112, and the same are therefore denied.

113. ██████████████████████████████████████. Agri Stats' fee records show that ████████████

████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113, and the same are therefore denied.

114. Agri Stats' fee records show that ████████████████████████████████████████████████████████████████████████████████████████.

**Answer:** The Prestage Entities admit ███████████████████████████████████████████████████████████████████████████████ The Prestage Entities deny the allegations of Paragraph 114 except as so admitted.

115. Agri Stats' fee records show that ███████████████████████████████████████████████████████████████████████████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115, and the same are therefore denied.

### c. *The Co-Conspirators also participated in Agri Stats/EMI.*

116. Agri Stats' fee records show that █████████████████████████████████████████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116, and the same are therefore denied.

117. Agri Stats' fee records show that ████████████████████████████████████

██████████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117, and the same are therefore denied.

118. Agri Stats' fee records show that █████████████████████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118, and the same are therefore denied.

119. Agri Stats' fee records show that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119, and the same are therefore denied.

120. Agri Stats' fee records show that █████████████████████████████████████████████████████.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120, and the same are therefore denied.

**2. Defendants relied on Agri Stats reports for every critical part of their operations.**

121. Industry participants relied on Agri Stats reports in nearly every facet of their business operations and strategy.

**Answer:** The Prestage Entities deny the allegations in Paragraph 121.

- 50 -

122.    For example, in January 2014, :

**[I]t it is imperative that we stay engaged and focused on Agristats results,**



**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122, and the same are therefore denied.

### a.    *Defendants Relied on Agri Stats Reports in Setting Prices and Identifying Opportunities to Raise Prices.*

123.    Defendants routinely and regularly used the Agri Stats sales reports to identify price-raising opportunities.

**Answer:**        The Prestage Entities deny the allegations in Paragraph 123.

124.    Confidential Witness 1 (CW1) is a former sales executive at Butterball involved in the pricing of turkeys. CW1 was employed at Butterball during the entire Class Period. According to CW1, Agri Stats identified each participant in each report and ranked the integrator Defendants in their reports based on the returns (*i.e.*, prices) that the integrator Defendants received.

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124, and the same are therefore denied.

125.    As documented in preceding allegations, CW1's allegations are confirmed by the reports themselves. CW1 further stated that Butterball relied on the monthly reports issued by Agri Stats: "The company used the information to evaluate — by item, item group, price, distribution — where we stood against other turkey companies." CW1 stated that he and other sales personnel looked at Agri Stats data to see how Butterball ranked against peers in the turkey industry. CW1 stated that he personally looked at the Agri Stats data to assess costs and returns. CW1 stated that costs were an important factor in determining how Butterball set its prices. Butterball's internal documents clearly show the importance of Agri Stats to Butterball.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 125, and the same are therefore denied.

126. For example, a 2015 message from 

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 126, and the same are therefore denied.

127. Butterball regularly used data from Agri Stats to reduce supply and raise prices. For example, in August 2017, Butterball is shown again looking to Agri Stats data for

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127, and the same are therefore denied.

128. Similarly, in 2010, 

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128, and the same are therefore denied.

129. Butterball executives regularly met and reviewed Agri Stats data for price raising opportunities. For example, in March 2011,

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 129, and the same are therefore denied.

130.    At those meetings, ."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130, and the same are therefore denied.

131.    In a draft presentation for Butterball's "



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 131, and the same are therefore denied.

132. That same presentation also details ███████████████████████████████████████████████████████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 132, and the same are therefore denied.

133. Cargill used Agri Stats to ████████████████████████████████████████████████████████████████████" Cargill also used Agri Stats as a ███████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 133, and the same are therefore denied.

134. Cargill also used Agri Stats to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████" She also wrote "████████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 134, and the same are therefore denied.

135. Cargill also uses its knowledge of ███████████████████████████████████████████████████████████████████████████████████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 135, and the same are therefore denied.

136. Cargill approached identifying ███████████████████████████ ████████████████ :



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 136, and the same are therefore denied.

137. Confidential Witness 2 (CW2) is a former accountant at Cooper Farms. CW2 stated that Cooper Farms received monthly reports from Agri Stats. CW2 stated that Cooper Farms submitted cost information to Agri Stats every month. CW2 explained that Agri Stats reports grouped data into various types of turkey products, including deli meat and smoked meat. As described above, this has been confirmed by the reports produced by Agri Stats.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 137, and the same are therefore denied.

138. CW2 stated that the advice from Agri Stats helped Cooper Farms improve its returns per pound. Documents confirm that Cooper Farms used Agri Stats reports to maintain high profit margins. In May 2011, ████████████████████████████████████████



." In another email from the same month,

."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138, and the same are therefore denied.

139.     As with the other Turkey Processors, Farbest also reviewed Agri Stats reports to ▮▮▮▮▮. One example occurred in June 2010,

."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139, and the same are therefore denied.

140.     Agri Stats also directly wrote to Farbest in order to identify ▮▮▮▮▮. In October 2013,

.



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140, and the same are therefore denied.

141. Foster Farms held regular meetings with Agri Stats regarding the sales reports, and used them to ███████████████████████. In January 2015, ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████ .″ Similarly, in January 2017, ████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141, and the same are therefore denied.

142.

- 57 -

███████████████████████████████████████████████████
██████ ."

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142, and the same are therefore denied.

143.  Hormel executives followed ██████████ instructions, using Agri Stats to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ " In a July 2010 email, ██████████ She reports that for fresh breast, " ████████████████████████████████████████████████████████████████████████████ "

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 143, and the same are therefore denied.

144.  There are also examples of Hormel using Agri Stats data as reason, in part, to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ."

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 144, and the same are therefore denied.

145.  House of Raeford similarly used Agri Stats to ████ One example of this occurred in 2010, ████████████████████████████████████████████████████████████████████ "

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145, and the same are therefore denied.

146.   A June 2012 ."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146, and the same are therefore denied.

147.   Prestage also worked with Agri Stats to . In December 2013,



**<u>Answer:</u>**      The Prestage Entities respond that ███████████████████ ███████████████████████████████████ The Prestage Entities further respond that the Plaintiffs' allegations in Paragraph 147 ██████████████████ ████████████████████████████████████████████████ ██████████████████████ The Prestage Entities deny all allegations of Paragraph 147.

148.    Agri Stats also provided █████ guidance for Defendants and their Co-Conspirators on a ████████████████████. For example, ████████████████ ███████████████. Agri Stats provides information about ████████ ████████████ Stacey Edwards of Agri Stats wrote, " ████████ ██████████ " In essence, Agri Stats was telling Cargill the ████ ██████████ In a competitive market, sellers do not share such information, directly or indirectly, with each other.



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148, and the same are therefore denied.

149.    Agri Stats also continued to  . In April 2013,

."

**Answer:**     The Prestage Entities respond that

The Prestage Entities further respond that

The Prestage Entities deny the allegations of Paragraph 149 except as expressly admitted.

150.    Statements by Agri Stats employees show that they intended for Defendants and their Co-Conspirators to

In a February 2012 email thread where

" In addition, in a June 2015 email thread,

**Answer:**     In response to the allegations in Paragraph 150, the Prestage Entities specifically deny any implication that they participated in any alleged conspiracy because no such

conspiracy exists. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 150, and the same are therefore denied.

    **b.**   ***Defendants Relied on Agri Stats Reports to*** ███████████████ .

  151.   Defendants routinely and regularly used the Agri Stats sales reports to ████████ ████████

  **<u>Answer:</u>**    The Prestage Entities deny the allegations of Paragraph 151 and specifically deny any implication that they participated in any alleged conspiracy.

  152.   Data in the Agri Stats ███████████████ reports and the EMI Analytics ████████████ allowed Defendants and their Co-Conspirators to ██████████ ██████████ .

  **<u>Answer:</u>**    The Prestage Entities deny the allegations of Paragraph 152.

  153.   Butterball



In reply, ████████████████████████████████████ ███████████ "

  **<u>Answer:</u>**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153, and the same are therefore denied.

  154.   Similarly, conversations amongst executives at Cargill show that the data could be directly used to ███████████████████ . An April 2016 email from Cargill's

██████████████████████████████████████████████████
██████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 154, and the same are therefore denied.

155. After a Cargill executive attended ████████████████████
████████████████████████████████████████████████
█████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 155, and the same are therefore denied.

156. Cargill also ██████████████████████████████████. In September 2016, ████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 156, and the same are therefore denied.

157. Cargill also used information from Agri Stats to ██████████████
████████████████████ In a 2017 e-mail, ██████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 157, and the same are therefore denied.

158. In September 2014, ████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 158, and the same are therefore denied.

159. In June 2017, ███████ wrote to Agri Stats to ████████████████████████████████████████████████:



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159, and the same are therefore denied.

160. Farbest closely ███████ the ████████████. In January 2014, ███████████ This shows Farbest was closely monitoring production through the Agri Stats reports.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160, and the same are therefore denied.

161. Hormel also used Agri Stats information ████████████████



**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161, and the same are therefore denied.

162.    Perdue used EMI data when  An August 2011 Perdue

."

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162, and the same are therefore denied.

163.     of Tyson described Agri Stats' work with

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163, and the same are therefore denied.

  c.    ***Agri Stats Reports and Metrics Were Tremendously Important to Defendants and their Co-Conspirators.***

164.    Agri Stats was fully incorporated into Defendants' and their Co-Conspirators' business decision-making and Defendants emphasized the importance of using Agri Stats in their business operations.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 164 as they may relate to the Prestage Entities.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 164 as to any other Defendants or alleged Co-Conspirators, and the same are therefore denied.

165.    For example, "

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165, and the same are therefore denied.

166.    Cargill prepared an "

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166, and the same are therefore denied.

167. Certain Defendants even  ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167, and the same are therefore denied.

**d.** ***Agri Stats Directly Facilitated the Exchange of Sensitive Information***

168. At times, employees of Agri Stats/EMI .

**Answer:** The Prestage Entities deny the allegations of Paragraph 168 as they may relate to the Prestage Entities. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168 as to any other Defendants or alleged Co-Conspirators, and the same are therefore denied.

169. In July 2013, She wrote, "

████████████████████████████████████████████████████████████████████
███████████████████████████████."

    **Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 169, and the same are therefore denied.

    170.    Agri Stats also offers "████████████████████████████████████████" where they "██████████████████." Examples of Defendants' participation in such meetings is described below.

    **Answer:**       The Prestage Entities admit that Agri Stats ████████████████████████ ████████████████████████████████████ The Prestage Entities deny all allegations against them in Paragraph 170 except as expressly admitted. The Prestage Entities further respond that they lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 170 as to any other Defendants or alleged Co-Conspirators, and the same are therefore denied.

    171.    According to CW1, Agri Stats gave live presentations to Defendant Integrators to explain to them how to use the reports that Agri Stats prepared on the turkey industry and how to compare themselves against their competitors: during the presentations, Agri Stats said, "if you are number one priced out of 13, that meant the return was so much versus the other companies." Butterball regularly participated in such meetings with Agri Stats. For example, in August 2013 ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████."

    **Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 171, and the same are therefore denied.

    172.    In an email thread describing ████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████." Such meetings were ███████████████████████:



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 172, and the same are therefore denied.

173. Agri Stats also would ███████████████████████████████████████ ███████████████████.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 173, and the same are therefore denied.

174. CW2 stated that Cooper Farms executives met every six months with Agri Stats. The executives were from the Cooper Leadership Management Group, which included top management and executives from Cooper Farms. Documents confirm ███████████████ ████████ between Cooper Farms executives and Agri Stats:



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 174, and the same are therefore denied.

175.    CW2 stated that "the upper group received advice" from Agri Stats. Documents confirm that Cooper Farms executives ███████████ with Agri Stats executives and received ███████████. For example, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175, and the same are therefore denied.

176.    Farbest also ███████████████████████████ In September 2015, ███████████████████████████████████████████████████████████████████████████████████████████████████████ng."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 176, and the same are therefore denied.

177.    Agri Stats meetings also provided ██████████████████████████████. For example, ███████████████████████████████████████████████████████████████████████████████████████████████████:



**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 177, and the same are therefore denied.

178.    After that Agri Stats presentation,

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 178, and the same are therefore denied.

179.



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 179, and the same are therefore denied.

    **e.**   ***Certain Defendants Tied Compensation and Performance Reviews to their*** ███████████████

   180.   Agri Stats was also used ██████████████████████████████████ ████████████.

**Answer:** The Prestage Entities deny the allegations of Paragraph 180, as stated, as they relate to the Prestage Entities. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 180 as to other Defendants and the same are therefore denied.

   181.   In 2008, ████████████████████████████████████████ ███████. In 2015, ██████████████████████████████████████████████ ████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181, and the same are therefore denied.

   182.   Proficiency and knowledge of Agri Stats was used as ████████████ ██████████████████████████████████████████:



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182, and the same are therefore denied.

183. In 2016, ███████████████████████████████████████

███████ . For example, ███████████████████████████████

████████████████████████████████████ "

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 183, and the same are therefore denied.

184. Cargill described Agri Stats as a ████████████████████████

████████



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 184, and the same are therefore denied.

185. Hormel executives were █████████████████████████████████████████████████████████.”

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 185, and the same are therefore denied.

186. In 2011, ███████████████████████████████████████████████████████████████████████.”

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 186, and the same are therefore denied.

**3. Defendants and Their Co-Conspirators regularly and easily reverse engineered Agri Stats reports.**

187. Agri Stats publicly represents that its services preserve the confidentiality of participating companies; however, the reality is far different.

**Answer:** The Prestage Entities admit, upon information and belief, that Agri Stats has represented that its services preserve the confidentiality of the participating companies. The Prestage Entities deny the allegations of Paragraph 187, except as expressly admitted.

188. Although Agri Stats reports are nominally anonymous, ███████████ ██████████████████████████████████████████████. Agri Stats reports are so detailed that a reasonably informed Defendant can discern the identity of competitors' data due to the specific type of products each is known to produce or based on knowing the identity of Defendants' individual complexes.

**Answer:** The Prestage Entities deny the allegations of Paragraph 188 as they may relate to the Prestage Entities. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 188 as to any other Defendants or alleged Co-Conspirators, and the same are therefore denied.

189. For each of its reports, ██████████████████████ ██████████████. The small number of individual companies providing data in particular category or region revealed the identity of each participant. CW1 (Butterball) confirmed that the reports Agri Stats prepared for the Defendant Integrators identified the participants that provided data for each report, which allowed Defendants to understand which of their competitors were participating for each report. CW2 confirmed that the Agri Stats reports identified each of the turkey production facilities that were participating in the reports.

**Answer:** The Prestage Entities admit that ████████████████████ ████████████████ The Prestage Entities deny all remaining allegations of Paragraph 189 as they may relate to the Prestage Entities. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189 as to any other Defendants or alleged Co-Conspirators, and the same are therefore denied.

190. Based on documents produced to date in this case, ████████████████ ██████████████████████.

**Answer:**      The Prestage Entities deny the allegations of Paragraph 190 as they may relate to the Prestage Entities.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 190 as to any other Defendants, and the same are therefore denied.

191.  . In July 2011,

**Answer:**      The Prestage Entities deny the allegations of Paragraph 191 as they may relate to the Prestage Entities.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191 as to any other Defendants or alleged Co-Conspirators, and the same are therefore denied.

192. While each subscribing company receives a report tha  .

**Answer:**      The Prestage Entities deny the allegations of Paragraph 192 as they may relate to the Prestage Entities and specifically deny ████████████████████████ ██████████████████████ The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192 as to any other Defendants or alleged Co-Conspirators, and the same are therefore denied.

193. One such executive was ████████



."

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 193, and the same are therefore denied.

194.   For instance, 



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194, and the same are therefore denied.

195. Agri Stats assumed that ████████████████████████████████████████████████████████████████." CW2 stated that he could determine the identity of companies for Cooper Farms in Agri Stats reports because "you could usually figure out who was who because they have a certain cooked meat, or if they were browning and running it through an oven." CW2 further stated that "we could sit there and discuss it, because a lot of us knew what the other plants in the big areas, what they did." For example, CW2 stated that one competitor company had five separate facilities included in the Agri Stats reports, and that therefore, it was easy to determine the identity of that company.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 195, and the same are therefore denied.

196. CW2's accounts of Cooper Farms' deanonymization are confirmed by documents. For example, in July 2017, ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████."

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 196, and the same are therefore denied.

197.    Confidential Witness 3 (CW3), a former employee of Cargill during the conspiracy period, stated that Cargill received monthly reports from Agri Stats on turkey. The documents produced to date confirm that Cargill received Agri Stats reports.

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 197, and the same are therefore denied.

198.    In a February 2012 presentation to ████████████████████████████████ ████████████████████████████████████████. Moreover, the source of such information had been clearly labelled, "███████████████████████████████████," which indicates this was a common and unremarkable happening:



**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 198, and the same are therefore denied.

199.    CW3 stated that the monthly Agri Stats turkey reports went directly to Cargill finance executives. Cargill documents describe "

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 199, and the same are therefore denied.

200.    Examples of Cargill's ███████████ are included below:







**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 200, and the same are therefore denied.

201.    Hormel also 

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 201, and the same are therefore denied.

202.    Defendants were aware that 



**Answer:**     The Prestage Entities deny the allegations of Paragraph 202 as they may relate to the Prestage Entities.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 202 as to any other Defendants or alleged Co-Conspirators, and the same are therefore denied.

203.



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 203, and the same are therefore denied.

204.    At times, Defendants even    In a February 2011 email between                True competitors would have no reason to provide this type of sensitive business information to each other.

**Answer:**     The Prestage Entities deny the allegations of Paragraph 204 as they may relate to the Prestage Entities.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 204 as to any other Defendants, and the same are therefore denied.

4.    **Agri Stats was aware reports could be reverse engineered and helped facilitate reverse engineering.**

205.    Agri Stats communicated frequently with 

**Answer:**     The Prestage Entities admit only that                    The Prestage Entities deny the allegations of Paragraph 205 except as expressly admitted and specifically deny that they participated in any alleged conspiracy.

206.    Agri Stats was aware that

**Answer:**     The Prestage Entities deny the allegations of Paragraph 206 as they may relate to the Prestage Entities.  The Prestage Entities lack knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 206 as to any other Defendants, and the same are therefore denied.

207.   In January 2009, ."

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 207, and the same are therefore denied.

208.   Agri Stats was aware that . In July and August 2009,

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 208, and the same are therefore denied.

209.   Naysayers within Agri Stats were overruled. In April 2011, 

**Answer:**          The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 209, and the same are therefore denied.

210.     Agri Stats was aware of the overly specific nature of their service. ████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████

**Answer:**          The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 210, and the same are therefore denied.

211.     Relatedly, in December 2013 Agri Stats raised a concern ████████████████
████████████████████████████████████████████████████████████████████████████
█████████████████████████████████.

**Answer:**          The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 211, and the same are therefore denied.

212.     Instead, the confidentiality of the data was preserved only as to the public and those unable to subscribe to Agri Stats. For example, in an email dated ████████████████████
████████████████████████████████████████████████████████████████████████████
█████████████████████████████████."

**Answer:**          The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 212, and the same are therefore denied.

213.     Even if a subscriber were not able to ████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████. In 2017, ████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████

**Answer:**          The Prestage Entities deny the allegations of Paragraph 213 as they may relate to the Prestage Entities.  The Prestage Entities lack knowledge or information sufficient to

form a belief as to the truth of the allegations in Paragraph 213 as to any other Defendants, and the same are therefore denied.

214.    Agri Stats also regularly refined their reporting to "███████████████████████ ████████████. This was in furtherance of the conspiracy as it made it easier for Defendants and their Co-Conspirators to monitor each other's actions and to help inform long-term pricing strategies.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 214 as they may relate to the Prestage Entities.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 214 as to any other Defendants, and the same are therefore denied.  The Prestage Entities specifically deny that they participated in any alleged conspiracy.

215.    ."

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 215, and the same are therefore denied.

**B.    ████████████████████████ provided a forum for coordination among the Defendants and their Co-Conspirators.**

216.    ████████████████████ is a national advocate for turkey farmers and processors; members include growers, processors, hatchers, breeders, distributors, allied services, and state associations.

**Answer:**    The Prestage Entities admit the allegations of Paragraph 216.

217.    Nearly every Defendant Integrator's CEO has representatives on the board of directors or executive committee of the ████████████████ . High-ranking executives of Butterball, Hormel, Cargill, Tyson, Farbest, and Perdue currently serve as officers of the board or

on the executive committee. Executives from each Defendant served on the ███████████ ██████ Executive Committee at various points during the conspiracy.

**Answer:** The Prestage Entities admit they had a representative on the ███ board of directors and executive committee for a portion of the relevant time period. The Prestage Entities deny the allegations of Paragraph 217, except as expressly admitted.

218. For example, CW3 stated that senior Cargill executives attended ██████████ meetings. Documents confirm ████████████████████████████. For example,



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 218, and the same are therefore denied.

219. CW2 also stated that Cooper Farms leadership was involved in the ██████████ As discussed in more detail below, Gary Cooper served on the ██████████ Executive Committee in 2014. During that time, as discussed in more detail below,

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 219, and the same are therefore denied.

- 88 -

220.    Notably, one Agri Stats employee who works for multiple meat industry clients commented upon her first time attending a ███████████████ meeting in 2011, "███████████████ █████."

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 220, and the same are therefore denied.

221.    In addition to regular board and executive committee meetings, the ███████████ ██████ hosts two events throughout the year: the Annual Convention in February and the Leadership Conference in July. The Annual Convention is the largest events for the turkey industry nationwide and offers tremendous networking opportunities.

**Answer:**    The Prestage Entities admit that ███████████████ holds board meetings, executive committee meetings, an Annual Convention and a Leadership Conference and networking opportunities exist at the Annual Convention. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 221, and the same are therefore denied.

222.    Apart from board meetings, executive meetings and annual events, the ████ ███████████████ also had a subgroup called the ██████



**Answer:**    The Prestage Entities admit that ███████████████ ███████████████████████████████ ███████████████ The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 222, and the same are therefore denied.

223.   Under  the  direction  of ██████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████

**Answer:**     The  Prestage  Entities  admit  that ██████████████████████
████████████████████████████████████████████████████████████

██████████████████████████████████ The Prestage Entities deny the allegations of

Paragraph 223, except as expressly admitted.

224.   Upon information and belief, the top-level executives from Defendants discussed
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████.

**Answer:**     The Prestage Entities deny the allegations of Paragraph 224.

**C.     Defendants conspired to restrain competition in the market for turkey.**

**1.     Pre-Class  Liability  Period  from  2008-2009:** ████████████████████
██████████████████████████████████████████████████████

225.   In the Pre-Class Liability Period, Defendants and their Co-Conspirators, through
both  usage  of  Agri  Stats/EMI  and  direct  communications, ███████████████████
████████████████████████████████████████████ In the spring and
summer of 2008, Defendants and their Co-Conspirators began ██████████████████████
████████████████████████████████████████████."

**Answer:**     The Prestage Entities deny the allegations of Paragraph 225.

**a.     "████████████████████████████████████": *In
early 2008, Defendants begin to coordinate a series of industry cutbacks
to restrain supply and stabilize prices.***

226.   Feed prices, the primary cost for growing turkeys, began to rise rapidly in late 2006,
continued to accelerate in 2007, and spiked in June/July 2008. These feed prices were driven, in
part, from the impact of a new market for corn created by U.S. renewables.

**Answer:** The Prestage Entities admit, upon information and belief, that feed prices rose rapidly in 2008 and into 2009 due, in part, to the impact on corn prices from new ethanol mandates. The Prestage Entities deny the allegations of Paragraph 226, except as expressly admitted.

227. These rising feed prices caused significant increased costs for turkey growers, and provided them with a motive to conspire to restrain supply and restore profitability.

**Answer:** The Prestage Entities admit that the rising feed prices resulted in increased costs for the Prestage Entities, and perhaps, upon information and belief, other Defendants. The Prestage Entities deny the allegations of Paragraph 227, except as expressly admitted.

228. By June 2008, with feed prices soaring, Defendants began discussing in detail the potential for industry-wide cutbacks.



**Answer:** The Prestage Entities respond that ███████████████████ ████████████████████████████████████ The Prestage Entities deny the allegations of Paragraph 228.

b. ████████████████████████

229. In July 2008, ████████████████████████

███████████████████████████████████████████████████ .

**Answer:** The Prestage Entities admit that ████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ The

Prestage Entities deny the allegations of Paragraph 229 except as expressly admitted.

230. At the July 2008 ██████████████ meeting, the ████████ Executive Committee decided to ██████████████████████  ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████

**Answer:** The Prestage Entities admit that ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ The Prestage

Entities deny all allegations of Paragraph 230, except as expressly admitted.

231. As a result of this discussion by the ██████████ Executive Committee, ████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████ "

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 231, and the same are therefore denied.

232. On July 10, 2008, ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

████████████████████████████████████████████████████
█████████████████████████████████████████████ "

    **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 232, and the same are therefore denied.

    233.  ████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████.

    **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 233, and the same are therefore denied.

    234.  ████████████████████████████████████████████
████████████████████████████████████████ In 2008, the
Steering Committee consisted of ███████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████

    **Answer:**    The Prestage Entities admit that ██████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████ The Prestage Entities deny the allegations of Paragraph 234, except as expressly admitted.

    235.    On September 2, 2008, ███████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████

    **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 235, and the same are therefore denied.

    236.    On September 4, 2008, ███████████████████████████
██████████████████████████████████████████████████████



██████████████████████████████████████████████████
██████████████████████████████████████████████████ In internal
correspondence regarding the proposal, █████████████████████████████
██████████████████████████████████████████████."

**<u>Answer:</u>**    The Prestage Entities admit that on September 4, 2008, ████████
██████████████████████████████████████████████████████████████
████████    The Prestage Entities deny the allegations of Paragraph 236, except as expressly admitted.

   237.    On September 9, 2008, ████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████.

**<u>Answer:</u>**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 237, and the same are therefore denied.

   238.    On September 11, 2008, ████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
████████████████████████████████."

**<u>Answer:</u>**    The Prestage Entities respond that ████████████████████
██████████████████████████████████████████████ The Prestage Entities deny the allegations of Paragraph 238, except as expressly admitted.

   239.    In reply, ██████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████."

**Answer:** The Prestage Entities respond that  The Prestage Entities deny the allegations of Paragraph 239, except as expressly admitted.

240. On September 12, 2008, 

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 240, and the same are therefore denied.

241. On September 16, 2008, :



**Answer:**     The Prestage Entities respond that ███████████████████
███████████████████████ The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 241, and the same are therefore denied.

242.    Internal correspondence from Defendants indicates that the ███
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 242, and the same are therefore denied.

243.    ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 243, and the same are therefore denied.

244. On October 26, 2008, ████████████████████████████████
████████████████████████████████████████████████████████████
██████████.



**Answer:** The Presage Entities admit ████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████. The Prestage Entities deny the allegations

of Paragraph 244 except as expressly admitted.

245. E-mail correspondence from Agri Stats/EMI indicates ████████████
████████████████████████████████████████████████████████.[8]

_____

[8] Plaintiffs have not yet been able to identify a copy of this draft of the 2008 ████████████ in the materials that have been produced by Defendants. **Answer to Footnote 11:** Footnote 11 does not make an allegation and no response is required. To the extent any allegations are made, they are denied.

**Answer:** The Prestage Entities admit, upon information and belief, that  The Prestage Entities deny the allegations of Paragraph 245 except as expressly admitted.

246. At the meeting, there was significant internal debate about ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 246, and the same are therefore denied.

247. Following the meeting,  ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 247, and the same are therefore denied.

248. On November 5, 2008,  ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 248, and the same are therefore denied.

249. A version of the 

████████████████████████████████████████████████
████████."

**Answer:** The Prestage Entities admit, upon information and belief, that ████████
████████████████████████ The Prestage entities deny the allegations of Paragraph 249 except as expressly admitted.

250. ████████████████████████████████████:



**Answer:** The Prestage Entities admit, upon information and belief, that ████████
████████████████████████ The Prestage Entities deny the allegations of Paragraph 250 except as expressly admitted.

251. ████████████████████████████████
████████████████:



**<u>Answer:</u>** The Prestage Entities admit, upon information and belief, that  The Prestage Entities deny the allegations of Paragraph 251 except as expressly admitted.

252. On November 19, 2008,

**<u>Answer:</u>** The Prestage Entities admit, upon information and belief, that The Prestage Entities deny the allegations of Paragraph 252 except as expressly admitted.

253. The Steering Committee

**Answer:**    The Prestage Entities admit, upon information and belief, that ███████ ██████████████████████████████████████████████████ ██████████████████████████████████████ The Prestage

Entities deny the allegations of Paragraph 253 except as expressly admitted.

254.    On December 19, 2008, ███████████████████████

attended the conference call.

The committee collectively agreed that

███████████████.”

**Answer:**    The Prestage Entities admit, upon information and belief, that ███████ ███████████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████ The Prestage Entities lack

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

Paragraph 254, and the same are therefore denied.

255. In January 2009, ████████████████████



**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 255, and the same are therefore denied.

256. The presentation materials prepared by EMI in ⬛⬛⬛⬛ also included the ⬛⬛⬛⬛





**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 256, and the same are therefore denied.

257. ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 257, and the same are therefore denied.

258. In internal correspondence, ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 258, and the same are therefore denied.

259. "

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 259, and the same are therefore denied.

260. ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 260, and the same are therefore denied.

c. 

261. Following initiation of the █████████████████████ Defendants and their Co-Conspirators regularly ████████████████████

**Answer:** The Prestage Entities deny the allegations in Paragraph 261.

262. In June 2008, ████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 262, and the same are therefore denied.

263. In July 2008, ."

**Answer:** The Prestage Entities admit that ████████████████████ ████████████████████████████████████ The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 263, and the same are therefore denied and they specifically deny that ████████ ███████████████████████████████████████

264. ██████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████":



**Answer:**    The Prestage Entities admit that ████████████████████

███████████████████████████████████████    The Prestage Entities

lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in Paragraph 264, and the same are therefore denied and they specifically deny that █████████

███████████████████████████████████████



265. Defendants and their Co-Conspirators, ██████████████████████████ ████████████████████████████████████. For example, in August 2008, ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████" A few minutes later, ██████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████"

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 265, and the same are therefore denied. The Prestage Entities specifically deny ████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████████████████████████

266. That same month, ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████"

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 266, and the same are therefore denied.

267. In September 2008, ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

." In that email, ████████████████████████████████████████████████████████████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 267, and the same are therefore denied.

268. Throughout the fall of 2008, ████████████████████." In September 2008, ████████████████████████████████████████████████████████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 268, and the same are therefore denied.

269. Defendants also ████████████████████████████████████████. For example, Keith Shoemaker, then CEO of Butterball, publicly stated in November 2008 that the "**the industry will cut 6.5 percent to 7 percent of production, which reached 7.4 billion pounds last year.** But given the amount of turkey meat in storage, it will take until at least April or May to get all that out of inventory."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 269, and the same are therefore denied. The Prestage Entities specifically deny any allegations or implication in Paragraph 269 that ████ ████████████████████████████████████████████████████████████████ ████████████████████████████

270. Along with Butterball's public statements, Butterball directly discussed ████████ with other Defendants. In November 2008, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 270, and the same are therefore denied.

271. Defendants also coordinated ███████████. In September 2008, ███████████

███████████

"

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 271, and the same are therefore denied.

**d.** ███████████

272. In a January 19, 2009 e-mail, ███████████ In particular, ███████████



**Answer:**          The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 272, and the same are therefore denied.

273.

**Answer:**          The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 273, and the same are therefore denied.

274.    Hormel heard the message loud and clear from

"

**Answer:**          The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 274, and the same are therefore denied.

275.    At approximately the same time, Cargill changed its conduct and also vigorously joined the

**Answer:**          The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 275, and the same are therefore denied.

276.    An internal Cargill e-mail from January 2009

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████."

**Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 276, and the same are therefore denied.

277.   A February 2009 Cargill presentation discussed the ████████████████████████████████████████████████████████████████████████████████████████.

**Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 277, and the same are therefore denied.

278.   Around the same time, Cooper Farms executives also engaged in direct communications with ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

**Answer:**       The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 278, and the same are therefore denied.

279.   Defendants and their Co-Conspirators continued to ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[9] In 2009, the ████████████████████████ Executive Committee consisted of ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████.



"

**Answer:** The Prestage Entities admit that ███████████████████████████ ████████████████████ The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 279, and the same are therefore denied and the Prestage Entities specifically deny that ██████████████████████ ██████████████████

280. ████████ In a February 2009 email, ████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 280, and the same are therefore denied.

e. ███████████████████████████████████████████



281. Butterball's ██████████████████████████████████████████████████████████████████████████████████"

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 281, and the same are therefore denied.

282. In May 2009, Hormel's CEO confirmed on an earnings call that Hormel had engaged in increasing production cuts over the past year, stating, "We announced the production cuts last year and that production cut indeed is flowing through the system. We had announced 7 to 8% and then we added a little bit to the cut and so when all is said and done, we ended up in the low double-digit range of actual kind of meat being produced in the plants during the quarter." Hormel's CEO emphasized that the "production cuts going forward will still be in place."

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 282, and the same are therefore denied.

283.   In May 2009, ."

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 283, and the same are therefore denied.

284.   On June 2, 2009, Hormel emphasized that it was 

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 284, and the same are therefore denied.

285.   In June 2009, 



**<u>Answer:</u>** The Prestage Entities admit that ████████████████████ ████████████████████████████████████████████ ██████████████████ The Prestage Entities deny the allegations of Paragraph 285 except as expressly admitted and specifically deny that Prestage Foods' ███████████ ███████████ was part of any ████████████ collusion, instead, it was an independent business decision based on Prestage Foods' own internal analysis and business strategy planning.

286. 

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 286, and the same are therefore denied.

287. 

**Answer:**    The Prestage Entities admit that ███████████████████ ████████████████████████████████████████████ ████████████████████████████████ The Prestage Entities deny the allegations of Paragraph 287 except as expressly admitted and specifically deny that Prestage Foods' ████████████████ was part of any ██████████████ collusion, instead, it was an independent business decision based on Prestage Foods' own internal analysis and business strategy planning.

288. 

**Answer:** The Prestage Entities admit that ███████████████████ ████████████████████████████████████████████████ ██████████████████████████████ The Prestage Entities deny the allegations of Paragraph 288 except as expressly admitted and specifically deny that Prestage Foods' ████████████████ was part of any ███████████ collusion, instead, it was an independent business decision based on Prestage Foods' own internal analysis and business strategy planning.

289. In July 2009, a Foster Farms executive wrote to ███████████████ ████████████████████████████ "

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 289, and the same are therefore denied.

290. In July 2009, a Cargill ██████  ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 290, and the same are therefore denied.

291. ████████████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████."

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 291, and the same are therefore denied.

292.    To that end, ███████████████████████████████
████████████████████████████████████████████."

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 292, and the same are therefore denied.

293.    Perdue later prepared presentations describing ██████████████
████████████████████████████████████:



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 293, and the same are therefore denied.

294. Butterball confirmed in an █████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 294, and the same are therefore denied.

295. Additionally, Butterball noted in the "████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 295, and the same are therefore denied.

296. Agri Stats/EMI executives commented on ███████████████████████
████████████████████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 296, and the same are therefore denied.

297. By November 2009, ██████████████████████████████
███████████. On November 11, 2009, ████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
█████████████████████████████████." Similarly,
Cargill ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████

- 120 -

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 297, and the same are therefore denied.

298.    Despite ███████████████████████████████████████

███████████████████████████████████████████████████████████

Farbest) ████████████████████████████████████████████████████

███████████████████."

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 298, and the same are therefore denied.

**2.**    █████████████████████████████████████████

█████████████████████████████

299.    In 2010, Defendants and their Co-Conspirators began to ███████████████

████████████████

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 299 which allegations are particularly vague as to time and as to ████████████████████████████████████████████

███████████████████ The allegations of Paragraph 299 are denied in their entirety.

300.    In January 2010, an internal Perdue ████████████████████████████

███████████████████████████████████████████████████████":

- 121 -



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 300, and the same are therefore denied.



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 301, and the same are therefore denied.

302. 

**Answer:** The Prestage Entities admit that

The Prestage Entities deny the allegations of Paragraph 302 except as expressly admitted.

303.



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 303, and the same are therefore denied.

304. In May 2010, House of Raeford ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 304, and the same are therefore denied.

305. By June 2010, supplies for turkey were tight.



." He asks ▮▮▮▮▮. She responded that "▮▮▮▮▮." She goes on to tell him that ▮▮▮▮▮

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 305, and the same are therefore denied.

306. In August 2010, ▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████ . . . ."

**Answer:**  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 306, and the same are therefore denied.

307.  That same month, Hormel stated, ████████████████████
████████████████████████████████████ ."

**Answer:**  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 307, and the same are therefore denied.

308.  And Cargill, again in the same month, prepared a presentation ███████████
███████████████████████████████ :

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

**Answer:**  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 308, and the same are therefore denied.

309.     Foster Farms █████████████████████████████████
███████████████████████████████



**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 309, and the same are therefore denied.

310.     In September 2010, Butterball ████████████████████
████████████████████████████████████████████ In internal correspondence, Butterball executives stated ███████████████████████
██████████████████████████████████.”

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 310, and the same are therefore denied.

311.     In an email from November 27, 2010, █████████████████
█████████████████████████████████.” Defendants' statements matched their conduct, specifically with regard to ████████████████.

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 311, and the same are therefore denied.

312.     A “███████████████████” PowerPoint made by Perdue in
███████████████████████████████████████████████████
███████████████████████████████████████████████████

e." Perdue noted that the

!"

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 312, and the same are therefore denied.

313.    In April 2011,

."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 313, and the same are therefore denied.

314.    Defendants and their Co-Conspirators represented that the turkey industry has In May 2011, Cargill wrote that

." In September 26, 2011,

."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 314, and the same are therefore denied and the Prestage Entities specifically deny they made any representations about the turkey industry as vaguely implicated in Paragraph 314.

315.    That same month, Hormel stated that the

████████████████████████████████████████████
████████████████████████████.”

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 315, and the same are therefore denied.

316.    Several months later, in August 2011, Hormel stated that the ████████████████████████████████████████████████████████████████” This statement is notable because the chicken industry is currently the subject of multiple civil lawsuits as well as a DOJ investigation of potential antitrust violations that occurred during the same period of time.

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 316, and the same are therefore denied.

317.    Notably, throughout this period, despite ████████████████. Defendants collectively kept ███████████████████████████████

**Answer:**        The Prestage Entities deny the allegations of Paragraph 317.

318.    During this period, Defendants also continued to ████████████████████████. In January 2010, Farbest ████████████████████████████████████████████████████████████████

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 318, and the same are therefore denied and they specifically deny any allegations or implication that they engaged in any conspiracy or collusion.

319.    In May 2011, ██████████████████████████████████████████████████████████████████.”

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 319, and the same are therefore denied.

320.     High level executives at the Defendants also engaged in ████████ ██████████████████████████████████. In October 2011, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 320, and the same are therefore denied and the Prestage Entities specifically deny any allegations or implication that they engaged in any conspiracy or collusion.

**3.**     ████████████████████████████████████████████████████████████████████████████████

321.     In early 2012, Defendants and their Co-Conspirators were still ████████████ ██████████████████. However, Defendants grew concerned about ██████████████████. In a February 2012 e-████████████████████████████████████████████████████████████████████████████████.” Defendants proceeded to respond with ██████████████████████

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 321, and the same are therefore denied.

322.     At the 2012 ██████████████████ Convention in Tampa, ████████████████████████████████████████████████████████████████████████████████████████████████████████

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 322, and the same are therefore denied.

323.     While negotiating financing with ██████████████████████████████████████████████████████████████████



."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 323, and the same are therefore denied.

324.    In July 2012,

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 324, and the same are therefore denied.

325.    Ultimately

."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 325, and the same are therefore denied.

326.    Defendants began to spread among themselves this message to ███████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████" That same month, internal Cooper Farms correspondence reported, █████████████████████████████████ ████████████████████████████████████.

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 326, and the same are therefore denied and the Prestage Entities specifically deny any allegations or implication that they engaged in any conspiracy or collusion.

327.    Cargill's internal presentations also confirmed ███████████████ ██████████████████████████████████████

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 327, and the same are therefore denied.

328.    As cutbacks began, Defendants started to ████████████████████ ██████████████████████████████████████

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 328, and the same are therefore denied and the Prestage Entities specifically deny any allegations or implication that they engaged in any conspiracy or collusion.

329.    By September 12, 2012, ████████████████████████████████ ████████████████████████████████

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 329, and the same are therefore denied and the

Prestage Entities specifically deny any allegations or implication that they engaged in any conspiracy or collusion.

      **4.** ███████████████████████████████████████
████████████████████

      330.    As 2012 drew to a close, Defendants continued to communicate amongst each other to ██████████████████████████.

      **Answer:**      The Prestage Entities deny the allegations of Paragraph 330.

      331.    In September 2012, ███████████████████████
████████████████████████████████████████████████
.."████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

      **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 331 as they relate to ████████████
████████████ and the same are therefore denied. The Prestage Entities deny ██████████

██████████████████████████████████████████████

████████████████████████████████

    332.    In November 2012, ███████████████████████████████████████████████████████████████████████████████████████████████ ████ "

    **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 332, and the same are therefore denied.

    333.    That exact same month, █████████████████████████████████████ In response █████████████████████████████████ In additional e-mail correspondence, Farbest executives reported that ██████████████████████████ ████████████████████████████████

    **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 333, and the same are therefore denied.

    334.    By January 2013, ██████████████████████████████████████████████████████████████████████████████████████

    **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 334, and the same are therefore denied.

    335.    That same month, "████████████████████████████████████████████.

    **Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 335, and the same are therefore denied.

    336.    The following month, █████████████████████████████████████████████████████████████████████████████████████████████████ "

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 336, and the same are therefore denied.

337. In March 2013, Hormel executives internally discussed ███████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 337, and the same are therefore denied.

338. Several months later, ████████████████████████████████ ████████████████████████████████████████:

███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 338, and the same are therefore denied.

339. On January 31, 2013, an internal Cooper Farms email revealed that ███████████ In that email thread, ███████████████████████████████████████████████████████████████████████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 339, and the same are therefore denied.

340. This prompted ████████████████████████████████████████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 340, and the same are therefore denied.

341. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 341, and the same are therefore denied.

342. Hormel's own documents from around that time confirm that ████████████████████████████████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 342, and the same are therefore denied.

343. After the █████████████████ Annual Convention on February 13–16, notes from ██████████████████████████████████████████████████████████████████
█████████████████:



In response to that message, ████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████.”

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 343, and the same are therefore denied.

344. On February 27, ████████████████████████████████████████████████████



█████████████████████████████████████████████████████████████████████.”

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 344, and the same are therefore denied.

345. The following day, internal emails within Farbest reflected █████████████
████████████████████████████████████████████████████████████████████████



.” Similarly, internal Hormel documents from March 2013, show that Hormel

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 345, and the same are therefore denied.

346. The wave of By March 21, 2013, Perdue was



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 346, and the same are therefore denied and the Prestage Entities specifically deny any allegations or implication that they engaged in any conspiracy or collusion.

347. At the end of March



” Later documents confirm they did so.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 347, and the same are therefore denied.

348.     In May 2013, public statements by Urner Barry's Vice President Russ Whitman signaled more projected cutbacks by stating "dramatic declines" in turkey production were imminent. "He cited the sharp year-to-date decline in egg sets as being the root of the anticipated contraction in production. So far in 2013, egg sets depict a retreat in year on year figures of 7% and poult placements are declining at an even more severe pace due to the numbers of them being destroyed. Whitman said that by projecting placements forward, we can ascertain that slaughter figures should start to show significant reductions in late June into early July."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 348, and the same are therefore denied.

349.     Notes from the Cooper Farms l."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 349, and the same are therefore denied.

**5.** 

350.     On May 30, 2013,

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 350, and the same are therefore denied.

351.     In June 2013, Hormel executives confirmed " The notes also stated that " " That same month, Cooper Farms executives noted ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 351, and the same are therefore denied.

352. On July 11, 2013, internal Cargill correspondence discussed ████████████████████████████████████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 352, and the same are therefore denied.

353. The Farbest Board of Directors Meeting Minutes from ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 353, and the same are therefore denied.

354. On July 23, 2013, █████████████████████████████████████████████████████████████████████████████████████████ . . ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 354, and the same are therefore denied.

355. In August 2013, Foster Farms was again evaluating whether ███████████████████████████████████████████████████████████████."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 355, and the same are therefore denied.

356. Perdue prepared a presentation in August 2013 that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"
In particular, it specified that ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████
████████████████████████████████████████████████ "

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 356, and the same are therefore denied.

357.    Despite rising prices, Hormel ████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████ ]. "'"

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 357, and the same are therefore denied.

358.    The following month, Hormel █████████████████████
████████████████████████████████ In September 2013, ████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████ . "

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 358, and the same are therefore denied.

359.    In September 2013, Cargill discussed the ████████████████
██████████████████████████████████████████████████
███████████████████████████████████



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 359, and the same are therefore denied.

360.  Even as they worked to  Cargill, the same month as it planned [...] They ultimately [...] ." They emphasized that [...] ."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 360, and the same are therefore denied and the Prestage Entities specifically deny any allegations or implication that they engaged in any conspiracy or collusion.

361.    That same month, 

In the same document, ▮▮▮ also wrote:



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 361, and the same are therefore denied.

362.   Hormel executives subsequently discussed the need to



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 362, and the same are therefore denied.

363.   By October 2013, Defendant Integrators were able to see that ▮▮▮▮▮▮▮▮▮. In an October 9, 2013 email from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 363, and the same are therefore denied and the Prestage Entities specifically deny any allegations or implication that they engaged in any conspiracy or collusion.

364.   That same month, executives at Hormel made



- 142 -



. . ."

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 364, and the same are therefore denied.

365.    Also in October 2013, Cooper Farms executives stated that

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 365, and the same are therefore denied.

366.    The following month, Cooper Farms internally discussed               Cooper Farms executives noted the               and estimated that Cooper Farms was responsible for

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 366, and the same are therefore denied.

367.    Thus, by the end of 2013, Defendants and their Co-Conspirators had used

."

**Answer:**     The Prestage Entities specifically deny any implication that they participated in any alleged conspiracy because no such conspiracy exists.  The Prestage Entities

lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 367, and the same are therefore denied.

368.    On December 26, 2013, ██████████████████████████████████████ ████████████████████████████████████████████ ."

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 368, and the same are therefore denied.

**6.** ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████

369.    Defendants' coordinated ██████████████████████████████ ████████████████ .

**Answer:**        The Prestage Entities deny the allegations of Paragraph 369.

370.    In January 2014, ████████████████████████████████████████ ████████████████████████████████████████████ ."

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 370, and the same are therefore denied.

371.    In January 2014, Cargill (internally) ████████████████████████ ██████████████████████████████████████████ ."

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 371, and the same are therefore denied.

372.    By March 24, 2014, these benefits were already measurable. In internal correspondence from Butterball, ████████████████████████████████████████ ██████████████████████████████████████████████████ !!"

- 144 -

**Answer:**   The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 372, and the same are therefore denied.

373.   Similarly, on April 23, 2014, 

**Answer:**   The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 373, and the same are therefore denied.

374.   After this, Hormel



**Answer:**   The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 374, and the same are therefore denied.

375.   In April 2014,

████████████████████████████████████████████████
██████████████████████."

**<u>Answer:</u>** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 375, and the same are therefore denied.

376. In that same month, Cargill prepared ████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████:



New market baselines were established:



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 376, and the same are therefore denied.

377. The following month, an internal presentation by Perdue,







**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 377, and the same are therefore denied.

378. In May 2014,  attended the Urner Barry conference. ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 378, and the same are therefore denied.

379. That same month, Foster Farms executives  ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 379, and the same are therefore denied.

380. In June 2014, Cargill reported internally that " 

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 380, and the same are therefore denied.

**7.** 

381. Defendants worked closely with 

**Answer:**      The Prestage Entities deny the allegations of Paragraph 381.

    **a.**



382.   In 2014, Defendants and their Co-Conspirators were enjoying record high profits, but they weren't satisfied with a one-time bump. So they came up with a longer-term solution in the form of the ███████████████████████████████████████████████████████████████████████████████████████████

**Answer:**      The Prestage Entities deny the allegations of Paragraph 382.

383.   They called their initiative ████████████████████████████████████████████████████████████████████████████████████████

**Answer:**      The Prestage Entities deny the allegations of Paragraph 383.

384.  As Gary Cooper explained in an email to an industry contact, the purpose of the program was to "████████████████████████████████████████████████████████████████████ In a competitive market, commodity producers would respond individually to fluctuations in demand such that the amount of turkey supplied would naturally closely track the amount of turkey demanded. In that world, turkey prices are competitive and fair. Defendants' proposal subverted this by having producers work together to make sure demand always outstrips supply. In this world, turkey prices are pushed artificially high because supply always lags demand.

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 384, and the same are therefore denied and they specifically deny any allegations or implication that they engaged in any conspiracy or collusion.

385.    As part of this initiative, the 2014 ███████████████ Executive Committee formed ████



**Answer:**        The Prestage Entities admit that ████████████████████████,

an informal group comprising a wide variety of participants, including other third parties other

than Defendants was organized and ████████████████ The Prestage Entities deny

the allegations of Paragraph 385 except as expressly admitted.

386.    The 2014 ████████████ Executive Committee consisted of ████



**Answer:** The Prestage Entities admit ███████████████████████ ██████████████ and admit, upon information and belief, that ████████████████ ██████████████████████████ The Prestage Entities deny the allegations of Paragraph 386 except as expressly admitted.

387.    The original members of the ████████████████████████ ██████████████████████████████████████████

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 387, and the same are therefore denied.

388.    

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 388, and the same are therefore denied.

389.    In a March 16th e-mail, 
”

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 389, and the same are therefore denied.

- 154 -

390. 

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 390, and the same are therefore denied.

391. On March 27, 2014, the 

**Answer:** The Prestage Entities admit that ▮▮▮▮▮▮ on or about March 27, 2014. The Prestage Entities deny the allegations of Paragraph 391 except as expressly admitted.

392. Prior to the meeting, ▮▮▮▮▮▮ . To date, Plaintiffs have not located a copy of the underlying "▮▮▮▮▮▮" in Defendants' production. At the subsequent in-person ▮▮▮▮▮▮ ."



**<u>Answer:</u>**     The Prestage Entities admit, upon information and belief, that ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████   The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 392, and the same are therefore denied.

    393.   Subsequent to the meeting, ██████████████████████████

████████████████████████████████████████████



."

**Answer:** The Prestage Entities admit, upon information and belief, that ████████ ████████████████████████████████████████ ███████████████████ The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 393, and the same are therefore denied.

394.    As the goals of the ████████

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 394, and the same are therefore denied.

395.    On May 28, 2014,



**Answer:** The Prestage Entities admit, upon information and belief, that ███ ███████████████████████████████████ or about May 28, 2014. ██████████ ██████████████████████████ The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 395, and the same are therefore denied.

396. On June 24, 2014, ███████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████

**Answer:** The Prestage Entities admit, upon information and belief, █████████████ ██████████ June 24, 2014 █████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████ The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 396, and the same are therefore denied.

397. Among those achievements, the ██████████████████ listed the creation of an online ██████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ .” The report also states that ███ ████████████████████████████████████████████████████████

- 158 -

███████████████████████████████████████████████████████
███████████████████████████████████████████████ In other
words, ████████████████████████████████████████████████████
████████████████████████

      **Answer:**    The Prestage Entities respond that ████████████████████
███████████████████████████ The Prestage Entities deny the allegations of
Paragraph 397 except as expressly admitted.

     398.   The following slides from an undated ███████████████████
███████████████





**Answer:**      The Prestage Entities respond that the document referenced in Paragraph 398 is in writing and is the best evidence of its contents.  The Prestage Entities deny the allegations of Paragraph 398 except as expressly admitted.



399.    On June 25, 2014, correspondence confirms that the was designed to Coopetition indeed.

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 399, and the same are therefore denied.

400.    On June 25 and June 26, 2014, the 

**Answer:**        The Prestage Entities admit, upon information and belief, that ████████ ████████████████████████████████████ on or about June 25 and 26, 2014.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 400, and the same are therefore denied.

401.    On June 27, 2014, ███████████████████████████████



**Answer:**    The Prestage Entities respond that ███████████████████ ████████████████████████████ The Prestage Entities deny the allegations of Paragraph 401 except as expressly admitted.

    402.    A July 2014 ██████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████



**<u>Answer:</u>** The Prestage Entities respond that  The Prestage Entities deny the allegations of Paragraph 402 except as expressly admitted.

403. On or around October 21, 2014, the ███████████ executive committee met ████████████████████████████████████████████████████████████████████████████████████████

**<u>Answer:</u>** The Prestage Entities admit, upon information and belief, that ███ ████████████████████ on or about October 21, 2014 and the ████████ ████████████████ The Prestage Entities deny the allegations of Paragraph 403 except as expressly admitted.

404. On October 22, 2014, ████████████████████████████████



**Answer:**    The Prestage Entities respond that ████████████████████

████████████████ The Prestage Entities deny the allegations of

Paragraph 404 except as expressly admitted.

405. ████████████████████████████████

**Answer:**    The Prestage Entities respond that ████████████████████

████████████████ The Prestage Entities deny the allegations of

Paragraph 405 except as expressly admitted.

406.    On March 26, 2015, ██████████████████████████

."



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 406, and the same are therefore denied.

407. In February 2015,



**<u>Answer:</u>** The Prestage Entities respond that ████████████████████████

███████████████████████████ The Prestage Entities lack knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 407,

and the same are therefore denied.

**b.** ████████████████████████

408.   At the same time that the ████████

███████████████████████████████

████████████████

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 408, and the same are therefore denied.  The Prestage Entities specifically deny ███████████████████████████████████████ ██████████████████████████████████████

409.    Defendants had long encouraged ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████"

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 409, and the same are therefore denied.  The Prestage Entities specifically deny ███████████████████████████████████████ ██████████████████████████████████████

410.    Internally, EMI discussed ████████████████████████████████████████ ██████████████████████████████████

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 410, and the same are therefore denied.

411.    ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████"

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 411, and the same are therefore denied.

412.    In February 2013, ████████████████████████████████████████████ ████████████████████████████

█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████."

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 412, and the same are therefore denied.

413.    Throughout 2013, EMI continued to ████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
██████████████."

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 413, and the same are therefore denied.

414.    Contemporaneously, EMI worked specifically to ██████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
██████████████."

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 414, and the same are therefore denied.

415.    By December 2013, EMI had ████████████████████████████████████
█████████████████████████████████:



**<u>Answer:</u>**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 415, and the same are therefore denied.  The Prestage Entities specifically deny 

416.  In January 2014,

███████████████████████████████████████████████████
█████ ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 416, and the same are therefore denied.  The Prestage Entities specifically deny ████████████████████████████████████

████████████████████████████████

417.   By March 2014, EMI ██████████████████████████████████
███████████████████████████████████████ ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 417, and the same are therefore denied.

418.   In April 2014, Cooper Farms agreed to ████████████████████
█████████████████████████████████████████████████████████
█████ "

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 418, and the same are therefore denied.

419.   As of July 2014, ███████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 419, and the same are therefore denied. The Prestage Entities specifically deny ███████████████████████████████████████████ ████████████████████████████

420. Throughout its development in 2014, the EMI ████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████"

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 420, and the same are therefore denied. The Prestage Entities specifically deny ███████████████████████████████████████████ ████████████████████████████

421. Following full launch of the program at the end of 2014, Defendants began ████ ██████████████████████████████████████



**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 421, and the same are therefore denied. The Prestage Entities specifically deny ██████████████████████████████████ ████████████████████████████████.

**8.** ██████████████████████████████████████ ████████████████████

422. In November 2014, Perdue celebrated ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████."

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 422, and the same are therefore denied.

423. On December 2, 2014, ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████."

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 423, and the same are therefore denied.

424. Cuts resulting from the ████████████████████████ ███████████████████████████ In September 2015, executives at a ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████.

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 424, and the same are therefore denied.

425.    In October 2015, documents show Hormel ."

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 425, and the same are therefore denied.

426.    The result of the ███████████████. On September 11, 2015, internal Foster Farms correspondence stated that the ███████████████████████████."

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 426, and the same are therefore denied.

427.    On November 6, 2015, █████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 427, and the same are therefore denied.

428. On December 17, 2015, █████████████████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 428, and the same are therefore denied.

429. On December 31, 2015, ██████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████"

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 429, and the same are therefore denied.

430. In the 2016 Cooper Farms' █████████████████████████████

███████████████████

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 430, and the same are therefore denied.

431. EMI reported that "███████████████████████████████████

███████████████████████████████████████████████████████████

█."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 431, and the same are therefore denied.

432. There was an avian influenza outbreak in 2015. However, the avian influenza outbreak does not explain the preceding supply reductions in 2013, or the record high price increases in 2014. Moreover, the avian influenza does not fully explain the supply shortages and record prices in the United States for turkey in 2015 because the avian influenza led to turkey exports during this period being heavily restricted, leaving more supply for the domestic market, as shown by evidence indicating that total per capita U.S. consumption of turkey rose in 2015. In short, the 2015 Avian

- 174 -

Flu outbreak, at most, simply exacerbated the supply shortages and record prices that were the purpose and effect of Defendants' conspiracy.

**Answer:** The Prestage Entities admit that there was an avian influenza outbreak in 2014–2015. The Prestage Entities deny the allegations of Paragraph 432 except as expressly admitted and specifically deny any implication that they participated in any alleged conspiracy or collusion.

433. Through the end of the Class Period, Defendants continued to ████████████████████████████████████████████████

**Answer:** The Prestage Entities deny the allegations in Paragraph 433.

D. ██████████████████████████████████████████

1. ██████████████████████████████████████

434. At the start of the conspiracy period, several Defendants and their Co-Conspirators (████████████████████████████████████████████) belonged to an informal group of turkey integrators known as the ████████





**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 434, and the same are therefore denied.

435.    For the purported purpose of





**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 435, and the same are therefore denied.



436.    In 2010, members of the                    worked on updating the

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 436, and the same are therefore denied.

437.    Following internal meetings at Farbest, ."

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 437, and the same are therefore denied.

438.    In August 2010, 

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 438, and the same are therefore denied.

439.    In April 2014, 



**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 439, and the same are therefore denied.

440.    At the in-person meeting, the group agreed that



**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 440, and the same are therefore denied.

441. The group also made plans to extend invitations to 



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 441, and the same are therefore denied.  The Prestage Entities specifically deny ███████████████████████████████████████████████████████████████████████████████████████████████████████████

442.    At the June 2014 meeting, the group agreed that each would ███████████████████████████████████████████████████████



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 442, and the same are therefore denied.

443.    Defendants and their Co-Conspirators in the ⬛⬛⬛⬛ subsequently prepared and circulated amongst themselves ⬛⬛⬛⬛



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 443, and the same are therefore denied.

444.    Certain ⬛⬛⬛⬛ members, such as Cooper Farms, ⬛⬛⬛⬛



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 444, and the same are therefore denied.

445.   The ▮▮▮▮▮▮ fact sheets were subsequently compiled into a ▮▮▮▮▮▮



**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 445, and the same are therefore denied.

446.   The information shared through the ▮▮▮▮▮▮



**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 446, and the same are therefore denied.

447.   ▮▮▮▮▮▮ members also attempted to use ▮▮▮▮▮▮ for direct communications regarding their business operations. A Norbest executive, over e-mail, asked



**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 447, and the same are therefore denied.

448.    The . In August 2017, the

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 448, and the same are therefore denied.

**2.** 

449.    Throughout the conspiracy period, Defendants regularly exchanged competitive pricing information with each other. These repeated exchanges of competitive pricing information further support a plausible inference of an agreement among Defendants to restrain supply and stabilize prices.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 449.

450.    For example, in January 2012, senior Hormel executive ████████, directly instructed █████████████████████████████████



████ wrote to █████:

████ forwards to █████ writing:

████ replies to █████:

- 184 -

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 450, and the same are therefore denied.

451. Hormel continued to ███████████████████████████████. In December 2013, a Hormel executive reported that ██████████  ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 451, and the same are therefore denied.

452. Hormel executives specifically discussed █████████████████ 

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 452, and the same are therefore denied.

453. In other emails, █████████████████████████



**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 453, and the same are therefore denied.

454.    Throughout the conspiracy period, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. For example, in July 2013, ▮▮▮▮▮▮▮▮▮▮▮

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 454, and the same are therefore denied.

455.    Similarly, Butterball executives ▮▮▮▮▮▮▮▮ in September 2012 that ▮▮▮▮▮

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 455, and the same are therefore denied.

456.    ▮▮▮▮▮ frequently ▮▮▮▮▮.” For example, in July 2014, ▮▮▮▮▮

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 456, and the same are therefore denied.

457.    Phone records produced to date in this litigation also show ███████████ ████████████████████

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 457, and the same are therefore denied.

458.    Cargill also reported on competitive pricing information ███████ ████████ For example, ███████████████████████████████████████

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 458, and the same are therefore denied.

459.    Apart from Hormel, Cargill, and Butterball (the 3 Defendants who collectively controlled a majority of the market), other Defendants also specifically worked to ███████████████████████████

- 187 -



**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 459, and the same are therefore denied, and the Prestage Entities specifically deny they participated in any alleged conspiracy or collusion.

460.     The regular communications between Defendants regarding their pricing continued . In July 2016,

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 460, and the same are therefore denied, and they specifically deny they participated in any alleged conspiracy or collusion.

461. The frequent exchange of pricing information between competitors allowed them to coordinate on price increases. For example, ███████████████████████████████ ████████████████████████████████████████████████████████ ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 461, and the same are therefore denied, and the Prestage Entities specifically deny they participated in any alleged conspiracy or collusion.

462. Similarly, in February 2012, Hormel executives appeared to push price increases following a communication with Cargill, ███████████████████████ ████████████████████████████████████ ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 462, and the same are therefore denied.

463. These types of information exchanges regarding pricing continued throughout the class period. In February 2014, as Hormel ████████████████████████████ ████████████████████████████████ ."

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 463, and the same are therefore denied.

464. Similarly, Cargill prepared ████████████████████████████████ ██████████████████████████████████████████████



**<u>Answer:</u>**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 464, and the same are therefore denied.

465.    These numerous direct communications also provided a 

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 465, and the same are therefore denied, and the Prestage Entities specifically deny they participated in any alleged conspiracy or collusion.

### 3.     Opportunity contacts abounded between Defendants and their Co-Conspirators and allowed them to maintain the conspiracy.

466.     Defendant Integrators are members of several turkey-related trade associations and other forums, which they used to facilitate their conspiratorial conduct. Turkey producers have numerous regular events through which they can communicate in person with one another. Regular and frequent attendance by Defendants' CEOs and top-level executives at trade-association meetings is the norm rather than the exception. Each category of opportunity contact is discussed below.

**Answer:**     The Prestage Entities admit that one or more of them were members of certain turkey-related trade associations during the relevant time period and that their executives at times attended trade association meetings.   The Prestage Entities deny the allegations of Paragraph 466 except as expressly admitted.

### a.     *Numerous Trade Association Events provided ample opportunities to directly meet and collude.*

467.     Repeated opportunities for contact at trade association meetings are critical for developing the relationships needed to implement a price-fixing conspiracy. For example, in the recent criminal trial *United States v. Penn*, et al. (the U.S. Department of Justice's ongoing trial against ten individuals for criminal price-fixing and bid-rigging of broiler chickens), one of the trial exhibits shows Defendant Jayson Penn on December 6, 2011 texting his colleague Bill Lovette stating "[t]he relationships I developed through the organization [USAPEEC] allowed me to pick up the phone any time and call multiple friends to flush out current and forward pricing from friendly competitors."[10]

**Answer:**     In response to the allegations in Paragraph 467, the Prestage Entities state that they are not involved in the broiler-chicken industry, and did not employ any defendants in *United States v. Penn, et al.*   The Prestage Entities specifically deny any implication that they

---

[10] *United States v. Penn, et al.*, No 20-cr-00152-PAB (D. Colo.), Government Exhibit 1.1 (ECF No. 448-2), filed Sept. 7, 2021, at 1.

participated in any alleged conspiracy. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 467, and the same are therefore denied.

468.     Defendants are members of many trade associations that have afforded them opportunities to become familiar and comfortable with one another. Defendants plan months in advance to attend these conventions and to have the opportunity to meet privately for dinners and meetings to discuss the turkey industry. Some of the trade association conferences highly and frequently attended by Defendants include the ███████████████████ (discussed extensively above), USA Poultry & Egg Export Council, the US Poultry & Egg Association, and the North American Meat Institute.

**Answer:**     The Prestage Entities admit that (i) one or more of them were members of certain trade associations during the relevant time period, (ii) they had to make plans to attend meetings of trade association meetings in advance of the actual meetings and (iii) they at times had dinner and meetings with other participants in the meetings. The Prestage Entities deny the allegations of Paragraph 468 except as expressly admitted.

469.     A group of turkey integrator competitors known as ████████████████ ███████████████████████████████████████████████

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 469, and the same are therefore denied.

470.     Year after year, ███████████████████████████ ████████████████████████████████████████

**Answer:**     The Prestage Entities deny the allegations of Paragraph 470 as they may relate to the Prestage Entities and respond that they lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 470 as they relate to other Defendants, and the same are therefore denied.

(1)     **The United States Poultry & Egg Export Council**

471.     The United States Poultry & Egg Export Council (USAPEEC) has its home office in Stone Mountain, Georgia. Defendants are all members of this council. USAPEEC has a network of international offices and consultants in key export markets. The mission of USAPEEC is to promote exports of U.S. poultry and eggs around the world. The council has evolved into an advocate for the industry on trade-policy issues. USAPEEC has about 200 member companies and organizations. The council holds Board of Directors meetings quarterly and includes executives from all or nearly all Defendants.

**Answer:**     The Prestage Entities admit that they were, at relevant times, members of USAPEEC. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 471, and the same are therefore denied.

472.     In April 2014, Steve Lykken (Hormel) and Joel Coleman (Vice President of USAPEEC), organized the USAPEEC turkey subcommittee. The mission of the subcommittee was to establish a coordinated industry effort to pursue open market access and a unified approach to export issues affecting the turkey membership and create a unified approach to turkey export issues affecting the turkey membership. The group met during all USAPEEC conferences and as otherwise necessary.

**Answer:**     The Prestage Entities admit, upon information and belief, that a USAPEEC subcommittee was organized in 2014 and, upon information and belief, its mission statement is in writing and is the best evidence of its contents. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 472, and the same are therefore denied.

473.     Members, otherwise known as stakeholders, that supported the subcommittee included 

**Answer:**     The Prestage Entities admit that ██████████████████████████ ████████████████████ The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 473, and the same are therefore denied.

474.     The subcommittee that was initially organized to establish a coordinated industry effort soon became hesitant to allow other industry members to join as some members wanted to keep the group small and inaccessible to others.

**Answer:**     The Prestage Entities deny the allegations of Paragraph 474, upon information and belief.

### (2)     U.S. Poultry & Egg Association

475.     The U.S. Poultry & Egg Association (U.S. Poultry) describes itself as the world's largest and most active poultry organization. U.S. Poultry's members include producers and processors of broilers, turkeys, ducks, eggs, and breeding stock, as well as allied companies. Many of the Defendants are members of U.S. Poultry. U.S. Poultry holds regular Board of Directors meetings each quarter during January, March, June, and each fall. Butterball, Cargill, Foster, Tyson, and Perdue have representation on the Board of Directors.

**Answer:**     The Prestage Entities admit that one or more of them were, at relevant times, members of the U.S. Poultry & Egg Association.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 475, and the same are therefore denied.

### (3)     North American Meat Institute

476.     The North American Meat Institute (NAMI) represents companies that process 95% of red meat and 70% of turkey products in the United States and their suppliers throughout the country. NAMI hosts the Meat Industry Summit in April each year. Additionally, it holds regular Board of Director meetings. Butterball, Cargill, Hormel, and Tyson have representation on the NAMI Board.

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 476, and the same are therefore denied.

### b.     A high degree of movement of employees permitted trusted former colleagues to have confidence exchanging pricing and supply information directly with one another.

477.     On top of attending numerous conferences and meetings together, Defendants have permitted employees to regularly move between companies. Despite changing companies, Defendants have managed to keep their pre-existing ties with former colleagues. Some of these relationships have provided CEOs and other top-level executives with comfort and trust to discuss their specific marketing and sales plans. For example, ███████████████████████

████████████████████████████████████████████████████ is just an example of the type of relationships that have afforded CEOs and executives with the opportunity and comfort to share competitively sensitive information about their company's turkey business.

**Answer:**    The Prestage Entities admit, upon information and belief, that some Defendants have employed persons in their companies who have worked at previous times for other Defendants. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 477, and the same are therefore denied, and they specifically deny that they engaged in any alleged conspiracy or collusion.

478.    Similarly, Neal Walsh, Perdue's former executive left the company to join Butterball in 2007 as the Director of Purchasing and became the Chief Operating Officer in 2020. Since ending his employment with Perdue, Walsh has managed to ████████████████████████████████████████████████████

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 478, and the same are therefore denied.

479.    Dean Lisenby served as Director of Supply Planning for Perdue, before moving to Butterball in 2008 to serve as Senior Director Supply Chain Planning. Similarly, Butterball's current Senior Vice President of Retail Sales, Chris Peach came from Perdue to Butterball in 2007. While at Perdue, Peach was the Director of Sales for 19 years before joining Butterball as their Vice President of Retail Sales.

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 479, and the same are therefore denied.

480.    Lastly, ████████████████████████████████████████████████████

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 480, and the same are therefore denied.

481.     Although the above-mentioned executives no longer work for the same employer, their relationships with former colleagues did not end. The connections shared ensured they remained in touch and allowed for opportunity, time and trust to have conversations where they could share confidentially sensitive information.

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 481, and the same are therefore denied.

### c.     *Defendants' frequent and unfettered opening up of their facilities to one another for plant tours and visits permitted extensive opportunities to share information with one another.*

482.     Defendants have found themselves on numerous occasions requesting and permitting visits and tours of their facilities to competitors. Plant tours and visits like many other private interactions have given Defendants the opportunities to gather, discuss and share competitively sensitive information.

**Answer:**     The Prestage Entities admit that their employees have at times visited the plants of other turkey processors.  The allegations of Paragraph 482 are denied except as expressly admitted.

483.     Throughout the relevant time period, several  The relationship between the Defendant competitors has been strengthened throughout the years making it possible for personal conversations to take place.

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 483, and the same are therefore denied.

484.     In October 2008, !"

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 484, and the same are therefore denied.

485.     During a 2015 visit to Cargill's facility ████████████████████████████████████████████████████████████████████████████████████████████████

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 485, and the same are therefore denied.

486.  ████████████████████████████████████████████████████████████████████████████████

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 486, and the same are therefore denied.

487.     These visits and many others have played a pivotal role in helping develop relationships between Defendant competitors.

**Answer:**     The Prestage Entities deny the allegations of Paragraph 487 as they may be deemed to relate to the Prestage Entities.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 487, and the same are therefore denied.

> **d.     *Other informal events, such as sporting events and private dinners, permitted private and confidential opportunities for Defendants' employees to directly exchange pricing and supply information.***

488.     Defendants have organized and attended numerous sporting events together. Many have even organized basketball games, golf outings, and private dinners. These events took place both during formal conferences and some occurred outside that context.

**Answer:**     The Prestage Entities admit that their employees have played golf and attended dinners with employees of other turkey producers.  The Prestage Entities deny the allegations of Paragraph 488 except as expressly admitted.

489.     For example, ████████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████

**Answer:**      The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 489, and the same are therefore denied.

490.      Golf tournaments were used extensively for opportunities for senior executives to meet with one another. Examples of annual tournaments where executives met with one another include the



**Answer:**      The Prestage Entities deny the allegations of Paragraph 490 as they may be deemed to relate to the Prestage Entities.  The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 490, and the same are therefore denied.

491.      Attendees to one or more of the

███████████████████████████████████████████

**Answer:**      The Prestage Entities admit that ██████████████████████ ████████████████████ Except as expressly admitted, The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 491, and the same are therefore denied.

492.      Attendees to one or more of



**Answer:**      The Prestage Entities admit that ██████████████████████ ████████████████████ Except as expressly admitted, The Prestage Entities

lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 492, and the same are therefore denied.

493.    Attendees to the 

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 493, and the same are therefore denied.

494.    Attendees to the 

**Answer:**    The Prestage Entities admit that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Except as expressly admitted, The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 494, and the same are therefore denied.

495.    Many of the high-ranking executives at Defendants' and their Co-Conspirators' organizations appeared to be close personal friends and would communicate frequently. On April 12, 2017, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Answer:**    The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 495, and the same are therefore denied.

    e.    ***Collusion Between Defendants in Other, Related Industries Supports an Inference of Collusion.***

496.     Defendant Agri Stats has played a central role in other protein industries. As alleged in the *In re Broiler Chicken Antitrust Litigation*, No. 16-cv-08637 (N.D. Ill.) litigation and the *In re Pork Antitrust Litigation*, No. 18-cv-1776 (D. Minn.), Agri Stats colluded with boiler and pork producers respectively to collect and disseminate competitively sensitive information such as financial information (monthly operating profits, sales, and cost per live pound), production volumes, capacity, slaughter information, inventory levels, sales data for finished product form and type.

**Answer:**     In response to the allegations in Paragraph 496, the Prestage Entities state that they are not involved in the broiler-chicken industry, nor are they a defendant in the *In re Broiler Chicken Antitrust Litigation*. The Prestage Entities specifically deny that they participated in any conspiracy or any conduct that was unlawful or had an anticompetitive effect. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 496, and the same are therefore denied.

497.     In the broiler industry, Agri Stats collected and disseminated to the other members of the conspiracy disaggregated financial information (such as monthly operating profit, sales and cost per live pound), production volumes, capacity, slaughter information, inventory levels, sales data for finished product form and type, amongst other pieces of competitively sensitive business information. The Agri Stats reports contain line-by-line entries for plants, lines, and yields of various broiler facilities. Agri Stats relied upon (and Defendants and their Co-Conspirators agreed to) a detailed audit process to verify the accuracy of data from each broiler producer's complex, sometimes directly contacting the broiler defendants to verify the data. Agri Stats also provided detailed price reports to the broiler industry through its subsidiary, EMI. Agri Stats collected data from the broiler producers on a weekly basis and provided its reports to broiler producers on a weekly and monthly basis.

**Answer:**     In response to the allegations in Paragraph 497, the Prestage Entities state that they are not involved in the broiler-chicken industry, nor are they a defendant in the *In re Broiler Chicken Antitrust Litigation*. The Prestage Entities specifically deny that they participated in any conspiracy or any conduct that was unlawful or had an anticompetitive effect. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 497, and the same are therefore denied.

498.     The detail of these reports ensured that competitors could quickly decode the information of their purported competitors. The *Broiler* complaints allege it was common

knowledge among producers that the detail of the Agri Stats reports allowed any reasonably informed producer to discern the identity of the competitors' individual broiler complexes. The broiler reports, in part, contained so few producers participating that the identities were obvious. Other reports contained such detailed data that it could be matched with the publicly stated aggregate data for larger broiler defendants such as Tyson. The complaints allege that Agri Stats purposefully circulated this information to top executives to facilitate agreement on supply, constraints, and price.

**Answer:** In response to the allegations in Paragraph 498, the Prestage Entities state that they are not involved in the broiler-chicken industry, nor are they a defendant in the *In re Broiler Chicken Antitrust Litigation*. The Prestage Entities specifically deny that they participated in any conspiracy or any conduct that was unlawful or had an anticompetitive effect. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 498, and the same are therefore denied.

499. In the broiler industry, it is also alleged that Agri Stats – known to its Co-Conspirators to be a willing and informed conduit for illicit information exchanges – used public and semi-public forums to convey messages to industry participants that furthered the purposes of the conspiracy by reassuring conspirators that production cuts would continue, and by inducing them to continue to act in concert to ensure they did. Agri Stats' own statements in the broiler industry facilitated the implementation of the agreement to restrict supply – where Agri Stats would transmit the intentions of the broiler producers to restrict supply.

**Answer:** In response to the allegations in Paragraph 499, the Prestage Entities state that they are not involved in the broiler-chicken industry, nor are they a defendant in the *In re Broiler Chicken Antitrust Litigation*. The Prestage Entities specifically deny that they participated in any conspiracy or any conduct that was unlawful or had an anticompetitive effect. The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 499, and the same are therefore denied.

500. In a February 15, 2017 Bloomberg article relating to Agri Stats' roles in the broiler industry, it was reported:

"Peter Carstensen, a law professor at the University of Wisconsin and former Justice Department antitrust lawyer who has studied Agri Stats while researching the modern poultry industry, casts the level of plant-by-plant detail in the

- 201 -

company's reports as "unusual." He explains that information-sharing services in other industries tend to deal in averaged-out aggregated data—for example, insurance rates in a given state. Such services run afoul of antitrust law, he says, when they offer projections or provide data so detailed that no competitor would reasonably share it with another. Getting detailed information is a particularly useful form of collusion, Carstensen says, because it allows Co-Conspirators to make sure they're all following through on the agreement. "This is one of the ways you do it. You make sure that your Co-Conspirators have the kind of information that gives them confidence—so they can trust you, that you're not cheating on them," he says. "*That is what creates stability for a cartel*."

**Answer:**        The Prestage Entities lack knowledge or information sufficient to form a

belief as to the truth of the allegations in Paragraph 500, and the same are therefore denied.

501.    The district court noted, in denying the motions to dismiss in the *In re Broiler Chicken Antitrust Litigation* that given the nature of the Agri Stats reports, the Defendants are in fact sharing future anticipated production information with one another, which suggests high antitrust concerns.

**Answer:**        In response to the allegations in Paragraph 501, the Prestage Entities state

that they are not involved in the broiler-chicken industry, nor are they a defendant in the *In re*

*Broiler Chicken Antitrust Litigation*.  The Prestage Entities specifically deny that they participated

in any conspiracy or any conduct that was unlawful or had an anticompetitive effect.  The Prestage

Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 501, and the same are therefore denied.

502.    The DOJ has investigated the broiler chicken industry and announced a grand jury investigation in 2019. Tyson subsequently publicly announced that it was cooperating with the DOJ Investigation. The DOJ subsequently brought criminal charges against employees at certain broiler chicken companies for collusive activities.

**Answer:**        In response to the allegations in Paragraph 502, the Prestage Entities state

that they are not involved in the broiler-chicken industry, nor are they a defendant in the *In re*

*Broiler Chicken Antitrust Litigation*.  The Prestage Entities specifically deny that they participated

in any conspiracy or any conduct that was unlawful or had an anticompetitive effect.  The Prestage

Entities lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 502, and the same are therefore denied.

**E.      The structure of the turkey industry is conducive to conspiracy.**

**1.      Defendants possess market power in the market for turkey.**

503.    One tool that courts use to assess the competitive effects of concerted action is defining a relevant market—the zone of competition among the agreeing rivals in which the agreement may affect competition. A relevant market contains both a product dimension (the "product market") and a geographic dimension (the "geographic market"). This case concerns the sale of turkey for meat consumption in the United States.

**Answer:**      The allegations of Paragraph 503 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

504.    Turkey is the relevant product market and the geographic market is the United States. Defendants collectively possess market power in the market for turkey. Defendants and their Co-Conspirators collectively possessed approximately 80 percent of the overall market share for turkeys during the Class Period. There is a single market for turkey for meat consumption. Prices for turkey sold in the United States are quoted generally in disassembled parts, with adjustments for transportation, product form (i.e., degree of processing or added value), and packaging at the time of sale.

**Answer:**      The allegations of Paragraph 504 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

**a.      There are high barriers to entry in the market for turkey for meat consumption.**

505.    The existence of high barriers to entry is one factor which makes markets susceptible to collusion. A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely. Thus, barriers to entry help facilitate the formation and maintenance of a cartel.

High barriers to entry in the turkey processing market exist, precluding other entrants or would-be competitors from entering the market for turkeys raised for consumption.

**Answer:** The allegations of Paragraph 505 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

506. During the Class Period and continuing today, substantial barriers impede entry into the turkey market. A new entrant into the market would face costly and lengthy start-up costs, including multimillion-dollar costs associated with research and development, equipment, energy, transportation. Distribution, infrastructure (aka "rolling stock"), skilled labor, experienced management, a skilled contract-farmer base in a specific geographic area, longstanding customer relationships, safety and quality assurance, and regulatory approvals relating to environmental, worker safety, and food safety issues.

**Answer:** The allegations of Paragraph 506 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

507. The price of construction of a new integrated turkey processing complex is relatively high. For example, the cost for a current market participant, Virginia Poultry Growers Cooperative, to construct a new turkey processing in 2015 was $62 million.

**Answer:** The allegations of Paragraph 507 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations. The Prestage Entities further respond that they lack knowledge or information sufficient to form a belief as to the cost to Virginia Poultry Growers to construct a turkey processing plant, and allegations relating to the same are therefore denied.

508. The turkey market has been subject to steadily increasing consolidation over the last several decades. In the 1970s, the turkey market was defined by competition among dozens of

companies that worked with independent farmers.[11] But now, just four corporations—Cargill, Hormel, Butterball, and Farbest—produce more than half of the turkey in the United States.

**Answer:** The allegations of Paragraph 508 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

509.    The turkey market also has high levels of vertical integration that constitute a barrier to entry. The ███████████████ states that "turkey companies are vertically integrated, meaning they control or contract for all phases of production."[12]

**Answer:** The allegations of Paragraph 509 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

510.    For example, Butterball has over 175 farms that they own, as well as contracts with numerous independent farmers. Hormel owns over 100 commercial growing farms. Cargill owns around 700 farms. Farbest has more than 200 contract growers.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 510, and the same are therefore denied.

    **b.**    ***The Defendants have market power in the market for turkey for meat consumption.***

---

[11] Christopher Leonard, *That Turkey on Your Plate Could Use Some More Industry Competition*, The Washington Post (Nov. 22, 2013), https://www.washingtonpost.com/opinions/that-turkey-on-your-plate-could-use-some-more-industry-competition/2013/11/22/045fc470-5177-11e3-a7f0-b790929232e1_story.html.

[12] *Industry Structure*, ██████████████████████
https://web.archive.org/web/20190617083253/https://www.eatturkey.org/industry-structure/ (last visited Jan. 7. 2022).

511.    The Defendant Integrators possess market power in the market for turkey for consumption. Defendants and their Co-Conspirators controlled at least an average of 77% of the market from 2010–2018.

**Figure 6: Average Market Share of Defendants and Their Co-Conspirators (2010–2018)**



**Answer:**        The Prestage Entities deny the allegations of Paragraph 511 as they may be deemed to relate to the Prestage Entities.  The Prestage Entities are not even included on the graph above because, upon information and belief, the Prestage Entities have a lower (and in some cases substantially lower) market share of the turkey processing industry than all, or nearly all, of the listed companies.

c.        **The market for turkey is the type of market conducive to collusion.**

512.    Competition is likely to be harmed when competitors with market power in concentrated markets, such as the market at issue, directly exchange strategic information about current and forward-looking plans for prices and supply. The strategic information exchanged between the Defendants was a competitively sensitive and a material factor in negotiations. Price,

capacity, supply and costs are crucial aspects of competition. When Defendants that are competing for the same customers exchange their strategic plans, comfort replaces uncertainty and reduces incentives to lower price or compete on other aspects of sales of turkey.

**Answer:** The allegations of Paragraph 512 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

513. The information exchange took place in private settings and involved the exchange of confidential, non-public information.

**Answer:** The Prestage Entities deny the allegations in Paragraph 513.

514. The market for turkey is characterized by numerous attributes that mean the type of information exchange facilitated by Agri Stats are particularly likely to have anticompetitive effects. In particular, the market for turkey features relatively few sellers, a fungible product, price-based competition, inelastic demand, and a trend toward price uniformity.

**Answer:** The allegations of Paragraph 514 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

### 2. The market for turkey is the type of market where information exchanges and per se price-fixing behaviors are likely to harm competition.

#### a. *The turkey market features few sellers.*

515. The turkey market is concentrated, with relatively few sellers. The Defendants and their Co-Conspirators control approximately 80 percent of turkey production and processing. The presence of few companies supports the inference that a conspiracy to exchange information had the intended effect of restraining competition.

**Answer:** The allegations of Paragraph 515 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To

the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

### b.    Turkey is a fungible product.

516.    One of the distinct characteristics of the turkey industry is the fungibility of turkey products. Fungibility is also known as the ability to be freely exchangeable or replaceable in whole or in part. Common sense indicates that at Thanksgiving a consumer can substitute a whole turkey produced by Butterball with a whole turkey produced by Cargill.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 516.

517.    Indeed, the Agri Stats reports themselves show that turkey is fungible because they aggregate data across Defendants for particular types of turkey products and allow Defendants to compare detailed information on prices for the same fungible product. CW1 confirmed that the Agri Stats reports were organized by specific item of turkey product. And, as shown above, the Agri Stats reports are broken out by specific types of turkey product.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 517.

### c.    The turkey market features price-based competition.

518.    Turkey is a commodity market that faces price-based competition. Turkey is a tangible, commodity product with little or no product differentiation based on the processors. Turkey produced by one Defendant is reasonably interchangeable with that from another Defendant. Defendants ███████████████████████████████████████████████████████████████████████████████████████████ ██████████.” Production cuts—no matter where they originate—will affect the prices (and consequently profitability) of the entire turkey industry. No matter where the cuts originate, all turkey processing firms can expect to benefit.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 518.

### d.    Demand for turkey is relatively inelastic.

519.    Price elasticity of demand (PED) is a measure used to quantify the degree to which quantity demand for a good or service changes with respect to price.[13] A PED value between 0 and

---

[13] *See, e.g.*, Jeffrey M. Perloff, Microeconomics with Calculus, 28-31 (2d Ed.); Patrick L. Anderson, et al., *Price Elasticity of Demand* (Nov. 13, 1997), https://scholar.harvard.edu/files/alada/files/price_elasticity_of_demand_handout.pdf; Gadi Fibich, Arieh Gavious & Oded Lowengart, *The Dynamics of Price Elasticity of Demand in the Presence*

-1 indicates there is inelastic demand for the good or service – i.e., a 1 percent increase in price induces a less than 1 percent decrease in quantity demanded. The USDA has estimated that the average PED estimate for the turkey market is -0.58 – meaning the demand for turkey is inelastic. Indeed, most American consumers eat turkey at Thanksgiving, not pork or chicken, illustrating that there is no substitute for one of the key demand drivers of turkey.

**Answer:** The allegations of Paragraph 519 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

### e.  The turkey market features a trend towards price uniformity.

520.  Collusion becomes easier for manufacturers of a homogenous product when prices are the only way in which products can be differentiated from one another. For example, whole turkey products are produced on a commercial scale and sold in supermarkets. Whole turkeys are virtually indistinguishable, with similar nutritional values, branding and packaging.

**Answer:** The allegations of Paragraph 520 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

### f.  *The turkey industry is highly vertically integrated.*

521.  In the turkey industry, the phrase "vertically integrated" means that the turkey producing company owns or controls each aspect of breeding, hatching, rearing, feeding, basic processing, and selling of turkey. Many vertically integrated turkey producing companies also own further processing plants. The turkey industry is highly vertically integrated, with turkey-producing companies owning or tightly controlling almost all aspects of production, processing, and marketing turkey.

**Answer:** The allegations of Paragraph 521 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To

---

*of Reference Price Effects*, 33 J. Academy Mktg. Science 66-78 (2005), *available at* http://www.math.tau.ac.il/~fibich/Manuscripts/elasticity_JAMS.pdf.

the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

522.     The graphic below, taken from a Butterball PowerPoint presentation, :



BB is 100% vertically integrated, meaning we own every aspect from Farm to product being received at your OpCo. We are not a buyer of raw materials, we use all of our own raw materials

**Answer:**     The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 522, and the same are therefore denied.

## F.     Abnormal pricing during the Class Period demonstrates the anticompetitive effects of the alleged conduct by Defendants and their Co-Conspirators.

523.     Beginning in 2010, following the coordinated cutbacks described above, the turkey industry showed abnormal price movements, *i.e.*, price increases for whole turkeys that was unexplained by increases in costs. All of these pricing measurements show a significant break between pricing prior to 2010 and pricing after 2010, supporting the plausibility of anticompetitive effects on the turkey market from the alleged anticompetitive conduct. Plaintiffs have measured the various abnormal pricing movements in a number of ways, including: (i) the average turkey

price, (ii) the Defendant Integrators' margin during the Class Period;(iii) the variation between feed and turkey prices before and during the Class Period; and (iv) a regression analysis that models the relationship between turkey prices and feed prices.

**Answer:** The allegations of Paragraph 523 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations. The Prestage Entities specifically deny they engaged in any "coordinated cutbacks."

### 1. The average turkey wholesale price experienced an unprecedented increase beginning in 2009.

524. According to aggregate prices published by the USDA, the average wholesale price per pound for turkey hens was between $0.55 and $0.85 every year from 2000 to 2009, before steadily increasing to $1.15 by 2016. Following initiation of the *Broilers* litigation, the price of turkey then quickly returned to the price at which it was prior to the conspiracy. The following graph shows the unprecedented increase in turkey prices beginning in 2009, and staying elevated through the end of 2016.

**Figure 7: Average Turkey Wholesale Prices in Cents per lbs., 2000-2018**



**Answer:** The allegations of Paragraph 524 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To

- 211 -

the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

### 2. Beginning in 2009, Defendants' revenues diverged from their costs.

525.    Plaintiffs' experts examined the spread between turkey revenue and turkey-related costs (costs of goods sold + operating costs) for Hormel, the only one of the three largest turkey Defendant Integrators with public earnings, as a proxy for measuring the spread between a Defendant's price of wholesale turkey and their turkey costs. This measurement accounts for Defendant-specific operating costs.[14] This analysis confirms the beginning of abnormal pricing in 2009, where there was a divergence in revenue and costs beginning at the start of the Class Period in 2009.

**Answer:**    The allegations of Paragraph 525 appear to relate only to Hormel and contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required.  To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

526.    The following chart shows a break in revenues and costs around the start of the Class Period in 2010 for Hormel's Jennie-O Turkey brand:

**Figure 8: Jennie-O's Revenues vs Costs (March 2001 to March 2018)**

_____

[14] Hormel does not make any data publicly available on Jennie-O's costs. Therefore, Plaintiffs have assumed for the purposes of this analysis that Jennie-O's costs are the same proportion to Hormel's overall costs as Jennie-O's revenues are to Hormel's overall revenues.



**Answer:** The allegations of Paragraph 526 appear to relate only to Hormel and contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

527. The anticompetitive effect of Defendants' information exchange is seen in the dramatic increase in Jennie-O's spread between revenue and costs after the start of the conspiracy period.

**Figure 9: Jennie-O Turkey's spread: Revenue minus Cost 2001-2018**



**Answer:** The allegations of Paragraph 527 appear to relate only to Hormel and contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

528. These analyses of the spread between costs and prices confirm one essential fact – that rising costs do not explain the increases in price seen during the Class Period.

**Answer:** The allegations of Paragraph 528 appear to relate only to Hormel and contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

**3. During the conspiracy period, prices rose but production failed to rise to match demand, indicating an anticompetitive restraint on supply in the market for turkey facilitated by the information exchange through Agri Stats and the per se exchange of pricing and supply information between Defendants.**

529. In a competitive market, production generally matches demand. More demand will lead to more supply. Conversely, a drop in production caused by falling demand should correspond

to falling prices. However, in the turkey market during the conspiracy period, production, measured through USDA data, remained artificially restrained even as demand, captured by higher per capita expenditures on turkey, rose significantly. These observed price and output dynamics, shown in the below chart, are consistent with an anticompetitive effect on turkey output facilitated by the information exchange through Agri Stats.

**Figure 10: Indexed Per Capita Expenditure v. Production**



**Answer:** The allegations of Paragraph 529 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

**4. During the conspiracy period, prices of turkey radically diverged from the costs of underlying feed.**

530. Feed is the primary driver of turkey costs, accounting for approximately 60-70% of the overall cost of raising turkeys for sale according to the New York Times.[15] Prior to the conspiracy period, there was a tight relationship between the price of feed and the price of turkey,

_____

[15] Paul Sullivan, *In the Labyrinth of Turkey Pricing, a Reason Under Every Giblet*. The New York Times (Nov. 18, 2011), https://www.nytimes.com/2011/11/19/your-money/a-primer-to-calculate-turkey-prices.html.

as would be expected in a competitive commodity market that was pricing its product based on its primary input cost. However, during the conspiracy period, the relationship between the price of feed and the price of turkey diverged dramatically, as would be expected as an anticompetitive effect of the information exchange that allowed the Defendant Integrators to charge more than was justified by their input costs. The divergence is illustrated in the below chart:

**Figure 11: Relationship Between Feed and Hen Prices**



**Answer:** The allegations of Paragraph 530 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

**5. A regression model demonstrates the anticompetitive effects on the price of turkey caused by the information exchange conducted through Agri Stats as well as the direct exchange of pricing and supply information.**

531. To demonstrate the anticompetitive effects of Defendants' information exchange on the market for turkey, Plaintiffs' experts have done a regression model based on the relationship between the price of turkey hens and the price of turkey feed, which is the primary input cost for turkeys. The formula of the regression is the following: $(HenPrice)=a+\beta(FeedPrice)t+et$. As shown below, the regression shows a significant elevation

- 216 -

in the prices of turkey during the conspiracy period, showing the effects of the information exchange through Agri Stats:

**Figure 12: Regression Model Showing Price of Hens and Feed (2000–2019)**



**Answer:**    The allegations of Paragraph 531 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

### V.    DEFENDANTS ACTIVELY CONCEALED THE EXTENT OF THEIR INFORMATION EXCHANGE AND PLAINTIFFS DID NOT AND COULD NOT HAVE DISCOVERED DEFENDANTS' ANTICOMPETITIVE CONDUCT.

532.    Plaintiffs and the members of the Class had neither actual nor constructive knowledge of the facts constituting their claim for relief. Plaintiffs and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until shortly before filing this complaint. Defendants engaged in a secret information exchange that did not reveal facts that would put Plaintiffs or the Class on inquiry notice that there was an anticompetitive agreement to exchange information regarding the market for turkey. Throughout the Class Period, Defendants effectively,

affirmatively, and fraudulently concealed their anticompetitive agreement from Plaintiffs and class members.

> **Answer:** The Prestage Entities deny the allegations in Paragraph 532, upon information and belief.

533.    In 2009, the President of Agri Stats, Bryan Snyder, commented on how secretive the true nature of Agri Stats was when he stated:

> Agri Stats has always been kind of a quiet company. **There's not a whole lot of people that know a lot about us obviously due to confidentiality that we try to protect. We don't advertise. We don't talk about what we do. It's always kind of just in the background**, and really our specialty is working directly with companies about their opportunities and so forth.

> **Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 533, and the same are therefore denied.

534.    At the same 2009 presentation, when discussing "bottom line numbers" (a company's net earnings), Snyder declined to display those numbers publicly, stating "I'm not going to display the actual bottom line to the group here just because of the confidential[] nature of the information." Further, in response to a request ████████████████ Agri Stats' Stacey Edwards declined, stating "████████████████████████████████."

> **Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 534, and the same are therefore denied.

535.    Not until recently was the extent of the information exchange conducted through Agri Stats widely known or reported. Only after the filing of a February 7, 2018 Second Consolidated and Amended Complaint by the End User Plaintiff Class in the *In re* Broiler *Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.), was there a comprehensive presentation of the full scope of the confidential services that Agri Stats provides to its clients in the broiler industry.

> **Answer:** The Prestage Entities deny the allegations of Paragraph 535.

536.    The filing of that amended complaint collectively disclosed the likelihood that the turkey industry was using Agri Stats to share confidential industry information that could facilitate an anticompetitive conspiracy.

> **Answer:** The Prestage Entities deny the allegations of Paragraph 536.

537. Defendants concealed the extent of their information exchange through Agri Stats. Indeed, to this day, it is not publicly known the number of companies that receive Agri Stats reports regarding turkey. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' turkey prices before these recent events.

**Answer:** The Prestage Entities deny the allegations of Paragraph 537.

## VI. CLASS ACTION ALLEGATIONS

538. Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the common law of unjust enrichment and the state antitrust, unfair competition, and consumer protection laws of the states and territories listed below (the "Indirect Purchaser States")[16] on behalf of the following Commercial and Institutional Indirect Purchasers Class:

> All entities in the Indirect Purchaser States that indirectly purchased fresh or frozen, uncooked turkey breast, ground turkey, or whole bird turkey products[17] sold by Defendants in the United States during the Class Period for their own use in commercial food preparation. Specifically excluded from this Class are the Defendants and their Co-Conspirators; the officers, directors or employees of any Defendant or Co-Conspirator; any entity in which any Defendant or their Co-Conspirator has a controlling interest; any entity with an interest, controlling or non-controlling, in a Defendant or their Co-Conspirator; any (in whole or in part), affiliate, legal representative, heir or assign of any Defendant or their Co-Conspirator. Also excluded from this Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any Co-Conspirator identified in this action.

---

[16] The Indirect Purchaser States include the following states (and territory): Arizona, Arkansas, California, District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

[17] Turkey breast products excludes: (1) turkey breasts used to make ground turkey, (2) organic turkey breast products, (3) No Antibiotics Ever ("NAE") turkey breast products, and (4) cooked or Ready-to-Eat ("RTE") turkey breast products. Ground turkey products excludes: (1) ground turkey products made from turkey breasts, (2) ground turkey products made from turkey wings, (3) burgers, sausages, and patties, (4) organic ground turkey products, (5) NAE ground turkey products, and (6) cooked or RTE ground turkey products. Whole bird turkey products excludes: (1) organic turkey whole bird products, (2) NAE turkey whole bird products, and (3) cooked or RTE turkey whole bird products.

**Answer:** The allegations of Paragraph 538 contain legal conclusions or Plaintiffs' own description of their claims to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions, descriptions and/or allegations.

539. Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief pursuant to the Sherman Act on behalf of the Commercial and Institutional Indirect Purchasers Class.

**Answer:** The allegations of Paragraph 539 contain legal conclusions or Plaintiffs' own description of their claims to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions, descriptions and/or allegations.

540. Plaintiffs reserve the right to modify the class definitions at a later date.

**Answer:** Paragraph 540 fails to assert any allegations, and thus no response is required.

541. While Plaintiffs do not know the exact number of the members of the Class, there are likely thousands of class members.

**Answer:** The Prestage Entities lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 541, and the same are therefore denied.

542. Common questions of law and fact exist as to all members of the Class. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of the Class, thereby making appropriate relief with respect to the Class as a whole. Such questions of law and fact common to the Class include, but are not limited to:

(a) Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or stabilize prices of turkey in the United States;

(b) Whether Defendants and their co-conspirators participated in meetings and trade association conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements that they reached;

(c) The identity of the participants of the alleged conspiracy;

(d) The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(e)      Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Count;

(f)      Whether the alleged conspiracy violated state antitrust and unfair competition laws, and/or state consumer protection laws, as alleged in the Second and Third Counts;

(g)      Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Class, thereby entitling Plaintiffs and the members of the Class to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Count;

(h)      Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Class;

(i)      The effect of the alleged conspiracy on the prices of turkey sold in the United States during the Class Period;

(j)      Whether the Defendants and their co-conspirators actively concealed, suppressed, and failed to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities to artificially inflate prices for turkey, and/or fraudulently concealed the unlawful conspiracy's existence from Plaintiffs and the other members of the Class;

(k)      The appropriate injunctive and related equitable relief for the Commercial and Institutional Indirect Purchasers Class; and

(l)      The appropriate class-wide measure of damages for the Commercial and Institutional Indirect Purchasers Class.

**Answer:**      The allegations of Paragraph 542 contain legal conclusions or Plaintiffs' own description of their claims to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions, descriptions and/or allegations.

543.     Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for turkey purchased indirectly. Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class.

**Answer:**      The allegations of Paragraph 543 contain legal conclusions or Plaintiffs' own description of their claims to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions, descriptions and/or allegations.

544.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Class. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

**Answer:** The allegations of Paragraph 544 contain legal conclusions or Plaintiffs' own description of their claims to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions, descriptions and/or allegations.

545. The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

**Answer:** The allegations of Paragraph 545 contain legal conclusions or Plaintiffs' own description of their claims to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions, descriptions and/or allegations.

546. Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action. Plaintiffs reserve the discretion to certify the Class as separate classes for each of the Indirect Purchaser States or as separate classes for certain groups of Indirect Purchaser States, should the Court's subsequent decisions in this case render that approach more efficient.

**Answer:** The allegations of Paragraph 546 contain legal conclusions or Plaintiffs' own description of their claims to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions, descriptions and/or allegations.

547. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

**Answer:** The allegations of Paragraph 547 contain legal conclusions or Plaintiffs' own description of their claims to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions, descriptions and/or allegations.

## VII. ANTITRUST INJURY

548. Defendants' anticompetitive conduct had the following effects, among others:

> A.  Price competition has been restrained or eliminated with respect to turkey;
> B.  The prices of turkey have been fixed, raised, stabilized, or maintained at artificially inflated levels;
> C.  Commercial and institutional indirect purchasers of turkey have been deprived of free and open competition; and
> D.  Commercial and institutional indirect purchasers of turkey, including plaintiffs, paid artificially inflated prices.

**Answer:**    The Prestage Entities deny the allegations in Paragraph 548.

549.    Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge paid by the commercial and institutional indirect purchasers. Thus, the economic harm to plaintiffs and the class members can be quantified.

**Answer:**    The Prestage Entities deny the allegations in Paragraph 549.

550.    The purpose of the conspiratorial conduct of defendants and their co-conspirators was to raise, fix, or maintain the price of turkey and, as a direct and foreseeable result, plaintiffs and the Class paid supra-competitive prices for turkey during the Class Period.

**Answer:**    The Prestage Entities deny the allegations in Paragraph 550.

551.    By reason of the alleged violations of the antitrust laws, plaintiffs and the Class have sustained injury to their businesses or property, having paid higher prices for turkey than they would have paid in the absence of defendants' illegal contract, combination, or conspiracy and as a result have suffered damages.

**Answer:**    The Prestage Entities deny the allegations in Paragraph 551.

552.    This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

**Answer:**    The Prestage Entities deny the allegations in Paragraph 552.

## VIII.   CAUSES OF ACTION

## COUNT I

## Violation of Section 1 of the Sherman Act (15 U.S.C. §§ 1, 3)

### Claim I
### (Rule Of Reason Violation)

553.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

**Answer:**     The Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in the preceding paragraphs of this Answer.

554.     Beginning at a time currently unknown to plaintiffs, but at least as early as January 1, 2010, and continuing at least until December 31, 2016, the exact dates being unknown to plaintiffs, defendants and their co-conspirators entered into a continuing agreement to regularly exchange detailed, timely, competitively sensitive and non-public information about their operations. This agreement is an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**Answer:**     The Prestage Entities deny the allegations of Paragraph 554.

555.     Defendants' acts in furtherance of their combination or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of defendants' affairs.

**Answer:**     The Prestage Entities deny the allegations of Paragraph 555.

556.     Defendants' anticompetitive acts involved United States domestic commerce and import commerce, and had a direct, substantial, and foreseeable effect on interstate commerce by raising and fixing prices for turkey throughout the United States.

**Answer:**     The Prestage Entities deny the allegations of Paragraph 556.

557.     The relevant product market is turkey and the relevant geographic market is the United States.

**Answer:**     The allegations of Paragraph 557 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required.  To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

558.     Defendant integrators possess market power in the Relevant Market. Defendant integrators and their co-conspirators controlled approximately 80 percent of the Relevant Market. Defendant integrators' collective market power includes the power to artificially deflate the amount of turkey produced in the United States below competitive levels and to artificially inflate the price plaintiffs pay for turkey above competitive levels.

**Answer:** The allegations of Paragraph 558 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

559. Defendants could impose an increase in the price of turkey collectively without causing many consumers and businesses to switch their purchases to another product. Turkey constitutes a unique product market.

**Answer:** The allegations of Paragraph 559 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

560. Defendants view the turkey products as fungible. Turkey products are generally interchangeable, permitting defendant integrators to readily to compare and match each other's pricing.

**Answer:** The allegations of Paragraph 560 contain legal conclusions and/or allegations subject to proof, including by expert testimony, to which no response is required. To the extent a response is deemed required, the Prestage Entities deny such conclusions and/or allegations.

561. The information regularly exchanged by defendants pursuant to the agreement has consisted of detailed, competitively sensitive and non-public information about current supply, production and pricing plans regarding turkey. The information exchanges specifically included the exchange through Agri Stats of weekly and monthly reports regarding defendants' turkey operations, including weekly sales data that allowed defendants to compare their prices with their competitors and raise prices that were lower.

**Answer:** The Prestage Entities deny the allegations of Paragraph 561.

562. Defendants' regular information exchanges through Agri Stats reflected concerted action between horizontal competitors in the market for turkey.

**Answer:** The Prestage Entities deny the allegations of Paragraph 562.

563.    Each defendant integrator furnished competitively sensitive information to other defendant integrators with the understanding that it would be reciprocated. Agri Stats enforced this understanding by requiring defendants to share data in order to receive comparable data.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 563.

564.    The agreement to regularly exchange detailed and non-public information about current production, supply, and pricing suppressed competition between the defendants. Agri Stats specifically identified for defendants the instances where their pricing was lower than other defendants and where they could raise their prices to match.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 564.

565.    When defendants that are competing for the same consumers and businesses exchange competitive information, it reduces the incentives to compete on price. Accordingly, defendants used the data obtained through Agri Stats to reduce the uncertainty that they each should have faced from not knowing what their competitors were offering and providing in the turkey market. This strategic information was a material factor in defendant integrators' decisions to inflate the prices that plaintiffs paid for turkey during the Class Period.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 565.

566.    Defendants' unlawful agreements to exchange, and the actual exchanges of nonpublic, timely, and detailed data were not reasonably necessary to further any procompetitive purpose. The information exchanged between defendants was current, easily traceable to its source, confidential, and related to a core characteristic of competition between them.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 566.

567.    The information-exchange agreement has had the effect of (1) reducing and suppressing competition among defendants in the market for turkey in the United States and (2) inflating the prices of turkey during the Class Period. As a result of defendants' unlawful conduct, plaintiffs and the members of the Class have been harmed by being forced to pay inflated, supracompetitive prices for turkey.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 567.

568.    As a direct and proximate result of defendants' anticompetitive conduct, plaintiffs and members of the Class have been injured in their business or property and will continue to be injured in their business and property by paying more for turkey than they would have paid and will pay in the absence of the conspiracy.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 568.

569.    Plaintiffs and members of the Class are entitled to an injunction against Defendants, preventing and restraining the continuing violations alleged herein.

- 226 -

**Answer:** Paragraph 569 of the Complaint states legal conclusions to which no response is required. To the extent a response may be required, the Prestage Entities deny the allegations in Paragraph 569.

## Claim II
### (*Per Se* Violation)

570. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

**Answer:** The Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in the preceding paragraphs of this Answer.

571. Defendants and all of their Co-Conspirators entered into and engaged in a combination or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**Answer:** The Prestage Entities deny the allegations of Paragraph 571.

572. Defendants' acts in furtherance of their combination or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

**Answer:** The Prestage Entities deny the allegations of Paragraph 572.

573. At least as early as January 1, 2010, and at least until December 31, 2016, the exact dates being unknown to Plaintiffs, Defendants and all of their Co-Conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to fix, raise, stabilize, and maintain prices for Turkey, thereby creating anticompetitive effects.

**Answer:** The Prestage Entities deny the allegations of Paragraph 573.

574. Defendants engaged in coordinated production cutbacks in 2008 and 2009, raised prices in 2010-2011, engaged in another round of coordinated production cutbacks in 2012 and 2013, and reaped record profits following their second round of cutbacks. Defendants coordinated through repeated direct communications regarding their production cutbacks and he retention of Agri Stats to provide current and forward forecasting, including the ██████████████████████

Numerous plus factors further support the inference of a per se agreement, including 1) direct information exchanges between Defendants regarding current production levels through their participation in the ███████████████; 2) frequent exchanges between Defendants of competitive pricing information; 3) numerous opportunity contacts through participation in trade associations and other social interactions; 4) a market structure conducive to collusion.

**Answer:** The Prestage Entities deny the allegations of Paragraph 574.

575. Defendants' anticompetitive acts involved United States domestic commerce and import commerce, and had a direct, substantial, and foreseeable effect on interstate commerce by raising and fixing prices for Turkey throughout the United States.

**Answer:** The Prestage Entities deny the allegations of Paragraph 575.

576. The conspiratorial acts and combinations have caused unreasonable restraints in the market for Turkey.

**Answer:** The Prestage Entities deny the allegations of Paragraph 576.

577. As a result of Defendants' unlawful conduct, Plaintiffs and the members of the Class have been harmed by being forced to pay inflated, supra-competitive prices for Turkey.

**Answer:** The Prestage Entities deny the allegations of Paragraph 577.

578. In formulating and carrying out their alleged agreement, understanding and conspiracy, Defendants and all of their Co-Conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth in this Complaint. Defendants' conspiracy had the following effects, among others:

A. Price competition in the market for Turkey has been restrained, suppressed, and/or eliminated in the United States;

B. Prices for Turkey sold by Defendants, their divisions, subsidiaries, and affiliates, and all of their Producer Co-Conspirators have been fixed, raised, stabilized, and maintained at artificially high, non-competitive levels throughout the United States; and

C. Plaintiffs and members of the Class have been deprived of the benefits of free and open competition in the purchase of Turkey.

**Answer:** The Prestage Entities deny the allegations of Paragraph 578.

579. Defendants took all of the actions alleged in this Complaint with the knowledge and intended effect that their actions would proximately cause the price of Turkey on the spot market to be higher than it would be but for Defendants' conduct. Defendants also knew and intended that such an artificial inflation of spot market prices would increase other Turkey market prices, including those paid by Plaintiffs and members of the Class.

**Answer:** The Prestage Entities deny the allegations of Paragraph 579.

580. As a direct and proximate result of Defendants' anticompetitive conduct, Plaintiffs and members of the Class have been injured in their business or property and will continue to be injured in their business and property by paying more for Turkey than they would have paid and will pay in the absence of the conspiracy.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 580.

581.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 581.

582.    Plaintiffs and members of the Class are entitled to an injunction against Defendants, preventing and restraining the continuing violations alleged herein.

**Answer:**    Paragraph 582 of the Complaint states legal conclusions to which no response is required. To the extent a response may be required, the Prestage Entities deny the allegations in Paragraph 582.

### COUNT II
### Rule of Reason and *Per Se* Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Class)

583.    Plaintiffs repeat the allegations set forth above as if fully set forth herein, and each of the state-specific causes of action described below incorporates the allegations as if fully set forth therein.

**Answer:**    The Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in the preceding paragraphs of this Answer.

584.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of turkey in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 584.

585.    The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive prices for turkey, including in the United States and its territories.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 585.

586.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including agreeing to fix, increase, inflate, maintain, or stabilize effective prices of turkey purchased by Plaintiffs and

members of the Class; and (b) participating in meetings and trade association conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

> **Answer:**     The Prestage Entities deny the allegations of Paragraph 586.

587.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize prices of turkey. As a direct and proximate result, Plaintiffs and members of the Class were deprived of free and open competition and paid more for turkey than they otherwise would have in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

> **Answer:**     The Prestage Entities deny the allegations of Paragraph 587.

588.    In addition, Defendants have profited significantly from the conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of Plaintiffs and the members of the Class.

> **Answer:**     The Prestage Entities deny the allegations of Paragraph 588.

589.    Accordingly, Plaintiffs and the members of the Class in each of the following jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the following state laws.

> **Answer:**     Paragraph 589 fails to assert any allegations, and thus no response is
> required.  To the extent a response is required, The Prestage Entities deny the allegations in
> Paragraph 589.

590.    Defendants' anticompetitive acts described above were knowing, willful and constitute violations of the following state antitrust statutes.

> **Answer:**     The Prestage Entities deny the allegations of Paragraph 590.

591.    **Arizona:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Ariz. Rev. Stat. §44-1401, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for turkey was restrained, suppressed, and eliminated throughout Arizona; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under Ariz. Rev. Stat. §44-1401, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have

- 230 -

entered into an unlawful agreement in restraint of trade in violation of Ariz. Rev. Stat. §44-1401, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for turkey was restrained, suppressed, and eliminated throughout Arizona; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under Ariz. Rev. Stat. §44-1401, *et seq*.

**Answer:** In response to part (A) of Paragraph 591, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 591, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 591.

592. **California:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Cal. Bus. & Prof. Code §16700, *et seq*. During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Cal. Bus. & Prof. Code §16720. Each defendant has acted in violation of Cal. Bus. & Prof. Code §16720 to fix, raise, stabilize, and maintain prices of turkey at supracompetitive levels. The violations of Cal. Bus. & Prof. Code §16720 consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of turkey. For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which they combined and conspired to do, including, but not limited to, the acts, practices and course of conduct set forth above, and creating a price floor, fixing, raising, and stabilizing the price of turkey. The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition for turkey has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for turkey provided by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased turkey indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition. As a result of Defendants' violation of Cal. Bus. & Prof. Code §16720, Plaintiffs and members of the Class seek treble damages and their cost of suit, including a reasonable attorneys' fee, pursuant to Cal. Bus. & Prof. Code §16750(a). (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Cal. Bus. & Prof. Code §16700, *et seq*. During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing

unlawful trust in restraint of the trade and commerce described above in violation of Cal. Bus. & Prof. Code §16720. Each defendant has acted in violation of Cal. Bus. & Prof. Code §16720 to fix, raise, stabilize, and maintain prices of turkey at supracompetitive levels. The violations of Cal. Bus. & Prof. Code §16720 consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of turkey. For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which they combined and conspired to do, including, but not limited to, the acts, practices and course of conduct set forth above, and creating a price floor, fixing, raising, and stabilizing the price of turkey. The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition for turkey has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for turkey provided by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased turkey indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition. As a result of Defendants' violation of Cal. Bus. & Prof. Code §16720, Plaintiffs and members of the Class seek treble damages and their cost of suit, including a reasonable attorneys' fee, pursuant to Cal. Bus. & Prof. Code §16750(a).

**Answer:** In response to part (A) of Paragraph 592, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 592, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 592.

593. **District of Columbia:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of D.C. Code §28-4501, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Class, including those who resided in the District of Columbia and purchased turkey in the District of Columbia, paid supracompetitive, artificially inflated prices for turkey, including in the District of Columbia. During the Class Period, Defendants' illegal conduct substantially affected commerce in the District of Columbia. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of D.C. Code §28-4501, *et seq*. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under D.C. Code §28-4501, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-

173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of D.C. Code §28-4501, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Class, including those who resided in the District of Columbia and purchased turkey in the District of Columbia, paid supracompetitive, artificially inflated prices for turkey, including in the District of Columbia. During the Class Period, Defendants' illegal conduct substantially affected commerce in the District of Columbia. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of D.C. Code §28-4501, *et seq*. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under D.C. Code §28-4501, *et seq*.

> **Answer:** In response to part (A) of Paragraph 593, the Prestage Entities incorporate
>
> and reassert, as though fully set forth herein, each and every response and answer set forth in
>
> Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to
>
> part (B) of Paragraph 593, the Prestage Entities incorporate and reassert, as though fully set forth
>
> herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and
>
> deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities
>
> deny the allegations in Paragraph 593.

594. **Illinois**: (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq*. The Defendants' combinations or conspiracies had the following effects: (1) Turkey price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Illinois Compiled Statutes 10/1, *et seq*. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under 740 Illinois Compiled Statutes 10/1, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq*. The Defendants' combinations or conspiracies had the following effects: (1) Turkey price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Illinois Compiled Statutes 10/1, *et seq*. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under 740 Illinois Compiled Statutes 10/1, *et seq*.

**Answer:** In response to part (A) of Paragraph 594, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 594, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 594.

595. **Iowa:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code §553.1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Iowa; (2) turkey prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §553.1, *et seq*. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under Iowa Code §553.1, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code §553.1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Iowa; (2) turkey prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §553.1, *et seq*. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under Iowa Code §553.1, *et seq*.

**Answer:** In response to part (A) of Paragraph 595, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 595, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and

deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 595.

596.    **Kansas:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Kan. Stat. §50-101, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Kansas; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under Kan. Stat. §50-101, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Kan. Stat. §50-101, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Kansas; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under Kan. Stat. §50-101, *et seq*.

**Answer:**    In response to part (A) of Paragraph 596, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 596, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 596.

597.    **Maine:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Me. Rev. Stat. Ann. tit. 10, § 1101. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Maine; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Me. Rev. Stat. Ann. tit. 10, § 1104. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Me. Rev. Stat. Ann. Tit. 10, § 1101. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Maine; (2) turkey

prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Me. Rev. Stat. Ann. Tit. 10, § 1104.

**Answer:** In response to part (A) of Paragraph 597, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 597, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 597.

598. **Michigan:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws §445.771, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Michigan; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Mich. Comp. Laws §445.771, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws §445.771, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Michigan; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Mich. Comp. Laws §445.771, *et seq*.

**Answer:** In response to part (A) of Paragraph 598, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 598, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and

deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 598.

599.    **Minnesota:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Minn. Stat. §325D.49, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Minn. Stat. §325D.49, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Minn. Stat. §325D.49, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Minn. Stat. §325D.49, *et seq*.

    **Answer:**        In response to part (A) of Paragraph 599, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to part (B) of Paragraph 599, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 599.

600.    **Mississippi:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Miss. Code §75-21-1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Miss. Code §7521-1, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Miss. Code §75-21-1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey

- 237 -

price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Miss. Code §75-21-1, *et seq*.

**Answer:**        In response to part (A) of Paragraph 600, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 600, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 600.

601.    **Nebraska:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Neb. Rev. Stat. §59-801, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Neb. Rev. Stat. §59-801, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Neb. Rev. Stat. §59-801, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Neb. Rev. Stat. §59-801, *et seq*.

**Answer:**        In response to part (A) of Paragraph 601, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 601, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and

- 238 -

deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 601.

602. **Nevada:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Nev. Rev. Stat. Ann. §598A.010, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Nevada; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Nev. Rev. Stat. Ann. §598A.010, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Nev. Rev. Stat. Ann. §598A.010, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Nevada; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Nev. Rev. Stat. Ann. §598A.010, *et seq*.

**Answer:** In response to part (A) of Paragraph 602, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 602, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 602.

603. **New Hampshire:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of New Hampshire Revised Statutes Ann. §356:1. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under New Hampshire Revised Statutes §356:1, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of New Hampshire Revised Statutes Ann.

§356:1. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under New Hampshire Revised Statutes §356:1, *et seq.*

**Answer:** In response to part (A) of Paragraph 603, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 603, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 603.

604. **New Mexico:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of New Mexico Statutes Annotated § 57-1-1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under New Mexico Statutes Annotated § 57-1-1, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of New Mexico Statutes Annotated § 57-1-1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under New Mexico Statutes Annotated § 57-1-1, *et seq.*

**Answer:** In response to part (A) of Paragraph 604, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 604, the Prestage Entities incorporate and reassert, as though fully set forth

herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 604.

605. **New York:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of New York General Business Laws § 340, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout New York; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York. During the Class Period, Defendants' illegal conduct substantially affected New York commerce. The conduct set forth above is a per se violation of the Donnelly Act, § 340, *et seq.* Accordingly, Plaintiffs and members of the Class seek all relief available under New York General Business Laws § 340, *et seq.* (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of New York General Business Laws § 340, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout New York; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York. During the Class Period, Defendants' illegal conduct substantially affected New York commerce. The conduct set forth above is a per se violation of the Donnelly Act, § 340, *et seq.* Accordingly, Plaintiffs and members of the Class seek all relief available under New York General Business Laws § 340, *et seq.*

**Answer:** In response to part (A) of Paragraph 605, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 605, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 605.

606. **North Carolina:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of North Carolina General Statutes § 75-1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; During the Class Period, Defendants' illegal conduct substantially affected North Carolina

- 241 -

commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under North Carolina General Statutes § 75-16, *et seq.* (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of North Carolina General Statutes § 75-1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under North Carolina General Statutes § 75-16, *et seq*.

**Answer:** In response to part (A) of Paragraph 606, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 606, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 606.

607. **North Dakota:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of N.D. Cent. Code §51-08.1-01, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under N.D. Cent. Code §51-08.1-01, *et seq.* (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of N.D. Cent. Code §51-08.1-01, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under N.D. Cent. Code §51-08.1-01, *et seq*.

**Answer:** In response to part (A) of Paragraph 607, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in

Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 607, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 607.

608. **Oregon:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Or. Rev. Stat. § 646.725, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed and eliminated throughout Oregon; (2) turkey prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon. During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Or. Rev. Stat. § 646.780, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Or. Rev. Stat. § 646.725, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed and eliminated throughout Oregon; (2) turkey prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon. During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Or. Rev. Stat. § 646.780, *et seq*.

**Answer:** In response to part (A) of Paragraph 608, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 608, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 608.

609. **Rhode Island:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Rhode Island General Laws § 6-36-4, *et seq.* The Rhode Island statutes allow actions on behalf of indirect purchasers for conduct during the Class Period. Defendants' combinations or conspiracies had the following effects: (1) turkey price

competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island. During the Class Period, Defendants' illegal conduct had a substantial effect on Rhode Island commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Rhode Island General Laws § 6-36-11, *et seq.* (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Rhode Island General Laws § 636-4, *et seq.* The Rhode Island statutes allow actions on behalf of indirect purchasers for conduct during the Class Period. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island. During the Class Period, Defendants' illegal conduct had a substantial effect on Rhode Island commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Rhode Island General Laws § 6-36-11, *et seq.*

> **Answer:**     In response to part (A) of Paragraph 609, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to part (B) of Paragraph 609, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 609.

610.     **South Dakota:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of South Dakota Codified Laws § 37-1-3.1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) turkey prices were raised, fixed, and stabilized at artificially high levels throughout South Dakota. During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under South Dakota Codified Laws § 37-1-3.1, *et seq.* (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of South Dakota Codified Laws § 371-3.1, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) turkey prices were raised, fixed, and stabilized at artificially high levels throughout South Dakota. During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under South Dakota Codified Laws § 37-1-3.1, *et seq.*

**Answer:** In response to part (A) of Paragraph 610, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 610, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 610.

611. **Tennessee:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Tenn. Code Ann. §47-25-101, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee. During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Tenn. Code Ann. §47-25-101, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Tenn. Code Ann. §47-25-101, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee. During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Tenn. Code Ann. §47-25-101, *et seq*.

**Answer:** In response to part (A) of Paragraph 611, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 611, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 611.

612.    **Vermont:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of 9 Vermont Stat. Ann. § 2453, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Vermont; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under 9 V.S.A. § 2465, *et seq.* (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of 9 Vermont Stat. Ann. § 2453, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Vermont; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under 9 V.S.A. § 2465, *et seq.*

**Answer:**        In response to part (A) of Paragraph 612, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to part (B) of Paragraph 612, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 612.

613.    **West Virginia:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of West Virginia Code § 47-18-3, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia. During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under West Virginia Code § 47-18-9, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of West Virginia Code § 47-18-3, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia. During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce. Accordingly,

Plaintiffs and members of the Class seek all relief available under West Virginia Code § 47-18-9, *et seq*.

**Answer:**     In response to part (A) of Paragraph 613, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to part (B) of Paragraph 613, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 613.

614.    **Wisconsin:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Wis. Stat. §133.01, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin. During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Wis. Stat. §133.01, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161173 as if fully set forth herein. Defendants have entered into an unlawful agreement in restraint of trade in violation of Wis. Stat. §133.01, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin. During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce. Accordingly, Plaintiffs and members of the Class seek all relief available under Wis. Stat. §133.01, *et seq*.

**Answer:**     In response to part (A) of Paragraph 614, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to part (B) of Paragraph 614, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and

deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities

deny the allegations in Paragraph 614.

## COUNT III
### Rule of Reason and *Per Se* Violation of State Consumer Protection Statutes
### (on Behalf of Plaintiffs and the Class)

615.    Plaintiffs repeat the allegations set forth above as if fully set forth herein, and each of the state-specific causes of action described below incorporates the allegations as if fully set forth therein.

**Answer:**    The Prestage Entities incorporate and reassert, as though fully set forth

herein, each and every response and answer set forth in the preceding paragraphs of this Answer.

616.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 616.

617.    **California:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of Cal. Bus. & Prof. Code §17200, *et seq*. During the Class Period, Defendants manufactured, marketed, sold, or distributed turkey in California, and committed and continue to commit acts of unfair competition, as defined by Cal. Bus. & Prof. Code §17200, *et seq*., by engaging in the acts and practices specified above. This claim is instituted pursuant to Cal. Bus. & Prof. Code §§17203 and 17204, to obtain restitution from these Defendants for acts, as alleged herein, that violated Cal. Bus. & Prof. Code §17200, commonly known as the Unfair Competition Law. Defendants' conduct as alleged herein violated Cal. Bus. & Prof. Code §17200. The acts, omissions, misrepresentations, practices and nondisclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of Cal. Bus. & Prof. Code §17200, *et seq*., including, but not limited to, the following: (1) the violations of §1 of the Sherman Act, as set forth above; (2) the violations of Cal. Bus. & Prof. Code §16720, *et seq*., set forth above. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Cal. Bus. & Prof. Code §16720, *et seq*., and whether or not concerted or independent acts, are otherwise unfair, unconscionable unlawful or fraudulent; (3) Defendants' acts or practices are unfair to purchasers of turkey in the State of California within the meaning of Cal. Bus. & Prof. Code §17200 *et. seq.*; and (4) Defendants' acts and practices are fraudulent or deceptive within the meaning of Cal. Bus. & Prof. Code §17200, *et seq*. Plaintiffs and members of the Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendants as a result of such business acts or practices. The illegal conduct alleged herein is continuing and there is no indication that Defendants will not

continue such activity into the future. The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Class to pay supracompetitive and artificially inflated prices for turkey. Plaintiffs and the members of the Class suffered injury in fact and lost money or property as a result of such unfair competition. The conduct of Defendants as alleged in this Complaint violates Cal. Bus. & Prof. Code §17200, *et seq*. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to Cal. Bus. & Prof. Code §§17203 and 17204. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of Cal. Bus. & Prof. Code §17200, *et seq*. During the Class Period, Defendants manufactured, marketed, sold, or distributed turkey in California, and committed and continue to commit acts of unfair competition, as defined by Cal. Bus. & Prof. Code §17200, *et seq*., by engaging in the acts and practices specified above. This claim is instituted pursuant to Cal. Bus. & Prof. Code §§17203 and 17204, to obtain restitution from these Defendants for acts, as alleged herein, that violated Cal. Bus. & Prof. Code §17200, commonly known as the Unfair Competition Law. Defendants' conduct as alleged herein violated Cal. Bus. & Prof. Code §17200. The acts, omissions, misrepresentations, practices and nondisclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of Cal. Bus. & Prof. Code §17200, *et seq*., including, but not limited to, the following: (1) the violations of §1 of the Sherman Act, as set forth above; (2) the violations of Cal. Bus. & Prof. Code §16720, *et seq*., set forth above. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Cal. Bus. & Prof. Code §16720, *et seq*., and whether or not concerted or independent acts, are otherwise unfair, unconscionable unlawful or fraudulent; (3) Defendants' acts or practices are unfair to purchasers of turkey in the State of California within the meaning of Cal. Bus. & Prof. Code §17200 *et. seq.*; and (4) Defendants' acts and practices are fraudulent or deceptive within the meaning of Cal. Bus. & Prof. Code §17200, *et seq*. Plaintiffs and members of the Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendants as a result of such business acts or practices. The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future. The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Class to pay supracompetitive and artificially inflated prices for turkey. Plaintiffs and the members of the Class suffered injury in fact and lost money or property as a result of such unfair competition. The conduct of Defendants as alleged in this Complaint violates Cal. Bus. & Prof. Code §17200, *et seq*. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to Cal. Bus. & Prof. Code §§17203 and 17204.

**Answer:** In response to part (A) of Paragraph 617, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 617, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 617.

618. **Florida:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq*. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Florida; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida. During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers. Accordingly, Plaintiffs and members of the Class seek all relief available under Fla. Stat. §501.201, *et seq*. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq*. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Florida; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida. During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers. Accordingly, Plaintiffs and members of the Class seek all relief available under Fla. Stat. §501.201, *et seq*.

**Answer:** In response to part (A) of Paragraph 618, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 618, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 618.

619. **Minnesota**: (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq*. Defendants engaged in unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiffs as purchasers of the Defendants' goods, and which caused Plaintiffs to suffer injury. Defendants took efforts to conceal their agreements from Plaintiffs and the members of the Class. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce and turkey purchasers. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.43, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute and as equity demands. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq*. Defendants engaged in unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiffs as purchasers of the Defendants' goods, and which caused Plaintiffs to suffer injury. Defendants took efforts to conceal their agreements from Plaintiffs and the members of the Class. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce and turkey purchasers. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.43, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute and as equity demands.

**Answer:**        In response to part (A) of Paragraph 619, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to part (B) of Paragraph 619, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 619.

620. **Nebraska**: (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq*. Defendants' unlawful conduct had the following

effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska. During the Class Period, Defendants marketed, sold, or distributed turkey in Nebraska, and Defendants' illegal conduct substantially affected Nebraska commerce and turkey purchasers. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq*. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska. During the Class Period, Defendants marketed, sold, or distributed turkey in Nebraska, and Defendants' illegal conduct substantially affected Nebraska commerce and turkey purchasers. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

**Answer:** In response to part (A) of Paragraph 620, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 620, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 620.

621. **New Hampshire**: (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq*. Defendants sold turkey in New Hampshire and deceived Plaintiffs and Class Members in New Hampshire into believing that the turkey were competitively priced. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Class, who resided in New Hampshire and/or purchased the turkey in New Hampshire were deprived of free and open competition in New Hampshire; and (4) Plaintiffs and members of the Class, who resided in New Hampshire and/or purchased turkey in New Hampshire paid supracompetitive, artificially inflated prices for turkey in New Hampshire. During the Class Period, Defendants marketed, sold, or distributed turkey in New Hampshire, and Defendants' illegal conduct substantially affected New Hampshire

commerce and turkey purchasers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq*. Defendants sold turkey in New Hampshire and deceived Plaintiffs and Class Members in New Hampshire into believing that the turkey were competitively priced. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Class, who resided in New Hampshire and/or purchased the turkey in New Hampshire were deprived of free and open competition in New Hampshire; and (4) Plaintiffs and members of the Class, who resided in New Hampshire and/or purchased turkey in New Hampshire paid supracompetitive, artificially inflated prices for turkey in New Hampshire. During the Class Period, Defendants marketed, sold, or distributed turkey in New Hampshire, and Defendants' illegal conduct substantially affected New Hampshire commerce and turkey purchasers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

**Answer:** In response to part (A) of Paragraph 621, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 621, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 621.

622. **New Mexico:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.* In New Mexico, price-fixing is actionable as an "unconscionable trade practice" under N.M. Stat. § 57-12-2(E) because it "takes advantage of the lack of knowledge ... of a person to a grossly unfair degree" and also results in a "gross disparity between the value received by a person and the price paid." Defendants had the sole power to set that price, and Plaintiffs and members of the Class had no meaningful ability to negotiate a lower price from wholesalers. Moreover, Plaintiffs and members of the Class lacked any meaningful choice in purchasing turkey because

they were unaware of the unlawful overcharge, and there was no alternative source of supply through which Plaintiffs and members of the Class could avoid the overcharges. Defendants' conduct with regard to sales of turkey, including their illegal conspiracy to secretly fix the price of turkey at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs and members of the Class. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed and eliminated throughout New Mexico; (2) turkey prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supracompetitive, artificially inflated prices for turkey. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.* In New Mexico, price-fixing is actionable as an "unconscionable trade practice" under N.M. Stat. § 57-12-2(E) because it "takes advantage of the lack of knowledge ... of a person to a grossly unfair degree" and also results in a "gross disparity between the value received by a person and the price paid." Defendants had the sole power to set that price, and Plaintiffs and members of the Class had no meaningful ability to negotiate a lower price from wholesalers. Moreover, Plaintiffs and members of the Class lacked any meaningful choice in purchasing turkey because they were unaware of the unlawful overcharge, and there was no alternative source of supply through which Plaintiffs and members of the Class could avoid the overcharges. Defendants' conduct with regard to sales of turkey, including their illegal conspiracy to secretly fix the price of turkey at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs and members of the Class. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed and eliminated throughout New Mexico; (2) turkey prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supracompetitive, artificially inflated prices for turkey. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

  **Answer:**  In response to part (A) of Paragraph 622, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in

Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 622, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 622.

623. **New York:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which turkey were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Class. Defendants and their co-conspirators made public statements about the prices of turkey that either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for turkey; and Defendants alone possessed material information that was relevant to consumers and businesses, but failed to provide the information. Because of Defendants' unlawful trade practices in the State of New York, New York class members who indirectly purchased turkey were misled to believe that they were paying a fair price for turkey or the price increases for turkey were for valid business reasons; and similarly situated consumers and businesses were affected by Defendants' conspiracy. Defendants knew that their unlawful trade practices with respect to pricing turkey would have an impact on New York consumers and businesses and not just Defendants' direct customers. Defendants knew that their unlawful trade practices with respect to pricing turkey would have a broad impact, causing commercial and institutional indirect purchaser class members who indirectly purchased turkey to be injured by paying more for turkey than they would have paid in the absence of Defendants' unlawful trade acts and practices. The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of customers and commercial and institutional indirect purchasers in New York State in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout New York; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supracompetitive, artificially inflated prices for turkey. During the Class Period, Defendants marketed, sold, or distributed turkey in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers. During the Class Period, each of Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed turkey in New York. Plaintiffs and members of the Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h). (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in

unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which turkey were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Class. Defendants and their co-conspirators made public statements about the prices of turkey that either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for turkey; and Defendants alone possessed material information that was relevant to consumers and businesses, but failed to provide the information. Because of Defendants' unlawful trade practices in the State of New York, New York class members who indirectly purchased turkey were misled to believe that they were paying a fair price for turkey or the price increases for turkey were for valid business reasons; and similarly situated consumers and businesses were affected by Defendants' conspiracy. Defendants knew that their unlawful trade practices with respect to pricing turkey would have an impact on New York consumers and businesses and not just Defendants' direct customers. Defendants knew that their unlawful trade practices with respect to pricing turkey would have a broad impact, causing commercial and institutional indirect purchaser class members who indirectly purchased turkey to be injured by paying more for turkey than they would have paid in the absence of Defendants' unlawful trade acts and practices. The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of customers and commercial and institutional indirect purchasers in New York State in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed, and eliminated throughout New York; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supracompetitive, artificially inflated prices for turkey. During the Class Period, Defendants marketed, sold, or distributed turkey in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers. During the Class Period, each of Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed turkey in New York. Plaintiffs and members of the Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

**Answer:**     In response to part (A) of Paragraph 623, the Prestage Entities incorporate

and reassert, as though fully set forth herein, each and every response and answer set forth in

Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to

part (B) of Paragraph 623, the Prestage Entities incorporate and reassert, as though fully set forth

herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and

deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities

deny the allegations in Paragraph 623.

624. **North Carolina:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.C. Gen. Stat. §75-1.1, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which turkey were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Class. Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases. The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and injury to commercial and institutional indirect purchasers along with broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers and commercial and institutional indirect purchasers in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed and eliminated throughout North Carolina; (2) turkey prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supracompetitive, artificially inflated prices for turkey. During the Class Period, Defendants marketed, sold, or distributed turkey in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed turkey in North Carolina. Plaintiffs and members of the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. §75-1.1, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.C. Gen. Stat. §75-1.1, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which turkey were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Class. Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases. The conduct of Defendants described herein constitutes consumer-

oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and injury to commercial and institutional indirect purchasers along with broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers and commercial and institutional indirect purchasers in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects: (1) turkey price competition was restrained, suppressed and eliminated throughout North Carolina; (2) turkey prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supracompetitive, artificially inflated prices for turkey. During the Class Period, Defendants marketed, sold, or distributed turkey in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed turkey in North Carolina. Plaintiffs and members of the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. §75-1.1, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

**Answer:** In response to part (A) of Paragraph 624, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 624, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer, and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 624.

625. **North Dakota**: (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the North Dakota Unlawful Sales or Advertising Practices Statute, N.D. Century Code § 51-15-01, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce in North Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which turkey was sold, distributed, or obtained in North Dakota. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for turkey. Defendants misrepresented to all purchasers during the Class Period that Defendants' turkey prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for turkey was restrained, suppressed, and eliminated throughout North Dakota; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota. During the

Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce and turkey purchasers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of turkey, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing turkey at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute violations of N.D. Century Code § 51-15-01, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161–173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the North Dakota Unlawful Sales or Advertising Practices Statute, N.D. Century Code § 51-15-01, *et seq*. Defendants agreed to and, did in fact, act in restraint of trade or commerce in North Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which turkey was sold, distributed, or obtained in North Dakota. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for turkey. Defendants misrepresented to all purchasers during the Class Period that Defendants' turkey prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for turkey was restrained, suppressed, and eliminated throughout North Dakota; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce and turkey purchasers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of turkey, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing turkey at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute violations of N.D. Century Code § 51-15-01, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

**Answer:** In response to part (A) of Paragraph 625, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 625, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and

deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 625.

626. **South Carolina:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed and eliminated throughout South Carolina; (2) turkey prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Carolina. During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §39-5-10 *et seq*., and, accordingly, Plaintiffs and the members of the Class seek all relief available under that statute. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq*. Defendants' combinations or conspiracies had the following effects: (1) turkey price competition was restrained, suppressed and eliminated throughout South Carolina; (2) turkey prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Carolina. During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §39-5-10 *et seq*., and, accordingly, Plaintiffs and the members of the Class seek all relief available under that statute.

**Answer:** In response to part (A) of Paragraph 626, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 626, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 626.

627. **South Dakota**: (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair

competition or unfair, unconscionable, or deceptive acts or practices in violation of the South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D. Codified Laws § 3724-1, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce in South Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which turkey was sold, distributed, or obtained in South Dakota. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for turkey. Defendants misrepresented to all purchasers during the Class Period that Defendants' turkey prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for turkey was restrained, suppressed, and eliminated throughout South Dakota; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota. Defendants' illegal conduct substantially affected South Dakota commerce and on those who purchased turkey in South Dakota. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of turkey, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing turkey at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Class as they related to the cost of turkey they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D. Codified Laws § 37-24-1, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce in South Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which turkey was sold, distributed, or obtained in South Dakota. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for turkey. Defendants misrepresented to all purchasers during the Class Period that Defendants' turkey prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for turkey was restrained, suppressed, and eliminated throughout South Dakota; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota. Defendants' illegal conduct substantially affected South Dakota commerce and on those who purchased turkey in South Dakota. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of turkey, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing turkey at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Class as they related to the cost of turkey they purchased. Defendants

have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

    **<u>Answer:</u>**    In response to part (A) of Paragraph 627, the Prestage Entities incorporate

and reassert, as though fully set forth herein, each and every response and answer set forth in

Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to

part (B) of Paragraph 627, the Prestage Entities incorporate and reassert, as though fully set forth

herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and

deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities

deny the allegations in Paragraph 627.

    628.    **Vermont:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont Stat. Ann. § 2451, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which turkey were sold, distributed, or obtained in Vermont. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for turkey. Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' turkey prices were competitive and fair. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of turkey, likely misled all commercial and institutional indirect purchasers acting reasonably under the circumstances to believe that they were purchasing turkey at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont Stat. Ann. § 2451, *et seq.* Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which turkey were sold, distributed, or obtained in Vermont. Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and

artificially inflated prices for turkey. Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' turkey prices were competitive and fair. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of turkey, likely misled all commercial and institutional indirect purchasers acting reasonably under the circumstances to believe that they were purchasing turkey at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

**Answer:** In response to part (A) of Paragraph 628, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 628, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 628.

629. **Wisconsin**: (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Wisconsin Consumer Protection Statutes, Wisc. Stat. § 100.18, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Wisconsin, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which turkey was sold, distributed, or obtained in Wisconsin. Defendants affirmatively misrepresented to all purchasers during the Class Period that Defendants' turkey prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for the turkey was restrained, suppressed, and eliminated throughout Wisconsin; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin. Defendants' illegal conduct substantially affected Wisconsin commerce and purchasers of turkey. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations concerning the price of turkey at issue, misled all purchasers

acting reasonably under the circumstances to believe that they were purchasing turkey at prices set by a free and fair market. Defendants' affirmative misrepresentations constitute information important to Plaintiffs and members of the Class as they related to the cost of turkey they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wisc. Stat. § 100.18, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Wisconsin Consumer Protection Statutes, Wisc. Stat. § 100.18, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Wisconsin, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which turkey was sold, distributed, or obtained in Wisconsin. Defendants affirmatively misrepresented to all purchasers during the Class Period that Defendants' turkey prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for the turkey was restrained, suppressed, and eliminated throughout Wisconsin; (2) turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin. Defendants' illegal conduct substantially affected Wisconsin commerce and purchasers of turkey. As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations concerning the price of turkey at issue, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing turkey at prices set by a free and fair market. Defendants' affirmative misrepresentations constitute information important to Plaintiffs and members of the Class as they related to the cost of turkey they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wisc. Stat. § 100.18, *et seq*., and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

**Answer:** In response to part (A) of Paragraph 629, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 629, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 629.

**COUNT IV**
**Rule of Reason and *Per Se* Violation of State Unjust Enrichment Law**
**(on behalf of Plaintiffs and the Class)**

630.    Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

**Answer:**    The Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in the preceding paragraphs of this Answer.

631.    To the extent required, this claim is pleaded in the alternative to the other claims in this Complaint.

**Answer:**    Paragraph 631 fails to assert any allegations, and thus no response is required.

632.    Defendants have unlawfully benefited from their sales of turkey because of the unlawful and inequitable acts alleged in this Complaint. Defendants unlawfully overcharged privately held commercial and institutional indirect purchasers, which purchased turkey at prices that were more than they would have been but for Defendants' unlawful actions.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 632.

633.    Defendants' financial benefits resulting from their unlawful and inequitable acts are traceable to overpayments by Plaintiffs and members of the Class.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 633.

634.    Plaintiffs and the Class have conferred upon Defendants an economic benefit, in the nature of profits resulting from unlawful overcharges, to the economic detriment of Plaintiffs and the Class.

**Answer:**    The Prestage Entities deny the allegations of Paragraph 634.

635.    Defendants have been enriched by revenue resulting from unlawful overcharges for turkey while Plaintiffs and members of the Class has been impoverished by the overcharges they paid for turkey imposed through Defendants' unlawful conduct. Defendants' enrichment and the impoverishment of Plaintiffs and members of the Class are connected.

**Answer**    The Prestage Entities deny the allegations of Paragraph 635.

636.    There is no justification for Defendants' retention of, and enrichment from, the benefits they received, which caused impoverishment to Plaintiffs and the Class, because Plaintiffs

and the Class paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges.

  **Answer:**   The Prestage Entities deny the allegations of Paragraph 636.

  637.  Plaintiffs did not interfere with Defendants' affairs in any manner that conferred these benefits upon Defendants.

  **Answer:**   The Prestage Entities deny the allegations of Paragraph 637.

  638.  The benefits conferred upon Defendants were not gratuitous, in that they constituted revenue created by unlawful overcharges arising from Defendants' illegal and unfair actions to inflate the prices of turkey.

  **Answer:**   The Prestage Entities deny the allegations of Paragraph 638.

  639.  The benefits conferred upon Defendants are measurable, in that the revenue Defendants have earned due to their unlawful overcharges of turkey are ascertainable by review of sales records.

  **Answer:**   The Prestage Entities deny the allegations of Paragraph 639.

  640.  It would be futile for Plaintiffs and the Class to seek a remedy from any party with whom they have privity of contract. Defendants have paid no consideration to any other person for any of the unlawful benefits they received indirectly from Plaintiffs and the Class with respect to Defendants' sales of turkey.

  **Answer:**   The Prestage Entities deny the allegations of Paragraph 640.

  641.  It would be futile for Plaintiffs and the Class to seek to exhaust any remedy against the immediate intermediary in the chain of distribution from which they indirectly purchased turkey, as the intermediaries are not liable and cannot reasonably be expected to compensate Plaintiffs and the Class for Defendants' unlawful conduct.

  **Answer:**   The Prestage Entities deny the allegations of Paragraph 641.

  642.  The economic benefit of overcharges and monopoly profits derived by Defendants through charging supracompetitive and artificially inflated prices for turkey is a direct and proximate result of Defendants' unlawful practices.

  **Answer:**   The Prestage Entities deny the allegations of Paragraph 642.

  643.  The financial benefits derived by Defendants rightfully belong to Plaintiffs and the Class, because Plaintiffs and the Class paid supracompetitive prices during the Class Period, inuring to the benefit of Defendants.

**Answer:**      The Prestage Entities deny the allegations of Paragraph 643.

644.    It would be inequitable under unjust enrichment principles under the law of the states where unjust enrichment claims are asserted below for Defendants to be permitted to retain any of the overcharges for turkey derived from Defendants' unlawful, unfair, and unconscionable methods, acts, and trade practices alleged in this Complaint.

**Answer:**      The Prestage Entities deny the allegations of Paragraph 644.

645.    Defendants are aware of and appreciate the benefits bestowed upon them by Plaintiffs and the Class. Defendants consciously accepted the benefits and continue to do so as of the date of this filing, as turkey prices remain inflated above pre-conspiracy levels.

**Answer:**      The Prestage Entities deny the allegations of Paragraph 645.

646.    Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds they received from their sales of turkey.

**Answer:**      The Prestage Entities deny the allegations of Paragraph 646.

647.    A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to indirect purchases of turkey by Plaintiffs and the Class. Plaintiffs and the Class have no adequate remedy at law.

**Answer:**      The Prestage Entities deny the allegations of Paragraph 647.

648.   **Arkansas:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Arkansas at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue to which Defendants are not entitled resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants accepted and retain the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Arkansas at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue to which Defendants are not entitled resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants accepted and retain the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members.

**Answer:**     In response to part (A) of Paragraph 648, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 648, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 648.

649.     **Arizona:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Arizona at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for turkey. Plaintiffs has been impoverished by the overcharges for turkey resulting from Defendants' unlawful conduct. Defendants' enrichment and Plaintiffs' impoverishment are connected. Defendants have paid no consideration to any other person for any benefits they received from Plaintiffs and Class Members. There is no justification for Defendants' receipt of the benefits causing their enrichment and Plaintiffs' impoverishment, because Plaintiffs paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. Plaintiffs and Class Members have no remedy at law. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Arizona at prices that were more than they would have been but for Defendants' actions. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants have been enriched by revenue resulting from unlawful overcharges for turkey. Plaintiffs has been impoverished by the overcharges for turkey resulting from Defendants' unlawful conduct. Defendants' enrichment and Plaintiffs' impoverishment are connected. Defendants have paid no consideration to any other person for any benefits they received from Plaintiffs and Class Members. There is no justification for Defendants' receipt of the benefits causing their enrichment and Plaintiffs' impoverishment, because Plaintiffs paid supracompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges. Plaintiffs and Class Members have no remedy at law.

**Answer:**     In response to part (A) of Paragraph 649, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 649, the Prestage Entities incorporate and reassert, as though fully set forth

herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 649.

650. **District of Columbia:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in the District of Columbia at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants accepted and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to Plaintiffs and Class Members. Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in the District of Columbia at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants accepted and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to Plaintiffs and Class Members. Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits.

**Answer:** In response to part (A) of Paragraph 650, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 650, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 650.

651. **Iowa:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Iowa at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for turkey, which revenue resulted from anticompetitive prices paid by Plaintiffs, which inured to Defendants' benefit. Defendants' enrichment has occurred at the expense of Plaintiffs and Class Members. It is unjust for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges. (B) *Per se* violation: Plaintiffs repeat the allegations set

forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Iowa at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for turkey, which revenue resulted from anticompetitive prices paid by Plaintiffs, which inured to Defendants' benefit. Defendants' enrichment has occurred at the expense of Plaintiffs and Class Members. It is unjust for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

**Answer:** In response to part (A) of Paragraph 651, the Prestage Entities incorporate

and reassert, as though fully set forth herein, each and every response and answer set forth in

Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to

part (B) of Paragraph 651, the Prestage Entities incorporate and reassert, as though fully set forth

herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and

deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities

deny the allegations in Paragraph 651.

652. **Kansas:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Kansas at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to Plaintiffs and Class Members. Defendants were unjustly enriched at the expense of Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Kansas at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to Plaintiffs and Class Members. Defendants were unjustly enriched at the expense of Plaintiffs and Class Members.

**Answer:** In response to part (A) of Paragraph 652, the Prestage Entities incorporate

and reassert, as though fully set forth herein, each and every response and answer set forth in

Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to

part (B) of Paragraph 652, the Prestage Entities incorporate and reassert, as though fully set forth

herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 652.

653. **Maine:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Maine at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to Plaintiffs and Class Members. Defendants were aware of and appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Defendants were unjustly enriched at the expense of Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Maine at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to Plaintiffs and Class Members. Defendants were aware of and appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Defendants were unjustly enriched at the expense of Plaintiffs and Class Members.

**Answer:** In response to part (A) of Paragraph 653, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 653, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 653.

654. **Michigan:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Michigan at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members to which Defendants are not entitled. Defendants accepted and retain the benefit bestowed upon them by Plaintiffs and Class Members. Under the

circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Michigan at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members to which Defendants are not entitled. Defendants accepted and retain the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members.

**Answer:** In response to part (A) of Paragraph 654, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 654, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 654.

655. **Minnesota:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Minnesota at prices that were more than they would have been but for Defendants' actions. Defendants appreciated and knowingly accepted the benefits bestowed upon them by Plaintiffs and Class Members. Defendants have paid no consideration to any other person for any of the benefits they have received from Plaintiffs and Class Members. It is inequitable for Defendants to accept and retain the benefits received without compensating Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Minnesota at prices that were more than they would have been but for Defendants' actions. Defendants appreciated and knowingly accepted the benefits bestowed upon them by Plaintiffs and Class Members. Defendants have paid no consideration to any other person for any of the benefits they have received from Plaintiffs and Class Members. It is inequitable for Defendants to accept and retain the benefits received without compensating Plaintiffs and Class Members.

**Answer:** In response to part (A) of Paragraph 655, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to

part (B) of Paragraph 655, the Prestage Entities incorporate and reassert, as though fully set forth

herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and

deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities

deny the allegations in Paragraph 655.

656.    **Mississippi:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Mississippi at prices that were more than they would have been but for Defendants' actions. Defendants retain the benefit of overcharges received on the sales of turkey, which in equity and good conscience belong to Plaintiffs and Class Members on account of Defendants' anticompetitive conduct. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Mississippi at prices that were more than they would have been but for Defendants' actions. Defendants retain the benefit of overcharges received on the sales of turkey, which in equity and good conscience belong to Plaintiffs and Class Members on account of Defendants' anticompetitive conduct.

**Answer:**        In response to part (A) of Paragraph 656, the Prestage Entities incorporate

and reassert, as though fully set forth herein, each and every response and answer set forth in

Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to

part (B) of Paragraph 656, the Prestage Entities incorporate and reassert, as though fully set forth

herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and

deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities

deny the allegations in Paragraph 656.

657.    **Missouri:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Missouri at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Defendants accepted and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Missouri at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an

- 273 -

economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Defendants accepted and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to Plaintiffs and Class Members.

**Answer:**     In response to part (A) of Paragraph 657, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to part (B) of Paragraph 657, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer, and deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 657.

658.    **Nebraska:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Nebraska at prices that were more than they would have been but for Defendants' actions. Defendants received money from Plaintiffs and Class Members as a direct result of the unlawful overcharges, and have retained this money. Defendants have paid no consideration to any other person in exchange for this money. In justice and fairness, Defendants should disgorge such money and remit the overcharged payments back to Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Nebraska at prices that were more than they would have been but for Defendants' actions. Defendants received money from Plaintiffs and Class Members as a direct result of the unlawful overcharges, and have retained this money. Defendants have paid no consideration to any other person in exchange for this money. In justice and fairness, Defendants should disgorge such money and remit the overcharged payments back to Plaintiffs and Class Members.

**Answer:**     In response to part (A) of Paragraph 658, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to part (B) of Paragraph 658, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and

deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 658.

659. **Nevada:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Nevada at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges for turkey. Defendants appreciated the benefits bestowed upon them by Plaintiffs and Class Members, for which they have paid no consideration to any other person. Defendants have knowingly accepted and retained the benefits bestowed upon them by Plaintiffs and Class Members. The circumstances under which Defendants have accepted and retained the benefits bestowed upon them by Plaintiffs and Class Members are inequitable in that they result from Defendants' unlawful overcharges for turkey. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Nevada at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges for turkey. Defendants appreciated the benefits bestowed upon them by Plaintiffs and Class Members, for which they have paid no consideration to any other person. Defendants have knowingly accepted and retained the benefits bestowed upon them by Plaintiffs and Class Members. The circumstances under which Defendants have accepted and retained the benefits bestowed upon them by Plaintiffs and Class Members are inequitable in that they result from Defendants' unlawful overcharges for turkey.

**Answer:** In response to part (A) of Paragraph 659, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 659, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 659.

660. **New Hampshire:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in New Hampshire at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from Plaintiffs in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Under the circumstances, it would be unconscionable for Defendants to retain such benefits. (B) *Per se*

violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in New Hampshire at prices that were more than they would have been but for Defendants' actions. Defendants have received a benefit from Plaintiffs in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants. Under the circumstances, it would be unconscionable for Defendants to retain such benefits.

**Answer:** In response to part (A) of Paragraph 660, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 660, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 660.

661. **New Mexico:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in New Mexico at prices that were more than they would have been but for Defendants' actions. Defendants have knowingly benefitted at the expense of Plaintiffs and Class Members from revenue resulting from unlawful overcharges for turkey. To allow Defendants to retain the benefits would be unjust because the benefits resulted from anticompetitive pricing that inured to Defendants' benefit and because Defendants have paid no consideration to any other person for any of the benefits they received. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in New Mexico at prices that were more than they would have been but for Defendants' actions. Defendants have knowingly benefitted at the expense of Plaintiffs and Class Members from revenue resulting from unlawful overcharges for turkey. To allow Defendants to retain the benefits would be unjust because the benefits resulted from anticompetitive pricing that inured to Defendants' benefit and because Defendants have paid no consideration to any other person for any of the benefits they received.

**Answer:** In response to part (A) of Paragraph 661, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 661, the Prestage Entities incorporate and reassert, as though fully set forth

herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 661.

662. **New York:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged Plaintiffs and members of Class, which made purchases of turkey in New York at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for turkey, which revenue resulted from anticompetitive prices paid by Plaintiffs, which inured to Defendants' benefit. Defendants' enrichment has occurred at the expense of Plaintiffs and Class Members. It is against equity and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged Plaintiffs and members of Class, which made purchases of turkey in New York at prices that were more than they would have been but for Defendants' actions. Defendants have been enriched by revenue resulting from unlawful overcharges for turkey, which revenue resulted from anticompetitive prices paid by Plaintiffs, which inured to Defendants' benefit. Defendants' enrichment has occurred at the expense of Plaintiffs and Class Members. It is against equity and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

**Answer:** In response to part (A) of Paragraph 662, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 662, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 662.

663. **North Carolina:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in North Carolina at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Plaintiffs did not interfere with Defendants' affairs in any manner that conferred these benefits upon Defendants. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from Defendants' anticompetitive conduct. The benefits conferred

upon Defendants are measurable, in that the revenue Defendants have earned due to unlawful overcharges are ascertainable by review of sales records. Defendants consciously accepted the benefits and continue to do so. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in North Carolina at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Plaintiffs did not interfere with Defendants' affairs in any manner that conferred these benefits upon Defendants. The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from Defendants' anticompetitive conduct. The benefits conferred upon Defendants are measurable, in that the revenue Defendants have earned due to unlawful overcharges are ascertainable by review of sales records. Defendants consciously accepted the benefits and continue to do so.

      **Answer:**     In response to part (A) of Paragraph 663, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 663, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 663.

      664.   **Oregon:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Oregon at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of the benefit bestowed upon them by Plaintiffs and Class Members. It would be inequitable and unjust for Defendants to retain any of the overcharges for turkey derived from Defendants' unfair conduct without compensating Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Oregon at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of the benefit bestowed upon them by Plaintiffs and Class Members. It would be inequitable and unjust for Defendants to retain any of the overcharges for turkey derived from Defendants' unfair conduct without compensating Plaintiffs and Class Members.

**Answer:**     In response to part (A) of Paragraph 664, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to part (B) of Paragraph 664, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 664.

665.    **Rhode Island:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Rhode Island at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of and/or recognized the benefit bestowed upon them by Plaintiffs and the Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Rhode Island at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of and/or recognized the benefit bestowed upon them by Plaintiffs and the Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members.

**Answer:**     In response to part (A) of Paragraph 665, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to part (B) of Paragraph 665, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 665.

666. **South Carolina:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in South Carolina at prices that were more than they would have been but for Defendants' actions. Defendants appreciated and knowingly accepted the benefits bestowed upon them by Plaintiffs and Class Members. Defendants have paid no consideration to any other person for any of the benefits they have received from Plaintiffs and Class Members. It is inequitable for Defendants to accept and retain the benefits received without compensating Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in South Carolina at prices that were more than they would have been but for Defendants' actions. Defendants appreciated and knowingly accepted the benefits bestowed upon them by Plaintiffs and Class Members. Defendants have paid no consideration to any other person for any of the benefits they have received from Plaintiffs and Class Members. It is inequitable for Defendants to accept and retain the benefits received without compensating Plaintiffs and Class Members.

**Answer:** In response to part (A) of Paragraph 666, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 666, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 666.

667. **South Dakota:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in South Dakota at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits without reimbursing Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in South Dakota at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be

inequitable and unjust for Defendants to retain such benefits without reimbursing Plaintiffs and Class Members.

**Answer:** In response to part (A) of Paragraph 667, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 667, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 667.

668. **Tennessee:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Tennessee at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members. It would be futile for Plaintiffs and Class Members to exhaust all remedies against the entities with which Plaintiffs and Class Members have privity of contract because Plaintiffs and Class Members did not purchase turkey directly from any Defendant. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Tennessee at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members. It would be futile for Plaintiffs and Class Members to exhaust all remedies against the entities with which Plaintiffs and Class Members have privity of contract because Plaintiffs and Class Members did not purchase turkey directly from any Defendant.

**Answer:** In response to part (A) of Paragraph 668, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to

part (B) of Paragraph 668, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 668.

669.    **Utah:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Utah at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Utah at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members.

**Answer:**        In response to part (A) of Paragraph 669, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part.  In response to part (B) of Paragraph 669, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part.  Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 669.

670.    **Vermont:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Vermont at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants accepted the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants

to retain such benefits without compensating Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Vermont at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants accepted the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members.

**Answer:** In response to part (A) of Paragraph 670, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 670, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 670.

671. **West Virginia:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in West Virginia at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in West Virginia at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members.

**Answer:** In response to part (A) of Paragraph 671, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in

Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 671, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 671.

672. **Wisconsin:** (A) Rule of reason violation: Plaintiffs repeat the allegations set forth in paragraphs 144-160 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Wisconsin at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members. (B) *Per se* violation: Plaintiffs repeat the allegations set forth in paragraphs 161-173 as if fully set forth herein. Defendants unlawfully overcharged members of Class, which made purchases of turkey in Wisconsin at prices that were more than they would have been but for Defendants' actions. Plaintiffs and Class Members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members. Defendants appreciated the benefit bestowed upon them by Plaintiffs and Class Members. Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members.

**<u>Answer:</u>** In response to part (A) of Paragraph 672, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 144–160 of this Answer and deny all remaining allegations of this part. In response to part (B) of Paragraph 672, the Prestage Entities incorporate and reassert, as though fully set forth herein, each and every response and answer set forth in Paragraphs 161–173 of this Answer and deny all remaining allegations of this part. Except as otherwise provided, The Prestage Entities deny the allegations in Paragraph 672.

## IX. REQUEST FOR RELIEF

WHEREFORE, plaintiffs, on behalf of itself and the Class of all others so similarly situated, respectfully requests judgment against defendants as follows:

- 284 -

673. The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint plaintiffs as Class Representatives and their counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class, once certified;

674. The unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed: (a) an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act; (b) a *per se* violation of Section 1 of the Sherman Act; (c) an unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; or, alternatively, (d) acts of unjust enrichment by Defendants as set forth herein.

675. Plaintiffs and the Class recover damages, to the maximum extent allowed under the applicable state laws, and that a joint and several judgments in favor of plaintiffs and the members of the Class be entered against defendants in an amount to be trebled to the extent such laws permit;

676. Plaintiffs and members of the Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully obtained;

677. Plaintiffs and members of the Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment, and the Court establish of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and members of the Class may make claims on a *pro rata* basis;

678. Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

679. Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the sharing of highly sensitive competitive information that permits individual identification of company's information;

680. Plaintiffs and the members of the Class be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

681. Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

682.     Plaintiffs and the members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

**Answer to Paragraphs 673–82:**     Paragraphs 673–82 do not contain any factual allegations, and as such, no response is required.  To the extent a response is required, the Prestage Entities deny that Plaintiffs are entitled to any relief on any of their claims, and request that Plaintiffs take nothing from the Prestage Entities by this litigation.

## X.     JURY TRIAL DEMANDED

683.     Plaintiffs demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

**Answer:**     Paragraph 683 does not contain any factual allegations, and as such, no response is required.  To the extent a response is required, the Prestage Entities demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

## FIRST AFFIRMATIVE DEFENSE

All allegations in the Complaint are denied except as otherwise expressly set forth herein and the Prestage Entities deny all allegations in the Complaint, whether direct or indirect, or by implication or inference that the Prestage Entities, or any one of them, engaged in any conspiracy, collusion or any other conduct of any nature which would be considered anti-competitive in nature.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims against the Prestage Entities are barred on the grounds that the conduct of supply, pricing and other decisions by the Prestage Entities were pro-competitive, reasonable and based on independent, legitimate and self-interested business and economic justifications.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims against the Prestage Entities are barred by the applicable statute of limitations.  Plaintiffs did not file any claims against the Prestage Entities until January 2022, more

than six years after the alleged end of the conspiracy period and, in any event, more than four years after Plaintiffs knew, or reasonably should have known, of the alleged (but denied) unlawful conduct about which they complain in this matter.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against the Prestage Entities are barred, in whole or in part, by the doctrines of estoppel, waiver and laches. Plaintiffs did not file any claim against the Prestage Entities until more than six years after the end of the class period and, upon information and belief, Plaintiffs knew about, or with the exercise of reasonable diligence should have known about the Defendants' use of Agri Stats, their participation in trade association meetings and other activity alleged in the lawsuit to be anti-competitive (which is denied), long before the lawsuit was filed against the Prestage Entities, and perhaps more than a decade ago.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against the Prestage Entities are barred, in whole or in part, by the doctrine of offset to the extent Plaintiffs have settled with other Defendants or alleged Co-Conspirators and have received payment from those entities.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against the Presage Entities are barred, in whole or in part, on the grounds that the Prestage Entities do not have market power in the alleged relevant market, or any other potentially relevant market.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, on the grounds that Plaintiffs do not have standing, including but not limited to antitrust standing, to bring the claims raised in the Complaint and/or on the grounds that they lack standing to bring claims other than under the laws of the state

where the Plaintiffs may reside.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent they failed to mitigate their damages.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against the Prestage Entities are barred on the grounds that any alleged damages were not legally or proximately caused by the Prestage Entities and/or on the grounds that any alleged (but denied) damages suffered by Plaintiffs were as a result of the actions of other persons or entities over which the Prestage Entities had no authority or control.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred on the grounds that the action is not properly maintainable as a class action under the Federal Rules of Civil Procedure or under any other applicable law.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' state-law claims are barred to the extent they cannot be brought against Defendants for a lack of jurisdiction including, and without limitation, to the extent those state laws are not intended to, and do not, apply to conduct occurring outside of those states and/or to the extent there is no personal jurisdiction over the Prestage Entities.

## TWELTH AFFIRMATIVE DEFENSE

Plaintiffs' state law claims are barred to the extent the alleged conduct did not occur within or substantially affect the citizens or commerce of the certain states or because the Prestage Entities had no specific intent to impact the commerce of those states. As a result, the application of those state laws to the Prestage Entities' conduct would violate the Due Process Clauses and Commerce Clause of the U.S. Constitution, the principle of federalism, the constitutions and laws of the respective states at issue.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' state law claims are barred to the extent they assert claims or seek to obtain relief on behalf of indirect purchasers located outside of the jurisdictions governed by applicable state laws, those claims are barred as improper assertions of extraterritorial jurisdiction and any effort to enforce those laws as to residents of other states would violate the Due Process Clause and the Commerce Clause of the U.S. Constitution and various state laws and constitutions.

## FOURTEENTH AFFIRMATIVE DEFENSE

The Prestage Entities incorporate by reference any and all other defenses asserted by other Defendants in this action

## PRAYER FOR RELIEF

Wherefore, the Prestage Entities request that Plaintiffs' Fourth Amended Complaint be dismissed with prejudice, that the Court find that Plaintiffs are not entitled to any judgment or relief, that the Court enter judgment in favor of the Prestage Entities, and that the Court award the Prestage Entities their attorneys' fees, costs and expenses, pre-judgment interest, and such other further relief as the Court deems just and proper.

Dated: February 3, 2023.　　　　Respectfully submitted,


/s/William S. Cherry III
Michael T. Medford, N.C. State Bar # 7227 (*pro hac vice*)
William S. Cherry III, N.C. State Bar # 33860 (*pro hac vice*)
J. Gray Wilson, N.C. State Bar # 46509 (*pro hac vice*)
MANNING, FULTON & SKINNER, P.A.
3605 Glenwood Avenue - Suite 500 (27612)
Post Office Box 20389
Raleigh, North Carolina 27619
Telephone: (919) 787-8880
Facsimile: (919) 325-4600
E-mail: medford@manningfulton.com
　　　　cherry@manningfulton.com
　　　　wilson@manningfulton.com


Amy R. Paulus
Daniel P. Johnston
Davy H. Raistrick
Clausen Miller P.C.
10 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 855-1010
Facsimile: (312) 606-7777
E-Mail:  apaulus@clausen.com
　　　　djohnston@clausen.com
　　　　draistrick@clausen.com


*Counsel for Defendants Prestage Farms of South Carolina,*
*LLC, Prestage Farms, Inc. and Prestage Foods, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2023, a copy of the foregoing was filed via the Court's ECF system.  Notice of this filing will be sent to the attorneys of record by operation of the ECF system.  Parties may access this filing through the Court's system.

/s/William S. Cherry III
Michael T. Medford, N.C. State Bar # 7227 (*pro hac vice*)
William S. Cherry III, N.C. State Bar # 33860 (*pro hac vice*)
J. Gray Wilson, N.C. State Bar # 46509 (*pro hac vice*)
MANNING, FULTON & SKINNER, P.A.
3605 Glenwood Avenue - Suite 500 (27612)
Post Office Box 20389
Raleigh, North Carolina 27619
Telephone: (919) 787-8880
Facsimile: (919) 325-4600
E-mail: medford@manningfulton.com
        cherry@manningfulton.com
        wilson@manningfulton.com

Amy R. Paulus
Daniel P. Johnston
Davy H. Raistrick
Clausen Miller P.C.
10 South LaSalle Street, Suite 1600
Chicago, Illinois 60603
Telephone: (312) 855-1010
Facsimile: (312) 606-7777
E-Mail:  apaulus@clausen.com
         djohnston@clausen.com
         draistrick@clausen.com

*Counsel for Defendants Prestage Farms of South Carolina, LLC, Prestage Farms, Inc. and Prestage Foods, Inc.*

Dated: February 3, 2023