**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*IN RE TURKEY ANTITRUST LITIGATION*

This Document Relates To:

*Amory Investments, LLC v. Agri Stats, Inc. et al.*,
No. 21-cv-06600

No. 19-cv-08318

Hon. Virginia F. Kendall
Hon. Gabriel A. Fuentes

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON**
**CHAMPERTY AND PUBLIC POLICY GROUNDS DISMISSING AMORY**
**INVESTMENTS, LLC'S COMPLAINT WITH PREJUDICE**

*Redacted Public Version*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

FACTS ................................................................................................................................... 2

      I.      Burford Capital, LLC ........................................................................................ 2

      II.     Amory Investments, LLC ................................................................................. 3

      III.    The Instant Action ............................................................................................ 3

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ......................................................................................................................... 6

      I.      THE ASSIGNMENT AGREEMENT IS VOID AS CHAMPERTOUS ............... 6

            A.     Delaware Law Applies in Assessing the Validity of the Assignment Agreement ................................................................................ 6

            B.     The Assignment Agreement Is Champertous And This Court Must Dismiss This Case ................................................................................ 7

      II.     INDEPENDENT OF THE ASSIGNMENT, THE PROSECUTION OF THIS CASE IS CHAMPERTOUS AND VIOLATES PUBLIC POLICY ........... 9

            A.     Amory Is Not A Bona Fide Plaintiff Who Had A Claim Based On The Subject Matter of the Turkey Litigation Who Simply Sought Financing to Prosecute Its Claim. ............................................................ 11

            B.     Burford's Control Of This Litigation Is Champertous And In Violation of Public Policy ...................................................................... 12

CONCLUSION .................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*,
   193 S.W.3d 87 (Tex. App. 2006) ........................................................................11

*Birner v. Gen. Motors Corp.*,
   No. 06-1148, 2007 WL 269847 (C.D. Ill. Jan. 26, 2007) ........................................9

*Boling v. Prospect Funding Holdings, LLC*,
   771 F. App'x 562 (6th Cir. 2019) ......................................................................12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..........................................................................................5

*Charge Injection Techs., Inc. v. E.I. Dupont De Nemours & Co.*,
   No. N07C-12-134-JRJ, 2016 WL 937400 (Del. Super. Ct. Mar. 9, 2016) .............11, 14, 15

*In re DesignLine Corp.*,
   565 B.R. 341 (Bankr. W.D.N.C. 2017) ...............................................................12

*Dore & Assocs. Cont. Inc., v. Int'l Union of Operating Eng'rs, Loc. Union No. 150*,
   No. 15 C 6221, 2017 WL 3581159 (N.D. Ill. Aug. 18, 2017) ...............................6, 7

*Hall v. State*,
   655 A.2d 827 (Del. Super. Ct. 1994) .............................................................2, 6, 8

*Hannigan v. Italo Petroleum Corp.*,
   178 A. 589 (Del. Super. Ct. 1935) .....................................................................8

*Hazeltine Research v. Avco Mfg. Corp.*,
   227 F.2d 137 (7th Cir. 1955) ............................................................................11

*Heavenly Ham Co. v. HBH Franchise Co.*,
   No. 04 C 2577, 2005 WL 331558 (N.D. Ill. Feb. 7, 2005) ......................................6

*Hendricks v. Novae Corp. Underwriting, Ltd.*,
   868 F.3d 542 (7th Cir. 2017) .............................................................................7

*Humanigen, Inc. v. Savant Neglected Diseases, LLC*,
   238 A.3d 194 (Del. Super. Ct. 2020) ...........................................................8, 10, 12

*Maslowski v. Prospect Funding Partners LLC*,
   944 N.W.2d 235 (Minn. 2020) .........................................................................12

*Miller UK Ltd. v. Caterpillar, Inc.*,
   17 F. Supp. 3d 711 (N.D. Ill. 2014) ........................................................................6

*In re Nat'l Prescription Opiate Litig.*,
   No 17-MD-2804, 2018 WL 2127807 (N.D. Ohio May 7, 2018) ...............................12

*Perry v. Thomas*,
   482 U.S. 483 (1987) ...................................................................................................6

*Puckett v. Empire Stove Co.*,
   539 N.E.2d 420 (Ill. Ct. App. 1989) .......................................................................10

*Rancman v. Interim Settlement Funding Corp.*,
   789 N.E.2d 217 (Ohio 2003)..............................................................................8, 10

*In re Reed*,
   532 B.R. 82 (Bankr. N.D. Ill. 2015) .........................................................................6

*Street Search Partners, L.P. v. Rincon Int'l., LLC*,
   No. 04C-09-191-PLA, 2006 WL 1313859 (Del. Super Ct. May 12, 2006) ..............8

*T. for the Certificate Holders of Merrill Lynch Mortg. Inv., Inc. v. Love Funding
   Corp.*,
   918 N.E.2d 889 (N.Y. 2009) ...................................................................................10

*Weigel Broad. Corp. v. Topel*,
   No. 83 C 7921, 1985 WL 2360 (N.D. Ill. Aug. 21, 1985) ........................................10

**Other Authorities**

Federal Rules of Civil Procedure Rule 56(c) .................................................................5

7 Ill. L. & Prac. *Champerty & Maintenance* § 2 (Jan. 2023 Update) ............................6

Local Rule 56.1 ..............................................................................................................2

## INTRODUCTION

The foundational principles of our judicial system are the pursuit of justice and redress of harm.  Our courts are not instruments for profiteering.  Their purpose is not to provide a platform for litigation funders to invest in legal claims simply to turn a profit.  Yet that is exactly what is happening here.  Simply put, Burford Capital, LLC ("Burford"), a litigation funding firm, used ████████████████, Plaintiff Amory Investments, LLC, ("Amory"), to acquire a claim in *In re Turkey Antitrust Litigation* as an investment and to prosecute that claim, all the while directing all strategy and maintaining complete control of the litigation.  Burford did so solely for financial gain, not to redress harm.  Burford's actions cannot stand and this Court should grant summary judgment in favor of Defendants and against Amory.

Amory's case cannot proceed[1] as a matter of law for at least two reasons.  ***First***, the Assignment Agreement (defined below) under which Amory assumed the Turkey Litigation (defined below) claim is champertous and void as against public policy.  Therefore, Amory's case should be dismissed.  Amory had no interest in the subject matter of the Turkey Litigation prior to the assignment of the Turkey Litigation claim.  Amory has never bought turkey products and has no basis to bring a claim in the Turkey Litigation outside of the claim it assumed under the Assignment Agreement.  ████████████████████████████████ ████████████████████████████████  Where a plaintiff, like Amory here, has no interest in the subject matter of an action independent of an assignment of a claim, the

---

[1] Defendants are compelled to bring their Motion now, following the recent conclusion of the Amory 30(b)(6) deposition.  Defendants only learned of the relationship between Amory and Burford and Burford's role in this litigation during Amory's 30(b)(6) deposition, in which a Burford employee served as Amory's corporate representative.  Defendants moved promptly to bring this issue to the Court's attention once Amory's deposition concluded and fact discovery with respect to Amory closed to mitigate the damages Defendants are incurring in the defense of Amory's improper lawsuit.

assignment is void, and the Court must dismiss the case.  *See Hall v. State*, 655 A.2d 827, 829-30 (Del. Super. Ct. 1994).

 **Second**, the prosecution itself of this case is champertous and violates public policy. Amory is not a bona fide plaintiff in the Turkey Litigation who simply sought out financial assistance to prosecute its claim.  Quite the opposite.  Burford used Amory, ███████████ ███████ to acquire the Turkey Litigation claim as an investment and prosecute it for no other reason than turning a profit.  This is exactly the sort of commercialization and speculation courts throughout the country have admonished.  Further, it is axiomatic that litigation funders cannot control litigations and that such control is champertous and violates public policy.  It is indisputable that Burford controls this litigation.  Amory ████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ Amory cannot adduce evidence that Burford does not control this litigation.  Accordingly, there is no dispute of any material fact, and this Court should grant summary judgment for Defendants.

## FACTS

**I.**  **Burford Capital, LLC**

 Burford is "a leading provider of legal finance." (SUF ¶ 4).[2]  Burford is ████████████ ███████

_____

 [2] All references to "SUF" are references to Defendants' Local Rule 56.1 Statement of Undisputed Facts filed contemporaneously herewith.

## II.     Amory Investments, LLC

Plaintiff Amory was formed as a Delaware LLC on June 8, 2017.  (SUF ¶ 5).  The

Limited Liability Company Agreement of Amory Investments LLC ("Amory LLC Agreement")

was ████████████████████████████████████████████████████[3]  (SUF ¶¶ 6, 8).

Amory is ████████████████████████████████████████████████.  (SUF ¶ 9).

Amory is ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████.

## III.    The Instant Action

On December 19, 2019, a purported class of direct purchaser plaintiffs ("DPPs") filed in

this Court an initial Complaint alleging that defendant turkey processors violated the Sherman

Act by engaging in a conspiracy to exchange information in an effort to suppress turkey

production and increase turkey prices.  The Complaint alleges generally damages to purported

class members as a result of the alleged overcharges direct purchasers paid for turkey products.

(SUF ¶ 14) ("Turkey Litigation").

On June 10, 2020, Maines Paper & Food Service, Inc. ("Maines Paper"), a national food

distributor, filed for Chapter 11 bankruptcy in Delaware Bankruptcy Court.  (SUF ¶ 15).

On March 31, 2021, Amory assumed a claim in the Turkey Litigation through an

---

[3] █████████████████████████████████████████████████████
████████████████████.

Assignment Agreement ███████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Aviva Will, a co-Chief

Operating Officer of Burford. ███████████████████████████████

████████████████.

On December 9, 2021, Amory opted out of the putative DPP class in the Turkey

Litigation and filed the Complaint initiating this lawsuit. (SUF ¶ 20).  In its Complaint, Amory

alleges the same basic facts and claims as the putative DPP class.  (SUF ¶ 21).  The Amory

Complaint alleges generally damages stemming from the alleged overcharges paid for turkey

products.  (SUF ¶ 21).  Amory has never purchased turkey products.  Rather, Amory brought this

lawsuit pursuant to the Turkey Litigation claim it assumed through the Assignment Agreement.

Amory has no basis to assert a claim for antitrust violations in the turkey industry outside of that

claim.  (SUF ¶ 22).

On March 21, 2023, Defendants began Amory's 30(b)(6) deposition.[4]  (SUF ¶ 23).

Amory's 30(b)(6) designee was Suzanne Grosso.  (SUF ¶ 24).  Ms. Grosso is not an Amory

employee ████████████████████.  Instead, Ms. Grosso is a Senior Vice President at Burford.

(SUF ¶¶ 13, 25-26).  In her position at Burford, Ms. Grosso is an underwriter and case manager

in Burford's "litigation finance group."  (SUF ¶ 27).  In that role, ██████████████████████

█████████████████████████████████████████████████████████████

---

[4] Amory's 30(b)(6) deposition was re-opened and concluded on May 19, 2023. Once the deposition concluded, fact discovery as to Amory closed.  (SUF ¶ 23).



███████████████████████ The Burford ████ directs and controls litigation strategy in this the case. (SUF ¶ 35).

## **LEGAL STANDARD**

The evidence demonstrates that this Court should grant summary judgment in favor of Defendants because "there is no genuine issue as to any material fact and [Defendants are] entitled to a judgment as a matter of law." Fed. R.. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986).

There is no dispute of material fact here. The Assignment Agreement is void as champertous and it is indisputable that Burford controls this litigation, which control is champertous and violates public policy. Defendants are entitled to judgment as a matter of law.

## ARGUMENT

### I. THE ASSIGNMENT AGREEMENT IS VOID AS CHAMPERTOUS

#### A. Delaware Law Applies in Assessing the Validity of the Assignment Agreement.

Both Illinois and Delaware[5] recognize prohibitions on champerty. *See Hall*, 655 A.2d at 830 (discussing doctrine of champerty's continued vitality under Delaware law); 7 Ill. L. & Prac. *Champerty & Maintenance* § 2 (Jan. 2023 Update) (collecting cases).[6] To the extent there is a question about which law applies in evaluating the assignment of the Turkey Litigation claim, this Court should apply Delaware law.

Assignment agreements are contracts, so their validity is judged by state law. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)*; Heavenly Ham Co. v. HBH Franchise Co.*, No. 04 C 2577, 2005 WL 331558, at *8 (N.D. Ill. Feb. 7, 2005). In federal question cases, to determine which state law applies, "courts apply the federal common law choice-of-law rule, which is a 'most significant relationship' test derived from the Restatement (Second) of Conflict of Laws." *Dore & Assocs. Cont. Inc., v. Int'l Union of Operating Eng'rs, Loc. Union No. 150*, No. 15 C

---

[5] The only states' laws that could be applied here are Illinois, where Amory brought this action, and Delaware, as Amory is a Delaware LLC, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the Assignment Agreement was borne out of a Delaware bankruptcy. As discussed below, Delaware law should be applied. Even if Illinois law were applied, however, the Court would reach the same conclusion, i.e., the Assignment Agreement is void and the case must be dismissed, for the reasons discussed herein.

[6] Though some courts have noted that the champerty doctrine has been "narrowed" in Illinois, *see Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 727 (N.D. Ill. 2014), it has not been abolished. *See In re Reed*, 532 B.R. 82, 94 n.5 (Bankr. N.D. Ill. 2015)(citing *Berlin v. Nathan*, 381 N.E.2d 1367, 1378 (Ill. App. Ct. 1978)). In addition, in its analysis, the *Miller* court focused on the "criminal maintenance statute" as opposed to common law champerty. *See Miller*, 17 F. Supp. 3d at 725, 727 ("Being a criminal statute, it must be strictly construed."). Further, when Illinois courts evaluate champerty claims, they "preserve the principle [of champerty laws] which tends to defeat the mischief to which the old law was directed, namely the traffic of merchandising in quarrels and of huckstering in litigious discord." 7 Ill. L. & Prac. *Champerty & Maintenance* § 2 (Jan. 2023 Update).

6221, 2017 WL 3581159, at *12 (N.D. Ill. Aug. 18, 2017).[7]  The Restatement factors courts

consider in determining which state has the most significant relationship include "'(a) the place

of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the

location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of

incorporation, and place of business of the parties.'" *Hendricks v. Novae Corp. Underwriting,*

*Ltd.*, 868 F.3d 542, 545 (7th Cir. 2017) (quoting Restatement (Second) of Conflict of Laws § 188

(1971)).



     This Court should apply Delaware law to evaluate the Assignment Agreement. ▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Therefore, in assessing

choice of law, this Court should determine which state has the most significant relationship using

the Restatement factors.  Those factors weigh in favor of Delaware.  The Assignment Agreement

was borne out of the Maines Paper bankruptcy which was filed in Delaware.  (SUF ¶ 16).  The

Assignor, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉  The Assignee, Amory, is a Delaware LLC. (SUF ¶ 5).  ▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉  There is no state that has a more "significant relationship" to

the Assignment Agreement than Delaware.  Its law should apply in evaluating the Assignment

Agreement's validity.

    **B.**    **The Assignment Agreement Is Champertous And This Court Must Dismiss This Case.**

Champerty is "an agreement between the owner of claim and a volunteer that the latter

---

[7] Even if this Court applied forum choice-of law rules, it would arrive at the same result.  Illinois choice-of-law rules also dictate use of the "most significant relationship" test.  *See Dore*, 2017 WL 3581159, at *12.

may take the claim and collect it, dividing the proceeds with the owner, if they prevail; the champertor to carry on the suit at his own expense." *Hall*, 655 A.2d at 829 (citation omitted). Champerty is a form of maintenance, which is "an officious intermeddling in a suit in which in no way belongs to the intermeddler by maintaining or assisting either party to the action, with money or otherwise, to prosecute or defend it." *Id.* (citation omitted). *See also Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217, 221 (Ohio 2003) (Champerty/maintenance "gives a nonparty an impermissible interest in a suit, impedes settlement of the underlying case, and promotes speculation in lawsuits").

In Delaware, an assignment agreement is champertous "where the assignee had *no* interest in the cause of action prior to the assignment." *Hall*, 655 A.2d at 829-30 (citing *Gibson v. Gillespie*, 152 A. 589, 593 (Del. Super. Ct. 1928)). An agreement is not champertous "where the assignee has some legal or equitable interest in the subject matter of the litigation *independent from* the terms of the assignment under which the suit was brought." *Hall*, 655 A.2d at 829 (citing *Drake v. Nw. Nat. Gas Co.*, 165 A.2d 452, 454 (Del. Ch. 1960)). That is, conveyance of a lawsuit is permitted "when the *transferee* already has a legal or equitable claim on the rights that predates and is outside of the transfer" and not when the transferee only has an interest in the litigation itself. *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 203-04 (Del. Super. Ct. 2020) (citing *Drake*, 165 A.2d at 454) (emphasis added). "It is the duty of the court to dismiss a case in which the evidence discloses that the assignment of the cause of action sued upon was tainted with champerty" as Delaware courts consider such assignments void. *Hall*, 655 A.2d at 830; *see also Hannigan v. Italo Petroleum Corp.*, 178 A. 589, 591 (Del. Super. Ct. 1935) ("[A]greements of [a champertous] character are necessarily absolutely void."); *Street Search Partners, L.P. v. Rincon Int'l., LLC*, No. 04C-09-191-PLA,

2006 WL 1313859, at *3, *5 (Del. Super Ct. May 12, 2006) (determining assignment as champertous and dismissing case where assignee had no interest in the cause of action independent of the assignment).

The Assignment Agreement is champertous and this Court should dismiss this case. Amory has absolutely no legal or equitable interest in the subject matter of the Turkey Litigation independent of the assignment under which Amory brought its claims. Amory has never purchased turkey products. Instead, ███████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████ It has no interest in the claims in the Turkey Litigation other than the litigation itself, and it had no interest in the Turkey Litigation prior to the assignment. (SUF ¶ 22). Without a valid assignment, Amory cannot proceed as a plaintiff and its claims should be dismissed.[8]

## II.   INDEPENDENT OF THE ASSIGNMENT, THE PROSECUTION OF THIS CASE IS CHAMPERTOUS AND VIOLATES PUBLIC POLICY

Even if this Court does not find the Assignment Agreement champertous (it is), this Court should dismiss this case because its prosecution is champertous and against public policy.

To understand what the issue is here, it is important to understand what the issue is not. In typical disputes regarding litigation funding, there are either challenges to litigation funding

---

[8] Even if this Court applied Illinois law, the Assignment Agreement is champertous and this Court should dismiss this case. *See Birner v. Gen. Motors Corp.*, No. 06-1148, 2007 WL 269847, at *2 (C.D. Ill. Jan. 26, 2007) (describing champerty as "a bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be recovered" (citation omitted); *id.* at *2-*3 (determining assignment void as "thinly veiled champerty" and against public policy under Illinois law and dismissing case where Plaintiff purchased a legal claim but "the record [was] devoid of any indication that [Plaintiff] is anything but a stranger to the litigation who had no involvement prior to the assignment and, absent the assignment, would have no interest at all in the subject matter of [the] case").

generally or to a particular litigation funding agreement as champertous. But the issue here is not a litigation funding agreement[9] or litigation funding generally. The issue here is that Burford, a litigation funding firm, used ███████████████████ Plaintiff Amory, to acquire a claim in the Turkey Litigation purely as an investment, bring the instant case, and control the prosecution of this lawsuit solely for financial gain. Burford's actions are a step too far.

Laws against champerty "developed to prevent or curtail the commercialization of or trading in litigation." *T. for the Certificate Holders of Merrill Lynch Mortg. Inv., Inc. v. Love Funding Corp.*, 918 N.E.2d 889, 893 (N.Y. 2009) (internal quotation omitted). Indeed, prohibitions against champerty are "directed at preventing the strife, discord and harassment that would be likely to ensue from permitting attorneys and corporations to purchase claims for the purpose of bringing actions thereon." *Id.* at 893 (internal quotations omitted); *see also Weigel Broad. Corp. v. Topel*, No. 83 C 7921, 1985 WL 2360, at *6 (N.D. Ill. Aug. 21, 1985) ("'[T]he laws against champerty [and] maintenance . . . are aimed at the . . . prevention of speculation in lawsuits.'" (quoting *Berlin*, 381 N.E.2d at 1378); *Puckett v. Empire Stove Co.*, 539 N.E.2d 420, 427 (Ill. Ct. App. 1989) ("Champerty and maintenance have been disapproved by the courts as against public policy because a litigious person could harass and annoy others if allowed to purchase claims for pain and suffering and pursue the claims in court as an assignee."); *Humanigen*, 238 A.3d at 203 ("Delaware continues to recognize a policy against sale of a lawsuit."). Said plainly, "a lawsuit is not an investment vehicle." *Rancman*, 789 N.E.2d at 221.

To be sure, some courts have found litigation funding to be non-champertous. *See, e.g.,*

---

[9] ██████████████████████████████████████████████████████████ ██████████████████████████████████████ Indeed, Burford's position ███████ ████████████████████████████████████████████████████████████ ████████████ obviates the need for a litigation funding agreement.

*Hazeltine Research v. Avco Mfg. Corp.*, 227 F.2d 137 (7th Cir. 1955); *Charge Injection Techs., Inc. v. E.I. Dupont De Nemours & Co.,* No. N07C-12-134-JRJ, 2016 WL 937400 (Del. Super. Ct. Mar. 9, 2016); *Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87 (Tex. App. 2006). But there are two essential points of distinction between this case and those. ***First***, in those cases, a bona fide plaintiff had a claim based in the subject matter of the litigation and simply procured financial assistance to pursue its claim. ***Second***, in those cases, the courts found that the funding arrangements were not champertous because the bona fide plaintiff maintained control of the litigation. Here, it is beyond dispute that Amory is not a bona fide plaintiff who simply received financial assistance to prosecute its claim and that Burford controls this litigation in violation of public policy.

> A. **Amory Is Not A Bona Fide Plaintiff Who Had A Claim Based On The Subject Matter of the Turkey Litigation Who Simply Sought Financing to Prosecute Its Claim.**

Amory has never bought turkey products. Instead, Amory is ████████████ ████████████. ████████████████████████████ ████████████████████████. In fact, ████████████ ████████████████████████████████████ ████████████████████████ ████████████████████ Further, ████████████████████ Amory's 30(b)(6) designee, Ms. Grosso, is not employed by Amory, but is a Senior Vice President in Burford's "litigation finance group." (SUF ¶¶ 13, 22, 24-27). ████████████ ████████████████████████████ ████████████████████████ Similarly, ████████████████████ Aviva Will, is a co-Chief Operating Officer at Burford. (SUF ¶ 18). ████████████████████████

████████████████████████████████████████████████ Therefore, any recovery would inure ████████████████████████████

Amory is not a bona fide plaintiff who had a claim in the Turkey Litigation for which it simply sought out Burford's financial assistance to prosecute. Instead, it is ████████████ ████████ Burford used to acquire the Turkey Litigation claim as an investment and prosecute it for no other reason than turning a profit. This is exactly the sort of rank commercialization and financial speculation in our justice system courts throughout the country have admonished.

### B. Burford's Control Of This Litigation Is Champertous And In Violation of Public Policy.

Courts find litigation funding or litigation funding agreements champertous and in violation of public policy when litigation funders have the ability to control the litigation. *See Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 579 (6th Cir. 2019) (discussing litigation funding agreements void as against public policy because they "effectively give [the litigation funder] control over the litigation"); *In re DesignLine Corp.*, 565 B.R. 341, 349 (Bankr. W.D.N.C. 2017) (funding agreement void as champertous where agreement "permit[ted] [the litigation funder] to control the litigation in a number of . . . ways"); *In re Nat'l Prescription Opiate Litig.*, No 17-MD-2804, 2018 WL 2127807, at *1 (N.D. Ohio May 7, 2018) (reflecting court efforts to ensure any litigation funding agreements in the case would not "give to the [funder] any control over litigation strategy or settlement decisions."); *see also Maslowski v. Prospect Funding Partners LLC*, 944 N.W.2d 235, 241 (Minn. 2020) (abolishing common law champerty doctrine in Minnesota, but discussing that courts, in keeping with champerty principles, should "scrutinize" litigation funding agreements to "ensure that litigation financiers do not attempt to control the course of the underlying litigation"); *Cf. Humanigen*, 238 A.3d at 204 (discussing agreements not champertous where plaintiff retains control of the litigation).

The basic tenet of these cases is that litigation funders' control of litigation is champertous and against public policy.  Here, it is indisputable that Burford controls this litigation.  ██████████████████████████████  The Amory LLC Agreement ██████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████  Burford

has controlled this litigation at every turn.  In fact, Amory itself ████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████  After the filing of the Complaint, Burford

has continued to control the litigation.  Ms. Grosso, a Senior Vice President in Burford's

"litigation finance group" ██████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████

     To understand Burford's prohibited control here, it is instructive to contrast this case with a case in which a litigation funding agreement involving Burford itself was found to be non-champertous.  In *Charge Injection*, Plaintiff Charge Injection Technologies, Inc. ("CIT") filed a lawsuit against defendant DuPont alleging that DuPont wrongfully disclosed CIT's confidential technology.  *Charge Injection*, 2016 WL 937400, at \*1.  To defray the costs of litigation, CIT entered into a litigation funding agreement with Aloe, a subsidiary of Burford Capital, Ltd. *Id.* at \*1-\*2.  Under the funding agreement, Aloe provided financing to CIT in exchange for a percentage of any recovery and a security interest in CIT's claim.  *Id.* at \*2.

     The defendant challenged the litigation funding agreement as void against public policy under the doctrines of champerty and maintenance.  The court found that the litigation funding agreement was not void as against public policy because:  (1) there was no assignment of ownership of CIT's claims to the Burford subsidiary, Aloe; (2) the litigation funding agreement explicitly stated that Aloe, as a subsidiary of Burford, was not a party to the litigation and did not have "any rights as to the direction, control, settlement, or other conduct" of the litigation; (3) CIT's CEO testified that CIT controlled and made decisions in the litigation; and (4) Burford itself testified that Burford did not control the litigation.  *Id.* at \*4-\*5.

     The operative facts here are the exact opposite of those in *Charge Injection*.  As an initial matter, ████████████████████████████████████████████████████████  Indeed, Burford's position ████████████████████████████████████████████ ████████████████████████████████ obviates the need for one.  However, contrasting the four determinative factors in *Charge Injection* against the facts in this case

reveals Burford's role in this case is champertous and against public policy. First, unlike in *Charge Injection*, ███████████████████████████, Amory, is the assignee in the Assignment Agreement. (SUF ¶ 16). Second, Amory is the plaintiff in this litigation, and Burford controls the litigation. Third, Amory, unlike CIT, does not have its own cause of action. CIT was a plaintiff who alleged defendant wrongfully disclosed its confidential technology and sought financial assistance to prosecute that claim on its own behalf. Here, Amory has no claim related to the Turkey Litigation outside of the one it assumed under the Assignment Agreement and Amory does not control this litigation (Burford does). (SUF ¶¶ 13, 22, 32-35). Finally, in direct contrast to CIT's case, Amory's 30(b)(6) designee, a Burford employee, ███████████ ██████████████████████████████████████████████.

Burford's actions plainly warrant dismissal of Amory's case. Litigation funders should not be emboldened ███████████████████████ to acquire litigation claims and prosecute them for no other reason than profit. To allow Amory's case to proceed would be to endorse for-profit litigation. Defendants are aware of no state or federal court in the United States that has endorsed the scheme Burford is employing here. This Court should not be the first.

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court enter an Order granting summary judgment in favor of Defendants, dismissing Amory's complaint with prejudice, and awarding any other relief this Court deems just and proper.

Dated: July 14, 2023                     Respectfully submitted,

                                         */s/ Gaspare J. Bono*
                                         Gaspare J. Bono (*Pro Hac Vice*)
                                         Leslie A. Barry (*Pro Hac Vice*)
                                         DENTONS US LLP
                                         1900 K Street NW

15

Washington, DC 20006
(202) 496-7500
gap.bono@dentons.com
leslie.barry@dentons.com

Adam J. Wallstein
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
(312) 876-8000
adam.wallstein@dentons.com

***Counsel for Farbest Foods, Inc.***

/s/ Jacob D. Koering
Jacob D. Koering
MILLER, CANFIELD, PADDOCK &
STONE, PLC
225 West Washington Avenue, Suite 2600
Chicago, IL 60606
Telephone: (312) 460-4272
koering@millercanfield.com

William L. Monts III
Justin W. Bernick
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
Telephone: (202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

***Counsel for Agri Stats, Inc.***

/s/ Jennifer A.L. Battle
Michael L. McCluggage
Daniel D. Birk
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Telephone: (312) 660-7600
mmcluggage@eimerstahl.com
dbirk@eimerstahl.com

/s/ Britt M. Miller
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Sybil Dunlop
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-8346
sdunlop@greeneespel.com

***Counsel for Cargill, Incorporated and Cargill Meat Solutions Corporation***

/s/ Marc E. Rosenthal
Marc E. Rosenthal
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3530
Mrosenthal@proskauer.com

Christopher E. Ondeck

16

Joshua Goldberg
CARPENTER LIPPS LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
Telephone: (312) 777-4825
goldberg@carpenterlipps.com

Jennifer A.L. Battle
David J. Barthel
Theodore M. Munsell
Jill Rogers Spiker
Joel E. Sechler
CARPENTER LIPPS LLP
280 North High Street, Suite 1300
Columbus, Ohio 43215
Telephone: (614) 365-4100
battle@carpenterlipps.com
barthel@carpenterlipps.com
munsell@carpenterlipps.com
spiker@carpenterlipps.com
sechler@carpenterlipps.com

**Counsel for Cooper Farms, Inc.**

*/s/ Gregory G. Wrobel*
Gregory G. Wrobel
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
Telephone: (312) 609-7500
gwrobel@vedderprice.com

Henry W. Jones, Jr.
Jordan Price Wall Gray
Jones & CARLTON, PLLC
1951 Clark Avenue
Raleigh, NC 27605
Telephone: (919) 828-2501
hjones@jordanprice.com

**Counsel for House of Raeford
Farms, Inc.**

*/s/ J. Douglas Baldridge*
J. Douglas Baldridge

Colin R. Kass
David A. Munkittrick
Stephen R. Chuk
Rucha A. Desai
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW, Suite 600
Washington, DC 20004
Telephone: (202) 416-6800
Condeck@proskauer.com
CKass@proskauer.com
DMunkittrick@proskauer.com
SChuk@proskauer.com

**Counsel for Butterball LLC**

*/s/ William H. Stallings*
Carmine R. Zarlenga
William H. Stallings
Oral Pottinger
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3000
czarlenga@mayerbrown.com
wstallings@mayerbrown.com
opottinger@mayerbrown.com

**Counsel for Foster Farms, LLC, and Foster
Poultry Farms, a California Corporation**

*s/ Craig S. Coleman*
Colby Anne Kingsbury
FAEGRE DRINKER BIDDLE & REATH LLP
311 South Wacker Drive, #4300
Chicago, IL 60606
Telephone: (312) 212-6500
Colby.Kingsbury@Faegredrinker.com

Richard A. Duncan
Craig S. Coleman
Emily E. Chow
FAEGRE DRINKER BIDDLE & REATH LLP
90 S. Seventh Street, Ste. 2200
Minneapolis, MN 55402
Telephone: (612) 766-7000

Lisa Jose Fales
Danielle R. Foley
Paul Feinstein
Andrew T. Hernacki
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
jdbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com
pfeinstein@venable.com
athernacki@venable.com

Kirstin B. Ives
FALKENBERG IVES, LLP
30 N. LaSalle St., Suite 4020
Chicago, Illinois 60602
Telephone: (312) 566-4803
kbi@falkenbergives.com

***Counsel for Perdue Farms, Inc. and
Perdue Foods LLC***

*/s/ Tiffany Rider Rohrbaugh*
Tiffany Rider Rohrbaugh
Rachel J. Adcox
Kenina J. Lee
Allison M. Vissichelli

Lindsey Strang Aberg
AXINN, VELTROP & HARKRIDER LLP
1901 L St. NW
Washington, DC 20006
T: (202) 912-4700
F: (202) 912-4701
trider@axinn.com
klee@axin.com
avissichelli@axinn.com
lstrang@axinn.com

Jordan M. Tank
LIPE LYONS MURPHY NAHRSTADT &
PONTIKIS, LTD.
230 West Monroe Street

Richard.Duncan@Faegredrinker.com
Craig.Coleman@Faegredrinker.com
Emily.Chow@Faegredrinker.com

Jacob D. Bylund
Lance W. Lange
Christopher A. Kreuder
Robert Gallup
Stephanie Koltookian
FAEGRE DRINKER BIDDLE & REATH LLP
801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
Telephone: (515) 248-9000
Jacob.Bylund@faegredrinker.com
Lance.Lange@faegredrinker.com
Christopher.Kreuder@Faegredrinker.com
Robert.Gallup@faegredrinker.com
Stephanie.Koltookian@faegredrinker.com

Jonathan H. Todt
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street NW, Suite 1100
Washington, DC 2005
Telephone: (202) 230-5000
Jonathan.Todt@faegredrinker.com

***Counsel for Hormel Foods Corporation,
Hormel Foods, LLC, and Jennie-O Turkey
Store, Inc.***

18

Suite 2260
Chicago, IL 60606
T: (312) 702-0586
F: (312) 726-2273
jmt@lipelyons.com

**Counsel for The Hillshire Brands Company,
Tyson Foods, Inc., Tyson Fresh Meats, Inc.,
and Tyson Prepared Foods**