## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IN RE TURKEY ANTITRUST LITIGATION**<br><br>This Document Relates To:<br><br>*Amory Investments LLC v. Agri Stats Inc. et al.*, No. 21-cv-06600 | Civil Action No. 19-cv-08318<br><br>Honorable Virginia F. Kendall<br>Honorable Gabriel A. Fuentes<br><br>**PUBLIC REDACTED VERSION** |

### AMORY INVESTMENTS LLC'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON CHAMPERTY AND PUBLIC POLICY GROUNDS TO DISMISS AMORY INVESTMENTS LLC'S COMPLAINT WITH PREJUDICE

Derek T. Ho (admitted *pro hac vice*)
Travis G. Edwards
Dustin G. Graber
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
tedwards@kellogghansen.com
dgraber@kellogghansen.com

Patrick J. Ahern
AHERN AND ASSOCIATES, P.C.
8 South Michigan Avenue, Suite 3700
Chicago, Illinois 60603
(312) 404-3760
patrick.ahern@ahernandassociatespc.com

*Attorneys for Amory Investments LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

I.      The Assignment Is Valid Under Federal Common Law ......................................... 3

        A.      Federal Law Governs the Validity of Assignment of Federal Antitrust Claims..... 3

        B.      Federal Antitrust Claims Are Freely Assignable ...................................... 4

        C.      Champerty Is Irrelevant to the Assignment of Federal Claims............................ 5

        D.      Champerty Is Inconsistent With the Purposes of Federal Antitrust Laws ............. 7

        E.      Champerty Is Also Inconsistent With Federal Bankruptcy Law ........................... 8

II.     Defendants' Reliance on State Law Is Misplaced ............................................. 10

        A.      The Assignment Is Valid Under New York Law.................................................. 10

        B.      The Assignment Is Valid Under Illinois Law ....................................................... 11

        C.      The Assignment Is Valid Under Delaware Law ................................................. 13

III.    Amory's Relationship to Burford Does Not Warrant Summary Judgment..................... 14

CONCLUSION ................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Abbott Ford, Inc. v. Superior Ct.*, 741 P.2d 124 (Cal. 1987) ......................................... 6

*Acorn Bankshares, Inc. v. Suburban Bancorp, Inc.*,
    1985 WL 2671 (N.D. Ill. Sept. 18, 1985) ................................. 12

*Aon plc v. Alpine Rewards, LLC*, 2023 WL 3713987 (N.D. Ill. Apr. 12, 2023) ......................... 10

*Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154 (5th Cir. 1985) ................................... 5

*Bentinck v. Franklin*, 38 Tex. 458 (Tex. 1873) ..................................................... 7

*Birner v. General Motors Corp.*, 2007 WL 269847 (C.D. Ill. Jan. 26, 2007) ......................... 12

*Bluebird Partners, L.P. v. First Fid. Bank, N.A. N.J.*, 85 F.3d 970 (2d Cir. 1996) ................... 3

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 731 N.E.2d 581 (N.Y. 2000) ....................... 14

*Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562 (6th Cir. 2019) ......................... 14

*Cardizem CD Antitrust Litig., In re*, 200 F.R.D. 297 (E.D. Mich. 2001) .............................. 5

*Carlson v. Green*, 446 U.S. 14 (1980) .............................................................. 3

*Carter v. Berger*, 777 F.2d 1173 (7th Cir. 1985) .................................................... 8

*Cent. States, Se. & Sw. Areas Pension Fund v. Standard Elec. Co.*,
    87 F. Supp. 3d 810 (N.D. Ill. 2015) ................................... 6

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
    500 F.3d 571 (7th Cir. 2007) ................................. 3

*Charge Injection Techs., Inc. v. E.I. Dupont De Nemours & Co.*,
    2016 WL 937400 (Del. Super. Ct. Mar. 9, 2016) ................................. 13

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) ......................................... 15

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ................................. 6, 8, 9, 12

*Cronimet Holdings, Inc. v. Keywell Metals, LLC*,
    73 F. Supp. 3d 907 (N.D. Ill. 2014) ................................. 10

*Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145 (9th Cir. 2011) ................................. 6

*DNAML Pty, Ltd. v. Apple, Inc.*, 2015 WL 9077075 (S.D.N.Y. Dec. 16, 2015) ........................... 4

*Fairchild Hiller Corp. v. McDonnell Douglas Corp.*, 270 N.E.2d 691 (N.Y. 1971) ................... 14

*Galinski v. Kessler*, 480 N.E.2d 1176 (Ill. App. Ct. 1985) ................................................ 11

*Gibson v. Gillespie*, 152 A. 589 (Del. Super. Ct. 1928) ........................................ 13, 14

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
    995 F.2d 425 (3d Cir. 1993) .............................................................................. 3, 4

*Hall v. State*, 655 A.2d 827 (Del. Super. Ct. 1994) ........................................... 13

*Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251 (1972) .................................. 7

*Heavenly Ham Co. v. HBH Franchise Co.*,
    2005 WL 331558 (N.D. Ill. Feb. 7, 2005) .................................................... 4

*Henderson v. Kibbie*, 71 N.E. 1091 (Ill. 1904) .............................................. 12

*Howlett ex rel. Howlett v. Rose*, 496 U.S. 356 (1990) ..................................... 3

*Humanigen, Inc. v. Savant Neglected Diseases, LLC*,
    238 A.3d 194 (Del. Super. Ct. 2020) ........................................................ 13

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ........................................ 7

*Irwin v. Curie*, 64 N.E. 161 (N.Y. 1902) ....................................................... 11

*Jaffri v. Thrasher Buschmann & Voelkel, P.C.*,
    2015 WL 1119726 (S.D. Ind. Mar. 10, 2015) .......................................... 10

*Justinian Cap. SPC v. WestLB AG*, 65 N.E.3d 1253 (N.Y. 2016) .................. 15

*Lahijiani, In re*, 325 B.R. 282 (B.A.P. 9th Cir. 2005) .................................... 10

*Landi v. Arkules*, 835 P.2d 458 (Ariz. Ct. App. 1992) ................................... 6

*Liu v. T & H Mach., Inc.*, 191 F.3d 790 (7th Cir. 1999) ................................ 11

*Martin v. Morgan Drive Away, Inc.*, 665 F.2d 598 (5th Cir. 1982) ................. 4

*Maslowski v. Prospect Funding Partners LLC*, 944 N.W.2d 235 (Minn. 2020) ........... 7

*Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711 (N.D. Ill. 2014) .............. 11, 12

*Mojave Desert Holdings, LLC v. Crocs, Inc.*, 995 F.3d 969 (Fed. Cir. 2021) ............ 4

*Moses v. McDivitt*, 88 N.Y. 62 (1882) ......................................................... 14

*Murray Metallurgical Coal Holdings, LLC, In re*,
  623 B.R. 444 (Bankr. S.D. Ohio 2021) ...................................................... 8

*Nicole Energy Servs., Inc., In re*, 385 B.R. 201 (Bankr. S.D. Ohio 2008) ...................... 9

*Oil, Inc. v. Martin*, 44 N.E.2d 596 (Ill. 1942) ...................................................... 12

*Opana ER Antitrust Litig., In re*, 2016 WL 738596 (N.D. Ill. Feb. 25, 2016) ........... 3, 4

*Osprey, Inc. v. Cabana, L.P.*, 532 S.E.2d 269 (S.C. 2000) ...................................... 7

*PPI Enters. (U.S.), Inc., In re*, 324 F.3d 197 (3d Cir. 2003) .................................... 9

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134 (1968) ............................ 8

*Perry v. Thomas*, 482 U.S. 483 (1987) .............................................................. 4

*Petersen Energia Inversora, S.A.U. v. Argentine Republic*,
  2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016) ............................................... 11

*Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530 (7th Cir. 1981) ......... 8

*Prudential Oil Corp. v Phillips Petroleum Co.*,
  69 A.D.2d 763 (N.Y. App. Div. Apr. 5, 1979) ............................................... 15

*Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964 (N.D. Ill. 2014) ........................ 8

*Radovich v. Nat'l Football League*, 352 U.S. 445 (1957) ...................................... 7

*Reed, In re*, 532 B.R. 82 (Bankr. N.D. Ill. 2015) ................................................. 9

*Rodgers v. U.S. Steel Corp.*, 508 F.2d 152 (3d Cir. 1975) .................................... 5

*Ryan, In re*, 282 B.R. 742 (Bankr. D.R.I. 2002) ................................................. 9

*Saladini v. Righellis*, 687 N.E.2d 1224 (Mass. 1997) .......................................... 7

*Schomp v. Schenck*, 40 N.J.L. 195 (N.J. 1878) ................................................. 7

*Se. Chester Cnty. Refuse Auth. v. BFI Waste Servs. of Pa., LLC*,
  2017 WL 2799160 (Del. Super. Ct. June 27, 2017) ....................................... 13

*Simply Essentials, LLC, In re*, 640 B.R. 922 (Bankr. N.D. Iowa 2022) ...................... 10

*Smurfit Newsprint Corp. v. Se. Paper Mfg.*, 368 F.3d 944 (7th Cir. 2004) ................. 10

*Spiller v. Atchison, T. & S.F. Ry. Co.*, 253 U.S. 117 (1920) .................................... 5

*Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008) ....................... *passim*

*Sprung v. Jaffe*, 147 N.E.2d 6 (N.Y. 1957) ............................................................................ 14

*Steel Antitrust Litig., In re*, 2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) ......................... 3

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630 (1981) ................................... 7

*Tr. for the Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 918 N.E.2d 889 (N.Y. 2009) ................................................. 14

*United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) ............................................. 8

*Wallach v. Eaton Corp.*, 837 F.3d 356 (3d Cir. 2016) ............................................. 3, 6, 7

*Wigod v. Wells Fargo Bank, N.A.*, 2011 WL 250501 (N.D. Ill. Jan. 25, 2011) ............... 6

*Yonikus, In re*, 996 F.2d 866 (7th Cir. 1993) ................................................................. 8

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969) .......................... 7

## Statutes

11 U.S.C. § 363(b) ...................................................................................................... 9, 10

11 U.S.C. § 541(a)(1) .................................................................................................. 8, 9

11 U.S.C. § 704 ............................................................................................................... 9

11 U.S.C. § 704(a)(1) ...................................................................................................... 9

11 U.S.C. § 1123 ............................................................................................................. 9

11 U.S.C. § 1123(b)(4) .................................................................................................... 9

28 U.S.C. § 1927 ............................................................................................................. 7

31 U.S.C. § 3727 ............................................................................................................. 5

N.Y. Jud. Law § 489 (McKinney) ........................................................................ 11, 14, 15

## Rules

Fed. R. Civ. P. 11 ............................................................................................................. 7

## Other Authorities

1 Close Corp. and LLCs: Law and Practice § 5:14 (Rev. 3d ed.) .................................... 15

Restatement (Second) of Contracts § 317 (1981) ............................................................ 6

## PRELIMINARY STATEMENT

Over two years after Amory Investments LLC ("Amory") filed its complaint and disclosed that it had acquired its claims from the bankruptcy estate of Maines Paper & Food Service, Inc. ("Maines"), Defendants have suddenly challenged Amory's right to sue – proclaiming that they were "compelled" to "move[] promptly to bring this issue to the Court's attention." Mot. at 1 n.1. But Amory's status as an assignee has been no mystery, and Defendants' challenges to it have no merit. Federal law – which governs here because these are federal antitrust claims purchased out of a federal bankruptcy proceeding – has long permitted an assignee of antitrust claims to step into the shoes of an assignor and sue on its behalf. Defendants devote many pages to champerty, but that disfavored state-law doctrine is inapplicable here. There is no federal champerty law, and the doctrine is inconsistent with federal antitrust policy and federal bankruptcy law. Moreover, this assignment would be permissible even under any state law that might apply.

Defendants' fallback argument that Amory's relationship *with Burford* is champertous is frivolous. That argument is based on supposed public policy arguments against a litigation funder controlling the plaintiff's litigation. But those public policy arguments – which are wrong on their own terms – are utterly beside the point here, because Burford is not an arms'-length provider of capital to Amory. Burford owns Amory, and Amory – through the assignment – is the sole owner of the claims. It is absurd to suggest that champerty prohibits a corporation from owning or controlling a claim through a special purpose subsidiary. The motion should be denied.

## BACKGROUND

Maines was a national food distributor incorporated in New York with its principal place of business in Conklin, New York. Amory's Local Rule 56.1 Statement of Additional Material Facts ("Amory SUF") ¶ 2. On June 10, 2020, Maines filed for Chapter 11 bankruptcy in federal court in Delaware. Amory's Resps. to Defs.' Local Rule 56.1 Statement of Material Facts ("Defs.'

1

SUF") ¶ 15.  The bankruptcy court confirmed the "First Amended Joint Plan of Liquidation" on September 16, 2020, which established the MPFS Liquidating Trust ("the Trust").  Amory SUF ¶ 3.  The Plan transferred Maines's assets, including its causes of action, to the Trust and empowered the Trustee to liquidate and monetize the assets.  Amory SUF ¶ 4.  On March 31, 2021, the Trustee entered into an agreement to sell certain of Maines's food antitrust claims, including Maines's claims at issue here, to Amory.  Amory SUF ¶ 5.  Amory is wholly owned and controlled by Burford Capital LLC ("Burford"); Burford is incorporated in Delaware with its principal place of business in New York.  Amory SUF ¶ 1; Defs.' SUF ¶ 3.



Amory filed its complaint on December 9, 2021, alleging a single count, namely, a violation of the Sherman Act.  Defs.' SUF ¶ 20.  The complaint states that Amory acquired various assets of Maines, "including the claims that are the subject of this action."  Amory SUF ¶ 10.  The complaint further states that Maines "purchased hundreds of millions of dollars of turkey at artificially inflated prices . . . and suffered injury to its business or property as a direct or proximate

result of Defendants' wrongful conduct." Amory SUF ¶ 11. Amory has since prosecuted these claims as Maines's assignee. *See* Amory SUF ¶ 9.

## ARGUMENT

## I. The Assignment Is Valid Under Federal Common Law

### A. Federal Law Governs the Validity of Assignment of Federal Antitrust Claims

"The validity of assignments under the Sherman and Clayton Acts is a matter of federal common law." *In re Opana ER Antitrust Litig.*, 2016 WL 738596, at *5 (N.D. Ill. Feb. 25, 2016) (citing *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3d Cir. 1993)); *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *4 n.3 (N.D. Ill. Sept. 9, 2015) (adopting *Gulfstream*).[1] That rule stems from the principle that the contours and bounds of "a federal cause of action are defined by federal law." *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 375 (1990); *see Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 289-92 (2008) (treating assignability of federal claim as a matter of federal law). This includes both the survivability, *see Carlson v. Green*, 446 U.S. 14, 23 (1980), and assignability of federal claims, *see Bluebird Partners, L.P. v. First Fid. Bank, N.A. N.J.*, 85 F.3d 970, 973-74 (2d Cir. 1996) (collecting cases).[2]

As numerous courts have recognized, federal common law ensures that "the rules governing assignments of federal antitrust claims accord with the 'overall purposes of the antitrust statutes,'" and avoids "a patchwork of 'differing state law standards.'" *Wallach v. Eaton Corp.*, 837 F.3d 356, 366 (3d Cir. 2016) (quoting *Gulfstream*, 995 F.2d at 438); *accord Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 500 F.3d 571, 579 (7th Cir. 2007) ("overarching federal concern with the uniformity" "requires that the issue . . . be resolved by a

---

[1] *See also* Carina Ventures LLC's Reply Mem. in Supp. of Joint Mot. for Substitution of Pl. at 3, *In re Pork Antitrust Litig.*, No. 0:18-cv-01776-JRT-JFD (D. Minn. Aug. 7, 2023), ECF No. 1991 (collecting cases) (attached as Exhibit 7 to the Declaration of Derek T. Ho).

[2] *See also id.* at 4 (collecting cases).

federal common law"). "[I]t would be intolerable to permit the states to determine the transferability . . . of interests created by federal law." *DNAML Pty, Ltd. v. Apple, Inc.*, 2015 WL 9077075, at *3 (S.D.N.Y. Dec. 16, 2015) (internal quotation marks omitted).

The sum total of Defendants' analysis on this point is: "Assignment agreements are contracts, so their validity is judged by state law." Mot. at 6 (citing *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *Heavenly Ham Co. v. HBH Franchise Co.*, 2005 WL 331558, at *8 (N.D. Ill. Feb. 7, 2005)). That simplistic analysis is wrong. The validity of an assignment of federal claims – the only claims Amory has asserted – is governed by federal law, not state law. *Perry* and *Heavenly Ham* are off point because they involved neither an assignment, nor any federal claims. The plaintiff in *Perry* brought a variety of California tort, breach of contract, and fiduciary duty claims, 482 U.S. at 484-85, while *Heavenly Ham* was a diversity case involving a number of state contract and business tort claims, 2005 WL 331558, at *1.[3]

## B.    Federal Antitrust Claims Are Freely Assignable

"There is no serious doubt that an antitrust claim can be expressly assigned." *Gulfstream*, 995 F.2d at 437; *Opana ER*, 2016 WL 738596, at *5 (same) (collecting cases). As the Supreme Court has held, "history and precedent are clear" that federal law has long permitted "[a]ssignees of a claim" "to bring suit." *Sprint*, 554 U.S. at 275. Thus, absent contrary Congressional intent, federal claims may be freely assigned. *See*, *e.g.*, *Mojave Desert Holdings, LLC v. Crocs, Inc.*, 995 F.3d 969, 978 (Fed. Cir. 2021) (recognizing *Sprint*'s "general rule . . . applicable to federal causes

---

[3] Although it was not cited by Defendants, we note that a long-ago Fifth Circuit decision, *Martin v. Morgan Drive Away, Inc.*, decided, as a matter of federal common law, to apply state-law limitations on assignments. 665 F.2d 598, 604-05 & n.5 (5th Cir. 1982). However, the decision itself acknowledged a dearth of precedent on the issue at that time and "hidden tension" between its decision and other circuits' holdings "that federal and not state law governs the validity of a release of antitrust claims" given the "interests of uniformity of treatment of antitrust claims." *Id.* at 605. Since then, the Fifth Circuit has not followed *Martin*'s approach in any subsequent case. And cases in this District have instead followed the Third Circuit's decision in *Gulfstream*.

of action" that "choses in action [are] generally assignable"); *Spiller v. Atchison, T. & S.F. Ry. Co.*, 253 U.S. 117, 135 (1920) (federal cause of action for damages "must be regarded as assignable at law, in the absence of any expression of a legislative intent to the contrary"). Clearly, neither the Sherman Act nor the Clayton Act contains any prohibition on assignment of antitrust claims.[4]

### C.    Champerty Is Irrelevant to the Assignment of Federal Claims

Against this backdrop, Defendants' invocation of champerty is a non-starter. Federal common law does not recognize champerty or other state-law restrictions on the free assignability of federal causes of action. *See*, *e.g.*, *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1158 n.7 (5th Cir. 1985) (disapproving district court's attempt "to fashion a federal common law of champerty for maritime cases"); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 305 (E.D. Mich. 2001) (rejecting claim that assignee was not a typical class representative and holding that New York's champerty law would be "immaterial" in light of the "convincing[ ]" proposition that "federal law, not state law, governs the assignment of federal claims"); *cf. Rodgers v. U.S. Steel Corp.*, 508 F.2d 152, 163 (3d Cir. 1975) ("There is no federal common law offense of barratry").

Indeed, *Sprint* forecloses any federal-law champerty defense. The dissenting opinion in that case would have held that the assignee lacked Article III standing in part based on champerty and maintenance, which it said reflected common-law limitations on the assignability of claims. *See Sprint*, 554 U.S. at 306 (Roberts, C.J., dissenting). But the majority opinion rejected that argument, holding that the "party with legal title" to a claim has standing to bring suit, and leaving room only for the possibility that prudential federal concerns may prohibit "bad faith" assignments. *Id*. at 285, 292. The Court held, moreover, that any "bad faith" exception would not include assignments made "for ordinary business purposes," which are freely permitted. *Id*. at 292. And

---

[4] Congress well knows how to limit assignments of federal claims. *See*, *e.g.*, 31 U.S.C. § 3727 (governing assignment of claims against the United States).

the Court recognized that "assignees in bankruptcy" are permitted to "bring suit to benefit bankrupt estates." *Id.* at 288. That is the case here. Through the Assignment, Amory now holds the "legal title" to the claims, *id.* at 285, and the Trust made the Assignment to benefit the estate, *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 103 (2d Cir. 2007).

A federal champerty defense is also inconsistent with the Restatement of Contracts.[5] *See Wallach*, 837 F.3d at 367-68 (relying on the Restatement to assess the validity of an antitrust assignment because it promotes "national uniformity"). The Restatement makes clear that "the historic common-law rule that a chose in action could not be assigned has largely disappeared." Restatement (Second) of Contracts § 317 cmt. c (1981). The Second Circuit has likewise explained that the "purchasing of claims, whether before or after suit has been brought upon them, for the purpose of turning a profit is nonetheless not categorically forbidden." *Cordes*, 502 F.3d at 103 (discussing the purchase of antitrust claims out of bankruptcy). Instead, "such assignments are widely permitted" and "allow holders of claims to transfer the risk of loss to someone better able or more willing to pursue the claim." *Id.*

Consistent with the Restatement, courts widely recognize that champerty is a disfavored doctrine and the "consistent trend across the country is toward limiting, not expanding, champerty's reach." *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1156 (9th Cir. 2011); *see also Cordes*, 502 F.3d at 103. A number of states never adopted, or have long rejected, common law prohibitions on champerty and maintenance.[6] And federal recognition of champerty

---

[5] Courts in this district look to the Restatement to determine the scope of federal common law. *See, e.g.*, *Cent. States, Se. & Sw. Areas Pension Fund v. Standard Elec. Co.*, 87 F. Supp. 3d 810, 814-15 (N.D. Ill. 2015); *Wigod v. Wells Fargo Bank, N.A.*, 2011 WL 250501, at *5 (N.D. Ill. Jan. 25, 2011), *rev'd in part on other grounds*, 673 F.3d 547 (7th Cir. 2012).

[6] *See, e.g.*, *Landi v. Arkules*, 835 P.2d 458, 464 n.1 (Ariz. Ct. App. 1992); *Abbott Ford, Inc. v. Superior Ct.*, 741 P.2d 124, 141 n.26 (Cal. 1987) ("California . . . has never adopted the

would run contrary to the consistent trend among the states.  *See*, *e.g.*, *Maslowski v. Prospect Funding Partners LLC*, 944 N.W.2d 235, 241 (Minn. 2020) (abolishing champerty); *Osprey, Inc. v. Cabana, L.P.*, 532 S.E.2d 269, 279 (S.C. 2000) (same); *Saladini v. Righellis*, 687 N.E.2d 1224, 1225-27 (Mass. 1997) (same).  Moreover, federal courts already have ample tools to address the policy concerns that motivated champerty.  *See* Fed. R. Civ. P. 11; 28 U.S.C. § 1927.

### D.    Champerty Is Inconsistent With the Purposes of Federal Antitrust Laws

Applying champerty to prohibit assignments of federal antitrust claims would frustrate the "overall purposes of the antitrust statutes," *Wallach*, 837 F.3d at 368 (citation omitted), impeding Congress's aim of "encourag[ing] . . . 'private attorneys general,'" *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972) (citation omitted).  "[L]ongstanding policy" encourages "vigorous private enforcement of the antitrust laws," *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745 (1977), and the "vindication of rights" in private antitrust suits "supplements federal enforcement and fulfills the objects of the statutory scheme," *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 642 (1981); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969) ("[T]he purpose" of creating and encouraging private antitrust lawsuits "was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws.").  Indeed, in the "face of such a policy," the Supreme Court has cautioned against adding "requirements to burden the private litigant beyond what is specifically set forth by Congress in those laws." *Radovich v. Nat'l Football League*, 352 U.S. 445, 454 (1957).

For this reason, the Third Circuit declined to hold that antitrust assignments must be supported by consideration because such a requirement "could discourage private enforcement of the antitrust laws in derogation of *Illinois Brick*." *Wallach*, 837 F.3d at 369-70 ("[E]recting the

---

common law doctrines of champerty and maintenance."); *Schomp v. Schenck*, 40 N.J.L. 195, 206 (N.J. 1878); *Bentinck v. Franklin*, 38 Tex. 458, 468 (Tex. 1873).

barrier of consideration threatens to shut out otherwise meritorious suits from resolution."). A champerty limitation would have the same chilling effect. The Assignment is consistent with the antitrust laws because it permits the Trust to assign claims to someone who will continue to vigorously prosecute them. *See Cordes*, 502 F.3d at 103; *Carter v. Berger*, 777 F.2d 1173, 1177 (7th Cir. 1985) (free assignability "increase[s] the deterrent power of the antitrust laws").

A federal champerty doctrine restricting antitrust assignments would also be incompatible with the Supreme Court's longstanding rejection of defenses to federal antitrust claims based on purported illegal conduct by the plaintiff. *See Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 n.5 (7th Cir. 1981) (citing *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 140 (1968)). In *Perma Life*, the Court explained that it would be "inappropriate[]" to invoke "common-law barriers to relief where a private suit serves important public purposes." 392 U.S. at 138. That is exactly what Defendants are attempting to do here.[7]

### E. Champerty Is Also Inconsistent With Federal Bankruptcy Law

The rule that federal antitrust claims are freely assignable is doubly strong here given that Amory purchased its Sherman Act claims from the *Maines* bankruptcy liquidation trust, pursuant to a liquidation plan authorizing the trustee to monetize those claims. Bankruptcy Code § 541 broadly defines the bankruptcy estate to include "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1); *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983). That includes causes of action that the debtor may have. *See Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964, 982 (N.D. Ill. 2014) ("'[V]irtually all property of the debtor' at the time he files for bankruptcy—including any causes of action—becomes property of the bankruptcy estate.") (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)); *In re Murray Metallurgical*

---

[7] This is consistent with the rule – discussed further below – that illegality in an assignment agreement can be raised only between the parties.

*Coal Holdings, LLC*, 623 B.R. 444, 508 (Bankr. S.D. Ohio 2021) ("'Numerous courts have interpreted' the definition set forth in § 541(a)(1) 'to include causes of action.'" (collecting cases)). Bankruptcy Code § 1123, in turn, authorizes a bankruptcy plan that includes a liquidation trust, which is authorized to sell the assets of the estate, including causes of action. *See* 11 U.S.C. § 1123(b)(4); *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 211 (3d Cir. 2003); *see also In re Nicole Energy Servs., Inc.*, 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008) (Bankruptcy Code § 363(b) authorizes trustee to sell causes of action owned by estate).

Consistent with that statutory authorization, the Maines bankruptcy court confirmed the First Amended Joint Plan of Liquidation, which created a "Liquidating Trustee to liquidate or otherwise dispose of the remaining assets of the Debtors' estates." Amory SUF ¶ 3. The "Liquidating Trust Assets" included "all Causes of Action the Debtors hold or may hold against any Entity." Amory SUF ¶ 4; *see also* 11 U.S.C. § 704(a)(1) (mandating that Chapter 7 trustee "collect and reduce to money the property of the estate"). The Plan also granted the Liquidating Trustee the right to "liquidate the Liquidating Trust Assets." Amory SUF ¶ 4. Thus, when the Trustee sold the claims to Amory, it was not engaged in unlawful champerty; the Trustee was acting pursuant to a federally authorized plan to monetize Maines's food antitrust claims for creditors' benefit. *See Cordes*, 502 F.3d at 103; *In re Ryan*, 282 B.R. 742, 753 (Bankr. D.R.I. 2002) (trustee carrying out duties under § 704 was not engaged in champerty); Amory SUF ¶¶ 3-4. Any suggestion that the Assignment Agreement is invalid would impugn the integrity of the bankruptcy process and the actions of the *Maines* bankruptcy court.

Defendants' arguments that assignments are against public policy hold no water in the bankruptcy context. There "is no cognizable claim for champerty under the Bankruptcy Code." *In re Reed*, 532 B.R. 82, 94 (Bankr. N.D. Ill. 2015). The free assignability of federal causes of

9

action is consistent with the text of the bankruptcy laws and critical to its purposes. Indeed, a federal law of champerty would stymie the bankruptcy process in a wide range of cases where causes of action are among the valuable assets of the estate that could be sold for creditors' benefit. *See* *In re Lahijiani*, 325 B.R. 282, 288 (B.A.P. 9th Cir. 2005) ("Causes of action that exist independent of bankruptcy are commonly sold by bankruptcy trustees under § 363(b)."); *In re Simply Essentials, LLC*, 640 B.R. 922, 930 (Bankr. N.D. Iowa 2022) ("Trustees often are unable to pursue potential causes of action because the estate does not have funds on hand to do so . . . . To allow [potential defendants] to escape those claims because the Trustee cannot afford to pursue them and they cannot be sold or transferred would be an absurd result.").

## II.     Defendants' Reliance on State Law Is Misplaced

Even if state law governed the validity of the Assignment Agreement – which it does not – none of Defendants' state law arguments have any merit. The Assignment is valid under New York law ███████████████████████████. The Assignment is also permissible under Illinois and Delaware law, even if they applied. And state law would be preempted, in any event, if it purported to preclude the assignment of federal claims. *See supra* Part I.

### A.     The Assignment Is Valid Under New York Law

Both Illinois and federal courts apply the choice of law analysis set out in the Restatement (Second) of Conflict of Laws. *See* *Jaffri v. Thrasher Buschmann & Voelkel, P.C.*, 2015 WL 1119726, at *3 (S.D. Ind. Mar. 10, 2015) (federal common law); *Cronimet Holdings, Inc. v. Keywell Metals, LLC*, 73 F. Supp. 3d 907, 914 (N.D. Ill. 2014) (Illinois law). Under the Restatement, the parties' contractual choice of law "is generally recognized," *Smurfit Newsprint Corp. v. Se. Paper Mfg.*, 368 F.3d 944, 949 (7th Cir. 2004), unless the chosen state has "no substantial relationship to the parties or the transaction" or its application would be contrary to a fundamental policy of a state with a materially greater interest, *Aon plc v. Alpine Rewards, LLC*,

10

2023 WL 3713987, at *4 (N.D. Ill. Apr. 12, 2023). Neither exception is met here. New York has a substantial relationship because both Maines and Burford have their principal places of business there, and Maines was incorporated in New York. Amory SUF ¶¶ 1-2. Moreover, application of New York law does not violate any "fundamental" policy in Delaware, which in any event does not have a "materially greater" interest than New York – its sole connection is the federal bankruptcy proceeding and Amory's state of incorporation. Under New York law, common law champerty has been abolished and replaced by statute. *See Irwin v. Curie*, 64 N.E. 161, 161 (N.Y. 1902). That statute, Judiciary Law § 489, expressly authorizes the purchase of legal claims out of bankruptcy. *See N.Y. Jud. Law § 489 (McKinney)* ("other things in action may be solicited, bought, or assignment thereof taken, from any . . . trustee or receiver in bankruptcy."). The assignment here falls squarely within that statutory safe harbor. *See Petersen Energia Inversora, S.A.U. v. Argentine Republic*, 2016 WL 4735367, at *10 (S.D.N.Y. Sept. 9, 2016).

**B.      The Assignment Is Valid Under Illinois Law**

Legal claims are freely assignable in Illinois. *See Liu v. T & H Mach., Inc.*, 191 F.3d 790, 797 (7th Cir. 1999). Illinois law does recognize champerty, but it only reaches "officious intermeddling in a suit," *Galinski v. Kessler*, 480 N.E.2d 1176, 1178 (Ill. App. Ct. 1985), which means "volunteering one's services where they are neither asked for nor needed," *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 725 (N.D. Ill. 2014). Thus, only *unwanted* intermeddling is champertous – for example, where the officious intermeddler imposes its will on the other party. *See Miller UK Ltd.*, 17 F. Supp. 3d at 725.

Because champerty is designed fundamentally to protect a claimant from *unwanted* intermeddling by a third party, it is settled under Illinois law that champerty can only be raised by a party to the alleged champertous agreement. As the Illinois Supreme Court has repeatedly explained, "[i]t is the rule in Illinois, and also, as we believe, the general rule, that the defense of

champerty can only be interposed in an action between the parties to the champertous contract, and does not furnish any reason for refusing relief in the proceeding to which the champertous agreement relates." *Oil, Inc. v. Martin*, 44 N.E.2d 596, 600 (Ill. 1942) (quoting *Henderson v. Kibbie*, 71 N.E. 1091, 1094 (Ill. 1904) (collecting cases)); *see also Miller UK Ltd.*, 17 F. Supp. 3d at 726. Champerty is thus consistent with "the broader rule that illegality of contract is a defense [that] has application only to an action seeking enforcement of the illegal contract and only between the immediate parties to it." *Miller UK Ltd.*, 17 F. Supp. 3d at 726 (collecting cases). Under Illinois law, champerty provides a mechanism for a party to negate the oppressive and unwanted conduct of its contractual counterparty. It does not provide grounds for a nonparty to invalidate an agreement supported by the parties to it. Thus, an argument that the Assignment is champertous would only be available in an action between Amory and the Trust. *See Acorn Bankshares, Inc. v. Suburban Bancorp, Inc.*, 1985 WL 2671, at *7 (N.D. Ill. Sept. 18, 1985). It affords Defendants no basis for summary judgment.[8]

Moreover, even if Defendants could assert champerty, their argument would fail on the merits because no "officious intermeddling" occurred here. Amory acquired these claims directly from the Liquidating Trustee and "promoted the winding up of complicated estates in bankruptcy to the benefit of creditors." *Cordes*, 502 F.3d at 103; Amory SUF ¶¶ 3-5. This is not a case where Amory attempted to "stir up a suit" nor "foment useless litigation for the sake of harassment . . . or promote or cause meritless litigation." *Miller UK Ltd.*, 17 F. Supp. 3d at 725 (quotations

---

[8] Defendants cite *Birner v. General Motors Corp.*, 2007 WL 269847, at *2 (C.D. Ill. Jan. 26, 2007), in support of their suggestion that the Assignment may be "void as . . . against public policy." Mot. at 9 n.8. Leaving aside that *Birner* is a district court decision from another jurisdiction, it does not concern an antitrust assignment governed by federal common law. While the *Birner* decision does not state the source of law it applied, even assuming it is Illinois, the decision is not probative. The court, responding to the plaintiff's specific argument, which relied on the Uniform Commercial Code, did not address any of the Illinois law discussed in this section – including that champerty can be raised only by a party to an agreement.

omitted).  Indeed, Amory is just one of many plaintiffs asserting viable antitrust claims – it did not file its complaint until nearly two years after the first plaintiff.  Defs.' SUF ¶¶ 14, 20.

### C.     The Assignment Is Valid Under Delaware Law

Under Delaware law, "[c]hamperty and maintenance are common law offenses of officiously intermeddling in a stranger's suit."  *Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 203 (Del. Super. Ct. 2020).  "The historical justification for prohibiting any form of champerty or maintenance was to prevent disinterested third-parties from stirring up or encouraging fraudulent and frivolous lawsuits."  *Charge Injection Techs., Inc. v. E.I. Dupont De Nemours & Co.*, 2016 WL 937400, at *2 (Del. Super. Ct. Mar. 9, 2016).  Just as in Illinois, this assignment is not champertous – Amory did not "stir up" this suit nor is it "fraudulent" or "frivolous."  Rather, these same claims had been raised by multiple plaintiffs long before Amory filed its complaint and have since survived Defendants' motion to dismiss.  Defs.' SUF ¶ 14.

Moreover, Delaware champerty doctrine primarily seeks to deter two types of intermeddling, neither of which are at issue here.  First, "Delaware has long defined a champertous cause of action as 'an agreement between the owner of a claim and a volunteer that the latter may take the claim and collect it, *dividing the proceeds with the owner, if they prevail*.'"  *Se. Chester Cnty. Refuse Auth. v. BFI Waste Servs. of Pa., LLC*, 2017 WL 2799160, at *7 (Del. Super. Ct. June 27, 2017) (quoting *Gibson v. Gillespie*, 152 A. 589, 593 (Del. Super. Ct. 1928)) (emphasis added); *Hall v. State*, 655 A.2d 827, 829 (Del. Super. Ct. 1994) (same).  Here, there is no agreement to divide the proceeds.  Instead, Amory owns the claim outright.  Amory SUF ¶ 9 (assignment transferred all rights to any proceeds from the claims and Trust "retain[s] no rights" in the claims).

Second, the "doctrine of champerty 'is based upon the ground that no encouragement should be given to litigation by the introduction of a party to enforce those rights which the owners are *not disposed to prosecute*.'"  *Charge Injection Techs., Inc.*, 2016 WL 937400, at *4 (quoting

13

*Gibson*, 152 A. at 593) (emphasis in original). Here, Defendants put forth no evidence that Maines or the Trust would have declined to prosecute its claims. Rather, the assignment reflects the simple reality that the Trustee lacked adequate funds to fully pursue the claims and instead monetized the claims through an assignment to Amory. Amory SUF ¶ 5.

## III. Amory's Relationship to Burford Does Not Warrant Summary Judgment

Defendants' argument (at 9) that Amory's "prosecution" of these cases is champertous, "independent of" the assignment, makes no sense. To the extent it is comprehensible at all, Defendants' point appears to be that Amory's relationship *to Burford* is unlawful under the case law addressing litigation funding arrangements, because Amory is a wholly owned subsidiary of Burford, which controls Amory's litigation of its claims. All of Defendants' cases involve an arm's-length third-party providing funding to a plaintiff. *See, e.g., Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 579 (6th Cir. 2019).[9] But as Defendants themselves acknowledge (at 10 n.9), Burford is not a separate company that provided litigation funding to Amory. Burford *owns* Amory, which *owns* these claims. The assertion that "[c]ourts find litigation funding or litigation funding agreements champertous and in violation of public policy when litigation funders have the ability to control the litigation" is completely beside the point.[10]

---

[9] Contrary to Defendants' sweeping suggestion (at 10) that champerty laws broadly prohibit investing in litigation, champerty law in New York, Illinois, and Delaware is narrowly circumscribed and *permits* litigation funding arrangements. *See supra* pp. 10-14. Moreover, if those states did broadly prohibit investing in litigation, that would be proof that such restrictions are incompatible with both the federal antitrust laws and federal bankruptcy law. *See supra* p. 8.

[10] The assertion is also inaccurate. Under New York law, which governs here (*see supra* pp. 10-11), a necessary (but not sufficient) element of champerty is an *assignment* of a claim. In more than 100 years, no New York court has applied section 489 outside that context. *See, e.g., Moses v. McDivitt*, 88 N.Y. 62, 62 (1882) (attorney bond purchase); *Sprung v. Jaffe*, 147 N.E.2d 6, 7 (N.Y. 1957) (attorney outright claim purchase); *Fairchild Hiller Corp. v. McDonnell Douglas Corp.*, 270 N.E.2d 691, 692 (N.Y. 1971) (asset purchase which included contract claim); *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 731 N.E.2d 581, 582 (N.Y. 2000) (certificate purchase); *Tr. for the Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 918 N.E.2d

Defendants' extended argument (at 11-15) that Burford, *rather than Amory*, controls this litigation illustrates the incoherence of their position. Defendants' suggestion that it violates public policy for a company to own and prosecute litigation claims through a "special purpose" subsidiary contravenes basic corporate law principles and, frankly, is frivolous. *See*, *e.g.*, 1 Close Corp. and LLCs: Law and Practice § 5:14 (Rev. 3d ed.) ("In a corporation, the authority to control the corporation's litigation generally follows the centralized power and majority rule provisions for corporate acts generally."); *cf. Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver."). Nothing in the law of champerty in *any state* purports to dictate the way in which corporations that own legal claims are structured internally.[11]

In short, because the Assignment is valid, Amory steps into the shoes of the assignor and may "sue based on [its] assignor's injuries." *Sprint*, 554 U.S. at 286. Thus, Amory is the "bona fide" plaintiff, under "the longstanding doctrine permitting an assignee to bring suit on an assigned claim." *Id.* at 290. That straightforward conclusion suffices to deny Defendants' motion.

## CONCLUSION

For these reasons, Amory respectfully requests that the Court deny Defendants' motion.

---

889, 891 (N.Y. 2009) (assignment out of loan purchasing agreement); *Justinian Cap. SPC v. WestLB AG*, 65 N.E.3d 1253, 1254 (N.Y. 2016) (note purchase).

[11] In New York, in particular, section 489 does not apply to assignments between parent and subsidiary. *See Prudential Oil Corp. v Phillips Petroleum Co.*, 69 A.D.2d 763, 763 (N.Y. App. Div. Apr. 5, 1979).

Dated:  August 14, 2023

Respectfully submitted,

_/s/ Derek T. Ho_____

Derek T. Ho (admitted *pro hac vice*)
Travis G. Edwards
Dustin G. Graber
KELLOGG, HANSEN, TODD, FIGEL
    & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
tedwards@kellogghansen.com
dgraber@kellogghansen.com

Patrick J. Ahern
AHERN AND ASSOCIATES, P.C.
8 South Michigan Avenue, Suite 3700
Chicago, Illinois 60603
(312) 404-3760
patrick.ahern@ahernandassociatespc.com

*Attorneys for Amory Investments LLC*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on August 14, 2023, a copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ Derek T. Ho*
Derek T. Ho