**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

*IN RE TURKEY ANTITRUST LITIGATION*

This Document Relates To:

*Amory Investments, LLC v. Agri Stats et. al.,*
No. 21-cv-06600

---

No. 19-cv-08318

Hon. Sunil R. Harjani
Hon. Keri L. Holleb Hotaling

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' OPPOSED MOTION TO CERTIFY THE COURT'S MARCH 28, 2024**
**ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT ............................................................................................................................. 4

     I.       Whether State Law Governs The Validity Of The Assignment ............................. 6

     II.      Whether Federal Common Law Prohibits Champerty ............................................ 9

CONCLUSION ......................................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) .............................................................4, 9

*Aon plc v. Heffernan*, 2017 WL 1430616 (N.D. Ill. Apr. 20, 2017).............................6

*Boling v. Prospect Funding Holdings, LLC*,
771 F. App'x 562 (6th Cir. 2019) .........................................................10

*In re Broiler Chicken Antitrust Litig.*,
2024 WL 1214568 (N.D. Ill. Mar. 21, 2024)....................................8, 12

*In re Cattle and Beef Antitrust Litigation*,
No. 22-md-3031, 2024 WL 511890 (D. Minn. Feb. 9, 2024)  .........7, 12

*City of Joliet v. Mid-City Nat'l Bank*,
2008 WL 4889038 (N.D. Ill. June 13, 2008) ..........................................5

*Costello v. BeavEx, Inc.*,
2014 WL 12775669 (N.D. Ill. Dec. 1, 2014) ..........................................9

*Dale v. Deutsche Telekom AG*,
2024 WL 1302783 (N.D. Ill. Mar. 27, 2024)..................................4, 5, 9

*In re DesignLine Corp.*,
565 B.R. 341 (Bankr. W.D.N.C. 2017)..................................................11

*District Distribs., Inc. v. Heublein, Inc.*,
1971 WL 559 (D.D.C. May 28, 1971)....................................................10

*Ganpat v. E. Pac. Shipping PTE., LTD.*,
642 F. Supp. 3d 524 (E.D. La. 2022)......................................................6

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
995 F.2d 425 (3d Cir. 1993)....................................................................8

*Hall v. State*,
655 A.2d 827 (Del. Super. Ct. 1994) ......................................................6

*Jack Faucett Assocs., Inc. v. AT&T*,
1985 WL 25746 (D.D.C. Oct. 18, 1985) ...............................................10

*Johnson v. Burken*,
930 F.2d 1202 (7th Cir. 1991) ................................................................5

*Justinian Cap. SPC v. WestLB AG*,
    28 N.Y.3d 160, 65 N.E.3d 1253 (2016)............................................................6

*Koehler v. NationsBank Corp.*,
    1997 WL 112836 (N.D. Ill. Mar. 10, 1997)....................................................7

*Koro Co. v. Bristol-Myers Co.*,
    568 F. Supp. 280 (D.D.C. 1983).....................................................................10

*Kuehn v. Childrens Hosp., Los Angeles*,
    119 F.3d 1296 (7th Cir. 1997) ..........................................................................6

*In re Lion Air JT 610 Crash*,
    2023 WL 3653217 (N.D. Ill. May 25, 2023) ...................................................4

*In re Maines Paper & Food Service, Inc.* ("*Maines Bankruptcy*"),
    Case No. 20-11502-TMH ..............................................................................2, 3

*Martin v. Morgan Drive Away, Inc.*,
    665 F.2d 598 (5th Cir. 1982) ............................................................................8

*Maslowski v. Prospect Funding Partners LLC*,
    944 N.W.2d 235 (Minn. 2020).........................................................................11

*Burt ex rel. McDonnell Douglas Corp. v. Danforth*,
    742 F. Supp. 1043 (E.D. Mo. 1990).................................................................6

*In re Milk Prods. Antitrust Litig.*,
    195 F.3d 430 (8th Cir. 1999) ............................................................................8

*In re Nat'l Prescription Opiate Litig.*,
    2018 WL 2127807 (N.D. Ohio May 7, 2018)................................................11

*In re Opana ER Antitrust Litig.*,
    2016 WL 738596 (N.D. Ill. Feb. 25, 2016) .....................................................7

*Osprey, Inc. v. Cabana Ltd.*,
    532 S.E.2d 269 (S.C. 2000) ...........................................................................11

*In re Pork Antitrust Litigation*,
    No. 18-CV-1776, 2024 WL 511890 (D. Minn. Feb. 9, 2024)  .................7, 12

*Sampliner v. Motion Picture Patents Co.*,
    255 F. 242 (2d Cir. 1918)..................................................................................8

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
    86 F.3d 656 (7th Cir. 1996) ..............................................................................4

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012) ................................................................5

*Vanegas v. Signet Builders, Inc*.,
    2023 WL 5663259 (W.D. Wis. Sept. 1, 2023) .......................................9

**Statutes**

28 United States Code
    § 1292(b) ...................................................................... *passim*

New York Judiciary Law § 489(1) ........................................................6

**Other Authorities**

Federal Rules of Civil Procedure
    Rule 30(b)(6) ...............................................................................3

7 Williston on Contracts § 15:4 (4th ed.) ...........................................11

## INTRODUCTION

Plaintiff Amory Investments, LLC ("Amory") is not a typical plaintiff. Instead, Amory is a special purpose vehicle, wholly owned and controlled by litigation funder Burford Capital, LLC ("Burford"). Amory's claims in this case arise solely from a purported assignment of antitrust claims from Maines Paper & Food Service ("Maines Paper"), a national food distributor. Maines Paper filed for bankruptcy in June 2020. At the time it filed for bankruptcy, Maines Paper owed millions of dollars to various poultry companies, and, as part of the resolution of its bankruptcy proceedings, Maines Paper paid pennies on the dollar to its creditors, including some of the poultry companies who are Defendants here. Amory assumed Maines Paper's antitrust claims to pursue this case, along with at least six other antitrust claims involving food products, from the Maines Paper bankruptcy trustee. Amory—which has never purchased a single poultry product, has no employees of its own, and is merely a Burford litigation vehicle—then turned around and sued Defendants, including Maines Paper's creditors, for alleged antitrust violations.

Given the above circumstances, Defendants filed a motion for summary judgment, arguing that Maines Paper's assignment to Amory was champertous under state law and that, even independent of the assignment, Amory's prosecution and Burford's control of this case are champertous and violate public policy. (ECF 800–06, 819–20.) On March 28, 2024, the Court denied Defendants' motion for summary judgment to dismiss Amory's case. (ECF 912, the "Order".) The Order presents two questions of law that should be certified for interlocutory appeal under 28 U.S.C. § 1292(b). Each presents significant, contestable, and potentially dispositive legal issues, the resolution of which could spare the parties and the Court unnecessary burden and expense. The questions of law at issue in the Order are: ***First***, is the validity of an assignment of

a federal antitrust claim governed by state law or federal common law?  ***Second***, does federal law recognize the doctrine of champerty?

All the Section 1292(b) factors are satisfied for certification of these issues:  Each is a controlling question of law that is contestable, and their resolution in Defendants' favor would materially advance Amory's case or end it altogether.  As the Order acknowledges, courts *have* reached divergent conclusions on these issues, and the Seventh Circuit, unlike other courts of appeals, has yet to provide clear authority as to either of them.  Moreover, these are significant legal questions, the resolution of which will not require the Seventh Circuit to scour the record or make findings of fact.  Rather, certifying these disputed questions for immediate appeal could expedite the resolution of the Amory case, eliminating the need for further discovery, merits briefing, and trial, and would also provide much-needed guidance for district courts in future cases.  For these reasons, Defendants respectfully request that the Court certify these issues for immediate appeal.

## BACKGROUND

The pertinent facts are undisputed.  On December 19, 2019, direct purchasers of turkey products filed an antitrust class action complaint, alleging a conspiracy to suppress turkey production and increase prices, in violation of the Sherman Act.  (Order at 1 (citing ECF 1; ECF 813-1 ¶ 14).)  Maines Paper, a national food distributor, was part of the direct-purchaser putative class and never itself filed a direct-action complaint against Defendants.

Maines Paper filed for Chapter 11 bankruptcy in June 2020.  (*Id.*; *see also* ECF 813-1 ¶ 15.)  Maines Paper owed over a hundred million dollars to its creditors, including to some of the poultry companies named as Defendants in this case.  (*See In re Maines Paper & Food Service, Inc.* ("*Maines Bankruptcy*"), Case No. 20-11502-TMH, ECF 20 and ECF 268-1 (Bankr. D. Del.).)

2

As part of the bankruptcy proceeding, Maines Paper's creditors received pennies on the dollar from Maines Paper. (*E.g.*, *id.* at ECF 595, Final Report and Account in Chapter 11 Case.) On March 13, 2021, the Maines Paper bankruptcy trustee made a purported assignment of Maines Paper's cause of action in *Olean Wholesale Grocery Cooperative v. Agri Stats, Inc.* and six other antitrust actions to Amory Investments, LLC. (Order at 1–2 (citing ECF 813-4 at 20–23); *Maines Bankruptcy*, ECF 595; *id.* at ECF 466 at 13 (listing antitrust claims included in the assignment).) Amory then proceeded to file its own complaint alleging the same basic facts and claims as the putative direct purchaser class. (*See* Order at 1–2; *Amory Investments LLC v. Agri Stats, Inc.*, No. 21-cv-06600 (N.D. Ill. Dec. 9, 2021), ECF 1.)

As the Order explained, Amory "is not a typical plaintiff." (Order at 1.) It has never purchased turkey products and has no basis to assert a claim for antitrust violations outside of the assignment. (*See id.* at 2.) Rather, Amory is a special purpose vehicle used to hold investments, like the claim it asserts here, for Burford. (*Id.*) Pursuant to the limited liability company agreement that formed Amory, Burford, as the sole member of Amory, "has exclusive and complete authority" to manage Amory's operations and make decisions on its behalf. (*Id.* (quoting LLC agreement).) Amory has no employees of its own; instead, Burford employees, as part of their duties for Burford, make all strategic decisions regarding this case. (*Id.* (citing ECF 813-1 ¶¶ 13, 25–35).) In fact, as part of her duties for Burford, a Burford executive served as Amory's Rule 30(b)(6) witness, purporting to testify about Maines Paper's underlying claims. (*See* ECF 813-1 ¶¶ 24–31.)

On July 17, 2023, Defendants filed a motion for summary judgment, arguing that Maines Paper's assignment to Amory was champertous under state law and that, even independent of the assignment, Amory's prosecution of this case is champertous and violates public policy. (*See* ECF

800–06.)  On August 14, 2023, Amory filed its Opposition.  (*See* ECF 811; ECF 813.)  Briefing concluded on August 28, 2023.  (*See* ECF 819–20.)  On March 28, 2024, Judge Kendall denied Defendants' motion.  (*See* ECF 912.)  Her Order addressed the questions at issue here: (1) whether state law or federal common law governs the validity of the assignment of Maines Paper's federal antitrust claim to Amory (*id.* at 3–7); and (2) whether federal common law recognizes champerty (*id.* at 7–14).  The Order discussed no disputed issues of material fact.

## ARGUMENT

Under 28 U.S.C. § 1292(b), a party can appeal an otherwise non-appealable order where the district judge "shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  This District has further explained that the statutory criteria require the movant to show: "(1) there is a question of law; (2) the question is controlling; (3) the question is 'contestable,' that is, there is substantial grounds for differences of opinion; and (4) immediate appeal would speed up the ultimate termination of the litigation."  *In re Lion Air JT 610 Crash*, 2023 WL 3653217, at *2 (N.D. Ill. May 25, 2023) (citing *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000)).

For purposes of § 1292(b), a "question of law" means a "pure question of law," that is "something the court of appeals could decide quickly and cleanly without having to study the record," such as "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine."  *Dale v. Deutsche Telekom AG*, 2024 WL 1302783, at *3 (N.D. Ill. Mar. 27, 2024) (quoting *Ahrenholz*, 219 F.3d at 677).

Controlling questions are those that are "quite likely to affect the further course of the litigation, even if not certain to do so," *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery*

*Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996), and are "serious to the conduct of the litigation, either practically or legally," *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (quotation omitted).  In other words, "a question is controlling ... if interlocutory reversal might save time for the district court, and time and expense for the litigants."  *Id.*

"A question is 'contestable' when substantial grounds for a difference of opinion exist." *Dale*, 2024 WL 1302783, at *2 (citation omitted).  That is, "[a] question of law is contestable if there are substantial, conflicting decisions … or the question is not settled by controlling authority, and there is a substantial likelihood that the district court ruling will be reversed on appeal."  *Id.* at *3 (citation omitted).  Whether the ruling will be reversed is not dispositive.  *See City of Joliet v. Mid-City Nat'l Bank*, 2008 WL 4889038, at *2 (N.D. Ill. June 13, 2008) ("While the court is loath to determine there is a 'substantial likelihood' that it will be reversed on appeal, the court determines that the issue presented in Defendants' Petitions is contestable.").

The final § 1292(b) element is satisfied if "an immediate appeal *may* materially advance the ultimate termination of the litigation."  *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (emphasis in original).  Notably, the Seventh Circuit has emphasized the "may" in this phrase, explaining that "neither the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court."  *Id.*[1]

As discussed below, both questions meet the standard for certification.

---

[1] Here, for example, if the Order is reversed as to either of the two questions, this Court may have to make determinations under the appropriate state law or federal law to determine whether the assignment or Burford's control here is champertous.  Such further proceedings do not weigh against certification because if this Court did determine under the appropriate law that the assignment or Burford's control is champertous, the litigation would end because Amory would not have a valid claim.

## I.    Whether State Law Governs The Validity Of The Assignment

Whether state or federal law applies in assessing the validity of the assignment of Maines Paper's antitrust claim to Amory "is a pure question of law." *Kuehn v. Childrens Hosp., Los Angeles*, 119 F.3d 1296, 1300 (7th Cir. 1997); *accord Aon plc v. Heffernan*, 2017 WL 1430616, at *3 (N.D. Ill. Apr. 20, 2017) (certifying choice-of-law question for interlocutory appeal); *Ganpat v. E. Pac. Shipping PTE., LTD.*, 642 F. Supp. 3d 524, 543 (E.D. La. 2022) (same); *Burt ex rel. McDonnell Douglas Corp. v. Danforth*, 742 F. Supp. 1043, 1054 (E.D. Mo. 1990) (certifying "choice of law issues" for interlocutory appeal where "a different resolution … could obviate the need for a trial").  Answering this question will require no studying of the record, but rather will require making a legal determination that will be applicable to any case that presents the question of whether the assignment of an antitrust claim is valid.

Further, this question is controlling.  *See Aon plc*, 2017 WL 1430616, at *3 (determining that choice-of-law question was controlling).  As the Order recognized, "[t]he dispositive issue is whether the assignment agreement transferring the federal antitrust claim to Amory is valid" and that "[t]o answer that question, the Court must determine which set of laws governs the assignability."  (Order at 3.)  Judge Kendall ruled that federal law governs the validity of the assignment and no federal common law of champerty prohibited the assignment.  (*See* Order at 7– 14.)  However, both state laws at issue here, New York and Delaware,[2] do prohibit champerty. *See Hall v. State*, 655 A.2d 827, 829-30 (Del. Super. Ct. 1994) (assignment void as champertous "where the assignee had no interest in the cause of action prior to the assignment"); *Justinian Cap. SPC v. WestLB AG*, 28 N.Y.3d 160, 167, 65 N.E.3d 1253, 1257 (2016) (explaining that Judiciary

---

[2] *See* Order at 2 & n.2 (noting Amory argued, in the alternative to its argument that federal law governs the validity of the assignment, that "that New York law applies to the assignment agreement"); *id.* at 3 & n.3 ("Defendants argue that … Delaware … law governs the assignment contract.").

Law § 489(1) voids assignments where the primary purpose is to enable assignee to bring a suit). Therefore, if the Seventh Circuit reverses and decides state law applies, this case could end as either state's laws would invalidate the assignment.

Moreover, as the Order recognized, the issue of whether state or federal law governs the validity of the assignment is contestable. (Order at 3 (discussing that "[t]his legal question is not settled. Neither party has cited to, and the Court has not found, a binding precedent on this issue" and noting that "Courts in this District have disagreed on which law to apply"); *id.* (comparing *Koehler v. NationsBank Corp.*, 1997 WL 112836, at *1 (N.D. Ill. Mar. 10, 1997) ("[T]he validity of a particular assignment of a federal cause of action is governed by the state law….") *with In re Opana ER Antitrust Litig.*, 2016 WL 738596, at *5 (N.D. Ill. Feb. 25, 2016) ("The validity of assignments under the Sherman and Clayton Acts is a matter of federal common law." (citations omitted))).)

Indeed, conflict on this issue even exists among other opinions involving purported assignments of federal antitrust claims to a Burford wholly-owned and controlled subsidiary. In *In re Pork Antitrust Litigation* ("*Pork*"), No. 18-CV-1776 (JRT/JFD) (D. Minn.) and *In re Cattle and Beef Antitrust Litigation* ("*Beef*"), No. 22-md-3031 (JRT/JFD) (D. Minn.), another Burford subsidiary, Carina Ventures LLC ("Carina"), after a purported assignment of direct purchaser Sysco Corporation's claims in those cases, brought motions to substitute Carina for Sysco as the plaintiff. *See Pork* and *Beef*, 2024 WL 511890, at *1 (D. Minn. Feb. 9, 2024) (single opinion addressing substitution motions from both cases). Although the court there ultimately denied substitution on other grounds given "Burford's efforts to maximize its return on investment" without evaluating the assignment's validity, it also stated that "[o]nly if the Court were to analyze the assignment would state law become relevant." *Id.* at *7 (observing that the Eighth Circuit had

"describ[ed] the sale of an antitrust claim as a matter of contract law" and saw "little need for federal common law to govern" (quoting *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 435–36 (8th Cir. 1999))). Similarly, in another case in which Carina received an assignment from Sysco and sought substitution, the court evaluated that assignment and did so under Illinois law, not federal common law. *See In re Broiler Chicken Antitrust Litig.* ("*Broilers*"), 2024 WL 1214568, at *1–2 (N.D. Ill. Mar. 21, 2024).

The Court here also recognized the split between the Circuits on this issue, further underscoring its contestability. (*See* Order at 4–5.) In *Martin v. Morgan Drive Away, Inc.*, the Fifth Circuit directly confronted the question of a potentially champertous assignment. Acknowledging that federal antitrust claims are generally assignable as a matter of federal law, the court recognized that the concern here was not the content, but "the form in which the claim may be assigned." 665 F.2d 598, 604 (5th Cir. 1982). To answer that question, the court followed *Sampliner v. Motion Picture Patents Co.*, where the Second Circuit looked to state contract law to determine whether an assignment was invalid for champerty. *Id.* (citing *Sampliner*, 255 F. 242, 246, 250 (2d Cir. 1918)).

As the Order recognized (*see* Order at 4–5), there is "tension" between these decisions and the Third Circuit's decision in *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3d Cir. 1993). Unlike *Martin* and *Sampliner*, *Gulfstream* had nothing to do with champerty. Instead, the Third Circuit held that in order to be consonant with the "direct purchaser" rule, "any assignment of antitrust claims, as a matter of federal common law, must be an express assignment." *Id.* at 440. The court further stated that "the issue of assignment is appropriate for the development of interstitial federal common law in harmony with the overall purposes of the

antitrust statutes" and that the question "cannot appropriately be left to determination under possibly differing state law standards." *Id.*

Although here the Court ultimately applied federal common law (*see* Order at 5), this issue is contestable and interlocutory appeal is appropriate. That is, for present purposes, even if this Court "believes the Order is rightly decided," the contrary holdings of the Fifth and Second Circuits—to say nothing of the disparate treatment within this District, the lack of binding authority in the Seventh Circuit, and the conflict between the Order and the other federal antitrust cases involving Burford subsidiaries—demonstrate that "there are substantial grounds for a difference of opinion." *Dale*, 2024 WL 1302783, at *3 (deeming question of antitrust standing contestable in absence of controlling Seventh Circuit authority where "the Second and Eleventh Circuits have taken a different approach"); *accord Costello v. BeavEx, Inc.*, 2014 WL 12775669, at *2 (N.D. Ill. Dec. 1, 2014) (Kendall, J.) ("the question for certification is contestable not only because the circuits are split on the issue … but also because the Seventh Circuit has never directly addressed [it]"); *Vanegas v. Signet Builders, Inc.*, 2023 WL 5663259, at *4 (W.D. Wis. Sept. 1, 2023) ("The circuit split on the question shows that it is contestable.").

Finally, if the Seventh Circuit were to agree with the Fifth and Second Circuits and find that state law governs the question of the assignment's validity, the assignment here would be considered invalid as champertous. (*See* ECF 801, 804 at 6–9; ECF 819–20 at 2–4, 6, 9–14.) In turn, Amory would have no valid claim to assert and would be unable to maintain this litigation, a result that would materially advance the termination of Amory's litigation.

## II.     Whether Federal Common Law Prohibits Champerty

Whether federal common law prohibits champerty is a textbook controlling question of law involving "'the meaning … of a common law doctrine.'" *Dale*, 2024 WL 1302783, at *3 (quoting *Ahrenholz*, 219 F.3d at 677). Reversal of the decision in the Order that federal law does

not prohibit champerty would greatly impact this litigation and save time and resources for the parties and this Court:  If federal common law prohibits champerty and the assignment at issue— which resulted in Burford's undisputed, complete control of the litigation—is deemed champertous, then Amory would have no claims to assert.

There are also substantial grounds for difference of opinion on the issue of champerty under federal common law.  Federal courts have concluded that federal law does prohibit champerty. *See Koro Co. v. Bristol-Myers Co.*, 568 F. Supp. 280, 286-88 (D.D.C. 1983) ("Champerty is prohibited … under federal common law, as it has been interpreted by this Court."); *District Distribs., Inc. v. Heublein, Inc.*, 1971 WL 559, at \*3-\*4 (D.D.C. May 28, 1971) (finding that assignment of antitrust claim "effected a champertous action" under federal common law where assignee did not "assert that the alleged antitrust law violation caused him to suffer any personal injury. He [was] simply saying, 'I bought the claim from District Distributors for $1.00 and I am going to maintain it."); *see also Jack Faucett Assocs., Inc. v. AT&T*, 1985 WL 25746, at \*1, 6 (D.D.C. Oct. 18, 1985) (citing *Koro* and *District Distributors* in finding "assignments and agency agreements [] invalid because they are being purchased by ICS and CSD for the sole purpose of asserting a claim … ICS and CSD themselves have suffered no injury by reason of the antitrust laws and have no connection with the transaction giving rise to the claims in this litigation"). These cases are still good law—no court has overruled them or recognized their abrogation.  Yet the Order declined to follow them and instead looked to other sources of law to determine whether federal common law prohibits champerty, ultimately concluding that federal law does not prohibit champerty because the doctrine has fallen into disuse and that no public policy concerns require limiting agreements such as Amory's.  (*See* Order at 8–9, 12–13.)

Existing case law demonstrates that the Order's conclusion is contestable. Courts around the country have determined that a litigation funder's control of litigation violates public policy, including because such an arrangement is champertous. *See, e.g., Boling v. Prospect Funding Holdings, LLC,* 771 F. App'x 562, 579 (6th Cir. 2019) (discussing litigation funding agreements as champertous and void as against public policy because they "effectively give [the litigation funder] control over the litigation"); *In re DesignLine Corp.*, 565 B.R. 341, 349 (Bankr. W.D.N.C. 2017) (funding agreement void as champertous where agreement "permit[ted] [the litigation funder] to control the litigation in a number of … ways"); *In re Nat'l Prescription Opiate Litig.*, 2018 WL 2127807, at *1 (N.D. Ohio May 7, 2018) (reflecting efforts to ensure litigation funding agreements would not "give to the [funder] any control over litigation strategy or settlement decisions."); *see also Maslowski v. Prospect Funding Partners LLC*, 944 N.W.2d 235, 241 (Minn. 2020) (abolishing common law champerty doctrine in Minnesota, but explaining that courts, in keeping with champerty principles, should "scrutinize" litigation funding agreements to "ensure that litigation financiers do not attempt to control the course of the underlying litigation"); *Osprey, Inc. v. Cabana Ltd.*, 532 S.E.2d 269, 278 (S.C. 2000) ("Our abolition of champerty as a defense does not mean that all such agreements are enforceable as written. When an agreement to finance a lawsuit is challenged, the court must consider whether … any recovery by a prevailing party is vitiated because of some impermissible overreaching by the financier."); 7 Williston on Contracts § 15:4 (4th ed.) (even though "champerty is viewed by the courts with less disfavor than formerly, schemes to promote litigation for the benefit of the promoter rather than for the benefit of the litigant or the public are regarded as contrary to public policy, and will not be enforced").

There is no dispute that the purported assignment here transferred Maines Paper's antitrust claims into the hands of a shell company with no interest in the claim or the subject matter of this

litigation prior to the assignment. And there is no dispute that the purported assignment gave litigation funder Burford Capital, as Amory's owner, complete control over the litigation. (*See* Order at 16 (observing that "Amory's claims are Burford's claims").) The above decisions demonstrate courts' admonishment of litigation funders' controlling litigations. Indeed, as the court in *Pork* and *Beef* noted recently, allowing a Burford special purpose vehicle to prosecute a case "would contravene the important public policy granting control of litigation to the parties who claim to have actually suffered injury." *Pork* and *Beef*, 2024 WL 511890, at *8. In another recent decision, however, the *Broilers* court allowed substitution of Carina for Sysco as a plaintiff in a similar suit. *See Broilers*, 2024 WL 1214548, at *2.

All of these decisions illustrate that the question is contestable. Some courts continue to enforce limits on the control of litigation by litigation funders because such control is champertous and against public policy. Other courts, including in the Order and *Broilers*, have reached a different result. The question, however, remains in flux—there is no controlling authority in the Seventh Circuit.

Like the question of whether state law governs the validity of the assignment, if the Seventh Circuit determines there is a federal common law of champerty, then this case would materially advance, because if the assignment or Burford's control is deemed champertous—as Defendants demonstrated in their summary judgment briefing—Amory will lack a valid claim.

## **CONCLUSION**

Defendants respectfully request this Court grant their motion to certify under 28 U.S.C. § 1292(b).

Dated: April 26, 2024

Respectfully submitted,

*/s/ Danielle R. Foley*
Danielle R. Foley (*pro hac vice*)
Lisa Jose Fales (*pro hac vice*)
Paul Feinstein (*pro hac vice*)
Kristin M. Koger (*pro hac vice*)
Andrew T. Hernacki (*pro hac vice*)
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC 20004
Telephone: (202) 344-4000
drfoley@venable.com
ljfales@venable.com
pfeinstein@venable.com
kmkoger@venable.com
athernacki@venable.com

Kirstin B. Ives
FALKENBERG IVES, LLP
230 N. LaSalle St., Suite 4020
Chicago, IL 60602
Telephone: (312) 566-4803
kbi@falkenbergives.com

**Counsel for Perdue Farms, Inc. and Perdue Foods LLC**

*/s/ Colin R. Kass*
Christopher E. Ondeck
Colin R. Kass
Stephen R. Chuk
Erica T. Jones
Kelly B. Landers Hawthorne
Corey I. Rogoff
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW, Suite 600
Washington, DC 20004
Telephone: (202) 416-6800
Condeck@proskauer.com
CKass@proskauer.com
SChuk@proskauer.com
ejones@proskauer.com
klandershawthorne@proskauer.com
crogoff@proskauer.com

*/s/ Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

X. Kevin Zhao
Davida S. Williams
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-0830
kzhao@greeneespel.com
dwilliams@greeneespel.com

**Counsel for Cargill Incorporated and Cargill Meat Solutions Corporation**

*/s/ Oral Pottinger*
Carmine R. Zarlenga
William H. Stallings
Oral Pottinger
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
czarlenga@mayerbrown.com
wstallings@mayerbrown.com
opottinger@mayerbrown.com

**Counsel for Foster Farms, LLC, and Foster Poultry Farms LLC**

*/s/ Jennifer A.L. Battle*
Michael L. McCluggage
Daniel D. Birk
EIMER STAHL LLP
224 South Michigan Ave., Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600

13

David A. Munkittrick
Reut N. Samuels
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3226
dmunkittrick@proskauer.com
rsamuels@proskauer.com

Todd J. Ohlms
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, IL 60602
(312) 962-3537
tohlms@proskauer.com

**Counsel for Butterball LLC**

*/s/ Craig S. Coleman*
Colby Anne Kingsbury
FAEGRE DRINKER BIDDLE & REATH
LLP
311 South Wacker Drive, #4300
Chicago, IL 60606
(312) 212-6500
Colby.Kingsbury@faegredrinker.com

Richard A. Duncan
Craig S. Coleman
Emily E. Chow
Anderson Tuggle
FAEGRE DRINKER BIDDLE & REATH
LLP
90 S. Seventh Street, Ste. 2200
Minneapolis, MN 55402
(612) 766-7000
Richard.Duncan@faegredrinker.com
Craig.Coleman@faegredrinker.com
Emily.Chow@faegredrinker.com
Anderson.Tuggle@faegredrinker.com

Jacob D. Bylund
Lance Lange
Robert Gallup
FAEGRE DRINKER BIDDLE & REATH
LLP

mmcluggage@eimerstahl.com
dbirk@eimerstahl.com

Joshua Goldberg
CARPENTER LIPPS LLP
180 North LaSalle Street, Suite 2105
Chicago, IL 60601
Telephone: (312) 777-4825
goldberg@carpenterlipps.com

Jennifer A.L. Battle (*pro hac vice*)
Theodore M. Munsell (*pro hac vice*)
Jill Rogers Spiker (*pro hac vice*)
Joel E. Sechler (*pro hac vice*)
CARPENTER LIPPS LLP
280 North High Street
Suite 1300
Columbus, OH 43215
Telephone: (614) 365-4100
battle@carpenterlipps.com
munsell@carpenterlipps.com
spiker@carpenterlipps.com
sechler@carpenterlipps.com

**Counsel for Cooper Farms, Inc.**

*/s/ Gaspare J. Bono*
Gaspare J. Bono (*pro hac vice*)
Leslie A. Barry (*pro hac vice*)
DENTONS US LLP
1900 K Street NW
Washington, DC 20006
(202) 496-7500
gap.bono@dentons.com
leslie.barry@dentons.com

Adam J. Wallstein
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
(312) 876-8000
Adam.wallstein@dentons.com

**Counsel for Farbest Foods, Inc.**

*/s/ Gregory G. Wrobel*

14

801 Grand Avenue, 33rd Floor
Des Moines, IA 50309
(515) 248-9000
Jacob.Bylund@faegredrinker.com
Lance.Lange@faegredrinker.com
Robert.Gallup@faegredrinker.com

Jonathan H. Todt
FAEGRE DRINKER BIDDLE & REATH
LLP
1500 K Street NW, Suite 1100
Washington, DC 20005
(202) 230-5000
Jonathan.Todt@faegredrinker.com

John Yi
FAEGRE DRINKER BIDDLE & REATH
LLP
One Logan Square
Suite 2000
Philadelphia, PA 19103
(215) 988-2553
John.Yi@faegredrinker.com

**Counsel for Hormel Foods Corporation and Jennie-O Turkey Store, Inc.**

*/s/ William L. Monts III*
Jacob D. Koering
MILLER, CANFIELD, PADDOCK &
STONE, PLC
227 West Monroe Street
Suite 3600
Chicago, IL 60606
Telephone: (312) 460-4272
koering@millercanfield.com

William L. Monts III
Justin W. Bernick
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
Telephone: (202) 637-5600
william.monts@hoganlovells.com
justin.bernick@hoganlovells.com

Gregory G. Wrobel, Bar No. 03122900
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, Illinois 60601
Telephone: (312) 609-7500
gwrobel@vedderprice.com

Henry W. Jones, Jr. (*pro hac vice*)
JORDAN PRICE WALL GRAY JONES &
CARLTON, PLLC
1951 Clark Avenue
Raleigh, NC 27605
Telephone: (919) 828-2501
hjones@jordanprice.com

**Counsel for House of Raeford Farms, Inc.**

*/s/Tiffany Rider Rohrbaugh*
Tiffany Rider Rohrbaugh (*pro hac vice*)
Rachel J. Adcox (*pro hac vice*)
Allison M. Vissichelli (*pro hac vice*)
AXINN, VELTROP & HARKRIDER, LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Facsimile: (202) 912-4701
trider@axinn.com
radcox@axinn.com
avissichelli@axinn.com

Jordan M. Tank
Sahrish Moyeed
LIPE LYONS MURPHY NAHRSTADT &
PONTIKIS, LTD.
230 West Monroe Street, Suite 2260
Chicago, IL 60606
Telephone: (312) 702-0586
jmt@lipelyons.com
sm@lipelyons.com

**Counsel for Tyson Foods, Inc., Tyson Fresh Meats, Inc., Tyson Prepared Foods, Inc., and The Hillshire Brands Company**

*Counsel for Agri Stats, Inc. and Express Markets, Inc.*