**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| *IN RE TURKEY ANTITRUST LITGATION*<br><br>This Document Relates:<br><br>*Direct Purchaser Plaintiff Actions* | Civil Action No. 19-cv-08318<br><br>Hon. Sunil R. Harjani<br>Hon. Keri L. Holleb Hotaling |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH CARGILL AND
APPROVAL OF A CLAIMS PROCESS AND NOTICE PLAN**

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................... 1

II.     LITIGATION BACKGROUND. ........................................................................... 2

III.    PRELMINARY APPROVAL OF THE CARGILL SETTLEMENT
        AGREEMENT. ...................................................................................................... 3

        A.      Background on the Cargill Settlement Agreement............................. 3

        B.      Standards Applicable for the Preliminary Approval of the Proposed
                Cargill Settlement. ................................................................................. 5

        C.      The Court is Likely to Approve the Settlement under Rule 23(e)(2). .............. 7

IV.     THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT
        CLASS................................................................................................................... 12

        A.      The Requirements of Rule 23(a) are Satisfied ................................... 13

        B.      The Proposed Settlement Class Satisfies Rule 23(b)(3). ................... 16

V.      THE COURT SHOULD APPROVE THE PROPOSED NOTICE TO THE
        CLASS OF THE CARGILL SETTLEMENT AGREEMENT,
        DISTRIBUTION OF THE TYSON AND CARGILL SETTLEMENT
        FUNDS, AND CLAIMS PROCESS. .................................................................. 17

        A.      Rule 23(e) Provides that Notice Must Be Given in a Reasonable
                Manner to All Class Members. ............................................................ 17

        B.      The Proposed Notice of the Cargill Settlement Agreement is
                Adequate. ................................................................................................ 18

        C.      The Notice Plan for the Proposed Claims Process and Interim Co-
                Lead Counsel's Request for Payment of Interim Attorneys' Fees,
                Current and Ongoing Expenses, and Service Awards is Adequate and
                Should be Approved by the Court......................................................... 20

VI.     APPOINTMENT OF AN CLAIMS ADMINISTRATOR AND ESCROW
        AGENT TO MAINTAIN SETTLEMENT FUNDS. ......................................... 23

        A.      A.B. Data is an Experienced Class Action Notice Provider and Claims
                Administrator that Should be Appointed by the Court to Administer
                the Cargill Settlement and Conduct the Claims Process for the Cargill
                and Tyson Settlements........................................................................... 23

        B.      The Huntington National Bank Should be Appointed Escrow Agent
                for the Cargill Settlement. .................................................................... 23

VII.    THE COURT SHOULD SCHEDULE A FAIRNESS HEARING. .................. 24

VIII.   CONCLUSION. ................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................Passim

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) ........................................................................ 5, 6

*City of Greenville v. Syngenta Crop. Prot.*,
   2012 WL 1948153 (S.D. Ill. May 30, 2012) .............................................. 18, 20

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................................ 6

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) .............................................................................. 5

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) .............................................................................. 6

*Goldsmith v. Tech. Solutions Co.*,
   1995 WL 17009594,n.2 (N.D. Ill. Oct. 10, 1995) ............................................ 10

*Hanrahan v. Britt*,
   174 F.R.D. 356 (E.D. Pa. 1997) ...................................................................... 10

*Hossfeld v. Lifewatch, Inc.*,
   2021 WL 1422779 (N.D. Ill. March 4, 2021)................................................... 18

*Hughes v. Baird & Warner, Inc.*,
   1980 WL 1894 (N.D. Ill. Aug. 20, 1980) ......................................................... 16

*Hughes v. Kore of Indiana Enterprise, Inc.*,
   731 F.3d 672 (7th Cir. 2013) ............................................................................ 18

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ...................................................................... 10

*In re Cmty. Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) ............................................................................ 13

*In re Community Bank of N. Virginia Mortg. Lending Practices Litig.*,
   795 F.3d 380 (3d Cir. 2015) .............................................................................. 9

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ............................................................................. 9

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003)............................................................... 10

*In re Mercedes-Benz Antitrust Litig.*,
   213 F.R.D. 180 (D.N.J. 2003) ......................................................................... 15

*In re Mid-Atlantic Toyota Antitrust Litig.*,
   564 F. Supp. 1379 (D. Md. 1983)....................................................................... 7

*In re Montgomery Cty. Real Estate Antitrust Litig.*,
   83 F.R.D. 305 (D. Md. 1979) ............................................................................ 7

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y 1997) .......................................................................... 6

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019)............................................................... 7, 11, 12

In re Warfarin Sodium Antitrust Litig.,
 212 F.R.D. 231 (D. Del. 2002) ................................................................ 6
*Isby v. Bayh*,
 75 F.3d 1191 (7th Cir. 1996) .......................................................... 5, 6, 7
*Kohen v. Pacific Inv. Mgmt., Co. LLC*,
 571 F.3d 672 (7th Cir. 2009) ................................................................ 8
*Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*,
 231 F.R.D. 280 (N.D. Ill. 2005) ......................................................... 15
*Saltzman v. Pella Corp.*,
 257 F.R.D. 471 (N.D. Ill. 2009) .................................................... 15, 16
*Schmidt v. Smith & Wollensky, LLC*,
 268 F.R.D. 323 (N.D. Ill. 2010) ......................................................... 14
*Thillens, Inc. v. Cmty. Currency Exch. Ass'n*,
 97 F.R.D. 668 (N.D. Ill. 1983) .......................................................... 14
*Uhl v. Thoroughbred Tech. & Telecomms, Inc.*,
 309 F.3d 978 (7th Cir. 2002) ............................................................... 6
*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) .......................................................................... 14

**Statutes**

28 U.S.C. § 1715 ...................................................................................... 25

**Rules**

Fed. R. Civ. P. 23 .............................................................................Passim

## I.     INTRODUCTION.

Direct Purchaser Plaintiffs ("DPPs") have reached a proposed settlement of their claims with Cargill, Incorporated and Cargill Meat Solutions Corporation (collectively "Cargill") (herein after "Cargill Settlement" or "Settlement Agreement").[1] The Settlement Agreement provides $32,500,000 (thirty-two million, five hundred thousand U.S. dollars) in monetary relief to the Settlement Class (as defined in Section IV *infra*). This brings the total monetary recovery on behalf of the DPP Class to $37,125,000, as Plaintiffs settled with Tyson in 2021 for $4,625,000. (*See* Declaration of B. Clark in Support of this Motion) ("Clark Decl.) at ¶ 10.) In addition to monetary relief, Cargill has agreed to provide meaningful cooperation, which may assist DPPs in the prosecution of their claims against the non-settling Defendants. In this Motion, DPPs seek preliminary approval of the Cargill Settlement Agreement, certification of a Settlement Class, and approval of a plan of notice to the Settlement Class regarding the settlement.

Additionally, given the total amount of the settlements reached to date ($37,125,000), DPPs seek the Court's permission to give notice of a claims process to permit for the distribution of these funds. To facilitate distribution, in addition to the proposed notices, DPPs also propose to send class members individualized, pre-populated claim forms, and information regarding how class members may obtain their pro rata portion of the Cargill and Tyson settlements. That same notice would also advise Settlement Class members that DPPs are seeking interim payment of attorneys' fees, current and ongoing expenses, and service awards in connection with the distribution of the funds.

DPPs therefore move the Court for an order approving the following next steps. *First,* to

---

[1] The Long-Form Settlement Agreement is attached here to as Exhibit A to the Declaration of Brian D. Clark ("Clark Decl."). The capitalized terms in this memorandum are defined in the Settlement Agreement.

preliminarily approve the Cargill Settlement and certify the proposed Settlement Class. *Second,* to appoint Lockridge Grindal Nauen PLLP and Hagens Berman Sobol Shapiro LLP as Co-Lead Counsel for the Settlement Class. *Third*, to direct notice to the direct purchaser class regarding the Cargill settlement agreement and provide Settlement Class members information on how they can submit a claim for their pro rata portion of the total settlements reached to date. *Fourth*, to appoint the necessary administrators to effectuate notice and claims distribution, including appointing A.B. Data Ltd. as the Notice and Claims Administrator for the Settlement Agreement and The Huntington Bank as the escrow agent to provide escrow services. *Finally,* DPPs request that this Court schedule a Fairness Hearing for the Settlement Agreement.

At the Fairness Hearing, DPPs will request entry of a final order and judgment ("Final Order") consistent with the Cargill Settlement Agreement and this Motion, including dismissing with prejudice all claims against Cargill, granting Interim Co-Lead Counsel's request for interim payment of attorneys' fees, current and ongoing expenses, and service awards; and retaining jurisdiction for the implementation and enforcement of the Settlement Agreement.

## II.    LITIGATION BACKGROUND.

This Court is very familiar with the facts and procedural history of this case, and DPPs will not repeat it here. *See, e.g.*, ECF No. 830 (DPPs' motion for class certification). The Settlement Agreement is the second DPP settlement in this case. This Court granted final approval to DPPs' "icebreaker" settlement with the Tyson Defendants on February 3, 2022 ("Tyson Settlement"). (*See* Amended Order and Final Judgment ECF No. 406.)  Tyson's market share of the Turkey market (as defined in the Settlement Class) is roughly 4-5% and Cargill's is approximately 20-21% of the market as defined in the Settlement Class and approximately 30-31% of the Litigation Class. Thus, both the Tyson Settlement and the Cargill Settlement—agreements reached prior to the Court's decision on DPPs' motion to certify the Litigation Class—provide monetary relief in

the range of approximately $1-2 million per market share point. Clark Decl., ¶ 3.

## III. PRELMINARY APPROVAL OF THE CARGILL SETTLEMENT AGREEMENT.

### A. <u>Background on the Cargill Settlement Agreement.</u>

DPPs reached the Settlement Agreement with Cargill after hard fought and arm's length negotiations. (*See* Clark Decl., ¶ 7.) It provides significant monetary relief for the proposed Settlement Class.[2] Cargill has agreed to pay $32,500,000 into an escrow account for the benefit of the Settlement Class. (*See* Settlement Agreement ¶ 9.) This represents approximately $1million per market point share. In addition to monetary relief, Cargill agrees to provide meaningful cooperation to DPPs, which includes providing DPPs with (a) declarations or affidavits regarding business record foundation for certain identified documents and (b) live witnesses at trial. (*See id.* at ¶ 10.)

In exchange, DPPs and the proposed Settlement Class agree, among other things, to release claims against Cargill that were, or could have been, brought in this litigation arising from the conduct alleged by DPPs in this action. The release does not extend to any other Defendants. (*See id.* at ¶ 16.) Consistent with a judgment-sharing agreement among certain Defendants, the Cargill Settlement Agreement removes an amount reflecting Cargill's sales of turkey to the DPP Class from any damages award resulting from a verdict and Final Judgment DPPs obtain against any other Defendant who is a signatory to the judgment-sharing agreement. (*Id.* ¶ 12.) Thus, any other such Defendant against whom DPPs obtain a verdict and judgment would not be jointly and severally liable for Cargill's share of damages. This judgment sharing agreement is very similar to one among Defendants in *Broilers*. (Clark Decl., ¶ 15; *In re Broiler Chicken Antitrust*

---

[2] Because DPPs' motion to certify the Litigation Class is pending before the Court, DPPs and Cargill have agreed on a Settlement Class definition that is identical to the settlement class certified by the Court for purposes of DPPs' settlement with the Tyson Defendants. This permits a smoother claims process administering the two Settlement Classes under a single set of parameters.

*Litigation*, Case No. 1:16-cv-08637, ECF No. 4259-1 (N.D. Ill.) (copy of the Direct Purchaser Plaintiff settlement agreement with Defendant Pilgrim's Pride in *Broilers* containing a similar judgment sharing agreement provision at paragraph 38) (Clark Decl., Ex. C).)

The Settlement Agreement also contains a reduction mechanism that could result in a reduction of the settlement amount if the opt-outs exceed agreed-upon thresholds based on sales attributed to opt-outs from the Tyson Settlement and entities who have filed direct action lawsuits ("Opt-Out Reduction Threshold"). *See id*. at ¶ 11.) The Settlement Agreement contains a termination provision whereby Cargill, at its sole discretion, may elect to terminate the Settlement Agreement if the Opt-Out Percentage exceeds the Opt-Out Termination Threshold. (*See id*. ¶ 22.) The Opt-Out Reduction Threshold and Opt-Out Termination Threshold values are contained in the Parties' Confidential Side Letter. (*See id.*)[3] Similar terms were part of class settlement agreements approved in Broilers. See, e.g. Clark Decl., Ex. C (settlement agreement with Defendant Pilgrim's Pride in *Broilers,* containing opt-out reduction terms at paragraph 19). DPPs will report on the number of opt-outs and the final amount recovered for the proposed Settlement Class prior to the Fairness Hearing. Finally, the Settlement Agreement refers to a judgment-sharing agreement among certain Defendants and, consistent with that agreement, should DPPs obtain a verdict and judgment against those Defendants, those Defendants would not be jointly and severally liable for Cargill's share of the damages. (*See* Settlement Agreement ¶ 12.)

Subject to the approval and direction of the Court, the settlement amount from the Cargill Settlement (with accrued interest) will be used to: (1) pay for notice costs and costs incurred in the administration and distribution of the Settlement Agreement; (2) pay taxes and tax-related costs associated with the escrow account for proceeds from the Settlement Agreement; (3) make a

---

[3] This Confidential Side Letter will be provided to the Court for *in camera* review upon request.

distribution to Settlement Class members in accordance with a plan to be filed in the future;[4] (4) provide an interim payment of attorneys' fees, current and ongoing expenses, and service awards. Fourteen days before the last date to opt out or object to the Cargill Settlement, DPPs will file a motion for interim payment of attorneys' fees (33 1/3 of net settlement funds), current and ongoing expenses (not to exceed $4.5 million), and service award of no more than $50,000 total (and no more than $25,000 per Class Representative).

As set forth in the proposed notice documents (*see* Section V *infra*) and the Settlement Agreement, DPPs may withdraw up to $250,000 from the Settlement, without further approval of the Court, to pay for actual costs of Settlement Class Notice and for Preliminary Approval and Final Approval of this Settlement Agreement. (*See* Settlement Agreement ¶ 6(d).) This amount is non-refundable. (*See id.*, at ¶ 6(e).) DPPs will report on this withdrawal in their petition for an interim payment of attorneys' fees, current and ongoing expenses, and service awards.

**B.    Standards Applicable for the Preliminary Approval of the Proposed Cargill Settlement.**

There is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), *overruled on other grounds; Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Class action settlements minimize the litigation expenses

---

[4] DPPs intend to combine any distribution from the Settlement Agreement with distribution of the proceeds from the Tyson Settlement, and the proposed notice documents reflect this.

of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F.2d at 313 (*citing Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). However, a class action may be settled only with court approval. Before the court may give that approval, all class members must be given notice of the proposed settlement in the manner the court directs. Fed. R. Civ. P. 23(e).

"The first step in district court review of a class action settlement is a preliminary, prenotification hearing to determine whether the proposed settlement is 'within the range of possible approval.'" 2 NEWBERG ON CLASS ACTIONS, § 11.24 (3d ed. 1992); *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *Armstrong*, 616 F.2d at 314; In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 254 (D. Del. 2002); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997). Generally, before notice is given to the class members, the court makes a preliminary evaluation of the proposed class action settlement. The Manual For Complex Litigation (Fourth) § 21.632 (2004) explains:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation . . . . The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the [formal Rule 23(e)] fairness hearing.

A proposed settlement falls within the "range of possible approval" when it is conceivable that the proposed settlement will meet the standards applied for final approval. *See* Newberg, § 11.25, at 38-39 (quoting Manual for Complex Litig., § 30.41 (3d ed.)). The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *see also Uhl v. Thoroughbred Tech. & Telecomms, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Isby*, 75 F.3d at 1198-99. In evaluating the fairness of a proposed class action settlement, courts typically consider the following factors: (1) the strength of

plaintiffs' case compared to the amount of defendants' settlement offer; (2) an assessment of the likely complexity, length and expense of the litigation; (3) an evaluation of the amount of opposition to settlement among affected parties (i.e., the reaction of the class members); (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *See Isby*, 75 F.3d at 1198-99.

When granting preliminary approval, the court does not conduct a "definitive proceeding on the fairness of the proposed settlement," and the court "must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315-16 (D. Md. 1979)). That determination must await the final hearing when the court can assess the fairness, reasonableness, and adequacy of the proposed settlement.

The requirement that class action settlements be fair is designed to protect against collusion among the parties. *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1383.

### C. <u>The Court is Likely to Approve the Settlement under Rule 23(e)(2).</u>

To determine whether to approve a proposed settlement under Federal Rule of Civil Procedure ("Rule") 23(e)(2), courts look to the factors in the text of Rule 23(e)(2), which a court must consider when weighing final approval. *See* Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" the factors set forth in Rule 23(e)(2)); *see, e.g.*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) ("Payment Card"). Rule 23(e)(2) requires courts to consider whether:

(A)  the class representatives and class counsel have adequately represented the class;
(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:
    (i)   the costs, risks, and delay of trial and appeal;
    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Factors (A) and (B) under Rule 23(e)(2) constitute the "procedural" analysis factors, and examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Factors (C) and (D) under Rule 23(e)(2) constitute the "substantive" analysis factors, and examine "[t]he relief that the settlement is expected to provide to class members...." (*Id.*)

Because the proposed settlement meets all factors under Rule 23(e)(2), DPPs respectfully submit that the Court will likely grant Final Approval of the proposed settlement, and thus the proposed Settlement Agreement should be preliminarily approved.

1.    <u>The Class Representatives and Class Counsel have Adequately Represented the Class</u>

Rule 23(e)(2)(A) requires that "the class representatives and class counsel have adequately represented the class." Adequacy is measured by a two-part test: (i) the Class Representatives cannot have claims in conflict with other class members, and (ii) the Class Representatives and proposed class counsel must demonstrate their ability to litigate the case vigorously and competently on behalf of named and absent class members alike. *See Kohen v. Pacific Inv. Mgmt., Co. LLC*, 571 F.3d 672, 679 (7th Cir. 2009).

Both requirements are satisfied here. The interests of the Settlement Class members are aligned with those of DPPs' Class Representatives. Class Representatives, like all Settlement Class members, share an overriding interest in obtaining the largest possible monetary recovery

and as fulsome cooperation as possible. *See, e.g.*, *In re Community Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 394 (3d Cir. 2015) (no fundamental intra-class conflict to prevent class certification where all class members pursuing damages under the same statutes and the same theories of liability); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981), *cert. denied*, 456 U.S. 998 (1982) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes"). DPPs' Class Representatives are not afforded any special compensation by this proposed Settlement Agreement, and all proposed Settlement Class members similarly share a common interest in obtaining Cargill's early and substantial cooperation to prosecute this case. (*See* Clark Decl., ¶ 9.)

Further, DPPs and their counsel will continue to litigate this case vigorously and competently. As they demonstrated when they sought appointment, Interim Co-Lead counsel are qualified, experienced, and thoroughly familiar with antitrust class action litigation.[5] As they respectfully submit has been demonstrated, Interim Co-Lead Counsel have diligently represented the interests of the class in this litigation and will continue to do so. Accordingly, the Class Representatives and Interim Co-Lead counsel have adequately represented the class.

## 2. The Settlement is Fair and Resulted from Arm's Length Negotiations

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." There is usually an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. *See* 2 NEWBERG ON CLASS ACTIONS, § 11.40 at 451 (2d ed.

---

[5] *See* ECF No. 133 (Memorandum of Law in Support of Motion to Appoint Hagens Berman Sobol Shapiro LLP and Lockridge Grindal Nauen P.L.L.P. Interim Co-Lead Counsel for Direct Purchaser Plaintiffs Pursuant to Federal Rule of Civil Procedure 23(g)); ECF No. 143 (Court's Minute Entry of June 16, 2020, appointing same).

1985); *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) ("[I]t may be presumed that the agreement is fair and adequate where, as here, a proposed settlement is the product of arm's-length negotiations."). Settlements proposed by experienced counsel and which result from arm's length negotiations are entitled to deference from the Court. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (*quoting Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e). In making the determination as to whether the proposed settlement is fair, reasonable, and adequate, the Court necessarily will evaluate the judgment of the attorneys for the parties regarding the "strength of plaintiffs' case compared to the terms of the proposed settlement." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

In this case, the proposed Settlement meets the standards for preliminary approval. The Settlement Agreement is the product of extensive arm's-length settlement negotiations, which included formal mediation with nationally recognized mediator Greg Lindstrom, numerous follow-ups in the nearly two years since that mediation, and numerous rounds of give-and-take between Interim Co-Lead Counsel and Cargill's counsel. (*See* Clark Decl., ¶ 7.) The hard-fought negotiations with Cargill necessitated numerous conferences, written exchanges between counsel during which they negotiated the material terms of the Settlement, and finalizing the Settlement Agreement. (*Id.*) In these settlement discussions, counsel for DPPs focused on obtaining the best possible result for the Settlement Class. (*Id.* at ¶ 8.) During negotiations, there was no discussion,

let alone agreement, regarding the amount of attorneys' fees DPPs' counsel ultimately may ask the Court to award in this case. (*Id.*) Based on DPPs' extensive factual investigation to date, the cooperation provisions negotiated as part of the settlement enable DPPs to obtain assistance in prosecuting their claims against the non-settling Defendants. Therefore, based on both the monetary relief and cooperation terms of the Settlement Agreement, Interim Co-Lead Counsel believe this is a fair settlement for the Settlement Class. (*Id.* at ¶ 12.)

Conversely, Cargill believes its case is strong and that it would achieve success on the merits. Cargill denies that it entered into an agreement to reduce or suppress competition in the market for Turkey with Defendants and their Co-conspirators. Indeed, Cargill maintains that it did nothing wrong. (*See* Settlement Agreement ¶ 33.) But in the interests of avoiding the risk and uncertainty of continued litigation, Cargill has agreed to settle. (*See id.* Recitals at 3.)

### 3. The Relief Provided for the Class is Substantial and Tangible

In assessing whether the settlement provides adequate relief for the putative class under Rule 23(e)(2)(C), the Court should consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i–iv).

"Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial." *See, e.g.*, *Payment Card*, 330 F.R.D. at 36 (citations omitted). Here, for the reasons described above in Section III(C)2, the settlement is fair and resulted from arm's-length negotiations. Interim Co-Lead Counsel thoroughly evaluated the relative strengths and weaknesses of the respective litigation positions and determined that the Settlement brings substantial benefits to the proposed Class at an early stage in the litigation and

avoids the delay and uncertainty of continuing protracted litigation with Cargill. (*See* Clark Decl., ¶¶ 6-7 and 12.) The benefits of settlement outweigh the costs and risks associated with continued litigation with Cargill, and weigh in favor of granting final approval.

4.    The Proposal Treats Class Members Equitably Relative to Each Other

Consideration under this Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Here, Class Representatives are treated the same as all other Settlement Class members in this proposed Cargill Settlement, and all Class members similarly share a common interest in obtaining Cargill's early and substantial cooperation to prosecute this case.  (*See* Clark Decl., ¶ 9.) The release applies uniformly to putative Settlement Class members and does not affect the apportionment of the relief to class members.  (*See* Settlement Agreement ¶¶ 16-17.)  Accordingly, this factor will likely weigh in favor of granting final approval.  *See, e.g.*, *Payment Card*, 330 F.R.D. at 47.

In sum, the Settlement Agreement: (1) provides substantial benefits to the class; (2) is the result of extensive good faith negotiations between knowledgeable and skilled counsel; (3) was entered into after extensive factual investigation and legal analysis; and (4) in the opinion of experienced Class Counsel, is fair, reasonable, and adequate to the Class.  Accordingly, Interim Co-Lead Counsel believe that the Settlement Agreement is in the best interests of the Class Members and should be preliminarily approved by the Court.

IV.    **THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.**

In order to preliminarily approve the proposed settlement, the Court must also find that it will likely be able to certify the class for purposes of judgment on the proposal.  Fed. R. Civ. P.

23(e)(1)(B)(i–ii).

Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry[.]").

DPPs seek certification of a Settlement Class consisting of:

> All persons and entities who directly purchased Turkey from any Defendant or alleged co-conspirator in the United States at any time during the Settlement Class Period. Specifically excluded from the Settlement Class are Defendants and any alleged co-conspirators identified in the Action; the officers, directors or employees of any Defendant or alleged co-conspirator; any entity in which any Defendant or alleged co-conspirator has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant or alleged co-conspirator. Also excluded from the Settlement Class are any federal, state or local governmental entities, any judicial officer presiding over the Action and the members of his/her immediate family and judicial staff, and any juror assigned to the Action.

(Settlement Agreement ¶ 5). The Settlement Class Period is from January 1, 2010, through January 1, 2017. *Id.* at ¶ 1(t). The Settlement Class and Settlement Class Period are the same as those granted final approval by the Court for purposes of DPPs' settlement with the Tyson Defendants. (*See* Amended Order and Final Judgment (ECF No. 406) ¶ 4.) As detailed below, this proposed Settlement Class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

## A.     The Requirements of Rule 23(a) are Satisfied

### 1.     Numerosity

Rule 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No magic number satisfies the numerosity requirement; however, "a class of

more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) (citations omitted). The proposed Settlement Class consists of persons and entities that purchased Turkey from the Defendants or their Co-conspirators during the period from January 1, 2010, through January 1, 2017. Based on their extensive knowledge of this case and the experience gained from the Tyson Settlement, Interim Co-Lead Counsel believe that, due to the nature of the trade and commerce of the Turkey market, there are thousands of proposed Settlement Class members geographically dispersed throughout the United States. Thus, joinder would be impracticable, and Rule 23 (a)(1) is satisfied.

2.      Common Questions of Law and Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

A central allegation in the Third Amended Class Action Complaint (ECF Nos. 665, 713) ("Complaint" or "Compl.") is whether Defendants and their Co-conspirators entered into an illegal price-fixing agreement, including an information exchange agreement that reduced or suppressed competition in the market for Turkey. *See* Compl. ¶¶ 3-50. Proof of this will be common to all Class members. *See, e.g.*, *Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983) ("The overriding common issue of law is to determine the existence of a conspiracy."). In addition to that overarching question, this case is replete with other questions of law and fact common to the proposed Settlement Class including: (1) the identities of the participants in the alleged agreement; (2) the duration of the alleged agreement and the acts performed by Defendants and Co-conspirators in furtherance of the agreement; (3) whether the conduct of Defendants and

14

their Co-conspirators, as alleged in the Complaint, caused injury to the business or property of DPPs and other class members; (4) the effect of the alleged conspiracy on the prices of Turkey sold in the United Stated during the Class Period; and (5) the appropriate class-wide measure of damages. Accordingly, the Settlement Class satisfies Rule 23(a)(2).

> 3. <u>Typicality</u>

Rule 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "[T]ypicality is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009) (citations omitted). Typicality is a "low hurdle," requiring "neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005). When the "[representative party's] claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [all] claims are based on the same legal theory," factual differences among class members do not defeat typicality. *Id.* Courts generally find typicality in cases alleging a price-fixing conspiracy. *See, e.g.*, *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003) (finding that plaintiffs met the typicality requirement based on the fact that plaintiffs' main claim - that they were harmed by an illegal price-fixing conspiracy - was the same for all class members).

Here, DPPs allege that Defendants and their Co-conspirators conspired to fix, maintain, and inflate the price of Turkey in the United States by exchanging competitively sensitive information. *See* Compl. ¶¶ 564-592. The DPP named Class Representatives will have to prove the same elements that absent Settlement Class members would have to prove, *i.e.*, the existence and effect of the alleged conspiracy. Because the named Class Representatives' claims arise out of the same alleged illegal anticompetitive conduct and are based on the same alleged theories and will require the same types of evidence to prove those theories, the typicality requirement of Rule

23(a)(3) is satisfied.

### 4. Adequacy

For the reasons mentioned above in Section III(C)(1), the DPP named Class Representatives and Interim Co-Lead Counsel have adequately represented the class.

### B. The Proposed Settlement Class Satisfies Rule 23(b)(3).

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must show the proposed Settlement Class satisfies Rule 23(b)(3). The proposed Settlement Class satisfies Rule 23(b)(3) by showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As to predominance, "[c]onsiderable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Saltzman*, 257 F.R.D. at 484.

In antitrust conspiracy cases such as this one, courts consistently find that common issues of the existence and scope of the conspiracy predominate over individual issues. *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this case. That issue predominates over issues affecting only individual sellers."); *see also Amchem Prods., Inc.*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

Plaintiffs must also show that a class action is superior to individual actions, which is evaluated by four considerations:

(A) the class members' interests in individually controlling the

> prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, any Settlement Class member's hypothetical interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Because thousands of Settlement Class members purchased Turkey during the Class Period, settling these claims in the context of a class action conserves both judicial and private resources and hastens Settlement Class members' recovery. Finally, while DPPs see no management difficulties in this case, this final consideration is not pertinent to approving a settlement class. *See Amchem Prods., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Accordingly, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of DPPs' claims relating to Cargill.

## V.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE TO THE CLASS OF THE CARGILL SETTLEMENT AGREEMENT, DISTRIBUTION OF THE TYSON AND CARGILL SETTLEMENT FUNDS, AND CLAIMS PROCESS.

### A.   Rule 23(e) Provides that Notice Must Be Given in a Reasonable Manner to All Class Members.

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. For a class proposed under Rule 23(b)(3), whether litigated or by virtue of a settlement, Rule 23(c)(2)(B) states:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action;  (ii) the definition

of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The form of notice is "adequate if it may be understood by the average class member." 4 NEWBERG ON CLASS ACTIONS § 11.53 (4th ed. 2002).

Rule 23 requires that notice to class members must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Hughes v. Kore of Indiana Enterprise, Inc.*, 731 F.3d 672, 676 (7th Cir. 2013); *Hossfeld v. Lifewatch, Inc.*, No. 13 C 9305, 2021 WL 1422779, at *1 (N.D. Ill. March 4, 2021); *City of Greenville v. Syngenta Crop. Prot.*, No. 3:10-CV-188, 2012 WL 1948153, at *4 (S.D. Ill. May 30, 2012). Individual notice should be sent to members who can be identified through reasonable effort. Such notice may be by United States mail, electronic means, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Other members may be notified by publication. *City of Greenville*, 2012 WL 1948153 at *4.

## B. The Proposed Notice of the Cargill Settlement Agreement is Adequate.

Here, DPPs' proposed notice plan comports with due process and Rule 23. As to the Cargill Settlement, it is the same as the notice plan granted final approval by this Court in the Tyson Settlement. (*See* Amended Order and Final Judgment (ECF No. 406) ¶ 10.) The class notice documents, consisting of the long form, email, and publication notice, comply with the requirements of Rule 23(c)(2)(B). (*See* Class Notice Documents, attached to the Declaration of Eric Schachter ("Schachter Decl.") as Exhibits B through D.) The notice documents define the Settlement Class, describe the nature of the action, summarize the Class's claims, provide direct

18

purchasers of Turkey notice of the Cargill Settlement Agreement, and will provide the date, time, and place for the Fairness Hearing:

DPPs have retained A.B. Data Ltd., an experienced national class action notice provider and claims administrator and Court-appointed administrator of the Tyson Settlement, to administer the Cargill Settlement Notice Plan. (*See* Clark Decl., ¶ 13; *see also* Schachter Decl., ¶¶ 1-5, Ex. A.) In the Tyson Settlement, A.B. Data identified a list of 2,776 direct purchasers of Turkey from sales data produced by each Defendant ("proposed Settlement Class members").[6] Here, A.B. Data will mail the long form notice to these same proposed Settlement Class members via first-class U.S. mail. (*See* Schacter Decl., ¶¶ 6-7, Ex. B.) A.B. Data will also send the email notice to Settlement Class members. (*See id.* ¶¶ 7- 8, Ex. C.) The email notice will provide Settlement Class members with an electronic link to the settlement website where they can obtain more information including the long form notice and Settlement Agreement. (*Id.*) A.B. Data had designed this direct mail and email notice plan to reach potential class members of settlement classes that are national in scope and narrowly defined entities and demographic targets. (*See* Schachter Decl., ¶ 14.)

Further, A.B. Data will supplement the direct mail and email notice through (1) publication of summary notice in industry-related mailed and digital media and (2) posting of notice on the existing case website, https://www.turkeylitigation.com. (*See* Schachter Decl., ¶¶ 6-13, Ex. D.) A.B. Data will also host a toll-free number for frequently asked questions and requests for mailing of further information. (*See* Schachter Decl., ¶¶ 10-12.) The website and call center will be available in both English and Spanish. (*Id.*)

Notice plans like the present one, which rely on direct notice to class members,

---

[6] *See* Declaration of Eric Schachter in Support of Motion for Final Approval of the Class Action Settlement between Direct Purchaser Plaintiffs and the Tyson Defendants (ECF No. 352) ¶ 3.

supplemented by publication or other similar means of notice, are commonly used in class actions like this one. *See Amchem Prods.*, 521 U.S. at 617; *City of Greenville*, 2012 WL 1948153, at *4; *see also* Clark Decl., ¶ 11, Ex. B (*In re Broiler Chicken Antitrust Litig.*, 1:16-cv-08637, ECF No. 3394 (N.D. Ill. Jan. 8, 2020) (Order Granting DPPs' Motion for Preliminary Approval of Settlements with three defendants)). Further, this type of notice plan has been successfully implemented in this case for DPPs' settlement with the Tyson Defendants. (*See* Amended Order and Final Judgment (ECF No. 406).)

This multifaceted, comprehensive notice plan for the Cargill Settlement Agreement provides the best notice practicable under the circumstances of this case and fully satisfies Rule 23 and due process requirements.

### C. The Notice Plan for the Proposed Claims Process and Interim Co-Lead Counsel's Request for Payment of Interim Attorneys' Fees, Current and Ongoing Expenses, and Service Awards is Adequate and Should be Approved by the Court.

Within the same Notice to the Settlement Class described above, DPPs also intend to notify the class members of a claims process in order to distribute settlement proceeds achieved to date. DPPs in this antitrust class action have reached settlements with Cargill and Tyson totaling $37,125,000. DPPs respectfully move the Court to approve a notice plan advising the Settlement Class of the claims process for distribution of the Tyson and Cargill[7] settlement proceeds. The proposed claims process is substantially the same as the one approved for the DPP class in *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637, ECF No. 4341 (N.D. Ill. Feb. 25, 2021) (Clark Decl., Ex. D) and in *In re Pork Antitrust Litigation*, Case No. 18-cv-01776, ECF No.

---

[7] This Notice Plan assumes final approval of the Cargill Settlement. After such final approval is granted and the claims administrator concludes the claims process, DPPs will submit a Motion for Approval of a Plan of Distribution before funds are dispersed to Settlement Class members.

1208 (D. Minn., Mar. 7, 2022) (Clark Decl., Ex. E) and is intended to streamline the settlement claims process by sending pre-populated claim forms reflecting reasonably available Turkey purchase data for each Settlement Class member.

With respect to the proposed claims process and distribution, the class notice documents, consisting of the long form, email, and publication notice, as well as a claim form and a purchase audit request form, comply with the requirements of Rule23(c)(2)(B). (*See* Class Notice Documents, Schachter Decl., Exs. B through F). The Notice Plan provides information regarding:

- The claims process, and informs the Settlement Class members that DPPs will move the Court to approve a plan to distribute net settlement proceeds to qualified class members on a pro rata basis based on the total dollar amount of claims submitted by Settlement Class members (Schachter Decl., Ex. B at ¶¶ 9-14);

- A pre-printed claim form with the purchase amounts for each Settlement Class member and a purchase audit request form if a Settlement Class member wishes to supplement or challenge the pre-printed purchase data. (*Id.* at ¶ 12);

- Interim Co-Lead Counsel's first request for interim payment of attorney's fees not to exceed 33 1/3% of the proceeds from the Tyson and Cargill settlements, net of expenses; (*Id.* at ¶ 10);

- Interim Co-Lead Counsel's second request for reimbursement of current and ongoing expenses (not to exceed $4.5 million);[8] (*Id.* at ¶ 10);

- Interim Co-Lead Counsel's first request for named Class Representative service awards of up to a total of $50,000 (not to exceed $25,000 per Class Representative); (*Id.* at ¶ 10);

- Payment of up to $250,000 to pay the costs for notice and for Preliminary Approval, Final Approval, and administration of the claims process for this Settlement Agreement; (*Id.* at ¶ 10);

- The date, time, and place for the Fairness Hearing, the date by which Interim Co-Lead Counsel will move for an interim payment of attorneys' fees, current and ongoing expenses, and service awards (and where to find that information on the settlement administrator's website), and the fact that Settlement Class members do not need to enter an appearance through counsel but may do so if they choose. (*Id.*

---

[8] On January 10, 2022, the Court ordered reimbursement of $1 million for incurred and ongoing litigation expenses from the Tyson Settlement. (*See* ECF No. 367.) In connection with their forthcoming motion for current and ongoing expenses, DPPs will provide a detailed accounting of the use of those funds.

at ¶¶ 26-28).[9]

Under the claims process proposed by DPPs and the Claims Administrator, Settlement Class members will be sent individualized pre-printed claim forms that will include calculated amounts for their Turkey purchases from each of the Defendants, based on data produced by the Defendants. (*See* Schachter Decl., ¶ 7). Settlement Class members will have the opportunity to submit their claim forms via mail, email, or using the settlement website. If a Settlement Class member wishes to challenge or supplement the purchase amounts reflected on the pre-populated claim form, they can complete the audit request form and submit additional information to the Claims Administrator. Anyone who did not receive a pre-populated claim form and believes they are a Settlement Class member may do so as well.

This proposed claims process is substantially similar to what was implemented by the Courts in the *Broiler Chicken* and *Pork* cases, and ensures that Class members will be able to file their claims using a straight forward and equitable process. (*See* Schachter Decl., ¶¶ 7; *see also In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, ECF No. 4341 (N.D. Ill. Feb. 25, 2021); *In re Pork Antitrust Litigation*, No. 18-cv-01776, ECF No. 1208 (D. Minn. Mar. 7, 2022). The Class member purchase data covers the entire Settlement Class period (January 1, 2010 through January 1, 2017). As such, the pre-populated claim forms have been generated based on data from that same period.

Interim Co-Lead Class Counsel requests that the Court approve the proposed form and manner of notice as set forth herein.

---

[9] Once all of the claims have been reviewed and approved by the Claims Administrator, and any issues have been resolved with respect thereto, DPPs will file a motion for the Court to approve a plan of distribution and to approve payment of the Net Settlement Fund to the qualified claimants.

## VI. APPOINTMENT OF AN CLAIMS ADMINISTRATOR AND ESCROW AGENT TO MAINTAIN SETTLEMENT FUNDS.

In connection with preliminary approval of the Cargill Settlement Agreement, the court must (1) appoint a claims administrator and (2) appoint an escrow agent to maintain settlement funds.

### A. A.B. Data is an Experienced Class Action Notice Provider and Claims Administrator that Should be Appointed by the Court to Administer the Cargill Settlement and Conduct the Claims Process for the Cargill and Tyson Settlements.

DPPs have retained A.B. Data Ltd., an experienced national class action notice provider and claims administrator and Court-appointed claims administrator of the Tyson Settlement, to be the claims administrator to conduct the claims process for the Settlement Agreement. (*See* Clark Decl., ¶ 13; *see also* Schachter Decl., ¶¶ 1-5, Ex. A.) DPPs request A.B. Data Ltd.'s appointment as Claims Administrator for the Cargill Settlement.

### B. The Huntington National Bank Should be Appointed Escrow Agent for the Cargill Settlement.

DPPs propose that The Huntington National Bank be appointed by the Court to serve as the escrow agent, maintain the Qualified Settlement Fund as called for the Cargill Settlement Agreement (*see* Settlement Agreement ¶ 13), and provide escrow services in this litigation. The Huntington Bank is the Court-appointed escrow agent for the Tyson Settlement. (*See* Order Preliminarily Approving DPPs' Settlement with Tyson (ECF No. 265).) Interim Co-Lead Counsel selected the Huntington National Bank after a competitive bidding process in connection with the Tyson Settlement, and it is most efficient and cost-effective for the Settlement Class to have Huntington Bank continue that role for the Cargill Settlement. (*See* Clark Decl., ¶ 14.) Huntington Bank's qualifications are attached in the Declaration of Robyn Griffin as Exhibit A. The Huntington National Bank's diversity and inclusion statement is attached to the Declaration as

Exhibit B. DPPs request appointment of Huntington National Bank as escrow agent for the Cargill Settlement.

## VII. THE COURT SHOULD SCHEDULE A FAIRNESS HEARING.

The last step in the settlement approval process is the Fairness Hearing, at which the Court may hear all evidence necessary to evaluate the proposed Cargill Settlement. At that hearing, proponents of the Settlement Agreement may explain and describe their terms and conditions and offer argument in support of the Cargill Settlement's approval, and members of the Settlement Class or their counsel may be heard regarding the proposed Settlement Agreement, if they choose. DPPs propose the following schedule of events necessary for disseminating notice to the Settlement Class and the Fairness Hearing:

| DATE | EVENT |
|---|---|
| 10 days after the filing of this Motion for Preliminary Approval | Defendant Cargill shall file via ECF confirmation of its provision of notice to government regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(d) |
| 21 days after the entry of the Preliminary Approval Order | Settlement Administrator to provide direct mail and email notice, and commence implementation of publication notice plan |
| 14 days before the last day for Settlement Class Members to request exclusion from the Settlement Class | Interim Co-Lead Counsel to file petition seeking an interim payment of attorneys' fees, current and ongoing expenses, and named representative service awards |
| 60 days after the commencement of the Notice | Last day for Settlement Class Members to: (1) request exclusion from the Settlement Class; (2) file claim or audit request forms, (3) file objections to the Settlement, (4) file objections to the motion for an interim payment of attorneys' fees, current and ongoing expenses, and service awards; or (5) file notices to appear at the Fairness Hearing |
| 7 days after last day to request exclusion from Settlement | Interim Co-Lead Counsel to provide Cargill with a list of all persons and entities who have timely and validly requested exclusion from the Settlement Class |
| 14 days before the Fairness Hearing | Interim Co-Lead Counsel shall file a motion for Final Approval of the Settlement and all supporting papers, update the Court regarding the status of the claims |

| DATE | EVENT |
|------|-------|
| | process, and disclose any reduction in the Settlement Sum based on the Opt-Out Percentage, and Interim Co-Lead Counsel and Cargill may respond to any objections to the proposed Settlement<br><br>Interim Co-Lead Counsel shall file an update with the Court regarding any objections to the request for an interim payment of attorneys' fees, current and ongoing expenses, and service awards. |
| 40 days after the last day to request exclusion from the Settlement, or as soon thereafter as may be heard by the Court | Hearing regarding (1) Final Approval of the Settlement,[10] (2) motion for an interim payment of attorneys' fees, current and ongoing expenses, and service awards, and (3) status of claims process. |

## VIII.   CONCLUSION.

For these reasons, Interim Co-Lead Counsel respectfully request that the Court preliminarily approve the Cargill Settlement Agreement, certify the proposed Settlement Class, appoint Interim Co-Lead Counsel as co-lead counsel for the Settlement Class; approve the proposed claims process, and approve the plan of notice to the Settlement Class regarding the settlement and claims process, and grant the other relief requested by DPPs.

---

[10] Under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), the Court may not issue an order giving final approval of a proposed settlement earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with notice of these proposed Settlements. *Id.* at § 1715(d). Under the Settlement Agreement, within ten days of the filing of this motion, Cargill will serve upon the appropriate state officials and the appropriate federal official the CAFA notice required by Section 1715(b). This schedule will allow the Court to schedule a Fairness Hearing as DPPs propose in the schedule above, in conformance with CAFA's requirements.

Dated: January 15, 2025                    Respectfully submitted,

                                          s/ Brian D. Clark
                                          W. Joseph Bruckner
                                          Brian D. Clark
                                          Simeon A. Morbey
                                          Steven E. Serdikoff
                                          **LOCKRIDGE GRINDAL NAUEN PLLP**
                                          100 Washington Avenue South, Suite 2200
                                          Minneapolis, Minnesota 55401
                                          Telephone: (612) 339-6900
                                          Facsimile: (612) 339-0981
                                          wjbruckner@locklaw.com
                                          bdclark@locklaw.com
                                          samorbey@locklaw.com
                                          seserdikoff@locklaw.com

                                          s/ Shana E. Scarlett
                                          Shana E. Scarlett
                                          Rio S. Pierce
                                          Abby R. Wolf
                                          **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                          715 Hearst Avenue, Suite 202
                                          Berkeley, California 94710
                                          Telephone: (510) 725-3000
                                          Facsimile: (510) 725-3001
                                          shanas@hbsslaw.com
                                          riop@hbsslaw.com
                                          abbyw@hbsslaw.com

                                          s/ Steve W. Berman
                                          Steve W. Berman
                                          **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                          455 North Cityfront Plaza Drive, Suite 2410
                                          Chicago, Illinois 60611
                                          Telephone: (708) 628-4949
                                          Facsimile: (708) 628-4950
                                          steve@hbsslaw.com

                                          *Counsel for the Direct Purchaser Plaintiffs and
                                          the Proposed Class*