**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE TURKEY ANTITRUST LITGATION  This Documents Relates To:  *Direct Purchaser Plaintiff Actions* | Civil Action No. 19-cv-08318  Hon. Sunil R. Harjani  Hon. Keri L. Holleb Hotaling |

**DECLARATION OF BRIAN D. CLARK IN SUPPORT OF
DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT WITH CARGILL AND APPROVAL OF A CLAIMS PROCESS AND
NOTICE PLAN**

I, Brian D. Clark, declare under oath, as follows:

1. I am a Partner in the law firm of Lockridge Grindal Nauen PLLP. This Court appointed my firm, together with the firm of Hagens Berman Sobol Shapiro LLP, as Interim Co-Lead Counsel for Direct Purchaser Plaintiffs ("DPPs") in this litigation. (*See* ECF No. 143). I have full knowledge of the matters stated herein and could and would testify thereto.

2. I submit this Declaration in support of DPPs' Motion For Preliminary Approval Of Settlement With Defendant Cargill And Approval Of A Claims Process And Plan Of Notice filed simultaneously herewith. For purposes of this Declaration "Cargill" refers collectively to Cargill, Incorporated and Cargill Meat Solutions Corporation.

3. Tyson's market share of the Turkey market (as turkey is defined in the Settlement Class) is roughly 4-5% and Cargill's is approximately 20-21% of the market as defined in the Settlement Class and approximately 30-31% of the Litigation Class.

4. On behalf of DPPs, Interim Co-Lead Counsel conducted settlement negotiations with counsel for Cargill over the course several months and on numerous occasions. As a result

of these negotiations, the parties recently signed the proposed Settlement Agreement. A true and correct copy of the proposed Settlement Agreement is attached as **Exhibit A** to this Declaration.

5. Prior to filing DPPs' initial complaint—the first complaint filed in this litigation—in December 2019, Interim Co-Lead Counsel commenced an extensive investigation into the United States' Turkey market and the conduct underlying the allegations set forth in DPPs' initial complaint (ECF No. 1). As Interim Co-Lead Counsel, we have spent thousands of hours vigorously litigating this case on behalf of the DPP Class. We successfully opposed Defendants' motions to dismiss and coordinated and led the review, cataloging, and analysis of the nearly 2 million documents produced by Defendants. Plaintiffs have taken over 75 depositions of Defendants' employees and their Co-Conspirators and over 15 depositions of non-parties. Most of these depositions were taken by attorneys from Interim Co-Lead Counsel's firms. Because of the substantial information we have obtained through our investigation and formal discovery, DPPs were fully aware of the strengths and weaknesses of each party's position prior to executing the proposed Settlement Agreement.

6. Additionally, during the course of the litigation, Interim Co-Lead Counsel have researched and analyzed many legal and factual issues contested by the parties. We thoroughly evaluated the relative strengths and weaknesses of the parties' respective litigation positions in relation to this proposed Settlement Agreement. Because of our research, analysis, and evaluation, we were well informed of the facts, benefits, risks, and consequences of the proposed Settlement Agreement.

7. The resulting settlement negotiations with Cargill were at arm's length and were hard fought at all times. The proposed Settlement Agreement with Cargill is the product of intensive settlement negotiations conducted over a period of nearly two years, including one

formal mediation day with mediator Greg Lindstrom, as well as numerous follow-ups with the mediator and numerous one-on-one communications between the parties after the initial mediation failed to resolve the matter. The parties debated many issues, and negotiated many terms of the proposed Settlement Agreement, including the amount of payment, the timing of payment, potential conditions on payment, the effect of opt-outs on any settlement, and potential cooperation against other Defendants. Throughout this process, Cargill was represented by experienced, sophisticated counsel.

8. There was no collusion or preference among counsel for the parties at any time during these settlement negotiations. To the contrary, the negotiations were contentious, hard fought, and fully informed. Interim Co-Lead Counsel sought to obtain the greatest monetary benefit possible for the Settlement Class. Furthermore, there was no discussion or agreement at any time regarding the amount of attorneys' fees Interim Co-Lead Counsel would petition the Court to award in this case.

9. DPPs' Class Representatives are not afforded any special compensation under the proposed Settlement Agreement, and all proposed Settlement Class members similarly share a common interest in obtaining Cargill's cooperation to prosecute this case.

10. Under the proposed Settlement Agreement, Cargill agrees to pay the sum of $32,500,000 to the settlement fund within twenty-one (21) days of the Court's grant of Preliminary Approval. (*See* Ex. A, Settlement Agreement § 9.) Cargill also agrees to cooperate with DPPs in prosecuting any remaining claims against other Defendants. Cargill's cooperation will include providing DPPs with (a) declarations or affidavits regarding business record foundation for certain identified documents and (b) live witnesses at trial. (*See id*. § 10.) This brings the total monetary

recovery on behalf of the DPP Class to $37,125,000, as Plaintiffs settled with Tyson in 2021 for $4,625,000.

11. The proposed Settlement Agreement requires Interim Co-Lead Counsel to send out notice to potential members of the Settlement Class of, among other things, the fact and material terms of the proposed Settlement, instructions on how to opt of the proposed class or object to the Settlement, and other information. (*See* Ex. A, Settlement Agreement § 6.) The type of notice plan proposed here, which relies on direct notice to the extent practicable to class members who can be identified through reasonable effort, supplemented by publication notice, has been successfully implemented in this case (*see* Order Preliminarily Approving DPPs' Settlement with Tyson Defendants (ECF No. 265)) and in other direct purchaser actions, including *In re Broiler Chicken Antitrust Litigation*. A copy of the relevant order is attached as **Exhibit B** to this Declaration. (*In re Broiler Chicken Antitrust Litig.*, 1:16-cv-08637 (N.D. Ill. Jan. 8, 2020) (ECF No. 3394) (Order Granting DPPs' Motion for Preliminary Approval of Settlements with Defendants Peco Foods, Inc. George's Inc., George's Farms, Inc., and Amick Farms, LLC)).

12. I have practiced law and specialized in antitrust class action law since 2009, and I have prosecuted numerous antitrust class actions as lead counsel or other leadership positions. I have personally negotiated many settlements. In my opinion, and in that of my Interim Co-Lead Counsel colleagues, the proposed Settlement Agreement with Cargill is fair, reasonable, and adequate. The proposed Settlement provides substantial benefits to the Class and avoids the delay and uncertainty of continuing protracted litigation against Cargill.

13. After a competitive bidding process in connection with the Tyson Settlement Agreement, Interim Co-Lead Counsel selected and now propose A.B. Data, Ltd. to administer notice the Settlement Class Members. There are efficiencies and cost-savings in having the same

claims administrator perform these services for each settlement DPPs reach. The details of the proposed class notice program are discussed in our Motion and the supporting Declaration of Eric Schachter. In DPPs' Motion, we ask the Court to appoint A.B. Data as claims administrator in this case.

14. After a competitive bidding process in connection with the Tyson Settlement Agreement, Interim Co-Lead Counsel selected and again now proposes The Huntington National Bank to act as the escrow agent and provide escrow services in this litigation for the Cargill Settlement. There are efficiencies and cost-savings in having the same escrow service perform these services for each settlement DPPs reach. More information about The Huntington National Bank can be found in the supporting Declaration of Robyn Griffin. In DPPs' motion, we ask the Court to appoint The Huntington National Bank as the escrow agent in this case.

15. The judgment sharing agreement referenced at paragraph 12 of the Cargill Settlement Agreement is very similar to the one among most Defendants in the *Broilers* case. Both agreements removed an amount reflecting the settling Defendant's sales of the product in question (i.e., turkey or broilers) to the DPP Class from any damages award resulting from a verdict and Final Judgment DPPs obtain against any other Defendant who is a signatory to the judgment-sharing agreement. *See* **Exhibit C** (copy of the Direct Purchaser Plaintiff settlement agreement with Defendant Pilgrim's Pride in *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637, ECF No. 4259-1 (N.D. Ill.)). Thus, any other such Defendant against whom DPPs obtain a verdict and judgment would not be jointly and severally liable for the settling defendant's share of damages.

16. Attached hereto as **Exhibit D** is a true and correct copy of Judge Durkin's order granting preliminary approval of direct purchaser plaintiffs' settlements with defendants Tyson

and Pilgrim's Pride, certifying the settlement class, appointing counsel for the settlement class, and approving the proposed notice plan. *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637, ECF No. 4341 (N.D. Ill. Feb. 25, 2021).

17. Attached hereto as **Exhibit E** is a true and correct copy of Judge Tunheim's order granting approval of the proposed notice plan and claims process for direct purchaser plaintiffs' settlements with defendants JBS and Smithfield. *In re Pork Antitrust Litigation*, Case No. 18-cv-01776, ECF No. 1208 (D. Minn., Mar. 7, 2022).

*    *    *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 15, 2025, at Minneapolis, Minnesota.

*s/ Brian D. Clark*
Brian D. Clark