**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *IN RE TURKEY ANTITRUST LITIGATION* | NO. 19-CV-08318 |
| THIS DOCUMENT RELATES TO: | HON. SUNIL R. HARJANI |
| COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTION | HON. KERI L. HOLLEB HOTALING |

**MEMORANDUM IN SUPPORT OF UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' SETTLEMENTS WITH FARBEST FOODS AND COOPER FARMS**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    LITIGATION AND SETTLEMENT BACKGROUND ....................................... 1

III.   SUMMARY OF THE SETTLEMENT AGREEMENTS ..................................... 2

IV.   THE SETTLEMENTS ARE ON BEHALF OF THE CERTIFIED CLASS ....................... 4

V.    SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS ................................. 4
      A.     Farbest Foods. ......................................................................................... 4
      B.     Cooper Farms ........................................................................................... 5
      C.     Terms of the Settlement Agreements .................................................... 5

VI.   STANDARDS APPPLICABLE TO PRELIMINARY APPROVAL OF THE PROPOSED
      SETTLEMENTS .................................................................................................... 7

VII.  THE COURT SHOULD APPROVE THE SETTLEMENTS UNDER RULE 23(E)(2) ...... 8
      A.     The Settlements are Fair and Resulted from Arm's-Length Negotiations ............... 9
      B.     The Relief Provided for the Class is Substantial and Tangible ............................. 10
      C.     The Settlements Treat Class Members Equitably Relative to Each Other ............. 11

VIII. CIIPPS WILL SUBSEQUENTLY PROVIDE A PROPOSED NOTICE PLAN ............... 12

IX.   CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
 No. 07-cv-298, 2012 WL 651727 (N.D. Ill. Feb 28, 2012) ......................................................... 10

*Armstrong v. Bd. of Sch. Dirs.*,
 616 F.2d 305 (7th Cir. 1980) ......................................................................................................... 8

*Gautreaux v. Pierce*,
 690 F.2d 616 (7th Cir. 1982) ......................................................................................................... 8

*Goldsmith v. Tech. Solutions Co.*,
 No. 92-C-4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) .................................................. 11

*Hanrahan v. Britt*,
 174 F.R.D. 356 (E.D. Pa. 1997) .................................................................................................. 11

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
 270 F.R.D. 330 (N.D. Ill. 2010) ................................................................................................. 11

*In re Automotive Parts Antitrust Litig.*,
 No. 12-md-02311, 2015 WL 13715591 (E.D. Mich. Dec. 7, 2015) .............................................. 3

*In re Automotive Parts Antitrust Litig.*,
 No. 12-md-02311, 2018 WL 7108072 (E.D. Mich. Nov. 5, 2018) ................................................ 3

*In Re Disposable Contact Lens Antitrust Litig.*,
 No. 3:15-md-2626-HES-JRK (M.D. Fla. March 4, 2020) ............................................................ 3

*In re Linerboard Antitrust Litig.*,
 292 F. Supp. 2d 631 (E.D. Pa. 2003) .......................................................................................... 11

*In re Packaged Ice Antitrust Litig.*,
 No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) .............................................. 4

*In re Payment Card Interchange Fee and Merch. Discount Antitrust Litig.*,
 330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................................... 9, 12, 13

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
 MDL No. 2328, 2016 WL 235781 (E.D. La. Jan. 20, 2016) ........................................................ 3

*In re TFT- LCD (Flat Panel) Antitrust Litig.*,
 No. 07-md-01827 (N.D. Cal. Feb. 17, 2011) ................................................................................ 3

*In re Transpacific Passenger Air Transp. Ass'n*,
 No. C-07-05634 CRB, 2015 WL 3396829 (N.D. Cal. May 26, 2015) ......................................... 3

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... passim

**Other Authorities**

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS .......................................................... 5, 8

Manual for Complex Litig., § 30,41 (3d ed.)....................................................................... 9

## I. INTRODUCTION

Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") have reached proposed Settlements with Defendants Farbest Foods, Inc. and Cooper Farms, Inc. (collectively, the "Settling Defendants") on behalf of the Certified Class.[1] Pursuant to the Settlement Agreements, within 21 days of the Court granting preliminary approval, Farbest Foods and Cooper Farms will each pay $562,500 (five hundred sixty-two thousand five hundred U.S. dollars) into separate interest-bearing Escrow Accounts for the benefit of the Certified Class. (Flannery Decl., ¶ 9). In addition to payment of these Settlement Funds, Settling Defendants will provide meaningful cooperation which will assist CIIPPs in the prosecution of their claims against the remaining Defendants, including provision of trial witnesses and authenticating and providing foundation for documents, which will assist CIIPPs in presenting their claims against the remaining Defendants to the jury at trial. (*Id.*).

CIIPPs respectfully move the Court for Preliminary Approval of the Settlement Agreements with Farbest Foods and Cooper Farms. In a separate motion, CIIPPs will ask the Court to approve a proposed plan for disseminating notice to the Certified Class, to appoint an administrator to implement the notice plan, and to schedule a Final Fairness Hearing for the Settlement.[2]

As described below, the settlements are fair, reasonable, and adequate, and satisfy all the factors required for preliminary approval.

## II. LITIGATION AND SETTLEMENT BACKGROUND

Because the Court is very familiar with this case, CIIPPs will not provide a detailed recitation of the litigation background. *See, e.g.*, Class Certification Order (ECF No. 1107). CIIPPs note,

---

[1] *See* Declaration of Michael J. Flannery ("Flannery Decl."), Ex. A (Long-Form Settlement Agreement Between Commercial and Institutional Indirect Purchaser Plaintiffs and Farbest Foods ("Farbest Foods Settlement")), Ex. B (Long-Form Settlement Agreement Between Commercial and Institutional Indirect Purchaser Plaintiffs and Cooper Farms ("Cooper Farms Settlement")) (collectively, the "Settlement Agreements"). Capitalized terms in this memorandum are defined in the Settlement Agreements.
[2] At this time, CIIPPs are not seeking payment of attorneys' fees, service awards, or current and ongoing expenses from the proceeds of the Settlements but will do so at a later date.

however, that the Court's Class Certification Order has positively impacted settlements in this case. Prior to the Court's certification of the CIIPP class, CIIPPs received final approval for a settlement with Tyson Defendants for $1,750,000 in monetary relief and material cooperation from Tyson to the CIIPP class. (ECF No. 433, ECF No. 190-1, No. 1:20-cv-2295 (N.D. Ill. July 6, 2021)). Since the Class Certification Order, in February 2025, CIIPPs reached proposed Settlements with Farbest Foods and Cooper Farms. (ECF Nos. 1150, 1151).

## III. SUMMARY OF THE SETTLEMENT AGREEMENTS

The CIIPPs reached the Settlement Agreements with Farbest Foods and Cooper Farms after hard-fought litigation and arm's-length negotiations. (Flannery Decl., ¶ 6). The Settling Defendants have each agreed to pay $562,500 into Escrow Accounts for the benefit of the Certified Class and to cooperate with CIIPPs in their ongoing investigation and prosecution of their claims. (*Id.* at ¶ 9). The Settling Defendants' cooperation includes providing CIIPPs, upon reasonable request, with (a) declarations or affidavits relating to whether documents identified in Appendix A of the parties' Evidentiary Stipulation dated January 9, 2025, satisfy the factual predicates for a record of regularly conducted activity within the meaning of F.R.E. 803(6); (b) comparable declarations or affidavits relating to up to 30 additional documents not on the aforementioned Appendix A; and (c) up to two current employees of each Settling Defendant to appear as witnesses at trial. (*Id.*).

In consideration for these monetary and non-monetary benefits, CIIPPs agree, among other things, to release their Released Claims against the Settling Defendants that were, or could have been, brought in this litigation arising from the conduct alleged in the Complaint. This release does not extend to any other Defendants. (*See* Settlement Agreements ¶ 15). In addition, consistent with the judgment-sharing agreement between certain Defendants, CIIPPs agree that in the event they obtain a verdict and judgment against any Defendants other than the Settling Defendants, those non-settling Defendants would not be jointly and severally liable for the Settling Defendants' share of the

damages. (*Id.* at ¶ 11).

Subject to the approval and direction of the Court, the Settlement Funds (with accrued interest) will be used to: (1) pay for notice costs and costs incurred in the administration and distribution of the Settlements; (2) pay taxes and tax-related costs associated with the Escrow Account for proceeds from the Settlements; (3) make a distribution to the Certified Class in accordance with a plan to be filed in the future;[3] and (4) pay attorneys' fees, litigation expenses, and service awards in accordance with a plan to filed in the future.

Additionally, subject to Court approval, the Settlement Agreements permit Co-Lead Class Counsel to separately withdraw up to $250,000 from each of the Settlement Funds to "pay the costs of notice and for Preliminary Approval, Final Approval, and the administration of the claims process for this Settlement Agreement. (*Id.* at ¶ 6.d.). Any costs of notice actually incurred by Co-Lead Class Counsel are non-refundable. (*Id.* at ¶ 6.e.). At this time, Co-Lead Counsel ask the Court to permit them to withdraw up to $65,000 from each Settlement Fund (for a total of up to $130,000 combined) to pay for the aforementioned notice costs, implement the notice program, and associated administration costs.[4]

In sum, the Settlement Agreements: (1) are the result of extensive good-faith and hard-fought negotiations between knowledgeable and skilled counsel; (2) were entered into after extensive factual

---

[3] Courts have regularly approved the award of substantial sums of money as future expenses for use in prosecuting antitrust class actions. *E.g.*, Order Grant. Mot. For Payment of Common Expenses and Class Representatives Service Award, ECF No. 1165, *In Re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-HES-JRK (M.D. Fla. March 4, 2020) (awarding $664,206 for future expenses); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2018 WL 7108072, at *1 (E.D. Mich. Nov. 5, 2018) (awarding $3.4 million for future expenses); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL No. 2328, 2016 WL 235781, at *12 (E.D. La. Jan. 20, 2016) (awarding $633,212 for future expenses); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2015 WL 13715591, at *2 (E.D. Mich. Dec. 7, 2015) (awarding $2.9 million for future expenses); *In re Transpacific Passenger Air Transp. Ass'n*, No. C-07-05634 CRB, 2015 WL 3396829, at *3 (N.D. Cal. May 26, 2015) (awarding $3 million for future expenses); Order Grant. Direct Purchaser Pltfs. Mot. for the Advancement of Litig. Expenses from Settlement Funds, ECF No. 2474, *In re TFT- LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827 (N.D. Cal. Feb. 17, 2011) (awarding $3 million for future expenses); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *14 (E.D. Mich. Feb. 22, 2011) (awarding $750,000 for future expenses).

[4] CIIPPs' forthcoming motion for approval of notice plan will include a detailed cost estimate supporting this amount.

3

investigation and legal analysis; and (3) in the opinion of experienced Co-Lead Class Counsel, the Settlement Agreements are fair, reasonable, and adequate. Based on both the monetary relief and cooperation elements of the Settlement Agreements, Co-Lead Class Counsel submits that the Settlement Agreements are in the best interests of the Certified Class members. (Flannery Decl. ¶ 11.)

## IV.  THE SETTLEMENTS ARE ON BEHALF OF THE CERTIFIED CLASS

On January 22, 2025, this Court certified a litigation class of commercial and indirect institutional purchasers of turkey for injunctive relief and monetary damages. (ECF No. 1107). The Court also appointed Cuneo, Gilbert and LaDuca, LLP and Barrett Law Group, P.A. as Co-Lead Counsel for the Certified Classes. (*Id.* at 71). "If the court has certified a class prior to settlement, it does not need to re-certify it for settlement purposes." 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 13:18 (6th ed.). CIIPPs reached the Settlement Agreements on behalf of the Certified Class. Neither CIIPPs, Farbest Foods, nor Cooper Farms request any changes to the Certified Class, so the Court need not re-certify it.

CIIPPs have deferred notice of the Court's order on class certification so as to realize the efficiencies and cost savings that result from combining litigation class notice with notice of the Settlements. As mentioned previously, CIIPPs will be moving separately for approval of a notice plan which provides notice to the Certified Class of the certification of the litigation class as well as the settlements with Farbest Foods and Cooper Farms.

## V.  SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS

### A.  Farbest Foods.

Co-Lead Class Counsel reached the Settlement Agreement with Farbest Foods through confidential, arm's lengths negotiations. (*See* Flannery Decl. ¶ 3). The Settlement culminated after the Court granted CIIPPs' motion for class certification. (*Id.* at ¶ 3). Given that this litigation has been pending for over five years and now has a firm trial date, the parties have had ample opportunity

to assess the merits of the Certified Class members' claims and Farbest Foods' defenses through extensive investigation, discovery, research, settlement discussion, and contested motion practice, and to balance the value of the Certified Class members' claims against the substantial risks and expense of continuing litigation. The parties ultimately executed the Settlement Agreement on March 7, 2025. (*See id.*; Exhibit A, Flannery Decl.).

> **B.    Cooper Farms**

Similarly, the Settlement Agreement with Cooper Farms was reached by Co-Lead Class Counsel through confidential, arm's length negotiations. (*See* Flannery Decl. ¶ 3). The Settlement culminated shortly after the Court granted CIIPPs' motion for class certification. (*Id.*). As with the Farbest settlement, this litigation has been pending for over five years and now has a firm trial date, and the parties have had ample opportunity to assess the merits of the Certified Class members' claims and Cooper Farms' defenses through extensive investigation, discovery, research, settlement discussion, and contested motion practice, and to balance the value of the Certified Class members' claims against the substantial risks and expense of continuing litigation. The parties ultimately executed the Settlement Agreement on April 4, 2025. (*See id.*; Exhibit B, Flannery Decl.).

> **C.    Terms of the Settlement Agreements.**

The terms of the Settlement Agreements are nearly identical. (*See* Flannery Decl. ¶ 9). The Settlement Agreements are modeled after the Direct Purchaser Plaintiffs' settlement agreement with the Cargill Defendants, for which the Court has granted final approval (ECF No. 1128), and the Direct Purchaser Plaintiffs' settlement agreements with Farbest Foods and Cooper Farms, which the Court recently preliminarily approved. (ECF No. 1230). Under the terms of the Settlement Agreements, Farbest Foods and Cooper Farms will each pay $562,500 into separate interest-bearing escrow accounts for the benefit of the Certified Class. (*See*, Settlement Agreements, Exhibits A and B at ¶ 9). In addition to monetary relief, Farbest Foods and Cooper Farms will both provide

cooperation on the authenticity and foundation of certain documents CIIPPs intend to use at trial and provide up to two trial witnesses. (*Id.* at ¶ 9).

In exchange, CIIPPs and the Certified Class will, among other things, separately release all Released Claims against the Settling Defendants that were, or could have been, brought in this litigation arising from CIIPPs' allegations. (*See*, Settlement Agreements at ¶ 15). The separate releases do not extend to any other Defendants or to unrelated claims that are not the Released Claims defined in the Settlement Agreements. (*Id.*).

The Settlement Agreements refer to a judgment sharing agreement among certain Defendants, and consistent with that agreement, should CIIPPs obtain a verdict and judgment against the Non-Settling Defendants, those Non-Settling Defendants would not be jointly and severally liable for the Settling Defendants' share of the damages. (*See*, Settlement Agreements at ¶ 11).

Subject to Court approval, the proceeds from the Settlements (with accrued interest) will be used to (1) pay for notice costs and costs incurred in the administration and distribution of the Settlements; (2) pay taxes and tax-related costs associated with the escrow accounts for the Settlements; (3) a future distribution to the Certified Class in accordance with a plan to be submitted at a later date; and (4) pay attorneys' fees, litigation expenses, and service awards in accordance to a plan to be filed in the future.

Additionally, as noted earlier, and subject to Court approval, the Settlement Agreements permit Co-Lead Class Counsel to separately withdraw up to $250,000 from each of the Settlement Funds "to pay the costs of notice and for Preliminary Approval, Final Approval, and administration of the claims process for this Settlement Agreement." (*See*, Settlement Agreements, at ¶ 6.d). At this time, Co-Lead Class Counsel ask the Court to permit them to withdraw up to $65,000 from each Settlement Fund to pay for the aforementioned notice costs.

In sum, the Settlement Agreements: (1) are the result of extensive good-faith negotiations

between knowledgeable and skilled counsel; (2) were entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced Co-Lead Class Counsel, the Settlement Agreements are fair, reasonable, and adequate. Based on both the monetary relief and cooperation elements of the Settlement Agreements, Co-Lead Class Counsel submits that the Settlement Agreements are in the best interests of the Certified Class members. (Flannery Decl. ¶ 11.).

## VI.   STANDARDS APPPLICABLE TO PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENTS

A class action may be settled only with court approval. Fed. R. Civ. P. 23(c)(e). "It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980), *overruled on other grounds*; *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Before the court may give approval, it must ensure that the proposed settlements are "fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

"The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see also* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:14 (6th ed.). A proposed settlement falls within the "range of possible approval" when it is conceivable that the proposed settlement will meet the standards applied for final approval. *See* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 11.25, at 38-39 (6th ed.) (quoting Manual for Complex Litig., § 30,41 (3d ed.)). In other words, the Court must consider whether it will likely be able to approve the Settlements as fair, reasonable, and adequate. (*See* Fed. R. Civ. P. 23(e)(2) (listing the standard for final approval of a class action.).[5]

---

[5] When considering preliminary approval of a settlement, the court does not conduct a "definitive proceeding on the fairness of the proposed settlement," and the court "must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable, and adequate."

## VII.   THE COURT SHOULD APPROVE THE SETTLEMENTS UNDER RULE 23(E)(2)

To determine whether to approve a proposed settlement under Rule 23(e)(2) of the Federal Rules of Civil Procedure, courts look to the factors in the text of the Rule, which a court must consider when weighing final approval. *See* Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" the factors set forth in Rule 23(e)(2)); *see, e.g.*, *In re Payment Card Interchange Fee and Merch. Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) ("*Payment Card*"). Rule 23(e)(2) requires courts to consider whether:

> (A)   the class representatives and class counsel have adequately represented the class;
> (B)   the proposal was negotiated at arm's length;
> (C)   the relief provided for the class is adequate, taking into account:
> > (i)   the costs, risks, and delay of trial and appeal;
> > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
> > (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Factors (A) and (B) under Rule 23(e)(2) constitute the "procedural" analysis factors and examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.[6] Factors (C) and (D) under Rule 23(e)(2) constitute the "substantive" analysis factors and examine "[t]he relief that the settlement is expected to provide to class members. " *Id*. A "presumption of fairness, adequacy, and

---

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315-16 (D. Md. 1979)). The court will make that determination at the fairness hearing, when it can assess the fairness, reasonableness, and adequacy of the proposed settlement.

[6] The Court has already determined that the Class Representatives and Co-Lead Class Counsel adequately represent the Certified Class in its Order granting CIIPPs' motion for class certification. (ECF No. 1107 at 10-11). Therefore, this factor is not addressed herein.

reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-cv-298, 2012 WL 651727, at *10 (N.D. Ill. Feb 28, 2012).

Because the proposed Settlements meet all factors under Rule 23(e)(2), CIIPPs respectfully submit that the Court will likely grant final approval of the proposed Settlements, and thus the Court should grant Preliminary Approval of the proposed Settlements at this time. Indeed, these proposed Settlements are substantially similar to those recently preliminarily approved by the Court between the Direct Purchaser Plaintiff Class and the Settling Defendants. (ECF No. 1230).

### A. The Settlements are Fair and Resulted from Arm's-Length Negotiations

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) ("[I]t may be presumed that the agreement is fair and adequate where, as here, a proposed settlement is the product of arm's-length negotiations."). Settlements proposed by experienced counsel and which result from arm's-length negotiations are entitled to deference from the Court. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e). In making the determination as to whether a proposed settlement is fair, reasonable, and adequate, courts evaluate the judgment of the attorneys for the parties regarding the "strength of plaintiffs' case compared to the terms of the proposed settlement." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).

The proposed Settlements meet the standards for Preliminary Approval. Both Settlement Agreements are individually the product of extensive arm's-length settlement negotiations, which included several rounds of give-and-take between Co-Lead Counsel and counsel for Farbest Foods and Cooper Farms, respectively. (Flannery Decl. ¶ 6). As explained above, the negotiations of the Settlements largely took place after discovery was completed and the Court had issued its Class Certification Order (ECF No. 1107). (Flannery Decl. ¶ 6). Moreover, during these negotiations Co-Lead Class Counsel were focused on obtaining the best possible results for the Certified Class. (*Id.*). Therefore, based on both the monetary and cooperation elements of the Settlement Agreements outlined above, Co-Lead Counsel aver that these Settlements are fair, reasonable, and adequate for the Class. (*Id.* at ¶ 11).

### B.     The Relief Provided for the Class is Substantial and Tangible

In assessing whether the Settlement provides adequate relief for the Class under Rule 23(e)(2)(C), the Court should consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class members' claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

"Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial." *See, e.g.*, *Payment Card*, 330 F.R.D. at 36 (citations omitted). Here, for the reasons described above in Section V(A), the Settlements are fair and resulted from arm's-length negotiations. The monetary relief provides a significant amount of money recovered for the Certified Class from Defendants. (Flannery Decl. ¶ 9). In addition to the monetary relief, the cooperation that the Certified Class will receive from the Settling Defendants will bolster CIIPPs' claims against the remaining Defendants at trial. (*Id.* at ¶¶ 5, 6, 11). Co-Lead Counsel

thoroughly evaluated the relative strengths and weaknesses of the respective litigation positions and determined that the Settlements bring substantial benefits to the Class and avoid the delay and uncertainty of continuing protracted litigation with Settling Defendants. (*Id.*). In addition, during negotiations, there was no discussion, let alone agreement, regarding the amount of attorneys' fees CIIPPs' counsel ultimately may ask the Court to award in this case, and CIIPPs' counsel are not seeking fees at this time. (*Id.* at ¶ 7). The benefits of settlement outweigh the costs and risks associated with continued litigation with Settling Defendants and will weigh in favor of granting Final Approval.

### C. The Settlements Treat Class Members Equitably Relative to Each Other

Consideration under this Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Here, the named plaintiffs are treated the same as all other Class members in the proposed Settlements, and all Class members similarly share a common interest in obtaining Settling Defendants' substantial cooperation to prosecute this case. (Flannery Decl. ¶ 8; Settlement Agreements, Recitals, pp. 2-3). The release applies uniformly to Class members and does not affect the apportionment of the relief to Class members. (Flannery Decl. ¶ 8; Settlement Agreements, ¶¶ 14-16). Accordingly, this factor will weigh in favor of granting Final Approval. *See, e.g.*, *Payment Card*, 330 F.R.D. at 47.

In sum, the Settlement Agreements: (1) provide substantial benefits to the Class; (2) are the result of extensive arm's-length negotiations between knowledgeable and skilled counsel; (3) were entered into after extensive factual investigation and legal analysis; and (4) in the opinion of experienced counsel, are fair, reasonable, and adequate to the Class. Accordingly, Co-Lead Counsel believe that the Settlement Agreements are in the best interests of the Class members and should be

preliminarily approved by the Court.

## VIII.  CIIPPS WILL SUBSEQUENTLY PROVIDE A PROPOSED NOTICE PLAN

After preliminary approval of a settlement agreement, class members must be notified of the settlement. Fed. R. Civ. P. 23(e)(1)(B). Co-Lead Class Counsel will submit a motion for leave to disseminate notice and that motion will include a proposed form, method, and date for dissemination of notice as to the Settlement Agreements. CIIPPs expect to file that motion shortly after filing this Preliminary Approval motion.

## IX.  CONCLUSION

For the reasons stated herein, the CIIPPs respectfully request that the Court preliminarily approve the Settlements with Farbest Foods and Cooper Farms. CIIPPs will submit a separate motion seeking approval of a proposed notice plan and setting a schedule for the dissemination of notice to the Certified Class and Final Fairness Hearing for the Settlement Agreement.

Dated: April 29, 2025

*By: /s/draft*

Michael J. Flannery
**CUNEO GILBERT & LADUCA, LLP**
Two CityPlace Drive
St. Louis, MO 63141
Telephone: (314) 226-1015
mflannery@cuneolaw.com

Evelyn Yifei Riley (pro hac vice)
Cody McCracken (pro hac vice)
Lissa Morgans (pro hac vice)
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
evelyn@cuneolaw.com
cmccracken@cuneolaw.com
lmorgans@cuneolaw.com

Don Barrett
Katherine Barrett Riley
Sterling Aldridge
**BARRETT LAW GROUP, P.A**.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
kbriley@barrettlawgroup.com
saldridge@barrettlawgroup.com

***Co-Lead Class Counsel for the Commercial
and Institutional Indirect Purchaser
Plaintiff Class***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on April 29, 2025, a copy of the foregoing was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

By: /s/ *draft*_____