**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*IN RE TURKEY ANTITRUST LITIGATION*

Case No. 19 C 8318

Judge Sunil R. Harjani

**MEMORANDUM OPINION AND ORDER**

Carina and Amory, two investment vehicles litigating this antitrust action as assignees of turkey purchasers, ask this Court to excuse their lateness in opt-ting out of the proposed Cargill settlement. Specifically, the Direct Purchaser Plaintiffs (DPPs) have reached a class settlement with Defendants Cargill, Incorporated and Cargill Meat Solutions Corporation (Cargill). On January 30, 2025, this Court preliminarily approved the settlement and set the date for any plaintiffs to opt-out or object by April 21, 2025. [1128]. Two of the plaintiffs, Carina Ventures LLC and Amory Investments LLC, blew that deadline. Instead, on April 22, 2025, they sent an email to the settlement administrator of the class stating their intent to opt-out. The email read as follows:

> Dear Settlement Administrator:
>
> I write on behalf of Carina Ventures LLC ("Carina") and Amory Investments LLC ("Amory"), which are direct-action plaintiffs consolidated in *In re Turkey Antitrust Litigation*, No. 1:19-cv-08318 ("*Turkey*"). Carina and Amory filed opt-out lawsuits years ago and therefore have indicated their exclusion from settlements made by the Direct Purchaser Plaintiff Class ("DPPs"). *See Amory Investments LLC v. Agri Stats, Inc.*, No. 21-cv-06600; *Carina Ventures LLC v. Agri Stats, Inc.*, No. 1:23-cv-16948. As to the specific settlement with Cargill, Inc. and Cargill Meat Solutions Corp. ("Cargill"), Carina and Amory previously informed the Court they do not agree to the terms of that settlement and thus are not bound by it. *See Turkey*, ECF 1196 at 4, 15 n.8. The Cargill settlement, by its terms, also appears to exclude Carina and Amory. *See* Long-Form Settlement ¶ 11.
>
> Nonetheless, for the avoidance of doubt, Carina and Amory hereby notify you of their exclusion from the DPP settlements with Cargill, Farbest Foods, Inc., and Cooper Farms, Inc. Please let us know if you need anything else from us.
>
> Regards,
> Chris Goodnow[1]

---

[1] *See* [1262-2] at 6–7.

The administrator rejected Carina's and Amory's untimely opt-out and excluded them from the opt-out list for the Cargill settlement. [1262-2] at 6; [1304-1]. Carina and Amory now seek to have this Court approve their opt-out request. [1262]. This matter was fully briefed by Carina and Amory, the DPPs, and Cargill, and an oral argument was held on June 18, 2025.

Carina's and Amory's first argument is that they timely opted-out by their filing of a direct action against Cargill and that their conduct provided a "reasonable indication" that they intended to exclude themselves from the settlement. [1262] at 5, 7–8, 11–14. However, the reasonable indication test Carina and Amory advocate for is unavailable to them. The Seventh Circuit's decisions in *Navistar* and *Broiler Chicken* conclusively held that simply proceeding with a separate action against a defendant is not sufficient to meet the opt-out obligations where a court has delineated specific procedures and deadlines to opt-out. *See Matter of Navistar MaxxForce Engines Mktg., Sales Pracs., & Prods. Liab. Litig.*, 990 F.3d 1048, 1053 (7th Cir. 2021); *Matter of Broiler Chicken Antitrust Litig.*, 133 F.4th 761, 764 (7th Cir. 2025).

In *Navistar*, two class members argued that they should be excluded from the class settlement, after failing to opt-out because they never received notice of the settlement or the need to opt-out, and that their efforts to continue a separate litigation should be deemed a "reasonable indication" of a desire to opt-out. 990 F.3d at 1050. Starting with the notice argument, the district court found that first-class letters were sent to the plaintiffs' business addresses (even though plaintiffs claimed that their files did not include the letters), the plaintiffs' had the opportunity to provide an email address to receive notice but chose not to, that plaintiffs' lawyers had actual notice of the settlement, and that "[n]o modern lawyer is unaware of the procedures for managing class actions." *Id.* at 1050–51. The Seventh Circuit found that none of these findings were clearly erroneous and rejected the argument that notice by first-class mail was insufficient. *Id.* at 1051. As neither letter was returned as unclaimed, that was sufficient to satisfy "the constitutional requirement that notice be reasonably calculated to give actual knowledge." *Id.* (citing *Dusenbery v. United States*, 534 U.S. 161 (2002)). Further as a "lawyer's knowledge is imputed to the client" and counsel "could have checked the docket of the class action, which they knew was pending, and would have found the opt-out notice[,]" the plaintiffs had actual notice of the settlement and opt-out deadlines. *Id.* The Seventh Circuit held that the district court did not abuse its discretion in finding the plaintiffs' delay inexcusable based on counsel's actual knowledge of the settlement. *Id.*

The Seventh Circuit then rejected the use of the "reasonable indication" test when a district judge has detailed the opt-out procedures. *Id.* at 1052. The "reasonable indication" test is used by the Second and Tenth Circuits and allows for courts to exclude from the class any members who request exclusion and make a reasonable indication that they seek to be excluded. *Id.* The Seventh Circuit held that when a court has not issued instructions about how to opt-out, then a judge is free to use the "reasonable indication" test, but where, as in *Navistar* and here, the judge has issued

2

instructions on how to opt-out, a plaintiff cannot opt-out by other means. *Id.* The fact that the plaintiffs were pursuing a separate legal action in another court does not alleviate the requirement that they follow the opt-out procedures; instead "the judge is entitled to insist that class members follow the instructions they have been given and opt out (or not) in the formal way the district judge told them to use." *Id.* at 1053.

More recently, in *Broiler Chicken,* a group of plaintiffs in a similar protein antitrust litigation, failed to opt-out by the court-imposed deadline. *Matter of Broiler Chicken Antitrust Litig.*, 133 F.4th 761, 763 (7th Cir. 2025). The Seventh Circuit rejected, among other arguments, the plaintiffs' argument that "by filing stand-alone suits, they constructively opted out of the class" and stated that such a position "is absurd." *Id.* at 764. Instead, the court insisted that procedures are followed as "[e]veryone is entitled to know with certainty who is in and who is out; the opt-out procedure does this with due formality." *Id.* The district court in *Broiler Chicken* also separately denied Winn-Dixie's argument that it promptly opted-out when it filed its request one day after the deadline and also had an individual complaint filed before the approval of the class notice plan, finding that all of this was insufficient. *See In re Broiler Chicken Antitrust Litig.*, 2019 WL 6699664, at *2 (N.D. Ill. Dec. 9, 2019).

On January 30, 2025, this Court approved a notice plan with specific requirements that those wishing to opt-out had to meet, including that by April 21, 2025, the plaintiff must submit a written request to the Settlement administrator that included the following:

> (a) your name, including the name of your business which purchased Turkey products, and address; (b) a statement that you want to be excluded from the Settlement Class in the Settlement with Cargill in *In re Turkey Antitrust Litigation*; (c) if your exclusion involves an assignment of claims, then you must identify the assignor, the assignee, and the total value of direct Turkey purchases during the Class Period from each Defendant or co-conspirator that is subject to the assignment, and (d) your signature. If you intend to exclude subsidiaries, affiliates, divisions, related or controlled entities, entities under common control, predecessors in interest, or any other related entity, such entities must be expressly identified by name and address in your request.[2]

Carina and Amory did not do any of this. Indeed, to this day they have not provided the necessary information pursuant to the Court's order, such as the identities of the assignors who purchased the turkey or the total value of their assigned direct turkey purchases during the class period that they are seeking to exclude from the settlement. Carina's and Amory's assertions that they did a host of other things, such as conducting their own discovery, should have made everyone

---

[2] *See* [1128]; [1128-1] at 7.

aware that they wanted to opt-out does not save them under *Navistar* and *Broiler Chicken*. [1262] at 7–8. The Court provided specific and detailed instructions on how to opt-out, which they failed to follow. Thus, like the plaintiffs in *Navistar* and *Broiler Chicken*, Carina and Amory failed to timely opt-out of the Cargill settlement.

Next, Carina and Amory contend that even if they failed to timely request exclusion from the settlement, the Court should excuse their failure to meet the deadline. This brings us to whether there is excusable neglect for their one-day late email request to the class administrator. Under Federal Rule of Civil Procedure 6(b)(1)(B), when a party makes a request to act after a deadline for such act has passed, the court may, for good cause, extend the time "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Courts apply this standard to class settlement opt-out deadlines. *Adelson v. Ocwen Fin. Corp.*, 621 F. App'x 348, 351 (7th Cir. 2015) (applying Rule 6(b) to extend the time to opt-out in class actions); *In re Broiler Chicken Antitrust Litig.*, 2019 WL 6699664, at *2 ("Courts have applied [the Rule 6(b)] standard to class settlement opt out deadlines.").

The Supreme Court has established a multifactor test to evaluate whether the neglect was excusable including the danger of prejudice to the nonmoving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *United States v. Cates*, 716 F.3d 445, 448 (7th Cir. 2013) ("*Pioneer* applies whenever 'excusable neglect' appears in the federal procedural rules."). Whether the conduct is excusable is ultimately an equitable determination within the district court's discretion after evaluating all relevant circumstances. *Pioneer*, 507 U.S. at 395; *Navistar*, 990 F.3d at 1051 ("A district judge has discretion to permit an untimely opt out when the delay is excusable."). Carina and Amory contend that each of these factors weigh in favor of their exclusion from the settlement. [1262] at 14.

Carina's and Amory's explanation for why they missed the deadline is that this was simply a mistake as their attorneys were busy with other matters, including their own case against Cargill, and that they believed that their separate action excluded them from the settlement. [1290] at 10 ("Carina and Amory missed the opt-out deadline by one day because counsel inadvertently overlooked it."); [1262] at 16 ("counsel believed that Carina and Amory already had opted out because they filed direct actions years ago and the Cargill settlement expressly excluded them."). Neither of these excuses have any merit. The Seventh Circuit has held that attorney error is not a sufficient reason to find excusable neglect as "inattentiveness to the litigation is not excusable." *Matter of Plunkett*, 82 F.3d 738, 742 (7th Cir. 1996). Further, "neglect due to a busy schedule is generally not excusable." *Cates*, 716 F.3d at 449. Thus, counsel's preoccupation with other aspects of this case does not excuse their failure to file the opt-out request on time. Further, counsel's belief that they were excluded was plainly unreasonable, as the Seventh Circuit made clear in both

*Navistar* and *Broiler Chicken* that a separate action does not exclude a plaintiff from a class action settlement. Thus, this is not a valid reason for the delay to be excused.

A party's failure to provide a valid reason for the delay is grounds for denial. In *Murphy v. Eddie Murphy Prods., Inc.*, the Seventh Circuit affirmed the district court's denial of the motion to amend when the plaintiff failed to provide a valid reason for his delay. 611 F.3d 322, 324 (7th Cir. 2010). In *Murphy*, the plaintiff sought to appeal the district court's denial of a motion for extension of time to amend his complaint and the dismissal of the case with prejudice. *Id.* The Seventh Circuit considered whether the plaintiff had a valid reason for his delay under Rule 6 and *Pioneer* and found that the plaintiff had the necessary information for years prior to the request for an extension, so any blame for delay lay with him. *Id.* Therefore, he failed to identify a valid reason for his delay and that his failure to meet court-ordered deadlines was not excusable neglect. *Id.* Similarly, here, Carina and Amory provide no valid reason for why they missed the deadline other than an oversight by their attorneys, and that is not a sufficient reason to find excusable neglect. This oversight is particularly glaring given that Carina and Amory (as subsidiaries of a litigation funder) are sophisticated entities who are represented by experienced counsel.

Furthermore, the need to timely opt-out should come as no surprise to Amory, who submitted opt-out requests for itself and its assignor Maines Paper & Food Service, Inc. to the Tyson settlement in 2022. [406]; [1274] ¶ 5. Likewise, Carina's assignor, Sysco, timely submitted an opt-out request for the Tyson settlement. [406]; [1274] ¶ 4. Further, their fellow direct action plaintiffs, Winn-Dixie, Bi-Lo and Aramark, timely submitted opt-out requests from the Cargill settlement in the form ordered by the Court's notice, despite having their own cases in this consolidated action. [1304-1]. Also, the docket in this case, where Carina and Amory have been actively litigating, was replete with filings about the Cargill settlement that contained the notice plan and the details on how to timely opt-out. [1098] – [1104] [1110] [1119] [1128]. Unlike *Navistar*, where the complainers had to look at a different docket and were still held to the opt-out deadline, Carina and Amory were litigating under the same docket as the Cargill settlement. Carina and Amory had eighty-one days to submit the opt-out request. They did not do so. As stated above—and despite their claims that there was only a one-day delay—they still have not done so because their untimely email opt-out failed to include all necessary information such as total value of their assigned direct turkey purchases during the class period that they are seeking to exclude from the settlement. Their only explanation—attorney mistake—is not sufficient to amount to excusable neglect.

Amory's and Carina's second proffered reason is that they did not receive notice of the settlement. Upon further inquiry by the Court since the filing of their motion, this argument falls flat. The declarations of Tracy Hanson and Brian Clark demonstrate that notices of the settlement were sent to both turkey producers here—Sysco and Maine Paper both received notice of the settlement in accordance with the approved notice plan, which ordered notice to the Settlement

5

Class.[3] [1128] ¶¶ 3, 11; [1274] ¶¶ 6–8; [1303] ¶¶ 5, 13; [1304] ¶¶ 3, 5.  As an additional notice, attorney Scott Gant from Boies Schiller was mailed and emailed notice of the Cargill settlement at his law firm email address. [1274] ¶¶ 7, 8.  Gant was counsel for Carina, first in its independently filed action (*Carina Ventures LLC v. Agri Stats, Inc. et al,*  1:23-cv-16948 (N.D. Ill.)) and in this case after it was consolidated, until he withdrew as counsel on May 14, 2025, which was after the opt-out deadline. [1277]; [1320-1] ¶ 5.  Also, in letters dated October 19, 2021, and November 17, 2021, both Sysco[4] (Carina's assignor) and Amory[5] respectively, identified Gant as their counsel and that Gant should receive the communications.[6] [1274] ¶¶ 4, 5.  The fact that Gant claims that he could not find any evidence of an email or paper notice is of no matter. [1320-1] ¶¶ 8–9.  It is the notice provided (not received) that is the crux of the analysis. *Navistar*, 990 F.3d at 1051 ("[M]ail (to the correct address) satisfies the constitutional requirement that notice be reasonably calculated to give actual knowledge.") (citing *Dusenbery v. United States*, 534 U.S. 161 (2002)).  And in this case, there is no evidence of returned mail or bounce-back email that could change that conclusion. [1274] ¶¶ 7, 8.  Also, the email address used for Gant by the administrator is the same email address on Gant's firm website to this day. *Id.*  Finally, at least five lawyers, other than Gant, for Carina and Amory have docket appearances in the Turkey litigation under case no. 1:19-cv-8318 and received ECF notices of the proposed settlement, the Court's preliminary approval of the settlement and the notice plan that had all the details about the deadline to opt-out and the details of information to include.  *See Navistar*, 990 F.3d at 1051 ("A lawyer's knowledge is imputed to the client.").  Thus, Carina's and Amory's counsel's "actual knowledge of the settlement is conclusive." *Id.*  And to be clear, Carina and Amory knew enough to send an email request to the administrator—the problem is that it was untimely.  Therefore, there was no issue with a lack of notice to Carina and Amory about the need to opt-out by the deadline, they simply failed to do so.

Carina's and Amory's third reason for excusable neglect is that they will suffer prejudice if the settlement is approved because the terms of the settlement do not include compensation for

---

[3] In relevant part, the Settlement Class is defined as "All persons and entities who directly purchased Turkey from any Defendant or alleged co-conspirator in the United States at any time during the Settlement Class Period." [1128] ¶ 3.

[4] The October 19, 2021, letter to the settlement administrator requesting an exclusion from the Tyson Settlement included instructions that any communication regarding the exclusion should go to Barrett Flynn (Sysco's Associate General Counsel) and Scott Gant. [1274-1] at 2.

[5] The November 17, 2021, letter to the settlement administrator requesting an exclusion from the Tyson Settlement included instructions that all communications regarding the exclusion should go to Scott Gant. [1274-2] at 2.

[6] While in his affidavit Gant asserts that he "never entered an appearance for Amory" in any of the *Turkey* litigations, this does not remove his connection to this case as the letter from Aviva Will, an authorized signatory for Amory, instructed the settlement administrator on November 17, 2021 to direct exclusion request communications to Gant. [1274] ¶ 5; [1274-2] at 2; [1320-1] ¶ 3.

their volume of sales. They identify various paragraphs of the proposed settlement agreement as an indication that Carina's and Amory's sales were not included. [1262] at 5, 8–9. Specifically, Carina and Amory identified three paragraphs and a footnote in the long form settlement agreement, which they argue show an intention to exclude them from the settlement. The first two paragraphs are within the "Litigation Standstill" provision in Paragraph 3. [1262] at 5; [1100-1] ¶ 3. Paragraph 3(a) and the accompanying footnote provide that "Cargill shall cease all litigation activities against the putative DPP class, except to the extent any putative class member has filed or files a direct action complaint in the Action ('Direct Action Plaintiff')" and defines Direct Action Plaintiff to include the Amory and Carina litigation. [1100-1] ¶ 3(a) & n.2. Similarly, paragraph 3(b) provides that the settlement should not "be construed to limit Cargill's ability to fully defend itself against claims asserted by Direct Action Plaintiffs[.]" [1100-1] ¶ 3(b). Finally, Carina and Amory contend that their assigned turkey purchases are excluded from the purchase volume used to calculate the final settlement amount. [1262] at 5 (citing [1100-1] ¶ 11).

This argument is of no merit. Those provisions only generally addressed how the settling parties would treat the non-settling direct action claimants (current and future) in on-going litigation, given that there are currently five entities with their own cases and more to potentially come as a result of opt-outs from this settlement. There is nothing in the settlement agreement that specifically states the direct action plaintiffs, or Carina and Amory, are excluded from the settlement, or need not opt-out because they have their own action. Indeed, the Settlement Class definition includes Sysco and Maines Paper (and thus Carina and Amory as assignees), given that it includes all turkey purchasers who purchased from Defendants. The settlement agreement, subject to final approval, resolves all claims (past, present or future) for the Settlement Class against the Cargill defendants as a result of the alleged antitrust conspiracy. This plainly includes any entity litigating their own cases, unless they timely and properly opted-out—three of the five current individual claimants did, as did eleven other turkey purchasers. [1304] ¶¶ 10–11.

More importantly, both the DPPs and Cargill have affirmed that even when considering Carina and Amory's sales data, they do not reach the threshold identified in the agreement that would cause the settlement to be undone. [1281] at 18–19; [1281-1] ¶ 4; [1317] at 3; [1318] ¶ 5. Thus, Carina and Amory sales do not affect the settlement in any way, as their combined purchases constitute merely 2% of overall Settlement Class purchases by Cargill. That is, whether Carina or Amory are in or out, the settlement will stand between the parties. In any event, settlements are negotiated between class counsel and defendants without knowledge of who will choose to stay in or who will opt-out. It is always a possibility that those entities with their own case will choose to fold and take the class settlement, and those who are putative class members will be unhappy with the settlement and opt-out.

All in all, Carina's and Amory's prejudice—that it will be part of the class settlement rather than be permitted to continue its action against Cargill—is one of its own making and is, crucially,

not a factor for establishing excusable neglect under *Pioneer*. What is a factor is the prejudice to Cargill, as the nonmovant. Despite Carina and Amory's attempts to downplay the harm, allowing Carina and Amory to opt-out deprives Cargill of the ability to rely on the firm settlement deadlines set by the Court for the court-certified, defined class and that everyone must follow. Similarly, Carina and Amory spent much of their time at the hearing contending that allowing Carina and Amory to opt-out follows the expectations of the parties, but their only support for this is their own expectation that they wanted to be excluded. This argument fails to address the fact that the Court provided clear instructions on how to opt-out that Carina and Amory failed to follow. This case is a multi-party, complex, and six-year-old, antitrust litigation, as such there is innate value for the litigants and the Court to know that deadlines and instructions, once set, will be followed and that this Court will hold all litigants accountable.

As to the last factor, Carina and Amory assert that they acted in good faith. [1262] at 16. Cargill does not meaningfully dispute this, but rather contends that they should have known about the deadline and *Navistar*, and that protests of good faith conduct alone are not enough. A review of the record shows that, unlike in cases where it seemed like a plaintiff was trying to increase their odds of recovery by both being part of the settlement and bringing their own claim, like the plaintiff in *Navistar*, it does not appear that Carina and Amory were trying to play both sides. Thus, there is no evidence of a lack of good faith on their part. But as the Seventh Circuit noted, a "review of our case law on excusable neglect reveals an unfortunate number of attorneys who have made honest, if fateful, missteps in representing their clients that did not constitute excusable neglect." *Cates*, 716 F.3d at 450. Missing the opt-out deadline may well have been simply a mistake on the part of Carina's and Amory's counsel, but that does not amount to excusable neglect.

As the Seventh Circuit recognized in *Navistar*, court deadlines and filing requirements are everywhere, and courts have "long resisted" the complications of allowing a party to merely reasonably indicate that it intends to do something. 990 F.3d at 1053. For example, "someone must file a particular document (the complaint) in a particular place (the clerk's office) by a particular date (the statute of limitations)." *Id.* Likewise, rules govern when parties must answer or respond to a complaint and failure to do so results in a Rule 55 default. Fed. R. Civ. P. 12(a); Fed. R. Civ. P. 55(a). There are similar rules regarding the deadlines and what documents must be filed that determine when a party can file a notice of appeal, and failure to do so results in an inability to appeal a final order. *Navistar*, 990 F.3d at 1053. Deadlines for opt-out prevent parties from upending the established class settlement process by coming in late and claiming they are not bound by the settlement. Whether it's one day, months, or years after—late is late. As the Seventh Circuit put it "[m]issing a filing deadline because of slumber is fatal." *Matter of Plunkett*, 82 F.3d 738, 742 (7th Cir. 1996). This Court also has "substantial discretion" in managing its docket and enforcing deadlines. *Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1154 (7th Cir. 2021). The fail-safe is this Court's ability to act within its discretion where it finds excusable neglect. The key aspect being—not just neglect, which clearly occurred here—but *excusable* neglect. The Court

has found none. Accordingly, Carina's and Amory's Motion to Amend the Preliminary List of Exclusion Requests from the Settlement with Cargill [1262] is denied.

**SO ORDERED.**

Dated: July 7, 2025

_____
Sunil R. Harjani
United States District Judge