**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *IN RE TURKEY ANTITRUST LITIGATION* | NO. 19-CV-08318 |
| THIS DOCUMENT RELATES TO: | HON. SUNIL R. HARJANI |
| COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFF ACTION | HON. KERI L. HOLLEB HOTALING |

**MEMORANDUM IN SUPPORT OF UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' SETTLEMENT WITH CARGILL, INCORPORATED AND CARGILL MEAT SOLUTIONS CORPORATION**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. LITIGATION AND SETTLEMENT BACKGROUND ......................................................1

III. SUMMARY OF THE SETTLEMENT AGREEMENT ......................................................2

IV. THE SETTLEMENT IS ON BEHALF OF THE CIIPP CLASS .......................................3

V. SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS ................................4

VI. STANDARDS APPPLICABLE TO PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT ................................................................................................7

VII. THE COURT SHOULD APPROVE THE SETTLEMENT UNDER RULE 23(E)(2) .....8
    A. The Settlement is Fair and Resulted from Arm's-Length Negotiations .................8
    B. The Relief Provided for the Class is Substantial and Tangible ..............................9
    C. The Settlement Treats Class Members Equitably Relative to Each Other ...........10

VIII. CIIPPS WILL SUBSEQUENTLY PROVIDE A PROPOSED NOTICE PLAN.............11

IX. CONCLUSION ...................................................................................................................11

**TABLE OF AUTHORITIES**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  No. 07-cv-298, 2012 WL 651727 (N.D. Ill. Feb 28, 2012) ......................................................... 9

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) ....................................................................................................... 7

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ....................................................................................................... 7

*Goldsmith v. Tech. Solutions Co.*,
  No. 92-C-4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ................................................. 10

*Hanrahan v. Britt*,
  174 F.R.D. 356 (E.D. Pa. 1997) ................................................................................................ 10

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ................................................................................................ 10

*In re Automotive Parts Antitrust Litig.*,
  No. 12-md-02311, 2015 WL 13715591 (E.D. Mich. Dec. 7, 2015) ........................................... 4

*In re Automotive Parts Antitrust Litig.*,
  No. 12-md-02311, 2018 WL 7108072 (E.D. Mich. Nov. 5, 2018) ............................................. 3

*In Re Disposable Contact Lens Antitrust Litig.*,
  No. 3:15-md-2626-HES-JRK (M.D. Fla. March 4, 2020) .......................................................... 3

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................................................ 10

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ............................................ 4

*In re Payment Card Interchange Fee and Merch. Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................................... 8, 11, 13

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
  MDL No. 2328, 2016 WL 235781 (E.D. La. Jan. 20, 2016) ...................................................... 3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 07-md-01827 (N.D. Cal. Feb. 17, 2011) .............................................................................. 4

*In re Transpacific Passenger Air Transp. Ass'n*,
  No. C-07-05634 CRB, 2015 WL 3396829 (N.D. Cal. May 26, 2015) ....................................... 4

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ passim

**Other Authorities**

4 Newberg and Rubenstein on Class Actions .............................................................. 5, 7, 8

Manual for Complex Litigation, § 30.41 (3d ed.) ................................................................ 8

I.      INTRODUCTION

Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs") have reached a proposed Settlement with Defendant Cargill, Incorporated and Cargill Meat Solutions Corporation ("Cargill") on behalf of the CIIPP Class.[1] Pursuant to the Settlement Agreement, within 28 days of the Court granting Preliminary Approval, Cargill will pay $4,000,000.00 (four million U.S. dollars) into an interest-bearing Escrow Account for the benefit of the CIIPP Class. (Flannery Decl., ¶ 9). In addition to payment of this Settlement Fund, Cargill will provide meaningful cooperation which will assist CIIPPs in the prosecution of their claims against the remaining Defendants, including provision of trial witnesses and authenticating and providing foundation for documents, which will assist CIIPPs in presenting their claims against the remaining Defendants to the jury at trial. (*Id.*).

CIIPPs respectfully move the Court for Preliminary Approval of the Settlement Agreement with Cargill. In a separate motion, CIIPPs will ask the Court to approve a proposed plan for disseminating notice to the CIIPP Class, to appoint an administrator to implement the notice plan, and to schedule a Final Fairness Hearing for the Settlement. CIIPPs separately intend to seek payment of attorneys' fees, service awards, and current expenses from the proceeds of the Settlement, which will be included in the notice disseminated to the CIIPP Class.

As described below, the Settlement Agreement is fair, reasonable, and adequate, and satisfies all the factors required for Preliminary Approval.

II.     LITIGATION AND SETTLEMENT BACKGROUND

Because the Court is very familiar with this case, CIIPPs will not provide a detailed

---

[1] *See* Declaration of Michael J. Flannery ("Flannery Decl."), Ex. A (Long-Form Settlement Agreement Between Commercial and Institutional Indirect Purchaser Plaintiffs and Cargill (the "Settlement Agreement")). Capitalized terms in this memorandum are defined in the Settlement Agreement.

recitation of the litigation background. *See, e.g.*, Class Certification Order (ECF No. 1107). CIIPPs note, however, that the Court's Class Certification Order has positively impacted settlements in this case. Prior to the Court's certification of the CIIPP Class, CIIPPs received final approval for a settlement with Tyson Defendants for $1,750,000 in monetary relief and material cooperation from Tyson to the CIIPP Class. (ECF No. 433, ECF No. 190-1, No. 1:20-cv-2295 (N.D. Ill. July 6, 2021)). Since the Class Certification Order, CIIPPs received preliminary approval for settlements with Farbest Foods and Cooper Farms for $1,124,000 (combined) in monetary relief and material cooperation from Farbest Foods and Cooper Farms. (*See* ECF Nos. 1254, 1276). On July 16, 2025, CIIPPs reached this proposed Settlement with Cargill.

### III.  SUMMARY OF THE SETTLEMENT AGREEMENT

CIIPPs reached the Settlement Agreement with Cargill after hard-fought litigation and arm's-length negotiations. (Flannery Decl., ¶ 6). Cargill has agreed to pay $4,000,000.00 into the Escrow Account for the benefit of the CIIPP Class and to cooperate with CIIPPs in their ongoing investigation and prosecution of their claims. (*Id.* at ¶ 9).

Cargill's cooperation includes providing CIIPPs, upon reasonable request, with (a) declarations or affidavits relating to whether documents identified in Appendix A of the parties' Evidentiary Stipulation dated December 20, 2024 satisfy the factual predicates for a record of regularly conducted activity within the meaning of F.R.E. 803(6); (b) comparable declarations or affidavits relating to up to 30 additional documents not on the aforementioned Appendix A; and (c) up to three current employees of Cargill to appear as witnesses at trial. (*Id.*).

In consideration for these monetary and non-monetary benefits, CIIPPs agree, among other things, to release their Released Claims against Cargill that were, or could have been, brought in this litigation arising from the conduct alleged in the Complaint; this release does not extend to any other Defendants. (Settlement Agreement at ¶ 16). In addition, consistent with the judgment-

2

sharing agreement between certain Defendants, CIIPPs agree that in the event they obtain a verdict and judgment against any Defendants other than Cargill, those non-settling Defendants would not be jointly and severally liable for Cargill's share of the damages. (*Id.* at ¶ 12).

Subject to the approval and direction of the Court, the Settlement Fund (with accrued interest) will be used to: (1) pay for notice costs and costs incurred in the administration and distribution of the Settlement; (2) pay taxes and tax-related costs associated with the Escrow Account for proceeds from the Settlement; (3) make a distribution to the CIIPP Class in accordance with a plan to be filed in the future; and (4) pay attorneys' fees, litigation expenses, and service awards.

Additionally, subject to Court approval, the Settlement Agreement permits Co-Lead Class Counsel to withdraw up to $250,000.00 from the Settlement Fund to pay the costs of notice and for Preliminary Approval, Final Approval, and the administration of the claims process for this Settlement Agreement. (Settlement Agreement at ¶ 6d). Any costs of notice actually incurred by Co-Lead Class Counsel are non-refundable. (*Id.* at ¶ 6e). At this time, Co-Lead Counsel ask the Court to permit them to withdraw up to $130,000.00 from the Settlement Fund to pay for the aforementioned notice costs.

In sum, the Settlement Agreement: (1) is the result of extensive good-faith and hard-fought negotiations between knowledgeable and skilled counsel; (2) was entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced Co-Lead Class Counsel, the Settlement Agreement is fair, reasonable, and adequate. Based on both the monetary relief and cooperation elements of the Settlement Agreement, Co-Lead Class Counsel submits that the Settlement Agreement is in the best interests of the CIIPP Class. (Flannery Decl. ¶ 11).

## IV. THE SETTLEMENT IS ON BEHALF OF THE CIIPP CLASS

On January 22, 2025, this Court certified a litigation class of commercial and indirect

institutional purchasers of turkey for injunctive relief and monetary damages. (ECF No. 1107). The Court also appointed Cuneo, Gilbert and LaDuca, LLP and Barrett Law Group, P.A. as Co-Lead Counsel for the Certified Classes. (*Id.* at 71). "If the court has certified a class prior to settlement, it does not need to re-certify it for settlement purposes." 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 13:18 (6th ed.). CIIPPs reached the Settlement Agreement on behalf of the certified CIIPP Class. Neither CIIPPs nor Cargill request any changes to the certified CIIPP Class, so the Court need not re-certify it.

**V.     SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS**

The Settlement Agreement with Cargill was reached by Co-Lead Class Counsel through confidential, arm's-length negotiations. (*See* Flannery Decl. ¶ 3). The Settlement was reached after the Court granted CIIPPs' motion for class certification (*Id.*). As this litigation has been pending for over five years and now has a firm trial date, the parties have had ample opportunity to assess the merits of Class members' claims and Cargill's defenses through extensive investigation, discovery, research, settlement discussion, and contested motion practice, and to balance the value of the Class members' claims against the substantial risks and expense of continuing litigation. The parties ultimately executed the Settlement Agreement on July 16, 2025. (*See id.*; Settlement Agreement).

The terms of the Settlement Agreement are modeled after the Direct Purchaser Plaintiffs' settlement agreement with Cargill, for which the Court recently granted final approval (ECF No. 1355), the Direct Purchaser Plaintiffs' settlement agreements with Cooper Farms and Farbest Foods, for which the Court granted final approval, (ECF No. 1348) and CIIPPs' settlement agreements with Cooper Farms and Farbest Foods, which the Court preliminary approved. (ECF No. 1276). Under the terms of the Settlement Agreement, Cargill will pay $4,000,000.00 into the Escrow Account for the benefit of the CIIPP Class. (Settlement Agreement at ¶ 9). In addition to

4

monetary relief, Cargill will provide cooperation on the authenticity and admissibility of certain documents CIIPPs intend to use at trial and will provide up to three trial witnesses (*Id.* at ¶ 10).

In exchange, CIIPPs will, among other things, release all Released Claims against Cargill that were, or could have been, brought in this litigation arising from CIIPPs' allegations. (*Id.* at ¶ 16). This release does not extend to any other Defendants or to unrelated claims that are not the Released Claims defined in the Settlement Agreements. (*Id.*).

The Settlement Agreement refers to a judgment sharing agreement among certain Defendants, and consistent with that agreement, should CIIPPs obtain a verdict and judgment against the Non-Settling Defendants, those Non-Settling Defendants would not be jointly and severally liable for Cargill's share of the damages. (*Id.* at ¶ 12).

Additionally, as noted earlier, and subject to Court approval, the Settlement Agreement permits Co-Lead Class Counsel to withdraw up to $250,000.00 from the Settlement Fund "to pay the costs of notice and for Preliminary Approval, Final Approval, and administration of the claims process for this Settlement Agreement." (Settlement Agreements at ¶ 6d). At this time, Co-Lead Class Counsel ask the Court to permit them to withdraw up to $130,000.00 the Settlement Fund to pay for the aforementioned notice costs.

In sum, the Settlement Agreement: (1) is the result of extensive good-faith negotiations between knowledgeable and skilled counsel; (2) was entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced Co-Lead Class Counsel, the Settlement Agreement is fair, reasonable, and adequate. Based on both the monetary relief and cooperation elements of the Settlement Agreement, Co-Lead Class Counsel submits that the Settlement Agreement is in the best interests of the Class members. (Flannery Decl. ¶ 11).

## VI. STANDARDS APPPLICABLE TO PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

A class action may be settled only with court approval. Fed. R. Civ. P. 23(c)(e). "It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980), *overruled on other grounds*; *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Before the court may give approval, it must ensure that the proposed settlements are "fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

"The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see also* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:14 (6th ed.). A proposed settlement falls within the "range of possible approval" when it is conceivable that the proposed settlement will meet the standards applied for final approval. *See* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 11.25, at 38-39 (6th ed.) (quoting MANUAL FOR COMPLEX LITIGATION, § 30.41 (3d ed.)). In other words, the Court must consider whether it will likely be able to approve the Settlements as fair, reasonable, and adequate. (*See* Fed. R. Civ. P. 23(e)(2) (listing the standard for final approval of a class action).[2]

## VII. THE COURT SHOULD APPROVE THE SETTLEMENT UNDER RULE 23(E)(2)

To determine whether to approve a proposed settlement under Rule 23(e)(2) of the Federal

---

[2] When considering preliminary approval of a settlement, the Court does not conduct a "definitive proceeding on the fairness of the proposed settlement," and the court "must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable, and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315-16 (D. Md. 1979)). The Court will make that determination at the fairness hearing, when it can assess the fairness, reasonableness, and adequacy of the proposed settlement.

Rules of Civil Procedure, courts look to the factors in the text of the Rule, which a court must consider when weighing final approval. *See* Fed. R. Civ. P. 23(e)(2) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering" the factors set forth in Rule 23(e)(2)); *see, e.g.*, *In re Payment Card Interchange Fee and Merch. Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) ("*Payment Card*"). Rule 23(e)(2) requires courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Factors (A) and (B) under Rule 23(e)(2) constitute the "procedural" analysis factors and examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.[3] Factors (C) and (D) under Rule 23(e)(2) constitute the "substantive" analysis factors and examine "[t]he relief that the settlement is expected to provide to class members." *Id.* A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp.,*

---

[3] The Court has already determined that the Class Representatives and Co-Lead Class Counsel adequately represent the Certified Class in its Order granting CIIPPs' motion for class certification. ECF No. 1107 at 10-11. Therefore, this factor is not addressed herein.

*Inc. v. ACE INA Holdings, Inc.*, No. 07-cv-298, 2012 WL 651727, at *10 (N.D. Ill. Feb 28, 2012). Because the proposed Settlement meets all factors under Rule 23(e)(2), CIIPPs respectfully submit that the Court will likely grant final approval of the proposed Settlement, and thus the Court should grant Preliminary Approval of the proposed Settlement at this time. Indeed, this proposed Settlement is substantially similar to that finally approved by the Court between the Direct Purchaser Plaintiff Class and Cargill (ECF No. 1355), the Direct Purchaser Plaintiffs, Cooper Farms, and Farbest Foods (ECF No. 1348), and the preliminarily approved settlements between CIIPPs, Coopper Farms, and Farbest Foods. (ECF No. 1276).

### A. The Settlement is Fair and Resulted from Arm's-Length Negotiations

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. *Goldsmith v. Tech. Solutions Co.*, No. 92-C-4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) ("[I]t may be presumed that the agreement is fair and adequate where, as here, a proposed settlement is the product of arm's-length negotiations."). Settlements proposed by experienced counsel and which result from arm's-length negotiations are entitled to deference from the Court. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997)). The initial presumption in favor of such settlements reflects courts' understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness concerns of Rule 23(e). In making the determination as to whether a proposed settlement is fair, reasonable, and adequate, courts evaluate the judgment of the attorneys for the parties regarding the "strength of plaintiffs' case compared to the terms of the proposed settlement." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*,

8

270 F.R.D. 330, 346 (N.D. Ill. 2010).

The proposed Settlement meets the standards for Preliminary Approval. The Settlement Agreement is the product of extensive arm's-length settlement negotiations, which included several rounds of give-and-take between Co-Lead Counsel and counsel for Cargill. (Flannery Decl. ¶ 6). As explained above, the negotiation of the Settlement largely took place after discovery was completed and the Court had issued its Class Certification Order (ECF No. 1107). (Flannery Decl. ¶ 6). Moreover, during these negotiations Co-Lead Class Counsel were focused on obtaining the best possible results for the Class. (*Id.*). Therefore, based on both the monetary and cooperation elements of the Settlement Agreement as outlined above, Co-Lead Counsel aver that this Settlement is fair, reasonable, and adequate for the Class. (*Id.* at ¶ 11).

### B. The Relief Provided for the Class is Substantial and Tangible

In assessing whether the Settlement provides adequate relief for the Class under Rule 23(e)(2)(C), the Court should consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class members' claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

"Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial." *See, e.g.*, *Payment Card*, 330 F.R.D. at 36 (citations omitted). Here, the Settlement is fair and resulted from arm's-length negotiations. The monetary relief provides a significant amount of money recovered for the Class from Cargill. (Flannery Decl. ¶ 9). In addition to the monetary relief, the cooperation that the Class will receive from Cargill will bolster CIIPPs' claims against the remaining Defendants at trial. (*Id.* at ¶¶ 5, 6, 11). Co-Lead Counsel thoroughly evaluated the relative strengths and weaknesses of the respective litigation

positions and determined that the Settlement brings substantial benefits to the Class and avoids the delay and uncertainty of continuing protracted litigation with Cargill. (*Id.*). In addition, during negotiations, there was no discussion—let alone agreement—regarding the amount of attorneys' fees CIIPPs' counsel ultimately may ask the Court to award in this case. (*Id.* at ¶ 7). (However, the Settlement Agreement provides that Cargill will not oppose CIIPPs' counsel's fee award petition.)[4] The benefits of settlement outweigh the costs and risks associated with continued litigation with Cargill and will weigh in favor of granting Final Approval.

### C. The Settlement Treats Class Members Equitably Relative to Each Other

Consideration under this Rule 23(e)(2) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Here, the named plaintiffs are treated the same as all other Class members in the proposed Settlement, and all Class members similarly share a common interest in obtaining Cargill's substantial cooperation to prosecute this case. (Flannery Decl. ¶ 8; Settlement Agreement, Recitals, pp. 2-3). The release applies uniformly to Class members and does not affect the apportionment of the relief to Class members. (Flannery Decl. ¶ 8; Settlement Agreement, ¶¶ 14-16). Accordingly, this factor will weigh in favor of granting Final Approval. *See, e.g.*, *Payment Card*, 330 F.R.D. at 47.

In sum, the Settlement Agreement: (1) provides substantial benefits to the Class; (2) is the result of extensive arm's-length negotiations between knowledgeable and skilled counsel; (3) was

---

[4] CIIPPs intend to seek an award of attorneys' fees, reimbursement of litigation expenses, and service awards in connection with this Settlement in a separate motion, and the details of the request will be disclosed in the notice to the CIIPP Class, in accordance with Rule 23(h).

entered into after extensive factual investigation and legal analysis; and (4) in the opinion of experienced counsel, is fair, reasonable, and adequate to the Class. Accordingly, Co-Lead Counsel believe that the Settlement Agreement is in the best interests of the Class members and should be preliminarily approved by the Court.

## VIII. CIIPPS WILL SUBSEQUENTLY PROVIDE A PROPOSED NOTICE PLAN

After preliminary approval of a settlement agreement, class members must be notified of the settlement. Fed. R. Civ. P. 23(e)(1)(B). The Court granted CIIPPs' request to defer notice of preliminary approval of the Cooper Farms and Farbest Foods settlements until a later date—not to exceed 150 days from the Court's grant of preliminary approval of those settlements—so that additional settlements may be included, in order to promote efficiency, conserve resources, and avoid unnecessary duplication. (ECF No. 1286).

As with those settlements, here, CIIPPs will move for approval of a notice plan which provides notice to the Class of the Settlement with Cargill. Co-Lead Class Counsel will submit a motion for leave to disseminate notice and that motion will include a proposed form, method, and date for dissemination of notice as to the Settlement Agreements (with Cooper Farms, Farbest Foods, Cargill, and any future settlements that may be preliminarily approved as of that date). CIIPPs anticipate that they will file the notice motion on or about September 3, 2025, shortly after the Litigation Notice opt out deadline, so that notice may be provided on or before September 8, 2025 pursuant to the terms of the Settlement Agreement. (Settlement Agreement ¶ 6(e)).

## IX. CONCLUSION

For the reasons stated herein, CIIPPs respectfully request that the Court preliminarily approve the Settlement with Cargill. CIIPPs will submit a separate motion seeking approval of a proposed notice plan and setting a schedule for the dissemination of notice to the Class and Final Fairness Hearing for the Settlement Agreement.

11

| | |
|---|---|
| Dated: July 30, 2025 | *By: Sterling Aldridge* <br> Sterling Aldridge (pro hac vice) <br> Don Barrett <br> Katherine Barrett Riley <br> **BARRETT LAW GROUP, P.A**. <br> P.O. Box 927 <br> 404 Court Square <br> Lexington, MS 39095 <br> Telephone: (662) 834-2488 <br> dbarrett@barrettlawgroup.com <br> kbriley@barrettlawgroup.com <br> saldridge@barrettlawgroup.com <br> <br> Michael J. Flannery <br> **CUNEO GILBERT & LADUCA, LLP** <br> Two CityPlace Drive <br> St. Louis, MO 63141 <br> Telephone: (314) 226-1015 <br> mflannery@cuneolaw.com <br> <br> Evelyn Yifei Riley (pro hac vice) <br> Cody McCracken (pro hac vice) <br> **CUNEO GILBERT & LADUCA, LLP** <br> 4725 Wisconsin Ave., NW, Suite 200 <br> Washington, DC 20016 <br> Telephone: (202) 789-3960 <br> evelyn@cuneolaw.com <br> cmccracken@cuneolaw.com <br> lmorgans@cuneolaw.com <br> <br> *Co-Lead Class Counsel for the Commercial and Institutional Indirect Purchaser Plaintiff Class* |

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on July 30, 2025, a copy of the foregoing was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

By: /s/ *Sterling Aldridge*
Sterling Aldridge

13