**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *IN RE TURKEY ANTITRUST LITIGATION* | Civil Action No. 19-cv-08318 |
| This Documents Relates To: | Hon. Sunil R. Harjani |
| | Hon. Keri L. Holleb Hotaling |
| *Direct Purchaser Plaintiff Actions* | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**
**WITH AGRI STATS, INC., APPROVAL OF THE MANNER AND**
<u>**FORM OF CLASS NOTICE PLAN, AND RELATED RELIEF**</u>

010737-11/3525938 V1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................... 1

II. LITIGATION BACKGROUND ......................................................................... 2

III. SUMMARY OF THE SETTLEMENT NEGOTIATIONS AND TERMS ....................... 2

IV. THE SETTLEMENT SATISFIES THE STANDARD FOR
PRELIMINARY APPROVAL ............................................................................ 7

    a. The Settlement Resulted from Arm's Length Negotiations ................................. 8

    b. The Settlement Provides Substantial Relief to the Certified Class in
the Form of Conduct Reform and Cooperation ....................................... 9

V. THE SETTLEMENT IS ON BEHALF OF A CERTIFIED CLASS ............................. 10

VI. THE COURT SHOULD APPROVE THE DEFERRED NOTICE PLAN ..................... 10

    a. The Content and Form of the Proposed Notices Are Fairly
Balanced, Easy to Read, and Contain All Rule 23 Notice
Requirements ..................................................................................... 11

    b. The Proposed Notice Plan Provides the Best Notice Practicable
Under the Circumstances ..................................................................... 12

        1. Direct-Mailed Notice to Class Members with Known Street
Addresses ..................................................................................... 12

        2. Direct-Emailed Notice to Class Members with Known E-
Mail Addresses ............................................................................ 13

        3. Informational Website and Toll-Free Telephone Number ........................ 13

    c. Deferred Notice is Appropriate for this Settlement ............................................. 14

VII. PROPOSED DEADLINES FOR NOTICE AND FAIRNESS HEARING ..................... 14

VIII. CONCLUSION ................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ................................................................8

*Aranda v. Caribbean Cruise Line, Inc.*,
2017 WL 818854 (N.D. Ill. March 2, 2017) ...........................................................12

*Armstrong v. Bd. of Sch. Dirs.*,
616 F.2d 305 (7th Cir. 1980) ...................................................................................7

*In re Auto. Parts Antitrust Litig.*,
2017 WL 3499291 (E.D. Mich. July 10, 2017) ......................................................10

*Birchmeier v. Caribbean Cruise Line, Inc.*,
896 F.3d 792 (7th Cir. 2018) ..................................................................................12

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986)...........................7

*Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) ....................................................................................7

*Hughes v. Kore of Indiana Enter., Inc.*,
731 F.3d 672 (7th Cir. 2013) ..................................................................................12

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ....................................................................................7

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D.Pa. 2003) ...................................................................9, 10

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
314 F.R.D. 580 (N.D. Ill. 2016)................................................................................8

*In re Packaged Ice Antitrust Litig.*,
2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) .......................................................10

*In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*,
869 F.3d 551 (7th Cir. 2017) ....................................................................................9

*In re TikTok, Inc., Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ...................................................................12

**STATUTES**

Class Action Fairness Act, 28 U.S.C. § 1715(d) .............................................................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

## I.    INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs") have reached a settlement ("Settlement" or "Settlement Agreement") with Defendant Agri Stats, Inc. ("Agri Stats") on behalf of the direct purchaser litigation class certified by the Court (the "Certified Class"). Under the terms of the Settlement,[1] Agri Stats has agreed to unprecedented conduct reform that achieves a critical aim of this lawsuit – allowing the procompetitive benefits of the Agri Stats reports to continue, but removing the allegedly anticompetitive pieces that acted to suppress production and raise prices. Agri Stats has also agreed to provide meaningful trial cooperation for the DPP class. This Settlement joins the previous settlements reached with defendants Tyson, Cargill, Cooper Farms, and Farbest Foods, and the $40.5 million that has been recovered for the Certified Class to date. (Declaration of Shana E. Scarlett ("Scarlett Decl."), ¶¶ 4-5).

As described below, the Settlement is the product of hard-fought, confidential and protracted settlement negotiations over many months, involving sophisticated counsel on either side, and with the assistance of a team of experienced economists. The Settlement is fair, reasonable, and adequate, and satisfies the factors required for preliminary approval. Therefore, DPPs respectfully ask the Court to issue an order: (1) preliminarily approving this Settlement; (2) approving the manner and form of notice of the Settlement;[2] and (3) deferring notice of the Settlement  to allow for consolidation of the notice of the Agri Stats Settlement with other possible settlements in order to reduce costs to the Class.

---

[1] The Long Form Settlement Agreement is attached hereto as **Exhibit A** to the Declaration of Shana E. Scarlett. Capitalized terms in this memorandum are defined in the Settlement Agreement.

[2] The terms of this Settlement do not include monetary relief. As such, Co-Lead Class Counsel are not seeking payment of attorney's fees, current and ongoing expenses, or service awards in connection with this Settlement.

## II.     LITIGATION BACKGROUND

The Court is very familiar with this case, thus DPPs will dispense with a detailed recitation of its litigation background. *See, e.g.*, Class Certification Order (Dkt. 1107). Prior to this Court's ruling on Class Certification, DPPs settled with Defendants Tyson and Cargill. (Dkt. 406; 1362). Soon after, this Court's Class Certification Order, DPPs reached settlements with defendants Cooper Farms and Farbest Foods. (Dkt. 1355). With this Court's encouragement of the Parties to earnestly revisit settlement discussions given the ongoing summary judgment proceedings and the October 2026 trial, DPPs reached the instant Settlement with Agri Stats. DPP has taken this Court's instructions to make good faith attempts to settle with defendants where possible, and continue to engage in settlement discussions with certain remaining defendants. DPPs hope these efforts are successful and will result in additional settlements before trial, at which point DPPs will move for notice to be directed to the Certified Class.

## III.     SUMMARY OF THE SETTLEMENT NEGOTIATIONS AND TERMS

Co-Lead Class Counsel reached the Settlement Agreement with Agri Stats through confidential and arm's length negotiations that took place over the course of months, if not years. (Scarlett Decl., ¶ 6.) Although there were early discussions regarding settlement, they went nowhere. Not until this Court issued its order instructing counsel to make a concerted effort to "consider settlement" (Dkt. 1485) did the parties make traction in the settlement negotiations. (*Id.*) The Settlement was negotiated with the assistance of experienced antitrust attorneys, and economists who are deeply familiar with the Agri Stats reports. (Scarlett Decl., ¶ 7.) The parties' settlement discussions began in earnest in 2025 and culminated shortly after Plaintiffs submitted their responses to Defendants' motions for summary judgment. (Scarlett Decl., ¶¶ 3, 6.)

This litigation has been pending for over six years and has a firm trial date in October 2026. The parties have had ample opportunity to assess the merits of the Certified Class members' claims and Agri Stats' defenses through extensive investigation, discovery, research, settlement discussions, and contested motion practice. Co-Lead counsel balanced the value of the Certified Class members' claims against the substantial risks and expense of continuing litigation and the feasibility of obtaining monetary recovery from Agri Stats. *See* Dkt No. 1177 at 5-7 (describing Plaintiffs "good faith belief that Agri Stats may file for bankruptcy before trial"). The parties ultimately executed the Settlement Agreement on March 30, 2026. (Scarlett Decl., ¶ 6; **Ex. A.**)

The Settlement provides for unprecedented conduct reform related to Agri Stats' publication of turkey processing reports and antitrust policies. (Scarlett Decl., ¶ 7; **Ex. A,** ¶ 8.) DPPs believe the conduct reform will provide an enormous benefit to turkey purchasers should Agri Stats choose to restart its turkey report program. (Scarlett Decl., ¶ 7.) The conduct reform called for the in Settlement that Agri Stats will implement includes but is not limited to:

    a.    Retain an experienced outside attorney with responsibility for antitrust compliance.

    b.    Conduct annual employee antitrust compliance training.

    c.    Implement a written antitrust compliance policy and training:

        (i)    Prohibiting Agri Stats and its employees from disclosing to a competitor of a turkey subscriber, orally or in writing (including through custom reports), any non-public information collected from a turkey subscriber other than the anonymized information disclosed in Agri Stats' reports;

        (ii)    Prohibiting any Agri Stats turkey report from containing actual competitor- or plant-level price or production volume data.

        (iii)    Implementing data security measures to prevent turkey customer employees who transition from firm A to firm B from accessing firm A data.

(iv) Implementing data security measures to prevent Agri Stats employees who transition to a customer firm from accessing non-public or non-anonymized Agri Stats data.

(v) Prohibiting Agri Stats and its employees from assisting with identifying and/or de-anonymizing turkey subscriber data in Agri Stats' reports;

(vi) Ensuring that all data values within all data fields in Agri Stats turkey reports consist of data from at least three entities[3] with no entity representing more than 70% of the data, except for quartile data fields and plant-level data fields (that are not removed as set forth in Exhibit A, as discussed below);

(vii) Agri Stats will suppress any fields that have categorical values (for example a field that takes on values of YES and NO, or a plant shift field which lists the shifts a plant operates, or the breed processed at a particular plant) if any given value of that category has fewer than three firms. If, at any time, the number of plants increases or the number of firms that take on a particular value increases, the field no longer needs to be suppressed. Conversely if the number of plants decreases or the number of firms that take on a particular value decreases such that fewer than three firms take on a particular value, the field will be suppressed even if it had not been in the past; and

(viii) Requiring that, other than data available for anyone to purchase as set forth below, every data field in Agri Stats turkey reports shall be composed of data that is at least 45 days old on average.

d. Implement provisions protecting confidentiality of competitor data in Agri Stats turkey customer contracts.

e. Remove all participant lists in turkey reports.

f. Remove all flags in turkey reports.

g. Remove in the turkey reports made available to a report recipient all plant-level production-related data fields identified in Exhibit A for turkey subscribers other than the report recipient. Notwithstanding the foregoing, Agri Stats may provide to a subscriber a subscriber's rank and percentile for these data fields.

---

[3] If the unit of the report is the plant, the 3- count rule should apply to plants; if the unit of the report is the firm, the 3-count rule should apply to firms.

h.  Modify the turkey reports as necessary to (1) delete variance fields and/or (2) suppress "linking" of data fields across reports that would otherwise disclose the plant-level data field identified in Exhibit A.

i.  Nothing in this Settlement Agreement prohibits or limits EMI's ability to provide nationwide average price data by product category for anyone (including consumers) to purchase. Agri Stats also shall publish a turkey performance report containing the production-related data fields identified in Exhibit B for anyone (including consumers) to purchase. Neither Agri Stats nor EMI may refuse a purchase of such reports on the basis that the purchaser is not a protein producer unless the persons or entities have unresolved claims pending against Agri Stats. The prices for such reports shall be no more than the average price being charged to Agri Stats' or EMI's regular customers as of the date of purchase. Except as set forth in this paragraph, nothing in this Settlement Agreement shall prohibit Agri Stats or EMI from adjusting or altering prices to any customer or adjusting other terms and conditions of purchase from time to time in its sole discretion. Such reports shall be made available without requiring the submission of data from subscribers, except that Agri Stats and EMI may continue to require processors to submit data.

j.  Agri Stats will not introduce any averages in any turkey reports or subsections that do not comply with the 3 entity / 70% rule set forth above.

k.  Agri Stats will give class counsel two weeks' notice in the unforeseen event that turkey reports resume.

l.  No non-public export data collected from a subscriber will be provided to any competitor other than the information disclosed in Agri Stats' regular turkey reports.

m.  Agri Stats will provide no forward-looking industry forecasts to turkey processors, including regarding how future industry production decisions might impact future prices or profitability. For the avoidance of doubt, nothing in the Settlement Agreement prohibits or limits EMI's ability to provide forward-looking industry forecasts based on publicly available data for anyone (including consumers) to purchase and EMI may not refuse such a purchase on the basis that the purchaser is not a protein producer unless the persons or entities have unresolved claims pending against Agri Stats.

n.  In the unforeseen event that Agri Stats resumes publication of turkey processing reports in the future, Agri Stats agrees that it will not re-add the plant-level data fields set forth in Exhibit A for subscribers other than the report recipient under a different numbering system, report, or mechanism for delivery to a report recipient. For the avoidance of doubt, nothing in the Settlement Agreement prohibits or limits 1) subscriber disclosure of data

- 5 -

to Agri Stats or Agri Stats' addition of new reports or services, so long as such reports or services incorporate corresponding restrictions to those set forth herein; or 2) the renumbering and reordering of reports or data fields.

o. Agri Stats will not disclose any non-public data collected from a turkey subscriber to any competitor of the subscriber other than the anonymized information disclosed in Agri Stats' regular reports, including through electronic tools like the sales data miner, web application programming interfaces ["API"] services, or other web services provided by Agri Stats and/or its parents, subsidiaries, owners, or contractors. For the avoidance of doubt, nothing in the Settlement Agreement prohibits Agri Stats from providing turkey reports to subscribers in different electronic formats, so long as the format complies with the other provisions of this Settlement Agreement.

p. Agri Stats shall cease, and will not resume in the future, publication of any and all sales reports. Agri Stats shall cease, and will not resume in the future, publication of any and all price data for product categories that are not otherwise available to the public from EMI pursuant to Paragraph i.

q. With the exception of Paragraph p, this conduct relief shall remain in effect for five years, starting from the unforeseen date that Agri Stats resumes the turkey reports.

r. Nothing in this Settlement Agreement shall be construed to prohibit Agri Stats from petitioning the Court for modification of the Conduct Relief for good cause shown.

(Scarlett Decl., **Ex. A**, ¶ 8.) This conduct reform will remain in effect for five years, starting from the unknown date that Agri Stats might resume its turkey reports. (*Id*.)

Cooperation in ongoing litigation is also a material term to the Settlement. (Scarlett Decl., ¶ 7; **Ex. A** ¶ 10.) The cooperation will include assisting in providing declarations related to the admissibility of documents for use at trial, and providing up to two witnesses to be called to testify at trial. (*Id*.) This cooperation will be a key tool for DPPs as they prepare for trial against non-settled Defendants.

In exchange for the conduct reform and cooperation from Agri Stats, DPPs and the Certified Class will, among other things, release all Released Claims against the Agri Stats Released Parties that were, or could have been, brought in this litigation. (Scarlett Decl., **Ex. A**, ¶

11.) The releases do not extend to any other Defendants or to unrelated claims that are not the Released Claims defined in the Settlement Agreement.

The Settlement Agreement contains a termination provision whereby either Party may elect to terminate the Settlement upon written notice to the other Party if the Court refuses to grant Preliminary or Final Approval of the Settlement Agreement, the order(s) granting Preliminary or Final Approval of the Settlement Agreement are substantially modified or reversed, or the Court refuses to enter a Final Judgment in any material respect. (Scarlett Decl., **Ex. A, ¶** 16.)

In sum, the Settlement Agreement: (1) is the result of extensive good faith and hard-fought negotiations between knowledgeable and skilled counsel; (2) was entered into after extensive factual investigation and legal analysis; and (3) in the opinion of experienced Co-Lead Class Counsel, is fair, reasonable, and adequate. Based on both the conduct reform and cooperation elements of the Settlement, Co-Lead Class Counsel submits that the Settlement is in the best interest of the Certified Class members. (Scarlett Decl., ¶ 9.)

### IV. THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

There is an overriding public interest in settling litigation, and this is particularly true in class actions.[4] Class action settlements minimize the litigation expenses of the parties and reduce the strain litigation imposes upon scarce judicial resources.[5] Class actions, however, may only be settled with the Court's approval after the Court determines they are "fair, reasonable, and

---

[4] *See Isby v. Bayh*, 75 F.3d 1191, 1196 *7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."), overruled on other grounds, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

[5] *Armstrong*, 616 F.2d at 313 (citing *Colton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

adequate."[6] Upon finding that a proposed settlement is within the range of possible approval, "the court will then order the plaintiffs to provide notice to the class 'in a reasonable manner' so that the class members can raise any objections to the settlement."[7]

This Settlement should be preliminary approved, and class members should be notified of the terms of the proposed settlement, because it satisfies the standards for preliminary approval. However, because it does not contain a monetary component and additional settlements are anticipated within ninety days, notice of the settlement should be deferred.

### a. The Settlement Resulted from Arm's Length Negotiations

The proposed Settlement between DPPs and Agri Stats satisfies the standard for preliminary approval. A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."[8] As detailed in this Motion and supporting declaration, the Settlement was the product of arm's length negotiations by experienced and knowledgeable counsel. (*See* Scarlett Decl., ¶ 8.) The hard-fought negotiations with Agri Stats were kept confidential, and the negotiations necessitated numerous conferences as well as written exchanges between counsel during which they negotiated the material terms of the Settlement, as well as the final Settlement Agreement. (Scarlett Decl., ¶ 8.) Discussions regarding the precise contours of conduct reform occurred over the course of several years, on and off. (*See* Scarlett Decl., ¶ 6.) DPPs involved economists to assist with the identification of terms that would obtain the best possible result for the Certified Class. (Scarlett Decl., ¶ 8.) The parties signed a final agreement on March 30, 2026.

---

[6] Fed. R. Civ. P. 23(e).

[7] *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. 2016) (citing Fed. R. Civ. P. 23(e)(1)).

[8] *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012).

These protracted arm's length settlement negotiations support approval of the Settlement by demonstrating they are free from collusion.[9] Indeed, while settlement discussions were ongoing, the same set of counsel was litigating summary judgment proceedings in this case. The fact that the negotiations occurred on and off over the course of years, and were supported by substantial discovery, class certification, heavily contested summary judgment briefing, and well in advance of trial, demonstrate that DPPs worked to achieve the best possible result on behalf of the Certified Class. (Scarlett Decl., ¶ 8.)

> **b.** **The Settlement Provides Substantial Relief to the Certified Class in the Form of Conduct Reform and Cooperation**

Though not required at the preliminary approval stage, the fairness, reasonableness, and adequacy of the Settlements is supported by the relief obtained on behalf of the Certified Class. The Settlement provides substantial relief for the class, in accordance with Fed. R. Civ. P. 23(e)(2)(C). Conduct reform related to Agri Stats' turkey program redresses the heart of the allegations in this case. The proposed conduct reforms would allow the reports to continue, but remove the pieces which led to allegedly anticompetitive harm, such as the exchange of detailed production and pricing information.[10] Should Agri Stats resume its turkey reports, the conduct reform established by this Settlement will provide an enormous benefit to turkey purchasers.

Relief to the Certified Class in this case is not limited to conduct reform. Cooperation by settling parties in antitrust class actions frequently supports the approval of settlements.[11] This

---

[9] *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 640.

[10] *Contra*, *In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d 551, 553 (7th Cir. 2017) (reversing and vacating approval of a settlement which provided only injunctive relief because it sought "only worthless benefits for the class" and "yield[ed only] fees for class counsel.").

[11] *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 643 (E.D.Pa. 2003) (finding cooperation by settling defendants as a strong support for approving a proposed settlement); *In re Auto. Parts Antitrust Litig.*, No. 2:12-CV-00203, 2017 WL 3499291, at *5 (E.D. Mich. July 10,

case is no different. Cooperation in the form of evidentiary stipulations and witness testimony will provide critical support for DPPs as they approach trial.

The benefit to the Certified Class, on top of the significant monetary relief already achieved for the Certified Class through previous settlements, supports granting preliminary approval. For those reasons, DPPs respectfully request the Court preliminary approve the Settlement.

## V. THE SETTLEMENT IS ON BEHALF OF A CERTIFIED CLASS

In January 2025, this Court granted DPPs' motion for class certification and certified the DPP class. (Dkt. 1107). "If the court has certified a class prior to settlement, it does not need to recertify it for settlement purposes." 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 13:18 (6th ed.). Here, the parties do not request any changes to the Certified Class, so the court need not re-certify it.

## VI. THE COURT SHOULD APPROVE THE DEFERRED NOTICE PLAN

DPPs respectfully request the Court's approval of a deferred notice plan, which will inform Certified Class members of the proposed Settlement with Agri Stats by July 10, 2026.[12] Such deferral will allow for cost-savings to the class in the event additional settlements are reached before then. DPPs have retained A.B. Data, Ltd. to administer the notice plan. A.B. Data is an experienced national class action notice provider and claims administrator. A.B. Data is already the Court-appointed administrator of the Tyson, Cargill, Cooper Farms, and Farbest Foods settlements this case. (Declaration of Brian S. Devery ("Devery Decl.") filed concurrently herewith, ¶¶ 1-2, Ex. 1; Dkt. 406, 1355, 1362.)

---

2017) (finding that cooperation provisions in an antitrust settlement strengthened a plaintiff class's ability to prosecute its claims against remaining defendants); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) (finding cooperation on the part of the settling defendant to be "a significant benefit to the class").

[12] As detailed in § VII, *infra*, the July 10, 2026 notice date will accommodate a schedule that allows for a Fairness Hearing to occur over one month before the October 8, 2026 trial date.

### a. The Content and Form of the Proposed Notices Are Fairly Balanced, Easy to Read, and Contain All Rule 23 Notice Requirements

This Court certified the Certified Class under Rule 23(b)(3). (See Dkt. 1107.) Notice to a class certified under Rule 23(b)(3), whether litigated or by virtue of settlement, requires that:

> [t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any members who request exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The manner of the notice is reasonable "if it may be understood by the average class member."[13] The Class Notice documents conform to the seven plain language requirements of Rule 23(c)(2)(B). They provide the following information to the Certified Class: (1) the nature of the action and the Settlements; (2) the definition of the Certified Class; (3) the Certified Class's claims, issues, and defenses; (4) that any Certified Class member may enter an appearance through an attorney if the member so desires; (5) that members of the Certified Class may exclude themselves from the Certified Class or object to the Settlement Agreements; (6) the time and manner for requesting such exclusions or submitting an objection; and (7) the binding effect of a class judgment on Certified Class members under Rule 23(c). (*See* Devery Decl. ¶ 12, Exs. 1-2.) As such, the Class Notice documents provide the required information to the Certified Class about the Court's class certification order and the Settlements. Moreover, the Class Notice documents avoid legalese in favor of modern language and direct Certified Class members to a toll-free number and the case-specific website maintained by A.B. Data for purposes of providing information about the case to the Certified Class. (*Id.*)

---

[13] 4 Newberg on Class Actions, § 11.53 (4th ed. 2002).

- 11 -

### b. The Proposed Notice Plan Provides the Best Notice Practicable Under the Circumstances

Notice to the Certified Class must be the "the best notice that is practicable under the circumstances" and be distributed to "all members who can be identified through reasonable effort."[14] Such notice may be by "United States mail, electronic means, or other appropriate means."[15] Additionally, the Certified Class is entitled to receive notice of the Settlements in a reasonable manner.[16] This requirement is satisfied by providing the best notice practicable under the circumstances to the Certified Class.[17]

The proposed Class Notice Plan satisfies the best practicable notice criteria and is the same notice plan previously granted final approval by the Court in the Tyson, Cargill, Cooper Farms, and Farbest Foods Settlements in this case. (*See* Dkt. 406, 1355, 1362.) It provides reasonable notice to the Certified Class in the best manner possible under the circumstances of the litigation, and it comports with due process. Moreover, the Class Notice documents—consisting of the long form and short form—comply with the requirements of Rule 23(c)(2)(B). (*See* Devery Decl., Ex. 1 (long form notice), Ex. 2 (short form notice).)

### 1. Direct-Mailed Notice to Class Members with Known Street Addresses

DPPs propose to send paper copies of the long form notice to potential members of the Certified Class who have mailing addresses that are reasonably accessible based on the data produced by Defendants in this litigation. (*See* Devery Decl., ¶ 11, Ex. 1.) The long form notice

---

[14] Fed. R. Civ. P. 23(c)(2)(B); *see Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 676 (7th Cir. 2013) (holding that the federal law requires only the best notice that is practicable under the circumstances).

[15] Fed. R. Civ. P. 23(c)(2B); *see Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854 at *2 (N.D. Ill. March 2, 2017), *affirmed sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018).

[16] *See* Fed. R. Civ. P. 23(e)(1)(B).

[17] *See In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021).

will be sent to approximately 3,357 potential members of the Certified Class via first-class mail. (*See* Devery Decl., ¶ 11.) A.B. Data will track mail that the U.S. Postal Service returns as undeliverable, and, where feasible, will resend using address information provided by third parties. (Devery Decl., ¶ 13.)

### 2. Direct-Emailed Notice to Class Members with Known E-Mail Addresses

DPPs propose to email the short form notice to potential Certified Class members with email addresses that are reasonably accessible based on the data produced by Defendants in this litigation. (*See* Devery Decl., ¶ 11, Ex. 2.) The short form notice will be sent to approximately 351 Certified Class members by email. (*See* Devery Decl., ¶ 11.) The email notice will provide potential Certified Class members with an electronic link to the case-specific website maintained by A.B. Data where they can obtain more detailed information, including the Court's class certification order, the long form notice, the Settlement Agreement, and other case documents. (*See* Devery Decl., ¶ 13.)[18]

### 3. Informational Website and Toll-Free Telephone Number

To provide detailed information about the case and specific information to Certified Class members, A.B. Data will update and continue to operate and monitor the case website for this case at www.turkeylitigation.com. (*See* Devery Decl., ¶ 15.) The website will provide, among other things, all relevant documents including the Court's order on class certification, the Settlement Agreement, the long form notice, the Court's preliminary approval order, important dates, and any pertinent updates concerning the litigation or approval of the Settlements. (*Id*.) Additionally, A.B.

---

[18] As explained in the Declaration of Brian Devery (Devery Decl., ¶ 14), no publication notice is proposed for this round of settlement notice as three prior rounds of direct notice and publication notice have been provided, so there is ample reason to think any Certified Class member has already been identified through these prior efforts and the direct email and paper notice will suffice for notice of the Settlement.

Data will continue to operate the case-specific toll free number: 877-777-9637. (*Id.*) The website and call center will be available in both English and Spanish. (*Id.*)

### c. Deferred Notice is Appropriate for this Settlement

The purpose of deferred notice is simply this: efficiency and cost-savings. Consistent with the Court's directive for the Parties to engage in fruitful settlement discussions, DPPs anticipate they may reach additional settlements with other defendants prior to trial. Rather than issue and pay for multiple settlement notices in a short period of time, DPPs propose deferring notice to provide the possibility of consolidating notices of multiple settlements. This will be cost effective, clearer for class members, and increase judicial efficiency. Deferred notice allows time to consolidate notice with other settlements and will be "the best notice that is practicable under the circumstances."[19] The option to defer notice is a provision in the Settlement Agreement. (*See* Scarlett Decl., **Ex. A**, ¶ 6(b).) In the scenario that no additional settlements are reached within the deferred notice period, notice of this settlement will proceed according to the notice plan and DPPs will contact the Court to obtain a Fairness Hearing date, and update the deadlines in the notice documents (Devery Decl., Exs. 1 & 2) accordingly.

### VII. PROPOSED DEADLINES FOR NOTICE AND FAIRNESS HEARING

The last step in the settlement approval process is the Final Fairness Hearing, during which the Court may hear all evidence necessary to evaluate and determine whether to grant approval of the proposed Settlement. At that hearing, proponents of the Settlement may explain and describe their terms and conditions and argue in support of the Settlement's approval. Members of the Certified Class or their counsel may be heard regarding the proposed Settlement if they choose. DPPs propose that they contact the Court to schedule a Fairness Hearing no later than September

---

[19] *See* Rule 23(c)(2)(B).

4, 2026, which is over one month before the October 8, 2026 trial start date. To accommodate a September 4, 2026 Fairness Hearing, DPPs propose commencing the notice plan no later than July 10, 2026. The proposed schedule for dissemination of the notice plan and Fairness Hearing is as follows:

| DATE | EVENT |
|---|---|
| 10 days after the filing of this Motion for Preliminary Approval | Defendant Agri Stats shall file via ECF confirmation of its provision of notice to government regulators pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(d) |
| No later than July 10, 2026 | Settlement Administrator to commence direct mail and email notice |
| 30 days after the commencement of the Notice | Last day for Certified Class Members to: (1) file objections to the Settlements, and (2) file notices to appear at the Fairness Hearing |
| 14 days before the Fairness Hearing | Co-Lead Class Counsel shall file a motion for Final Approval of the Settlements and all supporting papers, and Co-Lead Class Counsel and Defendant Agri Stats may respond to any objections to the proposed Settlement |
| No later than September 4, 2026 | Fairness Hearing regarding the Settlement |

## VIII. CONCLUSION

For these reasons, DPPs respectfully request that the Court preliminary approve the proposed Settlement, approve DPPs' manner and form of class notice, and schedule a Fairness Hearing in accordance with the class notice schedule.

Dated: March 31, 2026

/s/ Shana E. Scarlett
Shana E. Scarlett
Rio S. Pierce
Abby R. Wolf
Sarah E. Dupree
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
shanas@hbsslaw.com
riop@hbsslaw.com
abbyw@hbsslaw.com
sarah.dupree@hbsslaw.com

Steve Berman
Breanna Van Engelen
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
steve@hbsslaw.com
breannav@hbsslaw.com

Respectfully submitted,

/s/ Brian D. Clark
Brian D. Clark (IL #6350416)
W. Joseph Bruckner (MN #147758)
Simeon A. Morbey (MN #0391338)
Steve E. Serdikoff (PA #86773)
Olivia T. Levinson (MN #0402953)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
bdclark@locklaw.com
wjbruckner@locklaw.com
samorbey@locklaw.com
seserdikoff@locklaw.com
otlevinson@locklaw.com

*Co-Lead Counsel for the Direct Purchaser
Plaintiff Class*

- 17 -

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on March 31, 2026, a copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

/s/ Shana E. Scarlett
Shana E. Scarlett

- 17 -